**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| CITY OF FORT LAUDERDALE POLICE AND FIREFIGHTERS' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>          v.<br><br>PEGASYSTEMS INC., ALAN TREFLER, and KENNETH STILLWELL,<br><br>     Defendants. | Case No. 1:22-cv-578-LMB-IDD |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF BOSTON RETIREMENT SYSTEM AND NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND FOR APPOINTMENT AS LEAD PLAINTIFF <u>AND APPROVAL OF THEIR SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 3

ARGUMENT ............................................................................................................................ 6

    I.    BOSTON AND NYC CARPENTERS SHOULD BE APPOINTED
          LEAD PLAINTIFF ...................................................................................................... 6

          A.    Boston's and NYC Carpenters' Motion Is Timely ................................................ 6

          B.    Boston and NYC Carpenters Have the Largest Financial Interest in
              the Relief Sought by the Class .......................................................................... 7

          C.    Boston and NYC Carpenters Satisfy the Applicable Requirements
              of Rule 23 ....................................................................................................... 7

          D.    Boston and NYC Carpenters Are Precisely the Type of Lead
              Plaintiff Envisioned by the PSLRA .................................................................. 9

    II.    THE COURT SHOULD APPROVE BOSTON'S AND NYC
          CARPENTERS' SELECTION OF COUNSEL ......................................................... 12

CONCLUSION....................................................................................................................... 16

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) ................................................................................10

*Bricklayers' & Allied Craftworkers Local #2 Albany v. New Oriental Educ. &*
  *Tech. Grp. Inc.*,
  2022 WL 1515451 (S.D.N.Y. May 13, 2022) .......................................................14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)................................................................................9, 12

*Chung v. Eargo, Inc.*,
  No. 3:21-cv-08597-CRB, ECF No. 36 (N.D. Cal. Jan. 5, 2022) ...........................15

*City of Miami Firefighters' & Police Officers' Ret. Tr. v. Cerence Inc.*,
  2022 WL 1505907 (D. Mass. May 12, 2022)........................................................14

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
  2022 WL 1459567 (N.D. Cal. May 9, 2022).........................................................15

*City of Warren Police & Fire Ret. Sys. v. DXC Tech. Co.*,
  No. 1:18-cv-01599-AJT-MSN, ECF No. 38 (E.D. Va. Mar. 26, 2019) ..................10

*Homyk v. ChemoCentryx, Inc.*,
  No. 4:21-cv-03343-JST, ECF No. 32 (N.D. Cal. Jan. 28, 2022)............................15

*Langley v. Booz Allen Hamilton Holding Corp.*,
  No. 1:17-cv-00696-LMB-TCB, ECF No. 21 (E.D. Va. Sept. 5, 2017)...................10

*In re Mattel, Inc. Sec. Litig.*,
  2021 WL 4704578 (C.D. Cal. Oct. 6, 2021)..........................................................15

*In re MicroStrategy Inc. Sec. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) ........................................................7, 8, 12

*In re Mills Corp. Sec. Litig.*,
  2006 WL 2035391 (E.D. Va. May 30, 2006) ................................................ *passim*

*In re Myriad Genetics, Inc. Sec. Litig.*,
  2021 WL 5882259 (D. Utah Dec. 13, 2021)..........................................................15

*Emps.' Ret. Fund of the City of Fort Worth v. James River Grp. Holdings, Ltd.*,
  No. 3:21-cv-0044-MHL, ECF No. 20 (E.D. Va. Sept. 22, 2021)....................10, 15

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
  2020 WL 815136 (E.D. Pa. Feb. 19, 2020) ...........................................................12

*City of Pontiac Gen. Emps.' Ret. Sys. v. Genworth Fin., Inc.*,
No. 3:14-cv-00682-JAG-RCY, ECF No. 25 (E.D. Va. Nov. 6, 2014) ....................................10

*City of Riviera Beach Gen. Emps.' Ret. Sys. v. Vertiv Holdings Co.*,
No. 1:22-cv-03572-GHW, ECF No. 16 (S.D.N.Y. June 22, 2022) .........................................14

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) ...................................................................14, 15

*Switzenbaum v. Orbital Scis. Corp.*,
187 F.R.D. 246 (E.D. Va. 1999) ........................................................................................7

*Yoshikawa v. Exxon Mobil Corp.*,
No. 3:21-cv-00194-N, ECF No. 43 (N.D. Tex. June 10, 2021)...............................................15

## STATUTES

15 U.S.C. § 78u-4 *et seq.* ........................................................................................ *passim*

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(a)(4).............................................................................................8

H.R. Conf. Rep. No. 104-327 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995).......................9

Boston Retirement System ("Boston") and New York City District Council of Carpenters Pension Fund ("NYC Carpenters") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order: (i) appointing Boston and NYC Carpenters as Lead Plaintiff; (ii) approving Boston's and NYC Carpenters' selection of Labaton Sucharow LLP ("Labaton Sucharow") and Bernstein Litowtiz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel for the Class; and (iii) granting any further relief that the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above-captioned securities class action alleges that between May 29, 2020 and May 9, 2022, inclusive (the "Class Period"), Pegasystems Inc. ("Pegasystems" or the "Company") and certain of the Company's senior executives (collectively, "Defendants"), defrauded persons and entities that purchased Pegasystems common stock (the "Class") in violation of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  Specifically, the action alleges that Defendants retained an employee of a government contractor to engage in corporate espionage against Appian Corporation ("Appian"), one of the Company's largest competitors.  At the same time, Defendants assured investors that Pegasystems had internally developed its products and maintained a code of conduct that included an express commitment to never use illegal or questionable means to acquire a competitor's trade secrets.  Pegasystems investors, including Boston and NYC Carpenters, incurred significant losses when, on May 9, 2022, Pegasystems disclosed that a Virginia circuit court jury found that the Company misappropriated trade secrets and awarded Appian more than $2 billion.

Pursuant to the PSLRA, the Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the "person or group of persons" that has the "largest financial interest" in the relief sought by the Class and has made a *prima facie* showing that it meets the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, Boston and NYC Carpenters are the "most adequate plaintiff" by virtue of, among other things, the over $2.2 million in losses they incurred on their purchases of 31,837 shares of Pegasystems common stock during the Class Period.[1]

In addition to asserting the largest financial interest, Boston and NYC Carpenters readily satisfy the relevant requirements of Rule 23 because their claims are typical of all Class members and they will fairly and adequately represent the Class. Indeed, Boston and NYC Carpenters are a paradigmatic Lead Plaintiff under the PSLRA because they are a small, cohesive partnership of sophisticated institutional investors and have a substantial financial interest in the litigation. They also have the proven ability to direct the litigation separate and apart from their counsel and have experience serving as lead plaintiffs in other complex securities class actions and supervising the work of outside counsel.

Further, as set forth in their Joint Declaration submitted herewith, Boston and NYC Carpenters fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are

---

[1] Boston's and NYC Carpenters' PSLRA-required Certifications are provided as Exhibit A to the Declaration of Steven J. Toll in Support of the Motion of Boston Retirement System and New York City District Council of Carpenters Pension Fund for Appointment as Lead Plaintiff and Approval of Their Selection of Counsel (the "Toll Decl."), filed herewith. In addition, charts setting forth calculations of Boston's and NYC Carpenters' losses are provided as Exhibit B to the Toll Decl.

committed to undertaking those responsibilities to ensure the vigorous prosecution of this action.[2] Prior to seeking a role as Lead Plaintiff, representatives of Boston and NYC Carpenters convened a conference call to discuss, among other things, the merits of the claims against Defendants, as well as their common goals in prosecuting this litigation. *See* Toll Decl., Ex. C ¶ 11. Courts in the Fourth Circuit routinely appoint small, cohesive groups of institutional investors—like Boston and NYC Carpenters—that have demonstrated they are capable of vigorously prosecuting the action on behalf of the class. *See, e.g.*, *In re Mills Corp. Sec. Litig.*, 2006 WL 2035391, at *1 (E.D. Va. May 30, 2006) (appointing group of two public pension funds as lead plaintiff).

Boston and NYC Carpenters have further demonstrated their adequacy through their selection of Labaton Sucharow and Bernstein Litowitz to serve as Lead Counsel and Cohen Milstein to serve as Liaison Counsel for the Class. Labaton Sucharow, Bernstein Litowitz, and Cohen Milstein are nationally recognized law firms with substantial experience in successfully prosecuting securities class actions, and are eminently qualified to prosecute this case. Accordingly, Boston and NYC Carpenters respectfully request that the Court appoint them Lead Plaintiff and approve their selection of Lead and Liaison Counsel.

## FACTUAL BACKGROUND

Pegasystems develops customer relationship management ("CRM") software. The Company's software is used to automate customer interactions across transaction-intensive enterprises and Pegasystems provides its products to customers in the banking, investments, mortgage services, card services, insurance, healthcare management, and telecommunications

---

[2] *See* Joint Declaration of Natacha Thomas and Kristin O'Brien in Support of the Motion of Boston Retirement System and New York City District Council of Carpenters Pension Fund as Lead Plaintiff and Approval of Their Selection of Counsel (the "Joint Declaration") (Toll Decl., Ex. C).

industries.  The CRM software business is intensely competitive, and the Company considered Appian as one of its key competitors.

In 2012, Pegasystems engaged in a covert scheme to steal trade secrets from Appian. Specifically, Pegasystems hired Youyong Zou ("Zou"), an employee of Appian's business partner who had access to Appian's software, to funnel certain of Appian's proprietary information to Pegasystems.  Pegasystems and Zou then used those proprietary materials to conduct detailed technical analyses of Appian's product to determine precisely how it was constructed and how it worked so that they could compare it to Pegasystems' product.  Pegasystems used that analysis to create marketing materials and training materials for Pegasystems' sales force, which were used in repeated attempts to deprive Appian of business, often successfully.  Pegasystems also used that analysis to improve their own platform.  Internally, Pegasystems went so far as to refer to the contractor as a "spy" and to its undisclosed scheme as "Project Crush."

As a result of this scheme, many of Pegasystems' Class Period representations to investors were false or misleading.  For example, Pegasystems repeatedly stated that it develops its products internally, stating that its "research and development organization is responsible for product architecture, core technology development, product testing, and quality assurance." These misrepresentations and omissions caused the Company's stock to continue trading at artificially inflated prices.  The Company also maintained a Code of Conduct, which included the express commitment "Never [to] use illegal or questionable means to acquire a competitor's trade secrets or other confidential information, such as . . . stealing, seeking confidential information from a new employee who recently worked for a competitor, or misrepresenting your identity in hopes of obtaining confidential information."

Pegasystems also purported to warn investors of the competitive nature of its business, which it characterized as "intensely competitive, rapidly changing, and highly fragmented," but did not disclose the Project Crush scheme or how it used a "spy" to steal trade secrets from a key competitor.

Even after Appian discovered Pegasystems' scheme and then, in May 2020, sued Pegasystems for stealing its trade secrets, Pegasystems did not disclose the lawsuit to investors. Instead, the Company included in certain SEC filings boilerplate statements that "we *may* be subject to legal proceedings and civil and regulatory claims that arise in the ordinary course of our business activities" and that it "*may* be subject to intellectual property rights claims by third parties, which are extremely costly to defend, could require us to pay significant damages and could limit our ability to use certain technologies." As a result of these misrepresentations, Pegasystems' stock traded at artificially inflated prices throughout the Class Period.

The truth emerged on May 9, 2022, when the Company disclosed that, following a seven-week jury trial, the Virginia circuit court jury found that Pegasystems stole Appian's trade secrets and awarded Appian more than $2 billion. The record and evidence presented at trial demonstrated that Pegasystems engaged in corporate espionage and trade secrets theft to better compete with Appian over an extensive period beginning as early as 2012 and continuing at least through 2019 and possibly right up until Appian discovered the misappropriation and filed its lawsuit against Pegasystems in May 2020. During the trial, the jury was presented with overwhelming evidence supporting Appian's claims, including videos, emails, and text messages, and evidence that Alan Trefler, Pegasystems' Founder and Chief Executive Officer, personally attended a meeting with the "spy" and received Appian trade secrets supplied by the "spy." Notably, when testifying under oath, Trefler conceded that he knew all about the blatantly improper and illegal tactics, knew that

5

it was inappropriate for Pegasystems to have hired the spy, and knew that the spy had engaged in unauthorized activities.

As a result of these disclosures, the price of Pegasystems' stock declined by $13.68 per share, or 21%, from $65.93 per share on May 9, 2022, to close at $52.25 per share on May 10, 2022.  As  the market continued to digest the verdict, Pegasystems' stock price dropped another 8% to close at $48.07 on May 11, 2022, representing a two-day decline of 27%.

Aside from engaging in the material illegal conduct, Pegasystems' material misrepresentations and omissions, and the revelations thereof, have caused the Class to incur substantial damages.

## ARGUMENT

**I.    BOSTON AND NYC CARPENTERS SHOULD BE APPOINTED LEAD PLAINTIFF**

Boston and NYC Carpenters respectfully submit that they should be appointed Lead Plaintiff because they are the "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA establishes a presumption that the "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  As set forth below, Boston and NYC Carpenters believe they are the "most adequate plaintiff" because they have the largest financial interest of any qualified movant, satisfy the typicality and adequacy requirements of Rule 23, and are sophisticated institutional investors with the skills and resources to oversee and vigorously prosecute this action.

**A.    Boston's and NYC Carpenters' Motion Is Timely**

Under the PSLRA, any Class member, or group of Class members, may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action has

been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). On May 19, 2022, Plaintiff City of Fort Lauderdale Police and Firefighters' Retirement System ("Fort Lauderdale") filed the above-captioned securities class action asserting claims under Sections 10(b) and 20(a) of the Exchange Act against Defendants. That same day, counsel for Fort Lauderdale published a notice on *Globe Newswire*, which alerted investors to the pendency of the action and set the deadline to seek Lead Plaintiff status by July 18, 2022. *See* Toll Decl., Ex. D. Accordingly, Boston and NYC Carpenters have timely moved for appointment as Lead Plaintiff through the filing of this motion.

**B.      Boston and NYC Carpenters Have the Largest Financial Interest in the Relief Sought by the Class**

Boston and NYC Carpenters should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Boston and NYC Carpenters incurred losses of over $2.2 million in connection with their Class Period purchases of 31,837 shares of Pegasystems common stock. *See* Toll Decl., Exs. A & B. To the best of Boston's and NYC Carpenters' knowledge, no other movant has a larger financial interest in this action. Accordingly, Boston and NYC Carpenters have the largest financial interest of any qualified movant and are the presumptive "most adequate plaintiff."

**C.      Boston and NYC Carpenters Satisfy the Applicable Requirements of Rule 23**

In addition to possessing the largest financial interest, Boston and NYC Carpenters satisfy the applicable requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). For the purposes of assessing whether the applicable provisions of Rule 23 are satisfied at the lead plaintiff appointment stage, all that is required is a preliminary showing that the proposed lead plaintiff's claims are typical and adequate. *See In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 435 (E.D. Va. 2000) (noting that only the typicality and adequacy requirements are relevant at the lead plaintiff stage); *Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246, 250 (E.D. Va. 1999)

(explaining that the Rule 23 "inquiry is not as searching as the one triggered by a motion for class certification"). Here, Boston and NYC Carpenters unquestionably satisfy both requirements.

Boston's and NYC Carpenters' claims are typical of the claims of other Class members. Typicality can be established by showing that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Mills*, 2006 WL 2035391, at *4 (citation omitted). Here, Boston's, NYC Carpenters', and all other Class members' claims arise from the same course of events, and their legal arguments to prove Defendants' liability are identical. Like all other Class members, Boston and NYC Carpenters (i) purchased Pegasystems common stock during the Class Period, (ii) at prices artificially inflated by Defendants' materially false and misleading statements and omissions, and (iii) were damaged thereby. *See id.* Thus, Boston and NYC Carpenters satisfy the typicality requirement.

Boston and NYC Carpenters likewise satisfy Rule 23's adequacy requirement. Under Rule 23(a)(4), a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy can be demonstrated by showing that the movant "(i) does not have interests that are adverse to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." *In re MicroStrategy*, 110 F. Supp. 2d at 435-36. Boston and NYC Carpenters satisfy these elements because their substantial financial stake in the litigation provides them with the incentive to vigorously represent the Class's claims. Further, as discussed below, Boston and NYC Carpenters have significant experience serving in a fiduciary capacity and supervising the work of outside counsel. Moreover, Boston's and NYC Carpenters' interests are perfectly aligned with those of the other Class members and are not

antagonistic in any way.  There are no facts to suggest any actual or potential conflict of interest or other antagonism between Boston and NYC Carpenters and other Class members.

The adequacy requirement also applies to a movant's choice of class counsel, whose representation is adequate when class counsel is qualified, experienced, and generally able to conduct the litigation.  *See In re Mills*, 2006 WL 2035391, at *3 (describing factors courts may consider in determining counsel's adequacy).  Thus, Boston and NYC Carpenters have further demonstrated their adequacy through their selection of Labaton Sucharow and Bernstein Litowitz to serve as Lead Counsel and Cohen Milstein to serve as Liaison Counsel for the Class.  Labaton Sucharow and Bernstein Litowitz are highly qualified and experienced securities litigation firms that have repeatedly demonstrated their ability to successfully prosecute complex securities class actions.  *See infra* at § II.

Accordingly, Boston and NYC Carpenters satisfy the typicality and adequacy requirements of Rule 23.

### D.   Boston and NYC Carpenters Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the requirements of Rule 23, Boston and NYC Carpenters— sophisticated institutional investors that collectively manage approximately $12 billion in assets— are exactly the type of lead plaintiff Congress prefers to lead securities class actions.  Congress explained that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting H.R. Conf. Rep. No. 104-327, at *34 (1995), *reprinted in* 1995

U.S.C.C.A.N. 730, 733 (1995)). Boston and NYC Carpenters are well suited to fulfill this Congressional intent.

As discussed in their Joint Declaration, Boston and NYC Carpenters have demonstrated their commitment to working together cohesively in the prosecution of this action. Toll Decl., Ex. C ¶¶ 11-16; *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing group and noting "declarations demonstrating cooperative efforts among" the group's members). The PSLRA expressly states that a "group of persons" is eligible to serve as Lead Plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(iii), and courts in this District and throughout the country have routinely appointed small groups of investors that have a substantial financial stake in the litigation, such as Boston and NYC Carpenters, as Lead Plaintiff. *See Emps.' Ret. Fund of the City of Fort Worth v. James River Grp. Holdings, Ltd.*, No. 3:21-cv-0044-MHL, ECF No. 20 (E.D. Va. Sept. 22, 2021) (appointing two institutional investors as lead plaintiff); *City of Warren Police & Fire Ret. Sys. v. DXC Tech. Co.*, No. 1:18-cv-01599-AJT-MSN, ECF No. 38 (E.D. Va. Mar. 26, 2019) (same); *Langley v. Booz Allen Hamilton Holding Corp.*, No. 1:17-cv-00696-LMB-TCB, ECF No. 21 (E.D. Va. Sept. 5, 2017) (same); *City of Pontiac Gen. Emps.' Ret. Sys. v. Genworth Fin., Inc.*, No. 3:14-cv-00682-JAG-RCY, ECF No. 25 (E.D. Va. Nov. 6, 2014) (same); *In re Mills*, 2006 WL 2035391, at *3-4 (same).

Boston and NYC Carpenters comprise a small, cohesive pair of sophisticated institutions that determined on their own to jointly seek appointment as Lead Plaintiff and prosecute this action independently of counsel and in the best interests of all Class members. *See* Toll Decl., Ex. C ¶¶ 6-10. As discussed in their Joint Declaration, Boston and NYC Carpenters have demonstrated their commitment to working cohesively as a group in the prosecution of this action. *See id.* ¶¶ 11-16. The Joint Declaration demonstrates that Boston and NYC Carpenters have already taken

10

(and will continue to take) measures to ensure the vigorous prosecution of this action and oversee counsel. *See id.* Specifically, before seeking appointment as Lead Plaintiff, representatives from Boston and NYC Carpenters participated in a conference call and discussed together, among other things: the facts and the merits of the claims against Defendants; the strategy for the prosecution of this litigation; the experience of their respective institutions in prosecuting shareholder litigations; their interest in serving together as Lead Plaintiff; and their common goals in ensuring that this action is litigated as efficiently as possible and that the Class receives the best possible result. *See id.* ¶ 11. Boston and NYC Carpenters have established channels of communication so they can consult with one another, both with and without counsel, throughout the pendency of this action. *See id.* ¶ 12.

The Joint Declaration also explains how and why Boston and NYC Carpenters decided to collaborate in this litigation. Specifically, before seeking Lead Plaintiff appointment, representatives of Boston and NYC Carpenters considered the merits of the claims against Defendants, their losses caused by Defendants' fraud, and their proposed litigation strategy. *See id.* ¶¶ 7-10. Through the course of those deliberations, Boston and NYC Carpenters each independently expressed an interest in seeking to cooperate with like-minded institutional investors in seeking appointment as Lead Plaintiff. *See id.* ¶ 8. Based on Boston's and NYC Carpenters' understanding that working together would allow for the sharing of experiences and resources, their shared goals as fiduciaries, and Boston's prior experience in litigating securities class actions as a member of small, cohesive lead plaintiff groups, they believed that partnering would add substantial value to the prosecution of this action and would benefit the Class. *See id.* ¶¶ 3, 8-10.

The evidence submitted by Boston and NYC Carpenters establishing their commitment to zealously and efficiently representing the interests of the Class as Lead Plaintiff demonstrates that Boston and NYC Carpenters are the paradigmatic Lead Plaintiff contemplated by the PSLRA. *See Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2020 WL 815136, at *5 (E.D. Pa. Feb. 19, 2020) (appointing group of public pension funds that submitted a joint declaration describing how the group was formed and demonstrating their ability to oversee counsel and act in the best interests of the class).

## II.   THE COURT SHOULD APPROVE BOSTON'S AND NYC CARPENTERS' SELECTION OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices." *In re Cendant*, 264 F.3d at 274; *see also In re Mills*, 2006 WL 2035391, at *4 (appointing co-lead counsel with extensive experience); *In re MicroStrategy*, 110 F. Supp. 2d at 438 ("[A] district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources, saving the question of fees until the conclusion of the litigation."). Here, Boston and NYC Carpenters have selected Labaton Sucharow and Bernstein Litowitz to serve as Lead Counsel and Cohen Milstein Sellers & Toll PLLC to serve as Liaison Counsel to represent the Class.

As set forth in their respective firm résumés, proposed Lead Counsel Labaton Sucharow and Bernstein Litowitz have extensive experience prosecuting complex litigation on behalf of aggrieved shareholders. *See* Toll Decl., Exs. E & F. The firms have achieved substantial recoveries on behalf of investor classes when serving as lead counsel in major securities class actions nationwide. In fact, Labaton Sucharow and Bernstein Litowitz have a long history of working together in the prosecution of securities class actions on behalf of injured investors. For

12

instance, Labaton Sucharow and Bernstein Litowitz, serving as co-lead counsel, secured a $473 million recovery for the class in *In re Schering-Plough Corporation/ENHANCE Securities Litigation*, No. 2:08-cv-397 (D.N.J.).  The two firms also successfully served as co-lead counsel in *Eastwood Enterprises LLC v. Farha*, No. 8:07-cv-1940 (M.D. Fla.), recovering $200 million for the class, and *In re SCANA Corporation Securities Litigation*, No. 3:17-cv-2616 (D.S.C.), recovering $192.5 million for the class.

Labaton Sucharow has excelled as lead counsel in numerous landmark actions on behalf of defrauded investors.  Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 1:04-cv-8141 (S.D.N.Y.), in which it recovered more than $1 billion for injured investors.  In addition, Labaton Sucharow was lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 2:07-cv-5295 (C.D. Cal.), which achieved a settlement of $624 million—one of the largest securities fraud settlements arising from the financial crisis of 2007 to 2008.  Labaton Sucharow also has achieved noteworthy results for investors in this District, including securing a settlement of $97.5 million in *In re Computer Sciences Corp. Securities Litigation*, No. 1:11-cv-610 (E.D. Va.), a settlement of $41.5 million in *In re NII Holdings, Inc. Securities Litigation*, No. 1:14-cv-227 (E.D. Va.), and negotiating the implementation of significant corporate governance reforms and recovering $22.5 million in cash and warrants for injured investors in *In re Orbital Sciences Corp. Securities Litigation*, No. 99-cv-197 (E.D. Va.).

Bernstein Litowitz is among the preeminent securities class action law firms in the country.  Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 1:02-cv-3288 (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class.  More recently, Bernstein

Litowitz secured recoveries of $2.43 billion in *In re Bank of America Corp. Securities, Derivative and ERISA Litigation*, No. 1:09-md-2058 (S.D.N.Y.), and $1.06 billion in *In re Merck & Co. Securities, Derivative & "ERISA" Litigation*, No. 2:05-cv-1151 (D.N.J.).   Other significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Genworth Financial, Inc. Securities Litigation*, No. 3:14-cv-682 (E.D. Va.) (recovering $219 million for investors); *In re Mills Corporation Securities Litigation*, No. 1:06-cv-77 (E.D. Va.) (recovering $202.75 million for investors); *In re Willis Towers Watson plc Proxy Litigation*, No. 1:17-cv-1338 (E.D. Va.) (recovering $75 million for investors); and *In re Lumber Liquidators Holdings, Inc. Securities Litigation*, No. 4:13-cv-157 (E.D. Va.) (recovering $45 million for investors).   The results in *Genworth Financial* and *Mills* represent the third and fourth largest recoveries in securities class actions prosecuted in the Fourth Circuit, and the two largest recoveries in this District.[3]

---

[3] Separately, Boston and NYC Carpenters bring to the Court's attention an order issued by the United States District Court for the Northern District of California in an unrelated action where Bernstein Litowitz served as lead counsel for lead plaintiff SEB Investment Management AB, and class counsel for the certified class. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996, at *1 (N.D. Cal. Apr. 20, 2021) (Toll Decl., Ex. G).  Counsel for an unsuccessful lead plaintiff movant raised questions about Bernstein Litowitz's hiring of a former employee of the lead plaintiff.  Following discovery and extensive briefing, the court allowed Bernstein Litowitz to continue as class counsel.  *See id.* at *1-2.  The court nevertheless ordered Bernstein Litowitz to bring the order to the attention of the court when seeking appointment as class counsel, and also to the decision maker for the proposed lead plaintiff who selects class counsel.  *See id.* at *2. Importantly, the *Symantec* court recently granted final approval of a $70 million settlement achieved by SEB Investment Management AB and Bernstein Litowitz.  In addition, courts have repeatedly approved Bernstein Litowitz as lead counsel in securities class actions after being apprised of the *Symantec* order.  *See City of Riviera Beach Gen. Emps.' Ret. Sys. v. Vertiv Holdings Co.*, No. 1:22-cv-03572-GHW, ECF No. 16 at 2 (S.D.N.Y. June 22, 2022) (Toll Decl., Ex. H); *Bricklayers' & Allied Craftworkers Local #2 Albany v. New Oriental Educ. & Tech. Grp. Inc.*, 2022 WL 1515451, at *5 (S.D.N.Y. May 13, 2022) ("The Court is persuaded that Bernstein Litowitz can capably represent the class here, given the firm's experience in litigating class action lawsuits."); *City of Miami Firefighters' & Police Officers' Ret. Tr. v. Cerence Inc.*, 2022 WL

14

Likewise, Cohen Milstein is well qualified to represent the Class as Liaison Counsel, having served as counsel in numerous securities actions in this District. *See, e.g.*, *In re Xybernaut Corp. Sec. MDL Litig.*, No. 05-cv-1705 (E.D. Va.) (served as lead counsel and achieved a $6.3 million settlement on behalf of injured investors); *In re Mills Corp. Sec. Litig.*, No. 1:06-cv-77 (E.D. Va.) (served as liaison counsel, with Bernstein Litowitz as co-lead counsel, and achieved a $202.75 million recovery for investors); *In re Lumber Liquidators Holdings, Inc. Sec. Litig.*, No. 4:13-cv-157 (E.D. Va.) (served as liaison counsel, with Bernstein Litowitz as co-lead counsel, and achieved a $45 million recovery for investors); *In re BearingPoint Sec. Litig.*, No. 03-cv-1062 (E.D. Va.) (praising Cohen Milstein and noting "people who run corporations are generally deterred by the fact that there are the . . . Cohen Milsteins out there"); *see also* Toll Decl., Ex. M (Cohen Milstein's firm résumé).

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve Boston's and NYC

---

1505907, at *2 (D. Mass. May 12, 2022); Order Granting Motion to Consolidate, Appointing Lead Plaintiff, and Approving Selection of Counsel, *Homyk v. ChemoCentryx, Inc.*, No. 4:21-cv-03343-JST, ECF No. 32 at 6 (N.D. Cal. Jan. 28, 2022) ("The Court finds [lead plaintiff's] choice of lead counsel to be reasonable, and thus approves it.") (Toll Decl., Ex. I); Stipulation and Order Appointing IBEW Local 353 Pension Plan and Xiaobin Cai as Lead Plaintiff, Approving Their Selection of Lead Counsel, and Consolidating Actions, *Chung v. Eargo, Inc.*, No. 3:21-cv-08597-CRB, ECF No. 36 (N.D. Cal. Jan. 5, 2022) (Toll Decl., Ex. J); Order, *Emps.' Ret. Fund of the City of Fort Worth v. James River Grp. Holdings, Ltd.*, No. 3:21-cv-0044-MHL, ECF No. 20 (E.D. Va. Sept. 22, 2021) (Toll Decl., Ex. K); Order, *Yoshikawa v. Exxon Mobil Corp.*, No. 3:21-cv-00194-N, ECF No. 43 at 3 (N.D. Tex. June 10, 2021) (finding that "the requirements of Rule 23" were 'satisf[ied]") (Toll Decl., Ex. L). Bernstein Litowitz was also recently appointed class counsel in *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2022 WL 1459567, at *5 (N.D. Cal. May 9, 2022), *In re Myriad Genetics, Inc. Securities Litigation*, 2021 WL 5882259, at *13 (D. Utah Dec. 13, 2021), and *In re Mattel, Inc. Securities Litigation*, 2021 WL 4704578, at *7 (C.D. Cal. Oct. 6, 2021), after those courts were informed of the *Symantec* order.

Carpenters' selection of Labaton Sucharow and Bernstein Litowitz as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class.

## CONCLUSION

For the reasons stated above, Boston and NYC Carpenters respectfully request that the Court: (i) appoint them as Lead Plaintiff; (ii) approve their selection of Labaton Sucharow and Bernstein Litowitz as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class; and (iii) grant any further relief as the Court may deem just and proper.

Dated: July 18, 2022

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Steven J. Toll*
Steven J. Toll (Va. Bar No. 15300)
S. Douglas Bunch
Norhan Bassiouny
1100 New York Avenue, N.W., Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dbunch@cohenmilstein.com
nbassiouny@cohenmilstein.com

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**

Francis P. McConville
Guillaume Buell
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com
gbuell@labaton.com

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

16

Hannah Ross
Avi Josefson
Scott R. Foglietta
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Proposed Lead Plaintiff Boston Retirement System and New York City District Council of Carpenters Pension Fund, and Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of July 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ Steven J. Toll
Steven J. Toll (Va. Bar No. 15300)