**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

CITY OF FORT LAUDERDALE POLICE
AND FIREFIGHTERS' RETIREMENT
SYSTEM, Individually and on Behalf of All
Others Similarly Situated,

      Plaintiff,

          v.

PEGASYSTEMS INC., ALAN TREFLER,
and KENNETH STILLWELL,

      Defendants.

Case No: 1:22-cv-00578-LMB-IDD

**MEMORANDUM OF LAW IN SUPPORT OF DEKALB COUNTY PENSION FUND'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPOVAL OF ITS
SELECTION OF LEAD AND LIAISON COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 2

ARGUMENT ................................................................................................................................. 6

I. DEKALB IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ............................................................................................................................. 6

    A.     The PSLRA Standard For Appointing Lead Plaintiff ............................................. 6

    B.     Under the PSLRA, DeKalb Should be Appointed Lead Plaintiff ........................... 8

        1.     DeKalb Filed a Timely Motion ................................................................. 8

        2.     DeKalb Has the Largest Financial Interest in the Relief Sought by the Class ......................................................................................................... 8

        3.     DeKalb Meets Rule 23's Typicality and Adequacy Requirements ............ 9

II. DEKALB'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL AND SIMMONS LAW AS LIAISON COUNSEL SHOULD BE APPROVED ...................... 11

CONCLUSION ............................................................................................................................ 15

**TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008) ................................................................................................7, 9

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ...............................................................................................9, 11

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).............................................................................................................10

*In re Cree, Inc., Sec. Litig.*,
   219 F.R.D. 369 (M.D.N.C. 2003) .....................................................................................................9

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .....................................................................................................7

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ...............................................................................................7, 9

*In re GE Sec. Litig.*,
   No. 09 Civ. 1951 (DC),
   2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...........................................................................9, 11

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
   No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010 (S.D.N.Y. May 19, 2011)...........................11

*Johnson v. Pozen, Inc.*,
   No. 1:07CV599, 2008 WL 474334 (M.D.N.C. Feb. 15, 2008) ................................................10

*Levine v. AtriCure, Inc.*,
   508 F. Supp. 2d 268 (S.D.N.Y. 2007)..............................................................................................7

*In re MicroStrategy Inc. Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) .........................................................................................9, 11

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .................................................................................................9

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ...................................................................................................10

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*,
   No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331 (E.D.N.Y. Sept. 29, 2010).........................9

*Quan v. Advanced Battery Techs., Inc.*,
   No. 11 Civ. 2279(CM), 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) ....................................10

*Reitan v. China Mobile Games & Entm't Grp.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014)..............................................................................11, 12

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015)........................................................................................9

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) .............................................................................................7

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) .................................................................................................13

**Statutes**

15 U.S.C. § 78u-4(a) ................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a)(4).........................................................................................................11

Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel,
Law360 (July 16, 2020) ........................................................................................................14

Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation,
Bloomberg Law (July 30, 2020) ...........................................................................................14

iii

DeKalb County Pension Fund ("DeKalb") respectfully submits this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Private Securities Litigation Reform Act of 1995 ("PSLRA"), in support of its motion for the entry of an order: (1) appointing DeKalb as Lead Plaintiff; and (2) approving DeKalb's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel and Scott Simmons Law PC ("Simmons Law") as Liaison Counsel.[1]

## PRELIMINARY STATEMENT

The Action presently pending before this Court are brought on behalf of those who purchased or otherwise acquired Pegasystems Inc. ("PEGA" or the "Company," together with Alan Trefler and Kenneth Stillwell, the "Defendants") common stock between May 29, 2020 and May 9, 2022, inclusive (the "Class Period"), which seek to recover damages caused by Defendants' violations of the Exchange Act.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

With LIFO losses of $171,112.98, DeKalb, to the best of counsel's knowledge, has the largest financial interest in the litigation of any movant. DeKalb also satisfies Rule 23's

---

[1]    Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of Scott A. Simmons in Support of DeKalb County Pension Fund's Motion for: (Appointment as Lead Plaintiff and Approval of Lead and Liaison Counsel filed herewith.

typicality and adequacy requirements. DeKalb's claims are typical of the Class's claims because it suffered losses on its PEGA investment as a result of Defendants' false and misleading statements. Further, DeKalb has no conflict with the Class and will adequately protect the Class's interests given its significant stake in the litigation and its conduct to date in prosecuting the litigation, including its submission of the requisite certification and selection of experienced class counsel. Accordingly, DeKalb is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, DeKalb is entitled to select, subject to the Court's approval, lead and liaison counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). DeKalb has engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.  Likewise, Simmons Law is an appropriate selection to serve as Liaison Counsel.

For the reasons summarized above and those explained more fully below, DeKalb's motion should be granted in its entirety.

## FACTUAL BACKGROUND

PEGA develops customer relationship management ("CRM") software that automates customer interactions across transaction intensive enterprises, providing products to customers across a variety of industries. ¶ 3. The Company is incorporated in Massachusetts, but maintains an office in Sterling, Virginia. ¶ 16. The Company's stock trades on the NASDAQ. ¶ 21.

The CRM software industry is extremely competitive. ¶ 23. In fact, the Company warned in its Annual Report Form 10-K for 2020 (the "2020 Form 10-K") filed on February 17, 2021, and its Annual Report on Form 10-K for 2021 (the "2021 Form 10-K"), filed on February 16, 2021, that the "market for our offerings is intensely competitive, rapidly changing, and highly

2

fragmented" and that "we encounter significant competition" from other technology venders. *Id*.

Those filings also assured investors that the Company developed its products internally,

explaining that the Company's "research and development organization is responsible for

product architecture, core technology development, product testing, and quality assurance." *Id*.

The 10-Ks further stated that the Company maintained a written Code of Conduct

applicable "to our Board of Directors and all our employees, including our principal executive

officer" which provided, among other things, an express commitment: "***Never [to] use illegal or***

***questionable means to acquire a competitor's trade secrets or other confidential information,***

***such as … stealing, seeking confidential information from a new employee who recently***

***worked for a competitor, or misrepresenting your identity in hopes of obtaining confidential***

***information.***" ¶ 24. The 10-Ks directed investors to the Company's website for the full text of

the Code of Conduct, which contained the preceding text. *Id*.

On May 20, 2020, Appian Corporation ("Appian") filed a civil complaint against PEGA

and Youyoung Zou ("Zou") in the Circuit Court of Fairfax County, Virginia (the "Appian

Litigation"), alleging claims for trade secret misappropriation, violation of the Virginia

Computer Crimes Act, tortious interference, and statutory business and common law conspiracy.

¶ 25. The complaint in the Appian Litigation alleged efforts by PEGA to obtain and use Appian

trade secrets through Zou, who worked on a federal program, and was a former Appian

employee. *Id*. The Appian complaint further alleged that PEGA's own employees represented

themselves as potential customers of Appian partners, rather than PEGA employees, to

improperly gain access to Appian software. *Id*.

The complaint alleges that despite the obvious materiality of the Appian Litigation,

including the allegation that PEGA stole Appian's trade secrets and caused it massive damages,

3

PEGA failed to disclose or describe the Appian Litigation for nearly two years in its Forms 10-Q filed during the class period or the 2020 Form 10-K. ¶ 26. For example, the 2020 10-K disclosed under the heading "Legal Proceedings" the generic and boilerplate statement that: "From time to time, we *may* be subject to legal proceedings and civil and regulatory claims that arise *in the ordinary course of our business activities*." *Id*. Similarly, the 2020 10-K contained the generic and boilerplate warnings that the Company "*may be subject to intellectual property rights claims by third parties, which are extremely costly to defend, could require us to pay significant damages and could limit our ability to use certain technologies*." *Id*. None of the Company's preceding Quarterly Reports on Form 10-Q filed during the Class Period contained any disclosure regarding the Appian Litigation. *Id*.

The complaint alleges that PEGA failed to disclose that: (1) PEGA had engaged in corporate espionage and misappropriation of trade secrets to better compete against Appian, a principal competitor; (2) Defendants' product development and associated success was, in significant part, not the result of its own research and product testing but rather the result of such corporate espionage and trade secret theft; (3) Defendants had engaged in a scheme to steal Appian trade secrets, which was not only known to, but carried out through, the personal involvement of the Company's CEO; (4) the Company's CEO and other officers and employees did not comply with the Company's written Code of Conduct, including its express prohibition on "stealing" confidential information from a competitor and "misrepresenting your identity in hopes of obtaining confidential information"; (5) the Company was "unable to reasonably estimate damages" in the Appian Litigation; and (6) as a result of the foregoing, Defendants' statements about PEGA's business, operations, prospects, legal compliance, and potential

4

damages exposure in the Appian Litigation were materially false and/or misleading and/or lacked a reasonable basis when made. ¶ 29.

On February 16, 2022, the Company filed the 2021 10-K. ¶¶ 23, 27. In the 2021 10-K, the Company disclosed and described the Appian Litigation for the first time, which partial disclosure caused a precipitous stock drop ¶ 27. However, the 2021 10-K falsely reassured investors that the claims asserted in the litigation were "without merit" and it had "strong defenses to the claims," the Company faced no exposure in the litigation as "the sales Appian seeks as damages were not the result of alleged misappropriation d use of the alleged trade secrets," and that, even if the Company was found liable, it was "unable to reasonably estimate possible damages." *Id*.

On April 28, 2022, the Company filed its Quarterly Report on Form 10-Q for the first quarter of 2022 (the "2022 Q1 Form 10-Q"). ¶ 28. The 2022 Q1 10-Q continued to falsely reassure investors that the claims in the Appian Litigation were "without merit" and PEGA had "strong defenses to the claims," the Company faced no exposure in the litigation as "any alleged damages claimed by Appian are not supported by the necessary legal standard of proximate cause" and, even if the Company was found liable, it was "unable to reasonably estimate possible damages." *Id*.

The full truth was regarding PEGA's fraudulent conduct was revealed after the close of markets on May 9, 2022, when PEGA filed a Current Report on Form 8-K revealing that the Virginia circuit court jury had awarded Appian more than $2 billion for PEGA's trade secret misappropriation. ¶ 30. The record and evidence presented show PEGA engaged in corporate espionage and trade secret theft to better compete with Appian over an extensive period beginning as early as 2012 and continuing until Appian discovered the misappropriation and

5

filed its lawsuit against PEGA in May 2020. ¶ 31. Documents from the case show that PEGA hired Zou, a former employee of Appian, to provide PEGA copies of Appian's confidential software and documentation in violation of confidentiality restrictions that barred him from sharing Appian's trade secrets. ¶ 32. Appian asserted a claim of approximately $3 billion, seeking all of PEGA's revenues less estimated direct costs from the sale of all PEGA's products and services from the period from the fourth quarter of 2013 through the third quarter of 2021. *Id.* Notably, when testifying under oath, Defendant Alan Trefler ("Trefler"), PEGA's CEO, conceded that he knew all about the improper and illegal tactics, and knew that it was inappropriate for PEGA to have hired Zou, and knew that Zou engaged in unauthorized activities. ¶ 34.

In response to the news of the verdict, PEGA's stock price dropped from $65.93 per share on May 9, 2022, to a close of $52.25 per share on May 10, 2022 - a one-day decline of 21% that wiped out over $1 billion in market capitalization. ¶ 36. As the market continued to digest the verdict, PEGA's stock price dropped another 8% to close at $48.97 per share the following day, representing a two-day decline of 27%. *Id.*

Through the Action, DeKalb seeks to recover for itself and absent class members the substantial losses that were suffered as a result of Defendants' fraud.

## ARGUMENT

### I.    DEKALB IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

#### A.    The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). It provides

6

that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 276-77 (S.D.N.Y. 2007) (same); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008) (describing the PSLRA's process for determining the "most adequate plaintiff"); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009) (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008); *Baughman*, 250 F.R.D. at 125.

B.      **Under the PSLRA, DeKalb Should be Appointed Lead Plaintiff**

As discussed below, DeKalb should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, DeKalb holds the largest financial interest of any movant, and DeKalb otherwise satisfies Rule 23's typicality and adequacy requirements.

1.      **DeKalb Filed a Timely Motion**

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to publish notice within twenty (20) days of its filing. 15 U.S.C. § 78u-4(a)(3)(A)(i). Counsel for first-filed plaintiff City of Fort Lauderdale Police and Firefighters' Retirement System published notice of the lead plaintiff deadline via *Globe Newswire* on May 19, 2022. *See* Ex. A. Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice, *i.e.*, on or before July 18, 2022. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Thus, DeKalb's motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, DeKalb timely signed and submitted the requisite certification, identifying all of its relevant PEGA trades during the Class Period, and detailing DeKalb's suitability to serve as Lead Plaintiff in this case. *See* Ex. B. The PSLRA's procedural requirements have therefore been met**.**

2.      **DeKalb Has the Largest Financial Interest in the Relief Sought by the Class**

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of

8

shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Fuwei*, 247 F.R.D. at 437; *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 616 (S.D.N.Y. 2015); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Baughman*, 250 F.R.D. at 125; *In re GE Sec. Litig.*, No 09 Civ. 1951 (DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009). Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *See, e.g.*, *Baughman*, 250 F.R.D. at 125; *In re GE*, 2009 WL 2259502, at *4; *Fuwei*, 247 F.R.D. at 437; *Topping*, 95 F. Supp. 3d at 616.

Overall, during the Class Period, DeKalb purchased 0 net and 4,245 total PEGA shares, expended $171,112.98 in net funds and suffered losses of $171,112.98 attributable to the fraud. *See* Ex. B. DeKalb is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3.    DeKalb Meets Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When assessing a potential lead plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *In re Cree, Inc., Sec. Litig.*, 219 F.R.D. 369, 372 (M.D.N.C. 2003); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 435 (E.D. Va. 2000); *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331, at *2 (E.D.N.Y. Sept. 29, 2010); *Fuwei*, 247 F.R.D. at 436; *see also Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the

moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

Typicality is established where "a [l]ead [p]laintiff suffer[s] the same injuries as the class as a result of the defendant's conduct and has claims based on the same legal issues." *Johnson v. Pozen, Inc.*, No. 1:07CV599, 2008 WL 474334, at \*2 (M.D.N.C. Feb. 15, 2008) (quoting *Weiss v. York Hosp.*, 745 F.2d 786, 810 n.36 (3d Cir. 1984)).

DeKalb's claims are clearly typical of the Class's claims. DeKalb purchased PEGA common stock during the Class Period, suffered damages as a result of the Company's false and misleading statements, and therefore can assert the Class's claims against Defendants under the federal securities laws. Because the factual and legal bases of DeKalb's claims are similar to those of the Class's claims, DeKalb necessarily satisfies the typicality requirement. *See Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279(CM), 2011 WL 4343802, at \*3 (S.D.N.Y. Sept. 9, 2011) (finding movant typical where "he suffered losses as a result of [the company's] false and misleading statements during the same period as the other movants, plaintiffs, and potential class members, and [] he is alleging violations of the same provisions of the [Exchange Act], against the same defendants as the other parties").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must

consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE*, 2009 WL 2259502, at *5 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel").

As evidenced by the representations in its certification, *see* Ex. B, DeKalb's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See MicroStrategy*, 110 F. Supp. 2d at 435-36; *Kokkinis v. Aegean Marine Petroleum Network Inc.*, No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010, at *2 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *see also Blackmoss*, 252 F.R.D. at 191 (same).

DeKalb has also selected and retained highly competent counsel to litigate the claims on behalf of itself and the Class. As explained below in Section II, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation. *See* Ex. C. Consequently, DeKalb is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, DeKalb respectfully submits that it is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## II.  DEKALB'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL AND SIMMONS LAW AS LIAISON COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. DeKalb has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. c; *see also Reitan v. China Mobile Games & Entm't Grp.*, 68 F. Supp. 3d 390,

401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions. The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases.") (citation omitted). For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., Rudani v. Ideanomics, Inc., et al.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *In re: Revolution Lighting Technologies, Inc. Securities Litigation*, No. 1:19-cv-00980-JPO (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $2,083,333.33 settlement); *Sterrett v. Sonim Techs., Inc.*, No. 3:19-cv-06416-MMC (N.D. Cal.) (where, as sole lead counsel, the firm obtained final approval of $2 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action, obtained final approval of a $13 million global settlement); *Rihn v. Acadia Pharm., Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal. 2018) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $2.925 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the

12

action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 1:13-CV-06704 (AJP) (S.D.N.Y. 2015) (where the Faruqi Firm, as co-lead counsel, secured a $3.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtained a recovery of more than $930 million for the benefit of United Health Group Inc. and negotiated important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency); *In re Tellium Inc. Sec. Litig.*, No. 3:02-cv-5878-FLW-JJH (D.N.J. 2006) (where the Faruqi Firm, as co-lead counsel, recovered a $5.5 million settlement); *In re Olsten Corp. Sec. Litig*., No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); *Ruskin v. TIG Holdings, Inc.*, No. 1:98-cv-01068-LLS (S.D.N.Y. 2002) (where the Faruqi Firm, as co-lead counsel, recovered $3 million for the class); and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., In Re Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv-02369-CBA-PK (S.D.N.Y.) (appointed sole lead counsel for the class); *Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.) (appointed sole lead counsel for the class); *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG) (S.D.N.Y.) (appointed

13

sole lead counsel for the class); *Lowthorp v. Mesa Air Group, Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (appointed as sole lead counsel for the class); *In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (appointed as sole lead counsel for the class); *In re Synergy Pharm., Inc. Sec. Litig.*, No. 1:18-cv-00873-AMD-VMS (E.D.N.Y.) (appointed as co-lead counsel for the class); *In re CV Scis., Inc. Sec. Litig.*, No. 2:18-cv-01602-JAD-BNM (D. Nev.) (appointed as sole lead counsel for the class).

The Faruqi Firm is a minority-owned and woman-owned[2] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[3] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, over 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com /our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

---

[2]    *See* Ex. D (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business).

[3]    *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/ XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

14

Finally, DeKalb's choice of liaison counsel, the Midlothian based law firm Simmons Law, should be approved as well. Simmons Law specializes in business litigation, and its principal, Scott A. Simmons, has substantial business litigation experience.

## CONCLUSION

For the foregoing reasons, DeKalb respectfully requests that the Court: (1) appoint it as Lead Plaintiff; (2) approve its selection of the Faruqi Firm as Lead Counsel for the putative Class; and (3) grant such other relief as the Court may deem just and proper.

DATED:  July 18, 2022

Respectfully submitted,

**SIMMONS LAW**

*/s/ Scott A. Simmons*
Scott A. Simmons (VSB 37744)
Scott Simmons Law PC
116 B Walton Park Lane
Midlothian, VA 23114
Telephone: (804) 486-6128
Facsimile: (804) 486-5000
Email: simmons@scottsimmonslaw.com
*Attorneys for Proposed Lead Plaintiff DeKalb County Pension Fund and Proposed Liaison Counsel for the Class*

Robert W. Killorin (*pro hac vice* forthcoming)
James M. Wilson (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: rkillorin@faruqilaw.com
Email: jwilson@faruqilaw.com

*Attorneys for Proposed Lead Plaintiff DeKalb County Pension Fund and Proposed Lead Counsel for the Class*

15

16