# Exhibit 10

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, DC 20549

## FORM 10-K

**(Mark One)**

☒    **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2021**
**OR**

☐    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**
**Commission File Number: 001-38098**



## APPIAN CORPORATION
**(Exact Name of Registrant as Specified in its Charter)**

| | |
|---|---|
| **Delaware** | **54-1956084** |
| **(State or other jurisdiction of incorporation or organization)** | **(I.R.S. Employer Identification No.)** |
| **7950 Jones Branch Drive** | |
| **McLean, VA** | **22102** |
| **(Address of principal executive offices)** | **(Zip Code)** |

**Registrant's telephone number, including area code: (703) 442-8844**

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading symbol | Name of each exchange on which registered |
|---|---|---|
| Class A Common Stock | APPN | The Nasdaq Stock Market LLC |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☒    No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐    No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒    No ☐

**Item 1B. Unresolved Staff Comments.**

Not applicable.

**Item 2. Properties.**

As of December 31, 2021, our corporate headquarters occupies approximately 240,000 square feet in McLean, Virginia under an operating lease that expires in October 2031. We also lease space in the United Kingdom, Italy, Australia, and Spain under operating lease agreements with various expiration dates through 2026. In addition, we utilize flexible work spaces depending on the occupancy needs in each of the countries we operate in. We believe our facilities are suitable and adequate to meet our needs.

**Item 3. Legal Proceedings.**

*Pegasystems Litigation*

On May 29, 2020, we filed a civil complaint against Pegasystems, Inc. ("Pegasystems"), and Youyong Zou, a Virginia resident, in the Circuit Court for Fairfax County, Virginia, alleging claims for trade secret misappropriation, violation of the Virginia Computer Crimes Act ("VCCA"), tortious interference, and statutory business and common law conspiracy. *Appian Corp. v. Pegasystems Inc. & Youyong Zou*, No. 2020-07216 (Fairfax Cty. Ct.). As alleged in our complaint, the claims arose out of the efforts by Pegasystems to obtain and use our trade secrets through Zou, who worked on a federal program as an employee at Serco, Inc. ("Serco"), and had access to our software and documentation exclusively to work on Serco projects involving the federal government, as well as through Pegasystems' own employees representing themselves as potential customers or Appian partners rather than Pegasystems employees. The conspiracy claims were dismissed on January 13, 2022.

After fact discovery closed in early 2022, on January 31, 2022, the court held a seven-day plea in bar jury trial on Pegasystems' affirmative defense that we did not file our trade secret and VCCA claims within the relevant statute of limitation periods. At the conclusion of trial, the court ruled that, based on the evidence presented, there was no jury question and granted our motion to strike Pegasystems' plea in bar as to our trade secret misappropriation claim. The court granted Pegasystems' plea in bar only with respect to conduct relevant to the VCCA claim that occurred prior to May 29, 2015. As a result of the judge's order, we may proceed to a jury trial on the merits of our claims of trade secret misappropriation, violations of the VCCA after May 29, 2015, and tortious interference. The jury trial on our claims is set to commence on March 21, 2022. If Pegasystems is found liable on any of our claims, we may be entitled to an award of damages. Presently, we are seeking damages for unjust enrichment from Pegasystems over the period of 2012 through 2021, plus attorney's fees, interest, and other forms of monetary relief for Pegasystems' conduct. Litigation by its nature is highly uncertain, and we cannot predict the outcome of the trial. We believe we have a substantial chance of prevailing at trial and, if we did so, we could obtain a substantial award of damages from the jury, although a jury has a high degree of discretion to award an amount it deems just and appropriate. Any judgment in our favor would be subject to appeal, and therefore the timing and actual recovery of a damages award is subject to further uncertainty.

Separately, on July 3, 2019, Pegasystems filed a claim against us and BPM.com, Inc., a market analyst company, in U.S. District Court for the District of Massachusetts alleging, among other things, that we had engaged in false advertising by re-publishing a study by BPM.com comparing us favorably to Pegasystems and by failing to disclose we commissioned the study. *Pegasystems Inc. v. Appian Corp. & Business Process Management Inc.*, No. 1:19-cv-11461 (D. Mass). We have responded to Pegasystems' complaint denying Pegasystems' allegations and making certain affirmative defenses. We believe Pegasystems' claims are without merit, and we are engaged in vigorously defending against them. Our motion to dismiss Pegasystems' complaint was granted in part and denied in part on December 19, 2019. We have also filed counterclaims against Pegasystems for false advertising, alleging numerous marketing and advertising materials used by Pegasystems, including that a report purportedly authored by Jim Sinur, a former industry analyst, were false and/or misleading and, in the case of the Sinur report, Pegasystems failed to disclose that it had commissioned the report. We also made a claim for defamation against Pegasystems based on public statements by Pegasystems' executives. Pegasystems' motions to dismiss our counterclaims have been denied, except with respect to one marketing document.

At this point, no trial date has been scheduled in the Massachusetts case, expert discovery is ongoing, and the parties have not yet filed their motions for summary judgment. Pegasystems is seeking damages in the form of disgorgement of our profits

related to the use of the BPM.com report. We do not believe we obtained any profits as a result of the BPM.com report. On our false advertising and defamation claims, we are seeking damages for both our own lost profits and disgorgement of Pegasystems' profits as measures of damages. Our claims for damages in this case exceed those of Pegasystems. Given the case is still in its preliminary stages and the inherent uncertainty of litigation, we are unable to assess the likelihood we will succeed in defending against Pegasystems' claims or prevailing on our own counterclaims or, further, the amount of damages either party might obtain if it receives a judgment in its favor. If we prevail on our counterclaims, and Pegasystems does not prevail on its claims, or we receive an award of damages in excess of the amount awarded to Pegasystems, Pegasystems could be liable to us for damages. Similarly, if Pegasystems prevails on its claims, and we do not prevail on our counterclaims, or we do not receive a substantial award of damages for our own counterclaims, we could be liable for damages to Pegasystems. Because the Massachusetts case is in an earlier stage, the Virginia case is likely to reach final judgment before the Massachusetts case.

### *Other Matters*

From time to time, we may become involved in legal proceedings or be subject to claims arising in the ordinary course of our business. Other than as disclosed elsewhere in this Annual Report, we are not presently a party to any legal proceedings that, if determined adversely to us, would individually or taken together have a material adverse effect on our business, operating results, financial condition, or cash flows. Regardless of the outcome, litigation can have an adverse impact on us because of defense and settlement costs, diversion of management time and resources, and other factors.

**Item 4. Mine Safety Disclosures.**

Not applicable.

45

**SIGNATURE**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

APPIAN CORPORATION

February 17, 2022                                By:    /s/ Matthew Calkins

Name: Matthew Calkins
Title: Chief Executive Officer and Chairman of the Board
(Principal Executive Officer)

KNOW ALL PERSONS BY THESE PRESENTS, that each person whose signature appears below hereby constitutes and appoints Matthew Calkins, Mark Lynch, and Christopher Winters, and each of them acting individually, as his or her true and lawful attorneys-in-fact and agents, with full power of each to act alone, with full powers of substitution and resubstitution, for him or her and in his or her name, place, and stead, in any and all capacities, to sign any and all amendments to this Annual Report on Form 10-K with all exhibits thereto and all documents in connection therewith, with the Securities and Exchange Commission, granting unto said attorneys-in-fact and agents, with full power of each to act alone, full power and authority to do and perform each and every act and thing requisite and necessary to be done in connection therewith, as fully for all intents and purposes as he or she might or could do in person, hereby ratifying and confirming all that said attorneys-in-fact and agents, or his, her or their substitutes, may lawfully do or cause to be done by virtue hereof.

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /s/ Matthew Calkins<br>**Matthew Calkins** | Chief Executive Officer and<br>Chairman of the Board<br>*(Principal Executive Officer)* | February 17, 2022 |
| /s/ Mark Lynch<br>**Mark Lynch** | Chief Financial Officer<br>*(Principal Financial Officer)* | February 17, 2022 |
| /s/ Mark Matheos<br>**Mark Matheos** | Chief Accounting Officer<br>*(Principal Accounting Officer)* | February 17, 2022 |
| /s/ Robert C. Kramer<br>**Robert C. Kramer** | General Manager and Director | February 17, 2022 |
| /s/ A.G.W. "Jack" Biddle, III<br>**A.G.W. "Jack" Biddle, III** | Director | February 17, 2022 |
| /s/ Prashanth "PV" Boccassam<br>**Prashanth "PV" Boccassam** | Director | February 17, 2022 |
| /s/ Michael G. Devine<br>**Michael G. Devine** | Director | February 17, 2022 |
| /s/ Barbara "Bobbie" Kilberg<br>**Barbara "Bobbie" Kilberg** | Director | February 17, 2022 |
| /s/ Michael J. Mulligan<br>**Michael J. Mulligan** | Director | February 17, 2022 |