# Exhibit 23

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | |
|---|---|
| APPIAN CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 2020-07216 |
| | ) |
| PEGASYSTEMS INC. & YOUYONG ZOU, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANT PEGASYSTEMS INC.'S
## <u>MOTION TO SET ASIDE THE VERDICT</u>

Pegasystems Inc. ("Pega"), for the reasons stated in its memorandum of law filed

simultaneously herewith, moves to set aside the May 9, 2022 jury verdict, for judgment as a

matter of law in Pega's favor, or, in the alternative, for a new trial or remittitur.

Dated: June 8, 2022                    Respectfully submitted,

                                       PEGASYSTEMS INC.


                                       By:_____
                                              Counsel

Robert S. Frank, Jr.                   Douglas R. Kay, VSB No. 35468
Adam Bookbinder                        OFFIT KURMAN, P.C.
Anita M.C. Spieth                      8000 Towers Crescent Drive, Suite 1500
CHOATE, HALL & STEWART LLP             Tysons Corner, Virginia 22182
Two International Place                Telephone: 703.745.1800
Boston, MA 02110                       Facsimile 703.745.1835
t 617-248-4031                         dkay@offitkurman.com
f 617-502-4031
rsf@choate.com                         Monica T. Monday (VSB No. 33461)
abookbinder@choate.com                 Michael J. Finney (VSB No. 78484)
aspieth@choate.com                     GENTRY LOCKE
                                       900 SunTrust Plaza

*Counsel for Defendant Pegasystems Inc.*
*Admitted Pro Hac Vice*

P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9300
Facsimile: (540) 983-9400
monday@gentrylocke.com
finney@gentrylocke.com

*Counsel for Defendant Pegasystems Inc.*

- 1 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2022, a true copy of the foregoing was delivered to counsel of record for the parties by electronic mail pursuant to the parties' agreement.

*Counsel for Plaintiff Appian Corporation:*

Ellen D. Marcus
Sheila M. Costin
HOLMES COSTIN & MARCUS PLLC
301 N. Fairfax Street, Suite 202
Alexandria, VA 22314
emarcus@hcmlawva.com
scostin@hcmlawva.com

John M. McNichols
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
jmcnichols@wc.com

Adeel A. Mangi
Jeffrey S. Ginsberg
Muhammad U. Faridi
Abhishek Bapna
Matthew B. Weiss
Margaret O'Neil
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
aamangi@pbwt.com
jginsberg@pbwt.com
mfaridi@pbwt.com
abapna@pbwt.com
mweiss@pbwt.com
moneil@pbwt.com

*Counsel for Defendant Youyong Zou:*

Wayne G. Travell, VSB No. 22400
HIRSCHLER FLEISCHER, P.C.
8270 Greensboro Drive, Suite 700
Tysons, VA 22102
Telephone: 703-584-8903
Facsimile 703-584-8901
wtravell@hirschlerlaw.com

Counsel for Pegasystems Inc.

- 2 -

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

|  |  |  |
|---|---|---|
| APPIAN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2020-07216 |
| | ) | |
| PEGASYSTEMS INC. & YOUYONG ZOU, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT PEGASYSTEMS INC.'S MOTION TO SET ASIDE THE VERDICT[1]

---

[1] On May 26, 2022, Pegasystems filed a Motion for Judicial Investigation of Juror Misconduct and to Set Aside the Verdict. *See* Ex. Y. That motion was 3.5 pages in length and Pega has counted those pages toward its 25-page post-trial motion limit.

Pegasystems Inc. ("Pega") moves to set aside the May 9, 2022 jury verdict, for judgment as a matter of law in Pega's favor, or, in the alternative, for a new trial or remittitur.

## I.  Legal Standard

A motion to set aside the verdict is a proper vehicle to challenge jury instructions, evidentiary rulings, and the sufficiency of the evidence. *Sampson v. Sampson*, 221 Va. 896, 902 (1981); *Smith v. Combined Ins. Co.*, 202 Va. 758, 762 (1961); *Gabbard v. Knight*, 202 Va. 40, 43 (1960). A trial court may set aside a verdict when it is plainly wrong or unsupported by credible evidence. Code § 8.01-430. The trial court may also enter final judgment against a plaintiff where there is insufficient evidence to support its claims. *Id.*

## II.  The Court's Burden-Shifting Rulings Were Erroneous as a Matter of Law

At Appian's urging—and over Pega's strong objection—the Court shifted the burden to Pega to *dis*prove causation and damages for Appian's VUTSA claim. This ruling underlies Pega's previous motions to strike and it resulted in legally erroneous jury instructions. And, as Appian's counsel repeatedly told the jury, it relieved Appian of any and all responsibility to show that the alleged misappropriation proximately caused the claimed damages. That was legal error. Under VUTSA, the plaintiff at all times bears the burden of proving that a defendant's sales were proximately caused by the misappropriation and then identifying the portion of those sales directly attributable to misappropriation of its trade secrets. *Infra* § II.A. Even if burden-shifting were appropriate, the plaintiff must still demonstrate a causal connection between the defendant's misappropriation of particular trade secrets and particular sales before the burden shifts to the defendant to identify the portion of its sales *not* attributable to the trade secrets at issue. *Infra* § II.B. These errors caused severe prejudice and require a new trial under the proper framework. *Infra* § II.C.

1

A.    **Burden-Shifting Is Not Permitted Under VUTSA**

Under VUTSA, courts uniformly place the burden on the plaintiff to demonstrate causation and amount of damages. *E.g.*, *Banks v. Mario Indus.*, 274 Va. 438, 447, 455 (2007) (burden of proving lost profits caused by misappropriation); *Advanced Sys. Eng'g Corp. v. Intuitive IT LLC ("Advanced")*, 96 Va. Cir. 245, 251-54 (Fairfax 2017) (burden for causation and VUTSA damages, including unjust enrichment); *Kancor Americas, Inc. v. ATC Ingredients, Inc.*, 2016 U.S. Dist. LEXIS 23325, at *53 (E.D. Va. Feb. 25, 2016) (VUTSA complainant had "not offered any evidence showing that any damages" were caused by alleged misappropriation).

Pega's proposed burden, causation, damages, and VUTSA finding instructions, which the Court rejected, followed this approach, requiring Appian to prove causation and amount of damages attributable to misappropriation of its trade secrets. Ex. A (Pega Instructions B, K, L); Ex. B (Pega Supp. Instructions J-1, K-1); Ex. C (T. 5301:15-5314:19, 5357:22-5363:2, 5373:6-5377:4). That approach is dictated by VUTSA's plain language and controlling case law. The Court erred by rejecting Pega's proposed instructions and adopting instructions that relieved Appian of its statutory burden. *E.g.*, Ex. F (Final Instructions 12, 14).

**1.** "When the language of a statute is plain and unambiguous, [courts] are bound by the plain meaning of that statutory language." *Jones v. Commonwealth*, 296 Va. 412, 415 (2018) (quotation omitted). In short, a court "must presume that the General Assembly chose, with care, the words that appear in a statute, and must apply the statute in a manner faithful to that choice." *Id*. (quotation omitted); *see also Board of Supervisors of Fairfax Cty. v. Cohn*, 296 Va. 465, 472 (2018) ("Every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary.") (quotation omitted). A court may not "construe the plain language of a statute in a way that adds a requirement that the General Assembly did not expressly include." *David v. David*, 287 Va. 231, 240 (2014) (citation omitted).

2

The text of VUTSA places the burden squarely on the "complainant" to prove unjust enrichment damages caused by misappropriation. Section 59.1-338, titled "Damages," states:

Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. *If a complainant is unable to prove a greater amount of damages by other methods of measurement*, the damages caused by misappropriation can be measured exclusively by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

Code § 59.1-338(A) (emphasis added).

The first sentence permits recovery of two forms of damages—"actual loss" and "unjust enrichment"—provided they are "caused by misappropriation." The second sentence then authorizes a different measure—a "reasonable royalty"—if and only if the "*complainant is unable to prove* a greater amount of damages by *other methods of measurement*," *i.e.*, actual loss or unjust enrichment. Section 59.1-338 thus unambiguously places the burden of demonstrating causation and damages for unjust enrichment "on the complainant." Burden-shifting is foreclosed by VUTSA's plain language.

The critical language—"[i]f a complainant is unable to prove"—is unique to Virginia, and its inclusion in the statute was deliberate. When the Uniform Trade Secrets Act was amended in 1985, a sentence was added to the damages provision: "In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret." *See* Ex. D at 10. The following year, the General Assembly passed VUTSA, and it rejected the Uniform Act's "in lieu of damages measured by any other methods" clause, thereby expressly specifying that the burden of proof rests with the complainant. Indeed, Virginia is the only state whose trade secrets statute includes the "[i]f a complainant is unable to prove" language. As this Court has properly recognized, it "can't rewrite the [VUTSA]." Ex. C (T. 5366:7). It must "presume that the

General Assembly chose" VUTSA's language "with care," *Jones*, 296 Va. at 415, and must give it "effect," *Cohn*, 296 Va. at 472. And this principle is even more salient when it comes to the General Assembly's departure from a "Uniform Act," a signal of "clear legislative intent." *Commonwealth, Dep't of Taxation v. Champion Intern. Corp.*, 220 Va. 981, 998 (1980).

The burden-shifting approach is also directly at odds with the principle that a court may not "add[] a requirement that the General Assembly did not expressly include in the statute." *David*, 287 Va. at 240. The Supreme Court has applied this very principle to VUTSA. In holding that the burden does not shift with respect to the misappropriation element, the court emphasized that "[t]he plain language of the [VUTSA] does not provide any burden-shifting requirement." *MicroStrategy v. Li*, 268 Va. 249, 265 (2004). And in *David*, a case about marital property, the Supreme Court reversed the Court of Appeals' decision to "add a requirement to the non-owning spouse's burden not stated in" the relevant statute. *David*, 287 Va. at 240. The General Assembly knows how to impose burden-shifting when it wishes to, *e.g.*, Code § 20-107.3 (allocating burdens between owner and non-owner spouses in classifying marital property), and it did not do so here. There was no basis for this Court to read any such framework into the statute.

**2.** Appian's burden-shifting approach also is inconsistent with foundational Virginia authority on damages. "To recover damages in *any* case, a *plaintiff must prove* with reasonable certainty the amount of his damages *and the cause from which they resulted*." *Hale v. Fawcett*, 214 Va. 583, 585 (1974) (emphasis added). "Where there is evidence of damage from several causes, as to a portion of which a defendant cannot be held liable, *the burden is on a plaintiff*" to show "the share of damages for which a defendant is responsible." *Id.* at 586 (emphasis added) (citations omitted).

*Saks Fifth Ave., Inc. v. James, Ltd*, 272 Va. 177 (2006) clearly articulates these fundamental

4

principles. There, the Supreme Court held that "[a] plaintiff … must prove two primary factors relating to damages. First, *a plaintiff must show* a causal connection between the defendant's wrongful conduct and the damages asserted. Second, *a plaintiff must prove* the amount of those damages by using a proper method and factual foundation for calculating damages." *Id.* at 189 (emphases added) (citations omitted). Indeed, the Supreme Court has applied these principles to a trade secrets claim involving lost profits. In *Banks*, the Court held that the plaintiff "had the burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery." 274 Va. at 455 (quoting *Saks*, 272 Va. at 188). The plaintiff "must show a causal connection between the defendant[s'] wrongful conduct and the damages asserted." *Id.* (quoting *Saks*, 272 Va. at 188-89). *Advanced* relied on the same rule in striking a trade secrets claim, including an unjust enrichment theory. 96 Va. Cir. at 251-54. And the leading treatise by Kent Sinclair confirms the rule. *See* Ex. E (1 Virginia Remedies § 29-3 (2021)) (citing *Banks* and *Saks*; explaining that under VUTSA the plaintiff must "demonstrate a causal connection" and "establish the amount of damages by using a proper method and factual foundation" (quotation omitted)). None of this authority so much as hints at a burden-shifting framework that would excuse a plaintiff from demonstrating that its claimed damages were proximately caused by misappropriation of a trade secret.

**3.** Appian offered no basis in statutory text or controlling case law to relieve it of its burden of demonstrating damages, pointing only to inapposite case law from other jurisdictions applying different statutory language. Needless to say, this does not justify ignoring controlling authority.

At trial, Appian also argued that burden-shifting was necessary because it may be hard for trade secret complainants to prove damages. But VUTSA addresses this very concern: It allows for reasonable royalty damages where a complainant cannot establish damage by "other methods

of measurement." *See* Ex. E (1 Virginia Remedies § 29-3 (2021)) (recognizing that, although "a plaintiff may not be able to calculate the amount by which a defendant has been unjustly enriched," the plaintiff instead can show a reasonable royalty). Appian could have properly sought a reasonable royalty, as § 59.1-338 contemplates, but "g[ave] up its opportunity" to do so. Ex. C (T. 3783:1-3796:12).

In any event, contrary to Appian's policy suggestion, the allocation of burdens evinced by § 59.1-338's plain text is grounded in sound damages principles. Requiring the plaintiff to provide evidence of the amount of claimed damages actually attributable to an allegedly misappropriated trade secret narrows the range of possible damages for the jury, preventing the plaintiff from prejudicing the jury with astronomical numbers. Relatedly, requiring the plaintiff to provide a factual foundation for its claimed damages mitigates the risk that a jury will impose damages for improper reasons—for example, as punishment in spite of VUTSA's $350,000 cap on punitive damages, Code § 59.1-338, or because the jury thinks the defendant's CEO "could afford" it. Ex. Y (Defs.' Juror Misconduct Mot. (May 26, 2022)) at 2; *infra* § V. And allocating to plaintiffs the burden of demonstrating causation and performing apportionment makes good sense in a modern world in which a trade secret may be one part of a complex product. This approach properly requires plaintiffs to precisely define their claimed trade secrets and articulate the contributions of those secrets in commercial context—obligations Appian dodged at every turn, as explained below. *Infra* §§ III, IV.

Under VUTSA, the burden was at all times on Appian to prove that its claimed damages were caused by misappropriation of its trade secrets and to isolate the value of any gains attributable to those trade secrets. The Court erred in rejecting Pega's proposed jury instructions and adopting jury instructions and a legal standard that relieved Appian of its burden.

**B.      Even If Burden-Shifting Applied, the Jury Instructions Were Still Incorrect**

Even under a burden-shifting approach, the Court's instructions were erroneous as a matter of law. Where burden-shifting is permissible, the proper approach is to require the plaintiff to provide evidence of sales attributable to misappropriation of particular trade secrets. Then the burden shifts to the defendant to demonstrate the portion of its revenues that are *not* attributable to the particular trade secrets—that is, to distinguish between enrichment that is just and that is unjust. It may do so by demonstrating the value of its own contributions and by deducting its costs.

But Instruction 14 did not follow this procedure. Ex. F (Final Instruction 14). It lifted the following two sentences from Comment f to the Restatement (Third) of Unfair Competition, § 45:

> For unjust enrichment, Appian is entitled to recover Pegasystems' net profits. Appian has the burden of establishing by greater weight of the evidence Pegasystems' sales; Pegasystems has the burden of establishing by greater weight of the evidence any portion of the sales not attributable to the trade secret or trade secrets and any expenses to be deducted in determining net profits.

This statement of the law was incomplete, incorrect, and extraordinarily prejudicial. It failed to require Appian to show *any* causal connection between Pega's sales and alleged misappropriation before shifting the burden to Pega. Instead, the instruction required Appian to show only "Pegasystems' sales," untethered to misappropriated trade secrets. In essence, the instruction communicated to the jury that every dollar of every sale Pega made was *presumed* to be attributable to allegedly appropriated trade secrets, unless Pega disproved that attribution by a preponderance of the evidence.

While maintaining its objection to burden-shifting, Pega offered Instruction GG, which stated that "Appian has the initial burden of proving, with reasonable certainty, the amount of Pega's sales proximately caused by each allegedly misappropriated trade secret." Ex. B (Pega Supp. Instruction GG). Ample authority supports this approach, including actual jury instructions in courts that have adopted Restatement burden-shifting. *See, e.g.*, *Alifax Holding SpA v. Alcor*

7

*Sci. Inc.*, 404 F. Supp. 3d 552, 574-75 n.28 (D.R.I. 2019) (after observing that "[n]othing in the Restatement's framework relieved Alifax [the plaintiff] from its obligation to prove causation in the first instance," the instructions stated that "Alifax must prove by a preponderance of the evidence Alcor's *gross sales attributable to its misappropriation of the computer code trade secret*"); *ADA Motors, Inc. v. Butler*, 432 P.3d 445, 451 (Wash. App. 2018) ("Without the phrase 'sales attributable to the trade secret,' jury instruction 7 can be read to allow the plaintiff to satisfy its burden with gross sales data, whether or not the sales are attributable to the trade secret.").

During the initial charge conference, however, the Court rejected Instruction GG and adopted Appian's Instruction 14 (with some modifications). Ex. C (T. 5336:17-5341:9). Pega again raised this issue at the final charge conference, asking the Court to add "caused by misappropriation" to Instruction 14 after "net profits," or after "Pegasystems' sales." Appian convinced the Court not to change Instruction 14. *Id.* at 7901:2-7918:18.[2]

The resulting instruction conflicted with the cases cited above and the rule stated in § 45 itself. That section states that "[w]hether an award of monetary relief is appropriate and the appropriate method of measuring such relief depend[s]" in part on "the degree of certainty with which *the plaintiff has established* the fact and extent of … the actor's pecuniary gain *resulting from the appropriation*" (emphasis added); *see also* Rest. (Third) of Unfair Competition § 45 cmt. b ("The Plaintiff bears the burden of proving the fact and cause of any loss for which recovery is sought."). The failure to tether "net profits" or "gross sales" to any misappropriated trade secret rendered the jury instruction a true outlier that authorized an outlier award.

---

[2] Appian did so despite having acknowledged the requirement that it show proximate cause. Ex. G (3/3/22 T. at 85:1) (hearing on motion to exclude expert testimony: "Our burden is to show proximate causation."); *id*. at 85:8-9 ("We satisfy our burden by showing proximate causation.").

8

### C. The Court's Burden-Shifting Ruling Caused Significant Prejudice

Both of the above errors were severely prejudicial, both because Appian emphasized the absence of its burden repeatedly to the jury and because Appian's evidence of both causation and amount of damages was exceedingly weak. Without any requirement that it identify claimed damages attributable to misappropriation of trade secrets, Appian simply placed an enormous sales number before the jury. During closing, Appian repeatedly told the jury that was enough:

- "We just got to show all the money that flowed in, the 6 billion plus from their customers, right? That's what we have to show." Ex. C (T. 8361:8-11);
- "We've just got to show the sales that they made." *Id.* at 8150:17-18;
- "Remember now, again, the burden's on them." *Id.* at 8158:10-11;
- "[I]t's their burden to show you any sales they made were innocent." *Id.* at 8162:19-21;
- "If they wanted to argue that there were sales that are innocent, untainted by the trade secret that happened because of some other feature, they had to prove that to you. It's right there in the jury instruction." *Id.* at 8362:22-8363:4.

A properly instructed jury would not have awarded Appian the over $2 billion award in this case. As explained below, Appian did not even attempt to carry its burden under § 59.1-338 of demonstrating the portion of sales revenue attributable to its claimed trade secrets. It offered no credible evidence that any sale was caused by misappropriation at all. At a minimum, the verdict should be set aside and a new trial ordered.

### III. Appian Failed to Prove with Reasonable Certainty Any Damages "Caused by Misappropriation" Under VUTSA

Because VUTSA precludes burden-shifting, Appian was required to show a causal link between claimed damages and misappropriation, and to demonstrate the amount of damages attributable to its claimed trade secrets. Appian never came close to satisfying this requirement, and indeed did not try. And even with burden-shifting, its evidence was simply insufficient.

Sufficiency aside, the Court should have also granted Pega's motion to strike damages expert James Malackowski's testimony. Malackowski admitted that his opinions were not based

on principles of proximate or "but for" causation. Ex. C (T. 3325:8-3326:7, 3332:12-20, 3488:13-3489:12, 3519:2-19). His calculations also lacked a proper factual foundation and were based on a flawed methodology.

Whether on grounds of insufficient evidence or legally deficient expert testimony, Pega is entitled to judgment as a matter of law on the VUTSA claim.

### A. Appian's Experts Did Not Causally Connect the Actual Use of Misappropriated Trade Secrets to Pega's Sales

Appian's experts offered no evidence tying any particular misappropriation of trade secrets to any Pega sale, contract, or customer. As explained above, this was the absolute minimum Appian had to show, whether under VUTSA, *supra* § II.A, or even under § 45 of the Restatement unmodified by VUTSA, *supra* § II.B. Absent such proof, the jury could not find that Pega's sales were attributable to any wrongdoing. *See Banks,* 274 Va. at 455 (requiring proof that plaintiff would have won contracts but for the defendant's wrongdoing); *Advanced*, 96 Va. Cir. at 251-52 (granting motion to strike VUTSA claim where "no potential misappropriation was ever causally linked, through any credible evidence, with a lost bid, a damaged client relationship, a lost contract or any other evidence of damages").

Appian's damages expert, Malackowski, offered no causation opinion of his own. For his "product improvement" theory, his $3.033 billion calculation encompassed *all of Pega's sales* over an eight-year period without identifying a single sale made because of any misappropriated product change. Ex. C (T. 3322:6-3323:10). Malackowski impermissibly attributed all of Pega's profits to the misappropriation, dismissing as irrelevant that customers buy software for "a lot of reasons," including "price, sales relationships, and the like." *Id.* at 3323:4-5; *see also id.* at 3462:1-3463:10, 3519:6-15.

For his "marketing and sales" theory, Malackowski assumed without factual support that

10

remitted.[5]

## CONCLUSION

For these reasons, Pega respectfully requests that the Court grant this Motion to set aside

the verdict and enter judgment in Pega's favor, or, in the alternative, award a new trial or remit the

damages award.

Dated: June 8, 2022                                Respectfully submitted,


                                                   PEGASYSTEMS INC.



                                                   By:_____
                                                   Counsel

Robert S. Frank, Jr.                               Douglas R. Kay, VSB No. 35468
Adam Bookbinder                                    OFFIT KURMAN, P.C.
Anita M.C. Spieth                                  8000 Towers Crescent Drive, Suite 1500
CHOATE, HALL & STEWART LLP                         Tysons Corner, Virginia 22182
Two International Place                             Telephone: (703) 745-1800
Boston, MA 02110                                   Facsimile: (703) 745-1835
Telephone: (617) 248-4031                          dkay@offitkurman.com
Facsimile: (617) 502-4031
rsf@choate.com                                     Monica T. Monday (VSB No. 33461)
abookbinder@choate.com                             Michael J. Finney (VSB No. 78484)
aspieth@choate.com                                 GENTRY LOCKE
                                                   900 SunTrust Plaza
*Counsel for Defendant Pegasystems Inc.*           P.O. Box 40013
*Admitted Pro Hac Vice*                            Roanoke, VA 24022-0013
                                                   Telephone: (540) 983-9300
                                                   Facsimile: (540) 983-9400
                                                   monday@gentrylocke.com
                                                   finney@gentrylocke.com

                                                   *Counsel for Defendant Pegasystems Inc.*

---

[5] If the Court does not remit the full amount of Appian's product improvement claim, this same analysis would apply to the product improvement claim and would support a remittitur of at least $576,373,045 ($2,036,860,045 – ($1,077,772 + $382,759,500)).

22