# Exhibit 25

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| PEGASYSTEMS INC., | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No.: 19-cv-11461 |
| v. | ) ) ) | **LEAVE TO FILE GRANTED ON DECEMBER 3, 2019 (DKT. 54)** |
| APPIAN CORPORATION and BUSINESS PROCESS MANAGEMENT, INC., | ) ) ) | |
| Defendants. | ) ) | |

## FIRST AMENDED COMPLAINT

1.      This is a civil action brought by Pegasystems Inc. seeking equitable relief and damages for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(b); violations of the Mass. Gen. L. c. 93A; common law unfair competition; and commercial disparagement. This complaint stems from a marketing document published by defendant Business Process Management, Inc., which does business as "BPM.com," but paid for and further distributed by, and likely reviewed before release, edited, and/or partially written by, defendant Appian Corporation. The document masquerades as an independent "market report," but its true purpose is to promote the business of Appian, which paid BPM.com to create the report and which is connected to BPM.com through several significant commercial and personnel relationships. The document contains false and misleading information about the cost and quality of Pegasystems' products and services, and it fails to disclose the material connections between BPM.com and Appian, including the payment and other assistance given by Appian to BPM.com to draft the Report.

B5054038.3

**THE PARTIES**

2.      Plaintiff Pegasystems Inc. ("Pegasystems") is a publicly-held corporation that develops, markets, licenses and supports software applications for marketing, sales, customer service, and operations.  Pegasystems' products include software for business process management. Pegasystems is incorporated in Massachusetts and maintains its headquarters in Cambridge, Massachusetts.

3.      Defendant Appian Corporation ("Appian") is a publicly-held corporation that also develops business process management products.  Appian is a direct competitor with Pegasystems. Appian is incorporated in Delaware, and maintains its headquarters in Reston, Virginia.

4.      Defendant Business Process Management, Inc. ("BPM.com") operates a website at www.bpm.com that offers news and information related to business process management software. The BPM.com website states that BPM.com is headquartered in Cohasset, MA, which Plaintiff therefore alleges on information and belief.

5.      Defendants Appian and BPM.com have material relationships with each other. Appian commissioned and paid BPM.com to create the Report.  Appian also purchases paid advertising on the BPM.com website to promote products that compete with Pegasystems. In addition, BPM.com's editor-in-chief is employed by an Appian business partner, and Appian promotes that editor-in-chief's work for the business partner on its website. These material relationships, which were not disclosed by BPM.com or Appian in connection with the advertising and marketing claims at issue in this case, are described further below.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 because this matter involves violations of the Lanham Act. This court

B5054038.3

## BPM.COM'S FALSE AND MISLEADING MARKET REPORT

18.     On or about May 16, 2019, BPM.com published a document entitled "Market Report: Analysis of Process Automation Investments and Total Cost of Ownership (TCO)" (the "Report"). **Exhibit A**.

19.     The Report states that it is the result of BPM.com's "market research on end-user organization investment strategies and experiences with Business Process Management (BPM) software platforms;" and that its purpose was to "understand how automation software is being used to improve and automate mission-critical processes, and how these results correlate to economic advantages."

20.     In fact, the Report was commissioned and paid for by Appian – a fact that was never disclosed by either BPM or Appian, either in the Report itself or in communications disseminated about the Report.  The actual purpose of BPM in creating the Report was to earn a commission fee from Appian by creating a piece of Appian marketing collateral.  BPM's stated purpose for conducting the Report was false.

21.     BPM.com's methodology in creating the report was unscientific and unreliable. The "Methodology" section of the Report states that BPM.com sent out surveys to an undisclosed number of customers, selected according to undisclosed criteria. BPM.com purportedly received approximately 500 responses. BPM.com then purportedly "eliminated" an undisclosed amount of "non-compliant entries" according to largely undisclosed criteria. The Report claims that after eliminating non-compliant entries, the data that was left represented only 104 projects. Only 38% of those 104 projects (i.e., 39 or 40 projects) concerned the three companies who were the focus of the report (Pegasystems, Appian and IBM). The Report did not disclose the size or character of the projects about which the survey respondents were reporting, or the number of reports related to each project.

22. Only 10% of the 104 projects used for the Report, or approximately 10 total, concern Pegasystems. In other words, out of the thousands of projects created and implemented using Pegasystems products and services, BPM.com hand-selected only 10 projects of an undisclosed character and size.

23. Responses related to Appian make up 17% of the 104 projects, or approximately 18 total. This sample size, though still woefully inadequate for the putative purpose of the report, was nearly twice that of the Pegasystems sample size used. Moreover, for any given analysis within the Report, missing data for some variables would make the useful sample sizes for both Pegasystems and Appian even smaller.

24. BPM manipulated its selection of responses and projects in order to create a sample favorable to Appian and detrimental to Pegasystems.

25. Although it is possible to infer BPM.com's shoddy methodology and tiny sample size from the discussion at the beginning of the document, the Report goes on to report its findings with no additional disclosures, as if they were reliable "averages" of "critical measures." The lack of reliable methodology and inadequate sample size are neither clearly nor conspicuously disclosed by the Report in a manner such as to sufficiently explain the false and misleading statements in the remainder of the report, as alleged below. Nor are any descriptive statistics about the measured projects provided that would reveal whether BPM.com's comparisons are legitimate or are apples-to-oranges.

26. Page 6 of the Report purports to contain an analysis of the "Total Cost of Ownership (TCO) related to intelligent process automation initiatives and associated platforms." The Report concludes that "organizations that run on Pega have spent the most – approximately 2.5 times more than the average, at $46 million … Appian customers have reported the lowest total upfront costs on average, at $4 million." This section of the Report, including the foregoing

statements, the claimed averages, and the relative comparison of the two companies' averages, is false and misleading.

27.     Included in the "TCO" section was a table that claimed to show "Total Cost of Ownership Calculated by Average Investment in BPM Software and Related Services." The figures reported in the table include the purported average "License Cost & Vendor Professional Services," which were reported as $13,000,000 for Pegasystems and only $1,345,000 for Appian; and the average additional personnel costs, which were reported as $32,714,286 for Pegasystems and only $2,925,000 for Appian. The averages reported in the table are false and misleading.  The reported differences in TCO would be easily explained if, as is likely the case, the few hand-picked Pegasystems projects included in the study were larger than those chosen for Appian.

28.     The "TCO" section of the Report also purported to contain a "Summary of Program Project Metrics Across Vendor Customers." These metrics included the percentage of customers who reached positive ROI in 2 years, and total development time. The Report stated that only 28% of Pegasystems' customers reached positive ROI in 2 years, compared to 57% for Appian. The Report also stated that the average "total development time in weeks" was 199 for Pegasystems, and only 45 for Appian. These statements, and the numbers on the metrics table that purport to be reliable averages, are false and misleading for the same reasons.  Among other reasons, the number, size, and characteristics of projects sampled for each vendor is not disclosed.  By publishing the comparison and drawing overall conclusions about the vendors, however, BPM.com falsely and misleadingly implies that the sample sizes were adequate, the characteristics of the compared studies were matched or controlled for, and that the study was otherwise valid.

7

29.     Page 7 of the Report discusses the number of "FTEs" (or "full time equivalent" employees) who were dedicated to each software project. This section includes a table purporting to show the "Average Development Team Composition Across Vendor Customers," and concluded that "[o]verall, firms running on Appian required far fewer total FTEs than competitors … just over one fifth the required FTEs cited by IBM and Pega customers. In addition, those using IBM or Pega cited requiring an average of 4-6 times more outside consultants than using Appian." This section of the Report, including the foregoing statements, the claimed averages, and the relative comparison of the two companies' averages, is false and misleading for the same reasons as set forth above.

30.     Page 8 of the Report discusses the "Time to Market/Speed of Application Delivery." This section includes a table that purports to show the "Average Number of Weeks for Implementation Across All Three [L]eading Vendor Customers." The section and table report that the average total number of weeks for Pegasystems is 83, compared with 17 for Appian. From these numbers, the Report concludes that Appian implementation is on average "3-5 times faster" than Pegasystems implementation. This section of the Report, including the foregoing statements, the claimed averages, and the relative comparison of the two companies' averages, is false and misleading for the same reasons as set forth above.

31.     The final page of the Report is a "summary of our key findings yielded by this research." Among these key finds were that those "running Appian demonstrated a clear advantage on Total Cost of Ownership (TCO) … over Pega," and that "Pega customers reported spending on average 11 times more than Appian customers." The Report concluded that "it takes on average of 4 years to deliver a project on Pega… and less than one year with Appian. Overall, Appian was distinguished as the clear leader for lower TCO."  The Report also found that "Pega customers required about 5 times more FTEs on average than Appian customers (who cited the

8

B5054038.3

lowest TCO)." This section of the Report, including the foregoing statements, the claimed averages, and the relative comparison of the two companies' averages, is false and misleading for the reasons set forth above.

**APPIAN DISTRIBUTES THE REPORT AND MAKES ADDITIONAL FALSE CLAIMS**

32.     After the Report was published by BPM.com, Appian began distributing it as part of its marketing and advertising materials, including on its website.

33.     Appian created a web page at https://www.appian.com/resources/bpm-com-market-report-total-cost-of-ownership-tco/ to promote the Report. A printout of this web page is attached as **Exhibit B**. The page was housed in the "Analyst Reports" section of the website, where it was placed alongside reputable independent industry studies.

34.     The web page at Exhibit B claims that, based on "approximately 500 responses, BPM.com found that on average: Appian customers build complete enterprise solutions 5 times faster, Appian customers use 79% fewer resources and Appian has more than 2x customers who've reached ROI in 2 years." The page then states: "Check out this report to learn more about the business value of Appian, and why customers are choosing and using Appian to increase productivity and ROI." Also on the page is a submission form allowing potential customers to receive a copy of the Report. These statements are false and misleading.  For example, it is literally false that the comparisons described on the web page are based on "approximately 500 responses;" the Report itself shows that they were based on a much smaller sampling, and only a small percentage of that smaller sampling (making up only 27 projects – 10 for Pegasystems and 17 for Appian) was used to compare Pegasystems and Appian.

35.     Appian also established a second web page to promote the report at https://www.appian.com/appian-vs-pega/, with a link stating "Read the 2019 BPM.COM

9

B5054038.3

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Pegasystems hereby demands a jury trial on all claims so triable.

Respectfully submitted,

PEGASYSTEMS INC.

By its attorneys,

/s/ _____

August T. Horvath (*pro hac vice*)
Foley Hoag LLP
1301 Sixth Avenue, 25th floor
New York, New York 10019
Telephone:  646-927-5544
Facsimile:  646-927-5599
ahorvath@foleyhoag.com

David A. Kluft (BBO #658970)
Neil Austin (BBO # 657204)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone:  617-832-1000
Facsimile:  617-832-7000
dkluft@foleyhoag.com
naustin@foleyhoag.com

Dated:  December 4, 2019

B5054038.3