**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CITY OF FORT LAUDERDALE POLICE AND FIREFIGHTERS' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No.:  1:22-cv-11220-WGY |
| Plaintiff, | ) ) | |
| v. | ) | **ORAL ARGUMENT REQUESTED** |
| PEGASYSTEMS INC., ALAN TREFLER, and KENNETH STILLWELL, | ) ) ) | |
| Defendants, | ) ) | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.    Plaintiffs Fail to Allege an Actionable Misstatement or Omission ...................................... 2

    A.    Plaintiffs Fail to Rebut That Pega's Decision Not to Specifically Disclose the Virginia Litigation Before February 2022 Was an Inactionable Opinion .............. 3

    B.    Plaintiffs Fail to Adequately Plead That the February 2022 Disclosure Was Materially Misleading ................................................................................................ 8

    C.    Plaintiffs Fail to Adequately Plead That Pega's Disclosures Concerning Litigation Risk Were Materially Misleading ......................................................... 11

    D.    Plaintiffs' Challenges to the Remaining Miscellaneous Statements Identified in the Complaint Fail .............................................................................................. 12

II.   Plaintiffs Cannot Recast Their Claims as "Scheme" Liability ........................................... 13

III.  Plaintiffs Fail to Plead a "Strong" Inference of Scienter ................................................... 14

    A.    Plaintiffs Do Not Plead That the Individual Defendants Knew That Conduct Underlying the Virginia Litigation Constituted Unlawful Misappropriation ....... 15

    B.    Plaintiffs Fail to Allege Any Plausible Motive ...................................................... 17

    C.    Plaintiffs' Arguments for Corporate Scienter Are Flawed .................................... 18

    D.    The More Compelling Inference Is That Pega Timely Disclosed the Virginia Litigation Consistent With Relevant Disclosure Rules and GAAP ....................... 19

IV.   Plaintiffs' Allegations of Loss Causation Are Insufficient ................................................ 19

CONCLUSION ..................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Airbnb, Inc. v. City of Bos.*,
  386 F. Supp. 3d 113 (D. Mass. 2019) ......................................................................................1

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002)........................................................................................15, 18

*Allison v. Oak St. Health, Inc.*,
  2023 WL 1928119 (N.D. Ill. Feb. 10, 2023) ..........................................................................12

*In re Baby Food Antitrust Litig.*,
  1997 U.S. Dist. LEXIS 24488 (D.N.J. July 25, 1997)..............................................................16

*Berlik et al. v. Baker et al.*,
  No. 21-11723 (D. Mass. Sept. 30, 2022), ECF No. 47 ............................................................13

*In re Bos. Sci. Corp. Sec. Litig.*,
  2022 WL 17823837 (D. Mass. Dec. 20, 2022)........................................................................19

*Brumbaugh v. Wave Sys. Corp.*,
  416 F. Supp. 2d 239 (D. Mass. 2006) ..................................................................................18

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)................................................................................................5

*In re Cabletron Sys., Inc.*,
  311 F.3d 11 (1st. Cir. 2002)................................................................................................18

*Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*,
  496 F. Supp. 3d 952 (E.D. Va. 2020) ..................................................................................10

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ................................................................................................8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
  632 F.3d 751 (1st Cir. 2011)................................................................................................17

*City of Phila. v. Fleming Cos.*,
  264 F.3d 1245 (10th Cir. 2001) .................................................................................. *passim*

*Cody v. Conformis, Inc.*,
  199 F. Supp. 3d 409 (D. Mass. 2016) ....................................................................................9

*Collier v. ModusLink Glob. Sols., Inc.*,
    9 F. Supp. 3d 61 (D. Mass. 2014) ....................................................................................18

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*,
    22 F.4th 1 (1st Cir. 2021)................................................................................................13

*Constr. Laborers Pension Tr. v. CBS Corp.*,
    433 F. Supp. 3d 515 (S.D.N.Y. 2020)............................................................................12

*Corban v. Sarepta Therapeutics, Inc.*,
    2015 WL 1505693 (D. Mass. Mar. 31, 2015), *aff'd*, 868 F.3d 31 (1st Cir.
    2017) ..............................................................................................................................2, 3

*Ezra Charitable Tr. v. Tyco Int'l, Ltd.*,
    466 F.3d 1 (1st Cir. 2006)...............................................................................................16

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
    778 F.3d 228 (1st Cir. 2015)...........................................................................................20

*Fogel v. Vega*,
    759 F. App'x 18 (2d Cir. 2018) ......................................................................................13

*In re Fuwei Films Sec. Litig.*,
    634 F. Supp. 2d 419 (S.D.N.Y. 2009).............................................................................7, 8

*Greenberg v. Sunrun Inc.*,
    233 F. Supp. 3d 764 (N.D. Cal. 2017) .............................................................................8

*Grobler v. Neovasc Inc.*,
    2016 WL 6897760 (D. Mass. Nov. 22, 2016) ...............................................................10, 11

*Hackel v. AVEO Pharm., Inc.*,
    474 F. Supp. 3d 468 (D. Mass. 2020) ............................................................................11

*Hall v. Johnson & Johnson*,
    2019 WL 7207491 (D.N.J. Dec. 27, 2019)....................................................................10

*Holwill v. AbbVie Inc.*,
    2020 WL 5235005 (N.D. Ill. Sept. 1, 2020) ..................................................................12

*Hunt v. Bloom Energy Corp.*,
    2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) ..............................................................2, 4

*Leung v. bluebird bio, Inc.*,
    599 F. Supp. 3d 49 (D. Mass. 2022)..............................................................................20

*In re Perrigo Co. PLC Sec. Litig.*,
    435 F. Supp. 3d 571 (S.D.N.Y. 2020).............................................................................5, 6

iii

*James v. Cox*,
2022 WL 2905367 (D. Mass. July 22, 2022)..............................................................................14

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)....................................................................................................................14

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005).......................................................................................................21

*In re Lions Gate Ent. Corp. Sec. Litig.*,
165 F. Supp. 3d 1 (S.D.N.Y. 2016) .........................................................................................2, 8

*Lirette v. Shiva Corp.*,
27 F. Supp. 2d 268 (D. Mass. 1998) .........................................................................................15

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2019)...............................................................................................................14

*Maldonado v. Dominguez*,
137 F.3d 1 (1st Cir. 1998) .........................................................................................................18

*Mass. Ret. Sys. v. CVS Caremark Corp.*,
716 F.3d 229 (1st Cir. 2013)......................................................................................................20

*N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*,
537 F.3d 35 (1st Cir. 2008)........................................................................................................19

*In re No. Nine Visual Tech. Corp. Sec. Litig.*,
51 F. Supp. 2d 1 (D. Mass. 1999) .............................................................................................11

*Nykredit Portefolje Admin. A/S v. ProPetro Holding Corp.*,
2021 WL 9037758 (W.D. Tex. Sept. 13, 2021)........................................................................13

*Okla. Firefighters Pension and Ret. Sys. v. Biogen Inc.*,
No. 22-10200 (D. Mass. Mar. 29, 2023), ECF No. 59 ........................................................12, 16

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)............................................................................................................ *passim*

*Pegasystems, Inc. v. Appian Corp., et al*,
2022 WL 4630231 (D. Mass. Sept. 30, 2022) .........................................................................7, 8

*Quinones et al. v. Frequency Therapeutics, Inc.et al.*,
No. 21-10933 (D. Mass. Mar. 29, 2023), ECF No. 45 ..........................................................18, 19

*In re Raytheon Sec. Litig.*,
157 F. Supp. 2d 131 (D. Mass. 2001) ........................................................................................15

iv

*Washtenaw Cnty. Emps.' Ret. Sys. v. Talbots, Inc.*,
    2013 WL 5348569 (D. Mass. Sept. 23, 2013) ...................................................................13

*Roeder v. Alpha Indus., Inc.*,
    814 F.2d 22 (1st Cir. 1987) ..............................................................................................12

*Rosenbaum Cap. LLC v. Bos. Comm's Grp.*,
    445 F. Supp. 2d 170 (D. Mass. 2006) ...............................................................................10

*Salim v. Mobile Telesystems PJSC*,
    2021 WL 796088 (E.D.N.Y. Mar. 1, 2021), *aff'd*, 2022 WL 966903 (2d Cir.
    Mar. 31, 2022).............................................................................................................2, 6, 8

*In re SeaChange Int'l, Inc.*,
    2004 WL 240317 (D. Mass. Feb. 6, 2004) ........................................................................10

*SEC v. RPM Int'l.*,
    282 F. Supp. 3d 1 (D.D.C. 2017) ......................................................................................10

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)....................................................................13

*Sousa v. Sonus Networks, Inc.*,
    261 F. Supp. 3d 112 (D. Mass. 2017) ...............................................................................18

*Tharp v. Acacia Commc'ns, Inc.*,
    321 F. Supp. 3d 206 (D. Mass. 2018) ...............................................................................16

*In re Teva Sec. Litig.*,
    512 F. Supp. 3d 321 (D. Conn. 2021)................................................................................13

*Wasson v. LogMein, Inc.*,
    2021 WL 1080201 (D. Mass. Mar. 18, 2021).....................................................................19

*Winters v. Stemberg*,
    529 F. Supp. 2d 237 (D. Mass. 2008) ...............................................................................19

*Young Design, Inc. v. Teletronics Intern., Inc.*,
    2001 WL 35804500 (E.D. Va. July 31, 2001) .....................................................................4

**State Cases**

*Powell v. Sears, Roebuck & Co.*,
    231 Va. 464 (1986) .............................................................................................................6

*Solentus, Inc. v. Lam*,
    2017 WL 9833483 (Va. Cir. Ct. May 4, 2017).....................................................................6

**State Statutes**

VA. CODE ANN. § 8.01–38.1 (1987) ........................................................................................6

**Regulations**

17 C.F.R. § 229.103(b)(2).........................................................................................................7

**Other Authorities**

L.R., D. Mass. 7.1(b) ...............................................................................................................1

Va. Sup. Ct. R. 3:2(c)(ii).........................................................................................................6

**INTRODUCTION**

The Opposition confirms that Plaintiffs' claim that Pega failed to disclose timely the Virginia Litigation, and then materially misrepresented it, is based entirely on hindsight. In May 2020, Appian sued Pega for trade secret misappropriation in Virginia state court alleging $90 million in damages. It was the third lawsuit between the companies since 2015. On February 11, 2022, Appian amended its complaint and suddenly claimed *$3 billion in damages—a more than 30-fold increase*. Just days later, on February 16, 2022, in light of the new damages demand, Pega amply disclosed the litigation and stated its subjective belief that it lacked merit. Although Appian was ultimately awarded a $2 billion verdict, Pega has consistently contended that the verdict was the result of significant legal errors that it is pressing on appeal.

The Opposition completely ignores this timeline, the context of ongoing litigation between the parties, the circumstances prompting Pega's disclosure, the defenses available to Pega at the time of its disclosure decisions, and, most importantly, the absence of *any* well-pleaded contemporaneous factual basis that could support an inference that the Defendants knew the Company's exposure was material and knew they had an obligation to disclose the litigation earlier (or to opine that it was meritorious). Opp. 4, 7–10, 14–18, 28. But these factors are critical and ultimately outcome-determinative as to whether the Complaint pleads both a plausible earlier duty to disclose and a strong inference that Pega intended to mislead the market. Plaintiffs' failure to meet these essential elements is dispositive.

Instead, Plaintiffs devote much of their supposed 30-page[1] Opposition to pleading the merits of Appian's trade secret misappropriation claim. Opp. 1–3, 19–22. But even if Pega

---

[1] Contrary to the Local Rules of this Court requiring memoranda to be "double-spaced," the Opposition appears to use 24-point spacing, allowing on average four more lines per page (27) than double-spacing (23). L.R. 7.1(b), D. Mass.; *see also Airbnb, Inc. v. City of Bos.*, 386 F. Supp. 3d 113, 118 n.3 (D. Mass. 2019) (brief with 27 lines of text per page was "discernibly condensed to something less than double spacing" in violation of local rule).

misappropriated trade secrets—something Pega unequivocally denies—that does not mean Defendants misled (much less intended to mislead) investors, which is what Plaintiffs must show. Similarly, that a jury ultimately found trade secret misappropriation does not show that the Defendants believed months earlier that the proceeding was material or that there was a reasonable possibility of material loss. The only compelling inferences are that Pega made a good faith judgment that the initial complaint need not be disclosed, disclosed the amended complaint immediately upon determining it had become material, and believed throughout that it had strong defenses and the case lacked merit. Failing to predict an unlikely jury verdict is not securities fraud. The Complaint should be dismissed with prejudice.

## ARGUMENT

### I.   Plaintiffs Fail to Allege an Actionable Misstatement or Omission

Although the Complaint contains a grab bag of allegations, the central issue before the Court is whether the timing and content of Defendants' opinions concerning the Virginia Litigation are actionable. They are not. First, Plaintiffs do not plausibly allege that the opinions from July 2020 to February 2022 that the Virginia Litigation did not need to be disclosed were objectively and subjectively false.[2] *See Corban v. Sarepta Therapeutics, Inc.*, 2015 WL 1505693, at *6 (D. Mass. Mar. 31, 2015) (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189 (2015)). Defendants' contemporaneous belief that the Virginia Litigation

---

[2] Plaintiffs do not seriously dispute that Item 103 and ASC 450 disclosures constitute opinions under *Omnicare* (*see* Opp. 9, 16, 18) and cannot effectively distinguish Defendants' authority. *See* Mem. 7–11. They attack *Salim v. Mobile Telesystems PJSC* because it concerned accrual, but they ignore the court's holding that the company's non-accrual was a protected opinion under *Omnicare* because it involved significant judgment. 2021 WL 796088, at *7–9 (E.D.N.Y. Mar. 1, 2021). Next, they attack *Hunt v. Bloom Energy Corp.* because it concerned contract liabilities and not "claims involving corporate espionage" (Opp. 16 n.22), but they fail to say why that matters; *Hunt* held that "ASC 450 … require[s] the exercise of judgement" and that "statements about [] contingent liabilities are opinion statements, and the *Omnicare* framework applies." 2021 WL 4461171, at *5 (N.D. Cal. Sept. 29, 2021). Finally, they note that the SEC investigation in *In re Lions Gate Entertainment Corp. Sec. Litig.* was not a "legal proceeding" required to be disclosed under Item 103 (Opp. 17 n.25), but they ignore that the court also found that the company's voluntary Item 103 disclosures were inactionable opinions. 165 F. Supp. 3d 1, 15–16, 18–20 (S.D.N.Y. 2016).

was immaterial, meritless, and therefore did not require disclosure under either ASC 450 or Item 103 is well-supported by the facts alleged in the Complaint and the circumstances of the Virginia Litigation and other disputes between the parties, of which the Court may take judicial notice. Second, Plaintiffs do not plausibly allege that the opinions in Pega's February 2022 disclosure, which explained that the Company was facing a new demand of $3 billion in damages, were objectively and subjectively false, contained false "embedded facts," or omitted material facts about Pega's inquiry into or knowledge of its opinion. *See Corban*, 2015 WL 1505693, at *6. As the Complaint alleges, Pega's February 2022 disclosure provided significant detail and warned shareholders of the risk of an adverse verdict.

A.      **Plaintiffs Fail to Rebut That Pega's Decision Not to Disclose Specifically the Virginia Litigation Before February 2022 Was an Inactionable Opinion**

In its quarterly and annual filings between July 2020 and February 2022, Pega represented generally that it was subject to legal proceedings arising in the ordinary course of its business, including intellectual property disputes, without specifically identifying the Virginia Litigation (which, at the time, involved a damages claim for $90 million).[3]  The Opposition asserts that merely knowing about the Virginia Litigation or the underlying conduct constituting alleged trade secret misappropriation was sufficient to require earlier disclosure under ASC 450 or Item 103.  It was not.  ASC 450 requires companies to exercise judgment about the reasonable possibility of a material loss based on the probability of an unfavorable outcome in litigation.  Item 103 similarly

---

[3] *See* Ex. 28 (2020 Form 10-K) at 19 (discussing potential intellectual property disputes, acknowledging receipt of misappropriation claims, and providing no assurances that third-parties will not claim infringement and that such claims could result in litigation); Ex. 4 (2020 Form 10-K) at 22 ("From time to time, we may be subject to legal proceedings and civil and regulatory claims that arise in the ordinary course of our business activities.  Regardless of the outcome, litigation can have a material adverse effect on us…."), 59 ("The Company is a party in various contractual disputes, litigation, and potential claims arising in the ordinary course of business.  The Company does not believe that the resolution of these matters will have a material adverse effect on its financial position or results of operations.").  All referenced exhibits ("Ex.") are attached to the Supplemental Declaration of Daniel W. Halston, filed contemporaneously, or were attached to the Declaration of Daniel W. Halston, filed contemporaneously with the opening brief, Dkt No. 66.

3

requires companies to exercise judgment about the materiality of litigation. Pega assessed materiality and risk and concluded that disclosure was not required; these conclusions are protected opinions that were supported by both the facts alleged and the law.

*First*, as to ASC 450, the Opposition does not articulate why Pega plausibly knew there was a reasonable possibility of a material loss from an unfavorable outcome in the Virginia Litigation that was required to be disclosed. Plaintiffs' identification of scattered facts like motion losses and the duration of the alleged trade secret misappropriation (Opp. 15–16) are not particularized allegations that Pega's opinion concerning the possibility of a material loss was false. Pega was not obligated to disclose isolated developments in the litigation that favored Appian. *See Omnicare*, 575 U.S. at 190 ("An opinion statement … is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way."). Pega was entitled to make its own judgment after assessing all of the information available regarding the litigation, including that courts in Virginia had previously rejected similar claims,[4] the prevailing law in Virginia on causation was favorable to Pega, that Pega obtained dismissal of two of Appian's five claims and Appian withdrew a third, and that Pega narrowed the temporal scope of Appian's VCCA claim.[5] Similarly, Defendants' alleged knowledge of competitive intelligence efforts, the period of time over which they took place, and the amount of damages claimed say nothing about the merits of the ***specific claims*** asserted by Appian and the actual probability of an unfavorable outcome. *Hunt*, 2021 WL 4461171, at *5–6. As explained *infra*, the Complaint fails to allege that

---

[4] *See, e.g.*, *Young Design, Inc. v. Teletronics Intern., Inc.*, 2001 WL 35804500, at *7 (E.D. Va. July 31, 2001).

[5] Ex. 31 (Pega Demurrer) at 4–7, 11; Ex. 32 (Order on Demurrer); Ex. 33 (Order on Plea-in-Bar) at 1; Ex. 6 (2021 Form 10-K) at 63. Pega also had equitable defenses which became unavailable after Appian withdrew its equitable claims in November 2021. On appeal, Pega has identified multiple trial court errors, including shifting the burden to Pega to disprove causation and damages for Appian's trade secrets claim. Ex. 34 (Pega Br. for Appellant) at 39–53. That burden-shifting, which no Virginia court had ever adopted, and which facilitated the extreme damages award, prompted the American Intellectual Property Law Association and other experts to file amicus briefs in favor of Pega's position. *See Opinions of Experts Filed in Appian Case*, PEGA, https://www.pega.com/appian-lawsuit-statement/opinions-of-experts. Pega clearly had good reason at the time to assess the merits of the case as it did.

4

any Defendant knew that the conduct at issue was unlawful or that a material loss resulting from an unfavorable outcome was reasonably possible. *See infra* § III.

Plaintiffs fare no better when they ask the Court to stray from the allegations in the Complaint and speculate that Defendants either did not sufficiently inquire into the probability of an unfavorable outcome or ignored the results of that inquiry. Opp. 16. The Complaint includes no allegations concerning Pega's inquiry, and Plaintiffs incorrectly assume that any such inquiry would have informed Defendants that unlawful conduct had occurred and that an unfavorable outcome, such as an adverse jury verdict, was probable. Opp. 16. But that again is just hindsight following the verdict, and again ignores among other things the strength of Pega's defenses. The untenable logic of Plaintiffs' theory is that every adverse outcome in undisclosed litigation shows Defendants' nondisclosure decision was not supported by an adequate investigation. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1421 n.10 (3d Cir. 1997); *cf. City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1268 (10th Cir. 2001) (in context of Item 103, "damages claims are often inflated by plaintiffs overestimating their chances of success at trial" and concluding that defendants were not liable for not anticipating exposure).

The cases that Plaintiffs cite as to ASC 450 are inapposite because they involve disclosures that did not require the exercise of judgment. In *In re Perrigo Co. PLC Sec. Litig.*, the court held that potential tax liability was not an opinion protected by *Omnicare* because the company had been told its exact liability in a letter from the IRS. 435 F. Supp. 3d 571, 587 (S.D.N.Y. 2020) ("[N]o exercise of judgment was required .... The Audit Findings Letter …. established as a matter of fact, rather than opinion, an upper bound on the range of possible loss that was reasonably estimable."). Evaluating whether there is a reasonable possibility of loss in complex litigation requires an "exercise of judgment" that reading a letter reporting a specific tax liability does not.

*See Salim*, 2021 WL 796088, at *8 (distinguishing *Perrigo*).  Similarly, the court in *SEC v. RPM International* held that the company had a duty to disclose a DOJ investigation because it had already calculated and discussed with the DOJ its exact liability.  282 F. Supp. 3d 1, 20–22, 28 (D.D.C. 2017).  Pega's opinion that it was not reasonably possible for the litigation to result in a material loss was based on a good faith judgment regarding the strength of Pega's defenses and the broader litigation context.  *See infra* at 7–8; *supra* at 4.

*Second*, as to Item 103, nothing in the Opposition articulates why the Virginia Litigation required earlier disclosure.  Opp. 17–18.  Plaintiffs' initial claim that Item 103's safe harbor for claims amounting to less than 10% of a company's current assets did not apply because Appian sought unspecified damages in excess of $90 million (Opp. 17–18) misunderstands Virginia law.  In Virginia, civil complaints must "contain an *ad damnum* clause stating the amount of damages sought," Va. Sup. Ct. R. 3:2(c)(ii), which operates as a cap on any damages.  *See Powell v. Sears, Roebuck & Co.*, 231 Va. 464, 469 (1986) ("In Virginia, a plaintiff cannot recover more than he sues for though he can recover less."); *Solentus, Inc. v. Lam*, 2017 WL 9833483, at *4 (Va. Cir. Ct. May 4, 2017) ("[T]he *ad damnum* sets a cap on the amount recoverable by the plaintiff.").  Accordingly, before the February 2022 amendment of the complaint, Appian's compensatory damages were capped at $90 million and did not exceed 10% of Pega's then-current assets, with the exception of one quarter.[6]  Mem. 9.

Plaintiffs also misread Item 103 and claim that Pega had a duty to disclose the Virginia Litigation to the extent it surpassed 10% of Pega's current assets in any quarter, even if by less than 1% in a single quarter.  Opp. 17.  But the safe harbor *exempts* from disclosure claims involving *less* than 10% of current assets, rather than *requiring* disclosure for all claims involving *more* than

---

[6] Appian's punitive damages were capped at $350,000 under Virginia law.  VA. CODE ANN. § 8.01–38.1 (1987).

10% of current assets.  17 C.F.R. § 229.103(b)(2).  An issuer can validly determine that a suit involving more than 10% of a company's current assets is not material.  *Cf. In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 443–44 (S.D.N.Y. 2009) (analyzing whether arbitration "significantly alter[ed] total mix of information" separately from whether it fell within the 10% safe harbor).

Plaintiffs next assert that Defendants' February 2022 disclosure of legal expenses incurred "outside of the ordinary course of business" shows that the Virginia Litigation was not routine. Opp. 16 n.23.  But this disclosure occurred at the same time as Defendants' February 2022 determination that the Virginia Litigation was a material legal proceeding and has no bearing on Pega's view of that litigation months earlier.  Opp. 17; CAC ¶ 169; *see* Ex. 29 (2021 Form 10-K) at 29.  And as the Court may take notice, before the February 2022 amendment (which, again, revised the damages claim to $3 billion), the Virginia Litigation was nothing more than routine litigation between companies that involved numerous claims and counterclaims and had been ongoing and undisclosed by the parties since 2015.  *See Omnicare*, 575 U.S. at 190 (opinions should be viewed "in a broader frame" that considers "full context" and "customs and practices of the relevant industry").  It is therefore unsurprising that neither Pega nor Appian disclosed the Virginia Litigation as material before February 2022; indeed, by 2020, litigation between the two was commonplace, including a case where Pega alleged an employee stole its intellectual property for Appian[7] and an unfair competition case where Pega alleged Appian used unlawful marketing tactics.[8]  Pega repeatedly disclosed before February 2022 that it was engaged in routine litigation

---

[7] In 2015, Pega sued Appian in Mass. Superior Court after Appian hired a Pega employee who repeatedly viewed Pega's confidential information, which he had downloaded before leaving Pega, on his Appian laptop.  Ex. 24 (*Maxwell* Stip. of Dism.) at 1–2.  The court enjoined the employee from working for Appian and ordered the return of all confidential information before the parties dismissed.  *Id.* at 2.  Neither party disclosed this litigation.

[8] In 2019, Pega brought claims under the Lanham Act and Massachusetts' unfair competition statute, alleging "millions" in damages, after Appian secretly paid another company to publish a marketing document containing false information about Pega's products.  Ex. 25 (D. Mass. Am. Compl.) ¶¶ 18–31.  The parties stipulated to dismissal

and warned investors that such litigation was common. *See Omnicare*, 575 U.S. at 190 (reasonable investors view opinions in light of other disclosures); Ex. 6 (2021 Form 10-K) at 23.

Finally, Plaintiffs' mantra that Defendants' purported knowledge of the alleged underlying trade secret misappropriation renders their opinions concerning the materiality of the Virginia Litigation subjectively false has no merit. *See supra* at 3–6. There are no allegations permitting a reasonable inference that Defendants actually believed Pega had unlawfully stolen trade secrets, much less that the Virginia Litigation was material and required disclosure.[9] *See Salim*, 2021 WL 796088, at *9 (no subjective falsity where plaintiffs failed to "allege that [company] did not actually believe what it was representing"); *In re Lions Gate*, 165 F. Supp. 3d at 16 (no subjective falsity where plaintiffs "failed to plead how [] defendants' opinions were not supported by the facts known to them at the time"); *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 618 (9th Cir. 2017) (no subjective falsity where plaintiffs failed to allege that "actual assumptions that Defendants relied upon" in making accounting judgments were "so unreasonable as to amount to fraud"); *infra* § III.A (discussing scienter allegations).

## B.   Plaintiffs Fail Adequately to Plead That the February 2022 Disclosure Was Materially Misleading

On February 16, 2022, just five days after Appian increased its damages claim ***30-fold***, Pega disclosed the Virginia Litigation as a material legal proceeding and loss contingency. Plaintiffs attack Pega's disclosure, which indisputably complied with the requirements of ASC

---

before trial after the court granted partial summary judgment to each. *Pegasystems, Inc. v. Appian Corp., et al*, 2022 WL 4630231, at *13 (D. Mass. Sept. 30, 2022); Ex. 27 (D. Mass. Stip. of Dism.) at 1. Pega and Appian disclosed this litigation for the first time on February 16 and 17, 2022, respectively, alongside their first disclosures concerning the Virginia Litigation. *See* Ex. 6 (2021 Form 10-K) at 23; Ex. 10 (Appian 2021 Form 10-K) at 44. These disclosures came more than two years after claims and counterclaims were filed.

[9] Plaintiffs' shopworn argument that materiality cannot be decided on a motion to dismiss (Opp. 13 n.14) is wrong. *See*, *e.g.*, *City of Phila.*, 264 F.3d at 1266–68 (plaintiffs did not adequately allege defendants' recklessness because they did not adequately allege materiality under Item 103); *Fuwei*, 634 F. Supp. 2d at 443–44 (undisclosed litigation was "immaterial as a matter of law"); *Greenberg v. Sunrun Inc.*, 233 F. Supp. 3d 764, 775 (N.D. Cal. 2017) (pending litigation was "ordinary" in defendant's "highly regulated industry" and therefore immaterial).

450 and Item 103, as misleading.  Plaintiffs are wrong on both the facts and the law.

Plaintiffs' first assertion, that Pega's statement that Appian's claims were "without merit" conveyed false "embedded facts," is contrary to *Omnicare*.  According to Plaintiffs, that opinion conveys the "embedded facts" that no evidence of misappropriation existed, that Pega was unaware of any such evidence, and that Appian's damages claim had no support.  Opp. 7.  But "embedded facts" are factual statements couched *within* an opinion, not unspoken inferences that could be drawn from an opinion.  *See Omnicare*, 575 U.S. at 185 (statement "I believe our TVs have the highest resolution available because we use a patented technology to which our competitors do not have access" contains one embedded fact: use of patented technology).  Indeed, *Omnicare* and its progeny show that pure opinions like Pega's contain no embedded facts.  *See id.* at 185–86 ("we believe we are obeying the law" had no embedded facts); *Cody v. Conformis, Inc.*, 199 F. Supp. 3d 409, 419 (D. Mass. 2016) ("we believe they [i.e., certain manufacturing facilities] are compliant with [FDA regulations]" was "unvarnished opinion" without embedded facts).  Were it otherwise, any pure statement of opinion could be twisted into an actionable statement by positing some state of facts that the opinion implicitly conveyed.

Plaintiffs next argue that Defendants' statements about the merits of the litigation and the damages claim were misleading because they omitted material information, such as Mr. Trefler's alleged involvement in competitive intelligence efforts, which amounted to one meeting with Mr. Zou.  Opp. 8; *see infra* § III.A (discussing lack of plausible allegations of knowing participation in alleged misappropriation by Individual Defendants).  But assessing the merits of complex litigation requires the exercise of significant judgment and "a weighing of competing facts."  *See Omnicare*, 575 U.S. at 189–90.  *Omnicare* does not require companies opining on litigation to disclose every fact or consideration that might undermine their opinions.  *See id.*; *supra* at 4.

9

*Omnicare* requires companies to disclose only facts so significant that they would indicate that the opinion as a whole does not "fairly align[] with the information in the issuer's possession at the time." *Id.* at 189. None of the alleged facts Plaintiffs cite meets that standard.[10]

Finally, Plaintiffs again argue that the opinions were not sincerely believed by Defendants because they "knew" that there was factual support for Appian's claims. Opp. 9. However, Plaintiffs have not plausibly alleged that Defendants' purported knowledge of the conduct at issue in the Virginia Litigation amounted to knowledge that the conduct was unlawful or that it was reasonably possible to result in an unfavorable outcome and material loss (*see infra* at § III.A; Mem. 19–26) or that Defendants did not honestly believe that Pega had strong defenses that rendered the proceeding immaterial. *See supra* at 4; *cf. Hall v. Johnson & Johnson*, 2019 WL 7207491, at *19 (D.N.J. Dec. 27, 2019) (statements about "substantial defenses" to asbestos litigation inactionable under *Omnicare* because "even assuming as true that there was asbestos in [the products], the Company may very well have [had] defenses to the lawsuits premised on other bases such as lack of causation, or procedural issues occurring at trial").[11]

---

[10] Plaintiffs suggest that Pega's disclosures were materially misleading because Pega did not "confess to the wrongdoing" when it disclosed the Virginia Litigation. Opp. 7–8 (citing *Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952, 9663 (E.D. Va. 2020) ("[D]isclosing a lawsuit's existence and allegations while also vigorously denying their validity does not satisfy a company's duty to make full, honest disclosures")). This argument is based on an outlier, out-of-circuit case and would require any company disclosing litigation publicly to state—while defending that litigation—that it believed it would lose the lawsuit or otherwise divulge unfavorable details. Unsurprisingly, no other courts have adopted this approach. In fact, Judge Woodlock has rejected such an approach in a case on which Plaintiffs rely. *See In re SeaChange Int'l, Inc.*, 2004 WL 240317, at *8–9 (D. Mass. Feb. 6, 2004) (prospectus that mentioned litigation "in general descriptive terms," stated the company was contesting the claims, and stated that the outcome of the litigation was uncertain was not materially misleading "even considering knowledge of the patent infringing conduct" given no verdict had been returned and "the well understood vagaries of litigation").

[11] Plaintiffs also incorrectly argue that forward-looking statements concerning the Virginia Litigation are not protected by the PSLRA's safe-harbor. Opp. 9–10. Plaintiffs' reliance on *Rosenbaum Capital LLC v. Boston Communications Group* to argue that there was insufficient cautionary language is misplaced. Opp. 10. In *Rosenbaum*, the only cautionary statement was "generic" and not tied to any specific proceeding—it only warned that "from time to time" the company faced litigation and may not prevail. *Rosenbaum Cap. LLC v. Bos. Comm's Grp.*, 445 F. Supp. 2d 170, 176 (D. Mass. 2006). Pega's cautionary language was specific to the Virginia Litigation, warning that Pega could not predict the case's outcome "due to the uncertainty as to how a jury may rule." Ex. 6 (2021 Form 10-K) at 63. This warning resembles the language deemed sufficient in *Grobler v. Neovasc Inc. See* Mem. 14 (citing

### C.      Plaintiffs Fail Adequately to Plead That Pega's Disclosures Concerning Litigation Risk Were Materially Misleading

Before the February 16, 2022 disclosure of the Virginia Litigation, Pega repeatedly warned investors that it was in receipt of notices of misappropriation, that it was a party to litigation, and of the possibility such claims could have a material adverse effect.  CAC ¶¶ 136, 139; Ex. 4 (2020 Form 10-K) at 22, 59.  The Opposition dismisses Defendants' reliance on these risk factors as "nonsense" and argues that these warnings were misleading because they did not specifically disclose the Virginia Litigation, even though Defendants had no duty to disclose it under GAAP or Item 103.  Opp. 6–7.  Plaintiffs' position lacks merit.

*First*, the Opposition attempts to equate this case with *In re Number Nine Visual Technology Corp. Securities Litigation*.  *Id.*  But there, this Court found that a "[w]arning of ***past and future*** memory shortages" that said nothing about the present was actionably misleading because "a present memory shortage remains undisclosed."  *In re No. Nine Visual Tech. Corp. Sec. Litig.*, 51 F. Supp. 2d 1, 6, 23–24 (D. Mass. 1999) (emphasis added).  In other words, by saying nothing about the present, the defendant falsely implied there was no current shortage.  Here, Pega ***did*** warn of ***current*** and future misappropriation claims.  CAC ¶ 136.  Moreover, the Court in *Number Nine* distinguished the facts before it from a case (such as this one) in which the nondisclosure concerned matters of judgment or projection.  *See No. Nine*, 51 F. Supp. 2d at 23–24 (distinguishing failure to disclose defendant's "inability to obtain memory supplies at time of Offering" as "verifiable fact" rather than "a matter of judgment or projection").

*Second*, Plaintiffs have not established that Pega was required to disclose the Virginia Litigation when it cautioned investors about present misappropriation claims.  Opp. 7.  *Backman*

---

*Grobler v. Neovasc Inc.*, 2016 WL 6897760, at *4 (D. Mass. Nov. 22, 2016)).  Moreover, Plaintiffs are wrong that the safe-harbor does not apply where defendants are alleged to have had actual knowledge.  *Hackel v. AVEO Pharm., Inc.*, 474 F. Supp. 3d 468, 477–78 (D. Mass. 2020) (state of mind "irrelevant" if there is meaningful cautionary language).

11

*v. Polaroid Corp.*, on which Plaintiffs rely, explains that "revealing one fact" about a topic does not require an issuer to also "reveal all others that, too, would be interesting, market-wise[.]" 910 F.2d 10, 16 (1st Cir. 1990). Here, disclosing that Pega was presently in receipt of notices of misappropriation and involved in litigation arising in the ordinary course of its business did not also require Pega to disclose additional detail about an immaterial misappropriation claim or litigation. *See id.*; Mem & Order at 35–36, *Okla. Firefighters Pension and Ret. Sys. v. Biogen Inc.*, No. 22-10200 (D. Mass. Mar. 29, 2023), ECF No. 59 (hereinafter "*Biogen* Order") (applying *Backman*; finding that disclosure of bottleneck in one scientific process did not create obligation to disclose "every possible logistical challenge" associated with related process).

## D.    Plaintiffs' Challenges to the Remaining Miscellaneous Statements Identified in the Complaint Fail

As to the remaining miscellaneous statements challenged in the Complaint, Plaintiffs cite cases that either support Defendants' positions or are readily distinguishable. Indeed, there is no real dispute concerning the actionability of: generic statements about the industry or Pega's marketing efforts,[12] aspirational Code of Conduct statements,[13] and vague statements about Pega's

---

[12] There is no freestanding duty to disclose unadjudicated misconduct, and Plaintiffs cite no case law from this Circuit suggesting otherwise. *See Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 26 (1st Cir. 1987) (affirming dismissal of omission claims on grounds that company had no duty to disclose unlawful bribe). The out-of-circuit cases that Plaintiffs cite stand for the unremarkable proposition that disclosure is required where necessary to make statements not misleading. The courts in *Oak Street* and *AbbVie* found that defendants omitted material information concerning conduct that was unlawful under the Anti-Kickback Statute ("AKS") because defendants described marketing practices and conveyed compliance with AKS while failing to disclose related, unlawful practices. *See Allison v. Oak St. Health, Inc.*, 2023 WL 1928119, at *6 (N.D. Ill. Feb. 10, 2023); *Holwill v. AbbVie Inc.*, 2020 WL 5235005, at *3 (N.D. Ill. Sept. 1, 2020). In contrast, Pega's vague reference to "other direct and indirect marketing efforts" (CAC ¶ 130), among other statements, did not impose any duty to disclose its competitive intelligence strategies.

[13] Plaintiffs do not respond to any of Defendants' cases demonstrating that aspirational statements in codes of conduct are not actionable. Mem. 18–19. Instead, Plaintiffs contend that the conduct at issue was pervasive enough to render these statements misleading. Opp. 13–14. This argument is undermined by allegations that only a handful of Pega's thousands of employees were involved in competitive intelligence efforts, and Plaintiffs' cases either support Defendants' position or are readily distinguishable. *See Constr. Laborers Pension Tr. v. CBS Corp*, 433 F. 3d 515, 532–35 (S.D.N.Y. 2020) (statements in codes of conduct are actionable only "[i]n rare circumstances" and finding statements not misleading in part because allegation that sexual harassment was pervasive and widespread was "supported by only a handful of examples from a company with over 12,000 employees" and therefore was

12

competitiveness or credibility.[14]  Opp. 10–14.

## II.      Plaintiffs Cannot Recast Their Claims as "Scheme" Liability

Plaintiffs' assertion that Defendants failed to challenge the Complaint's purported scheme liability claims (Opp. 14) is based on the incorrect premise that any such claims were actually properly pled.  Although the Complaint intones the term "scheme" generically, it does not articulate a genuine scheme liability claim for two related reasons.

*First*, a claim for scheme liability must be pled clearly and separately from a disclosure claim.  *See* Mem. & Order at 11–13, *Berlik et al. v. Baker et al.*, No. 21-11723 (D. Mass. Sept. 30, 2022), ECF No. 47 (hereinafter "*Berlik* Order") (rejecting opposition brief's effort to recast claims as "scheme" liability when not pled separately from nondisclosures); *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 336–37 (D. Conn. 2021) (similar).  However, the Complaint never says what the "scheme" actually is and pleads a single count under Rule 10b-5.  CAC ¶¶ 259–67.

*Second*, the conduct underlying a scheme liability claim must be "distinct" from the disclosure claim.  *See Berlik* Order at 11–13 (rejecting Plaintiffs' scheme claim where claim was not that "devices" comprised a scheme, but that defendants failed to disclose devices); *Fogel v. Vega*, 759 F. App'x 18, 25 (2d Cir. 2018) ("[N]umerous district courts have held that scheme liability … 'hinges on the performance of an inherently deceptive act that is distinct from an

---

conclusory); *Nykredit Portefolje Admin. A/S v. ProPetro Holding Corp.*, 2021 WL 9037758, at *17 (W.D. Tex. Sept. 13, 2021) (statements concerning internal controls in Code of Ethics and Conduct actionable and not "aspirational" because they described specific policies and practices rather than general commitments); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *17 (S.D.N.Y. Nov. 26, 2018) (statements in code of conduct actionable where declarations from former and current employees submitted in another litigation demonstrated pervasive and widespread culture of harassment "directly at odds" with code of conduct).

[14] Defendants' statements generally referencing Pega's competitiveness or credibility are inactionable puffery, as described in the opening brief.  Mem. 17–18.  Plaintiffs' puffery cases are distinguishable.  *See Washtenaw Cnty. Emps.' Ret. Sys. v. Talbots, Inc.*, 2013 WL 5348569, at *29–30, 32 (D. Mass. Sept. 23, 2013) (finding statement about inventory while company was allegedly experiencing inventory issues was not puffery but dismissing claims based on scienter); *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 7, 11 (1st Cir. 2021) (reversing and remanding dismissal for claims concerning statements of fact about product capabilities).

alleged misstatement'").[15]   The Opposition concedes that the so-called "scheme" consisted of concealing information from investors, which is the exact same conduct that forms the basis of Plaintiffs' disclosure claims.  Opp. 14; CAC ¶¶ 259–67.[16]

### III.     Plaintiffs Fail to Plead a "Strong" Inference of Scienter

Despite Plaintiffs having access to the entire trial record from the Virginia Litigation, the Complaint alleges, at most, that Mr. Trefler had limited knowledge of certain competitive intelligence efforts.  It nowhere alleges specific facts supporting a strong inference that the Individual Defendants knew or were reckless in not knowing that these competitive efforts involved trade secrets, much less unlawful trade secret misappropriation, and therefore that their litigation opinions could mislead investors.[17]   *Cf. City of Phila.*, 264 F.3d at 1264 (affirming dismissal where plaintiffs alleged defendants' awareness of conduct underlying lawsuit, but not defendants' awareness that failure to disclose litigation "posed substantial likelihood of misleading a reasonable investor").[18]   In addition, Plaintiffs fail to explain any logical motive for the initial

---

[15] *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), is not to the contrary; it merely holds that additional actors involved in disseminating misrepresentations may be brought in under a scheme theory even if they are not the "maker" of the statements under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).

[16] Even if the Court were to consider a scheme liability claim, it would still be subject to dismissal because the Complaint fails to adequately allege scienter under the PSLRA, for the reasons discussed *infra*.

[17] Plaintiffs' claim that Defendants improperly argue that allegations are "not true" at the motion to dismiss stage (Opp. 19–20) is misplaced.  Courts need not accept allegations in the complaint as true if they are contradicted by other allegations or by documents on which the complaint relies.  *See James v. Cox*, 2022 WL 2905367 at *6 (D. Mass. July 22, 2022).  For example, Plaintiffs' allegation that Mr. Trefler "admitted" that he registered for an Appian forum is directly contradicted by Mr. Trefler's deposition testimony, in which he denied any connection with the contact information provided on the registration form, and Plaintiffs do not cite to any other relevant evidence.  *See* Ex. 20 (Trefler Depo Tr.) at 247:25–248:1, 248:21.

[18] Plaintiffs' attempts to distinguish *City of Philadelphia* mischaracterize the case and its analysis.  While the court found that plaintiffs failed to allege that defendants knew of the "business practices" underlying the litigation, it later "assum[ed] for the sake of argument" that defendants "knew they might lose" the case, and nonetheless found that the likelihood of a large damages award was not "so significant that [d]efendants were reckless in not disclosing the litigation."  *City of Phila.*, 264 F.3d at 1266.  Here, too, even assuming that Defendants knew of the alleged misappropriation, Plaintiffs still fail to state a claim because they have not adequately alleged Defendants were reckless in not disclosing it.  Further, the *City of Philadelphia* defendants did not disclose the litigation until the day of the verdict, over a month after plaintiffs increased their damages claim from $250 million to $445 million.  *Id*. at 1251, 1253; *see* Mem. 1.  Here, Pega's promptness in disclosing the litigation after the damages claim increased supports an inference that Pega immediately disclosed the litigation upon deciding it was material.  *See infr*a § III.D.

nondisclosure or the later purportedly inaccurate opinion. *See infra* § III.B.  The only compelling inference is that Pega in good faith did not believe it was required to disclose the Virginia Litigation before February 2022, disclosed it immediately and amply after determining that new developments rendered it material, and believed throughout that the suit lacked merit.

### A.    Plaintiffs Do Not Plead That the Individual Defendants Knew That Conduct Underlying the Virginia Litigation Constituted Unlawful Misappropriation

Plaintiffs fail to allege that either Mr. Stillwell or Mr. Trefler had sufficient knowledge of the competitive intelligence efforts at issue in the Virginia Litigation, let alone their claimed unlawfulness, to warrant a "strong inference" that they acted with scienter in not disclosing the litigation or later expressing their belief that it lacked merit.

The Complaint makes only vague allegations concerning Mr. Stillwell's "expansive role" as Pega's CFO and COO.  Plaintiffs do not allege that he had specific knowledge of any competitive intelligence efforts regarding Appian.  Rather, Plaintiffs claim that Mr. Stillwell was obligated under GAAP to conduct a "reasonable investigation" to determine whether "Appian's allegations had merit."  Opp. 24.  This is inadequate "scienter by status" pleading.[19]  *See Lirette v. Shiva Corp.*, 27 F. Supp. 2d 268, 283 (D. Mass. 1998).  Moreover, Plaintiffs assume that if Mr. Stillwell had learned of Pega's competitive intelligence efforts regarding Appian, it would have been a foregone conclusion that Appian's lawsuit "had merit."  Opp. 24–25.  But that assumption relies only on hindsight from the jury verdict, a type of "fraud by hindsight" claim that courts have

---

[19] Plaintiffs' reliance on *Aldridge v. A.T Cross Corp.* and *In re Raytheon Sec. Litig.* for the argument that GAAP violations support a strong inference of scienter (Opp. 25 n.40) misses the mark.  The *Aldridge* court found only that allegations that defendants *knowingly* committed accounting violations can support a finding of scienter. *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83–84 (1st Cir. 2002); *see* Opp. 25 n.40. Plaintiffs have not adequately alleged such knowledge here.  The *Raytheon* court found only that GAAP violations could "provide evidence" of scienter, not that such allegations alone are sufficient. *In re Raytheon Sec. Litig.*, 157 F. Supp. 2d 131, 148 (D. Mass. 2001).  The *Raytheon* court also relied on detailed allegations of "numerous instances" of violations and internal documents that undermined defendants' claims that they realistically expected to recover their losses. *Id*. at 148–49.  Plaintiffs point to no such evidence concerning Defendants' beliefs about the Virginia Litigation.

"uniformly rejected." *Biogen* Order at 41–42, 53; *see also Ezra Charitable Tr. v. Tyco Int'l, Ltd.*, 466 F.3d 1, 6 (1st Cir. 2006) (general allegations that "defendants knew earlier what later turned out badly" are not sufficient).

As to Mr. Trefler, Plaintiffs point only to language suggesting that Pega engaged in robust competition (e.g., efforts to "win" and go "head-to-head" (Opp. 20–21))[20] and that Mr. Trefler received information about Appian products, but fall far short of alleging that he knew or should have known there was unlawful trade secret misappropriation.[21]  For example:

- Plaintiffs allege that Mr. Trefler attended one meeting with Mr. Zou on January 29, 2013, during which Mr. Zou presented about the Appian platform.  Opp. 20–21.  But Plaintiffs allege no facts indicating that Mr. Trefler understood that the presentation contained misappropriated trade secrets.  Such threadbare allegations are insufficient.  *See Biogen* Order at 49–50 (references to internal meetings insufficient to support inference of scienter "absent specific allegations of what Defendants learned during such reviews and meetings"). To the contrary, Mr. Trefler testified in the Virginia Litigation that he had seen "dozens of live demos" presented by Appian staff at industry conferences, suggesting that information about Appian's platform was readily available in the public domain.[22]

---

[20] Plaintiffs seemingly put stock into banal corporate jargon or militaristic language and highlight Mr. Trefler's statements concerning an Appian "teardown" or encouragement that Pega "blow up" an Appian deal.  Opp. 3, 21. This verbiage has no bearing on the scienter inquiry.  Moreover, companies regularly use competitive intelligence to inform strategic decisions.  *See In re Baby Food Antitrust Litig.*, 1997 U.S. Dist. LEXIS 24488, at \*34 (D.N.J. July 25, 1997) ("[c]orporate 'investigation' is merely one way in which competitors can see what they are up against in the market…. competitive intelligence is prized and sought. Competitors are naturally interested in surveying the market landscape to find out what their counterparts are doing" to inform "strategic, competitive decisions").

[21] Plaintiffs' citation to *Tharp v. Acacia Communications* undermines their case.  Opp. 22.  The *Tharp* plaintiffs' claims failed because they did not set forth specific allegations showing scienter where the facts "indicate[d] optimism" about the future despite plaintiffs' allegations that defendants "suspect[ed] a decline in demand and sales." 321 F. Supp. 3d 206, 229 (D. Mass. 2018).  Like the projections in *Tharp*, Defendants here made a judgment based on currently known information that the Virginia Litigation did not need to be disclosed.  *See supra* § I.A.

[22] Ex. 20 (Trefler Depo. Tr.) at 69:22–70:4 ("There are hundreds of videos of Appian software being used that I have seen, and there are dozens of live demos—"); *id*. at 70:8–70:11 ("There are dozens of live demos that I have seen presented by Appian staff."); *see* Mem. 24 n.31 (court may consider deposition transcript quoted in Complaint).

- Plaintiffs allege that Mr. Trefler requested a competitive brief on Appian and received slides containing screenshots of Appian's platform. Opp. 21. But Plaintiffs do not allege that Mr. Trefler knew that any information in these materials was wrongfully obtained.

- Plaintiffs allege that several Pega employees used false names to access Appian's software through a free trial (Opp. 21), but they do not allege that Mr. Trefler ever improperly accessed a free trial or knew that others did so. Plaintiffs also do not allege that employees told Mr. Trefler that they gained access to Appian's free trial through any improper means.

- Plaintiffs allege that Mr. Trefler asked employees to "dig deep" into Appian's technology as part of its competitive intelligence efforts and discussed information about Appian products with employees. Opp. 21–22. But Plaintiffs do not allege that Mr. Trefler knew that employees obtained information through unlawful means, much less that he directed any employee to do so; indeed, Mr. Trefler's deposition testimony, on which Plaintiffs rely in the Complaint, explains that information about Appian's platform was readily available from public sources.

In short, to the extent Plaintiffs have alleged that Mr. Trefler knew about Pega's competitive intelligence efforts, they have alleged only limited knowledge of those efforts—not knowledge of how those efforts were undertaken, that such conduct was unlawful or even involved trade secrets, or that the failure to disclose those efforts or potential liability for that conduct would be materially misleading to investors. *City of Phila.*, 264 F.3d at 1264; *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 758–59 (1st Cir. 2011) (knowledge of regulatory change affecting product was insufficient for scienter where defendants did not expect "significant impact" and therefore did not risk misleading public).

**B.      Plaintiffs Fail to Allege Any Plausible Motive**

Plaintiffs argue that Mr. Trefler's ownership of approximately 49% of Pega's shares and

lack of sales during the putative class period supports an inference of scienter. Opp. 26. But their position is contrary to settled First Circuit law that substantial losses by defendants undermine an inference of scienter. *See, e.g.*, *Maldonado v. Dominguez*, 137 F.3d 1, 12 n. 9 (1st Cir. 1998).[23]

Plaintiffs' argument that Defendants had a motive to conceal Appian's request for injunctive relief is also flawed.[24] Opp. 26. Not only does the Complaint fail to allege that injunctive relief would threaten Pega's survival, but even in cases where a company was in difficult financial straits, courts require far more detailed allegations regarding a company's risk of shuttering to overcome the problem that generic corporate motives are insufficient. *See, e.g.*, *In re Cabletron Sys., Inc.*, 311 F.3d 11, 39–40 (1st. Cir. 2002) (finding motive to misstate financials where facts pled demonstrated "executives' careers and the very survival of the company were on the line," surpassing "usual concern by executives to improve financial results"). Moreover, it is implausible that Defendants concealed a public case for which the verdict would be publicly disclosed. Mem. 26; *see Sousa v. Sonus Networks, Inc.*, 261 F. Supp. 3d 112, 120–21 (D. Mass. 2017) ("implausible" to intentionally make wrong projection "with the almost certain prospect of having to publicly correct" it).

### C. Plaintiffs' Arguments for Corporate Scienter Are Flawed

---

[23] Plaintiffs attempt to salvage their argument by relying on *Collier v. ModusLink Global Solutions, Inc.*, in which the court found that stock trading "does not necessarily bear upon Plaintiffs' scienter allegations." 9 F. Supp. 3d 61, 74 (D. Mass. 2014). This Court recently rejected a similar argument. *See* Mem. & Order at 34, 36–37, *Quinones et al. v. Frequency Therapeutics, Inc.et al.*, No. 21-10933 (D. Mass. Mar. 29, 2023), ECF No. 45 (hereinafter "*Frequency* Order") (rejecting argument that absence of stock sales by defendants is evidence of scienter, and further noting that defendants' retention of significant holdings in company undercuts scienter).

[24] *Brumbaugh v. Wave Systems Corp.* is inapposite. There, plaintiffs adequately alleged that the company was on "the proverbial brink"—based on a quarter-billion-dollar debt and "onerous" private placement terms—and detailed insider trading, which provided "additional ballast" to scienter allegations. *Brumbaugh v. Wave Sys. Corp.*, 416 F. Supp. 2d 239, 253–54 (D. Mass. 2006). No such facts are pled here. Furthermore, *Aldridge* only reinforces that Plaintiffs' motive allegations are lacking. Opp. 26. The *Aldridge* plaintiffs alleged that the company was in jeopardy by pointing to a critical year in which the company tried to transition to a new product line and by alleging the impact of these unusual pressures on defendants (e.g., quoting one defendant as saying: "If I can't turn the company around in one year, I won't be here."). *Aldridge*, 284 F.3d at 83–84. Nothing of the sort is pled here. *See* Ex. 30 (10/26/22 Form 10-Q) at 30 ("we continue to believe that we have the financial strength to pay" judgment exceeding $2B).

Because Plaintiffs have not adequately alleged scienter with respect to the Individual Defendants, as described *supra* § III.A, and because Plaintiffs rely solely on the Individual Defendants' scienter to plead corporate scienter (Opp. 26–27), they do not adequately plead Pega's scienter. *See In re Bos. Sci. Corp. Sec. Litig.*, 2022 WL 17823837, at *30 (D. Mass. Dec. 20, 2022) (finding company liable where CEO "made material misrepresentations with the requisite scienter."); *see also* Mem. 19–26. In addition, the core operations doctrine does not apply—an argument Defendants made expressly in their opening brief. *See* Mem. 27 n.41.[25]

### D. The Only Compelling Inference Is That Pega Timely Disclosed the Virginia Litigation Consistent With Relevant Disclosure Rules and GAAP

Taking all the allegations in the Complaint together, and considering the lack of motive, the only compelling inference is plain: Defendants were sued in routine litigation with an ongoing adversary, involving relatively low-value claims they genuinely believed lacked merit. They did not believe the litigation was material at first, but disclosed it just days after Appian increased its damages claim **30-fold to $3 billion**. *See, e.g.*, *N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 54, 58 (1st Cir. 2008) (affirming dismissal where plaintiffs' theory was "not nearly as compelling as opposing inferences"); *Wasson v. LogMein, Inc.*, 2021 WL 1080201, at *10 (D. Mass. Mar. 18, 2021) (dismissing complaint where inference of scienter posited by plaintiffs was "not as cogent and compelling as the opposing inference of nonfraudulent intent").[26]

## IV. Plaintiffs' Allegations of Loss Causation Are Insufficient

Plaintiffs' loss causation allegations fall short under *any* pleading standard. As to the February 16, 2022 disclosure, Plaintiffs have not plausibly alleged loss causation because stating

---

[25] This Court recently reaffirmed the longstanding view that the "core operations" doctrine does not apply in the absence of a "plus factor." *See Frequency* Order at 45-46. No such plus factor is alleged here. *See* Mem. 27 n.41.

[26] Plaintiffs' Section 20(a) "control person" claim fails because they have not pled a primary violation of Section 10(b). CAC ¶¶ 268–78; *see Winters v. Stemberg*, 529 F. Supp. 2d 237, 253 (D. Mass. 2008).

19

that Pega's stock dropped more than the market (Opp. 29) does not amount to "eliminat[ing] other possible explanations for [the] price drop," such as Pega's financial results (on which analysts universally focused). *Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 237–38 (1st Cir. 2013); *see* Mem. 29 n.45.[27]  As to the May 9 and September 16 disclosures, Plaintiffs have not plausibly alleged loss causation because they have not shown that disclosures concerning the verdict and its size were corrective in light of the detailed February disclosure. *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005); Mem. 29–30.  Plaintiffs' attempt to distinguish *Leung v. bluebird bio, Inc.*, one of many cases Defendants cite, by arguing that Pega concealed the "true extent and likelihood" of its liability, is meritless.  Opp. 30.  Pega specifically disclosed in February 2022 the nature of the claims and that Appian sought damages of $3 billion, and warned that there was "uncertainty as to how a jury may rule." Ex. 6 (2021 Form 10-K) at 23, 63; *cf. Leung v. bluebird bio, Inc.*, 599 F. Supp. 3d 49, 70 (D. Mass. 2022) (finding no loss causation where defendants disclosed risk of adverse FDA decision several times).  The later stock drops were the materialization of an already known risk, no more. *See Lentell*, 396 F.3d at 173.[28]

## CONCLUSION

For the foregoing reasons, and for the reasons set out in the opening brief, the Complaint should be dismissed with prejudice and without leave to amend.[29]

---

[27] *Special Situations Fund III, L.P. v. American Dental Partners, Inc.*, on which Plaintiffs rely, predates *Massachusetts Retirement Systems*. *See* 775 F. Supp. 2d 227, 244–45 (D. Mass. 2011). *American Dental's* holding that a plaintiff can plead loss causation merely by showing "that the share price fell significantly after the truth became known" is based on an outdated standard. *See id.*

[28] Arguments of this nature are routinely raised and resolved on motions to dismiss. *See, e.g., Lentell*, 396 F.3d at 173, 175 n.4; *Leung*, 599 F. Supp. 3d at 69–70.

[29] *See Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015) (affirming dismissal; "a mention in a footnote in the[] opposition to dismissal" is not a proper request to amend).

Dated: April 3, 2023

Respectfully submitted,

*Daniel W. Halston*

Daniel W. Halston (BBO # 548692)
Michael G. Bongiorno (BBO # 558748)
Robert Kingsley Smith (BBO # 681914)
Erika M. Schutzman (BBO # 696241)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
Daniel.Halston@wilmerhale.com
Michael.Bongiorno@wilmerhale.com
Robert.Smith@wilmerhale.com
Erika.Schutzman@wilmerhale.com

*Counsel for Defendants*