# Exhibit 34

IN THE
# Court of Appeals of Virginia

### RECORD NO. 1399-22-4

PEGASYSTEMS INC.,

*Appellant*,

*v.*

APPIAN CORPORATION,

*Appellee*.

## OPENING BRIEF OF APPELLANT

Monica T. Monday
 (VSB No. 33461)
Michael J. Finney
 (VSB No. 78484)
GENTRY LOCKE
10 Franklin Road S.E.
Suite 900
Roanoke, VA  24011
T: (540) 983-9300
F: (540) 983-9400
Monday@gentrylocke.com
Finney@gentrylocke.com

E. Joshua Rosenkranz
 (Pro Hac Vice)
Christopher J. Cariello
 (Pro Hac Vice)
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
(212) 506-5000
jrosenkranz@orrick.com
ccariello@orrick.com

Eric A. Shumsky (Pro Hac Vice)
Jeremy Peterman (Pro Hac Vice)
James A. Flynn (Pro Hac Vice)
Jonas Wang (Pro Hac Vice)
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
eshumsky@orrick.com
jpeterman@orrick.com
jflynn@orrick.com
jonas.wang@orrick.com

*Counsel for Appellant*

itself (the "what") but only its "architecture and design" (the "how").  *Supra* 30.

The best way to disprove that was by showing the jury how each function either

predated Zou or worked differently from Appian's, or both.  For example, Pega

could have demonstrated that its edit button actually performed a different function

from Appian's, and that the other alleged improvements were independent of Zou.

R.39029, 39237-38.  At a minimum, the demonstration would also have shown the

jury that any alleged benefit could not justify $2 billion in damages.

Appian exploited the gap by urging the jury in closing to discount Pega's

testimony denying that it copied, because Pega asked the jury to "take [its] word

for it," with no corroborating evidence.  R.42901; *see* R.39084.

**III.    The Trial Court's Erroneous Causation And Damages Rulings Require
A New Trial.**

The trial court inflicted a similar one-two punch on Pega with respect to

causation and damages.  First, ignoring clear statutory text, the court relieved

Appian of the burden that applies to every plaintiff: to prove that the defendant's

wrongdoing proximately caused the claimed damages.  Instead, the court issued

jury instructions requiring that Appian prove only Pega's *total revenues from all*

*products*—and forcing Pega to prove which revenues were *not* caused by the

alleged misappropriation.  § III.A.  Then, having incorrectly shifted the burden to

Pega, the trial court blocked Pega from satisfying it by excluding compelling

evidence disproving the causal link between Appian's claimed trade secrets and Pega's sales. § III.B. These errors independently require a new trial on all issues.

**A.    The trial court erroneously relieved Appian of its burden to prove the amount of unjust enrichment caused by misappropriation.**

VUTSA requires the "complainant" to "prove" that any "unjust enrichment" damages were "caused by misappropriation." Code § 59.1-338(A). Yet, the court relieved Appian of its burden to prove that the alleged misappropriation caused Pega to win any sale, much less every sale. And it rejected Pega's requests for instructions requiring Appian to prove that "Pega's wrongful conduct was the proximate cause of Appian's damages." R.9221.

Instead, the court instructed the jury to apply an unprecedented burden-shifting approach: Upon proving that Pega misappropriated even just one purported trade secret, Appian's only further burden was to "establish[] by … greater weight of the evidence Pegasystems' *sales*"—period. R.15954, 42860 (emphasis added). The result was a presumption not just that the misappropriation benefited Pega *but also* that the purported trade secrets were the but-for cause of every penny Pega earned on every product, including from product lines that could not use, and are not alleged to have used, Appian's claimed trade secrets at all. Once Appian proved that Pega's *total 2013-2021 revenue* was $6 billion, R.37669, the instruction shifted the burden to Pega to prove what

40

"portion of the sales [was] *not* attributable to the trade secrets."  R.15954, 42861 (emphasis added).

On de novo review, the trial court's instruction is reversible error. Consistent with Virginia common law, VUTSA's plain language requires the plaintiff to prove damages caused by misappropriation.  It thereby forecloses a burden-shifting approach that relieves plaintiffs of such a burden.  § III.A.1.  Even if some form of burden-shifting were permissible under VUTSA, the court erred in crafting the unprecedented instruction applied here.  § III.A.2.  The erroneous instruction was highly prejudicial, and it drove the verdict sky-high.  § III.A.3.

### 1.  VUTSA requires plaintiffs to prove the damages caused by misappropriation—foreclosing burden-shifting.

**a.**  Statutory construction "begin[s] with the language of the statute." *Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 705 (2012).  When a statute "is plain and unambiguous, [courts] are bound by th[at] plain meaning." *Jones v. Commonwealth*, 296 Va. 412, 415 (2018) (quotation marks omitted).  A court "must presume that the General Assembly chose, with care, the words that appear in a statute, and must apply the statute in a manner faithful to that choice." *Id.*

VUTSA's text places the burden—to prove unjust-enrichment damages caused by misappropriation—squarely on the complainant (plaintiff):

41

> Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. *If a complainant is unable to prove a greater amount of damages by other methods of measurement*, the damages caused by misappropriation can be measured exclusively by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

Code § 59.1-338(A) (emphasis added).

The first sentence authorizes damages in the form of actual loss and/or unjust enrichment caused by misappropriation. The second sentence prescribes when a plaintiff may pursue a reasonable royalty. In doing so, the second sentence refers to "other methods of measurement"—those other methods being actual loss and unjust enrichment, mentioned in the first sentence. *Id.* Thus, a reasonable royalty is available only "[i]f a complainant is unable to prove a greater amount of [actual loss and/or unjust enrichment damages caused by misappropriation]."

Because a royalty hinges on the *complainant's* inability to *prove* higher unjust-enrichment damages, it must be the *complainant* who has the burden to prove unjust enrichment caused by misappropriation in the first place. Otherwise, that key phrase ("complainant is unable to prove") is superfluous. *See Wintergreen Homestead, LLC v. Pennington*, 76 Va. App. 69, 76 (2022) (courts must give "every word … of the statute, if possible, its due effect and meaning"). Thus, the statute's plain meaning allocates the burden of proving unjust enrichment and, in doing so, forecloses burden-shifting.

42

This statutory burden is deliberate:  When it drafted this provision, the General Assembly deviated from the pre-existing model Uniform Trade Secrets Act to add the critical language ("complainant is unable to prove").  The Uniform Act lacks that language and does not explicitly allocate the burden of proof.  Instead, the corresponding sentence allows royalties "[i]n lieu of damages measured by any other methods."  Uniform Trade Secrets Act § 3(a), *reproduced at* R.11229-30.  When the General Assembly changed this to "[i]f a complainant is unable to prove a greater amount of damages," it codified language unique to Virginia among state statutes.  Courts must effectuate this "deliberate and intentional" choice.  *Commonwealth v. Champion Int'l Corp.*, 220 Va. 981, 992 (1980).

In short, the statute here is "clear on its face," and the court therefore need "look no further."  *Virginia Dep't of Tax'n v. R.J. Reynolds Tobacco Co.*, 300 Va. 446, 455 (2022) (quotation marks omitted).

But even if VUTSA were silent as to allocating the burden of proof—Appian would *still* bear the burden.  VUTSA *is* silent as to the burden of proving the misappropriation element of a trade-secret claim.  Despite that silence, the Supreme Court, in *MicroStrategy*, held that "[t]he plain language of [VUTSA] does not provide any burden-shifting requirement" for the misappropriation element, and courts may not import one.  268 Va. at 265.  That reflects the broader

43

principle that when "the General Assembly did not expressly include [burden-shifting] in the statute," a court may not "add[] [the] requirement." *David v. David*, 287 Va. 231, 240 (2014).

It is no surprise, then, that the Supreme Court has held that trade-secrets plaintiffs have "the burden of proving with reasonable certainty the amount of damages and the cause from which they resulted." *Banks v. Mario Indus. of Va., Inc.*, 274 Va. 438, 455 (2007) (quoting *Saks Fifth Ave., Inc. v. James, Ltd.*, 272 Va. 177, 188 (2006)).

**b.** The statute's plain meaning is also reinforced by common-law principles, which apply "unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law." *Wicks v. City of Charlottesville*, 215 Va. 274, 276 (1974); *accord* Code § 1-200. VUTSA has no such express language or necessary implication.

Virginia law places the burden on plaintiffs "in any case" to "prove with reasonable certainty the amount of [their] damages and the cause from which they resulted." *Hale v. Fawcett*, 214 Va. 583, 585-86 (1974); *accord Banks*, 274 Va. at 455. Plaintiffs must "show the necessary factor of proximate causation." *Saks*, 272 Va. at 190. Proximate cause requires plaintiffs to prove that defendants' unlawful conduct "produce[d]" the damages in a "natural and continuous sequence" and that it was a but-for cause "without which that event" (here, a Pega

sale) "would not have occurred." *Ford Motor Co. v. Boomer*, 285 Va. 141, 150 (2013) (quoting *Wells v. Whitaker*, 207 Va. 616, 622 (1966)).

Per the leading treatise on Virginia remedies, this requirement squarely applies to trade-secrets claims—including unjust enrichment damages. 1 Sinclair on Virginia Remedies § 29-3[A] (2022), *reproduced at* R.11236-39.

Under these principles, it was not enough for Appian to prove only misappropriation plus Pega's total sales. Appian also had the burden to prove, at a minimum, that one caused the other—i.e., to show what share of Pega's sales were caused by the alleged misappropriation, and were therefore *unjust*. If Pega would have made a sale anyway, then the sale yielded no unjust enrichment. *See Saks*, 272 Va. at 188-91. As the Seventh Circuit explained, "[i]f General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits." *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983). Under VUTSA and long-standing causation and damages principles, Appian had to prove its damages *and their cause* with reasonable certainty.

The court was not free to adopt what it thought to be the "better view" based on policy rationales that "the defendant is the wrongful actor" and "has the best access to the information." R.38706-07. If either were enough, the Supreme Court would not have rejected burden-shifting in *Microstrategy*.

45

**2.    The trial court misapplied the Restatement's burden-shifting approach, which requires plaintiffs to prove sales causation.**

**a.**  The trial court brushed aside VUTSA's unique and clear text, the common law, and Virginia caselaw in favor of what it thought was the approach under the Restatement (Third) of Unfair Competition.  But even if that were permissible, the court was still wrong because it misread the Restatement.  By way of context, the Restatement reflects that *some* states condone *some* burden-shifting. *See ADA Motors, Inc. v. Butler*, 432 P.3d 445, 449-51 (Wash. 2018).  Notably, those states lack Virginia's unique statutory language expressly allocating the burden.  And not a single state has adopted the extreme burden-shifting the trial court invented here.

Even the states that allow burden-shifting require plaintiffs to prove more than misappropriation plus total sales.  They require plaintiffs to prove "whether or not the sales are attributable to the trade secret[s]"—what might be called sales causation.  *Id.* at 451.  They shift the burden to defendants only for two subsequent steps: (1) deducting expenses from revenue to yield profits; and (2) what is often called "apportionment."  *Id.* at 450-51.  Apportionment is the exercise, common throughout intellectual-property law, of segregating the portion of revenue from *any particular sale* that is attributable to the misappropriated information from the portion that is "not attributable to the trade secret[s]."  *Id.*  In other words,

46

apportionment segregates the value of the copied feature from the value attributable to the defendants' own contributions. *Id.*; *accord* William Kerr & Richard Troxel, *Calculating Intellectual Property Damages* §§ 7:2, 7:4 (2022).

All these steps—sales causation, apportionment, and profit calculation—are necessary to segregate the defendant's unjust gains from its just gains. *Id.* § 7:4 *Collelo v. Geographic Servs., Inc.*, 283 Va. 56, 84 (2012) (McClanahan, J., concurring and dissenting in part) (explaining that plaintiffs must "provid[e] a factual basis upon which a jury could discern between [defendants'] just and unjust enrichment"). Pega proposed an alternative instruction reflecting this regime. R.10876.

Even if the Restatement could supersede VUTSA's language, it would shift (at most) the last two steps: profits and apportionment. The Restatement still requires plaintiffs to prove the first step—the share of sales that were caused by the misappropriation. That is consistent with the uniform practice of the states that have adopted the Restatement.

The Restatement certainly does not excuse plaintiffs from proving that misappropriation caused even a single additional sale. The black-letter text of Restatement § 45 contemplates "a comparative appraisal of all the factors of the case" for determining whether plaintiffs have shown that "monetary relief is appropriate" *at all*. One of the "primary factors" is "the degree of certainty with

47

which *the plaintiff has established* the fact and extent of … pecuniary gain *resulting from the appropriation*." § 45(2)(a) (emphases added). In other words, § 45 expressly references the plaintiff's burden: to demonstrate sales causation.

The trial court erroneously overrode that principle by misreading a comment—comment *f*. But comment *f* confirms that plaintiffs bear the burden to show sales causation. It begins by defining the outer limits of recoverable unjust-enrichment damages: Plaintiffs can recover, at most, a defendant's "profits on *sales attributable to the use of the trade secret*." § 45, cmt. *f* (emphasis added). It then defines a plaintiff's burden as "establishing the defendant's sales." *Id.* But recall the limit imposed by that first sentence: Plaintiffs must show that a defendant's sales are within the recoverable universe—i.e., that they are attributable to use of the trade secrets. Comment *f* shifts to defendants only the subsequent steps, including apportionment, i.e., the "*portion*" of each sale that is "not attributable to the trade secret," which covers, for example, backing out the value of features that the defendant contributed. The defendant's burden—dealing with portions of sales—makes sense only if the plaintiff has already shown that the alleged trade secrets proximately caused each of those sales. The trial court erred in taking one sentence in one comment out of its context and turning it into a stand-alone damages instruction that contravenes controlling statutory language, caselaw, and the Restatement itself.

48

**b.** Multiple courts have read comment *f* as shifting only apportionment and profits, explaining that "[n]othing in the Restatement's framework relieved [the plaintiff] from its obligation to prove causation in the first instance." *Alifax Holding Spa v. Alcor Sci. Inc.*, 404 F. Supp. 3d 552, 574 (D.R.I. 2019), *appealed on other grounds*, No. 22-1723 (Fed. Cir.); *see Inteum Co. v. Nat'l Univ. of Sing.*, 371 F. Supp. 3d 864, 884-85 (W.D. Wash. 2019); *Lockheed Martin Corp. v. L-3 Commc'ns Integrated Sys., L.P.*, No. 05-cv-902, 2009 WL 8435667, at *3 (N.D. Ga. Apr. 9, 2009).

To support its contrary reading of comment *f*, the trial court adopted a selective reading of the law of one state. It invoked an intermediate appellate decision in Washington, *Petters v. Williamson & Assocs., Inc.*, 210 P.3d 1048, 1054 (Wash. Ct. App. 2009). R.42762-64. That was wrong twice over. To start, *Petters* did not absolve plaintiffs of the initial burden of proving sales causation; it addressed only the apportionment burden, "the burden of demonstrating which *portion* … was not, in fact, attributable to the transfer." 210 P.3d at 1054 (emphasis added).

Moreover, in *ADA Motors*, that very same Washington court later emphasized a plaintiff's initial sale causation burden, when it flatly rejected an instruction nearly identical to the one issued here. *See* 432 P.3d at 450-51. The instruction was: "Plaintiff has the initial burden of proving defendants' sales." *Id.*

49

at 451 (emphasis omitted).  The appellate court held the instruction improper—

even under *Petters*—because it could "be read to allow the plaintiff to satisfy its

burden with gross sales data, *whether or not the sales are attributable to the trade

secret*," *id.* (emphasis added)—precisely the trial court's error here.  The

Washington court explained that a proper instruction must impose on plaintiffs the

burden of proving not just any sales, but sales "attributable to the trade secret,"

*id.*—precisely what Pega urged here.

Here, the trial court acknowledged that its instruction was inconsistent with

Washington law:  "I see that and I disagree with [*ADA Motors*'s] conclusion.…  I

think this is the wrong standard" under Virginia law.  R.42763-64.  It gave no

explanation for selectively adopting one Washington decision while rejecting a

subsequent—and controlling—holding of the same court.  Thus, the court departed

from the very authorities it invoked—the Restatement and Washington law.

**c.**  A final reason to enforce the requirement that Appian prove causation

before any burden can shift is that this interpretation of VUTSA would avoid a

constitutional issue.  The trial court's instruction amounted to a presumption that

every time Pega made a sale, misappropriation caused that sale.  The Fourteenth

Amendment, however, forbids such presumptions where there is not at least "a

rational connection between what is proved and what is to be inferred"—especially

where a plaintiff is relieved of the burden to show causation.  *W. & Atl. R.R. v.*

50

*Henderson*, 279 U.S. 639, 642 (1929) (unconstitutional presumption of negligence and causation based on mere showing of accident and injury); *see Hensler v. City of Davenport*, 790 N.W.2d 569, 586-89 (Iowa 2010). Here, Appian was not required to and did not prove any facts from which a rational inference of causation could be drawn. As the U.S. Supreme Court explained, "[r]easoning does not lead from the occurrence" (i.e., a Pega sale) "back to its cause" (i.e., alleged misappropriation). *Henderson*, 279 U.S. at 643. Whether because the trial court's instruction incorrectly stated Virginia law, or because it is constitutionally defective, the verdict must be set aside.

### 3.    The erroneous jury instruction was prejudicial.

The instructional error requires a new trial. Prejudice is presumed because Jury Instruction 14 misstated the parties' burdens on the fundamental elements of causation and damages. The harmless-error doctrine "is never applied … when it appears that the jury has been misinstructed and, had it been properly instructed, that it might have returned a different verdict." *Rhoades v. Painter*, 234 Va. 20, 24 (1987). Not only "might" a proper instruction have yielded a different verdict; it almost certainly would have. The instruction assigned Appian the lightest possible burden: to prove one revenue number that was itself undisputed and, indeed, established by Pega's own audited financial statements. It required no showing of causation at all.

51

Even the trial court "agree[d]" that if the instruction was erroneous, it "did cause significant prejudice."  R.43493-94.  Appian too confirmed just how consequential that ruling was, by telling the jury that "[t]he burdens of proof … are critical" and repeatedly emphasizing the erroneous instruction:  "We just got to show all the money that flowed in, the 6 billion plus from their customers, right?  That's what we have to show."  R.43206-07; *see* R.11291, 42996-3008, 43211-14; *Keesee v. Donigan*, 259 Va. 157, 162 (2000) (identifying prejudice from "emphasi[s] … in [a] closing argument").

The instruction was especially prejudicial because Appian's had little to no evidence to support such a massive verdict—as to sales causation or apportionment.  On sales causation, Appian's damages expert conceded he was "not talking about what would have happened but for use of the trade secrets."  R.37746.  He further conceded that Pega's sales were "made for a lot of reasons[:] price, sales relationships, and the like."  R.37743.  And he failed to exclude sales of Pega products other than the BPM platform.

On apportionment, Appian's experts did not even try.  Appian's technical expert conceded that Pega's BPM platform had "numerous capabilities" which "ha[ve] nothing to do with the case" and were "continuously … being added" from "within the Pega canon."  R.42624-25.  His own analysis identified roughly 50 such improvements to Pega's BPM platform—improvements he conceded "had

52

value." R.42627. Yet Appian's theory attributed every cent of Pega's revenue to misappropriation and nothing to these other "valu[able]" features. In support, the expert offered only a conclusory opinion that Appian's alleged trade secrets were important in the BPM marketplace and to Pega's survival as a company. R.42975, 43209. Beyond that, Appian pointed to little more than internal documents in which Pega employees suggested that Zou-obtained intelligence would confer an advantage in the subset of sales in which Appian competed against Pega (i.e., the $479 million). *E.g.*, R.42926.

Because a jury could easily have concluded this was not enough to justify a $2 billion verdict, a new trial is required. *Cain v. Lee*, 290 Va. 129, 136 (2015).

**B.     The trial court erroneously excluded evidence that other causes drove Pega's sales.**

Having erroneously saddled Pega with the burden on causation and damages, the trial court then prevented Pega from meeting that burden. It precluded Pega from presenting testimony or documents, or conducting cross-examination, to demonstrate that much of Pega's revenue was attributable to products with which Appian did not compete and functions that—as Appian's expert conceded—had "nothing to do with the case." R.42625. Specifically, the trial court made the following rulings:

1.   It prohibited Pega CEO Trefler from testifying (or demonstrating through supporting documents, including Appian's own evidence) that

53

misappropriated, and which the jury thought caused any damages. Without knowing that, there is no way for a new jury to allocate damages specific to those purported trade secrets. *See McGinn v. Merrill Lynch*, 736 F.2d 1254, 1259 (8th Cir. 1984) (requiring a new trial on liability and damages, "the first jury having concluded that some, but not all, of the trades were churned, and there being no way to communicate to the second jury which trades were included in this finding"); R.37921-23 (Appian's damages expert conceding that his analysis did not consider scenarios where fewer than all asserted trade secrets were misappropriated). This is especially problematic because one possible explanation for the jury's decision to cut Appian's $3 billion demand to $2 billion was that the jury rejected liability based on some unknown subset of the asserted trade secrets. Therefore, a new trial is required as to both liability and damages.

## CONCLUSION

The Court should vacate the VUTSA judgment and dependent attorneys' fee and interest award, R.18129-31, and enter judgment in Pega's favor or, in the alternative, remand for a new trial.

Respectfully submitted,

*/s/ Monica T. Monday*
Monica T. Monday
 (VSB No. 33461)
Michael J. Finney
 (VSB No. 78484)
GENTRY LOCKE

10 Franklin Road S.E.
Suite 900
Roanoke, VA 24011
T: (540) 983-9300
F: (540) 983-9400
Monday@gentrylocke.com
Finney@gentrylocke.com

E. Joshua Rosenkranz
 (Pro Hac Vice)
Christopher J. Cariello
 (Pro Hac Vice)
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
(212) 506-5000
T: (212) 506-5000
F: (212) 506-5151
jrosenkranz@orrick.com
ccariello@orrick.com

Eric A. Shumsky (Pro Hac Vice)
Jeremy Peterman (Pro Hac Vice)
James A. Flynn (Pro Hac Vice)
Jonas Wang (Pro Hac Vice)
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
T: (202) 339-8400
F: (202) 339-8500
eshumsky@orrick.com
jpeterman@orrick.com
jflynn@orrick.com
jonas.wang@orrick.com

*Counsel for Appellant*

February 6, 2023

61