# EXHIBIT 2

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CITY OF FORT LAUDERDALE POLICE AND FIREFIGHTERS' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. 1:22-cv-11220-WGY |
| Plaintiff, | ) ) | PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS |
| vs. | ) ) ) | |
| PEGASYSTEMS INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

Pursuant to Federal Rules of Civil Procedure 26 and 34, Lead Plaintiffs Central Pennsylvania Teamsters Pension Fund - Defined Benefit Plan, Central Pennsylvania Teamsters Pension Fund - Retirement Income Plan 1987, and Construction Industry Laborers Pension Fund request that each of the Defendants (defined below) respond to and produce for inspection and copying the documents designated under the heading "Document Requests" within 30 days from the date of service of this request, to the offices of Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, California 92101, or at such other place as the parties mutually agree.

The responding parties are required to produce all requested documents that are in their actual or constructive possession, custody, or control, or in the actual or constructive possession, custody, or control of their officers, employees, agents, or representatives.  The responding parties shall produce said documents as they are kept in the usual course of business and shall organize and label them to correspond with the categories in the request.

## I.    DEFINITIONS

1.    "Action" refers to this lawsuit captioned *City of Fort Lauderdale Police and Firefighters' Retirement System v. Pegasystems Inc., et al.*, No. 1:22-cv-11220-WGY (D. Mass.).

2.    "All," "any," and "each" shall each be construed as encompassing any and all.

3.    "Appian" means Appian Corporation.

4.    "Appian Complaints" refers to the Complaint, filed May 29, 2020, the First Amended Complaint, filed October 21, 2021, and the Second Amended Complaint, filed February 11, 2022 in the Virginia Action (defined below).

5.    "ASC 450" means Financial Accounting Standards Board Accounting Standards Codification Topic 450, *Contingencies*.

6.    "Class Period" refers to the period June 16, 2020 to May 9, 2022.

- 1 -

7.      "Code of Conduct" refers to Pegasystems' (defined below) Code of Conduct available at www.pega.com as described in Pegasystems' Forms 10-K filed on February 12, 2020 and February 17, 2021 with the United States Securities and Exchange Commission ("SEC").

8.      "Communication" or "communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

9.      "Complaint" means Lead Plaintiffs' Consolidated Amended Complaint for Violations of the Federal Securities Laws (ECF 61), filed on October 18, 2022.

10.     "Concerning" means referring to, relating to, describing, evidencing, or constituting.

11.     "Defendants" refers to defendant Pegasystems and the Individual Defendants (defined below).

12.     "Deloitte" refers to Deloitte and Touche LLP and any of its members (as defined by 0.400.12 and 0.400.18, formerly ET §92.07 and ET §92.11, respectively, of the American Institute of Certified Public Accountants Code of Professional Conduct, adopted January 12, 1988 and renumbered effective December 15, 2014), and any of Deloitte's predecessors, successors, parents, subsidiaries, divisions, partnerships, and branches; its international, foreign, national, regional, and local offices; all present or former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants, and all other persons (defined below) acting or purporting to act on its behalf.

13.     "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a)(1)(A).  A draft or nonidentical copy is a separate document within the meaning of this term.

14.     "Electronically stored information" or "ESI" refers to any original and non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations,

- 2 -

marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital, or other programs, programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines, electronic mail or "email," operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull-down tables, logs, file layouts, or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment.  "ESI" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs, or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.  "ESI" also includes, without limitation, any MMS or SMS text messages and any electronic instant messages (*e.g.* via Slack, Microsoft Teams, Signal, Google Chats, Discord, Skype, or WhatsApp), including, but not limited to, messages in an internal messaging system or external personal account on desktop, laptop, mobile phone, tablet, or other mobile device, concerning the topics in the following requests.

   15. "Employee" refers to any person who at any time acted or purported to act on your (defined below) behalf or under your supervision, direction or control, including, without limitation, past and current directors, officers, principals, partners, executives, analysts, investment bankers, consultants, advisors, representatives, agents, trustees, independent contractors, assigns, businesses, or similar persons or entities.

   16. "GAAP" refers to Generally Accepted Accounting Principles.

- 3 -

17.     "Identify," with respect to documents, means to give, to the extent known, the: (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

18.     "Identify," with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

19.     "Individual Defendants" refers to Alan Trefler and Kenneth Stillwell.

20.     "Item 103" means SEC Regulation S-K Item 103.

21.     "Pegasystems" or the "Company" refers to Pegasystems Inc., any of its direct or indirect subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, present and former officers, directors, employees, agents, accountants and advisors, and all other persons acting or purporting to act on its behalf.

22.     "Person" or "persons" means any natural person or any business, legal, or governmental entity or association.

23.     "Policy" or "policies" means any rule, procedure, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, that was recognized or followed, explicitly or implicitly, including any practice memoranda or manuals.

24.     "Senior Management" means any person who is of the level of vice president or higher at Pegasystems.

25.      "Virginia Action" refers to the action *Appian Corporation v. Pegasystems Inc., et al.*, Civil Action No. 2020-07216 (Circuit Court of Fairfax County, Virginia) and the appellate action *Pegasystems Inc. v. Appian Corporation*, No. 1399-22-4 (Va. Ct. App.).

26.      "You" or "your" means the person or entity responding to these requests.

## II.      INSTRUCTIONS

1.      In responding to these requests, you shall produce all responsive documents which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of your respective directors, executives, officers, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.      Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection and copying by Lead Plaintiffs original documents as they are kept in the usual course of business and you shall organize and label them to correspond with the categories in these requests.

3.      In responding to these requests, you shall produce all responsive documents available at the time of production and you shall supplement your responses as required by Rule 26(e).

4.      If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is (a) missing or lost, (b) destroyed, (c) transferred voluntarily or involuntarily to others, or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

5.      If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

        (a)     the privilege being asserted;

        (b)     the person on whose behalf the privilege is asserted;

        (c)     a precise statement of the facts upon which the claim of privilege is based; and

        (d)     identify the purported privileged document including:

                (i)     its nature, *e.g.*, letter, memorandum, tape, etc.;

                (ii)     the date it was prepared;

                (iii)     the date the document bears;

                (iv)     the date the document was sent;

                (v)     the date it was received;

                (vi)     the name of the person who prepared the document;

                (vii)     the name(s) of the person(s) who received the document;

                (viii)     the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

                (ix)     a statement of whom each identified person represented or purported to represent at all relevant times.

6.      If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction No. 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

7.      You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instruction Nos. 5 and 6 above) regardless of whether you consider the entire document to be relevant or responsive to the requests.

8.      The singular of any term includes the plural, and the disjunctive shall include the conjunctive, and vice versa.

## III.      PRODUCTION OF HARD COPY DOCUMENTS – FORMAT

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN."  The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  Multi-page OCR text for each document should also be provided.  The OCR software shall maximize text quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV.      PRODUCTION OF ESI

1.      Format: Except where otherwise noted in this section, ESI should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet and presentation type files, audio and video files, photo or graphic images, and documents with tracked changes reflected in the metadata, which should be produced in native format.  Short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams,

G-Chat, Bloomberg, etc.) will be produced in RSMF with all available metadata and attachments. Except for messages that contain privileged content, the complete communication will be produced, separated into 24-hour increments.  To the extent RSMF cannot be provided, the parties shall meet and confer on the appropriate metadata fields and format of production.  If an original document contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.  TIFFs/JPGs should show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document.  For example, TIFFs/JPGs of email messages should include the BCC line, and documents should display comments and hidden content.

2.      Format – Native Files: If a document is produced in RSMF or in native format, a single-page, Bates stamped image slip sheet stating the document has been produced in native format should also be provided, with the exception of PowerPoint presentations.  PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes.  Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.      De-Duplication: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an

- 8 -

email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and email thread suppression is not acceptable. De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field should list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents should be produced prior to substantial completion of the document production.

4. Technology-Assisted Review: Predictive coding/technology-assisted review shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

5. Metadata: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language. For ESI other than email and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, Google Docs, etc., the parties should meet and confer as to the appropriate metadata fields to be produced.

6. Embedded Objects: Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field. The parties

agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

7.     Attachments: If any part of an email or its attachments is responsive, the entire email and attachments should be produced, except any attachments that must be withheld or redacted on the basis of privilege.  The parties should meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege.  The attachments should be produced sequentially after the parent email.  The parties shall use their best efforts to collect and produce point-in-time documents that are links in documents and emails, including, but not limited to, Google G Suite, Microsoft 365, etc.  Documents extracted from links shall be populated with the BEGATTACH and ENDATTACH metadata fields to show the family relationship.  If documents cannot be extracted from links at the time of collection, the parties agree to promptly meet and confer to discuss alternative methods of collection and production.

8.     Compressed File Types: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

9.     Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production.  Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

10.     Exception Report: The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type, and the file location.

11.     Encryption: To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the

- 10 -

encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

12.     Redactions: If documents that the parties have agreed to produce in native format need to be redacted, the parties should implement redactions while ensuring that proper formatting and usability are maintained.  Spreadsheets requiring redaction should be redacted using native redaction software and produced in native format.

## V.     RELEVANT PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from January 1, 2020 to the date of production (the "Relevant Period"), and shall include documents and information that relate to such period, even if dated, prepared, generated, used, published, or received outside of the Relevant Period.  If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## VI.     DOCUMENT REQUESTS

REQUEST FOR PRODUCTION NO. 1:

All documents concerning the Virginia Action, including all documents concerning any evaluation, analysis, inquiry, or assessment:

(a)     of the claims, defenses, or allegations in the Virginia Action;

(b)     of any damages or request for relief alleged by Appian in the Appian Complaints;

(c)     of any loss or liability that Pegasystems could incur as a result of the Virginia Action;

- 11 -

(d)      of whether to publicly disclose or discuss the Virginia Action or conduct alleged in the Virginia Action;

(e)      of the probability of an unfavorable outcome to Pegasystems from the Virginia Action;

(f)      of the assessment whether or not the Virginia Action originated outside the ordinary course of business;

(g)      of the actual or potential impact of the Virginia Action on the sale, use, or licensing of Pegasystems' software, services, or platform;

(h)      of whether to record an accrual in connection with the Virginia Action; and

(i)      of how a jury might rule in the Virginia Action.

REQUEST FOR PRODUCTION NO. 2:

All documents produced in fact and expert discovery in the Virginia Action, including, but not limited to, all:

(a)      documents produced in response to requests for production of documents, interrogatories, requests for admission, or document subpoenas;

(b)      written objections and responses to requests for production of documents, interrogatories, requests for admission, or document subpoenas;

(c)      expert reports and the documents relied upon by the expert, including the expert reports of William Easttom, Paul Pinto, Simon Platt, James Malackowski, Richard Marshall, and Eric Cole;

(d)      transcripts (and exhibits) to fact and expert depositions taken in the Virginia Action; and

(e)      privilege logs.

This request is made without regard to the Relevant Period.

REQUEST FOR PRODUCTION NO. 3:

All pleadings, transcripts, orders, and other documents filed with, submitted to, or docketed by, courts in the Virginia Action, including, but not limited to, all:

        (a)     transcripts of hearings and trial proceedings;

        (b)     motions, responses, declarations, exhibits, appendices, and other pleadings filed with the courts in the Virginia Action; and

        (c)     trial exhibit lists, trial exhibits, witness lists, and jury instructions.

This request is made without regard to the Relevant Period.

REQUEST FOR PRODUCTION NO. 4:

All documents, including all drafts thereof, concerning the preparation, content, review process, and submission of Pegasystems' SEC filings during the Relevant Period, including, but not limited to, all documents concerning the ASC 450 and Item 103 assessments made for contingencies or legal proceedings.

REQUEST FOR PRODUCTION NO. 5:

All documents concerning your communications with, requests by, or actions of, the SEC or any other governmental agency concerning Pegasystems, including, but not limited to, all documents concerning any request by the SEC for information relating to the Virginia Action or Appian Complaints, including the SEC's request for information as disclosed in Pegasystems' Form 10-Q filed on April 26, 2023.

REQUEST FOR PRODUCTION NO. 6:

All documents concerning Pegasystems' accounting and reporting policies and procedures for contingencies or legal proceedings, including policies and procedures with respect to ASC 450

- 13 -

and Item 103, including, but not limited to, all documents concerning Defendants' compliance with or deviation from Pegasystems' accounting and reporting policies and procedures for contingencies or legal proceedings.

REQUEST FOR PRODUCTION NO. 7:

All documents concerning your accounting treatment and reporting of the Virginia Action or Appian Complaints, including, but not limited to, all assessments, evaluations, and disclosure considerations conducted under ASC 450 and Item 103.

REQUEST FOR PRODUCTION NO. 8:

All documents and communications relating to any consultation with third parties, regarding Pegasystem's accounting policies and procedures and/or GAAP as it relates to contingencies or legal proceedings, including, but not limited to, the Virginia Action or Appian Complaints.

REQUEST FOR PRODUCTION NO. 9:

All documents concerning communications with Deloitte, including, but not limited to, all:

(a)     documents concerning any audit or review by Deloitte of Pegasystems' financial statements or public disclosures; and

(b)     documents provided to, or received from, Deloitte concerning the Virginia Action, the Appian Complaints, Pegasystems' accounting for contingencies or legal proceedings, or Pegasystems' reporting of contingencies or legal proceedings.

REQUEST FOR PRODUCTION NO. 10:

All documents you reviewed, considered, generated, or relied upon each time you determined not to publicly disclose or discuss the Virginia Action prior to February 16, 2022.

4858-8458-4806.v1

**REQUEST FOR PRODUCTION NO. 11:**

All documents you relied upon in making, or documents concerning, your statements on February 16, 2022 that:

        (a)    "the claims brought by Appian against the Company are without merit";

        (b)    "the Company has strong defenses to these claims";

        (c)    "any alleged damages claimed by Appian are not supported by the necessary legal standard of proximate cause"; and

        (d)    "[t]he Company is unable to reasonably estimate possible damages or a range of possible damages given the Company's belief that the damages claimed by Appian fail to satisfy the required legal standard and due to the uncertainty as to how a jury may rule."

**REQUEST FOR PRODUCTION NO. 12:**

All documents concerning any communications, conference calls, presentations, or meetings with Pegasystems' shareholders, financial or securities analysts, institutional investors, financial publications, news reporters, journalists, or investment bankers concerning Pegasystems' financial reporting, accounting, the Virginia Action, or the Appian Complaints.

**REQUEST FOR PRODUCTION NO. 13:**

All documents concerning any media or analyst coverage of Pegasystems, the Virginia Action, or the Appian Complaints.

**REQUEST FOR PRODUCTION NO. 14:**

All documents concerning any statements made by Defendants or members of Senior Management to the media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints, including, but not limited to, defendant Kenneth Stillwell's public

- 15 -

statements concerning the Virginia Action made on May 12, 2022, May 18, 2022, and May 23, 2022.

REQUEST FOR PRODUCTION NO. 15:

A copy of any media, social media, or corporate disclosure policies or procedures in place at Pegasystems during the Relevant Period, and all documents and communications concerning compliance with or violations of any of those policies or procedures.

REQUEST FOR PRODUCTION NO. 16:

Copies of Pegasystems' Code of Conduct in place throughout the Relevant Period, all documents concerning any proposed or actual changes to the Code of Conduct during the Relevant Period, and all documents concerning any violations or suspected violations of Pegasystems' Code of Conduct.

REQUEST FOR PRODUCTION NO. 17:

All documents concerning any concerns, complaints, or issues raised with Pegasystems' audit committee, internal audit department, members of a disclosure committee (including, without limitation, the "Disclosure Committee" referenced in the Code of Conduct), Senior Management, or other divisions or individuals responsible for fielding, processing, or responding to employee concerns or complaints, regarding:

      (a)     the Virginia Action;

      (b)     the Appian Complaints or conduct alleged therein; and

      (c)     Pegasystems' financial reporting or disclosures.

- 16 -

REQUEST FOR PRODUCTION NO. 18:

All documents concerning any actual, potential, or contemplated steps to raise money in connection with the Virginia Action, including, without limitation, in order to pay all or part of a judgment in the Virginia Action.

REQUEST FOR PRODUCTION NO. 19:

All documents concerning Pegasystems' share price, market capitalization, number of shareholders, volume of shares traded and/or the value of options, or any other Pegasystems security.

REQUEST FOR PRODUCTION NO. 20:

All documents concerning price movements in Pegasystems common stock on the following dates, including all documents concerning the possible or actual factors or reasons that led to any change in the price of Pegasystems common stock on the following dates:

      (a)      February 17, 2022;

      (b)      May 10, 2022;

      (c)      May 11, 2022;

      (d)      September 16, 2022; and

      (e)      September 19, 2022.

REQUEST FOR PRODUCTION NO. 21:

All documents concerning all compensation that each defendant received or was eligible to receive from Pegasystems, including:

      (a)      all components of the individual's compensation, including non-monetary compensation and stock grants;

      (b)      any changes in compensation;

      (c)      any attempts to reduce or claw back their compensation;

- 17 -

(d)     all bonuses and/or other compensation policies, terms, and agreements;

(e)     all performance reviews;

(f)     the benchmarking of salaries against peer groups;

(g)     all payments, loans, or taxable benefits received from Pegasystems;

(h)     any severance package, termination agreement, or parachute payments; and

(i)     payments made pursuant to §280g of the Internal Revenue Code, 26 U.S.C.
§280g.

REQUEST FOR PRODUCTION NO. 22:

All documents concerning any Pegasystems Board of Directors meeting (whether formal or informal and including committee meetings of the Boards of Directors) and any committee or sub-committee thereof (*e.g.*, audit committee, compliance committee, disclosure committee, etc.), including board packages, meeting minutes, exhibits, agendas, memoranda, resolutions, notes, reports, and presentations.

REQUEST FOR PRODUCTION NO. 23:

All documents concerning meetings of any disclosure group or disclosure committee (including, without limitation, the "Disclosure Committee" referenced in the Code of Conduct), including agendas, minutes, notes, reports, and presentations, and documents sufficient to identify the members of any disclosure group or disclosure committee in place during the Relevant Period.

REQUEST FOR PRODUCTION NO. 24:

All documents identified in your Rule 26(a)(1) disclosures.

4858-8458-4806.v1

REQUEST FOR PRODUCTION NO. 25:

All documents supporting or concerning any affirmative defenses asserted by you in any answer to the Complaint and any other defenses or factual arguments you have asserted or intend to assert in this Action.

REQUEST FOR PRODUCTION NO. 26:

All documents constituting any insurance policies, indemnification agreements, hold harmless agreements, director and officer policies, errors and omissions policies, general liability policies, or by-laws under which any defendant may claim coverage to satisfy part or all of any possible liabilities as a result of claims in this Action.

REQUEST FOR PRODUCTION NO. 27:

Pegasystems' document retention policies and documents concerning the preservation, search for, collection, maintenance, destruction, or alteration of documents and ESI concerning Pegasystems.

REQUEST FOR PRODUCTION NO. 28:

Directories, organizational charts, or other documents sufficient to identify:

      (a)      Pegasystems' Senior Management structure;

      (b)      Pegasystems' accounting and financial reporting structure; and

      (c)      all direct reports to the Individual Defendants, Pegasystems' Senior Management identified in the Complaint, and each Pegasystems' employee identified in your Rule 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 29:

Documents sufficient to identify all personal and business phone numbers, email addresses, aliases, and secretaries/personal assistants for each of the Individual Defendants, Pegasystems'

Senior Management identified in the Complaint, and each Pegasystems' employee identified in your Rule 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 30:

All documents regarding Pegasystems' compliance with the Sarbanes-Oxley Act of 2002 ("SOX"), including, but not limited to, all:

(a)     documents describing Pegasystems' policies, procedures, and controls for compliance with SOX;

(b)     SOX certifications and sub-certifications executed by Pegasystems' employees; and

(c)     documents purporting to summarize or reflect the substance of executed SOX certifications or sub-certifications.

REQUEST FOR PRODUCTION NO. 31:

To the extent not captured by the above requests, all documents or communications relevant to this Action.

DATED:  June 2, 2023

ROBBINS GELLER RUDMAN
  & DOWD LLP
DEBRA J. WYMAN
CHRISTOPHER D. STEWART
LONNIE A. BROWNE
RAPHAELLA FRIEDMAN

_____
CHRISTOPHER D. STEWART

- 20 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com
cstewart@rgrdlaw.com
lbrowne@rgrdlaw.com
rfriedman@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
CHAD JOHNSON
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
chadj@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

HUTCHINGS BARSAMIAN MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Telephone:  781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

Liaison Counsel for Lead Plaintiffs

4858-8458-4806.v1

**TABLE 1: METADATA FIELDS[1]**

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001   (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003   (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001   (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008   (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD, or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry. |
| MEETING START TIME | HH:MM | Start time of calendar entry. |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry. |
| MEETING END TIME | HH:MM | End time of calendar entry. |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business.  This field should be populated for both email and e-files. |
| FILEPATH-DUP | i.e.  /JSmith.pst/Inbox /Network Share/Accounting/… /TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business.  This field should be populated for both email and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item.  An email address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item.  An email address should always be provided for every email if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item.  An email address should always be provided for every email if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT | | The subject line of the email/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | Email Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments of a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document.  The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together email threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in.  **NOTE:** This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC0000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding Bates numbers.  **Note:** Emails should include header information: author, recipient, cc, bcc, date, subject, etc.  If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

[1]For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

## DECLARATION OF SERVICE BY U.S. MAIL AND EMAIL

I, Christopher D. Stewart, not a party to the within action, hereby declare that on June 2, 2023, I served the attached PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS on the parties in the within action by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage, and by email addressed as follows:

### COUNSEL FOR PLAINTIFFS:*

| NAME | FIRM | EMAIL |
| --- | --- | --- |
| Debra J. Wyman<br>Christopher D. Stewart<br>Lonnie A. Browne<br>Raphaella Friedman | Robbins Geller Rudman<br>  & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA  92101 | debraw@rgrdlaw.com<br>cstewart@rgrdlaw.com<br>lbrowne@rgrdlaw.com<br>rfriedman@rgrdlaw.com |
| Chad Johnson | Robbins Geller Rudman<br>  & Dowd LLP<br>420 Lexington Avenue, Suite 1832<br>New York, NY  10170 | chadj@rgrdlaw.com |
| Theodore M. Hess-Mahan | Hutchings Barsamian<br>  Mandelcorn, LLP<br>10 Cedar Street, Suite 250<br>Wellesley Hills, MA  02481 | thess-mahan@hutchings<br>barsamian.com |

* Served via email only.

### COUNSEL FOR DEFENDANTS:

| NAME | FIRM | EMAIL |
| --- | --- | --- |
| Daniel W. Halston<br>Michael G. Bongiorno<br>Robert K. Smith<br>Erika M. Schutzman | Wilmer Cutler Pikering<br>  Hale and Dorr LLP<br>60 State Street<br>Boston, MA  02109 | daniel.halston@wilmerhale.com<br>michael.bongiorno@wilmerhale.com<br>robert.smith@wilmerhale.com<br>erika.schutzman@wilmerhale.com |

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 2, 2023, at San Diego, California.

_____
CHRISTOPHER D. STEWART

4858-8458-4806.v1