# EXHIBIT 5

**Robbins Geller Rudman & Dowd LLP**

| | | |
|---|---|---|
| Boca Raton | Melville | San Diego |
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

Christopher D. Stewart
cstewart@rgrdlaw.com

July 27, 2023

<u>VIA EMAIL</u>

Daniel W. Halston
Michael G. Bongiorno
Robert Kingsley Smith
Erika M. Schutzman
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109

> Re:   *City of Fort Lauderdale Police and Firefighters' Retirement System v. Pegasystems Inc.*, No. 1:22-cv-11220-WGY (D. Mass)

Dear Counsel:

We write following plaintiffs' and defendants' call on July 21, 2023 regarding defendants' July 14, 2023 responses and objections to plaintiffs' first request for production of documents (the "First RFP"), and to memorialize certain points discussed during the call.

**I.     RFP Nos. 2 and 3 (Virginia Action Documents)**

The parties discussed RFP Nos. 2 and 3 and defendants' objections thereto.  Not to the exclusion of documents that defendants already agreed to produce in their responses and objections, defendants confirmed their production will include the following documents that are responsive to RFP Nos. 2 and/or 3: (i) all of the documents that Pegasystems produced in response to discovery requests in *Appian Corporation v. Pegasystems Inc., et al.*, No. 2020-07216 (Circuit Court of Fairfax County, Virginia) (the "Virginia Action"); (ii) all of the deposition, hearing, and trial transcripts from the Virginia Action; (iii) all trial exhibits and witness lists from the Virginia Action; (iv) Pegasystems' responses to interrogatories in the Virginia Action; and (v) expert reports in the Virginia Action for experts retained by Pegasystems.

Defendants committed to commence their production of these materials the week of July 24, 2023, with rolling productions to continue over the next few weeks.  Defendants stated that their

**Robbins Geller**
**Rudman & Dowd** LLP

Counsel
July 27, 2023
Page 2

objection to the relevant time period set forth in the First RFP[1] will not restrict or limit their agreement to produce these materials in response to RFP Nos. 2 and 3.  In defendants' view, because materials responsive to RFP Nos. 2 and/or 3 were produced or generated in the Virginia Action on or after May 29, 2020, they fall within defendants' proposed "time period" for RFP Nos. 2 and 3 (May 29, 2020 to October 18, 2022) and will be produced.  According to defendants, this is so even if, for example, the documents Pegasystems produced to Appian in discovery in the Virginia Action predate, or deposition testimony concerns matters predating, May 29, 2020.[2]

Regarding documents responsive to RFP Nos. 2 and/or 3 that were produced in discovery in the Virginia Action by parties other than Pegasystems, or by non-parties to the Virginia Action (*e.g.*, discovery produced by, deposition testimony provided by, or expert reports submitted by, non-parties or parties other than Pegasystems), defendants indicated they would produce those documents to plaintiffs if the parties or non-parties that produced those documents in the Virginia Action provided their consent to Pegasystems to produce said documents.

As an initial matter, to the extent any of the documents responsive to RFP Nos. 2 and/or 3 were ***not*** designated confidential in the Virginia Action, such materials should be produced by defendants in the first instance.  For any such materials, the protective order in the Virginia Action is not implicated, nor is consent from the producing party in the Virginia Action required.

Moreover, to the extent ***Pegasystems*** designated as confidential documents that were produced by non-parties, or parties other than Pegasystems, in the Virginia Action, Pegasystems – as the "designating party" of those documents – may and should produce those documents without delay.[3]

---

[1]     *See* First RFP at 11 ("Unless otherwise specifically indicated, the requests herein refer to the period from January 1, 2020 to the date of production (the "Relevant Period"), and shall include documents and information that relate to such period, even if dated, prepared, generated, used, published, or received outside of the Relevant Period.").  Certain of plaintiffs' requests, including RFP Nos. 2 and 3, were expressly "made without regard to the Relevant Period" described here.  The parties continue to discuss the relevant time period for discovery in this case, and nothing herein shall be construed as plaintiffs' agreement to defendants' alternative proposed "time period" of May 29, 2020 to October 18, 2022.

[2]     For example, defendants will produce to plaintiffs documents that were created as early as 2012.

[3]     *See* Paragraph 15 of the October 18, 2020 Amended Stipulated Protective Order entered in the Virginia Action (requiring the "written consent of the ***designating party***").

Robbins Geller
Rudman & Dowd LLP

Counsel
July 27, 2023
Page 3

Defendants said they would endeavor to provide plaintiffs with a list of all of the persons deposed in the Virginia Action, and indicate whether any of the transcripts of those persons' depositions were designated confidential in the Virginia Action by persons other than Pegasystems.

*Please provide this information by Monday, July 31, 2023.*

**A.     RFP Nos. 2(b) and 3(b)**

With regard to RFP Nos. 2(b) and 3(b),[4] defendants said they will come back to plaintiffs with a proposal as to what defendants will agree to produce in response to RFP Nos. 2(b) and 3(b).

Defendants initially indicated that they intended to stand on their objection to producing any documents that defendants deemed "publicly available and equally accessible to Plaintiffs."[5] This objection is wholly improper: "'[t]he Federal Rules do not shield publicly available documents from discovery merely because of their accessibility.'" *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2017 U.S. Dist. LEXIS 223745, at *19 (C.D. Cal. Nov. 15, 2017) (citation omitted). Moreover, plaintiffs explained that, contrary to defendants' suggestions, many of the documents responsive to RFP Nos. 2(b) and 3(b) are not "publicly available and equally accessible to Plaintiffs," including, for example, trial exhibits and filings submitted in the Virginia Action under seal. Plaintiffs further note this objection is improper in light of the fact that documents responsive to RFP No. 2(b) – written objections and responses to document requests, interrogatories, requests for admission, and subpoenas in the Virginia Action – are typically not filed and docketed in the Virginia Action.

Plaintiffs further explained that the burden on defendants of producing the documents responsive to RFP Nos. 2(b) and 3(b) should be minimal, and that these materials are relevant, pointing, by way of example, to discovery briefing and orders that will allow plaintiffs to understand the contours of discovery in the Virginia Action, and the scope of the claims and defenses in the Virginia Action.

*Please provide defendants' proposal on these subparts by Friday, July 28, 2023.*

---

[4]     RFP Nos. 2(b) and 3(b) seek, respectively: (i) "written objections and responses to requests for production of documents, interrogatories, requests for admission, or document subpoenas [from the Virginia Action]"; and (ii) "motions, responses, declarations, exhibits, appendices, and other pleadings filed with the courts in the Virginia Action."

[5]     Defendants include this same objection in response to RFP Nos. 1, 4, 7, 12, 13, 14, 16, 19, 20, 21, 24, 26, 29, and 31.

Robbins Geller
Rudman & Dowd LLP

Counsel
July 27, 2023
Page 4

## II.     Defendants' Objection to Producing "Documents that Are the Subject of Pending Subpoenas to Non-Parties"

In response to various requests (including RFP Nos. 1, 4, 7, 8, 9, and 10), defendants' July 14, 2023 responses ("Response to First RFP") include an objection to producing "documents that are the subject of pending subpoenas to non-parties." This is an improper objection.

Defendants stated they will not stand on this objection with respect to documents involving Deloitte, *i.e.*, defendants will not refuse to produce documents just because the documents may be available from, or subject to a subpoena plaintiffs issued to, Deloitte.

Defendants said they would advise plaintiffs as to whether this objection (*i.e.*, defendants' objection to producing "documents that are the subject of pending subpoenas to non-parties") implicates any subpoenas (or documents sought from subpoenaed non-parties) other than the subpoena directed to Deloitte.[6]

***Please provide defendants' position on this issue by Friday, July 28, 2023***.

## III.    RFP No. 5 (SEC Investigation and Related Documents)

Defendants indicated that while they do not intend to withhold any documents that Pegasystems produced to the SEC that are otherwise responsive to plaintiffs' other requests (*i.e.* requests other than RFP No. 5), defendants would not reproduce en masse the production Pegasystems provided to the SEC (the "SEC Production").

Plaintiffs dispute this position. As an initial matter, defendants do not contend that producing the SEC Production to plaintiffs would be unduly burdensome. Nor could they: all of these documents have already been collected and provided to the SEC.

Moreover, plaintiffs noted the obvious overlap between this action and the SEC investigation, based on Pegasystems' own disclosure to the market that the SEC investigation concerns "the accounting treatment of the Company's above-described litigation with Appian Corporation [*i.e.*, the Virginia Action]." Defendants responded that the scope of the SEC investigation is in some way "different" from the scope of this litigation, and involves entities and statements not at issue in this litigation. Defendants did not identify these different "entities" or "statements," or otherwise explain how documents Pegasystems produced to the SEC are not

---

[6]   Defendants did not include this objection in response to RFP Nos. 2 and 3.

Robbins Geller
Rudman & Dowd LLP

Counsel
July 27, 2023
Page 5

responsive or relevant in light of Pegasystems' public statements that the SEC investigation is about "the accounting treatment of the Company's [] litigation with Appian Corporation."

In order to understand defendants' refusal to produce plainly relevant materials, plaintiffs requested defendants provide to plaintiffs documents sufficient to identify the scope of the materials produced to the SEC.[7]   Defendants said they would consider this request and get back to plaintiffs.

***Please provide defendants' position on this issue by Friday, July 28, 2023***.

Defendants also confirmed the following in connection with the SEC investigation and materials Pegasystems produced to the SEC: (i) there is no formal confidentiality agreement between Pegasystems and the SEC, although defendants asked the SEC for "FOIA protection" in connection with producing materials to the SEC; (ii) defendants reviewed and withheld documents from the SEC Production on the basis of privilege; and (iii) there is no formal agreement between Pegasystems and the SEC regarding "inadvertent waiver" of privilege/protections.

In light of the obvious overlap between the SEC investigation and this case as evidenced by Pegasystems' own public disclosures, clear relevance of the documents sought, and absence of any burden on defendants to produce them, defendants should produce the documents sought by RFP No. 5.  Courts routinely allow such discovery when, as here, the government investigations overlap with plaintiff's claims.[8]

***Please provide by Friday, July 28, 2023 a definitive answer as to whether defendants will produce the SEC Production and other materials sought by RFP No. 5***.

---

[7]   Such documents would be responsive to RFP No. 5.

[8]   *See In re New Century*, 2009 U.S. Dist. LEXIS 133786, at *17 (C.D. Cal. July 8, 2009) (ordering government productions to be reproduced where "the SEC and DOJ investigations pertained to the same restatement and accounting errors that are alleged in the Complaint"); *see also id.* ("In similar situations, other courts have ordered the production of all documents previously produced to the SEC or the DOJ . . . .") (collecting cases); *Costa v. Wright Med. Tech., Inc.*, 2019 U.S. Dist. LEXIS 1450, at *4-*5 (D. Mass. Jan. 4, 2019) (in products liability action, compelling production of cloned discovery from other case which was "substantially similar because both involve claims stemming from fractures of" the same allegedly defective hip implant component).

Robbins Geller
Rudman & Dowd LLP

Counsel
July 27, 2023
Page 6

### IV.    Searches for Documents in the Possession, Custody or Control of Individual Defendants

Defendants claim in their responses and objections at footnote 1 that "documents and communications responsive to these Requests, if any, are primarily within the possession, custody, or control of Pegasystems," and accordingly, at this time defendants will not independently search for, collect, and produce relevant and responsive documents and communications other than those in the possession, custody, or control of Pegasystems.  Plaintiffs disagree with this position – that individual defendants are somehow excused from participating in discovery, or can simply delay indefinitely searching for documents in their possession, custody, or control.

Defendants stated that Trefler and Stillwell each had only one cell phone that they used for work purposes, and that these phones will be searched for responsive information.  When pressed during the call, however, defendants would not give a definitive answer as to whether Trefler or Stillwell had searched their personal electronic devices or personal email accounts for responsive information.[9]

Plaintiffs asked defendants to confirm that Trefler and Stillwell searched any such personal electronic devices and personal email accounts for responsive information.  Defendants said they would.

***Please provide this information by Friday, July 28, 2023***.

### V.    Definitions

#### A.    "Senior Management"

Plaintiffs' First RFP defines "Senior Management" as "any person who is of the level of vice president or higher at Pegasystems."  First RFP at 4.  Defendants ignored that definition and, in their responses, rewrote "Senior Management" to include only "Alan Trefler (Founder and CEO) and Ken Stillwell (Chief Operating Officer and Chief Financial Officer)."  Response to First RFP at 4.

---

[9]    Plaintiffs noted, for instance, one such personal email account that evidence in the Virginia Action indicated defendant Trefler used in connection with his work at Pegasystems and the alleged conduct in the Virginia Action.

4886-3143-2306.v1

**Robbins Geller**
**Rudman & Dowd LLP**

Counsel
July 27, 2023
Page 7

Defendants' deliberate misconstruction and redrafting of plaintiffs' requests is wholly improper. On the call, plaintiffs noted the fact that the Complaint identifies various Pegasystems personnel at the level of vice president that were involved in and/or have knowledge of the misconduct at issue in the Virginia Action and/or this litigation.[10] Plaintiffs further noted that, with respect to plaintiffs' requests that use the term "Senior Management," those requests are specifically tailored to the issues in this case (*e.g.*, RFP No. 14 seeking "All documents concerning any statements made by Defendants or members of *Senior Management* to the media, investors, analysts, or public relations firms *concerning the Virginia Action or the Appian Complaints . . .*").

Defendants said they will come back with a proposal on this definition, and agreed to provide organizational or other personnel charts to assist the parties' conferral on this point.

*Please provide this proposal by Friday, July 28, 2023*.

**B.     "Employees"**

Defendants rewrote plaintiffs' definition of "employees" to include only "employees of Pegasystems Inc."[11] Response to First RFP at 3. Defendants said they will advise plaintiffs whether defendants' definition of "employees" includes current and former members of the Board of Directors of Pegasystems.

*Please provide this information by Friday, July 28, 2023*.

**C.     "Pegasystems" or the "Company"**

Plaintiffs' First RFP defines "Pegasystems" or the "Company" as "Pegasystems Inc., any of its direct or indirect subsidiaries, divisions or affiliates (foreign and domestic), predecessors,

---

[10]   The Court identified many of these individuals in its Memorandum and Order dated July 24, 2023. *E.g.* ECF 92 at 7, 25 n.7. Meanwhile, Pegasystems' "Leadership & Governance" webpage – which purports to identify "senior leaders" at Pegasystems – includes employees at the level of vice president. *See* https://www.pega.com/about/leadership (last visited July 27, 2023).

[11]   Plaintiffs' First RFP defined "[e]mployee[s]" as "any person who at any time acted or purported to act on your (defined below) behalf or under your supervision, direction or control, including, without limitation, past and current directors, officers, principals, partners, executives, analysts, investment bankers, consultants, advisors, representatives, agents, trustees, independent contractors, assigns, businesses, or similar persons or entities." First RFP at 3.

**Robbins Geller**
**Rudman & Dowd** LLP

Counsel
July 27, 2023
Page 8

successors, present and former officers, directors, employees, agents, accountants and advisors, and all other persons acting or purporting to act on its behalf." First RFP at 4.

Defendants rewrote plaintiffs' definition of "Pegasystems" or the "Company" to mean "Pegasystems Inc." Response to First RFP at 3. Defendants stated on the call that their definition differs from plaintiffs' in that defendants' definition excludes agents, advisors, or other persons or entities outside of the Pegasystems' corporate structure/entity. Defendants stated their definition includes all of the divisions of Pegasystems.

Plaintiffs noted on the call that the Complaint includes allegations regarding India-based employees. Please confirm that the definition of "Pegasystems" or the "Company" that defendants are applying includes any foreign-based employees or divisions of Pegasystems, including for example, any India-based employees or divisions (such as those identified in the Complaint).

***Please provide this information by Friday, July 28, 2023***.

The parties continue to discuss the above definitions and other definitions set forth in the First RFP. For the avoidance of doubt, nothing herein shall be construed as plaintiffs' agreement to defendants' re-definition of the definitions set forth in the First RFP.

## VI.  Defendants' Reliance on the Advice or Involvement of Counsel as a Defense in This Case

Plaintiffs expect defendants will withhold a substantial amount of documents and information in this case on the basis of attorney-client privilege. Indeed, defendants object on the basis of privilege to almost each and every one of plaintiffs' document requests (including RFP Nos. 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 27, 30, and 31). In addition, the alleged misstatements and omissions in this case include misstatements and omissions regarding the merits of Appian's claims against Pegasystems, the strength of Pegasystems' defenses to Appian's claims, and Appian's bases for seeking damages from Pegasystems.

In light of the subject matter of this litigation, defendants' affirmative defenses,[12] and defendants' ubiquitous objections on the basis of attorney-client privilege, plaintiffs asked

---

[12]   *See, e.g.*, Defendants' Answer to Lead Plaintiffs' Consolidated Amended Complaint, ECF 87 at 105 ("Plaintiffs' claims are barred, in whole or in part, to the extent any alleged misrepresentations or omissions were based on good faith and in reasonable ***reliance upon information provided by***

4886-3143-2306.v1

Robbins Geller
Rudman & Dowd LLP

Counsel
July 27, 2023
Page 9

defendants during the July 21 call whether defendants will rely on the advice or involvement of counsel as a defense in this case.

Defendants responded that, at this point, defendants do not intend to assert a reliance on the advice or involvement of counsel defense, but reserve the right to raise the defense at a later time. Defendants also stated that they do not plan to spring the defense on plaintiffs at the "last minute," and that if the defense is asserted at some point in the future, defendants will work to get plaintiffs the relevant discovery.

This is cold comfort. It would be highly prejudicial for defendants to wait until later in fact discovery, at summary judgment, or at trial, to assert such a defense for the first time, and plaintiffs therefore do not consent to defendants "reserving" any such "right." Moreover, this case has been pending since May 2022, and defendants should be in a position to know whether they will rely on the advice or involvement of counsel as a defense. Plaintiffs emphasized the importance of receiving a definitive answer from defendants on this point now.[13] A belated disclosure by defendants of such a defense would cause serious prejudice to plaintiffs, who would have to reopen depositions and review large volumes of documents and information previously withheld on privilege grounds.

---

*advisers upon whom Defendants were entitled to rely*, including, but not limited to, Pega's independent auditors").

[13]  *See, e.g.*, *United States ex rel. Emanuelle v. Medicor Assocs.*, 2014 U.S. Dist. LEXIS 192168, at *23 (W.D. Pa. June 16, 2014) (providing party seven days to decide whether it "intend[s] to rely on the advice of counsel in connection with any claim or defense of this action"); *Genentech, Inc. v. Insmed Inc.*, 442 F. Supp. 2d 838, 839 (N.D. Cal. 2006) (providing defendants "fifteen days to make a decision as to whether they would rely on an opinion of counsel as part of a defense"); *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43, 54-55 (S.D.N.Y. 2002) (requiring defendant to disclose five months before the close of fact discovery whether it would assert an advice of counsel defense, explaining the defendant "must clearly elect whether it will raise an advice-of-counsel defense before the close of discovery and in time to allow for such discovery").

Robbins Geller
Rudman & Dowd LLP

Counsel
July 27, 2023
Page 10

      Plaintiffs need to know now whether defendants intend to rely on the advice of counsel or involvement of counsel in connection with this case, so that all documents and information concerning the subject matter of that advice can be produced to plaintiffs and explored during fact depositions.

                                        Very truly yours,

                                        CHRISTOPHER D. STEWART

CDS:lls