# EXHIBIT 6

**Robbins Geller**
**Rudman & Dowd LLP**

| Boca Raton | Melville | San Diego |
|---|---|---|
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

Christopher D. Stewart
cstewart@rgrdlaw.com

August 7, 2023

<u>VIA EMAIL</u>

Daniel W. Halston
Michael G. Bongiorno
Robert Kingsley Smith
Erika M. Schutzman
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109

Re:     *City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems Inc.*,
        No. 1:22-cv-11220-WGY (D. Mass.)

Dear Counsel:

We write following plaintiffs' and defendants' meet and confer calls on July 28 and August 1, 2023 regarding defendants' July 14, 2023 responses and objections ("Defs.' Obj.") to plaintiffs' first request for production of documents (the "First RFP"), and to memorialize certain points discussed during the July 28 and August 1 calls.

**RFP No. 4**

RFP No. 4 seeks "documents, including all drafts thereof, concerning the preparation, content, review process, and submission of Pegasystems' ("Pega") SEC filings during the Relevant Period, including, but not limited to, all documents concerning the ASC 450 and Item 103 assessments made for contingencies or legal proceedings."

Defendants' July 14 response to RFP No. 4 states defendants will only produce the following three categories of documents in response to the request:

(i) draft and final disclosures contained in Pegasystems' SEC filings concerning contingencies or legal proceedings dated between May 29, 2020 and October 18, 2022,

**Robbins Geller**
**Rudman & Dowd** LLP

Daniel W. Halston
August 7, 2023
Page 2

(ii) final agendas and presentation materials from Disclosure Committee meetings that took place between May 29, 2020 and October 18, 2022, and

(iii) final accounting memoranda concerning loss contingencies and the Virginia Action dated between May 29, 2020 and October 18, 2022.

Plaintiffs explained during the July 28 call that the scope of documents responsive to RFP No. 4 is broader than just the three categories of documents described in (i)-(iii) above. For instance, defendants' stated production would ***exclude*** the following relevant documents, which are also responsive to RFP No. 4:

(a)     documents and communications "***concerning***" the "disclosures contained in Pegasystems' SEC filings" (including the alleged misstatements and omissions contained in Pegasystems' Reports on Form 10-K and 10-Q);

(b)     documents and communications "***concerning***" "Disclosure Committee meetings";

(c)     documents and communications "***concerning***" the "accounting memoranda concerning loss contingencies [or legal proceedings]" identified in defendants' July 14 response to RFP No. 4;

(d)     ***drafts*** of the documents described in defendants' response to RFP No. 4 (*e.g.*, ***drafts*** of Disclosure Committee minutes, agendas, and presentations; ***drafts*** of accounting memoranda, etc.); and

(e)     documents and communications "***concerning***" Pegasystems' "assessments made for contingencies or legal proceedings."[1]

Defendants agreed during the July 28 call to discuss this issue internally and provide their response to plaintiffs.

***Please confirm by Friday, August 11, 2023, that defendants will search for and produce, in response to RFP No. 4, the responsive documents described in (a)-(e) above***.

\*     \*     \*

---

[1]   Defendants all but concede the relevance of these materials by agreeing to produce the "final" SEC disclosures, Disclosure Committee meeting materials, and accounting memoranda.

Robbins Geller
Rudman & Dowd LLP

Daniel W. Halston
August 7, 2023
Page 3

Plaintiffs also explained on July 28 that the misstatements and omissions alleged in the Complaint,[2] which the Court upheld, include ***not only*** the statements in Pega's SEC Filings regarding the Virginia Action, but ***also*** statements in Pega's SEC Filings regarding:

    (a)      Pega's competition and sales and marketing practices (Complaint, §V.A.);

    (b)      Pega's competitors' intellectual property rights (Complaint, §V.B.); and

    (c)      defendants' compliance with the federal securities laws (Complaint, §V.E.).

In addition to these alleged misstatements, the Complaint also cites specific disclosures in Pega's SEC filings to establish that the increased legal expenses Pega incurred "in 2021" from the Virginia Action were not due to ordinary routine litigation incidental to the business, but rather arose outside the ordinary course of business (*see* ¶¶169-170).[3]  Such disclosures in Pega's SEC filings (*see* ¶¶169-171) are relevant to plaintiffs' allegations that defendants violated Item 103, and defendants' defenses to such allegations.

    ***Please confirm by Friday, August 11, 2023, that defendants will search for and produce, in response to RFP No. 4, responsive documents concerning:***

        ***1.   The misstatements and omissions identified in §§V.A., B., and E. of the Complaint; and***

        ***2.   The statements from Pega's 2021 Form 10-K identified at ¶¶169-170.***

## RFP No. 5

Defendants' July 14 response states defendants "will construe the term 'any other governmental agency' to mean the U.S. Securities and Exchange Commission ("SEC")."

---

[2]   Unless otherwise noted, all "¶__" and "¶¶__" references are to Lead Plaintiffs' Consolidated Amended Complaint for Violations of the Federal Securities Laws (ECF 61) ("Complaint"). Emphasis is added and citations are omitted unless otherwise noted.

[3]   Plaintiffs allege Item 103 required defendants to disclose the Virginia Action because it qualified as a material legal proceeding outside "'ordinary routine litigation incidental to [Pega's] business.'" ¶168.

**Robbins Geller**
**Rudman & Dowd** LLP

Daniel W. Halston
August 7, 2023
Page 4

Plaintiffs explained on July 28 that the term "governmental agency," as it is used in the First RFP, is not limited to just the SEC. In order to understand whether defendants' limitation of the term "governmental agency" to solely the SEC would have the effect of excluding otherwise responsive documents concerning other agencies, plaintiffs asked defendants on July 28 whether there has been any governmental agency other than the SEC inquiring of or investigating Pega in relation to the Virginia Action or the facts of this case. Defendants stated that they are not aware of any additional governmental agencies inquiring of or investigating Pega other than the SEC.

**RFP No. 6**

RFP No. 6 seeks "documents concerning Pegasystems' accounting and reporting policies and procedures for contingencies or legal proceedings, including policies and procedures with respect to ASC 450 and Item 103, including, but not limited to, all documents concerning Defendants' compliance with or deviation from Pegasystems' accounting and reporting policies and procedures for contingencies or legal proceedings."

Defendants' July 14 response states defendants will only produce the following in response to RFP No. 6:[4]

(i) "responsive policies and procedures dated between May 29, 2020 to October 18, 2022, if any"

(ii) "responsive, non-privileged final agendas and presentation materials from Disclosure Committee meetings that took place between May 29, 2020 and October 18, 2022," and

(iii) "final accounting memoranda concerning loss contingencies and the Virginia Action, dated between May 29, 2020 and October 18, 2022."[5]

Plaintiffs explained on July 28 that defendants' proposed production for RFP No. 6 excludes several categories of relevant documents sought by RFP No. 6, including for instance:

---

[4]   Defendants' response to RFP No. 7 is largely repetitive of defendants' response to RFP No. 6, and the issues discussed herein with respect to RFP No. 6 generally apply to defendants' response to RFP No. 7 as well. To the extent the parties are able to reach agreement on the information to be produced in response to RFP No. 6, the issues with RFP No. 7 may also be resolved.

[5]   These categories include documents defendants also agree to produce in response to RFP No. 4.

Robbins Geller
Rudman & Dowd LLP

Daniel W. Halston
August 7, 2023
Page 5

     (a)     documents and communications "***concerning***" the "policies and procedures" defendants reference in their response to RFP No. 6;

     (b)     documents and communications "***concerning***" Defendants' "compliance with or deviation from" those "policies and procedures";[6] and

     (c)     ***drafts*** of the "accounting memoranda" and "agendas and presentation materials from Disclosure Committee" identified in defendants' response to RFP No. 6 (as opposed to just the "final" versions of those memoranda).[7]

Defendants agreed during the July 28 call to discuss this issue internally and provide their response to plaintiffs.

***Please confirm by Friday, August 11, 2023, that defendants will search for and produce, in response to RFP No. 6, the responsive documents described in (a)-(c) above.[8]***

\*     \*     \*

Plaintiffs also noted during the July 28 call that defendants' July 14 response to this request mentions only one Pegasystems committee – the "Disclosure Committee" (*i.e.*, "materials from

---

[6]   Such documents may include, for example, internal communications regarding the construction and application of those policies by Pega's employees, steps taken to track compliance with such policies, etcetera.

[7]   Like with RFP No. 4, defendants all but concede the relevance of these materials by agreeing to produce the actual policies and procedures and final accounting memoranda and Disclosure Committee materials.

[8]   In discussing RFP No. 6, defendants stated on July 28 that, to the extent documents responsive to RFP No. 6 (or other requests in response to which defendants have agreed to produce documents) concern the Virginia Action, those documents will be considered responsive to and produced in response to RFP No. 1.  For example, plaintiffs asked about the production of draft agendas and minutes from meetings of the Disclosure Committee.  Defendants stated that such documents will be produced in response to RFP No. 1 if they concern the Virginia Action.  In connection with discussing RFP No. 9, defendants similarly stated on July 28 that, insofar as they relate to the Virginia Action, any internal communications or documents concerning communications with Deloitte would be considered responsive to and produced in response to RFP No. 1.

Robbins Geller
Rudman & Dowd LLP

Daniel W. Halston
August 7, 2023
Page 6

***Disclosure Committee*** meetings") – and asked defendants whether documents pertaining to other committees at Pega that are responsive to RFP No. 6, would be produced in response to this to RFP No. 6.

Defendants stated on July 28 that the only committee at Pega that would have addressed the matters described in RFP No. 6 would be the Disclosure Committee. To the extent other committees are relevant to the issues in RFP No. 6 – such as the Audit Committee of the Board of Directors – please confirm defendants will include such documents in their search and production for RFP No. 6 as well.

## RFP No. 8

RFP No. 8 seeks "documents and communications relating to any consultation with third parties, regarding Pegasystem[s'] accounting policies and procedures and/or GAAP as it relates to contingencies or legal proceedings, including, but not limited to, the Virginia Action or Appian Complaints."

Defendants' response to RFP No. 8 states defendants will only produce "communications ***with Deloitte*** concerning the Virginia Action, the Appian Complaints, and Pegasystems' accounting for the Virginia Action."

Plaintiffs explained on July 28 that the term "third parties," as it is used in RFP No. 8, is ***not*** limited to just Deloitte, but rather includes any third party (*i.e.*, any person or entity that is not a party to this case).

Defendants stated that the only "third parties" with whom Pegasystems "consult[ed]" regarding the subject matters set forth in RFP No. 8 were Deloitte and Pega's outside legal counsel. To the extent, as defendants indicated, Pega's outside legal counsel fits within the scope of "third parties" in this request, those third parties should be included within the scope of defendants' search and production for this request. To the extent there are relevant, responsive documents that Pega withholds or redacts on the basis of attorney-client privilege, those documents should be described in Pega's privilege log.

***Please advise by Friday, August 11, 2023, whether defendants are standing on their July 14 response to this request, including their limitation of the term "third parties" to just Deloitte.***

\*      \*      \*

**Robbins Geller**
**Rudman & Dowd** LLP

Daniel W. Halston
August 7, 2023
Page 7

As noted during the July 28 call, it is unclear from defendants' July 14 agreement to produce "communications **with** Deloitte" whether defendants will also produce documents **concerning** communications with Deloitte.[9]

*Please confirm by Friday, August 11, 2023, that defendants will search for and produce, in response to RFP No. 8, responsive documents "concerning" communications with Deloitte.*

\*      \*      \*

*Please also confirm by Friday, August 11, 2023, that defendants will search for and produce, in response to RFP No. 8, responsive documents concerning communications with Deloitte regarding the 2021 Form 10-K disclosures alleged in the Complaint at ¶¶169-170.*

## RFP No. 9

RFP No. 9 seeks documents concerning communications with Deloitte, Pega's outside auditor during the relevant time period.[10]

Defendants' July 14 responses state that defendants "will not produce any documents in response to Request No. 9 other than the documents Defendants have agreed to produce in response to Request No. 8."

As explained during the July 28 call, defendants' proposed production for RFP No. 9 (*i.e.*, its production for RFP No. 8) excludes several categories of responsive documents that are relevant to the claims and defenses in this case, including, for instance:

(a)      documents and communications "***concerning***" communications with Deloitte;[11]

---

[9]   Such documents would include, for example, internal emails or memoranda purporting to refer to, recount, or describe defendants' communications with Deloitte, emails among Pegasystems employees and/or directors in which a Deloitte recipient appears further down the email chain, etcetera.

[10]   RFP No. 9 reads: "All documents concerning communications with Deloitte, including, but not limited to, all:(a) documents concerning any audit or review by Deloitte of Pegasystems' financial statements or public disclosures; and (b) documents provided to, or received from, Deloitte concerning the Virginia Action, the Appian Complaints, Pegasystems' accounting for contingencies or legal proceedings, or Pegasystems' reporting of contingencies or legal proceedings."

Robbins Geller
Rudman & Dowd LLP

Daniel W. Halston
August 7, 2023
Page 8

(b)     documents and communications "*concerning*" the misstatements and omissions alleged in the Complaint at §§V.A., B., E. of the Complaint; and

(c)     documents and communications "*concerning*" the disclosures in Pegasystems' 2021 Form 10-K cited in ¶¶169-170 of the Complaint; and

(d)     documents and communications "*concerning*" Pegasystems' "*public disclosures*" alleged in the Complaint, as opposed to just Pegasystems' "accounting for the Virginia Action."

Defendants agreed during the July 28 call to discuss this issue internally and provide their response to plaintiffs.

*Please confirm by Friday, August 11, 2023, that defendants will search for and produce, in response to RFP No. 9, the responsive documents described in (a)-(d) above.*

**RFP No. 10**

RFP No. 10 seeks "documents you reviewed, considered, generated, or relied upon each time you determined not to publicly disclose or discuss the Virginia Action prior to February 16, 2022."

Defendants' response states they "will construe Request 10 to call for documents concerning Pegasystems' *quarterly disclosures to the SEC* regarding legal proceedings or loss contingencies dated between May 29, 2020 and October 18, 2022."

As plaintiffs explained on July 28, documents responsive to RFP No. 10 should not only be limited to include documents concerning defendants' "quarterly disclosures to the SEC," that is, disclosures in reports on Form 10-K and 10-Q.

Rather, documents responsive to RFP No. 10 would also include those concerning defendants' disclosures to (or discussions regarding whether to disclose to) the market *through means other than "quarterly disclosures to the SEC*," including, for example:

---

[11]   Such documents would include, for example, internal emails or memoranda purporting to refer to, recount, or describe defendants' communications with Deloitte, emails among Pegasystems employees and/or directors in which a Deloitte recipient appears further down the email chain, etcetera.

**Robbins Geller**
**Rudman & Dowd LLP**

Daniel W. Halston
August 7, 2023
Page 9

    1.   disclosures in connection with earnings or conference calls with analysts and investors; or

    2.   disclosures in Pegasystems' reports on Form 8-K filed ***outside*** the context of a "quarterly disclosure[]."

Such documents would fall within the scope of RFP No. 10, and are just as relevant as the same types of communications that may have taken place in the context of a quarterly disclosure to the SEC.

***Please advise by Friday, August 11, 2023, whether defendants will search for and produce, in response to RFP No. 10, documents responsive to this request that concern disclosures in connection with earnings or conference calls with analysts and investors, and disclosures in Pegasystems' reports on Form 8-K filed outside the context of a "quarterly disclosure[]."***

## RFP No. 12

RFP No. 12 seeks "documents concerning any communications, conference calls, presentations, or meetings with Pegasystems' shareholders, financial or securities analysts, institutional investors, financial publications, news reporters, journalists, or investment bankers concerning Pegasystems' financial reporting, accounting, the Virginia Action, or the Appian Complaints."

Defendants' July 14 response to RFP No. 12 states that "Defendants will construe Request No. 12 to call for any communications with shareholders (including any institutional investors), analysts, or representatives of print media publications concerning Pegasystems' financial reporting, accounting, the Virginia Appian, or the Appian Complaints."

As noted during the July 28 call, although defendants' response appears to limit their proposed production to communications "***with***" the persons described in defendants' response,[12] RFP No. 12 also seeks documents "***concerning***" defendants' communications with such persons.[13]

---

[12]  *I.e.* "shareholders (including any institutional investors), analysts, or representatives of print media publications."

[13]  Such documents would include, for instance, emails or documents that refer to, or purport to summarize or recount, defendants' communications with persons identified in RFP No. 12, emails

**Robbins Geller**
**Rudman & Dowd** LLP

Daniel W. Halston
August 7, 2023
Page 10

  ***Please confirm by Friday, August 11, 2023, that defendants will search for and produce, in response to this request, responsive documents "concerning" communications with the persons identified in defendants' response to this request.[14]***

*  *  *

  Defendants' July 14 response states defendants will construe "financial analysts" to include only the analysts currently identified on Pega's Investors Relations webpage.  Plaintiffs asked on July 28 what criteria Pega applied in arriving at that list.  Defendants did not know.  Plaintiffs asked defendants whether they would produce documents concerning financial analysts that are not identified on Pega's webpage, such as those analysts identified in Plaintiffs' initial disclosures.[15]  Defendants agreed to consider this request.

  ***Please provide your response on this issue by Friday, August 11, 2023.***

*  *  *

  Plaintiffs noted during the July 28 call that defendants' response to RFP No. 12 excludes "investment bankers," and asked defendants to include "investment bankers" as well for this request.  Defendants asked plaintiffs to explain the relevance of such documents.

  Plaintiffs explained on July 28 that communications with investment bankers regarding the Virginia Action – such as, for example, regarding efforts by Pega to work with investment bankers to raise money in order to pay a potential judgment resulting from the Virginia Action, the amount of money Pega may need to satisfy a judgment, or the timing of such efforts to raise money for a judgment – are relevant to plaintiffs' allegations that defendants were obligated to disclose the existence of the Virginia Action sooner than they did.

  For example, plaintiffs allege that disclosure of a loss contingency in the footnotes to the financial statements is required when there is more than a "remote" chance that a loss will be incurred.  ¶193.  Documents showing Pega was considering steps to raise money to pay a judgment

---

between Pegasystems employees in which persons identified in RFP No. 12 appear further down the email chain, internal discussions regarding analysts' inquiries to Pega regarding the issues in this case, and internal discussions regarding Pega's policy on responding to such inquiries.

[14] *I.e.* "shareholders (including any institutional investors), analysts, or representatives of print media publications."

[15] This issue regarding "financial analysts" also applies to RFP Nos. 13 and 14.

**Robbins Geller**
**Rudman & Dowd** LLP

Daniel W. Halston
August 7, 2023
Page 11

or settlement in the Virginia Action would be relevant to, *inter alia*, defendants' assessment of the likelihood of incurring (or potential magnitude of) a loss from the Virginia Action.

Furthermore, in light of defendants' alleged public statements that Appian's claims were "without merit," Pega had "strong defenses to these claims," and "any alleged damages" were unsupported (¶¶19, 114, 145), documents showing Pega was in fact considering steps to raise money to pay a judgment or settlement in the Virginia Action, would clearly be relevant to the parties' claims and defenses.

**Please advise by Friday, August 11, 2023, whether you are standing on your objection to producing documents concerning communications with "investment bankers" in your search and production for this request.**

\*        \*        \*

Defendants' July 14 response states "Defendants will construe the terms 'news reporters' and 'journalists' to mean representatives of print media publications."

Plaintiffs asked whether "print media" (as defendants use the term in their responses) includes digital media, or whether it is limited to traditional print media (*e.g.*, newspapers).[16] **Please provide your response on this issue by Friday, August 11, 2023**.

Plaintiffs also asked who defendants would consider a "representative" of such media outlets. Defendants indicated that they would consider anyone with a news media email address to be a representative for the purposes of this request.

**RFP No. 15**

RFP No. 15 seeks "[a] copy of any media, social media, or corporate disclosure policies or procedures in place at Pegasystems during the Relevant Period, and all documents and communications concerning compliance with or violations of any of those policies or procedures."

Defendants' July 14 responses state they will produce in response to RFP No. 15 "media, social media, or corporate disclosure policies or procedures in effect between May 29, 2020 and October 18, 2022."

---

[16]   This same issues also applies to RFP Nos. 13 and 14.

**Robbins Geller**
**Rudman & Dowd** LLP

Daniel W. Halston
August 7, 2023
Page 12

Plaintiffs explained on July 28 that defendants' proposed production – limited to the "policies or procedures" themselves – would exclude "documents and communications concerning *compliance with or violations of* any of those policies or procedures."

Plaintiffs explained on July 28 that this request is not intended to seek documents entirely unrelated to this case or the underlying Virginia Action (for example, "compliance with or violations of" sexual harassment policies, workplace discrimination policies, etc.).

However, the Complaint is replete with allegations that Pegasystems' employees engaged in misconduct that violated the law and Pega's own Code of Conduct.[17]  Documents concerning Pegasystems' employees' "compliance with or violations of" policies or procedures that relate to the issues in this case – for instance, policies or procedures regarding Pegasystems' treatment of confidential information, anti-competitive or deceptive conduct by Pegasystems pertaining to its competitors, or Pega's public disclosures to investors – are plainly relevant to falsity and scienter.

*Please advise by Friday, August 11, 2023 whether defendants will include in their response to RFP No. 15 "documents and communications concerning compliance with or violations of" "policies or procedures" to the extent those "policies or procedures" relate to the issues in this case or the underlying Virginia Action.*

**RFP No. 16**

RFP No. 16 seeks "[c]opies of Pegasystems' Code of Conduct in place throughout the Relevant Period, all documents concerning any proposed or actual changes to the Code of Conduct during the Relevant Period, and all documents concerning any violations or suspected violations of Pegasystems' Code of Conduct."

Although defendants' July 14 responses state they "will construe Request No. 16 to call for Pegasystems' Code of Conduct in effect between May 29, 2020 and October 18, 2022 and *confirmed violations* of Pegasystems' Code of Conduct between May 29, 2020 and October 18, 2022, if any," defendants go on to state that they will only produce Pegasystems' Code of Conduct in effect between May 29, 2020 and October 18, 2022.

In other words, defendants have not agreed to produce *any documents* concerning violations of the Code of Conduct (suspected or confirmed).

---

[17]   Complaint, §§IV.A., V.D.

Robbins Geller
Rudman & Dowd LLP

Daniel W. Halston
August 7, 2023
Page 13

Defendants stated on July 28 they are defining "confirmed violations" as violations that Pegasystems investigated and determined to have violated the Code of Conduct. Defendants stated on July 28 that they will consider producing documents concerning "confirmed violations" of the Code of Conduct.

Plaintiffs noted on July 28 that the scope of RFP No. 16 also includes "*suspected violations*," not just "confirmed violations."

Documents concerning reported or suspected violations of the Code of Conduct are discoverable as well, regardless of whether Pegasystems formally investigated the underlying conduct or deemed the conduct a "confirmed violation." Indeed, plaintiffs specifically allege that Pegasystems' CEO (Trefler) – whom Pegasystems claimed was responsible for providing "clarification and/or guidance as to the propriety of" employees' actions – knew about and/or orchestrated the alleged misconduct. The Complaint also alleges that various other officers and senior executives orchestrated and condoned Pega's misconduct. Such individuals would have had absolutely no interest in concluding their own conduct (or conduct they knew of or condoned) violated the Code of Conduct.

Furthermore, documents concerning the misconduct alleged in the Complaint would be relevant regardless of whether Pegasystems deemed such conduct as "confirmed violations." *E.g.*, ¶79 ("Pega's Code of Conduct (the "Code") expressly prohibited employees from using 'illegal or questionable means' or 'misrepresenting your identity in hopes of obtaining confidential information' – precisely what Pega was doing").[18]

Moreover, as plaintiffs noted on July 28, Pegasystems' own "Reporting Accountability Concerns" webpage[19] requests that persons report "any violations *or suspected violations* of [the] Code of Conduct," as well as "issues and concerns." Documents regarding "*suspected violations*," "issues," or "concerns" reported to Pegasystems are responsive regardless of whether Pegasystems formally investigated and deemed them "confirmed violations." Defendants stated on July 28 they would internally discuss their position on RFP No. 16.

---

[18] Similar to RFP No. 15, this request is not intended to seek documents concerning violations that are entirely unrelated to this case or the underlying facts in the Virginia Action (for example, violations pertaining to sexual harassment, workplace discrimination, etcetera).

[19] https://www.pega.com/about/leadership/governance/reporting-accountability-concerns.

4878-0299-8901.v1

Robbins Geller
Rudman & Dowd LLP

Daniel W. Halston
August 7, 2023
Page 14

*Please provide your position on this request by Friday, August 11, 2023, including whether defendants will search for and produce, in response to this request, documents concerning "violations or suspected violations of Pegasystems' Code of Conduct."*

\*       \*       \*

Defendants' July 14 responses also indicate defendants will not produce "documents concerning any proposed or actual changes to the Code of Conduct during the Relevant Period." In agreeing to only produce the different versions of the Code of Conduct in effect between May 29, 2020 and October 18, 2022, defendants seemed to suggest that few changes were made to the Code of Conduct. But this ignores the fact that defendants may have considered making changes to the Code of Conduct, but ultimately decided not to implement them.

Moreover, documents concerning proposed or actual changes to the Code of Conduct could shed light on how Pegasystems construed the language in the Code of Conduct, and whether the Code of Conduct was (as defendants have argued) simply aspirational, or more than that.

Furthermore, if defendants considered changing those portions of the Code of Conduct alleged to be misleading and which the Court upheld on the motion to dismiss, documents concerning these considerations, including the possible reasons for the proposed changes, would be relevant and should be produced.[20]

*Please advise by Friday, August 11, 2023, whether defendants will search for and produce, in response to this request, documents concerning "proposed or actual changes to the Code of Conduct."*

**RFP No. 17**

RFP No. 17 seeks "documents concerning any ***concerns, complaints, or issues*** raised with Pegasystems' audit committee, internal audit department, members of a disclosure committee (including, without limitation, the "Disclosure Committee" referenced in the Code of Conduct),

---

[20] As the Court noted in its recent opinion, "Pega assured investors in its Code of Conduct that it would: 'Never use illegal or questionable means to acquire a competitor's trade secrets or other confidential information . . . .' As seen in the scienter section, this is exactly what is properly alleged to have happened here. Thus, the Code of Conduct Statement is objectively false." ECF 92 at 23-24.

**Robbins Geller**
**Rudman & Dowd** LLP

Daniel W. Halston
August 7, 2023
Page 15

Senior Management, or other divisions or individuals responsible for fielding, processing, or responding to employee concerns or complaints, regarding:

(a)      the Virginia Action;

(b)      the Appian Complaints or conduct alleged therein; and

(c)      Pegasystems' financial reporting or disclosures."

As noted during the July 28 call, defendants' July 14 responses state defendants will limit their production in response to RFP No. 17 to documents concerning "***formal complaints***" only (as opposed to "concerns, complaints, or issues").[21]  For substantially the same reasons provided with respect to RFP No. 16, defendants' arbitrary limitation on what they will and will not produce in response to this request is wholly improper.  Documents concerning "concerns," "issues," and "complaints" regarding the issues identified in subparts (a)-(c) of RFP No. 17 will be relevant to the claims at issue in the case.

Defendants stated during the July 28 call they would discuss this issue internally.

***Please advise by Friday, August 11, 2023, whether defendants will include documents concerning "concerns, complaints, or issues" in their search and production for this request.***

*              *              *

In addition, although defendants' July 14 responses stated defendants will produce documents concerning "formal complaints . . . regarding . . . Pegasystems' ***disclosures or accrual decisions*** concerning the Virginia Action," this response appears to exclude documents pertaining to other categories of misstatements and omissions alleged in this case (*see* Complaint §§V.A., B., C., E.).

***Please advise by Friday, August 11, 2023, whether defendants will include these other categories of misstatements and omissions in their search and production for this request.***

---

[21]   Defs.' Obj. at 35 ("Defendants will construe the terms "concerns, complaints, or issues" and "employee concerns or complaints" to mean "formal complaints."); Defs.' Obj. at 36 ("Defendants will construe Request No. 17 to call for documents concerning formal complaints submitted by Pegasystems employees regarding the Virginia Action, Appian Complaints (including allegations therein), or Pegasystems' disclosures or accrual decisions concerning the Virginia Action.").

Robbins Geller
Rudman & Dowd LLP

Daniel W. Halston
August 7, 2023
Page 16

**RFP No. 18**

RFP No. 18 seeks "documents concerning any actual, potential, or contemplated steps to raise money in connection with the Virginia Action, including, without limitation, in order to pay all or part of a judgment in the Virginia Action."

Defendants' July 14 responses state they will not produce any documents in response to RFP No. 18.

For substantially the same reasons provided above with respect to RFP No. 12 (regarding documents concerning communications with investment bankers), documents responsive to RFP No. 18 are plainly relevant to plaintiffs' accounting allegations, as well as falsity and scienter.

*Please advise by Friday, August 11, 2023, whether you will not produce responsive documents to RFP No. 18.*

**RFP Nos. 19 & 20**

RFP No. 19 seeks "[a]ll documents concerning Pegasystems' share price, market capitalization, number of shareholders, volume of shares traded and/or the value of options, or any other Pegasystems security."

Defendants' July 14 responses state defendants will not produce any documents in response to RFP No. 19. On August 1, defendants premised their objection to producing documents in response to RFP No. 19 on two bases: (i) the documents sought by RFP No. 19 are "publicly available"; and (ii) documents responsive to RFP No. 19 would be responsive (and provided in response) to RFP No. 20.

Plaintiffs explained on August 1 that many of the documents sought by RFP No. 19 are not "publicly available," pointing, by way of example, to internal communications at Pegasystems regarding Pegasystems' share price or trading volume, and that such documents could be relevant to materiality, market efficiency, loss causation, and damages, among other issues.

Moreover, plaintiffs noted on August 1 that RFP No. 20 focuses on documents regarding share price movements *on specific dates* in 2022, the earliest of which is February 17, 2022.[22] By

---

[22] RFP No. 20 seeks: All documents concerning price movements in Pegasystems common stock on the following dates, including all documents concerning the possible or actual factors or reasons that led to any change in the price of Pegasystems common stock on the following dates: (a)

Robbins Geller
Rudman & Dowd LLP

Daniel W. Halston
August 7, 2023
Page 17

contrast, RFP No. 19 seeks documents and communications concerning other metrics besides Pegasystems' share price (*e.g.*, number of shareholders, volume of shares traded), and corresponding to a broader timeframe (not just the five specific dates identified in RFP No. 20).[23] Defendants said they would advise plaintiffs of their position on RFP No. 19.

**Please advise by Friday, August 11, 2023, whether you will not produce responsive documents to RFP No. 19.**

**RFP No. 22**

RFP No. 22 seeks "[a]ll documents concerning any Pegasystems Board of Directors meeting (whether formal or informal and including committee meetings of the Boards of Directors) and any committee or subcommittee thereof (*e.g.*, audit committee, compliance committee, disclosure committee, etc.), including board packages, meeting minutes, exhibits, agendas, memoranda, resolutions, notes, reports, and presentations."

Defendants' July 14 responses state they will only produce the following documents in response to RFP No. 22: "final minutes, agendas, and formal presentation materials from meetings of the Pegasystems Board of Directors or of Pegasystems' Audit Committee, that took place between May 29, 2020 to October 18, 2022 *concerning the Virginia Action, the disclosure of the Virginia Action, or an accrual for the Virginia Action*."[24]

As plaintiffs explained on August 1, defendants' July 14 proposal excludes broad swaths of other relevant and responsive documents sought by RFP No. 22, including:

---

February 17, 2022; (b) May 10, 2022; (c) May 11, 2022; (d) September 16, 2022; and (e) September 19, 2022.

[23]   During the August 1 call, plaintiffs offered to limit the scope of RFP No. 19 to Pega's common stock (as opposed to "options, or any other Pegasystems security"), if it would resolve the dispute on the request.

[24]   In connection with RFP No. 22, defendants stated that their agreement to produce "formal presentation materials" was meant to more closely track the nomenclature used at Pega, and that "formal presentation materials" includes slide decks and other materials typically provided to the board of directors.  Plaintiffs' understanding from the call is that "formal presentation materials" would include "board packages, meeting minutes, exhibits, agendas, memoranda, [formal board resolutions], notes, reports, and presentations."

**Robbins Geller**
Rudman & Dowd LLP

Daniel W. Halston
August 7, 2023
Page 18

(a)     documents "***concerning***" board and board committee meetings;[25]

(b)     documents "***concerning***" board committee meetings ***other than those of the Audit Committee***;

(c)     documents "***concerning***" meetings at which the Virginia Action was not necessarily discussed, but at which ***other disclosures alleged in the Complaint were discussed***, including the misstatements and omissions alleged in Complaint §§V.A., B., C., E.; and

(d)     documents "***concerning***" each meeting at which the board or a committee thereof (*e.g.* Audit Committee) approved the filing of Form 10-Qs and 10-Ks alleged in the Complaint to have contained misstatements or omissions.

 ***Please confirm by Friday, August 11, 2023, that defendants will search for and produce, in response to this request, the responsive documents described in (a)-(d) above.***

        *       *       *

 Defendants' suggestion from the August 1 call – that the parties proceed piecemeal in connection with RFP No. 22, such that defendants would produce the limited subset of documents described in their July 14 proposal to RFP No. 22, and the parties would meet and confer at some later time over whether defendants should produce other categories of documents responsive to RFP No. 22 – is not workable.  Given the discovery schedule in this case, the parties need to reach an agreement on the categories of documents to be produced in response to the requests, and if an agreement cannot be reached, promptly present the issue to the court.

**RFP No. 23**

 RFP No. 23 seeks "[a]ll documents concerning meetings of any disclosure group or disclosure committee (including, without limitation, the "Disclosure Committee" referenced in the Code of Conduct), including agendas, minutes, notes, reports, and presentations, and documents sufficient to identify the members of any disclosure group or disclosure committee in place during the Relevant Period."

---

[25]  *E.g.*, communications discussing such meetings, communications regarding the substance of discussions held during meetings, or documents provided in advance of, or in connection, with meetings.

Robbins Geller
Rudman & Dowd LLP

Daniel W. Halston
August 7, 2023
Page 19

Defendants stated that "documents concerning meetings of the Disclosure Committee" (as defendants use the phrase in their July 14 responses) would include "agendas, minutes, notes, reports, and presentations" (as plaintiffs use the phrase in RFP No. 23).[26]

## RFP No. 24

RFP No. 24 seeks "[a]ll documents identified in your Rule 26(a)(1) disclosures."

Defendants' July 14 response states defendants will produce in response to RFP No. 24 "all documents on which they *intend to rely at summary judgment or trial*."

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) states a party must provide copies of documents that the party "may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii).

Plaintiffs asked on August 1 whether – in defining their agreed production in response to RFP No. 24 – defendants were drawing a distinction between "documents on which they intend to rely at summary judgment or trial," and documents they "may use to support [their] claims or defenses, unless the use would be solely for impeachment." Defendants indicated they would discuss this internally.

*Please advise by Friday, August 11, 2023, whether defendants will search for and produce, in response to this request, the documents that defendants "may use to support [their] claims or defenses, unless the use would be solely for impeachment."*

## RFP No. 25

RFP No. 25 seeks "[a]ll documents supporting or concerning any affirmative defenses asserted by you in any answer to the Complaint and any other defenses or factual arguments you have asserted or intend to assert in this Action."

As plaintiffs explained on August 1, like with RFP No. 24, defendants' July 14 response states defendants will produce in response to RFP No. 25 "all documents on which they *intend to rely at summary judgment or trial*." This response is improper: documents concerning defendants'

---

[26]  Defendants stated there was only one disclosure committee at Pega, and that Pega's disclosure committee is comprised of members of management (as opposed to members of the Board of Directors).

**Robbins Geller**
**Rudman & Dowd** LLP

Daniel W. Halston
August 7, 2023
Page 20

affirmative or other defenses should be produced regardless of whether "[defendants] intend to rely [on them] at summary judgment or trial."  If defendants are aware of documents supporting or undermining their defenses, for example, these materials are responsive to RFP No. 25 and should be produced.

*Please let us know by Friday, August 11, 2023, whether defendants are standing on their July 14 response to this request.*

**RFP No. 30**

RFP No. 30 seeks "[a]ll documents regarding Pegasystems' compliance with the Sarbanes-Oxley Act of 2002 ("SOX"), including, but not limited to, all:

(a)   documents describing Pegasystems' policies, procedures, and controls for compliance with SOX;

(b)   SOX certifications and sub-certifications executed by Pegasystems' employees; and

(c)   documents purporting to summarize or reflect the substance of executed SOX certifications or sub-certifications."

Defendants confirmed on August 1 that they will produce: (i) Pega's policies, procedures, and controls for compliance with SOX; and (ii) SOX certifications and sub-certifications executed by Pega's employees.

However, defendants' July 14 response limits their production to RFP No. 30(b) to "certifications and sub-certifications for *persons with responsibility for loss contingency disclosures and loss contingency accruals*."

As an initial matter, defendants' limitation is improper on the basis that the misstatements and omissions alleged in the Complaint are not limited to "loss contingency disclosures and loss contingency accruals."

Although plaintiffs cannot presently identify all of the employees that executed certifications and sub-certifications pursuant to SOX, the "certifications and sub-certifications" produced in response to RFP No. 30(b) should include (at least) those executed by: (i) the persons in Pegasystems' finance, accounting, sales and marketing, internal audit, investor relations, and in-house counsel divisions/departments; (ii) the current or former Pegasystems' employees identified in the Complaint; and (iii) any persons with responsibility for (or that provided information in connection with) Pegasystems' misstatements and omissions alleged in the Complaint.

Robbins Geller
Rudman & Dowd LLP

Daniel W. Halston
August 7, 2023
Page 21

*Please advise of defendants' position with respect to RFP No. 30(b) by Friday, August 11, 2023.*

\*       \*       \*

As for subpart (c) ("documents purporting to summarize or reflect the substance of executed SOX certifications or sub-certifications"), plaintiffs explained on August 1 that such summaries are useful to identifying the names of certifying employees, and ensuring the relevant certifications and sub-certifications have been produced.  Such summaries may also contain relevant content regarding the responses in the certifications and sub-certifications, such as employees' commentary regarding the responses set forth in the certifications and sub-certifications.  Defendants stated on August 1 they would consider plaintiffs' request for documents responsive to subpart (c), to the extent such documents exist.

*Please advise of defendants' position with respect to RFP No. 30(c) by Friday, August 11, 2023.*

**Objection that Documents Are Publicly Available and Equally Accessible to Plaintiffs**

As noted in plaintiffs' July 27, 2027 letter to defendants, defendants object to RFP Nos. 1, 2, 3, 4, 7, 12, 13, 14, 16, 19, 20, 21, 24, 26, 29, and 31 on the grounds that the requests seek documents that are "publicly available and equally accessible to Plaintiffs."  Plaintiffs asked defendants on July 28 to identify the requests for which defendants intend to stand on this objection.

Defendants confirmed on July 28 that they will not be standing on this objection in response to RFP No. 1.  Defendants noted, however, that they may stand on this objection for other requests. To date, defendants have not identified those specific requests for which they intend to stand on this objection.

4878-0299-8901.v1

Robbins Geller
Rudman & Dowd LLP

Daniel W. Halston
August 7, 2023
Page 22


      *Please identify by Friday, August 11, 2023, the specific requests for which defendants intend to stand on this objection.*

                    Very truly yours,

                    Christopher D. Stewart

CDS:lls