# EXHIBIT 10

**Robbins Geller Rudman & Dowd LLP**

|  |  |  |
|---|---|---|
| Boca Raton | Melville | San Diego |
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

Christopher D. Stewart
cstewart@rgrdlaw.com

August 28, 2023

<u>VIA EMAIL</u>

Robert Kingsley Smith
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA  02109

   Re: *In re Pegasystems Inc. Securities Litigation*,
      No. 1:22-cv-11220-WGY (D. Mass.)

Dear Counsel:

  I write in response to Defendants' August 21, 2023 letter, which responds to certain questions Plaintiffs posed to Defendants during the parties' July 21, 2023 meet and confer call and memorialized in Plaintiffs' July 27, 2023 letter to Defendants.

**A. RFP No. 2(b)**

  Request for Production ("RFP") No. 2(b) seeks "written objections and responses to requests for production of documents, interrogatories, requests for admission, or document subpoenas [from the Virginia Action]."

  Defendants' August 21 letter states Defendants will produce, in response to RFP No. 2(b), "written discovery *served by Pegasystems* in the Virginia Litigation, including responses" to Pegasystems' written discovery.  (Emphasis added.)

  Defendants' August 21 letter does not state whether Defendants will or will not produce written discovery served by *parties other than Pegasystems* (*e.g.*, written discovery served on Pegasystems, or written discovery served by Youyong Zou) in the Virginia Action, and the responses thereto.  Such documents are undisputedly relevant.  Defendants do not contend

**Robbins Geller**
**Rudman & Dowd LLP**

Robert Kingsley Smith
August 28, 2023
Page 2

otherwise, nor do they contend (let alone establish) that their production would be unduly burdensome.[1]

Indeed, the Complaint includes specific allegations regarding discovery propounded on Pegasystems in the Virginia Action (¶¶178, 204).[2]  For example, Plaintiffs allege "Appian sent Pega interrogatories seeking Pega's profits on sales," "seeking Pega's documents showing its revenues and profits from sales dating back to January 1, 2012," and "seeking information regarding all revenues Pega had received (as well as the costs and expenses Pega had incurred in order to realize those revenues) during the period from 2013 through 2021." ¶178.  The Complaint also alleges that Pegasystems received, and responded to, various interrogatories from Appian, including one asking Pegasystems to "'[i]dentify every Pegasystems employee who has accessed or viewed someone else accessing the Appian platform or documentation from January 1, 2012 to the present.'" ¶204 n.43.[3]

Pegasystems' responses to these and other written discovery served on Pegasystems in the Virginia Action are directly relevant to issues regarding falsity and scienter, as well as Plaintiffs' allegations that Defendants failed to timely disclose the Virginia Action in violation of ASC 450 and Item 103.

Moreover, experts retained by Pegasystems in the Virginia Action apparently received from Pegasystems, and purportedly considered in connection with offering expert opinions, discovery propounded on Pegasystems and Pegasystems' responses thereto.  For example,  Pegasystems' economic damages expert in the Virginia Action, Simon Platt, purportedly considered Pegasystems' discovery responses pertaining to Pegasystems' revenues and costs in offering his opinions regarding Appian's damages in the Virginia Action.  Such written discovery is clearly relevant in this case, particularly given Defendants' alleged misstatements to the market that "'any alleged damages claimed by Appian are not supported,'" and that the "'facts of the case'" did not support any damages.  ¶¶19, 24.

***Unless Defendants confirm by September 5, 2023, that they will also produce, in response to RFP No. 2, all written discovery served by parties other than Pegasystems in the Virginia***

---

[1]   *Aronstein v. Mass. Mut. Life Ins. Co.*, 2017 U.S. Dist. LEXIS 100867, at *6 (D. Mass. June 29, 2017) (the party resisting discovery "'bears the burden of establishing that compliance with the request is unduly burdensome'") (citation omitted).

[2]   All "¶_ or "¶¶_ references are to the Complaint.

[3]   Pegasystems' Chief Technology Officer, Don Schuerman, testified at trial regarding Pegasystems' responses to Appian's written discovery.  ¶204.

**Robbins Geller Rudman & Dowd LLP**

Robert Kingsley Smith
August 28, 2023
Page 3

*Action, and the responses thereto, Plaintiffs intend to seek appropriate relief from the Court, including an order compelling the production of those documents*.

**B.     RFP No. 3**

RFP No. 3 seeks "[a]ll pleadings, transcripts, orders, and other documents filed with, submitted to, or docketed by, courts in the Virginia Action," and RFP No. 3(b) specifically seeks all "motions, responses, declarations, exhibits, appendices, and other pleadings filed with the courts in the Virginia Action."

Defendants' August 21 letter states Defendants will only produce, in response to RFP No. 3(b):

- "final trial exhibit lists";

- "final trial exhibits to the extent they are not sealed"; and

- "final trial witness lists from the plea in bar and merits trials."[4]

Defendants' August 21 letter further proposes that Plaintiffs sift through the Virginia Action docket and identify the entries Plaintiffs "believe are relevant to discovery in this case," which Defendants would then consider for potential production on a "case-by-case basis."

Plaintiffs do not agree to this proposal.  The Virginia Action court record, with few exceptions, is plainly relevant to the claims and defenses in this case.  Requiring Plaintiffs – who were not parties to the Virginia Action – to pick and choose specific docket entries for Defendants to review and "consider" producing, would prove entirely inefficient and would flip the discovery standard on its head.  This is particularly true given the docket entries are incredibly concise, some amounting to a handful of words.  Defendants also ignore the fact that responsive documents may not even *appear* on the public docket (*e.g.*, trial demonstratives submitted to the Court, or other documents that were "*submitted to*," but not necessarily "*docketed*" with, the Court).

Defendants' resistance to produce the Virginia Action court record, on the basis Plaintiffs may already have some of the documents responsive to RFP No. 3(b), is also wholly improper:

---

[4]   We note that Defendants agreed on July 21, 2023, to produce "witness lists" without the limitation stated in Defendants' August 21 letter that the lists must be "final" witness lists.

4854-6263-9995.v1

**Robbins Geller**
**Rudman & Dowd LLP**

Robert Kingsley Smith
August 28, 2023
Page 4

"'The Federal Rules do not shield publicly available documents from discovery merely because of their accessibility.'"[5]

Defendants' repeated reliance on documents responsive to RFP No. 3(b), in challenging Plaintiffs' claims and allegations in this case, further justifies their production.

For instance, Defendants filed several documents responsive to RFP No. 3(b) in seeking dismissal of the Complaint. These documents included various complaints, orders, trial exhibits, deposition and trial testimony, appellate briefing, and other pleadings from the Virginia Action. ECF 66, 73. Defendants also contended their alleged misstatements and omissions were inactionable in light of Pegasystems' various "defenses" in the Virginia Action – defenses ostensibly reflected in the documents responsive to RFP No. 3(b).[6] Defendants' Rule 26(a)(1) disclosures also state that Defendants plan to use "***[d]ocuments concerning the Appian Virginia Litigation***" to support their defenses in this case. (Emphasis added.) Meanwhile, Defendants' Answer to the allegations in the Complaint consistently directs Plaintiffs to "information [that] was disclosed during the Virginia Litigation," as well as "documents from the Virginia Litigation" – documents Defendants are refusing to produce. ECF 87, *passim*.

Defendants' assertion they would need to review each of the documents responsive to RFP 3(b) "for confidentiality" is also baseless. With the potential exception of documents that remain under seal in the Virginia Action, Defendants fail to articulate how the documents on file with the Virginia Action courts are protected from disclosure on the basis of confidentiality.

---

[5]  *See Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2017 U.S. Dist. LEXIS 223745, at *19 (C.D. Cal. Nov. 16, 2017) (citation omitted); *see also Guarriello v. Fam. Endowment Partners, LP*, 2015 U.S. Dist. LEXIS 178002, at *18 (D. Mass. Dec. 21, 2015) ("the fact that information may be available to Plaintiffs is not a basis for withholding information that is also available to Defendants"); *Ricks v. Wood (In re Ricks)*, 2015 Bankr. LEXIS 2068, at *7 (Bankr. D. Idaho June 24, 2015) ("the fact that the documents are available from the court is not an adequate justification for nonproduction"); *Bretana v. Int'l Collection Corp.*, 2008 U.S. Dist. LEXIS 79334, at *15 (N.D. Cal. Sept. 22, 2008) (fact that the "requested documents are equally available from the requesting party's own records" is not a ground for objection).

[6]  According to Defendants, these "defenses" included that: (i) "there were no actual trade secrets at issue"; (ii) "the matters were available to the members of the public"; (iii) "[t]here were issues on exclusion of evidence"; (iv) "there were issues of causation"; (v) Pega "had equitable defenses"; and (vi) there were "multiple trial court errors." ECF 72 at 4; ECF 85 at 4. Defendants further argued their alleged misstatements and omissions were not actionable in light of "**all of the information available [to Defendants] regarding the litigation**." ECF 72 at 4 (arguing "Pega was entitled to make its own judgment after assessing all of the information available regarding the litigation") (emphasis added).

Robbins Geller
Rudman & Dowd LLP

Robert Kingsley Smith
August 28, 2023
Page 5

      Defendants' position is particularly objectionable in light of their hindrance of third-party discovery in this case. As Defendants were aware, counsel for Pegasystems' co-defendant in the Virginia Action (Zou) *twice* confirmed to counsel for Plaintiffs that counsel for Zou was willing to produce court records from the Virginia Action.[7] Zou's counsel thereafter retracted his offer, on the basis he had just "learned" that "Plaintiffs have requested all of the publically filed documents in the Virginia litigation from Defendant Pegasystems," and therefore would no longer be producing court records from the Virginia Action.

      Documents responsive to RFP No. 3 and 3(b) are clearly relevant and should be produced. The fact that Pegasystems collected the Virginia Action court records, analyzed their contents, and culled them for use at the pleadings stage wholly belies Pegasystems' assertion that production to Plaintiffs would be unduly burdensome.

      In an effort to reach a prompt agreement on this issue, Plaintiffs would agree to exclude from the scope of RFP No. 3(b):

- All pleadings from the Virginia Action filed or submitted in connection with notices of appearance for attorneys to the Virginia Action;

- All pleadings from the Virginia Action filed or submitted in connection with *pro hac vice* applications; and

- The deposition designation reports filed with the Court (and cited in the Complaint) for the following depositions in the Virginia Action: (i) 1/5/22 Kerim Akgonul deposition; (ii) 9/20/21 Shawn Bearden deposition; (iii) 9/23/21 Ben Baril deposition; (iv) 1/10/22 Baril deposition; (v) 12/15/21 Peter Bessman deposition; (vi) 7/28/21 Jenn Cirrito deposition; (vii) 1/21/22 Eric Davis deposition; (viii) 12/1/21 Michael Fine deposition; (ix) 1/14/22 Douglas Kim deposition; (x) 12/3/21 Nguyen Le deposition; (xi) 10/13/21 Schuerman deposition; (xii) 10/1/21 Schuerman

---

[7] Counsel for Zou copied counsel for Defendants on his correspondence with Plaintiffs' counsel in this case. For instance, on June 21, 2023, Zou's counsel told Plaintiffs' counsel that "I have asked plaintiffs to consider agreeing that ***Mr. Zou would produce from my firm's litigation file the papers filed by the Virginia parties in the Appian litigation***." (Emphasis added.) On June 27, 2023, Zou's counsel again confirmed "***Mr. Zou is willing to produce all of the papers filed by parties in the Virginia action***, except to the extent the filing was an under seal filing by Pegasystems or Appian." (Emphasis added.)

**Robbins Geller Rudman & Dowd LLP**

Robert Kingsley Smith
August 28, 2023
Page 6

    deposition; (xiii) 1/12/22 Alan Trefler deposition; (xiv) 3/3/22 Vijay Potluri deposition; and (xv) 10/14/21 Jacqueline Van Wess deposition.[8]

  ***Unless Defendants confirm by September 5, 2023, that that parties are in agreement on Plaintiffs' above-stated proposal for RFP No. 3 and 3(b), Plaintiffs intend to seek appropriate relief from the Court, including an order compelling production in accordance with Plaintiffs' above-stated proposal***.

**C. RFP No. 5**

 Defendants' August 21 letter states that Defendants will consider producing "the documents produced by Pegasystems to the SEC dated on or before October 18, 2022," if Plaintiffs will "agree that such production will satisfy this Request."

 During the July 21 call, and in Plaintiffs' July 27 letter, Plaintiffs requested that Defendants identify the scope of materials produced to the SEC, in order to better understand Defendants' objections to RFP No. 5, including their objections that documents produced to the SEC dated after October 18, 2022 were irrelevant.

 To date, Defendants have failed to provide such information. Accordingly, Plaintiffs remain unaware if there are potentially relevant documents, such as presentations made by (or on behalf of) Pegasystems to the SEC, or agreements made by (or on behalf of) Pegasystems with the SEC, that are dated after October 18, 2022. Further, Defendants' August 21 letter does not provide support for Defendants' proposition that all documents produced to the SEC dated after October 18, 2022 are necessarily "irrelevant," including documents referring to facts or events pre-dating October 18, 2022.

 Without the requested information, or information regarding the scope and nature of the documents provided to the SEC that are dated after October 18, 2022, we are unable to consider agreeing to Defendants' proposal.

 If there is any additional information you are willing to share in response to our requests for information above, please provide that information by September 5, 2023, so that we may determine whether Defendants' proposal is acceptable or whether the parties are at impasse.

---

[8] In order to avoid any confusion, Plaintiffs would continue to seek the deposition transcripts of these witnesses in response to other document requests.

4854-6263-9995.v1

### D.    RFP No. 28

RFP No. 28 seeks organizational charts sufficient to identify Pegasystems' Senior Management structure, Pegasystems' accounting and financial reporting structure, and all direct reports to defendant Trefler, Pegasystems' Senior Management identified in the Complaint, and each Pegasystems employee identified in your Rule 26(a)(1) disclosures.

On July 31, 2023, we asked Defendants to front-load their production with organizational documents reflecting Pegasystems' finance, accounting, investor relations, and in-house counsel departments. Defendants provided three documents on August 18, 2023, generated by Pegasystems and purporting to show "the direct reports for Mr. Trefler, Mr. Stillwell, and Mr. Kouninis as of May 29, 2020, January 1, 2021, and October 18, 2022."

Please let us know by September 5, 2023 whether:

1. The three documents Defendants provided on August 18, 2023 reflect all persons at the Vice President (or higher) level within Pegasystems' finance and accounting departments.

In addition, please let us know by September 5, 2023 whether Defendants will provide:

2. Reporting-structure documents (similar to those provided on August 18) for the investor relations and in-house counsel departments;

3. Reporting-structure documents (similar to those provided on August 18) showing all direct reports to:

    o   Akgonul (Chief Product Officer);

    o   Leon Trefler (Chief of Clients and Markets);

    o   Schuerman (Chief Technology Officer)[9];

    o   Hayden Stafford (President of Global Client Engagement); and

    o   Mike Pyle (Chief Technology Strategist).

---

[9]   These documents are responsive to RFP No. 28 as "charts . . . sufficient to identify . . . all direct reports to . . . Pegasystems' Senior Management identified in the Complaint."

**Robbins Geller Rudman & Dowd LLP**

Robert Kingsley Smith
August 28, 2023
Page 8

### E.   Definitions in the First RFP

**1.   "Employees"**

Your August 21 letter states "[i]f there is a certain Request impacted by the definition of 'Employee' that Plaintiffs would like to discuss, Defendants are available to meet and confer."

Please advise by September 5, 2023 whether Defendants will include current and former members of the Board of Directors, within the term "employee," as that term is used in RFP No. 17 ("employee concerns or complaints, regarding").

**2.   "Senior Management"**

**RFP No. 14**

For RFP No. 14, Defendants propose limiting the definition of "Senior Management" to Trefler, Kenneth Stillwell, Lisa Pintchman Rogers, and Peter Welburn.[10]

As an initial matter, it is not clear whether Trefler, Stillwell, Rogers, and Welburn were the only persons at the Vice President (or higher) level within Pegasystems that would have communicated with "the media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints." Defendants have not made that representation to Plaintiffs, Defendants' document production (limited to less than 600 documents as of August 27) does not establish this, and other documents suggest that these communications may not have been confined to these four Pegasystems executives.

For purposes of RFP No. 14, if there are communications between Pegasystems' Vice Presidents (or higher) and "the media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints," those documents should be produced regardless of whether the communications were with Trefler, Stillwell, Rogers, or Welburn.

---

[10] RFP No. 14: "All documents concerning any statements made by Defendants or members of Senior Management to the media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints, including, but not limited to, defendant Kenneth Stillwell's public statements concerning the Virginia Action made on May 12, 2022, May 18, 2022, and May 23, 2022."

**Robbins Geller Rudman & Dowd LLP**

Robert Kingsley Smith
August 28, 2023
Page 9

**RFP No. 17**

For RFP No. 17, Defendants propose limiting "Senior Management" to Trefler, Stillwell, Efstathios Kouninis, and Matt Cushing.[11]

We will plan to consider this proposal and provide a response once we receive Defendants' responses to the other outstanding questions regarding RFP No. 17, set forth in Plaintiffs' August 7 letter to Defendants.

We note that Plaintiffs have not yet received documents or information tending to show the member of Pegasystems' Disclosure Committee during the relevant period – that information is relevant to RFP No. 17, which (in addition to referencing "Senior Management") references Pegasystems' "Disclosure Committee."

Further, we note Defendants' proposal to limit "Senior Management" to the four persons listed above would exclude executives at Pegasystems with whom "concerns, complaints, or issues" falling within the scope of RFP No. 17 were raised. For example, as alleged in the Complaint, Baril raised with Schuerman (Pegasystems' Chief Technical Officer and Vice President, Marketing and Technology Strategy) concerns about the "'legality'" of using Appian's platform. ¶79.

Under Defendants' proposal, Schuerman would be excluded from the definition of "Senior Management," which would not be appropriate.

Very truly yours,

CHRISTOPHER D. STEWART

CDS:

---

[11] RFP No. 17: "All documents concerning any concerns, complaints, or issues raised with Pegasystems' audit committee, internal audit department, members of a disclosure committee (including, without limitation, the "Disclosure Committee" referenced in the Code of Conduct), Senior Management, or other divisions or individuals responsible for fielding, processing, or responding to employee concerns or complaints, regarding: (a) the Virginia Action; (b) the Appian Complaints or conduct alleged therein; and (c) Pegasystems' financial reporting or disclosures."

4854-6263-9995.v1