# EXHIBIT 12

WILMERHALE

September 5, 2023

**BY EMAIL**

Robert Kingsley Smith

+1 617 526 6759 (t)
+1 617 526 5000 (f)
robert.smith@wilmerhale.com

Christopher D. Stewart
Robbins Gellar Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
cstewart@rgrdlaw.com

Re:  *In re Pegasystems Securities Litigation*, No. 22-cv-11220-WGY (D. Mass.)

Counsel:

We write on behalf of Defendants Pegasystems Inc. ("Pegasystems") and Alan Trefler (together with Pegasystems, "Defendants") in response to Plaintiffs' correspondence dated August 28, 2023 responding to Defendants' August 21, 2023 letter ("Letter") regarding certain of Defendants' Responses and Objections to Plaintiffs' first set of requests for production ("Responses and Objections").

## I.   Individual Requests

### A.   Request No. 2(b)[1]

Although Defendants disagree regarding your assertions of relevance, it was not Defendants' intention to exclude from "written discovery served by Pegasystems in the Virginia Action" written discovery *responses* served by Pegasystems. Responses by Pegasystems to written discovery served in the Virginia Action by parties other than Pegasystems will also be produced. Defendants will also agree to produce written discovery responses prepared and served by Youyong Zou that were not designated "Confidential" in the Virginia Litigation. Defendants will not produce written discovery responses served by Mr. Zou that were designated "Confidential" by any party in the Virginia Litigation without first obtaining that party's consent to production.

### B.   Request No. 3[2]

Defendants' proposal that Plaintiffs identify the docket entries Plaintiffs "believe are relevant to discovery in this case" is neither "inefficient" nor would it "flip the discovery standard

---

[1]   Request No. 2(b) requests "[a]ll documents produced in fact and expert discovery in the Virginia Action, including, but not limited to, all . . . written objections and responses to requests for production of documents, interrogatories, requests for admission, or document subpoenas."

[2]   Request No. 3 requests "[a]ll pleadings, transcripts, orders, and other documents filed with, submitted to, or docketed by, courts in the Virginia Action . . . ."

on its head." Letter at 3. Discovery is not a fishing expedition.[3] It does not require a party to turn over a large repository of documents—no matter how little burden it may entail—in which a requesting party can rummage to find documents that it may deem relevant.[4] Rather, discovery requires that the requesting party first identify why requested documents are relevant.[5] Only once the requesting party has articulated why documents are relevant does the responding party bear any burden.[6] It is to that discovery standard that Defendants have adhered. Not every document submitted to the courts in the Virginia Action are relevant—let alone proportional—to the claims at issue in this Action. Indeed, you have never articulated why *every* document submitted to the courts in the Virginia Action are relevant; instead, you have shifted the burden to Defendants to explain why the documents are not relevant—and have then, by their exclusion from your demand, acknowledged that examples of documents identified by Defendants, like notices of appearance and *pro hac vice* motions, are not relevant. It is *that* position that "flip[s] the discovery standard on its head." Letter at 3.

Plaintiffs' assertion that "Defendants' repeated reliance on documents responsive to RFP No. 3(b) in challenging Plaintiffs' claims," including when moving to dismiss Plaintiffs' Amended Complaint, somehow "justifies" the production of *every* document submitted to the Court is baseless. Letter at 4-5. That certain documents submitted to the court *may* be relevant does not mean that *every* document submitted to the Court is relevant. Plaintiffs' assertion also ignores that

---

[3] *See, e.g., Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988) ("Discovery is not 'a fishing expedition'; parties must disclose some relevant factual basis for their claim before requested discovery will be allowed.").

[4] *See* Fed. R. Civ. P. 26(b)(1) (limiting discovery to information "relevant to any party's claim or defense"); *Arrowpac Inc. v. Sea Star Line, LLC,* No. 3:12-cv-1180-J-32JBT, 2014 U.S. Dist. LEXIS 207230, at *8 (M.D. Fla. Jan. 31, 2014) ("The Court will not order wholesale production of irrelevant materials just to ease Plaintiffs' discovery burden."); *287 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11-CV-976 KAM JO, 2012 WL 1899222, at *6 (E.D.N.Y. May 24, 2012) (rejecting discovery request for a list of all real property that Defendants made an offer to buy as "speculative" and "a fishing expedition" where Plaintiff failed to identify specific relevant offers or transactions); *Butler Corp. V. Gen. Motors Acceptance Corp.*, No. 00-30003-MAP, 2002 WL 31926852, at *4–5 (D. Mass. Dec. 27, 2002) (rejecting discovery request for a list of every transaction Defendant executed as "speculative" and "a classic fishing expedition" where Plaintiff failed to identify specific relevant transactions).

[5] *See, e.g., Huseby, LLC v. Bailey*, No. 20-cv-00167 (JBA), 2021 WL 3206776, at *6 (D. Conn. July 29, 2021) ("the moving party must make a *prima facie* showing of relevance" (quotation marks omitted)); *Cohen v. Cohen*, No. 09 Civ. 10230 (LAP), 2015 WL 4469704, at *3 (S.D.N.Y. June 29, 2015) ("When disputes regarding the relevance of requested documents under [Rule 26] arise, the requesting party bears the initial burden of demonstrating relevance."); *TG Plastics Trading, Co. v. Toray Plastics*, No. C.A. 09-336S, 2010 WL 936221, at *2 (D.R.I. Mar. 12, 2010) ("Plaintiff's initial burden of establishing relevance requires it to do more… [including] individually discuss its document requests and explain how each seeks relevant information or may lead to the discovery of admissible evidence.").

[6] *See, e.g., Huseby,* 2021 WL 3206776 at *6 (noting that an objecting party's burden to dispute relevance "applies only after the party seeking discovery has demonstrated relevance" (quotation marks omitted)); *Aronstein v. Mass. Mut. Life Ins. Co.*, No. 15-12864-MGM, 2017 WL 2818993, at *2 (D. Mass. June 29, 2017) ("The party seeking discovery over the opposing party's objection has the initial burden of demonstrating the relevance of the requested information…. Once the possibility of relevance is shown, the burden shifts to the party opposing disclosure to show that discovery is improper.").

the documents Defendants relied upon in moving to dismiss Plaintiffs' Amended Complaint were documents that Plaintiffs had themselves "collected . . . , analyzed their contents, and culled them for use at the pleadings stage"; indeed, those documents were referenced because Plaintiffs cited to or quoted from those documents in their Amended Complaint. *See* ECF No. 65 at 2 n.1 (explaining that "[t]he Court may consider documents incorporated by reference in the Complaint"). Indeed, if the use of documents at the pleading stage in this Action proves anything, it is that ***Plaintiffs*** are capable of both obtaining—indeed, have obtained—from the courts in the Virginia Action documents submitted to the courts in the Virginia Action and identifying among those documents what they deem relevant to this Action. *See, e.g.,* Compl. at ¶ 4 n.1 ("References to 'PLT,' 'PLTD,' 'Depo. Tr.,' and 'Trial Tr.' herein are to exhibits and/or transcripts in the Virginia Action. Emphasis is added throughout.").

Finally, Plaintiffs' assertion that Defendants have purportedly engaged in "hinderance of third-party discovery in this case" has no merit. Letter at 5. The fact that Mr. Zou exercised his rights under Fed. R. Civ. P. 45 not to be unreasonably burdened by a request for information equally obtainable from a party to the litigation is clearly within his rights. And your supposition that Mr. Zou's counsel did that at Defendants' direction—or in concert with Defendants—is simply not true. In any event, Mr. Zou is hardly the only third party that Plaintiffs impermissibly burden with a subpoena for information that they could obtain from parties to this litigation. *Compare* Plaintiffs' June 15, 2023 Subpoena to Youyong Zou (requesting "[a]ll documents concerning the Virginia Action") *with* Plaintiffs' June 15, 2023 Subpoena to Kforce Inc. (requesting "[a]ll documents concerning the Virginia Action").

Nevertheless, despite Plaintiffs' arguments having no merit, and solely to avoid having to waste judicial resources with a manufactured dispute of Plaintiffs' making, Defendants agree to produce: (1) all documents docketed with the courts in the Virginia Action that were not filed under seal; and (2) all trial exhibits submitted to the courts regardless of whether those trial exhibits were entered into evidence. Defendants will not produce documents submitted to the courts in the Virginia Action under seal without first obtaining permission from the party who requested that the documents be submitted under seal.

C.   **Request No. 5**[7]

As we have previously explained, requests for clone discovery are improper. *See* Responses and Objections at 15-16. Plaintiffs are obligated to identify specific categories of

---

[7] Request No. 5 requests "[a]ll documents concerning your communications with, requests by, or actions of, the SEC or any other governmental agency concerning Pegasystems, including, but not limited to, all documents concerning any request by the SEC for information relating to the Virginia Action or Appian Complaints, including the SEC's request for information as disclosed in Pegasystems' Form 10-Q filed on April 26, 2023."

documents that are relevant to the Action.[8]  And all documents provided to a regulator are not relevant unless "the fact that particular documents were produced . . . by a party is relevant to the subject matter of the subject case."[9]  You have not even attempted to articulate why the fact that documents have been produced to the SEC—including correspondence—is relevant to this Action.

As we have also made clear, Defendants will produce all documents produced to the SEC dated on or before October 18, 2022 that are responsive to the specific categories of documents identified by Plaintiffs that are relevant to the Action; Defendants do not intend to withhold any documents that Pegasystems has produced to the SEC that are otherwise responsive to Plaintiffs' Requests in this Action.  Defendants' offer in their August 21, 2023 letter to provide **all** documents produced to the SEC dated on or before October 18, 2022 regardless of the extent to which they are responsive to specific categories of documents identified by Plaintiffs that are relevant to this Action is more than Defendants are required to do.

Your request that Defendants "identify the scope of materials produced to the SEC," including any materials dated on or after October 18, 2022 when Plaintiffs' filed their Amended Complaint, is an improper fishing expedition.  Letter at 6.  As your August 28, 2023 letter acknowledges, "Plaintiffs remain **unaware** if there are potentially relevant documents . . . dated after October 18, 2022." Letter at 4.  But Defendants do not have an obligation to provide Plaintiffs with information that allows them to assess whether documents are **potentially** relevant; the obligation is on Plaintiffs to identify documents that **are** relevant.  Defendants also do not have an obligation to explain, in the absence of Plaintiffs' articulating a basis for relevance, why "all documents produced to the SEC dated after October 18, 2022 are necessarily 'irrelevant.'"  And Defendants have no obligation to produce documents beyond the period covered by the Amended Complaint.[10]  Absent Plaintiffs' articulation of why documents provided to the SEC that are dated after the filing of their Amended Complaint are relevant, Defendants carry no burden—to produce or otherwise.

Nevertheless, in the interest of cooperation, Defendants reiterate their offer to consider producing to Plaintiffs the documents produced by Pegasystems to the SEC dated on or before October 18, 2022, even though the production would contain materials that are irrelevant,

---

[8]     *See, e.g., King Cty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) ("Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses.").

[9]     *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000); *see also King Cty.,* 2011 WL 3438491, at *3 ("Cloned discovery" that "request[s] all documents produced … during other litigation or investigations[] is irrelevant and immaterial unless the fact that particular documents were produced … by a party is relevant to the subject matter of the subject case" (quotations omitted)); *Arrowpac Inc. v. Sea Star Line, LLC,* U.S. Dist. LEXIS 207230, at *8 (similar; collecting cases).

[10]    *287 Franklin Ave. Residents' Ass'n*, 2012 WL 1899222, at *6 (concluding that party "may not use discovery to uncover evidence that might support an as yet unasserted . . . claim." (internal quotation marks omitted)).

duplicative, and/or unnecessarily cumulative, provided that Plaintiffs agree that such production will satisfy this Request. Please let us know if you agree that a production of these materials would satisfy Request No. 5. Should Plaintiffs move to compel a broader production in response to Request No. 5 and lose, Defendants' offer to consider producing to Plaintiffs the documents produced by Pegasystems to the SEC dated on or before October 18, 2022 will not apply.

D. Request No. 28[11]

In response to your question whether "[t]he three documents Defendants provided on August 18, 2023 reflect all persons at the Vice President (or higher) level with Pegasystems' finance and accounting departments," there are two additional Vice Presidents (or higher) within Pegasystems's finance departments: Jack Geraghty (Vice President, Financial Planning and Analysis); and Dan Ryan (Vice President, Real Estate and Development).

With respect to your request that Defendants provide "reporting-structure documents (similar to those provided on August 18) for the investor relations and in-house counsel departments," Defendants will not provide the requested reporting-structure documents. Pegasystems's investor relations department is constituted by Peter Welburn and Katie Jones (Senior Project Specialist, Corporate Development & Investor Relations). Mr. Welburn does not have any direct or indirect reports other than Ms. Jones. Moreover, there is no reason why Plaintiffs need an organizational chart of Pegasystems's in-house legal department. The custodial documents of in-house counsel—particularly with respect to matters relevant to this litigation— are almost certainly privileged and therefore not discoverable. And, as Defendants have repeatedly stated, they do not currently intend to assert an advice of counsel defense.

Finally, regarding your request for "reporting-structure documents (similar to those provided on August 18) showing all direct reports" to Kerim Akgonul (Chief Product Officer), Leon Trefler (Chief of Clients and Markets), Don Schuerman (Chief Technology Officer), Hayden Stafford (President of Global Client Engagement), and Mike Pyle (Chief Technology Strategist), Pegasystems will provide the requested reports except for Mr. Stafford and Mr. Pyle. Mr. Stafford joined Pegasystems in June 2020 and left Pegasystems in March 2022. The passing reference to Mr. Stafford in the Amended Complaint—in a question posed by an analyst to Mr. Stillwell, who has since been dismissed from this Action—is insufficient to render Mr. Stafford and his direct reports relevant to this Action. Mr. Stafford also does not appear in Plaintiffs' extensive Rule 26(a)(1) disclosures. Similarly, Mr. Pyle does not appear anywhere in Plaintiffs' Amended Complaint or in Plaintiffs' extensive Rule 26(a)(1) disclosures.

---

[11] Request No. 28 requests "Directories, organizational charts, or other documents sufficient to identify: (a) Pegasystems' Senior Management structure; (b) Pegasystems' accounting and financial reporting structure; and (c) all direct reports to the Individual Defendants, Pegasystems' Senior Management identified in the Complaint, and each Pegasystems' employee identified in your Rule 26(a)(1) disclosures."

Christopher Stewart
Page 6

WILMERHALE

## II. Definitions in the First RFP

### A. Employees

You have asked whether Defendants will include current and former "members of the Board of Directors, within the term "employee," as that term is used in RFP No. 17 ('employee concerns or complaints, regarding')."[12] Defendants confirm that they will include within the definition of "employee" as used in Request No. 17, as Defendants have construed Request No. 17, "current and former members of the Board of Directors."

### B. Senior Management

#### 1. Request No. 14[13]

You assert that "it is not clear Trefler, Stillwell, Rogers, and Welburn were the only persons at the Vice President (or higher) level within Pegasystems that would have communicated with 'the media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints,'" and that "communications between Pegasystems' Vice Presidents (or higher) and "the media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints," should be produced regardless of whether the communications were with Trefler, Stillwell, Rogers, or Welburn." Based on Defendants' investigation to date, Alan Trefler, Kenneth Stillwell, Lisa Pintchman Rogers, and Peter Welburn are the only persons at the level of Vice President or above who have, on Pegasystems' behalf, "communicated with 'the media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints.'"

#### 2. Request No. 17[14]

While agreeing to consider our proposal, you "note" that "Plaintiffs have not yet received documents or information tending to show the member of Pegasystems' Disclosure Committee during the relevant period – that information is relevant to RFP No. 17." Letter at 9. The identity

---

[12] Request No. 17 requests "[a]ll documents concerning any concerns, complaints, or issues raised with Pegasystems' audit committee, internal audit department, members of a disclosure committee (including, without limitation, the "Disclosure Committee" referenced in the Code of Conduct), Senior Management, or other divisions or individuals responsible for fielding, processing, or responding to employee concerns or complaints, regarding: (a) the Virginia Action; (b) the Appian Complaints or conduct alleged therein; and (c) Pegasystems' financial reporting or disclosures."

[13] Request No. 14 requests "[a]ll documents concerning any statements made by Defendants or members of Senior Management to the media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints, including, but not limited to, defendant Kenneth Stillwell's public statements concerning the Virginia Action made on May 12, 2022, May 18, 2022, and May 23, 2022."

[14] *See supra* n. 12.

of members of the Disclosure Committee were disclosed in Defendants' response to Interrogatory No. 2 served on September 1, 2023.

You also "note" that "Defendants' proposal to limit 'Senior Management' to the four persons listed above would exclude executives at Pegasystems with whom 'concerns, complaints, or issues' falling within the scope of RFP No. 17 were raised," specifically identifying purported "concerns about the 'legality' of using Appian's platform." Letter at 9. Your "note," however, demonstrates the patent ambiguity of Plaintiffs' phrase "concerns, complaints, or issues" and the reason for Defendants' ambiguity objection in their Responses and Objections to Request No. 17. Mr. Baril's email to Mr. Schuerman that you quote asked: "Who can I ping about legality of using [Appian's] system?" Compl. ¶ 79. You characterize that question as a "concern"—both in the Amended Complaint and in the Letter. *Id.*; Letter at 79. But others may not. Indeed, asking who to "ping" regarding the "legality" of conduct reflects nothing more than the desire and intent to ask a question—and one that might have been asked as a matter of prudence rather than because of any "concern." If that is what Plaintiffs intend to request by Request No. 17, Request No. 17 would call for the production of **any** question asked about the Virginia Action or Pegasystems' financial reporting or disclosures—including an innocuous question such as when Pegasystems's SEC filings are due. That is not what Defendants' understood Request No. 17 to seek. Given this ambiguity, Defendants' construed "concerns, complaints, or issues" to have a definite, objective meaning. You are welcome to propose an alternate objective meaning. But the definition must be sufficiently precise to put Defendants on notice of the documents sought without Defendants' resort to speculation.[15]

Sincerely,

*/s/ Robert Kingsley Smith*

Robert Kingsley Smith

---

[15] *See* Fed. R. Civ. P. 34(b)(1)(A)("The request . . . must describe with reasonable particularity each item or category of items to be inspected."); *Bruggeman ex rel. Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004) (explaining that requests that require a responding party to "ponder and to speculate in order to decide what is and what is not responsive" are improper); *Firebirds Int'l, LLC v. Firebird Rest. Grp.*, LLC, No. 3:17-CV-2719-B, 2018 WL 3655574, at *13 (N.D. Tex. July 16, 2018) ("To comply with the reasonable particularity requirement here, [Plaintiff] must describe the documents or information it seeks in objective terms under which Defendants and the Court can identify what must be produced and provided without resolving a factual or legal issue in [Plaintiff's] favor."); *United States v. Quicken Loans, Inc.*, No. 16-CV-14050, 2018 WL 7351682, at *1 (E.D. Mich. June 5, 2018)(holding that requests that require the responding party to "make a judgment" is impermissible because it "call[s] on the producing party to engage in a subjective guessing game of whether a document is responsive"); *see also Putman v. BMW of N. Am., LLC*, No. CV-17-3485-JAK (KSX), 2018 WL 6137160, at *4 (C.D. Cal. May 14, 2018) ("Language such as . . . 'any other similar **concern**(**s**)' make it virtually impossible for the responding party to understand what is called for in response to the Requests and for a court to assess whether the requested documents have been produced." (emphasis added)).

Christopher Stewart
Page 8

WilmerHale

cc: Daniel W. Halston
    Erika Schutzman