# EXHIBIT 16

# WILMERHALE

September 18, 2023

**BY EMAIL**

**Robert Kingsley Smith**

+1 617 526 6759 (t)
+1 617 526 5000 (f)
rrobert.smith@wilmerhale.com

Christopher D. Stewart
Robbins Gellar Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
cstewart@rgrdlaw.com

Re:  *In re Pegasystems Securities Litigation*, No. 22-cv-11220-WGY (D. Mass.)

Counsel:

We write on behalf of Defendants Pegasystems Inc. ("Pegasystems") and Alan Trefler (together with Pegasystems, "Defendants") in response to Plaintiffs' correspondence dated August 7, 2023 ("Letter") purporting to memorialize the parties' meet and confers held on July 28, 2023 and August 1, 2023 regarding Defendants' Responses and Objections to Plaintiffs' first set of requests for production ("Responses and Objections").

## I.   Objections to RFPs

*Publicly Available*.  Defendants objected to a number of Requests on the ground that they sought publicly available information that was equally accessible to Plaintiffs, including public SEC filings or information published for free on the Internet.  Illustrative examples include the following:

- Several Requests that Plaintiffs put at issue relate to Pegasystems' public SEC filings.  For example, in response to Request No. 26, which seeks, among other things, "by-laws under which any defendant may claim coverage to satisfy part or all of any possible liabilities as a result of claims in this Action," Defendants explained that Pegasystems' bylaws are publicly available.  Pegasystems most recently included its bylaws as an exhibit to its Form 10-K.  *See* Exhibit 3.2 to Pegasystems Form 10-K (Feb. 15, 2023), *available at* https://www.sec.gov/Archives/edgar/data/1013857/000119312520169542/d947582dex32.htm.  Request No. 21 similarly seeks information about compensation that is included in Pegasystems' annual proxy filings.  Pegasystems filed a definitive proxy statement with the SEC on April 28, 2023.  *See* Proxy Statement (Apr. 28, 2023), *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/1013857/000101385723000089/pega-20230428.htm.  Pegasystems' SEC filings are also available on Pegasystems' website, www.pega.com.

- Other requests seek information that Defendants have explained are available through public Internet sources.  For example, in response to Request Nos. 19 and 20, which seek

Christopher Stewart
Page 2

WILMERHALE

information concerning Pegasystems' share price and "movements" in Pegasystems stock, Defendants explained that a number of publicly available services such as Yahoo! Finance publish information concerning stock prices on the Internet. *See, e.g.* https://finance.yahoo.com/quote/PEGA?p=PEGA&.tsrc=fin-srch. Plaintiffs clearly have access to this information already, as demonstrated by the allegations in the Complaint concerning Pegasystems' share price on specific dates. *See* Compl. ¶¶ 243–44, 247, Similarly, Request No. 29 seeks business phone numbers for Pegasystems employees. Pegasystems publishes a number of phone numbers on its website, www.pega.com.

To the extent Defendants encounter documents that are also publicly available while undertaking the reasonable searches for the documents Defendants have otherwise agreed to produce in response to Plaintiffs' Requests, Defendants agree to not withhold those documents from production. However, Defendants do not agree to undertake the disproportionate burden and cost of needlessly compiling, processing, and producing public SEC filings, stock price data, business phone numbers, or similar information that is either already in Plaintiffs' possession or can be immediately upon accessing the links above.[1]

## II.  Objections to Individual RFPs

Below, Defendants respond to Plaintiffs' statements concerning specific Requests for purposes of correcting any inadvertent misstatements or responding to questions concerning the agreed-upon scope of the Request. Defendants also respond to Plaintiffs' specific inquiries. Where Defendants state their agreement to produce documents below, any such agreement is subject to and does not waive the specific objections set forth in Defendants' Objections and Responses. Furthermore, agreement to produce materials does not indicate our agreement as to their relevance or proportionality or any admission that such materials actually exist, but instead serves as a show of cooperation to close out remaining issues.

**RFP No. 4**. Request No. 4 seeks all documents concerning Pegasystems' SEC filings. As Defendants explained on July 28, 2023, Request No. 4 as drafted is overbroad and disproportionate to the needs of the case; in any event, to the extent any documents sought by Request No. 4 concern the Virginia Litigation, those documents would be covered by Request No. 1, which seeks all documents concerning the Virginia Litigation and which Defendants already agreed to produce.

Defendants further agreed to produce three categories of information in response to this Request: (i) draft and final disclosures contained in Pegasystems' SEC filings concerning contingencies or legal proceedings dated between May 29, 2020 and October 18, 2022; (ii) final agendas and presentation materials from Disclosure Committee meetings that took place between May 29, 2020 and October 18, 2022; and (iii) final accounting memoranda concerning loss contingencies and the Virginia Action dated between May 29, 2020 and October 18, 2022.

---

[1] *See Netherlands Ins. Co. v. HP, Inc.*, No. 18-cv-12136-DLC, 2022 WL 18027562, at *4 (D. Mass. Dec. 30, 2022) (denying motion to compel where "information is already available to the plaintiffs, just as it is to any member of the public" and noting that "relative access" to information is a proportionality factor under Rule 26).

Dissatisfied with this response, Plaintiffs demand that Defendants search for and produce five categories of information without articulating any reason why all such documents are relevant. For example, Plaintiffs ask Defendants to search for and produce documents "'concerning' the disclosures contained in Pegasystems SEC filings," without any limitation or nexus to the allegations in the Complaint. Letter at 2. The other categories proposed by Plaintiffs are equally defective.

As set forth in Defendants' written objections to Request No. 4, Plaintiffs' demand for these documents is overbroad because not "all" such documents are relevant, and Plaintiffs' demand is therefore unduly burdensome and not proportional to the needs of this case. Plaintiffs' only response is to suggest that "Defendant's all but concede the relevance of these materials by agreeing to produce the 'final' SEC disclosures, Disclosure Committee meeting materials, and accounting memoranda." Letter at 2 n.1. But, of course, relevance of one set of documents does not "concede" the relevance of other documents, and it says nothing about what is ***proportional to the needs of the case***.

Nevertheless, Defendants are willing to consider a reasonable and proportionate request for information concerning Pegasystems' SEC filings that relates to the specific disclosures put at issue in the Complaint.[2] Indeed, this is consistent with Defendants' agreement to produce draft and final disclosures contained in Pegasystems' SEC filings concerning contingencies or legal proceedings dated between May 29, 2020 and October 18, 2022. To that end, Defendants agree to search for and produce in response to Request No. 4 draft and final disclosures contained in Pegasystems' SEC filings dated between May 29, 2020 and October 18, 2022 concerning contingencies or legal proceedings or the misstatements or omissions alleged in the Complaint, including legal expense disclosures referenced at ¶¶ 169-70, unless dismissed by the Court's Order on the Motion to Dismiss, to the extent any such documents exist and can be located via a reasonable search of documents within Pegasystems' possession, custody, or control. Defendants further agree to search for and produce in response to Request No. 4 (i) draft agendas and presentation materials from Disclosure Committee meetings that took place between May 29, 2020 and October 18, 2022; and (ii) draft accounting memoranda concerning loss contingencies and the Virginia Action dated between May 29, 2020 and October 18, 2022, to the extent any such documents exist and can be located via a reasonable search of documents within Pegasystems' possession, custody, or control. And, to reiterate, any documents sought by Request No. 4 that concern the Virginia Litigation will be produced in response to Request No. 1, which seeks all documents concerning the Virginia Litigation.

***RFP No. 6***. This Request seeks all documents concerning Pegasystems' accounting and reporting policies and procedures for contingencies or legal proceedings. Defendants agreed to produce (i) responsive policies and procedures dated between May 29, 2020 to October 18, 2022,

---

[2] *Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2020 WL 9718873, at *15 (S.D.W. Va. Sept. 21, 2020), *objections overruled*, 2021 WL 2345972 (June 8, 2021) ("Discovery is a fishing expedition when it goes beyond the pleadings' allegations").

if any; (ii) responsive, non-privileged final agendas and presentation materials from Disclosure Committee meetings that took place between May 29, 2020 and October 18, 2022; and (iii) final accounting memoranda concerning loss contingencies and the Virginia Action, dated between May 29, 2020 and October 18, 2022. Plaintiffs now request documents concerning the policies and procedures, documents concerning "compliance" with or "deviation" from those policies and procedures (which, Plaintiffs assert "may include, for example, internal communications regarding the construction and application of those policies, steps taken to track compliance with such policies, etcetera"), drafts of accounting memoranda, and drafts of agendas and presentation materials. Letter at 5 & n.6.

As set forth in Defendants' written objections to Request No. 6, Plaintiffs' demand for these documents is overbroad because not "all" such documents are relevant, and Plaintiffs' demand is therefore unduly burdensome and not proportional to the needs of this case. Plaintiffs' only response is to again suggest that "Defendants all but concede the relevance of these materials by agreeing to produce the actual policies and procedures and final accounting memoranda and Disclosure Committee materials." Letter at 5 n.7. Again, the relevance of one set of documents does not "concede" the relevance of other documents, and it says nothing about what is ***proportional to the needs of the case***. Moreover, the terms "compliance" and "deviation" are insufficiently precise to put Defendants on notice of the documents sought.[3] Indeed, although Plaintiffs purport to provide illustrative examples, those examples are not obviously documents concerning "compliance" or "deviation" from the policies—indeed, "internal communications regarding the construction and application of those policies" does not necessarily say anything about whether certain conduct is in compliance with or deviates from the policies or procedures, and so would not obviously be responsive.

Nevertheless, in further response to Request No. 6, Defendants agree to search for and produce, in addition to what they have already agreed to provide, responsive and non-privileged documents consisting of:

> (i) documents and communications concerning the drafting of the policies and procedures defendants referenced in their response to RFP No. 6;

---

[3] *See* Fed. R. Civ. P. 34(b)(1)(A)("The request . . . must describe with reasonable particularity each item or category of items to be inspected."); *Bruggeman ex rel. Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004) (explaining that requests that require a responding party to "ponder and to speculate in order to decide what is and what is not responsive" are improper); *Firebirds Int'l, LLC v. Firebird Rest. Grp.*, LLC, No. 3:17-CV-2719-B, 2018 WL 3655574, at *13 (N.D. Tex. July 16, 2018) ("To comply with the reasonable particularity requirement here, [Plaintiff] must describe the documents or information it seeks in objective terms under which Defendants and the Court can identify what must be produced and provided without resolving a factual or legal issue in [Plaintiff's] favor."); *United States v. Quicken Loans, Inc*., No. 16-CV-14050, 2018 WL 7351682, at *1 (E.D. Mich. June 5, 2018) (holding that requests that require the responding party to "make a judgment" are impermissible because they "call on the producing party to engage in a subjective guessing game of whether a document is responsive").

      (ii) draft agendas and presentation materials from Disclosure Committee meetings that took place between May 29, 2020 and October 18, 2022; and

      (iii) draft accounting memoranda concerning loss contingencies for the Virginia Action, dated between May 29, 2020 and October 18, 2022

to the extent any such documents exist and can be located via a reasonable search of documents within Pegasystems' possession, custody, or control.

**RFP Nos. 8 and 9**. Request No. 8 seeks all documents relating to consultation with third parties regarding Pegasystems' accounting policies and procedures or GAAP as related to contingencies or legal proceedings. Request No. 9 seeks all documents concerning communications with Deloitte. In response to Request No. 8, Defendants agreed to search for and produce communications with Deloitte concerning the Virginia Action, the Appian Complaints, and Pegasystems' accounting for the Virginia Action.

Plaintiffs now request that Defendants specifically search for and produce communications with Pegasystems' outside legal counsel regarding Pegasystems' accounting policies and procedures or GAAP as related to contingencies or legal proceedings. As Defendants explained on the July 28 call, collecting, reviewing, and logging communications with Pegasystems' outside disclosure counsel would be unnecessarily burdensome and not proportional to the needs of the case where Plaintiffs have sought, and Defendants have already agreed to provide, non-privileged communications between Pegasystems and Deloitte on the same topics. Courts routinely hold—and parties frequently agree—that communications directly to and from external counsel need not be logged because they are presumptively privileged and the burden involved in reviewing and logging those documents is simply not proportional to the needs of this case.[4] Indeed, Defendants have also repeatedly advised Plaintiffs that Defendants do not presently intend to invoke an advice of counsel defense, such that communications directly with outside counsel are not relevant to Defendants' defenses in this Action.

Plaintiffs also request that Defendants produce, in addition to communications with Deloitte concerning the Virginia Action, the Appian Complaints, and Pegasystems' accounting for the Virginia Action, all documents "concerning" communications with Deloitte.[5] As Defendants

---

[4] *See, e.g.*, *Hutt v. Greenix Pest Control, LLC*, No. 2:20-CV-1108, 2023 WL 2726357, at *7 (S.D. Ohio Mar. 31, 2023) (request seeking privileged information, including documenting involving outside counsel's advice, is "improper" and denying motion to compel privilege log of such materials withheld); *Sirois v. E. W. Partners, Inc.*, No. CV 17-00383 DKW-RLP, 2018 WL 11237070, at *2 (D. Haw. Jan. 8, 2018) (granting motion for protective order "to prevent the discovery of files, communications, and records from Defendant's outside counsel, which is presumptively privileged information").

[5] Plaintiffs also seek documents and communications "concerning" the misstatements and omissions alleged in the Complaint at §§V.A., B., E. of the Complaint, documents and communications "concerning" the disclosures in Pegasystems' 2021 Form 10-K cited in ¶¶169-170 of the Complaint, and documents and communications

Christopher Stewart  
Page 6

WilmerHale

have previously explained, and as set forth in Defendants' written objections to Request No. 9, this request is overbroad, unduly burdensome, and not proportional to the needs of the case because "all" documents "concerning" communications with Deloitte regarding *any* subject matter are neither relevant nor proportional to the needs of this case. Plaintiffs also do not carry their burden of demonstrating why such documents are relevant by providing the following examples of allegedly relevant documents: "internal emails or memoranda purporting to refer to, recount, or describe defendants' communications with Deloitte, emails among Pegasystems employees and/or directors in which a Deloitte recipient appears further down the email chain, etcetera." Letter at 7–8 & n.11. Notably, none of these examples is bounded by a topic that is relevant to this case. As Plaintiffs know, Deloitte is the outside independent auditor for Pegasystems. In this role, Deloitte regularly communicates with Pegasystems employees about numerous topics that are not remotely related to this case and that have nothing to do with the Virginia Litigation, Pegasystems' accounting related to the Virginia Litigation, or even Pegasystems' accounting for loss contingencies or disclosure of legal proceedings other than the Virginia Litigation, such as payroll controls, transfer pricing, and ESG matters. Yet, Plaintiffs' examples would sweep in *any* document referencing Deloitte regardless of topic. Plaintiffs' examples would also include administrative or logistical emails involving Deloitte that have no relevance to this case.

Accordingly, although Defendants, in the spirit of compromise, will construe Request No. 9 to include additional topics about which they will search for communications with Deloitte, Defendants do not agree to search for and produce "all documents 'concerning' communications with Deloitte." Specifically, Defendants agree to search for and produce in response to Requests No. 8 and 9 communications with Deloitte concerning the Virginia Action, the Appian Complaints, misstatements or omissions alleged in the Complaint, and Pegasystems' accounting for the Virginia Action, including legal expenditures associated with the defense of the Virginia Action, to the extent any such documents exist and can be located via a reasonable search of documents pursuant to reasonable and proportional search terms and custodians agreed upon by the Parties.

**RFP No. 10**. This Request seeks "[a]ll documents you reviewed, considered, generated, or relied upon each time you determined not to publicly disclose or discuss the Virginia Action prior to February 16, 2022." Defendants construed the Request as calling for documents concerning Pegasystems' quarterly disclosures to the SEC regarding legal proceedings or loss contingencies dated between May 29, 2020 and October 18, 2022. Plaintiffs request that Defendants also produce all documents concerning Defendants' "disclosures to (or discussion regarding whether to disclose to) the market through means other than 'quarterly disclosures to the SEC,'" including, purportedly for example, documents concerning current reports on Form 8-K or quarterly earnings or conference calls.

---

"concerning" Pegasystems' "public disclosures" alleged in the Complaint, as opposed to just Pegasystems' "accounting for the Virginia Action," which are all subsets of "documents concerning communications with Deloitte." Letter at 7–8. Defendants interpret Plaintiffs' reference to "'public disclosures' alleged in the Complaint" to mean misstatements and omissions alleged in the Complaint.

Christopher Stewart  
Page 7

**WILMERHALE**

      As set forth in Defendants' written objections to Request No. 10, Plaintiffs' demand for documents "reviewed, considered, generated, or relied upon each time you determined ***not*** to publicly disclose or discuss the Virginia Action prior to February 16, 2022" is vague, ambiguous, and unduly burdensome. That is because absent identification of an event that ***requires*** analysis of whether to do something, it is nearly impossible to determine which of innumerable decision points and documents relied upon at those innumerable decision points are sought. Given the ambiguity of Plaintiffs' request, Defendants agreed to produce documents concerning Pegasystems' disclosures for which an Item 103 analysis of the Virginia Action was performed. That is a reasonable construction of Request No. 10.

      Your requests to search for all documents concerning current reports on Form 8-K or quarterly earnings or conference calls is well beyond the scope of a reasonable construction of Request No. 10. Not every Form 8-K issued by the Company nor every conference call with analysts or investors would necessarily have involved a decision not to disclose the Virginia Litigation. Nevertheless, as a compromise, Defendants agree to search for and produce documents concerning Pegasystems' current or quarterly disclosures regarding legal proceedings or loss contingencies dated between May 29, 2020 and October 18, 2022, including filings on Forms 10-K, 10-Q, and 8-K, and earnings calls, to the extent any such documents exist and can be located via a reasonable search of documents pursuant to reasonable and proportional search terms and custodians agreed upon by the Parties.

      ***RFP Nos. 12, 13, and 14***. Request Nos. 12, 13, and 14 seek information related to public disclosures, including communications with shareholders, financial or securities analysts, or the media, among others. As with the other Requests propounded by Plaintiffs, these Requests were vague and overbroad and Defendants construed certain of the terms used in the Request in order to provide a constructive response, as contemplated by the Federal Rules.

      Plaintiffs, who could have, but did not, define the terms "analyst" and "media," now challenge Defendants' proposed definitions for those terms:

- The undefined term "analyst" is used in each of Request Nos. 12, 13, and 14. Defendants construed the term "analyst" to mean the fifteen analysts identified by Pegasystems on its Investors Relations webpage, https://www.pega.com/about/investors.[6] Plaintiffs request that Defendants expand the list of analysts to include analysts not listed on Pegasystems' Investor Relations page, such as "analysts identified in Plaintiffs' initial disclosures" but which Plaintiffs do not identify by name. Defendants agree to construe the term analyst to

---

[6] There are fifteen analysts listed on Pegasystems' Investor Relations webpage, which include analysts from: Barclays Capital, Citigroup Global Markets, D.A. Davidson & Co., Goldman Sachs, JMP Securities, J.P. Morgan, KeyBanc, Loop Capital, Macquarie, Morningstar, RBC Capital Markets, Rosenblatt Securities, Truist, Wedbush Securities, and William Blair. This list is regularly updated by Pegasystems to reflect analysts that cover Pegasystems. While the Company endeavors to include a complete list of analysts, upon further investigation, the list may be incomplete at times as analyst coverage changes.

- mean, in addition to the fifteen analysts listed on Pegasystems' Investor Relations page, analysts that covered Pegasystems between 2020 and 2022 and which were subpoenaed in this action, for a total of twenty-two analysts. The other seven include The Benchmark Company, Canaccord Genuity, CFRA Research, Credit Suisse Securities, Needham & Company, Oppenheimer & Co., and SMBC Nikko Securities.

- The undefined terms "news reporters" and "journalist" are used in Request No. 12, and the undefined term "media" is used in Request Nos. 13 and 14. Defendants construed the terms "news reporters" and "journalists" to mean representatives of print media publications. Defendants construed the term media to refer to print media. Plaintiffs sought clarification on whether print media includes digital media and, if not, asked Defendants to construe the term "media" to include digital media. Print media, as used in the responses to Request Nos. 12, 13, and 14 refers to traditional print publications, such as *The New York Times*, *The Washington Post*, and *Newsweek*. To the extent a traditional print publication also has a digital component, it will not be excluded. A precise definition of the term "media" is necessary in order to craft effective search terms and define appropriate limits on these broad Requests. Furthermore, the burden of expanding the Requests to include any "digital media," which could sweep in informal blog or social media posts, would not be proportional to the discovery sought, particularly in light of the searches Defendants have already agreed to undertake. Nevertheless, if Defendants' search for documents responsive to Request Nos. 12 through 14 as construed by Defendants identifies documents concerning digital-only media that would be responsive if they concerned "print media," Defendants will not exclude those documents from their production.

Plaintiffs also ask Defendants to produce all communications concerning communications with the people and entities identified in Request No. 12. However, most of the examples Plaintiffs provide for what would be covered by that expanded definition would be covered by Defendants' proposal and the additional burden on Defendants of expanding the Request as Plaintiffs suggest is not justified. *See* Letter at 9–10 n.13. For example, "emails between Pegasystems employees in which persons identified in RFP No. 12 appear further down the email chain" would constitute a communication with a listed person or entity because the document contains such a communication. Similarly, a summary of a phone call with a listed person would constitute a record of a communication with a listed person.

Finally, Plaintiffs request that Defendants produce communications with "investment bankers," a term that is not defined in Request No. 12. When asked to explain the relevance of such documents and why this Request was not the fishing expedition it appeared to be, Plaintiffs hypothesized that such documents, if they exist, are relevant to allegations concerning loss contingency disclosures because documents about raising money to pay a judgment in the Virginia Action relate to "defendants' assessment of the likelihood of incurring (or potential magnitude of)

a loss from the Virginia Action."[7] Letter at 11. But that argument misunderstands the ASC 450 analysis. Under ASC 450, disclosure of a loss contingency shall be made if there is "a reasonable possibility that a loss or an additional loss may have been incurred." ASC 450-25-50-3. The analysis focuses on the ***likelihood*** of a loss being incurred and does not concern a company's ***ability to pay*** a loss should it be incurred. For that reason, discussions with investment bankers about a company's ability to raise funds ***should*** it become necessary says nothing about ***whether*** it will become necessary. Plaintiffs have not met their burden of demonstrating that the discovery sought is relevant.[8]

Accordingly, except for the definitional modifications noted above, Defendants do not agree to revise their responses to Request Nos. 12, 13, or 14.

***RFP No. 15***. This Request seeks "a copy of any media, social media, or corporate disclosure policies or procedures in place at Pegasystems" during the relevant period and "all documents and communications concerning compliance with or violations of any of those policies and procedures." Defendants agreed to produce the requested policies and procedures, to the extent they exist and can be located by a reasonable search. Plaintiffs' letter demands documents concerning compliance with or violations of the requested media, social media, or corporate disclosure policies "to the extent" the policies and procedures relate to "the issues in this case or the underlying Virginia Action." As Defendants explained on the July 28 meet and conder, the documents requested by Plaintiffs relating to the Virginia Litigation are covered by RFP No. 1, which seeks all documents concerning the Virginia Litigation.

Plaintiffs' broad request for "documents and communications concerning compliance with or violations of" Pegasystems' media, social media, or corporate disclosure policies that "relate to the issues in this case" is unworkable. Plaintiffs have never explained how the media or social media policies themselves relate to "the issues in this case," let alone compliance with or violations thereof. For instance, none of the challenged statements include communications with the media, such as quotes in newspaper articles, or social media posts. Moreover, to the extent "corporate

---

[7] Plaintiffs also state that "documents showing Pega was in fact considering steps to raise money to pay a judgment or settlement in the Virginia Action" would be relevant to the parties "claims and defenses" "in light of" challenged statements concerning the merit of Appian's claims, Pegasystems' legal defenses, and whether damages alleged by Appian were supported by law. Letter at 11. Each of these statements concerns the legal basis for Appian's claims and has nothing to do with whether Pegasystems had the financial wherewithal to withstand a judgment up to the amount of damages alleged in Appian's Second Amended Complaint. Similarly, whether Pegasystems *could* pay a judgment in the Virginia Litigation and *how* it would do so are not relevant to whether statements about the *legal merit* of the case were knowingly false or misleading.

[8] *Cohen v. Cohen*, No. 09 Civ. 10230 (LAP), 2015 WL 4469704, at *3 (S.D.N.Y. June 29, 2015) ("When disputes regarding the relevance of requested documents under [Rule 26] arise, the requesting party bears the initial burden of demonstrating relevance."); *TG Plastics Trading, Co. v. Toray Plastics*, No. C.A. 09-336S, 2010 WL 936221, at *2 (D.R.I. Mar. 12, 2010) ("Plaintiff's initial burden of establishing relevance requires it to do more… [including] individually discuss its document requests and explain how each seeks relevant information or may lead to the discovery of admissible evidence.").

disclosure policies" relate to Pegasystems' SEC filings and thus can be said to have tangential relevance to the challenged statements, it is unclear what constitutes a document "concerning" "compliance" with or a "violation" of "corporate disclosure policies." All of Pegasystems' SEC filings could be documents "concerning" "compliance" with "corporate disclosure policies" but certainly not all of Pegasystems' SEC filings are relevant to this case. As explained below, to identify with reasonable specificity the documents requested by Plaintiffs, the term "violation" can only mean a confirmed violation as it would be practically impossible to identify potential or suspected violations without any objective criteria for doing so.

Accordingly, and only as a show of good faith to keep the discovery process progressing, Defendants agree to search for and produce in response to Request No. 15 documents sufficient to show confirmed violations of Pegasystems' corporate disclosure policies if the confirmed violations concern the alleged misstatements or omissions identified in the Complaint (unless dismissed by the Court's Order on the Motion to Dismiss) to the extent any such documents exist, can be located via a reasonable search of documents within Pegasystems' possession, custody, or control.

*RFP No. 16*. This Request seeks Pegasystems' Code of Conduct and "documents concerning any proposed or actual changes to the Code of Conduct during the Relevant Period" or "documents concerning any violations or suspected violations of Pegasystems' Code of Conduct."

Defendants agreed to produce historical versions of Pegasystems' Code of Conduct, which would demonstrate any changes during the period of May 29, 2020 and October 18, 2022. Defendants also agree to produce "confirmed violations" of Pegasystems' Code of Conduct between May 29, 2020 and October 18, 2022 that relate the portions of the Code of Conduct challenged in the Complaint.

Plaintiffs now request that Defendants produce documents "concerning" *any* "proposed or actual changes" in the Code of Conduct. Plaintiffs' broad request is not bounded by any objective, limiting principle. In effect, they seek all correspondence concerning typos, nits, formatting changes, and spacing changes to the Code of Conduct, which clearly would have no relevance. Plaintiffs also do not limit their request to changes that concern the portions of the Code of Conduct at issue in this matter. For example, Request No. 16 as-drafted calls for documents concerning changes to the portions of the Code of Conduct addressing use of weapons or explosives at work, gift giving, and the US Foreign Corrupt Practices Act of 1977 and UK Bribery Act of 2010. However, in the interest of cooperation, Defendants agree to search for, and if they exist, produce non-privileged documents "concerning" the drafting of the portions of the Code of Conduct challenged in the Complaint that are within Pegasystems' possession, custody, or control and can be located via a reasonable search of documents pursuant to reasonable and proportional search terms and custodians agreed upon by the Parties.

Plaintiffs also ask Defendants to search for and produce documents concerning "violations or suspected violations of Pegasystems' Code of Conduct." For substantially the same reasons

noted in Defendants' September 5, 2023 correspondence, *see* September 5, 2023 Letter at 7 & n.15, Defendants do not agree to construe Request No. 16 as calling for "suspected violations" because the term is ambiguous, subjective, and does not describe with reasonable particularity the documents sought.[9] Accordingly, Defendants will not search for and produce in response to Request No. 16 documents concerning "suspected violations" of Pegasystems' Code of Conduct.

**RFP No. 17**. This Request seeks documents concerning "concerns, complaints, or issues" concerning the Virginia Action, the Appian Complaints, or Pegasystems' financial reporting or disclosures that were raised with an enumerated list of individuals and committees. Defendants agreed to produce documents concerning "formal complaints submitted by Pegasystems employees regarding the Virginia Action, Appian Complaints (including allegations therein), or Pegasystems' disclosures or accrual decisions concerning the Virginia Action."[10]

Plaintiffs now request that Defendants include within their response to Request No. 17 all "concerns, complaints, or issues" regardless of whether "formal complaints" made by Pegasystems's employees. In response to Plaintiffs' question, please refer to Defendants' September 5, 2023 correspondence regarding our rationale for limiting the response to "formal complaints." As noted in that correspondence, Defendants are willing to consider alternative objective definitions proposed by Plaintiffs.

Plaintiffs have also asked whether Pegasystems will produce formal complaints concerning "categories of misstatements and omissions alleged in this case" in addition to "formal complaints . . . regarding . . . Pegasystems' disclosures or accrual decisions concerning the Virginia Action. Consistent with the September 5, 2023 Letter, Defendants agree to revise their response to Request No. 17 to include formal complaints concerning the misstatements or omissions alleged in the Complaint, unless dismissed by the Court's Order on the Motion to Dismiss.

---

[9] *See* Fed. R. Civ. P. 34(b)(1)(A) ("The request . . . must describe with reasonable particularity each item or category of items to be inspected."); *Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, No. 3:17-CV-2719-B, 2018 WL 3655574, at *13 (N.D. Tex. July 16, 2018) ("To comply with the reasonable particularity requirement here, [Plaintiff] must describe the documents or information it seeks in objective terms under which Defendants and the Court can identify what must be produced and provided without resolving a factual or legal issue in [Plaintiff's] favor.").

[10] As noted on the July 28 call, Defendants' agreement to produce "formal complaints submitted by Pegasystems employees regarding the . . . Appian Complaints (including allegations therein)"—which tracks Requests No. 17's request for complaints regarding "the Appian Complaints or conduct alleged therein"—requires that the Parties reach agreement on what constitutes the allegations in the Appian Complaints. That is because Plaintiffs' request must identify the documents they seek with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A). And, as courts are legion in holding, discovery requests seeking documents "relat[ing] to the allegations of [the] Complaint" lack that requisite "reasonable particularity." *See, e.g., Gondola v. USMD PPM, LLC*, 223 F.Supp.3d 575, 586 (N.D. Tex. 2016) (holding that requests for documents "relat[ing] to the allegations of [the] Complaint" lacked "reasonable particularity"); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 576 (N.D. Tex. 2018) (acknowledging that such document requests lack "reasonable particularity").

Christopher Stewart  
Page 12

WilmerHale

**RFP No. 18**.  This Request seeks documents concerning steps to raise money in connection with the Virginia Litigation.  Defendants did not agree to produce documents in response to this Request on the grounds of privilege and relevance.  Plaintiffs challenge the relevance objection for same reasons stated in their discussion of Request No. 12.  For the reasons noted in footnote 5 above, Defendants do not agree to change their response to Request No. 18.

**RFP Nos. 19 and 20**.  Request No. 19 seeks information concerning Pegasystems' share price, market capitalization, number of shareholders, volume of shares traded and the value of options "or any other Pegasystems security."  As Defendants noted, Pegasystems' share price, volume of shares traded, and other information about Pegasystems common stock is publicly available.  Plaintiffs recognized that Request No. 19 as drafted sought public information but clarified that the Request was intended to seek internal communications at Pegasystems about the topics listed.  Plaintiffs further conceded that there was overlap between Request No. 19 and Request No. 20,[11] but noted that Request No. 19 sought information from a broader time frame. Plaintiffs now reiterate their demand for "[a]ll documents concerning Pegasystems' share price, market capitalization, number of shareholders, volume of shares traded and/or the value of options, or any other Pegasystems security."

Having considered Plaintiffs' request, and as a show of good faith to keep the discovery process progressing, Defendants agree to produce in response to Request No. 19, non-privileged documents within Pegasystems' possession, custody, or control sufficient to show Pegasystems' common stock price, market capitalization, number of shareholders of common stock, the volume of common stock shares traded and/or the value of put or call options on Pegasystems common stock between May 29, 2020 and October 18, 2022.  Notwithstanding Defendants responses and objections, Defendants will not conduct a separate search in response to Request No. 20 based on Plaintiffs' representation the Request No. 20 seeks a subset of information sought by Request No. 19.

**RFP No. 22**.  This Request seeks "[a]ll documents concerning any Pegasystems Board of Directors meeting."  Defendants objected to this Request on several grounds, including privilege, burden, overbreadth, and relevance and agreed to produce "final minutes, agendas, and formal presentation materials from meetings of the Pegasystems Board of Directors or of Pegasystems' Audit Committee, that took place between May 29, 2020 to October 18, 2022 concerning the Virginia Action, the disclosure of the Virginia Action, or an accrual for the Virginia Action."[12] Defendants have separately agreed to produce all documents concerning the Virginia Litigation in response to Request No. 1, which would cover non-privileged drafts of Board materials and non-privileged correspondence with the Board concerning the Virginia Litigation.  Despite the breadth of what Defendants have already agreed to produce, and without articulating any reason why ***all***

---

[11] Request No. 20 seeks documents concerning price movements in Pegasystems common stock on five dates.

[12] As Defendants explained on the call, "formal presentation materials" refers to final materials presented to the Board that are maintained by Pegasystems, such as final slide decks used at Board meetings or shared with Board members in advance of meetings.  The same interpretation applies to Request No. 23.

Christopher Stewart
Page 13

WilmerHale

documents concerning meetings of Pegasystems's Board of Directors regardless of subject matter considered is relevant to this case, Plaintiffs restate their request for "documents 'concerning' board and board committee meetings." Plaintiffs' request again improperly seeks material that is clearly irrelevant and has no relationship whatsoever to the allegations in this case or either party's claims or defenses.

Nevertheless, as a show of good faith to keep the discovery process progressing, Defendants agree to supplement their response to Request No. 22 to include:

(i) final minutes, agendas, and formal presentation materials from meetings of the Pegasystems Board of Directors or of Pegasystems' Audit Committee that took place between May 29, 2020 to October 18, 2022, concerning misstatements or omissions alleged in the Complaint, unless dismissed by the Court's Order on the Motion to Dismiss, or the SEC filings in which the misstatements or omissions alleged appeared, to the extent any such documents exist, can be located via a reasonable search of documents within Pegasystems' possession, custody, or control; and

(ii) correspondence concerning the non-privileged final minutes, agendas, and formal presentation materials from meetings of the Pegasystems Board of Directors or of Pegasystems' Audit Committee that took place between May 29, 2020 to October 18, 2022 concerning the Virginia Action, the disclosure of the Virginia Action, an accrual for the Virginia Action, misstatements or omissions alleged in the Complaint, unless dismissed by the Court's Order on the Motion to Dismiss, or the SEC filings in which the misstatements or omissions alleged appeared, that can be located via a reasonable search of documents pursuant to reasonable and proportional search terms and custodians agreed upon by the Parties, to the extent any such documents exist.

*RFP No. 24*. This Request seeks documents identified in Defendants' initial disclosures. Defendants agreed to produce "all documents on which they intend to rely at summary judgment or trial." This was a good faith effort to craft a response based on objective criteria that could be used by counsel to identify documents. Plaintiffs now request that Defendants produce all documents that Defendants "may use to support [their] claims or defenses, unless the use would be solely for impeachment" on the grounds that Federal Rule of Civil Procedure 26(a)(1)(A)(ii) states a party "must provide copies" of such documents. Letter at 19.

As an initial matter, Rule 26 does not require what Plaintiffs say it does. Rule 26 requires a party's initial disclosures to include "a copy–*or a description by category and location*–of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). Defendants have indisputably complied with this requirement. *See* Defs.' Initial Disclosures at 4–5 (enumerating categories of documents).

In any event, Defendants have agreed to produce in response to Plaintiffs' numerous other requests the documents it identified in their initial disclosures. Specifically, Defendants identified four categories of documents in their initial disclosures:

1. Documents concerning the Appian Virginia Litigation;

2. Documents constituting or concerning Pegasystems' public representations and disclosures, including SEC filings, press releases, transcripts of earnings calls, transcripts of investor conferences, and analyst reports;

3. Documents concerning Pegasystems' accounting treatment of the Appian Virginia Litigation, including documents and communications involving Pegasystems' auditor regarding the Appian Virginia Litigation;

4. Documents otherwise relating to the Action.

The first three categories are clearly covered by Defendants' responses to the Requests. For example, the first category of documents is coextensive with what Defendants have agreed to produce in response to Request No. 1. The second category of documents is coextensive with what Defendants have agreed to produce in response to Request Nos. 1, 4, 12, 13, and 14. The third category of documents is coextensive with what Defendants have agreed to produce in response to Request Nos. 1, 4, 6, 7, 8, and 9.

Defendants believe the fourth category of documents is likewise covered by their existing responses to the Requests, including their response to Request No. 24. However, to put an end to this dispute, to the extent Defendants become aware of non-privileged "Documents otherwise relating to the Action" that they may use to support their claims or defenses, that are not otherwise responsive to the Requests, Defendants will produce those documents.

*RFP No. 25*. This Request seeks documents concerning Defendants' affirmative defenses or "factual arguments" that Defendants have asserted or "intend" to assert. Defendants agreed to produce documents on which they intend to rely at summary judgment or trial. As with Request No. 24, this was a good faith effort to craft a response based on objective criteria that could be used by counsel to identify documents. Nevertheless, Plaintiffs ask Defendants to reconsider their response and to produce any document concerning Defendants' defenses. Plaintiffs' request for documents "concerning" Defendants' defenses or "factual arguments" that Defendants may present is improper because it fails to identify with reasonable particularity the documents sought and provides no objective basis on which Defendants could reasonably comply.[13] Nevertheless,

---

[13] *See, e.g.*, *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 575–76 (N.D. Tex. 2018) ("For example, '[b]road and undirected requests for all documents which relate in any way to the complaint' do not meet Rule 34(b)(1)(A)'s standard. Similarly, '[a] request for 'all documents and records' that relate to 'any of the issues,' while convenient, fails to set forth with reasonable particularity the items or category of items sought for [the responding party's] identification and production of responsive documents.").

Christopher Stewart
Page 15

WILMERHALE

for purposes of concluding discussion of this Request, to the extent Defendants become aware of any non-privileged documents concerning an affirmative defense asserted by Defendants, Defendants will produce those documents.

  ***RFP No. 30***.  This Request seeks documents concerning Pegasystems' compliance with SOX, including: "(a) documents describing Pegasystems' policies, procedures, and controls for compliance with SOX; (b) SOX certifications and sub-certifications executed by Pegasystems' employees; and (c) documents purporting to summarize or reflect the substance of executed SOX certifications or sub-certifications."  Defendants objected on numerous grounds including privilege, ambiguity, overbreadth, burden, and relevance, but agreed to search for and produce (1) documents in response to Request 30(a) and (2) documents in response to Request 30(b) "for persons with responsibility for loss contingency disclosures and loss contingency accruals, dated between May 29, 2020 and October 18, 2022."

  With respect to Request No. 30(b), Plaintiffs challenge the scope of Defendants' response and ask that Defendants also provide SOX certifications and sub-certifications for "at least": "(i) the persons in Pegasystems' finance, accounting, sales and marketing, internal audit, investor relations, and inhouse counsel divisions/departments; (ii) the current or former Pegasystems' employees identified in the Complaint; and (iii) any persons with responsibility for (or that provided information in connection with) Pegasystems' misstatements and omissions alleged in the Complaint."

  Plaintiffs make this request without so much as a passing reference to why these SOX certifications and sub-certifications, if they exist, are relevant or proportional to this case.  The fact that a current or former employee is referenced by name in the Complaint is not an indicator of their relevance to this matter.  For example, while Hayden Stafford's name appears in the Complaint, as explained in the September 5 Letter, he has no relevance to this Action and indeed does not appear in Plaintiffs' lengthy Rule 26(a)(1) disclosures.  Plaintiffs' request is also ambiguous because the scope of those employees "identified in the Complaint" is not precisely defined and could include reference to "U.S.-based employees" and "India-based employees" (Compl. ¶ 87).  All of the people referenced by those broad characterizations are clearly not relevant to this Action and collecting such documents would be unduly burdensome and disproportionate to the needs of the case.  In addition, the reference to "persons with responsibility for" the challenged statements is similarly undefined and ambiguous.  While there are of course individuals who signed Pegasystems' SEC filings, it would not be possible to identify those who might have had "responsibility for" challenged statements generally without further articulation from Plaintiffs as to what they are seeking.  As with the foregoing requests, it is Plaintiffs' burden to establish the relevance of their requests and to state those requests with reasonable particularity.[14]

---

[14] *See supra* notes 4 and 11.

Christopher Stewart
Page 16

WILMERHALE

      Nevertheless, in the interest of cooperation, Defendants agree to revise their response to Request 30(b) to include, to the extent not already part of their response, SOX certifications or sub-certifications dated between May 29, 2020 and October 18, 2022 for persons in Pegasystems' finance, accounting, investor relations, and legal departments, to the extent any such documents exist and can be located via a reasonable search of documents within Pegasystems' possession, custody, or control..

      With respect to Request No. 30(c), in addition to the certifications and sub-certifications that Plaintiffs request, Plaintiffs also request documents derived from those certifications and sub-certifications. Defendants have considered this request and do not agree to provide any additional documents in response to Request No. 30(c) as the documents requested, to the extent any such documents exist, would be duplicative of the certifications and sub-certifications Defendants have agreed to produce and would be burdensome to locate given the breadth of the language in the Request. Where Plaintiffs will receive the certifications and sub-certifications themselves, they are not entitled to every document derived from those materials as well. Such discovery would be unreasonably duplicative and cumulative and, as such, the cost and burden of searching for and producing those materials, if they exist, would not be proportional to the needs of the case.[15]

      Sincerely,

      */s/ Robert Kingsley Smith*

      Robert Kingsley Smith

cc:  Daniel W. Halston
      Erika M. Schutzman

---

[15] *See* Fed. R. Civ. P. 26(b)(2) (discovery sought must be "proportional to the needs of the case" and court may limit "unreasonably cumulative or duplicative" discovery).