UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re PEGASYSTEMS INC. SECURITIES LITIGATION ) ) ) ) ) | Case No.:  1:22-cv-11220-WGY<br><br>**OPPOSITION TO LEAD PLAINTIFFS' MOTION TO COMPEL** |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

    A. Background ............................................................................................................ 2

    B. Overview Of The Dispute ...................................................................................... 3

II. LEGAL STANDARD..........................................................................................................4

III. ARGUMENT .......................................................................................................................5

    A. Plaintiffs Impermissibly Seek To 'Piggyback' On SEC Discovery Requests Rather Than Requesting Relevant Documents Directly ......................................... 5

        1. Plaintiffs Should Do Their Own Work and Frame Proper Requests .......... 5

        2. Policy Grounds Argue Against Production of Communications with Regulators ................................................................................................... 8

    B. Cloned Discovery Is Improper Here In Light of The Different Focus And Subject Matter of SEC Inquiry ................................................................................ 9

    C. October 26, 2022 Is A Reasonable Time Period Limitation, Consistent With Agreed-Upon Limits For Other Discovery Requests............................................. 11

IV. CONCLUSION..................................................................................................................12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
2016 WL 6779901 (S.D.N.Y. Nov. 16, 2016) ............................................................................8

*Baillargeon v. CSX Transp., Inc.*,
2022 WL 1104588 (D. Mass. Apr. 13, 2022) ..........................................................................11

*In re Broiler Chicken Antitrust Litig.*,
2020 WL 1046784 (N.D. Ill. Mar. 4, 2020) ............................................................................6, 7

*Campbell v. Facebook Inc.*,
2015 WL 4463809 (N.D. Cal. July 21, 2015) ...........................................................................9

*Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*,
2014 WL 1431124 (D. Mass. Apr. 14, 2014) ...........................................................................8

*Controlled Kinematics, Inc. v. Novanta Corp.*,
2019 WL 3082354 (D. Mass. July 15, 2019) ..........................................................4, 5, 10, 11

*Costa v. Wright Med. Tech., Inc.*,
2019 WL 108884 (D. Mass. Jan. 4, 2019) ......................................................................7, 9, 10

*Courter v. CytoDyn, Inc.*,
2022 WL 621535 (W.D. Wash. Mar. 3, 2022) ..........................................................................7

*Forth v. Walgreen Co.*,
2019 WL 10255628 (N.D. Ill. Jul. 10, 2019) ............................................................................8

*Garner v. Amazon.com, Inc.*,
2023 WL 6038011 (W.D. Wash. Sept. 15, 2023) ................................................................7, 12

*Goro v. Flowers Foods, Inc.*,
2019 WL 6252499 (S.D. Cal. Nov. 22, 2019) ..........................................................................7

*King Cnty. v. Merrill Lynch & Co., Inc.*,
2011 WL 3438491 (W.D. Wash. Aug. 5, 2011) .......................................................................6

*Luna v. Marvell Tech. Grp. Ltd.*,
2017 WL 4286325 (N.D. Cal. Sept. 22, 2017) .........................................................................7

*Mack v. Great Atl. & Pac. Tea Co.*,
871 F.2d 179 (1st Cir. 1989) ................................................................................................5, 12

*Merrifield v. Gussman*,
    296 F. Supp. 3d 362 (D. Mass. 2017) ................................................................................12

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ..................................................................................................12

*Midwest Gas Servs. Inc. v. Indiana Gas Co., Inc.*,
    2000 WL 760700 (S.D. Ind. Mar. 7, 2000) ..........................................................................6

*Milazzo v. Sentry Ins.*,
    856 F.2d 321 (1st Cir. 1988) ..............................................................................................11

*Munoz v. PHH Corp.*,
    2013 WL 684388 (E.D. Cal. Feb. 22, 2013) ..................................................................7, 11

*Netherlands Ins. Co. v. HP, Inc.*,
    648 F. Supp. 3d 271 (D. Mass 2022) ....................................................................................5

*In re New Century*,
    2009 WL 9568860 (C.D. Cal. July 8, 2009) ..........................................................7, 11, 12

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.*,
    2023 WL 4181198 (N.D. Ill. June 26, 2023) ..............................................................5, 7, 10

*Pac. Wine Distribs., Inc. v. Vitol Inc.*,
    2022 WL 1489474 (N.D. Cal. May 11, 2022) ....................................................................10

*Pegasystems Inc. v. Appian Corp.*,
    No. 2020-7216 (Va. Ct. App.) ..............................................................................................2

*Schneider v. Chipotle Mexican Grill, Inc.*,
    2017 WL 1101799 (N.D. Cal. Mar. 24, 2017) .....................................................................7

*In re Steinhardt Partners, L.P.*,
    9 F.3d 230 (2d Cir. 1993) .....................................................................................................7

*Stellato v. Medtronic Minimed*,
    2021 WL 3134685 (M.D. Fla. Feb. 2, 2021) ..................................................................7, 10

*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co*,
    2019 WL 6108220 (N.D. Ill. Nov. 15, 2019) .......................................................................9

*Town of Westport v. Monsanto Co.*,
    2015 WL 13685105 (D. Mass. Nov. 5, 2015) ......................................................................7

*In re Weatherford Int'l Sec. Litig.*,
    2013 WL 5788687 (S.D.N.Y. Oct. 28, 2013) .......................................................................8

*Whitman v. State Farm Life Ins. Co.*,
   2020 WL 5526684 (W.D. Wash. Sept. 15, 2020) ................................................................... 7

*Wollam v. Wright Med. Grp., Inc.*,
   2011 WL 1899774 (D. Colo. May 18, 2011) ........................................................... 5, 6, 7, 11

**Other Authorities**

Federal Rules of Civil Procedure
   Rule 26 ................................................................................................................................... 8

I.      **INTRODUCTION**

Plaintiffs'[1] motion is an improper attempt to evade their obligation to formulate discovery requests tailored to their claims and instead ride the coattails of a non-public inquiry initiated in March 2023 by the U.S. Securities and Exchange Commission ("SEC") of a different scope than what is at issue in this litigation. But the case law makes clear that they have to "do their own work" and frame their own requests for relevant information, and they cannot simply piggyback on documents produced in a later government inquiry.

This putative securities class action principally concerns a dispute over whether Pegasystems' initial non-disclosure of a trade secret lawsuit and later characterization of those claims and statements about the company's ethical commitments between *May 29, 2020 and May 9, 2022* were misleading. But rather than articulate requests for specific documents relevant to what is at issue in this litigation, Plaintiffs move this Court to compel the production of, among other things, *every* document and *every* communication Pegasystems has provided to the SEC and *every* "internal or external" communication concerning an SEC inquiry that covers matters not at issue in this case, including Pegasystems' *post-May 2022* accounting treatment of and statements regarding the trade secret lawsuit. And Plaintiffs do so without articulating why all such documents are relevant to their claims and instead improperly shift the burden to Defendants to explain why such documents are not relevant.

Plaintiffs' lazy fishing expedition is plainly improper under the Local Rules. But, worse, it will undermine the strong public interest in encouraging candor between companies and regulators in ongoing inquiries by weaponizing materials submitted or presented to regulators. It is also unnecessary. As Plaintiffs are forced to acknowledge, Defendants have already offered—

---

[1] Lead Plaintiffs are Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan, Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987, and Construction Industry Laborers Pension Fund.

and hereby renew their offer, as expanded—to produce to Plaintiffs all documents produced by Pegasystems to the SEC that are dated on or before October 26, 2022, which is the date the Parties have agreed upon for all other document discovery by Defendants.[2] This compromise provides Plaintiffs with the discovery they seek for the same time period for which Defendants are otherwise producing documents, and ensures Plaintiffs receive any documents provided to the SEC that are contemporaneous with the disclosures they challenge.

For these and the reasons set forth below, Plaintiffs' Motion should be denied.

A.  **Background**

The present litigation arises out of a lawsuit brought by Appian Corporation ("Appian") against Pegasystems Inc. ("Pegasystems" or the "Company") in Virginia state court in May 2020 for alleged misappropriation of trade secrets (the "Virginia Litigation"). On May 9, 2022, the jury unexpectedly awarded Appian over $2 billion in damages. Dkt. 65 at 5. The case is presently on appeal and oral argument was heard by the Court of Appeals of Virginia on November 15, 2023. *See Pegasystems Inc. v. Appian Corp.*, No. 2020-7216 (Va. Ct. App.).[3]

---

[2] Defendants previously offered to produce to Plaintiffs documents produced to the SEC dated on or before *October 18, 2022*, which is the date of the filing of the Consolidated Amended Complaint. On October 16, 2023, Defendants agreed to Plaintiffs' request to extend the end date for electronic discovery from October 18, 2022 to October 26, 2022. *See* Ex. A (10/16/2023 Letter from R. Smith to C. Stewart) at 6. Productions from Plaintiff and third-parties indicate that October 26, 2022 or around that time frame has generally been adopted as the end date for electronic discovery. All referenced exhibits ("Ex.") are attached to the Declaration of Daniel W. Halston, filed contemporaneously.

[3] The audio recording of the November 15, 2023 oral argument before the Virginia Court of Appeal may be accessed at the following location: "Court of Appeals of Virginia Recordings of Oral Arguments," Region 4 – Northern (11/15/2023), 1399-22-4 *Pegasystems, Inc. v. Appian Corp.* (Nov. 15, 2023), https://www.courts.state.va.us/courts/cav/oral_arguments/2023/11_home.html (Accessed 12/11/2023). During oral argument, the Court of Appeals twice expressed concerns about the exclusion of evidence concerning Appian's protection of its alleged trade secrets. *Id.* at 11:24-11:50 ("Relevance is kind of a low bar"), 35:06-35:35 ("[A]gain, relevance is [a] low bar"). The Court also was "troubled" by the trial court's decision to prevent Pegasystems from showing its purportedly infringing software to the jury. *Id.* at 58:58-59:16. The Court of Appeals further expressed concerns regarding the jury instruction given with respect to damages, noting that it imposed a "very low burden" on Appian and Appian appeared to have "exploited the instruction." *Id.* at 44:58-46:30. The court commented that the jury instruction at issue was given in only one other case, which was found to be an error on appeal, and noted that Appian was advocating "burden-shifting," which the Virginia Supreme Court had previously refused to read into a similar Virginia Uniform Trade Secrets Act provision. *See id.* at 50:07-50:45.

The Consolidated Amended Complaint (Dkt. 61) (the "CAC") was filed in this action on October 18, 2022 and alleged that Pegasystems and certain executives had made false and misleading misstatements and omissions between June 16, 2020 and May 9, 2022 regarding the Virginia Litigation, including statements concerning the merit of Appian's claims and topics related to the Virginia Litigation, such as competitive strategy, IP rights, and enforcement of the Company's Code of Conduct.  *See* CAC ¶ 120.

The SEC requested information from Pegasystems in March 2023, six months after the filing of the CAC, and a year after the end of the alleged Class Period.  Pegasystems filed a Form 10-Q Quarterly Report that disclosed the SEC's request, explaining that "the [SEC] has requested certain information relating to, *among other things*, the accounting treatment of the Company's … litigation with Appian Corporation."  Dkt. 104-1 (Pega 4/26/23 Form 10-Q) at 19 (emphasis added).  The disclosure further noted that the Company was "fully cooperating with the SEC's requests."  *Id*.  The SEC's inquiry is ongoing.  *See* Ex. B (Pega 10/25/23 Form 10-Q) at 20.

**B.     Overview Of The Dispute**

In Plaintiffs' First Request for Production of Documents to Defendants, Plaintiffs set forth a broad-ranging request for:

> All documents concerning your communications with, requests by, or actions of, the SEC or any other governmental agency concerning Pegasystems, including, but not limited to, all documents concerning any request by the SEC for information relating to the Virginia Action or Appian Complaints, including the SEC's request for information as disclosed in Pegasystems' Form 10-Q filed on April 26, 2023.

(hereinafter "Request 5").  *See* Dkt. 104-2 (Plaintiffs' FRP) at 13.

Among other objections, Defendants objected to this Request as overbroad, explaining that it "seeks cloned discovery requesting all discovery produced during a government investigation, which is irrelevant and immaterial unless the *fact* that particular discovery was produced is relevant to the subject matter of the Action."  Dkt. 104-4 (Defs.' Responses) at 15.

3

During meet and confers, Defendants indicated that they did not intend to withhold any documents that Pegasystems produced to the SEC if those documents were otherwise responsive to Plaintiffs' other Requests for specific categories of relevant documents. *See* Dkt. 104-8 (8/21/2023 Letter from R. Smith to C. Stewart) at 6. Defendants made clear that the SEC inquiry differs from Plaintiffs' requests in both topic and time period. *See id*. In the interest of cooperation, however, Defendants offered to produce all documents produced by Pegasystems to the SEC dated on or before October 18, 2022—the date that Lead Plaintiffs filed the CAC and the date Defendants had then proposed as the cutoff for their production in response to Plaintiffs' other requests—even though such a production would contain irrelevant materials for which Plaintiffs had not made a specific document request. *See id*. (offer to consider production); Dkt. 104-12 (9/5/23 Letter from R. Smith to C. Stewart) at 4 (actual offer to produce). Defendants similarly noted that they had no obligation to provide privilege logs provided to the SEC. *See* Dkt. 104-15 (9/12/2023 Letter from R. Smith to C. Stewart) at 1. In the interest of cooperation, however, Defendants offered to produce privilege log entries corresponding to the documents produced to the SEC that were dated on or before October 18, 2022. *See id*.

Plaintiffs did not respond with a counterproposal. Instead, on October 5, 2023, Plaintiffs wrote that the parties were at an impasse and no counterproposal would be forthcoming. Plaintiffs filed the Motion to Compel on November 27, 2023.

## II.   LEGAL STANDARD

"On a motion to compel, '[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance.'" *Controlled Kinematics, Inc. v. Novanta Corp.*, 2019 WL 3082354 at *2 (D. Mass. July 15, 2019). "Once a showing of relevance is made, the party opposing disclosure bears the burden of showing that the requested discovery is improper." *Id*. (citation omitted). Only relevant discovery will be compelled. *See Netherlands Ins. Co. v. HP,*

4

*Inc.*, 648 F. Supp. 3d 271, 274 (D. Mass 2022) (denying motion to compel where relevance of information sought by plaintiffs was "unclear at best"); *see also Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989) (parties "ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up.").

### III. ARGUMENT

Plaintiffs' Motion to Compel is an improper attempt to piggyback on work done by a regulator in a matter not before this Court and, if granted, would effectively excuse Plaintiffs from their obligation to "do their own work" and determine for themselves which documents may be relevant in the present action. *See Wollam v. Wright Med. Grp., Inc.*, 2011 WL 1899774, at *2 (D. Colo. May 18, 2011) (denying motion to compel cloned discovery and noting direct requests allow court to consider relevance of information sought). Moreover, as Defendants have repeatedly made clear, the SEC inquiry differs from this case in both its subject-matter and relevant time period. Accordingly, the Motion should be denied.

### A. Plaintiffs Impermissibly Seek To 'Piggyback' On SEC Discovery Requests Rather Than Requesting Relevant Documents Directly

#### 1. Plaintiffs Should Do Their Own Work and Frame Proper Requests

Plaintiffs' motion to compel wholesale 'cloned discovery' of all documents provided by Pegasystems to the SEC ignores case law that makes clear that such requests are "disfavor[ed]" by courts. *See In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 2023 WL 4181198 at *6 (N.D. Ill. June 26, 2023) (collecting cases denying motions to compel cloned discovery and finding request for all documents produced to DOJ to be "facially overbroad"); *In re Broiler Chicken Antitrust Litig.*, 2020 WL 1046784, at *2 (N.D. Ill. Mar. 4, 2020) ("[R]eflexive production of documents

5

previously provided to governmental entities is not appropriate. Rather, documents are discoverable only if they are relevant to a claim or defense in the case.").

The reason such document requests are disfavored is because "[a] party seeking discovery ordinarily must do their own work and request the information they seek directly" and "must make proper requests describing the information in which they are interested." *Wollam*, 2011 WL 1899774 at *2; *see also Midwest Gas Servs. Inc. v. Indiana Gas Co., Inc.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) (same). "'[C]loned discovery,' requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial unless the *fact* that particular documents were produced or received by a party is relevant to the subject matter of the subject case." *King Cnty. v. Merrill Lynch & Co., Inc.*, 2011 WL 3438491 at *3 (W.D. Wash. Aug. 5, 2011) (emphasis added).[4] "[W]ithout more, the Court cannot ascertain whether the documents requested actually relate to Plaintiffs' claims and defenses." *Id.*; *see also Wollam,* 2011 WL 1899774, at *2 ("Direct requests allow a court to consider the relevance of the information sought to the specific claims and defenses in the pending case."). Rather than relying on an improper clone discovery request that encompasses both relevant and irrelevant material, Plaintiffs "must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses." *King Cnty.*, 2011 WL 3438491 at *3.

Plaintiffs have not done so here. Plaintiffs argue that all documents provided to the SEC must be relevant because the inquiry concerns, in part, accounting for the Virginia Litigation. Mot.

---

[4] Plaintiffs do not assert that the fact that certain documents were "produced or received by" the SEC is relevant to the subject matter of the instant case. *Midwest Gas*, 2000 WL 760700 at *1. Rather, Plaintiffs "are interested in the content of documents and for that they must make proper requests describing the information in which they are interested." *Id.*

6

at 7.[5] But courts have found such bare assertions of relevance, based on nothing more than an assumption of relevance, to be insufficient. *See Outpatient Med. Ctr.*, 2023 WL 4181198 at *6; *Broiler Chicken*, 2020 WL 1046784 at *2; *Wollam*, 2011 WL 1899774 at *2; *Stellato v. Medtronic Minimed*, 2021 WL 3134685 at *2-3 (M.D. Fla. Feb. 2, 2021) (finding plaintiffs' request for "much of (if not all) discovery from an entirely separate case" to be "patently overbroad," as court "cannot properly consider whether the swathes of responsive documents would be relevant or proportional, and the Court declines to sign off on what amounts to a fishing expedition."); *Goro v. Flowers Foods, Inc.*, 2019 WL 6252499 at *18 (S.D. Cal. Nov. 22, 2019) ("Asking for all documents produced in another matter is not generally proper. The propounding party cannot meet its burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for"); *Forth v. Walgreen Co.*, 2019 WL 10255628 at *4 (N.D. Ill. Jul. 10, 2019) (denying motion to compel production of all documents defendant produced to the government in

---

[5] Plaintiffs' cited cases concerning cloned discovery from government investigations merely highlight courts' demanding standard for cloned discovery and the extent to which the issues in the litigation and investigation must be closely aligned. *See Garner v. Amazon.com, Inc.*, 2023 WL 6038011, at *2 (W.D. Wash. Sept. 15, 2023) (compelling cloned discovery with respect to a settled FTC case, and collecting authorities for proposition that courts "have declined to compel the wholesale reproduction" of investigation documents where plaintiffs fail to establish relevance); *In re New Century*, 2009 WL 9568860, at *4-5 (C.D. Cal. July 8, 2009) (denying in part request for cloned discovery for documents falling outside of the relevant time period for discovery, and noting that the order was "not intended for publication"); *Munoz v. PHH Corp.*, 2013 WL 684388, at *4, *6 (E.D. Cal. Feb. 22, 2013) (compelling cloned discovery where litigation and investigation were "based on identical allegations" and *Defendants did not propose "a reasonable time period that the Court can use to adjust the scope of Plaintiffs' request"*) (emphasis added); *Courter v. CytoDyn, Inc.*, 2022 WL 621535, at *2 (W.D. Wash. Mar. 3, 2022) (ordering production of SEC investigation documents where Defendants entirely "fail[ed] to engage with Plaintiffs' cited case law" regarding relevance and particularity); *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 230 (2d Cir. 1993) (compelling production of a *single* memorandum produced to SEC, rather than wholesale production of documents, where only objection was on privilege grounds); *Luna v. Marvell Tech. Grp. Ltd.*, 2017 WL 4286325, at *1 (N.D. Cal. Sept. 22, 2017) (similar).

Plaintiffs' cases concerning cloned discovery from private litigation—not government investigations—are less relevant, given the broad scope of government inquiries as compared to private discovery and the willingness of companies to cooperate with those inquiries, and reinforce the need for clear alignment on legal and factual issues between the matters. *See Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017) (allowing cloned discovery because "the [previous] suit and the instant suit involve *the same legal claims based on the same facts*") (emphasis added); *Whitman v. State Farm Life Ins. Co.*, 2020 WL 5526684, at *2-3 (W.D. Wash. Sept. 15, 2020) (allowing cloned discovery with respect to a "virtually identical class action"); *Costa v. Wright Med. Tech., Inc.*, 2019 WL 108884, at *1-2 (D. Mass. Jan. 4, 2019) (allowing cloned discovery for only a single litigation involving the same product, material, and type of "product failure" as in the instant action, and denying with respect to all other litigation); *Town of Westport v. Monsanto Co.*, 2015 WL 13685105, at *3 (D. Mass. Nov. 5, 2015) (denying motion to compel production of discovery from "all … litigation" concerning the product at issue as "overly broad").

*qui tam* action). Indeed, Plaintiffs are represented by experienced counsel who routinely litigate securities matters and who have served Defendants with forty-three *other* requests for documents they believe are relevant to this case.

### 2. Policy Grounds Argue Against Production of Communications with Regulators

Moreover, courts have recognized that communications with regulators, such as those sought here, are particularly sensitive and even less likely to be relevant in litigation.[6] *See Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*, 2014 WL 1431124, at *3 (D. Mass. Apr. 14, 2014) (denying request for communications with regulators because Plaintiffs failed to establish "how and why such communications are relevant," and noting that such communications are "subject to numerous confidentiality and privilege issues"); *In re Weatherford Int'l Sec. Litig.*, 2013 WL 5788687, at *3 (S.D.N.Y. Oct. 28, 2013) (declining to compel production of communications with SEC and DOJ, and noting that even where subject matter of subpoenas is relevant, *this does not explain "why disclosure of internal discussions, communications, or preparations related to those subpoenas is warranted"*) (emphasis added). Compelling production of materials provided in confidence to a government regulator also risks harming agencies' ability to regulate effectively. There is a strong public interest in encouraging candor between companies and regulators; allowing materials shared with regulators to be too freely weaponized in litigation would chill these communications. *See Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, 2019 WL 6108220, at *7 (N.D. Ill. Nov. 15, 2019) (refusing to compel discovery of communications with SEC, and noting that a party's communications with regulators would be "significantly

---

[6] Even where communications, white papers, or similar materials generated during the investigatory process are relevant, courts must consider their "marginal utility" under Rule 26(b)(1)'s proportionality requirement. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901 at *3 (S.D.N.Y. Nov. 16, 2016) (denying motion to compel production of communications, tolling agreements, white papers, and similar documents provided to regulators because "the investigatory processes of the CFTC and Defendants' other regulators have little to no bearing on the merits" of Plaintiffs' claims).

affected" if it "knew that its presentations and statements to regulators … will be freely discoverable in the follow-on civil litigation"); *Campbell v. Facebook Inc.*, 2015 WL 4463809, at *4 (N.D. Cal. July 21, 2015) (refusing to compel discovery of communications with foreign regulators, and noting that "effective regulation may depend on the candidness of [a regulator's] communications, which in turn may depend on confidentiality with the entities it regulates").

### B. Cloned Discovery Is Improper Here In Light of The Different Focus And Subject Matter of SEC Inquiry

Plaintiffs' argument for production of all documents provided to the SEC in connection with the SEC inquiry rests entirely on their assumption that the SEC inquiry "is about the same subject matter as this lawsuit." Mot. at 11. Plaintiffs assert that because Pegasystems' disclosure of the SEC inquiry mentioned the Virginia Litigation, "among other things," then they are entitled to *every* document and communication Pegasystems has provided to the SEC as well as *all* "internal or external Pega communications" concerning the SEC inquiry. *Id.* at 5–6. Not so.

As Plaintiffs know and as Pegasystems has publicly disclosed, the SEC inquiry concerns topics other than the single issue Plaintiffs highlight. *See* Dkt. 104-1 (Pega 4/26/23 Form 10-Q) at 19 (noting that the SEC "has requested certain information relating to, *among other things*, the accounting treatment of the Company's above-described litigation with Appian Corporation") (emphasis added). Defendants have repeatedly represented this to Plaintiffs as well. *See* Dkt. 104-8 (8/21/2023 Letter from R. Smith to C. Stewart) at 6. Yet, Plaintiffs fail to articulate why they believe the *entirety* of Pegasystems' document productions to the SEC, and all related communications, are relevant to this case.[7] *See Controlled Kinematics*, 2019 WL 3082354, at *2

---

[7] The fact that Defendants have voluntarily agreed to reproduce documents produced by Pegasystems in the Virginia Action has no bearing on the analysis of whether this Court should compel wholesale cloned discovery from a separate and broader governmental inquiry. The plaintiffs focus their CAC on disclosures about the Virginia Action and this Court focused its attention on that Action at the hearing when it denied the motion to dismiss. And courts assess each matter at issue to determine whether the legal and factual issues are closely aligned with the present action; even where cloned discovery is permissible with respect to one matter, it is not necessarily permissible for less related matters. *See Costa,* 2019 WL 108884, at *1–2 (allowing cloned discovery with respect to only one litigation with

(plaintiffs have burden of establishing relevance). This case differs from cases in which courts have permitted cloned discovery because, unlike in those cases, the issues in the SEC inquiry and this litigation are not sufficiently overlapping. *See*, *e.g.*, *Costa,* 2019 WL 108884, at *1–2 (allowing cloned discovery for only a single litigation involving the same product, material, and type of "product failure" as in the instant action, and denying with respect to all other litigation); *Outpatient Med. Ctr.*, 2023 WL 4181198, at *7 (noting that courts generally only allowed cloned discovery where the previous proceeding and the present case had "significant factual and legal overlap, with both suits asserting claims under the same statute"). Defendants are prepared to submit the SEC requests to the Court for *in camera* review so the Court may assess the scope of the SEC inquiry relative to the issues in the present action.

In situations where the two matters are distinct, courts have made clear that "targeted requests" that are appropriately tailored to the discovery sought should be used in lieu of wholesale reproduction of documents. *See Pac. Wine Distribs., Inc. v. Vitol Inc.*, 2022 WL 1489474, at *1 (N.D. Cal. May 11, 2022) (noting that plaintiffs "should be able to make targeted requests that fill the gaps as opposed to seeking a blanket order directing production of everything produced in" another litigation); *Stellato*, 2021 WL 3134685, at *3 (finding that request for "much (if not all) discovery" from another case, without limitation, is "not appropriately tailored to produce relevant and proportional discovery"). Again, Plaintiffs, not this Court, should "do their own work." *See Wollman*, 2011 WL 1899774, at *2.

Plaintiffs do not carry their burden with regard to *any* particular documents, much less all documents, Pegasystems has provided to the SEC.[8]

---

substantially the same claims at issue, and denying with respect to all other litigation).

[8] Plaintiffs' suggestion that Defendants must produce all documents provided to the SEC in connection with a broader and ongoing SEC inquiry because it would not be unduly burdensome is misplaced. *See* Mot. at 10 n.16. As Plaintiffs' own cited authority makes clear, even where the documents sought were previously produced in another

10

### C. October 26, 2022 Is A Reasonable Time Period Limitation, Consistent With Agreed-Upon Limits For Other Discovery Requests

Plaintiffs also ask the Court to order production of all documents produced by Defendants to the SEC, all communications with the SEC, and all internal communications concerning the SEC inquiry without regard to any time limitation. Mot. at. 5–6. The strongest argument that Plaintiffs can muster with regard to abandoning any relevant date range for Request 5 is that documents dated after the filing of a complaint are not "necessarily irrelevant." *Id.* at 8. In doing so, Plaintiffs double-down on their backwards understanding of the burdens of discovery and again make clear that they are on an improper fishing expedition. *See, e.g.*, *Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988) ("Discovery is not 'a fishing expedition'; parties must disclose some relevant factual basis for their claim before requested discovery will be allowed."). As explained above, Plaintiffs have the burden of showing relevance; it is never Defendants' initial burden to demonstrate why documents are *not* relevant. *Controlled Kinematics*, 2019 WL 3082354, at *2.

Moreover, Defendants have accepted *Plaintiffs'* proposal of October 26, 2022 as the cutoff date for Defendants' production. That is a reasonable compromise between the parties' original positions, is tethered to the time-frame relevant to Plaintiffs' allegations, and sets a reasonable limitation on production, including unknown future production burdens, given that the SEC inquiry is ongoing. Indeed, in Plaintiffs' own cited authority, *In re New Century*, 2009 WL 9568860, at *4-5, the Central District of California limited the reproduction of materials from

---

matter, the reasonableness of the time period for which documents are sought and the breadth of plaintiffs' requests are relevant factors in assessing burden. *See In re New Century*, 2009 WL 9568860, at *4-5 (limiting reproduction of materials from ongoing regulator inquiries to those documents falling within the relevant time period for litigation discovery); *Munoz*, 2013 WL 684388, at *6 (weighing in analysis that defendants could "limit their burden" by accepting a proposal by plaintiffs to narrow the request to a "smaller subset of documents" produced in CFPB investigation, and noting that while "Plaintiffs' discovery should not be limitless, Defendants *did not designate a reasonable time period* that the Court can use to adjust the scope of Plaintiffs' request") (emphasis added). The *Baillargeon* case is hardly comparable to the present case, as it concerned only production of the plaintiffs' filed federal tax returns—hardly the sweeping 'cloned discovery' that Plaintiffs seek here. *See Baillargeon v. CSX Transp., Inc.*, 2022 WL 1104588 at *4, (D. Mass. Apr. 13, 2022).

11

productions to regulators to documents falling within the relevant time period for discovery in the litigation.[9]

Imposing a reasonable limitation on time period, tied to a logical date, fairly "balance[s] the inquirer's right to know against the responder's right to be free from unwarranted intrusions[.]" *Mack*, 871 F.2d at 187. Indeed, courts routinely reject attempts to seek documents from an unlimited time period. *See Merrifield v. Gussman*, 296 F. Supp. 3d 362, 364 (D. Mass. 2017) (limiting discovery to 20 month time period relevant to allegations in Complaint); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 576 (2d Cir. 1996) (allowing discovery "over an unlimited time period" would be "overly broad and unquestionably burdensome"). The Court should give effect to the Parties' consensus that electronic discovery should be limited to the date range May 29, 2020 to October 26, 2022.

## IV.   CONCLUSION

In short, Plaintiffs should "do their own work"; they have made no effort to identify specific categories of documents sought or otherwise fulfill their discovery obligations with regard to Request 5.

For the above reasons, Plaintiffs' Motion to Compel should be denied.

---

[9] In contrast, in *Garner*, 2023 WL 6038011, at *2, another case on which Plaintiffs rely, the Western District of Washington compelled the production of documents provided to the FTC, but, significantly, the court's order came *after* the defendant company had disclosed a settlement with the FTC and the relevant regulatory inquiry had been closed.

| | |
|---|---|
| Dated: December 11, 2023 | Respectfully submitted,<br><br>*/s/ Daniel W. Halston*<br>Daniel W. Halston (BBO # 548692)<br>Michael G. Bongiorno (BBO # 558748)<br>Robert Kingsley Smith (BBO # 681914)<br>Erika M. Schutzman (BBO # 696241)<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>60 State Street<br>Boston, MA 02109<br>(617) 526-6000<br>Daniel.Halston@wilmerhale.com<br>Michael.Bongiorno@wilmerhale.com<br>Robert.Smith@wilmerhale.com<br>Erika.Schutzman@wilmerhale.com<br><br>*Counsel for Defendants* |