Case 1:22-cv-11220-WGY    Document 116-7    Filed 01/12/24    Page 1 of 6

# EXHIBIT 7

**Robbins Geller Rudman & Dowd LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Christopher D. Stewart
cstewart@rgrdlaw.com

October 5, 2023

<u>VIA EMAIL</u>

Robert Kingsley Smith
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109

Re:    *In re Pegasystems Inc. Securities Litigation*,
       No. 1:22-cv-11220-WGY (D. Mass.)

Dear Counsel:

We write following the parties' meet and confer calls on September 27, October 2, 4, and October 5, 2023 concerning the draft ESI Protocol and search terms and custodians.

**TAR**

Regarding the draft ESI Protocol, Defendants stated they are not currently using technology-assisted-review ("TAR") for the purposes of culling documents to be reviewed or produced in the litigation.

**Documents with Tracked Changes**

Regarding documents with tracked changes, we are amenable to removing the requirement that these documents be produced in native format based on your representation that Plaintiffs would retain the right to make reasonable requests that such documents be produced in native.  You confirmed that, despite being produced as black-and-white TIFF images, documents with tracked changes would still show interlineated and/or deleted text and comments.  We asked you whether the production of these documents as TIFF images would still reflect the identity of the author making the comments within the document with tracked changes – please let us know the answer.

**Short Message Communications**

Regarding short message communications, you identified two short message communications systems used by Pega: WebEx and Microsoft Teams.  You intend to collect these

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 5, 2023
Page 2


sources of ESI for production, and you proposed using search terms to identify potentially relevant and responsive short message communications for production.  As we have explained, using search terms to identify potentially relevant and responsive short message communications can be problematic given the terse nature in which short message communications are typically written.  You agreed to let us know how Defendants propose to search short message communications.  If search terms are to be used, we asked you whether you plan to group messages together for purposes of applying search terms, for example, by grouping the communications in blocks (by time, *e.g.*, like a 24-hour or 48-hour period), so all messages in a chain or conversation in the block are pieced together and considered a single "document" for the purposes of running search terms.  Further, as we mentioned during the call, there might be a need for whole channels or conversations to be collected and produced, depending on the subject matter.

**Hyperlinked Documents**

Regarding hyperlinked documents, you identified Microsoft SharePoint as the current principal system when linking to documents at Pega.  You indicated that at various times in the past persons at the company also used Box.com, as well as an internal shared drive.  You agreed to look into whether Sales Hub is still used and let us know.  Based on the documents Defendants have reproduced from the Virginia Action, it appears that Sales Hub was commonly used to share and store documents and information.

To the extent these other sources (Box.com, internal shared drive(s), and Sales Hub) contain potentially relevant materials, these should also be searched for the purposes of discovery in the case.

You further indicated that the company uses Microsoft 365, which allows for the collection of hyperlinked documents from SharePoint, and you are using the available functionalities to capture and associate linked documents from emails and Teams chats.  However, you indicated that you would only be collecting and associating the versions of the documents as they exist at the time of collection.  So, for example, if a document is referenced in an email from October 6, 2021, you will be collecting and producing the document as it exists today (or whenever the document was collected for the purposes of the review) with any subsequent changes made to the document, not the version of the document as it existed when the email or chat was sent on October 6, 2021.  You indicated that there is no way to systematically identify and associate the specific historical version of a hyperlinked document from an email or chat from other versions of that same document.  You can collect all historical versions of the documents, but this is a very large volume of documents (terabytes v. gigabytes).  Nevertheless, the parties may make reasonable requests for the production of historical point-in-time documents referenced in email or other communications and the parties agree to meet and confer in good faith regarding any such requests.

4866-9254-7972.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 5, 2023
Page 3

As for non-Microsoft sources of point-in-time documents, you indicated an unwillingness or inability to systematically collect and link such documents with their "parent" emails or other communications.  However, the parties may make reasonable requests for hyperlinked documents and the parties will meet and confer regarding these requests.  Nevertheless, if the parties are able to determine an automated manner in which to collect and link these hyperlinked documents, we request that they are linked in the first instance.

**Privilege Logs**

You indicated that none of the parties in the Virginia Action logged withheld or redacted documents, although all parties withheld or redacted documents as privileged or protected.

You indicated that you are not currently expecting to carve out any categories or types of documents from your privilege logs, except for documents dated after October 18, 2022.  You committed to notify and meet and confer with plaintiffs if you intend to carve out any other categories of documents from the logs.  You acknowledged that the advice of counsel and reliance on counsel is going to be of particular importance given the nature of the allegations in this case.

Regarding slip sheeting wholly withheld attachments or other family documents where other parts of the family are not withheld, you stated that employing such slip sheets would be burdensome and preferred to redact the pages wholesale instead.

**Search Terms & Custodians**

In Plaintiffs' latest turn of the ESI Protocol, we attempted to craft language consistent with your commitment to meet and confer and work cooperatively with Plaintiffs in identifying potentially relevant and responsive sources of ESI through the use of search terms and custodians, including through the use of search term hit reports.  We have tried to avoid what you believed were overly prescriptive requirements of prior drafts in the ESI Protocol, but we want to be clear on what we expect the parties' collaborative effort on this front to include.  We offer the revised language in our latest turn of the ESI Protocol accompanying this letter, assuming agreement on the following.

As Plaintiffs explained, we don't agree with Defendants' September 19, 2023 "discovery plan," belatedly provided to Plaintiffs nearly three months after Defendants first indicated their intention to provide such a plan, and their attempt to piece and parcel proposed custodians and search terms by each request for production ("RFP").  What Defendants propose is an overly complicated process and ignores the substantial overlap of issues pertinent to the RFPs.  There is simply no legitimate reason why, *e.g.*, the term "Zou" should not be run across all agreed

4866-9254-7972.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 5, 2023
Page 4

custodians' ESI for review and possible production in the case, including, taking your example from the call, the ESI of Phil Benvenuti.[1]  Nor do we agree with the limited search terms and custodians proposed in Defendants' discovery plan, as we made clear in writing you on September 22, 2023.  As we explained in meeting and conferring with you today, in our September 22 letter we proposed additional search terms and custodians and made clear that all search terms should be run across all custodians, for all of the requests, and search term hit reports should be provided to show these results.[2]  Also, Defendants should begin now to run search terms across the files and provide hit reports for any agreed upon custodians or any proposed custodian whose documents have been collected already.  There is no reason to wait until the parties reach agreement on custodians to begin to run terms and provide hit reports.  First, there is no impediment or undue burden to running terms and generating reports for proposed custodians whose documents have been collected already.  Second, waiting to do so would defeat the purpose of providing hit reports, which will help inform further discussion on any disputed custodians and terms.

---

[1]  This, of course, is just one example.

[2]  For instance, the September 22 letter clearly identified the custodians we proposed as the "Custodians for Plaintiffs' Document Requests," and the search terms we proposed as the "Search Terms for Plaintiffs' Document Requests."  We further stated in our letter that "[f]or the custodians identified above, unless otherwise agreed upon by the parties or ordered by the Court, or unless specifically indicated below, the date range of ESI documents to be searched using the below terms is May 29, 2020 through October 26, 2022."  At no point have we ever suggested we agreed with Defendants' byzantine proposal from September 19, 2023.  Further, given all of the above, we vehemently disagree with Defendants' insincere suggestion today that we have in any way walked back any prior agreement on terms and custodians.  Indeed, the list of proposed custodians we provided on September 22 was narrowly tailored, and we made an additional concession yesterday regarding multiple custodians which, if accepted by Defendants, will eliminate many years' worth of custodial files from Defendants' collection and review.  Your suggestion today was also particularly puzzling considering the parties' entire discussion on October 2, 2023, regarding search terms and custodians, was focused on the terms and custodians laid out in Plaintiffs' September 22 letter; at no point during that call did Defendants even attempt to explain the reasoning behind their convoluted "discovery plan" from September 19, which – as Plaintiffs explained in their September 22 letter – was deficient in many respects.

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 5, 2023
Page 5

**Segregable Documents**

We asked you on October 4 whether Defendants will withhold a non-privileged document that hits on an agreed-to search term if that document is responsive to an RFP for which Defendants did not agree to employ search terms to identify, collect, and potentially produce documents. You said your general practice would be to produce it, but that you would confirm. While we await that confirmation, we agree to strike this portion of the ESI Protocol, as long as, consistent with what you state is your general practice, Defendants will not withhold from production documents that hit on agreed-to search terms but which are responsive to an RFP for which Defendants did not agree to employ search terms to identify, collect, and potentially produce documents.

**Table 1: Metadata Fields**

We have attached to the correspondence transmitting this letter "Table 1: Metadata Fields." The table mirrors that attached to the RFPs served on defendants and is intended to be appended to any agreed-to stipulated ESI Protocol submitted to the Court. We request, consistent with footnote 1 to Table 1, to meet and confer with defendants regarding the appropriate metadata fields to be produced for ESI other than email and e-docs, including for Teams chats and mobile devices.

Very truly yours,

CHRISTOPHER D. STEWART

CDS:sll

4866-9254-7972.v1