# EXHIBIT 9

WILMERHALE

October 13, 2023

**Robert Kingsley Smith**

+1 617 526 6759 (t)
+1 617 526 5000 (f)
robert.smith@wilmerhale.com

**BY EMAIL**

Christopher D. Stewart
Robbins Gellar Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
cstewart@rgrdlaw.com

Re:  *In re Pegasystems Securities Litigation*, No. 22-cv-11220-WGY (D. Mass.)

Counsel:

We write on behalf of Defendants Pegasystems Inc. ("Pegasystems" or "Company") and Alan Trefler (together with Pegasystems, "Defendants") in response to Plaintiffs' correspondence dated October 5, 2023 regarding the ESI protocol.

### A.      Documents with Track Changes

As we confirmed on our September 27, 2023 meet and confer, documents with track changes will be produced in black-and-white TIFF images showing the track changes and any comments.  We can also confirm that the initials of the author of any comments would appear in TIFF images.  As we explained on our September 27, 2023 meet and confer, Defendants are willing to identify for Plaintiffs the author of any comments not decipherable from the author initials.

### B.      Short Message Communications

In response to your request that we provide a proposal for how Defendants will search short message communications, Defendants state as follows:

For Microsoft Teams, Defendants will search individual chats for the specified custodians, and all Teams channels of which those custodians are members, using the search terms agreed to by the parties.  Our understanding is that Teams chats can be collected and searched in a manner allowing search terms to capture text across multiple messages.

For WebEx, Defendants will search all WebEx chats for the specified custodians using the search terms agreed to by the parties.  Our understanding is that search terms cannot capture text across multiple messages.

### C.      Hyperlinked Documents

We can confirm that the Company continues to use Sales Hub.  As with non-Microsoft sources of point-in-time documents linked-to within email, Defendants agree that Plaintiffs may

Christopher Stewart
Page 2

WILMERHALE

make reasonable requests for hyperlinked documents and the Parties may meet and confer regarding any such requests.

If Defendants learn of an automated means of collecting and linking to the parent documents of non-Microsoft sources of point-in-time documents that is not unduly burdensome, Defendants will conduct such automated collection and linking for future productions. Defendants will not, however, agree to recollect and/or reproduce documents already collected or produced. Nor will Defendants undertake affirmative steps to develop or acquire the capability to automate the collection and linking of documents that is not currently available to Defendants.

**D.     Privilege Logs**

We did not "acknowledge[] that the advice of counsel and reliance on counsel is going to be of particular importance given the nature of the allegations in this case." Letter at 3. As we have repeatedly and consistently asserted, Defendants do not currently intend to assert an advice of counsel defense in this case.[1]

What we explained on our September 27, 2023 meet and confer is that given the scope of Plaintiffs' Requests for Production ("Requests," and each individually a "Request"), many of the documents sought by Plaintiffs will be privileged and/or protected from disclosure by the work product doctrine and will need to be withheld or redacted as a result. It was for that reason that we explained that Defendants may approach Plaintiffs about not logging certain categories of privileged documents that are obviously privileged and largely irrelevant, despite being technically responsive. Indeed, as we explained on the call, Plaintiffs' Request No. 4, which seeks all drafts of SEC filings, could return an untold number of emails between Pegasystems and its counsel concerning provisions of Pegasystems's SEC filings that have nothing to do with any aspect of this case, even if technically responsive to Request No. 4 as Defendants have construed it because the emails attach drafts of the filings with no changes to the provisions for legal proceedings or contingency accruals.

**E.     Search Terms and Custodians**

We disagree that Defendants' proposed discovery plan is "overly complicated," "byzantine," or otherwise improper. It is Plaintiffs' blunderbuss approach that is improper and

---

[1]      *See* Aug. 21, 2023 Letter to C. Stewart at 3 ("Defendants do not currently intend to assert an advice of counsel defense or rely upon any lawyers—in-house or otherwise—in support of their defenses at summary judgment or at trial"; Aug. 21, 2023 Letter to C. Stewart at 3 ("Defendants explained that they do not presently intend to assert an advice of counsel defense…."); Sept. 5, 2023 Letter to C. Stewart at 5 ("[A]s Defendants have repeatedly stated, they do not currently intend to assert an advice of counsel defense…."); Sept. 18, 2023 Letter to C. Stewart at 5 ("Defendants have also repeatedly advised Plaintiffs that Defendants do not presently intend to invoke an advice of counsel defense….").

Christopher Stewart
Page 3

inconsistent with the Federal Rules, the burden of which on Defendants Plaintiffs have never even attempted to justify.[2]

As you know, Defendants only have an obligation to search for and produce relevant documents proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). And it is beyond dispute, even accepting the "substantial overlap" among Requests that you allege, that not every custodian is relevant for every Request for which Defendants have agreed to conduct an ESI search, nor is every custodian necessarily relevant for the same time period—a concession implicit in your October 4, 2023 proposal that ESI for certain Disclosure Committee members only be searched for the period when they were on the Disclosure Committee. By way of example, members of Pegasystems' internal audit team are unlikely to be communicating directly with representatives of news publications. There is no reason why Pegasystems should incur the burden of collecting, searching, and reviewing ESI of certain custodians using search terms intended to capture documents regarding matters for which they have no responsibility or involvement. Doing so only serves to unnecessarily return false hits that Defendants will have to incur unnecessary expense to review. For that reason, it is no surprise that parties to litigation routinely tailor custodians and search terms to the specific requests for production in response to which an ESI search has been agreed.[3]

Of course, there may be terms that *do* warrant searching the ESI of all custodians.[4] Defendants are happy to consider running certain of Plaintiffs' proposed search terms across all custodians and are willing to meet and confer with Plaintiffs regarding those terms. And, of course, Defendants may have information about certain proposed custodians that Plaintiffs do not have, that may inform the propriety of certain searches for certain custodians, and that Defendants are willing to provide. But neither the propriety of certain search terms for all custodians nor potential

---

[2]    The vehemence with which Plaintiffs purport to disagree with what they evidently understand was an assertion by Defendants that Plaintiffs had "walked back any prior agreement on terms and custodiams," is unnecessary—and, frankly, unbecoming. We never suggested Plaintiffs had agreed to Defendants' proposal, and the fact that we "did [not] even attempt to explain the reasoning behind [our] . . . 'discovery plan' from September 19, [2022]" does not suggest otherwise. And if we had misunderstood Plaintiffs' September 22, 2023 letter or current state of play, that is still no reason to accuse an adversary of being "insincere" or attempting to malign their motives. A simple correction of the record would have sufficed.

[3]    *See, e.g., In re SunPower Sec. Litig.*, No. 09-CV-5473 RS JSC, 2012 WL 4343245, at *3 (N.D. Cal. Sept. 20, 2012) (noting that "[w]ithout specific information regarding which custodians Plaintiffs believe Defendants should search for each request, the Court cannot determine what discovery is proper"; ordering "Plaintiffs [to] identify *for each request* the custodians, or if individual names are not available, category of custodians sought"); *In re Zohar Iii*, 2023 Bankr. LEXIS 2244 at *26 (Bankr. D. Del. Sept. 11, 2023) (directing parties to negotiate "search terms[] and custodians relevant to each request").

[4]    "Zou" is not such a term. "Zou," after all, is not an uncommon name. The term "Zou" could require the collection and review of any correspondence with individuals with the surname "Zou," including vendors and customer representatives, or even documents misspelling the name of a Pegasystems employee with the surname "Zhou."

Christopher Stewart                                                              WILMERHALE
Page 4

asymmetry of information between Plaintiffs and Defendants means that *all* search terms are warranted for *all* custodians.

For the foregoing reasons, we continue to believe that indiscriminately searching all agreed-upon custodians with all agreed-upon search terms is not required by any Federal Rule nor appropriate. Nevertheless, we have begun running search term hit reports for agreed-upon or proposed custodians for whom documents have been collected. We will provide those hit reports once we have received them and have vetted their accuracy.

### F.    Segregable Documents

We can confirm that Defendants will not withhold a non-privileged document that hits on an agreed-to search term if that document is responsive to a Request, as construed by Defendants in their Responses and Objections to Plaintiffs' Requests and subsequent meet and confers between the Parties, even if Defendants did not agree to employ search terms to identify and produce documents in response to that Request.

Sincerely,

*/s/ Robert Kingsley Smith*

Robert Kingsley Smith

cc: Daniel W. Halston
    Erika Schutzman