# EXHIBIT 10

**WILMERHALE**

October 16, 2023

**Robert Kingsley Smith**

+1 617 526 6759 (t)
+1 617 526 5000 (f)
robert.smith@wilmerhale.com

**BY EMAIL**

Christopher Stewart
Robbins Gellar Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
cstewart@rgrdlaw.com

Re:    *In re Pegasystems Inc. Securities Litigation*, No. 1:22-cv-11220-WGY (D. Mass.)

Counsel:

We write on behalf of Defendants Pegasystems Inc. ("Pegasystems") and Alan Trefler (together with Pegasystems, "Defendants") in response to Plaintiffs' correspondence concerning search terms and custodians dated September 22 and October 9, 2023 and in follow-up to the parties' meet and confers on September 27, October 2, and October 5, 2023.

**A.    Custodians**

1.    Additional Disclosure Committee Members

Plaintiffs propose to add eight Disclosure Committee members as custodians. Unlike the five Disclosure Committee members proposed by Defendants as custodians (*i.e.*, Matt Cushing, Efstathios Kouninis, Lisa Pintchman Rogers, Tom Sorrentino, and Peter Welburn), each of the individuals proposed by Plaintiffs were not members of the Committee for the full period May 29, 2020 to October 18, 2022. Plaintiffs have narrowed the temporal scope of their request for some, but not all of these individuals, in a seemingly random manner. *See* Oct. 4, 2023 Email from C. Stewart.

As Defendants have explained and as set out further below, each of the additional individuals who Plaintiffs seek to add as custodians did not have responsibility for the disclosures at issue in this case and served on the Disclosure Committee for only a portion of the relevant period. They are unlikely to have non-duplicative, responsive documents concerning the Disclosure Committee and the development of the disclosures at issue in light of the custodians already agreed upon by Defendants for purposes of the ESI review.

- *Danielle Albon*. Ms. Albon served as Senior Director and Revenue Controller and Revenue Controller during the relevant period. She served on the Disclosure Committee from Q4 2020 through Q3 2021. She was not on the Disclosure Committee for the following quarters covered by Plaintiffs' request: Q2 2020, Q3 2020, Q4 2021, Q1 2022, Q2 2022, Q3 2022, and Q4 2022.

Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109

Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    San Francisco    Washington

Christopher Stewart
Page 2

WILMERHALE

- *Marissa (Foti) Arsenault*. Ms. Arsenault served as Revenue Manager during the relevant period. She served on the Disclosure Committee for just two quarters (Q2 2020 through Q3 2020); Plaintiffs have narrowed their request for Ms. Arsenault's materials to these two quarters.

- *Cris Morera Balaguer*. Ms. Balaguer served as Sr. Director, Tax during the relevant period. She served on the Disclosure Committee for about a year (Q4 2020 through Q3 2021); Plaintiffs have narrowed their request for Ms. Balaguer's materials to this time period.

- *Nick Collier*. Mr. Collier served as Director, Finance EMEA and Director, Finance during the relevant period. Mr. Collier focuses on supporting Pegasystems' operations in Europe, the Middle East, and Africa. He served on the Disclosure Committee from Q2 2020 through Q3 2021. He was not on the Disclosure Committee for the following quarters covered by Plaintiffs' request: Q4 2021, Q1 2022, Q2 2022, Q3 2022, and Q4 2022.

- *Carlos Fuentes*. Mr. Fuentes served as VP, Chief Information Security Officer during the relevant period. In this role, Mr. Fuentes ensures that Pegasystems is effectively securing its global assets and providing the most secure environment for its clients. Mr. Fuentes joined Pegasystems in June 2019 and served on the Disclosure Committee from Q1 2021 through Q4 2022. Plaintiffs have narrowed their request for Mr. Fuentes' materials to these quarters.

- *Jack Geraghty*. Mr. Geraghty served as VP, Financial Planning & Analysis during the relevant period. He served on the Disclosure Committee from Q2 2020 through Q3 2021. Plaintiffs have narrowed their request for Mr. Geraghty's materials to these quarters.

- *Don Lancaster*. Mr. Lancaster served as Senior Corporate Counsel during the relevant period. He served on the Disclosure Committee from Q2 2020 through Q3 2021. He was not on the Disclosure Committee for the following quarters covered by Plaintiffs' request: Q4 2021, Q1 2022, Q2 2022, Q3 2022, and Q4 2022.

- *Daniel Nash*. Mr. Nash served as Vice President, Finance and Vice President, Corporate Strategy during the relevant period. He served on the Disclosure Committee from Q3 2021 through Q4 2022. He was not on the Disclosure Committee for the following quarters covered by Plaintiffs' request: Q2 2020, Q3 2020, Q4 2020, Q1 2021, and Q2 2021.

The mere fact that these eight individuals served on the Disclosure Committee for a point in time during the relevant period does not require Defendants to scour their files using broad search terms. The cost of collecting *years* worth of data to review (some of which covers a period of time during which these individuals did not even sit on the Committee), only to identify the

WilmerHale

same Disclosure Committee materials found in the files of proposed custodians—such as Mr. Kenneally who managed the Committee, organized its meetings, and had responsibility for compiling draft disclosures—is not proportional to the needs of the case. Defendants do not agree to add the foregoing eight individuals as custodians. Nevertheless, to the extent there are limited categories of documents specific to the service of these custodians' on the Disclosure Committee that Plaintiffs believe are relevant to the issues in this case and would not be captured in the ESI of the Disclosure Committee members whose ESI Defendants have agreed to search, Defendants are willing to consider such a request.

2.    Administrative Personnel

Plaintiffs propose Crystal Balboni, and Andi Curfman as custodians on the basis of their roles supporting Ken Stillwell and Alan Trefler, respectively. Plaintiffs further propose including Katie Jones as a custodian on the basis of her reporting relationship with Peter Welburn. Plaintiffs believe that Ms. Balboni, Ms. Curfman, and Ms. Jones would be on correspondence with their supervisors and potentially third-parties, including correspondence concerning scheduling, that they believe should be produced.[1]

As Defendants explained during the meet and confer on October 2, Ms. Balboni, Ms. Curfman, and Ms. Jones perform administrative functions and their materials therefore would either be non-substantive (*i.e.*, scheduling or logistical emails) or duplicative of materials sourced from Mr. Stillwell, Mr. Trefler, and Mr. Welburn, who each are custodians proposed by Defendants. Further investigation conducted by Defendants into the correspondence practices of Ms. Balboni, Ms. Curfman, Ms. Jones, Mr. Stillwell, Mr. Trefler, and Mr. Welburn confirms that to be the case. For example, a review of the 58 instances in which Ms. Curfman appears on email correspondence in documents produced to Plaintiffs to-date demonstrates that all but four emails also include Mr. Trefler as a custodian. These four emails are a breakaway chain from an email involving Mr. Trefler and are focused on logistics for setting up a meeting.[2]

---

[1] During the October 2, 2023 meet and confer, Plaintiffs stated their belief that Mr. Stillwell had deleted approximately 80% of his emails because Mr. Stillwell appeared in the To," "From," or "Cc" fields on emails that had been produced in the Virginia Litigation but was not identified in the metadata for these emails as a custodian. Plaintiffs presented a similar conclusion concerning Alan Trefler's emails. Defendants expressed skepticism at Plaintiffs' conclusions but noted that reproducing the documents from the Virginia Litigation was complex and agreed to investigate this issue. Defendants' investigation found that the custodian metadata for documents produced in the Virginia Litigation reflects the custodians from which the produced document was sourced. For certain productions made in the Virginia Litigation, Pegasystems produced ESI using the custodian name "Pegasystems" despite that ESI having been collected from individual custodians—including Mr. Trefler and Mr. Stillwell. Therefore, it is not possible to conclude that an email sent to Mr. Stillwell that lists as its custodian "Pegasystems" was deleted by Mr. Stillwell. The same analysis applies to Mr. Trefler.

[2] PEGA_DMASS_00221523,    PEGA_DMASS_00223933,    PEGA_DMASS_00223939,    and PEGA_DMASS_00223946. Further to Defendants' explanation at note 1, each of these four documents contains the metadata produced by Pegasystems in the Virginia Litigation and lists as the custodian "Pegasystems."

Christopher Stewart                                                      WILMERHALE
Page 4

In addition, among the documents that are available to Plaintiffs are productions from third-party analysts that further corroborate the administrative role played by Ms. Curfman, Ms. Balboni, and Ms. Jones.  Not only do Ms. Curfman, Ms. Balboni, and Ms. Jones frequently appear on emails with Pegasystems colleagues who are proposed to be custodians, but the correspondence is focused on logistical and administrative matters such as event registrations and scheduling.[3]  Collection and production of materials from Ms. Curfman, Ms. Balboni, and Ms. Jones would therefore be *doubly* duplicative because they would be both duplicative of materials from other Pegasystems custodians and duplicative of materials that Plaintiffs already have in hand.  There is no reason for Defendants to expend the time and cost of producing such duplicative material, given the marginal utility of such collection and the lack of proportionality to the needs of this case.

Accordingly, Defendants do not agree to add Ms. Curfman, Ms. Balboni, or Ms. Jones as custodians.

### 3.  Pegasystems In-House Counsel

Plaintiffs propose Pegasystems' in-house counsel Kevin O'Keefe and Christopher Roche as custodians on the basis of their work on the Virginia Litigation.  During the relevant time period, Mr. O'Keefe was an Associate Corporate Counsel at Pegasystems and Mr. Roche was Lead Counsel, Americas.  We understand that both Mr. O'Keefe and Mr. Roche worked on the Virginia Litigation for much of the relevant time period—indeed, Mr. O'Keefe was on secondment to Pegasystems from Choate specifically to assist with managing the Virginia Litigation.  Reviewing and logging communications from Mr. O'Keefe and Mr. Roche over a period of years would impose a significant cost on Pegasystems that is not proportional to the needs of the case.  Courts regularly exclude in-house counsel as ESI custodians for this reason.[4]  Further, Defendants have also repeatedly advised Plaintiffs that Defendants do not presently intend to invoke an advice of counsel defense, such that communications with in-house counsel are not relevant to Defendants' defenses in this Action.  Defendants do not agree to add Mr. O'Keefe or Mr. Roche as custodians.

---

[3] *See, e.g.*, ROSENBLATT_0000394 (correspondence involving Ms. Jones and Mr. Welburn; substance of message from Ms. Jones is "I have sent a calendar invite for January 6th"); WS004719 (correspondence involving Ms. Jones and day-of scheduling); WS001269 (correspondence involving Ms. Balboni and Mr. Welburn in which Ms. Balboni provides a link to a registration form for Pega Investor Day); ROSENBLATT_0001861 (correspondence involving Ms. Balboni and logistics for Pega Investor Day registration); ROSENBLATT_0000041 (calendar invitation including Ms. Curfman in addition to Mr. Trefler, Mr. Stillwell, and Mr. Welburn).

[4] *See Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, 2019 WL 3369659, at *1 (D. Del. July 15, 2019) (denying motion to compel designate of defendant's in-house counsel as an ESI custodian because "[t]he possibility of finding discoverable information in [the in-house counsel's] ESI is outweighed by the $100,000 or more [Defendant] would have to spend on creating a privilege log if [in-house counsel] is an ESI custodian"); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 07-489, 2009 WL 3443563, at *9-10 (D.D.C. Oct. 23, 2009) (limiting review of in-house counsel documents and agreeing that "reviewing these custodians' documents and logging all the privileged documents is overly burdensome").

Christopher Stewart
Page 5

WILMERHALE

> 4.     Pegasystems Employees With Alleged Involvement in Virginia Litigation

Plaintiffs propose Kerim Akgonul, Benjamin Baril, Steve Bixby, Ryan Hale, Don Schuerman, Norma Suarez, and Leon Trefler as custodians on the basis of their alleged involvement in the conduct alleged in the Virginia Litigation.

Without conceding that any of these individuals have relevant material or that their inclusion as custodians is proportional to the needs of this case—and solely in the interest of compromise—Defendants agree to include Mr. Akgonul, Mr. Baril, Mr. Bixby, Mr. Schuerman, and Leon Trefler as custodians, as noted in Defendants' Revised Discovery Plan attached as Appendix A.

However, Defendants do not agree to include Ms. Suarez or Mr. Hale as custodians:

- Ms. Suarez, as Plaintiffs' know, worked with Mr. Baril in her role as a Director of Competitive Intelligence.  Documents produced in the Virginia Litigation confirm that almost all emails on which Ms. Suarez appears also include Mr. Baril.  A review of Ms. Suarez's documents for this matter is therefore likely to uncover little more than what would already be reviewed from Mr. Baril and would impose an unnecessary burden on Pegasystems.

- Mr. Hale is identified as a Senior Director, Business Operations, reporting to Mr. Stillwell, who received "access" to certain documentation concerning Appian.  Mr. Hale appears on a limited number of documents produced in the Virginia Litigation, many of which also involve Mr. Baril, Mr. Schuerman, or other custodians whose documents Pegasystems has agreed to search.  Mr. Hale was also identified by Simon Platt, Pegasystems' damages expert, as an individual who Mr. Platt spoke with in connection preparing his expert report. PEGA_DMASS_00326487.  Mr. Platt did not speak directly with Mr. Hale but testified that Mr. Hale simply provided his team with information about "tying contracts to particular revenue." PEGA_DMASS_00327316.  The inclusion of Mr. Hale as a custodian is not proportional to the needs of the case where his role with respect to the Virginia Litigation is already covered by Mr. Platt's expert report and his materials otherwise are likely to be duplicative of materials from agreed-upon custodians.

> 5.     Other Pegasystems Employees

Plaintiffs proposed Mike Pyle, Hayden Stafford, and Jeff Taylor as custodians seemingly due to their reporting relationship with Mr. Trefler.  Mr. Pyle is Pegasystems Chief Technology Strategist and held the same role between 2020 and 2022.  Mr. Stafford joined Pegasystems in June 2020 as the President of Global Engagement.  Mr. Taylor is Pegasystems Chief Strategy and Growth Officer and has held this role since 2021.  Each of them reported to Mr. Trefler.  However, the fact of the reporting relationship is not a basis for identifying these individuals as custodians where Mr. Trefler is already a custodian.

Christopher Stewart
Page 6

WILMERHALE

Although not articulated in Plaintiffs' proposal, during the October 2 meet and confer, Plaintiffs indicated that Mr. Pyle had at one point received "marketing materials" related to Appian, that Mr. Stafford may have "investigated" the Appian Complaint, and that Mr. Taylor appeared on correspondence with Mr. Schuerman, Mr. Trefler, and Mr. Baril regarding competitive intelligence. None of these rationales provides a sufficient basis to include these individuals as custodians, and Defendants decline to do so.

Mr. Pyle, Mr. Stafford, and Mr. Taylor are not alleged to have had any connection with the Virginia Litigation or responsibility for Pegasystems disclosures. With regard to Mr. Stafford, Plaintiffs admitted that their theory of his "investigation" was conjecture; Defendants have not uncovered any evidence that Mr. Stafford undertook any such investigation upon joining Pegasystems in 2020. With regard to Mr. Pyle and Mr. Taylor, simply receiving material concerning Appian—without any greater connection to the conduct alleged in this Action—is not an adequate nexus to this case to include them as a custodian.

### B.    Search Terms

#### 1.    Relevant Time Period

For the first time since the parties' initial meet and confer in July 2023, Plaintiffs propose a relevant time period of May 29, 2020 through October 26, 2022. Plaintiffs provide no explanation for why the end date of October 18, 2022 provided by Defendants in their responses and objections should be extended by 8 days. October 18, 2022 is the date that Plaintiffs filed the Amended Complaint in this action and is an appropriate cut-off date for discovery.

Nevertheless, as a show of good faith, Defendants agree to extend the relevant time period to October 26, 2022 as requested by Plaintiffs.

#### 2.    Plaintiffs' Proposed Search Terms

As Defendants explained on the October 2 meet and confer, a number of the search terms proposed by Plaintiffs are overbroad and thus likely to be unduly burdensome to Defendants. The following terms are over broad and not reasonably tailored to seek relevant information:

| Term | Explanation of Overbreadth |
| --- | --- |
| 4. Zou | This is a common name that could bring in references to Pegasystems employees, contractors, vendors, or others that have nothing to do with the Virginia Litigation. |
| 9. "The other matt" | "The" and "other" are known Relativity "noise" words; when Relativity excludes these terms to complete the search the result is a search for |

Christopher Stewart
Page 7

WilmerHale

| Term | Explanation of Overbreadth |
|---|---|
| | "Matt," which is not narrowly tailored to seek relevant information. |
| 10. "illegal or questionable means to acquire" | "Or" is recognized by Relativity as a Boolean operator. This converts the search to "illegal" OR "questionable means to acquire." The search term "illegal" is not narrowly tailored to seek relevant information without other proximity term limiters. |
| 126. (stock* OR share* OR securities) W/10 (price OR fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR valu* OR market cap OR market capitalization) | This search string uses common business parlance without any topical limiter. For example, *any* time a custodian "shares" information about a "decrease" or "decline" in anything, that would be pulled into this search string even though such documents would be plainly irrelevant. Further, Defendants have already agreed to provide documents sufficient to show information such as Pegasystems' share price and market capitalization during the relevant period. |
| 127. (quarter* OR annual* OR investor* OR earning* OR Q1* OR Q2* OR Q3* OR Q4* OR FY*) W/10 (conference* OR call* OR update* OR announc*) | This search string uses common business parlance without any topical limiter. *Any* reference to a quarterly call or annual conference would be pulled in by these terms, regardless of the focus of the conference or call. So too would irrelevant communications containing the commonly used term "FYI" (*i.e.* "FYI the call is starting now," "just an FYI I have an update for you," etc.). Although Plaintiffs were unable to identify which Requests this search string is relevant to, Defendants' construals generally included topic limitations. The terms proposed by Defendants to capture SEC filings and earnings calls include such topic limitations and are appropriately tailored to the issues in this case. |
| 128. (script* OR prep* OR remark*) W/10 (conference* OR earning* OR call*) | This search string uses common business parlance without any topical limiter. For example, any discussion of "preparing" or "prep" for a call or conference, on *any* topic, would be included in this search. The terms |

Christopher Stewart
Page 8

WILMERHALE

| Term | Explanation of Overbreadth |
|---|---|
|  | proposed by Defendants to capture preparations for earnings calls include such topic limitations and are appropriately tailored to the issues in this case. |

Defendants' Revised Discovery Plan attached as Appendix A reflects Defendants' positions set forth above and includes counterproposals for the terms that Defendants agree to search.

> 3. Additional Searches Concerning "Investigation" Referenced in Mr. Trefler's Deposition

On October 4, 2023, Plaintiffs sent a number of questions via email to discuss on a meet and confer the next day, including several related to an "investigation" referenced by Mr. Trefler during his deposition in the Virginia Litigation. On the October 5 meet and confer, Defendants discussed Plaintiffs questions but specifically caveated each of their responses as preliminary and subject to client approval. Plaintiffs' October 9 correspondence purports to "memorialize" our conversation on October 5 but notably omits this qualification.

In a question styled as "C.1.," Plaintiffs asked whether Defendants agree to search for and produce documents concerning the "investigation" referenced in Mr. Trefler's March 29, 2022 testimony. On the October 5 meet and confer, Defendants indicated a willingness to engage with Plaintiffs concerning this request and noted that Defendants might be amenable to conducting a targeted search for non-privileged materials concerning the "investigation" over a defined period of time. Defendants' proposed search for these materials is reflected in Defendants' Revised Discovery Plan attached as Appendix A.

In questions styled as "C.2.a." and "C.2.b." Plaintiffs requested that Defendants search for and produce the "correspondence to Appian dated December 21 and 28, 2021 [which] indicated that Pegasystems' 'investigations' were ongoing;" and "direct written reprimands that were included in their [Pegasystems'] employee files." Defendants agree to search for and produce non-privileged materials meeting these descriptions.

In a question styled as "C.2.c.," Plaintiffs requested that Defendants search for and produce "documents concerning" the "additional training regarding confidentiality"; the "quarterly [meetings] with the competitive intelligence teams"; and the "hard technical block to prevent further attempts at misconduct." On the October 5 meet and confer, Defendants indicated a willingness to produce documents sufficient to show the trainings referenced, but expressed some reservations about documents concerning the quarterly update and technical block. Defendants agree to search for and produce non-privileged documents sufficient to show the "trainings regarding confidentiality," the "quarterly [meetings] with the competitive intelligence teams," and the "hard technical block to prevent further attempts at misconduct."

Christopher Stewart
Page 9

WILMERHALE

4.  Request No. 16[5]

Defendants have agreed to produce in response to Request No. 16 "confirmed violations" of Pegasystems' Code of Conduct between May 29, 2020 and October 18, 2022 that relate the portions of the Code of Conduct challenged in the Complaint.  Consistent with our discussion on October 5, 2023, Defendants will review reports made through Pegasystems' reporting hotline for purposes of identifying documents responsive to Request No. 16.

Plaintiffs' request also encompasses "suspected violations" of the Code of Conduct.  As previewed in Defendants' September 5, 2023 correspondence, stated in Defendants' September 18, 2023 correspondence, and discussed in meet and confers, the term "suspected violations" is ambiguous, subjective, and fails to describe with reasonable particularity the documents sought. Sept. 5 Letter at 6-7; Sept. 18 Letter at 10-11.  Defendants remain willing to consider specific, objective criteria for this request.

On October 9, 2023, Plaintiffs proposed the following:

> documents or communications concerning or discussing whether an act or conduct violated a clause(s) of the code of conduct at issue in this case (e.g., the clauses cited in the Amended Complaint), regardless of whether the act or conduct referenced in that document was ultimately deemed or "confirmed" to be a violation of the code of conduct.

Oct. 9 Letter at 3.  While a step in the right direction, this proposed definition does not clarify what Plaintiffs mean by "concerning" as compared to "discussing;" similarly, Plaintiffs do not explain the difference between "an act" and "conduct."  Plaintiffs' example is limited to discussion of an action and whether it violates a relevant provision of the Code of Conduct.  Accordingly, consistent with the example provided by Plaintiffs, Defendants agree to search for and produce in response to Request No. 16 documents or communications dated between May 29, 2020 and October 26, 2022 discussing whether an action violated the clauses of the Code of Conduct challenged in ¶¶ 151 to 157 of the Amended Complaint.[6]  Defendants understand Plaintiffs' search terms proposed

---

[5] Request No. 16 seeks, in part, "all documents concerning any violations or suspected violations of Pegasystems' Code of Conduct."

[6] These statements include the following:

- ¶ 151: "This Code applies to all our interactions in various areas of our shared professional lives including those of our officers, full and part-time employees, interns, all people retained as independent consultants, and members of the Board of Directors of Pega and its subsidiaries worldwide."

- ¶ 152: "As Pega Employees, we commit to acting consistently with our Pega Values and Success Behaviors to: … Compete fairly, honestly, and vigorously; and … Maintain a culture that values and nurtures ethical conduct and fosters transparency and honesty by being fair and trustworthy in all our interactions with each other, our clients, and our partners."

- ¶ 153: Our policy is to protect the confidential information of third parties with the same care that we use to protect our own confidential information."

- ¶ 154: "We commit to… Never use illegal or questionable means to acquire a competitor's trade secrets or

Christopher Stewart

WILMERHALE

Page 10

on September 22, 2023 to constitute Plaintiffs' proposal for search terms to use for purposes of Request No. 16. Defendants have incorporated these search terms as shown on Defendants' Revised Discovery Plan attached as Appendix A.

     5.  <u>Request No. 17[7]</u>

As with Request No. 16, Defendants have agreed to produce in response to Request No. 17 "formal complaints submitted by Pegasystems employees regarding the Virginia Action, Appian Complaints (including allegations therein), or Pegasystems' disclosures or accrual decisions concerning the Virginia Action." Subject to reaching an agreement with Plaintiffs on the scope of the documents sought by Request No. 17, Defendants will review reports made through Pegasystems' reporting hotline for purposes of identifying documents responsive to Request No. 17.

Plaintiffs' October 9 correspondence proposes the following criteria for Defendants to search for and produce "informal complaints":

> documents or communications concerning or discussing whether an act or conduct regarding the three subjects listed in RFP 17 (i.e., (i) the Virginia Action; (ii) the Appian Complaints or conduct alleged therein; and (iii) Pegasystems' financial reporting or disclosures) complied with or violated any laws, rules, guidelines, or regulations, regardless of whether the discussion about that particular act or conduct stemmed from a complaint filed through Pegasystems' formal channels for submitting complaints, or outside of those formal channels such as an email or other communication.

---

other confidential information, such as trespassing, burglary, wiretapping, bribery, stealing, seeking confidential information from a new employee who recently worked for a competitor, or misrepresenting your identity in hopes of obtaining confidential information."

- ¶ 155: "If any of us are asked to depart from this Code, whether by our supervisor, another employee or anyone else, we agree to seek clarification and/or guidance as to the propriety of the actions in question from our Chief Executive Officer or our Chief Compliance Officer."
- ¶ 156: "We will not tolerate any deviation from our Code. … Pega's policy is to take prompt action to enforce this Code and all of Pega's other policies. Depending on the seriousness of the violation and the other relevant circumstances, violations of this Code may result in a formal or informal warning or reprimand, demotion, suspension, dismissal, or other disciplinary action."
- ¶ 157: "Moreover, any supervisor who directs or approves of any conduct in violation of this Code, or who has knowledge of such conduct and does not immediately report it, also will be subject to disciplinary action, which may include suspension or termination of employment."

[7] Request No. 17 seeks "[a]ll documents concerning any concerns, complaints, or issues raised with Pegasystems' audit committee, internal audit department, members of a disclosure committee (including, without limitation, the "Disclosure Committee" referenced in the Code of Conduct), Senior Management, or other divisions or individuals responsible for fielding, processing, or responding to employee concerns or complaints, regarding: (a) the Virginia Action; (b) the Appian Complaints or conduct alleged therein; and (c) Pegasystems' financial reporting or disclosures."

Christopher Stewart
Page 11

WilmerHale

Oct. 9 Letter at 3.  Similar to Request No. 16, this proposed definition does not clarify what Plaintiffs mean by "concerning" as compared to "discussing;" Plaintiffs also do not explain the difference between "an act" and "conduct."  Moreover, as noted in Defendants' September 18 correspondence, and as stated by Defendants on the July 28, 2023 meet and confer, Defendants' agreement to search for and produce the foregoing documents requires that the Parties have a meeting of the minds on what constitutes the allegations in the Appian Complaints "or conduct alleged therein," and Plaintiffs' proposed definition does not address this.  Sept. 18 Letter at 11 & n.10.

Although Defendants raised this exact issue in July, Plaintiffs have not provided a response to-date.  Without this clarification from Plaintiffs on the scope of Request No. 17, the Request remains impermissibly broad because it fails to identify the documents sought with "reasonable particularity" as required by the Federal Rules.  Fed. R. Civ. P. 34(b)(1)(A).[8]  Defendants are willing to consider a proposal from Plaintiffs in this regard, but it is not incumbent on Defendants to read Plaintiffs' mind.  Further, Defendants would be amenable to reaching a compromise similar to the one proposed above for Request No. 16, provided that the Parties have a meeting of the minds on the scope of Request No. 17.

Finally, based on our discussions and Plaintiffs' correspondence from October 9, Defendants understand that the search terms proposed by Plaintiffs on September 22, 2023 encompass those that Plaintiffs request for Request No. 17.  If that is inaccurate, please let us know.

Best regards,

*/s/ Robert Kingsley Smith*

Robert Kingsley Smith

cc:    Daniel W. Halston, Daniel.Halston@wilmerhale.com
       Erika M. Schutzman, Erika.Schutzman@wilmerhale.com

---

[8] *See, e.g.*, *Gondola v. USMD PPM, LLC*, 223 F.Supp.3d 575, 586 (N.D. Tex. 2016) (holding that requests for documents "relat[ing] to the allegations of [the] Complaint" lacked "reasonable particularity"); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 576 (N.D. Tex. 2018) (acknowledging that such document requests lack "reasonable particularity").

# Appendix A

**Defendants Pegasystems Inc.'s and Alan Trefler's Proposed Document Discovery Plan for Requests for Production Nos. 1, 8–11, 12–14, 16–17, 22-23**

This document describes the terms of the plan for document discovery that Defendants Pegasystems Inc. ("Pegasystems") and Alan Trefler (collectively, "Defendants") propose to use to satisfy certain of their document production obligations in response to Plaintiffs' First Request for Production of Documents to Defendants dated June 2, 2023 ("Requests").  Defendants reserve the right to modify this Plan, including to narrow or remove custodians or search terms should additions requested by Plaintiffs render the search and review conducted by Defendants unreasonable, unduly burdensome, or not proportional to the needs of this case.

This Plan is subject to, and does not waive or supersede, the objections to and construction of Plaintiffs' Requests (as supplemented by correspondence dated August 21, September 5, and September 18, and October 16, 2023) as set forth in Defendants' Responses and Objections to Plaintiffs' First Request for Production of Documents, which are incorporated herein by reference.

This Plan is further subject to the review of hit reports by all Parties and an assessment of whether the search terms and custodians listed herein are proportional to the needs of the case.  Defendants reserve all rights to make modifications to this Plan to reduce any burden to otherwise render it proportional to the needs of the case.

## I.      ESI Production (Excluding Mobile Data)

Defendants propose to conduct ESI filtering and review through the use of search terms, custodians, and date ranges as specified below.  Sources of ESI to which these search terms will apply include: e-mails and short-message format communications from WebEx and Teams.  In addition, for Mr. Trefler and Mr. Stillwell, Defendants will apply these search terms to electronic documents collected from their personal file storage locations OneDrive.[1]

Where Defendants' response to a Request contains both an agreement to conduct ESI filtering and review and a reasonable search for specific documents, this Plan describes only the ESI filtering and review component.  As separately agreed upon, Defendants will not withhold a non-privileged document that hits on an agreed-to search term if that document is responsive to a Request, as construed by Defendants in their Responses and Objections to Plaintiffs' Requests and subsequent meet and confers between the Parties, even if Defendants do not agree to employ search terms to identify and produce documents in response to that Request.

### A.      Custodians

| Name | Title | Terms |
|---|---|---|
| Kerim Akgonul | Chief Product Officer | 1-129 |
| Benjamin Baril | Director, Office of the Chief Technology Officer | 1-129 |
| Phil Benvenuti | Senior Director of Internal Audit | 134-138, 141-143 |

---

[1] Defendants separately will search for responsive documents in Pegasystems' centrally stored files and other sources of ESI; however, those searches will be conducted without search terms consistent with Defendants' Responses and Objections.

| Name | Title | Terms |
|---|---|---|
| Steve Bixby | VP, Product Management | 1-129 |
| Matt Cushing | VP, Chief Commercial Officer & General Counsel | 132-143 |
| John Kenneally | Senior Director, Finance and Treasury | 139-143 |
| Efstathios Kouninis | Chief Accounting Officer and VP, Finance | 35-36, 132-133, 139-143 |
| Lisa Pintchman Rogers | Vice President, Corporate Communications | 1-131 |
| Don Schuerman | Chief Technology Officer and VP, Marketing and Technology | 1-129 |
| Tom Sorrentino | Senior Director and Corporate Controller | 35-36, 139-143 |
| Kenneth Stillwell | Chief Operating Officer and Chief Financial Officer | 1-144 |
| Alan Trefler | Founder and Chief Executive Officer | 1-144 |
| Leon Trefler | Chief of Clients and Markets | 1-129 |
| Peter Welburn | VP, Investor Relations and Corporate Development | 1-131 |
| PegaCompliance@pega.com | General Compliance Email | 141-143 |

### B.   Search Terms

The following search terms relate to Request Nos. 1, 8, 9, 10, 11, 12, 13, 14, 16, 17, 22, and 23:

- Defendants have construed Request No. 1 to call for documents concerning the Virginia Action dated May 29, 2020 to October 26, 2022.

- Defendants have construed Request Nos. 8 and 9 to call for communications with Deloitte concerning the Virginia Action, the Appian Complaints, misstatements or omissions alleged in the Complaint, and Pegasystems' accounting for the Virginia Action, including legal expenditures associated with the defense of the Virginia Action, dated May 29, 2020 to October 26, 2022.

- Defendants have construed Request No. 10 to call for documents concerning Pegasystems' current or quarterly disclosures to the SEC regarding legal proceedings or loss contingencies dated between May 29, 2020 and October 26, 2022, including filings on Forms 10-K, 10-Q, and 8-K, and earnings calls.

- Defendants have construed Request No. 12 to call for communications with shareholders (including any institutional investors), analysts, or representatives of print media publications concerning Pegasystems' financial reporting, accounting, the Virginia Action, or the Appian Complaints dated from May 29, 2020 to October 26, 2022.  Defendants have construed the term "analysts" to mean the following: Barclays Capital, Citigroup Global Markets, D.A. Davidson & Co., Goldman Sachs, JMP Securities, J.P. Morgan, KeyBanc,

Loop Capital, Macquarie, Morningstar, RBC Capital Markets, Rosenblatt Securities, Truist, Wedbush Securities, William Blair, The Benchmark Company, Canaccord Genuity, CFRA Research, Credit Suisse Securities, Needham & Company, Oppenheimer & Co., and SMBC Nikko Securities.  Defendants have construed the term "print media" to mean traditional print publications, such as *The New York Times*, *The Washington Post*, and *Newsweek*.

- Defendants have construed Request No. 13 to call for print media coverage of the Virginia Action or the Appian Complaints, or the impact of the Virginia Action and Appian Complaints on Pegasystems dated between May 29, 2020 and October 26, 2022.

- Defendants have construed Request No. 14 to call for documents concerning statements made by Alan Trefler, Ken Stillwell, Lisa Pintchman Rogers, or Peter Welburn to print media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints between May 29, 2020 and October 26, 2022. Defendants have construed the term "analysts" to have the same meaning as in Request No. 12.

- Defendants have construed Request No. 16 to call for (i) documents concerning the drafting of the portions of the Code of Conduct challenged in the Complaint dated between May 29, 2020 and October 26, 2022 and (ii) documents or communications dated between May 29, 2020 and October 26, 2022 discussing whether an action violated the clauses of the Code of Conduct challenged in ¶¶ 151 to 157 of the Amended Complaint.

- Defendants have construed Request No. 17 to call for documents concerning formal complaints submitted to Pegasystems audit committee, internal audit department, disclosure committee, Alan Trefler, Kenneth Stillwell, Efstathios Kouninis, or Matt Cushing, by Pegasystems employees or current or former members of the Board of Directors concerning the Virginia Action, Appian Complaints (including allegations therein), Pegasystems' disclosures or accrual decisions concerning the Virginia Action, or misstatements or omissions alleged in the Complaint, unless dismissed by the Court's Order on the Motion to Dismiss.[2]

- Defendants have construed Request No. 22 to call for correspondence concerning the non-privileged final minutes, agendas, and formal presentation materials from meetings of the Pegasystems Board of Directors or of Pegasystems' Audit Committee that took place between May 29, 2020 to October 26, 2022 concerning the Virginia Action, the disclosure of the Virginia Action, an accrual for the Virginia Action, misstatements or omissions alleged in the Complaint (unless dismissed by the Court's Order on the Motion to Dismiss), or the SEC filings in which the misstatements or omissions alleged appeared.

- Defendants have construed Request No. 23 to call for documents concerning meetings of the Disclosure Committee referenced in Pegasystems' Code of Conduct that took place between May 29, 2020 and October 26, 2022.

---

[2] Defendants have requested that Plaintiffs provide clarification on the scope of this Request.

3

| Number | Term[3] | Proposed By |
|--------|---------|-------------|
| 1. | (10-K or 10-Q or 8-K) w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual*) | Defendants |
| 2. | ("Earnings Call" or script) w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual*) | Defendants |
| 3. | Youyong | Plaintiffs |
| 4. | Youyoung | Plaintiffs |
| 5. | zouyyong@yahoo.com | Plaintiffs |
| 6. | "Project Crush" | Plaintiffs |
| 7. | "understanding appian" | Plaintiffs |
| 8. | "Appian consultant" | Plaintiffs |
| 9. | "going to call him matt" | Plaintiffs |
| 10. | "questionable means to acquire" | Plaintiffs |
| 11. | "misrepresenting your identify in hopes of obtaining" | Plaintiffs |
| 12. | "the Company has strong defenses to these claims" | Plaintiffs |
| 13. | "we should never lose against Appian" | Plaintiffs |
| 14. | "can I ping about legality of using" | Plaintiffs |
| 15. | *apowerconsulting.com | Plaintiffs |
| 16. | bbaril@palenciabusinesscenter.com | Plaintiffs |
| 17. | (Andrew* w/3 Power*) | Plaintiffs |
| 18. | (Emily* w/3 Gold*) | Plaintiffs |
| 19. | (Appian OR APPN) AND (Eric w/3 Cole) | Plaintiffs |
| 20. | (Appian OR APPN) AND (Simon w/3 Platt) | Plaintiffs |
| 21. | (Appian OR APPN) AND (Richard w/3 Marshall) | Plaintiffs |
| 22. | (Appian OR APPN) AND (Paul w/3 Pinto) | Plaintiffs |
| 23. | (Appian OR APPN) AND (William w/3 Easttom) | Plaintiffs |
| 24. | (Appian OR APPN) AND (James w/3 Malackowski) | Plaintiffs |
| 25. | (Appian OR APPN) AND ((Judge OR Daniel) w/3 Ortiz) | Plaintiffs |
| 26. | (Appian OR APPN) AND ((Judge OR Richard) w/3 Gardiner) | Plaintiffs |
| 27. | (Appian OR APPN) AND "pending litigation" | Plaintiffs |
| 28. | (Appian OR APPN) AND "legal proceedings" | Plaintiffs |
| 29. | (Appian OR APPN) AND "A. Ewe" | Plaintiffs |
| 30. | (Appian OR APPN) AND "A Ewe" | Plaintiffs |
| 31. | (Appian OR APPN) AND (Paul* w/3 Foon*) | Plaintiffs |
| 32. | (Appian OR APPN) AND "Item 103" | Plaintiffs |
| 33. | (Appian OR APPN) AND "ordinary routine litigation" | Plaintiffs |
| 34. | (Appian OR APPN) AND ((topic OR subtopic OR FASB OR ASC) w/10 (450* OR "contingencies")) | Plaintiffs |

[3] The date range for these terms is May 29, 2020 to October 26, 2022 unless otherwise stated.

4

| Number | Term[3] | Proposed By |
|---|---|---|
| 35. | (Appian OR APPN) AND *deloitte*[4] | Plaintiffs |
| 36. | (To/From/Cc *@deloitte) AND ("without merit" OR (Pega* w/5 competitive w/5 market*) OR (notice! w/5 misappropriat!) OR "strong defenses" OR "code of conduct") | Defendants |
| 37. | (Appian OR APPN) AND ("Organic Living and Wellness" OR*@organiclivingandwellness.com) | Plaintiffs |
| 38. | (Appian OR APPN) AND ("Palencia Business Center" or *@palenciabusinesscenter.com) | Plaintiffs |
| 39. | (Appian OR APPN) AND (Albert w/3 Scii) | Plaintiffs |
| 40. | (Appian OR APPN) AND (Albert w/3 Skii) | Plaintiffs |
| 41. | (Appian OR APPN) AND ("A Skii") | Plaintiffs |
| 42. | (Appian OR APPN) AND (proceedings w/3 "ordinary course") | Plaintiffs |
| 43. | (Appian OR APPN) AND (spy or spies) | Plaintiffs |
| 44. | (Appian OR APPN) AND "Virginia Computer Crimes Act" | Plaintiffs |
| 45. | (Appian OR APPN) AND "Virginia Uniform Trade Secrets Act" | Plaintiffs |
| 46. | (Appian OR APPN) AND VCCA | Plaintiffs |
| 47. | (Appian OR APPN) AND VUTSA | Plaintiffs |
| 48. | (Appian OR APPN) AND Venugopal.sarada@edumithra.co.in | Plaintiffs |
| 49. | (Appian OR APPN) AND vishal.sarada@capgemini.com | Plaintiffs |
| 50. | (Appian OR APPN) w/35 "12 challenges" | Plaintiffs |
| 51. | (Appian OR APPN) w/35 "12challenges" | Plaintiffs |
| 52. | (Appian OR APPN) w/35 "ad damnum" | Plaintiffs |
| 53. | (Appian OR APPN) w/35 "burden of proof" | Plaintiffs |
| 54. | (Appian OR APPN) w/35 "free trial" | Plaintiffs |
| 55. | (Appian OR APPN) w/35 "tear down" | Plaintiffs |
| 56. | (Appian OR APPN) w/35 "trade secret" | Plaintiffs |
| 57. | (Appian OR APPN) w/35 "trade secrets" | Plaintiffs |
| 58. | (Appian OR APPN) w/35 "unjust enrichment" | Plaintiffs |
| 59. | (Appian OR APPN) w/35 "attack plan" | Plaintiffs |
| 60. | (Appian OR APPN) w/35 "battle card" | Plaintiffs |
| 61. | (Appian OR APPN) w/35 "CI brief" | Plaintiffs |
| 62. | (Appian OR APPN) w/35 "CI content" | Plaintiffs |
| 63. | (Appian OR APPN) w/35 "CI Project" | Plaintiffs |
| 64. | (Appian OR APPN) w/35 "CI space" | Plaintiffs |
| 65. | (Appian OR APPN) w/35 "competitive brief" | Plaintiffs |
| 66. | (Appian OR APPN) w/35 "competitive briefing" | Plaintiffs |

---

[4] Two of the search strings that Defendants proposed concerning communications with Deloitte are a subset of this term and therefore do not appear in this revised proposal.

5

| Number | Term[3] | Proposed By |
|---|---|---|
| 67. | (Appian OR APPN) w/35 "competitive intelligence" | Plaintiffs |
| 68. | (Appian OR APPN) w/35 "confidential" | Plaintiffs |
| 69. | (Appian OR APPN) w/35 "CRM proposal" | Plaintiffs |
| 70. | (Appian OR APPN) w/35 "damning attack" | Plaintiffs |
| 71. | (Appian OR APPN) w/35 "deep dive" | Plaintiffs |
| 72. | (Appian OR APPN) w/35 "license agreement" | Plaintiffs |
| 73. | (Appian OR APPN) w/35 "license agreements" | Plaintiffs |
| 74. | (Appian OR APPN) w/35 "request for admission" | Plaintiffs |
| 75. | (Appian OR APPN) w/35 "technical brief" | Plaintiffs |
| 76. | (Appian OR APPN) w/35 "technical business brief" | Plaintiffs |
| 77. | (Appian OR APPN) w/35 "technical CI" | Plaintiffs |
| 78. | (Appian OR APPN) w/35 "terms of use" | Plaintiffs |
| 79. | (Appian OR APPN) w/35 "trial terms and conditions" | Plaintiffs |
| 80. | (Appian OR APPN) w/35 action* | Plaintiffs |
| 81. | (Appian OR APPN) w/35 appeal* | Plaintiffs |
| 82. | (Appian OR APPN) w/35 appellate | Plaintiffs |
| 83. | (Appian OR APPN) w/35 battlecard* | Plaintiffs |
| 84. | (Appian OR APPN) w/35 BP3 | Plaintiffs |
| 85. | (Appian OR APPN) w/35 camtasia* | Plaintiffs |
| 86. | (Appian OR APPN) w/35 case* | Plaintiffs |
| 87. | (Appian OR APPN) w/35 claim* | Plaintiffs |
| 88. | (Appian OR APPN) w/35 complaint* | Plaintiffs |
| 89. | (Appian OR APPN) w/35 consultant* | Plaintiffs |
| 90. | (Appian OR APPN) w/35 contractor* | Plaintiffs |
| 91. | (Appian OR APPN) w/35 court* | Plaintiffs |
| 92. | (Appian OR APPN) w/35 damage* | Plaintiffs |
| 93. | (Appian OR APPN) w/35 defense* | Plaintiffs |
| 94. | (Appian OR APPN) w/35 demurrer* | Plaintiffs |
| 95. | (Appian OR APPN) w/35 depos* | Plaintiffs |
| 96. | (Appian OR APPN) w/35 discovery | Plaintiffs |
| 97. | (Appian OR APPN) w/35 documentation | Plaintiffs |
| 98. | (Appian OR APPN) w/35 enjoin* | Plaintiffs |
| 99. | (Appian OR APPN) w/35 exhibit* | Plaintiffs |
| 100. | (Appian OR APPN) w/35 hearing* | Plaintiffs |
| 101. | (Appian OR APPN) w/35 injunct* | Plaintiffs |
| 102. | (Appian OR APPN) w/35 interrog* | Plaintiffs |
| 103. | (Appian OR APPN) w/35 judgment* | Plaintiffs |
| 104. | (Appian OR APPN) w/35 juries | Plaintiffs |
| 105. | (Appian OR APPN) w/35 juror* | Plaintiffs |
| 106. | (Appian OR APPN) w/35 jury | Plaintiffs |
| 107. | (Appian OR APPN) w/35 (Kforce* OR "K-Force") | Plaintiffs |
| 108. | (Appian OR APPN) w/35 lawsuit* | Plaintiffs |
| 109. | (Appian OR APPN) w/35 litigat* | Plaintiffs |

| Number | Term[3] | Proposed By |
|--------|---------|-------------|
| 110. | (Appian OR APPN) w/35 merit* | Plaintiffs |
| 111. | (Appian OR APPN) w/35 misappropriat* | Plaintiffs |
| 112. | (Appian OR APPN) w/35 motion* | Plaintiffs |
| 113. | (Appian OR APPN) w/35 proceeding* | Plaintiffs |
| 114. | (Appian OR APPN) w/35 relief | Plaintiffs |
| 115. | (Appian OR APPN) w/35 teardown* | Plaintiffs |
| 116. | (Appian OR APPN) w/35 testif* | Plaintiffs |
| 117. | (Appian OR APPN) w/35 testimony | Plaintiffs |
| 118. | (Appian OR APPN) w/35 transcript* | Plaintiffs |
| 119. | (Appian OR APPN) w/35 trial* | Plaintiffs |
| 120. | (Appian OR APPN) w/35 verdict* | Plaintiffs |
| 121. | (Appian OR APPN) w/35 settle* | Plaintiffs |
| 122. | (Appian OR APPN) w/35 mediat* | Plaintiffs |
| 123. | Appian w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual* OR verdict) | Defendants |
| 124. | (Appian OR APPN) w/35 (MBO) | Plaintiffs |
| 125. | (Appian OR APPN) w/35 ("management based objective" OR "management based objectives" OR "management-based objective" OR "management-based objectives") | Plaintiffs |
| 126. | (Salesforce OR SFDC OR ServiceNow OR IBM) w/35 (MBO) | Plaintiffs |
| 127. | (Salesforce OR SFDC OR ServiceNow OR IBM) w/35 ("management based objective" OR "management based objectives" OR "management-based objective" OR "management-based objectives") | Plaintiffs |
| 128. | (Rand* w/3 Dillon) w/35 (Lombardi OR IBM) | Plaintiffs |
| 129. | (David w/3 Watson) w/35 (Salesforce OR SFDC) | Plaintiffs |
| 130. | Appian w/10 (media or journalist* or investor* or shareholder* or bank* or analyst* or (public w/2 relation*) or FT or "Financial Times" or WSJ or "Wall Street Journal" or "The Economist" or "Washington Post" or NYT or "New York Times" or Newsweek) | Defendants |
| 131. | Appian w/10 (Barclays or "Benchmark Company" or Canaccord or "CFRA Research" or Citigroup or "Credit Suisse" or "D.A. Davidson" or Goldman or "JMP Securities" or "J.P. Morgan" or KeyBanc or "Loop Capital" or Macquarie or Morningstar or "Needham & Company" or Oppenheimer or "RBC Capital" or "Rosenblatt Securities" or SMBC or Truist or Wedbush or "William Blair") | Defendants |

| Number | Term[3] | Proposed By |
|---|---|---|
| 132. | ((Board or "Audit Committee") w/10 (agenda* OR minutes OR presentation* OR materials*)) AND (Appian w/10 (complaint* OR defense* OR trial* OR depos* OR damage* OR jury OR appeal* OR litigation* OR expen*)) | Defendants |
| 133. | ((Board or "Audit Committee") w/10 (agenda* OR minutes OR presentation*)) AND ("without merit" OR (Pega* w/5 competitive w/5 market*) OR (notice! w/5 misappropriat!) OR "strong defenses" OR "code of conduct") | Defendants |
| 134. | ("Code of conduct") AND (Appian OR APPN) | Plaintiffs |
| 135. | ("Code of conduct") w/35 (violat* OR investigat*) | Plaintiffs; modified by Defendants |
| 136. | "code of conduct" w/10 (revise OR update) | Defendants |
| 137. | "code of conduct" w/10 ("ethical conduct" OR "confidential information" OR "illegal or questionable means" OR reporting OR deviation OR "prompt action" OR "disciplinary action") | Defendants |
| 138. | ("Code of conduct") AND (Baril* OR Bessman* OR Nguyen* OR Sarada* OR Bhowmick*OR Potluri* OR Vaddem* OR Kamaraju* OR Davis* OR Zhang*) | Plaintiffs |
| 139. | (Appian OR APPN) AND "Disclosure Committee" | Plaintiffs |
| 140. | "disclosure committee" w/10 (meeting* OR agenda* OR presentation* OR material*) | Defendants |
| 141. | (Complaint or report) AND (Appian w/10 (complaint* OR defense* OR trial* OR depos* OR damage* OR jury OR appeal* or litigation*)) | Defendants |
| 142. | (Complaint or report) AND (Appian w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual* OR verdict)) | Defendants |
| 143. | (Complaint or report) AND (("without merit" OR (Pega* w/5 competitive /5 market*) OR (notice! w/5 misappropriat!) OR "strong defenses" OR "code of conduct")) | Defendants |
| 144. | investigat* w/10 ("code of conduct" OR "alias" OR reprimand* or block*)[5] | Defendants |

---

[5] The date range for this term is November 1, 2021 to March 15, 2022.

8

## II.    Mobile Data Production

Defendants propose to review mobile data from select custodians by targeting recipients and date ranges as specified below.

        a)      <u>Custodian 1</u>: Alan Trefler

              (1)      <u>Date Restriction</u>: May 29, 2020 through October 26, 2022

              (2)      <u>Recipients</u>: Efstathios Kouninis, Kenneth Stillwell, Lisa Pintchman Rogers

        b)      <u>Custodian 2</u>: Kenneth Stillwell

              (1)      <u>Date Restriction</u>: May 29, 2020 through October 26, 2022

              (2)      <u>Recipients</u>: Phil Benvenuti, John Kenneally, Efstathios Kouninis, Lisa Pintchman Rogers, Tom Sorrentino, Alan Trefler, Peter Welburn

9