# EXHIBIT 11

**Robbins Geller Rudman & Dowd LLP**

| | | | | |
|---|---|---|---|---|
| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Christopher D. Stewart
cstewart@rgrdlaw.com

October 26, 2023

<u>VIA EMAIL</u>

Robert Kingsley Smith
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA  02109

      Re:    *In re Pegasystems Inc. Securities Litigation*,
            No. 1:22-cv-11220-WGY (D. Mass.)

Dear Counsel:

I write following our meet and confer call on October 23, 2023 regarding search terms and custodians.

**A.    CUSTODIANS**

Plaintiffs proposed 23 custodians on September 22, 2023, in addition to the 10 custodians Defendants proposed on September 19, 2023.  According to their October 16, 2023 letter, Defendants have agreed to 5 of the 23 custodians Plaintiffs proposed on September 22, but refuse to add the remaining 18.  The following custodians remain in dispute.

**1.    Members of Pegasystems' Disclosure Committee**

According to Defendants' October 16 letter, Defendants refuse to add the eight members of the Disclosure Committee that Plaintiffs proposed on September 22, 2023.[1]

With respect to four of the Disclosure Committee members – Marissa Arsenault (Foti), Cris Morera Balaguer, Carlos Fuentes, and Jack Geraghty – Plaintiffs agreed on October 4, 2023, in the spirit of compromise, to limit the search of each person's custodial documents to the time period corresponding to that person's membership on the Disclosure Committee.

---

[1]    Those persons are: Danielle Albon, Marissa Arsenault (Foti), Cris Morera Balaguer, Nick Collier, Carlos Fuentes, Jack Geraghty, Donald Lancaster, and Daniel Nash.

**Robbins Geller
Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 2

As we explained on October 23, we have agreed to apply the same temporal limitation to the remaining four Disclosure Committee members we proposed on September 22: Danielle Albon, Nick Collier, Donald Lancaster, and Daniel Nash.

| Custodian | Membership on Disclosure Committee (by Quarter)[2] | Number of Quarters During Which Custodian Was a Member of the Disclosure Committee | Approximate Reduction in Volume of Materials Requested for Collection and Search |
|---|---|---|---|
| Danielle Albon | Q4 2020 through Q3 2021 | 4 | 59% |
| Marissa Arsenault (Foti) | Q2 2020 through Q3 2020 | 2 | 79% |
| Cris Morera Balaguer | Q4 2020 through Q3 2021 | 4 | 38% |
| Nick Collier | Q2 2020 through Q3 2021 | 6 | 17% |
| Carlos Fuentes | Q1 2021 through Q4 2022 | 8 | 38% |
| Jack Geraghty | Q2 2020 through Q3 2021 | 6 | 38% |
| Donald Lancaster | Q2 2020 through Q3 2021 | 6 | 38% |
| Daniel Nash | Q3 2021 through Q4 2022 | 6 | 59% |

We believe our proposal represents a reasonable compromise. As illustrated above, the temporal limitations we propose should reduce the volume of documents sought for review by between 17% and 79%. For instance, with respect to Ms. Arsenault, Plaintiffs limit their request to the approximately six-month period during which she was a Disclosure Committee member – a *79% reduction* in comparison to a review of her files dated May 29, 2020 to October 26, 2022.

Please let us know by October 31, 2023, which of these eight custodians remain in dispute.

---

[2] This is according to Defendants' September 1, 2023 interrogatory responses. Plaintiffs have asked Defendants to disclose the specific dates during which each person was a member of the Disclosure Committee.

4894-8932-4938.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 3

> **2.      Crystal Balboni, Andi Curfman, Ryan Hale, Katie Jones, Mike Pyle, Hayden Stafford, and Jeff Taylor**

We proposed these seven individuals as custodians on September 22. According to Defendants' October 16 letter, Defendants refuse to add any of these persons as custodians. As explained on October 23, having considered Defendants' representations regarding these individuals, we do not presently intend to seek relief with respect to these seven individuals, but reserve the right to seek to add one or more of these persons as custodians at a later time.

> **3.      Kevin O'Keefe, Christopher Roche, and Norma Suarez**

We proposed these three individuals as custodians on September 22. According to Defendants' October 16 letter, Defendants refuse to add any of these persons as custodians. As explained on October 23, Plaintiffs' position remains that these individuals should be added as custodians.

Notably, Defendants' October 16 letter admits that O'Keefe and Roche are relevant custodians who "worked on the Virginia Litigation," but asserts that adding them would impose a significant cost on Pega that is not proportional to the needs of the case. Plaintiffs disagree. Roche is a key witness in this case as after the Appian complaint was filed in May 2020, Roche participated in a conference call with Deloitte where he provided an assessment of the Virginia Action.[3] Multiple Deloitte workpapers demonstrate that Roche was regularly in discussions with Pega's auditors about the Virginia Action. Given Defendants' reliance on Deloitte in this case, Roche needs to be added as a custodian.

O'Keefe also needs to be added as a custodian. Defendants' October 16 letter admits that O'Keefe worked for both Pega and Choate, the two counsels that were involved in the Virginia Action.[4] O'Keefe also verified Pega's responses to interrogatories in the Virginia Action, including

---

[3]    Roche's assessment of the Virginia Action is redacted on the basis of work product, which Plaintiffs have objected to and intend to seek court relief if Defendants choose not to withdraw their work product privilege designation. *See* Plaintiffs' October 6, 2023 letter to Defendants.

[4]    Defendants' unsupported proposition that in-house counsel can never be ESI custodians is belied by their own cited authority. The court in *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2009 WL 3443563 (D.D.C. Oct. 23, 2009), which Defendants cite, **granted** a motion to designate two in-house attorneys as custodians and search their ESI files. Meanwhile, unlike here – where the existence of relevant information within O'Keefe's and Roche's files is beyond dispute – the court in *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, 2019 WL 3369659 (D. Del. July 15, 2019), deemed it a mere "possibility" that an in-house lawyer possessed relevant documents. Moreover, courts have repeatedly held that in-house lawyers are proper ESI custodians. *See, e.g.*, *ADT LLC v. Vivint, Inc.*, 2017 WL 11632812, at *2 (S.D. Fla. Dec. 1, 2017) (ordering company "to produce all documents located in [two in-house

4894-8932-4938.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 4

responses purporting to identify all of the persons at Pega that accessed (or viewed others accessing) Appian's platform and facts regarding those accessed events, based on Pega's purported "investigation" into the subject matter.

Finally, Defendants' justification for excluding Norma Suarez as a custodian is rank speculation. Ms. Suarez's role as Director of Competitive Intelligence is undeniably relevant to the claims and defenses in this matter – and indeed, Defendants do not contend otherwise in their October 16 letter. It appears that the parties agree that Ms. Suarez possesses responsive information.[5] Her documents should likewise be collected.

### B.    SEARCH TERMS

#### 1.    Search Terms Defendants Refuse to Run

Defendants' October 16 letter identifies seven terms Plaintiffs proposed on September 22, 2023, that Defendants refuse to run as originally proposed. Those terms are addressed below.

For the sake of completeness, the terms listed in §B.1. *infra*, are listed as Term Nos. 145-150 in Appendix A. Plaintiffs would seek to have each of these terms run across all of the custodians

#### a.    "("Code of conduct") AND (violat* OR investigat*)" [6]

Plaintiffs proposed this term on September 22, 2023. Defendants have not provided any hit counts for this term.

Defendants' October 16 letter changed this term's limiter from "AND" to "W/35", and designated Defendants' modified version as Term No. 135.

Plaintiffs believe the version proposed on September 22 is appropriate and have included that version as Term No. 145.

---

attorneys'] email files responsive to the search it ran for the other custodians"); *Hall v. Life Care Ctrs. of Am., Inc.*, 2018 WL 5295892, at *4 (D. Kan. Oct. 25, 2018) (ordering company to perform ESI searches of its in-house attorneys' and legal staff's files).

[5]    For example, Ms. Suarez is identified as a "specific competitive intelligence person" for one-on-one competitive intelligence assets at Pegasystems. PEGA_DMASS_00152483.

[6]    This term was originally proposed as Term No. 16 in Plaintiffs' September 22 letter.

4894-8932-4938.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 5

Please advise by October 31, 2023 whether Defendants agree to this term.

**b.    "Zou"[7]**

The term "Zou" – the last name of Pega's co-defendant in the Virginia Action – is clearly designed to target relevant documents.  Among other things, "Zou" appears in Pega's filings with the SEC, and features prominently in the Amended Complaint and the Court's July 24, 2023 Order. Defendants have agreed to run terms using Zou's first name (Term Nos. 3-4).

Defendants have not provided any hit counts for this term, or otherwise attempted to quantify the undue burden Defendants contend this term would present.

Defendants' October 16 letter contends this term is "*likely* to be unduly burdensome" because "it is a common name that *could* bring in references to Pegasystems employees, contractors, vendors, or others that have nothing to do with the Virginia Litigation."  Defendants' October 16 letter does not identify any such "employees, contractors, vendors" with the same name as Youyong Zou, or provide any information validating their undue burden objection to this term.

Although Defendants speculate that the term "Zou" may inadvertently capture documents misspelling the name of a Pega employee with the surname "Zhou," Defendants identify no such "employee" named "Zhou."  A search of Defendants' production yields just *one email* with the term "Zhou."

During the October 23 call, Plaintiffs asked Defendants whether they could identify a *specific person*, other than Youyong Zou, with the last name of "Zou" – Defendants could not. Plaintiffs asked Defendants whether they could identify a *specific person*, other than Youyong Zou, with the last name of "Zou" who actually appears in the documents for any agreed-to custodians – Defendants could not.

Defendants stated on October 23 that the word "zou" is also a Dutch word.  Plaintiffs asked Defendants whether any Dutch-language documents containing the Dutch word "zou" are found in the custodial files of agreed-to custodians – Defendants did not know.[8]

---

[7]    This term was originally proposed as Term No. 4 in Plaintiffs' September 22 letter.

[8]    Regardless, to the extent that any of the documents to be searched contain the Dutch word "zou," one could quickly ascertain from the face of the document that the term "zou" hit on the Dutch word, not the last name of Youyong Zou. One could also easily isolate Dutch-language documents by such means as searching for a Netherlands-based ".nl" domain email address, or searching for unique Dutch words to locate potential documents in Dutch.

4894-8932-4938.v1

**Robbins Geller
Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 6

Defendants do not contend that any custodians communicated in Dutch, or would have a large volume of documents in Dutch.[9]  Plaintiffs asked Defendants how counsel in the Virginia Action had addressed the Dutch-language issue Defendants raised on October 23 – Defendants stated they did not know but would inquire.

Plaintiffs also explained on October 23 that, in December 2020, the court in the Virginia Action ordered Pegasystems to run the word "Zou" across all Pegasystems emails, a fact of which Defendants appeared unaware during the October 23 call.

In light of the above, in an effort to resolve this dispute, we agree to revise the term as follows:

| Plaintiffs' Proposed Term from September 22, 2023 | Plaintiffs' Revised Proposed Term (Term 146) |
|---|---|
| "Zou" | "Zou" and not "Zhou" |

Please advise by October 31, 2023 whether Defendants agree to this term as revised.

### c.    "The Other Matt" (Term 147)[10]

Defendants' October 16 letter contends this term is "likely to be unduly burdensome" because "The" and "other" are Relativity "noise" words.  However, if the term is run as it appears, in quotation marks – "The Other Matt" – "The" and "Other" should not act as Boolean operators.

Nevertheless, as mentioned on October 23, we investigated your concern by running the term "The Other Matt" across Defendants' production to-date – that search yielded 59 hits on the types of documents this term is intended to target, including documents discussing: (1) Pega assigning Zou the pseudonym "the other matt" in order to hide his identity as Pega's spy; and (2) documents from the Virginia Action discussing the fact of Zou's pseudonym as "the other matt."  A search of the phrase "other Matt" (that is, without the "the") across Defendants' production also yielded 59 hits.

---

[9]    Plaintiffs are aware of one Dutch-speaking employee (Jacqueline Vanwees) whose custodial files were searched in connection with the Virginia Action, however only ten of her custodial documents appear in Defendants' production.

[10]    This term was originally proposed as Term No. 9 in Plaintiffs' September 22 letter.

**Robbins Geller
Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 7

To address the issues you are having with running this term, we repeat our October 23 proposal that you index the words "the" and "other" so that you may run the search as it is written – "The Other Matt."

Please let us know by October 31, 2023 whether Defendants agree to this term as proposed above.

#### d.      "Illegal or Questionable Means to Acquire"[11]

This term, which is a taken verbatim from Pega's Code of Conduct, is featured in the Amended Complaint and the Court's motion to dismiss opinion. By running the term as it is written, in quotation marks – "illegal or questionable means to acquire" – the "or" should not operate as a Boolean operator. As mentioned on October 23, to investigate your concern, we ran the term "illegal or questionable means to acquire" across Defendants' production to-date – that search yields 29 hits. We also ran the term as "illegal" w/2 "questionable means to acquire," which also yields 29 hits.

Given that Defendants have agreed to the term "questionable means to acquire" (Term 10) – that is, by simply dropping the words "illegal or" from the version Plaintiffs proposed on September 22 – the phrasing of this term appears resolved.

#### e.      "(stock* OR share* OR securities) w/10 (price OR fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR valu* OR market cap OR market capitalization)"[12]

Defendants' October 16 letter contends this term is "likely to be unduly burdensome" because it may capture documents in which the word "shares" appears within ten words of the terms "decrease" or "decline" but not within the context of a discussion regarding Pega's common shares.

Defendants have not provided any hit counts for this term, or otherwise attempted to quantify the undue burden Defendants contend this term would present.

---

[11]    This term was originally proposed as Term No. 10 in Plaintiffs' September 22 letter.

[12]    This term was originally proposed as Term No. 126 in Plaintiffs' September 22 letter.

4894-8932-4938.v1

**Robbins Geller
Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 8

As noted on October 23, in an effort to investigate your concern, we ran the following search across Defendants' production: "shares" w/10 ("decrease" or "decline"). That search yielded just 30 hits, on documents including SEC filings and analyst reports on the BPM industry, or about 3% of the 950 hits that the full search above yields.

As we previously stated on September 22, we agree to limit this term to documents dated after February 15, 2022. Nevertheless, in an effort to address the concerns you raise and to make this search more targeted, we propose the following revised searches in lieu of the search from September 22, 2023:

| Plaintiffs' Proposed Term from September 22, 2023 | Plaintiffs' Revised Proposed Terms (Terms 148 and 149) |
|---|---|
| (stock* OR share* OR securities) w/10 (price OR fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR valu* OR market cap OR market capitalization) | **Term 148**: stock* w/10 (price OR fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR valu* OR "market cap" OR "market capitalization")<br><br>**Term 149**: ((share* OR securities) w/5 (price or valu*)) w/10 (fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR "market cap" OR "market capitalization") |

Please let us know by October 31, 2023 whether Defendants agree to these revised searches.

**f.    "(quarter* OR annual* OR investor* OR earning* OR Q1* OR Q2* OR Q3* OR Q4* OR FY*) w/10 (conference* OR call* OR update* OR announc*)"[13]**

Defendants' October 16 letter contends that this term is "likely to be unduly burdensome" because the term "FY*" may capture "communications containing the commonly used term 'FYI.'" Defendants have not provided any hit counts for this term, or otherwise attempted to quantify the undue burden Defendants contend this term would present.

---

[13]   This term was originally proposed as Term No. 127 in Plaintiffs' September 22 letter.

**Robbins Geller
Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 9

To investigate your concern, we ran this term across Defendants' production, both inclusive and exclusive of the term "FY*." These searches revealed that removing the term "FY*" from the search string reduced the number of hits by about 7%.

We suggested on October 23 replacing "FY*" with terms like "fiscal year" OR "FY19" OR "FY20" OR "FY21" OR "FY22".

After we made that suggestion on October 23, Defendants stated their concerns with this term expanded beyond the sub-term "FY*," asserting the term is overbroad because it could apply in any securities fraud case. Having considered your additional concerns from October 23, we propose the following revised search in lieu of the search from September 22, 2023:

| Plaintiffs' Proposed Term from September 22, 2023 | Plaintiffs' Revised Proposed Term (Term 150) |
|---|---|
| (quarter* OR annual* OR investor* OR earning* OR Q1* OR Q2* OR Q3* OR Q4* OR FY*) w/10 (conference* OR call* OR update* OR announc*) | (Appian OR APPN OR litigation OR "legal proceeding*" OR lawsuit OR "loss contingen*" OR verdict OR "jury trial" or Virginia OR Fairfax OR VA OR VCCA or VUTSA or compet*) AND [(quarter* OR annual* OR investor* OR earning* OR Q1* OR Q2* OR Q3* OR Q4* OR FY19 OR FY20 OR FY21 OR FY22 OR "FY 1*" OR "FY 2*" OR "full year" OR "fiscal year") AND (conference* OR call* OR update* OR announc*)] |

Please let us know by October 31, 2023 whether Defendants agree to this revised term.

  **g.**  **"(script* OR prep* OR remark*) w/10 (conference* OR earning* OR call*)"[14]**

We do not presently intend to seek relief on this term.

---

[14] This term was originally proposed as Term No. 128 in Plaintiffs' September 22 letter.

4894-8932-4938.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 10

## 2. The Parties' Agreed Search Terms

Plaintiffs and Defendants exchanged their proposed lists of search terms on September 22 and September 19, 2023, respectively.

To date, Defendants have not shared any hit reports for any search terms or custodians.

Defendants' October 16 letter identifies, for each of the 15 agreed custodians, which of the 144 agreed-upon search terms (listed as Term Nos. 1-144 of the attached Appendix A) Defendants agree to run across that particular custodian's files.

Defendants agree to run all 144 of the agreed upon terms across the custodial files of defendant Alan Trefler (CEO and Founder), and of non-party Kenneth Stillwell (CFO and COO). Thus, at least with respect to Trefler and Stillwell, the parties are in agreement that all of the agreed terms should be run across all of their custodial files.

Defendants agree to run *almost* all of the agreed upon terms – about 90% (129 to 131 terms) – across the custodial files of the following custodians:

1. Kerim Akgonul (Chief Product Officer): Term Nos. 1-129;
2. Benjamin Baril (Director, Office of the Chief Technology Officer): Term Nos. 1-129;
3. Steve Bixby (Vice President of Product Management): Term Nos. 1-129;
4. Don Schuerman (Chief Technology Officer and Vice President, Marketing and Technology Strategy): Term Nos. 1-129;
5. Leon Trefler (Chief of Clients and Markets): Term Nos. 1-129;
6. Lisa Pintchman Rogers (VP, Corporate Communications, and Disclosure Committee member): Term Nos. 1-131; and
7. Peter Welburn (VP, Investor Relations and Corporate Development, and Disclosure Committee member): Term Nos. 1-131.

However, for the remaining six custodians – all of whom Defendants proposed on September 19, 2023 – ***Defendants agree to run only about 2%-8% of the 144 agreed upon terms***, as follows:

1. Phil Benvenuti (Senior Director of Internal Audit): 8 of 144 terms (5%);
2. Matt Cushing (General Counsel, Chief Compliance Officer, Vice President, Chief Commercial Officer, and Disclosure Committee member): 12 of 144 terms (8%);
3. John Kenneally (Senior Director, Finance and Treasury, SEC Reporting and Technical Accounting Director): 5 of 144 terms (3%);

4894-8932-4938.v1

**Robbins Geller
Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 11

4.  Efstathios Kouninis (CAO, VP, Finance, and Disclosure Committee member): 9 of 144 terms (6%);
5.  Tom Sorrentino (Senior Director, Corporate Controller, and Disclosure Committee member): 7 of 144 terms (5%); and
6.  PegaCompliance@pega.com: 3 of 144 terms (2%).

During the October 23 call, we discussed as an example Defendants' refusal to run accounting- and financial reporting-based search terms across the files of custodians *with responsibilities over Pega's accounting and financial reporting*.  Term Nos. 1 and 2 (both of which Defendants proposed) were addressed as examples:

- **Term 1**: (10-K or 10-Q or 8-K) w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual*)

- **Term 2**: ("Earnings Call" or script) w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual*)

Plaintiffs allege that Financial Accounting Standards Board ("FASB") Accounting Standards Codification ("ASC") Topic 450 ("ASC 450") required Defendants to disclose the existence of the Virginia Action prior to February 16, 2022.  Amended Complaint, ¶¶188-196.

In their October 16 letter, Defendants *agree* to run these "ASC 450" Term Nos. 1 and 2 across the files of custodians with responsibilities over product development (Akgonul and Bixby), product marketing (Schuerman), clients and sales (Leon Trefler), and competitive intelligence (Baril).

However, Defendants *refuse* to run the same "ASC 450" Term Nos. 1 and 2 across the files of employees with responsibilities over accounting and financial reporting at Pega, including Kenneally, Kouninis, and Sorrentino.

Defendants impose the same arbitrary restriction with regard to Term Nos. 34 and 123, both of which also concern "ASC 450": Defendants *agree* to run Term Nos. 34 and 123 across the files of Akgonul, Bixby, Baril, Schuerman, and Leon Trefler, yet *refuse* to run those terms across the files of Kenneally, Kouninis, and Sorrentino.

During the October 23 call, Plaintiffs repeatedly asked Defendants why they agree that the files of employees like Akgonul, Bixby, Baril, Schuerman, and Leon Trefler should be searched for documents using these terms, but refused to run the same searches across the files of Kenneally, Kouninis, and Sorrentino.  Defendants did not have an answer to this question, and instead asked Plaintiffs for their counter-proposal before they would respond.

4894-8932-4938.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 12

Plaintiffs also allege that Item 103 of Regulation S-K, like ASC 450, required Defendants to disclose the existence of the Virginia Action prior to February 16, 2022. Amended Complaint, ¶¶167-187. Defendants *agree* to run Term Nos. 2, 27-28, 32-33, 123, and 142 – which either specifically reference "Item 103" or is modeled off Item 103's language – across the files of such executives as Akgonul, Baril, Bixby, Schuerman, and Leon Trefler, but *refuse* to run those same terms across the files of Kenneally, Kouninis, Sorrentino, or Cushing.[15]

As referenced above, Defendants *refuse* to run *nearly 94%* (135) of the 144 agreed terms across the files of Kouninis – Pega's CAO and a member of Pega's Disclosure Committee – including terms that specifically reference ASC 450 and Item 103 (*e.g.*, Term Nos. 1-2, 27-28, 33-34, and 123), as well as terms designed to target documents concerning Pega's litigation against Appian (*e.g.*, Term Nos. 1-34, 37-125, 130-131, 134-135, 137, and 144) and Pega's assessment of, and disclosures of, loss contingencies under ASC 450 and legal proceedings under Item 103. At the same time, Defendants identify Kouninis in their initial disclosures as *one of the only two* non-party Pega employees upon whom Defendants may rely in their defense.

As Pega's General Counsel, Chief Compliance Officer, Vice President, and Chief Commercial Officer, Cushing regularly corresponded with Pega's outside auditor (Deloitte) during the Class Period regarding ongoing litigation involving Pega, including the Virginia Action. For instance, Cushing prepared and provided to Deloitte letters describing Pega's litigation against Appian, including details regarding the claims involving Appian and recent events in Pega's litigation against Appian. Cushing also received correspondence from outside counsel, directed to Deloitte, concerning Pega's litigation against Appian. Cushing was also a member of Pega's Disclosure Committee.

Yet Defendants refuse to run *92%* (132) of the 144 agreed terms across the custodial files of Cushing, including terms that specifically reference ASC 450 and Item 103 (*e.g.*, Term Nos. 1-2, 27-28, 33-34, and 123), as well as terms that target documents concerning Pega's litigation against Appian (*e.g.*, Term Nos. 1-125, 130-131, and 144).

Defendants also inexplicably *refuse* to run Term Nos. 35[16] and 36[17] – *both of which specifically target Pega's communications with Deloitte* – across Cushing's custodial files, despite Cushing's regular contact with Deloitte.

---

[15]   With the exception of Term No. 142 for Cushing.

[16]   Term No. 35: (Appian OR APPN) AND *deloitte*

**Robbins Geller
Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 13

Further, notwithstanding Cushing's position as Pega's Chief **Compliance** Officer, Defendants refuse to run Term No. 144 – a term Defendants **propose**, regarding **compliance** with Pega's Code of Conduct – across Cushing's custodial files.[18]

As mentioned above, Defendants refuse to run **95%** (137) of the agreed terms across the files of Sorrentino, including a number of terms that specifically reference ASC 450 and Item 103 (*e.g.*, Term Nos. 1-2, 27-28, 33-34, and 123), as well as terms designed to target documents concerning Pega's litigation against Appian (*e.g.*, Term Nos. 1-34, 37-125, 130-135, 137-138, and 144). In addition to occupying the role of Corporate Controller and sitting on the Disclosure Committee at Pega, Sorrentino was personally aware *in 2012* of Pega's hiring of Zou. Not only was Sorrentino aware of Pega's hiring of Zou in 2012, but Sorrentino also worked with Petronio (Pega's former head of competitive intelligence) on arranging for Pega's payment of Zou through a middleman entity.[19]

Defendants also refuse to run nearly **95%** and **97%** of the agreed terms across the files of Benvenuti and Kenneally, respectively, including terms regarding ASC 450 and Item 103, and terms targeting documents regarding the Virginia Action. Defendants also refuse to run Term Nos. 35 and 36 – both of which target Pega's communications with Deloitte – across the custodial files of Benvenuti and Kenneally, even though Benvenuti and Kenneally (like Cushing) communicated with Deloitte during the Class Period regarding relevant issues.

Defendants refuse to run nearly **98%** (141) of the 144 agreed terms across the email account PegaCompliance@pega.com, which Pega held out to employees as a direct means of reporting suspected violations of Pega's Code of Conduct.

Further, Defendants refuse to run various idiosyncratic terms across the files of a number custodians, including Benvenuti, Cushing, Kenneally, Kouninis, and Sorrentino.

For example, Defendants refuse to run various terms that target documents referencing the fake names and fake or front businesses (or purloined credentials) Pega's employees utilized to access Appian's platform, including terms based on:

---

[17]   Term No. 36: (To/From/Cc *@deloitte) AND ("without merit" OR (Pega* w/5 competitive w/5 market*) OR (notice! w/5 misappropriat!) OR "strong defenses" OR "code of conduct").

[18]   Term No. 144: investigat* w/10 ("code of conduct" OR "alias" OR reprimand* or block*).

[19]   *See, e.g.*, PEGA_DMASS_00053092 (February 2012 email to Sorrentino noting the approval of hours for contractor "Youyong Zou for the Appian" project).

4894-8932-4938.v1

**Robbins Geller**
**Rudman & Dowd LLP**

Robert Kingsley Smith
October 26, 2023
Page 14

1. Baril's aliases "Andrew Powers" (Term No. 17) and "Emily Gold" (Term No. 18);
2. Baril's fictional consulting firm, Andrew Powers Consulting (Term Nos. 15 and 17);
3. The business Organic Living and Wellness, owned by the wife of a Pega employee (Term No. 37);
4. The business Palencia Business Center, owned by the wife of a Pega employee (Term Nos. 16 and 38); and
5. Appian login credentials associated with the @edumithra.co.in and @capgemini.com domains (Term Nos. 48-49).

Defendants also refuse to run various terms that target documents referencing the aliases defendant Trefler has admitted to using (or is alleged to have used) to obtain Appian's information, including:

1. Albert Skii (Term Nos. 39-41);
2. A. Ewe (Term Nos. 29-30); and
3. Paul Foon (Term No. 31).

Other idiosyncratic terms Defendants refuse to run across various custodians' files include:

1. "Project Crush" (Term No. 6), the code name Pega assigned to its corporate espionage involving Zou;
2. The phrase "can I ping about legality of using" (a phrase Baril used when he questioned Schuerman about the legality of Baril accessing Appian's platform, *see* Amended Complaint, ¶218);
3. The phrases "going to call him matt" (in reference to the pseudonym "Matt" that Pega assigned to Zou, *see* Amended Complaint, ¶54) and "we should never lose against Appian" (*see* Amended Complaint, ¶¶7, 60);
4. The first name and email address of Youyong Zou (Term Nos. 3-5);
5. The full names of the experts and the judges in the Virginia Action (Term Nos. 19-26);[20] and
6. The specific Virginia Acts under which Appian sued Pega, *i.e.*, the Virginia Uniform Trade Secrets Act and the Virginia Computer Crimes Act (Term Nos. 44-47).[21]

---

[20]   Limited by "(Appian OR APPN) AND"

[21]   Limited by "(Appian OR APPN) AND"

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 15

Defendants do not contend, or even attempt to explain how, running such terms as "Project Crush," "Albert Skii," aliases used to obtain Appian's information, or any of the other unique agreed-upon terms would yield an unduly burdensome volume of irrelevant documents.

Defendants' attempt to wall off their custodians' documents, by narrowly restricting the terms to be applied to each custodians' files, is entirely improper. Plaintiffs have consistently taken the position throughout the parties' conferral over search terms *that all terms should be run across all custodians*. Defendants' slicing and dicing of the application of the agreed upon terms is arbitrary. Indeed, should a particular term fail to hit on a particular custodian's documents, then there would be no incremental burden (let alone an undue burden) to Defendants as there would be no additional "hits" to review.

### C.   MOBILE PHONES

According to Defendants' October 16 letter, Defendants propose searching the mobile phones of Defendant Trefler and Stillwell, for communications dated May 29, 2020 to October 26, 2022, as follows:

*Trefler's mobile phone(s)*:  Communications between Trefler and Kouninis, Stillwell, or Rogers; and

*Stillwell's mobile phone(s)*:  Communications between Stillwell and Benvenuti, Kenneally, Kouninis, Rogers, Sorrentino, Trefler, or Welburn.

With respect to searches on Defendant Trefler's or Stillwell's mobile phones, Plaintiffs' position is that the communications to be searched should at least at this point include communications with any custodians, members of the Disclosure Committee, members of the Board of Directors, or employees of Deloitte.

Please advise by October 31, 2023 whether Defendants agree to this scope.

### D.   SEARCH TIME PERIOD

The search time period of May 29, 2020 through October 26, 2022, set forth in Plaintiffs' September 22 letter, was accepted by Defendants in their October 16 letter. Our proposal should not be misconstrued as agreement that Defendants' documents dated after October 26, 2022 are not potentially relevant. Moreover, as noted in Plaintiffs' September 22 letter, "Plaintiffs propose this date range without prejudice to the right to seek documents responsive to specific document requests dated outside of this date range, including without limitation, documents responsive to Plaintiffs' Request Nos. 2-3, 5, and 32-44."

4894-8932-4938.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 16

### E.    REQUEST NOS. 16 AND 17

Request No. 16:

With respect to Request No. 16, Defendants' October 16, 2023 letter states: "Defendants agree to search for and produce in response to Request No. 16 documents or communications dated between May 29, 2020 and October 26, 2022 discussing whether an action violated the clauses of the Code of Conduct challenged in ¶¶151 to 157 of the Amended Complaint."

Defendants' letter also contends the words "act," "conduct," and "concerning" – words used in Plaintiffs' October 9, 2023 – are unclear.[22]  We had hoped the meaning of the word "conduct" would be apparent given "conduct" appears throughout the Code of Conduct.

To help clarify and hopefully reach a resolution for this request, Plaintiffs would consider an "act" or an "action" as a thing done, or the doing of a thing.  Plaintiffs would consider "conduct" as a mode or standard of acting or behaving, without necessarily referring to a particular act by a particular person.  In terms of the word "concerning," Plaintiffs refer to the definition in Local Rule 26.5(c)(7) (*i.e.* "referring to, describing, evidencing, or constituting").

Assuming Defendants' reference to "action" above includes both an "act," or "conduct," and assuming documents "concerning" both confirmed and suspected violations of those portions of the Code of Conduct at issue in the case will be searched for and produced, then Plaintiffs believe the dispute is resolved.

Please let us know by October 31, 2023 if this is incorrect, so that we may set a call to hopefully reach a resolution.

Request No. 17:

With regard to Request No. 17, Defendants' October 16, 2023 letter contends the words "act," "conduct," and "concerning" are unclear.  Please see above with respect to the intended meaning of those terms.

---

[22]    *See* Plaintiffs' October 9, 2023 letter ("In terms of the additional documents we seek in response to RFP 16 concerning "suspected violations," we seek documents or communications concerning or discussing whether an act or conduct violated a clause(s) of the code of conduct at issue in this case (*e.g.*, the clauses cited in the Amended Complaint), regardless of whether the act or conduct referenced in that document was ultimately deemed or "confirmed" to be a violation of the code of conduct.").

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 17

Defendants also contend that "what constitutes the allegations in the Appian Complaints" is unclear.  One of Defendants' document requests seeks "Documents Concerning the allegations in the Virginia Complaints."  During a meet and confer call on October 20, 2023, Defendants stated they interpreted their own phrase "allegations in the Virginia Complaints" to mean the allegations within the four corners of the complaint.  As Plaintiffs explained during the parties' meet and confer on October 23, 2023, we suggest Defendants apply the same interpretation with respect to Request No. 17.  We believe this resolves any claimed ambiguity or confusion.

Accordingly, please advise by October 31, 2023 if Defendants will search for and produce "documents or communications concerning or discussing whether an act or conduct regarding the three subjects listed in RFP 17 (*i.e.*, (i) the Virginia Action; (ii) the Appian Complaints or conduct alleged therein; and (iii) Pegasystems' financial reporting or disclosures) complied with or violated any laws, guidelines, or regulations, regardless of whether the discussion about that particular act or conduct stemmed from a complaint filed through Pegasystems' formal channels for submitting complaints, or outside of those formal channels such as an email or other communication."[23]

### F.    DOCUMENTS CONCERNING PEGASYSTEMS' "INVESTIGATION" INTO APPIAN'S CLAIMS

As discussed with Defendants on August 14, 2023, and explained in Plaintiffs' letter dated August 16, 2023, during the Virginia Action trial, defendant Trefler testified about a purported "investigation" Pegasystems conducted into Appian's allegations and into whether Pegasystems' employees had accessed Appian's trade secrets or confidential information in violation of Pegasystems' Code of Conduct.[24]

The parties discussed that "investigation" again during their October 5, 2023, meet and confer, during which Defendants asserted that because the "investigation" had involved Pegasystems' lawyers, many documents concerning the "investigation" would be withheld as privileged.

Defendants' October 16, 2023 letter appears to suggest one term – investigat* w/10 ("code of conduct" OR "alias" OR reprimand* or block*) – to identify "non-privileged materials

---

[23]    *See* Plaintiffs' October 9, 2023 letter.

[24]    Trefler gave this testimony on March 29, 2022 during the merits trial.  Defendants' October 16, 2023 letter contends that Trefler referenced this "investigation" during his deposition in the Virginia Action.

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 18

concerning the 'investigation.'" Defendants propose running this term across documents dated November 1, 2021 to March 15, 2022.

The term Defendants propose to identify investigation-related materials is exceedingly narrow. Nevertheless, we understand that to the extent a document concerning the "investigation" "hits" on *any* of the agreed terms, it will be reviewed for production. Moreover, we understand that Defendants' search for documents concerning the "investigation" will not be limited to documents that hit on search terms. Please let us know by October 31 if either understanding is incorrect.

Moreover, we are particularly concerned with Defendants' stated intent to withhold as privileged documents or information concerning the "investigation," given the fact – which we raised in August 2023 – that Defendants attempted to use this "investigation" in the Virginia Action to show that none of the information Pegasystems obtained from Appian constituted trade secrets or confidential information.

Furthermore, at the pleadings stage *in this case*, Defendants tried to convince the Court that Defendants' misstatements and omissions were inactionable in light of "information [Defendants] learned" from Pegasystems' "investigation into the merits of the Virginia Action." ECF 65 at 13 n.18.

Having deliberately placed the substance of Pegasystems' purported "investigation" into Appian's allegations at issue in this case, Defendants cannot corresponding withhold documents or information concerning that "investigation" on privilege (or work product) grounds.[25] This would constitute an improper use of privilege as both a sword and a shield.

---

[25] *See Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 464 (E.D. Mich., 2008) ("by asserting Carroll had "confirmed his understanding" of the sources for his decision on the exempt status question with in-house and outside counsel, the defendants "reveal[ed] by direct implication the content of those communications. . . . By doing so . . . Quicken made the decision and took the affirmative step to make the content of privileged communications a basis of its defense and thereby waived the privilege as to such communications."); *Doe v. USD No. 237*, 2019 WL 1925107, at *8 (D. Kan. 2019) ("One cannot assert the attorney/client privilege to keep an opponent from discovering facts about an investigation when the investigation is to be used at trial as a defense to defeat the opponent's allegations.").

4894-8932-4938.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 19

We wish to schedule a call to confirm whether Defendants do intend to assert privilege or work product over any documents concerning the "investigation," in which case we intend to seek relief on the matter.

Please propose dates and times you are available the week of October 30, 2023 to discuss.

Very truly yours,

Christopher D. Stewart

CDS:lls

4894-8932-4938.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 20

## APPENDIX A

Unless otherwise agreed upon by the parties or ordered by the Court, or unless specifically indicated below, the date range of ESI documents to be searched using the below terms is May 29, 2020 through October 26, 2022.

| Number | Term | Proposed By |
|---|---|---|
| 1 | (10-K or 10-Q or 8-K) w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual*) | Defendants |
| 2 | ("Earnings Call" or script) w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual*) | Defendants |
| 3 | Youyong | Plaintiffs |
| 4 | Youyoung | Plaintiffs |
| 5 | zouyyong@yahoo.com | Plaintiffs |
| 6 | "Project Crush" | Plaintiffs |
| 7 | "understanding appian" | Plaintiffs |
| 8 | "Appian consultant" | Plaintiffs |
| 9 | "going to call him matt" | Plaintiffs |
| 10 | "questionable means to acquire" | Plaintiffs |
| 11 | "misrepresenting your identify in hopes of obtaining" | Plaintiffs |
| 12 | "the Company has strong defenses to these claims" | Plaintiffs |
| 13 | "we should never lose against Appian" | Plaintiffs |
| 14 | "can I ping about legality of using" | Plaintiffs |
| 15 | *apowerconsulting.com | Plaintiffs |
| 16 | bbaril@palenciabusinesscenter.com | Plaintiffs |
| 17 | (Andrew* w/3 Power*) | Plaintiffs |
| 18 | (Emily* w/3 Gold*) | Plaintiffs |
| 19 | (Appian OR APPN) AND (Eric w/3 Cole) | Plaintiffs |
| 20 | (Appian OR APPN) AND (Simon w/3 Platt) | Plaintiffs |
| 21 | (Appian OR APPN) AND (Richard w/3 Marshall) | Plaintiffs |
| 22 | (Appian OR APPN) AND (Paul w/3 Pinto) | Plaintiffs |
| 23 | (Appian OR APPN) AND (William w/3 Easttom) | Plaintiffs |
| 24 | (Appian OR APPN) AND (James w/3 Malackowski) | Plaintiffs |
| 25 | (Appian OR APPN) AND ((Judge OR Daniel) w/3 Ortiz) | Plaintiffs |

4894-8932-4938.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 21

| Number | Term | Proposed By |
|---|---|---|
| 26 | (Appian OR APPN) AND ((Judge OR Richard) w/3 Gardiner) | Plaintiffs |
| 27 | (Appian OR APPN) AND "pending litigation" | Plaintiffs |
| 28 | (Appian OR APPN) AND "legal proceedings" | Plaintiffs |
| 29 | (Appian OR APPN) AND "A. Ewe" | Plaintiffs |
| 30 | (Appian OR APPN) AND "A Ewe" | Plaintiffs |
| 31 | (Appian OR APPN) AND (Paul* w/3 Foon*) | Plaintiffs |
| 32 | (Appian OR APPN) AND "Item 103" | Plaintiffs |
| 33 | (Appian OR APPN) AND "ordinary routine litigation" | Plaintiffs |
| 34 | (Appian OR APPN) AND ((topic OR subtopic OR FASB OR ASC) w/10 (450* OR "contingencies")) | Plaintiffs |
| 35 | (Appian OR APPN) AND *deloitte* | Plaintiffs |
| 36 | (To/From/Cc *@deloitte) AND ("without merit" OR (Pega* w/5 competitive w/5 market*) OR (notice! w/5 misappropriat!) OR "strong defenses" OR "code of conduct") | Defendants |
| 37 | (Appian OR APPN) AND ("Organic Living and Wellness" OR*@organiclivingandwellness.com) | Plaintiffs |
| 38 | (Appian OR APPN) AND ("Palencia Business Center" or *@palenciabusinesscenter.com) | Plaintiffs |
| 39 | (Appian OR APPN) AND (Albert w/3 Scii) | Plaintiffs |
| 40 | (Appian OR APPN) AND (Albert w/3 Skii) | Plaintiffs |
| 41 | (Appian OR APPN) AND ("A Skii") | Plaintiffs |
| 42 | (Appian OR APPN) AND (proceedings w/3 "ordinary course") | Plaintiffs |
| 43 | (Appian OR APPN) AND (spy or spies) | Plaintiffs |
| 44 | (Appian OR APPN) AND "Virginia Computer Crimes Act" | Plaintiffs |
| 45 | (Appian OR APPN) AND "Virginia Uniform Trade Secrets Act" | Plaintiffs |

4894-8932-4938.v1

Robbins Geller
Rudman & Dowd LLP

Robert Kingsley Smith
October 26, 2023
Page 22

| Number | Term | Proposed By |
|--------|------|-------------|
| 46 | (Appian OR APPN) AND VCCA | Plaintiffs |
| 47 | (Appian OR APPN) AND VUTSA | Plaintiffs |
| 48 | (Appian OR APPN) AND Venugopal.sarada@edumithra.co.in | Plaintiffs |
| 49 | (Appian OR APPN) AND vishal.sarada@capgemini.com | Plaintiffs |
| 50 | (Appian OR APPN) w/35 "12 challenges" | Plaintiffs |
| 51 | (Appian OR APPN) w/35 "12challenges" | Plaintiffs |
| 52 | (Appian OR APPN) w/35 "ad damnum" | Plaintiffs |
| 53 | (Appian OR APPN) w/35 "burden of proof" | Plaintiffs |
| 54 | (Appian OR APPN) w/35 "free trial" | Plaintiffs |
| 55 | (Appian OR APPN) w/35 "tear down" | Plaintiffs |
| 56 | (Appian OR APPN) w/35 "trade secret" | Plaintiffs |
| 57 | (Appian OR APPN) w/35 "trade secrets" | Plaintiffs |
| 58 | (Appian OR APPN) w/35 "unjust enrichment" | Plaintiffs |
| 59 | (Appian OR APPN) w/35 "attack plan" | Plaintiffs |
| 60 | (Appian OR APPN) w/35 "battle card" | Plaintiffs |
| 61 | (Appian OR APPN) w/35 "CI brief" | Plaintiffs |
| 62 | (Appian OR APPN) w/35 "CI content" | Plaintiffs |
| 63 | (Appian OR APPN) w/35 "CI Project" | Plaintiffs |

4894-8932-4938.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 23

| Number | Term | Proposed By |
|--------|------|-------------|
| 64 | (Appian OR APPN) w/35 "CI space" | Plaintiffs |
| 65 | (Appian OR APPN) w/35 "competitive brief" | Plaintiffs |
| 66 | (Appian OR APPN) w/35 "competitive briefing" | Plaintiffs |
| 67 | (Appian OR APPN) w/35 "competitive intelligence" | Plaintiffs |
| 68 | (Appian OR APPN) w/35 "confidential" | Plaintiffs |
| 69 | (Appian OR APPN) w/35 "CRM proposal" | Plaintiffs |
| 70 | (Appian OR APPN) w/35 "damning attack" | Plaintiffs |
| 71 | (Appian OR APPN) w/35 "deep dive" | Plaintiffs |
| 72 | (Appian OR APPN) w/35 "license agreement" | Plaintiffs |
| 73 | (Appian OR APPN) w/35 "license agreements" | Plaintiffs |
| 74 | (Appian OR APPN) w/35 "request for admission" | Plaintiffs |
| 75 | (Appian OR APPN) w/35 "technical brief" | Plaintiffs |
| 76 | (Appian OR APPN) w/35 "technical business brief" | Plaintiffs |
| 77 | (Appian OR APPN) w/35 "technical CI" | Plaintiffs |
| 78 | (Appian OR APPN) w/35 "terms of use" | Plaintiffs |
| 79 | (Appian OR APPN) w/35 "trial terms and conditions" | Plaintiffs |
| 80 | (Appian OR APPN) w/35 action* | Plaintiffs |
| 81 | (Appian OR APPN) w/35 appeal* | Plaintiffs |

4894-8932-4938.v1

Robbins Geller
Rudman & Dowd LLP

Robert Kingsley Smith
October 26, 2023
Page 24

| Number | Term | Proposed By |
|:---:|:---|:---|
| 82 | (Appian OR APPN) w/35 appellate | Plaintiffs |
| 83 | (Appian OR APPN) w/35 battlecard* | Plaintiffs |
| 84 | (Appian OR APPN) w/35 BP3 | Plaintiffs |
| 85 | (Appian OR APPN) w/35 camtasia* | Plaintiffs |
| 86 | (Appian OR APPN) w/35 case* | Plaintiffs |
| 87 | (Appian OR APPN) w/35 claim* | Plaintiffs |
| 88 | (Appian OR APPN) w/35 complaint* | Plaintiffs |
| 89 | (Appian OR APPN) w/35 consultant* | Plaintiffs |
| 90 | (Appian OR APPN) w/35 contractor* | Plaintiffs |
| 91 | (Appian OR APPN) w/35 court* | Plaintiffs |
| 92 | (Appian OR APPN) w/35 damage* | Plaintiffs |
| 93 | (Appian OR APPN) w/35 defense* | Plaintiffs |
| 94 | (Appian OR APPN) w/35 demurrer* | Plaintiffs |
| 95 | (Appian OR APPN) w/35 depos* | Plaintiffs |
| 96 | (Appian OR APPN) w/35 discovery | Plaintiffs |
| 97 | (Appian OR APPN) w/35 documentation | Plaintiffs |
| 98 | (Appian OR APPN) w/35 enjoin* | Plaintiffs |
| 99 | (Appian OR APPN) w/35 exhibit* | Plaintiffs |

4894-8932-4938.v1

Robbins Geller
Rudman & Dowd LLP

Robert Kingsley Smith
October 26, 2023
Page 25

| Number | Term | Proposed By |
|---|---|---|
| 100 | (Appian OR APPN) w/35 hearing* | Plaintiffs |
| 101 | (Appian OR APPN) w/35 injunct* | Plaintiffs |
| 102 | (Appian OR APPN) w/35 interrog* | Plaintiffs |
| 103 | (Appian OR APPN) w/35 judgment* | Plaintiffs |
| 104 | (Appian OR APPN) w/35 juries | Plaintiffs |
| 105 | (Appian OR APPN) w/35 juror* | Plaintiffs |
| 106 | (Appian OR APPN) w/35 jury | Plaintiffs |
| 107 | (Appian OR APPN) w/35 (Kforce* OR "K-Force") | Plaintiffs |
| 108 | (Appian OR APPN) w/35 lawsuit* | Plaintiffs |
| 109 | (Appian OR APPN) w/35 litigat* | Plaintiffs |
| 110 | (Appian OR APPN) w/35 merit* | Plaintiffs |
| 111 | (Appian OR APPN) w/35 misappropriat* | Plaintiffs |
| 112 | (Appian OR APPN) w/35 motion* | Plaintiffs |
| 113 | (Appian OR APPN) w/35 proceeding* | Plaintiffs |
| 114 | (Appian OR APPN) w/35 relief | Plaintiffs |
| 115 | (Appian OR APPN) w/35 teardown* | Plaintiffs |
| 116 | (Appian OR APPN) w/35 testif* | Plaintiffs |
| 117 | (Appian OR APPN) w/35 testimony | Plaintiffs |

4894-8932-4938.v1

**Robbins Geller
Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 26

| Number | Term | Proposed By |
|:---:|:---|:---|
| 118 | (Appian OR APPN) w/35 transcript* | Plaintiffs |
| 119 | (Appian OR APPN) w/35 trial* | Plaintiffs |
| 120 | (Appian OR APPN) w/35 verdict* | Plaintiffs |
| 121 | (Appian OR APPN) w/35 settle* | Plaintiffs |
| 122 | (Appian OR APPN) w/35 mediat* | Plaintiffs |
| 123 | Appian w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual* OR verdict) | Defendants |
| 124 | (Appian OR APPN) w/35 (MBO) | Plaintiffs [26] |
| 125 | (Appian OR APPN) w/35 ("management based objective" OR "management based objectives" OR "management-based objective" OR "management-based objectives") | Plaintiffs [27] |
| 126 | (Salesforce OR SFDC OR ServiceNow OR IBM) w/35 (MBO) | Plaintiffs [28] |
| 127 | (Salesforce OR SFDC OR ServiceNow OR IBM) w/35 ("management based objective" OR "management based objectives" OR "management- based objective" OR | Plaintiffs [29] |

---

[26]   Plaintiffs also propose applying this term to the documents collected by Pegasystems for discovery in the Virginia Action that are dated prior to May 29, 2020.

[27]   Plaintiffs also propose applying this term to the documents collected by Pegasystems for discovery in the Virginia Action that are dated prior to May 29, 2020.

[28]   Plaintiffs also propose applying this term to the documents collected by Pegasystems for discovery in the Virginia Action that are dated prior to May 29, 2020.

[29]   Plaintiffs also propose applying this term to the documents collected by Pegasystems for discovery in the Virginia Action that are dated prior to May 29, 2020.

4894-8932-4938.v1

Robbins Geller
Rudman & Dowd LLP

Robert Kingsley Smith
October 26, 2023
Page 27

| Number | Term | Proposed By |
|---|---|---|
| | "management-based objectives") | |
| 128 | (Rand* w/3 Dillon) w/35 (Lombardi OR IBM) | Plaintiffs [30] |
| 129 | (David w/3 Watson) w/35 (Salesforce OR SFDC) | Plaintiffs [31] |
| 130 | Appian w/10 (media or journalist* or investor* or shareholder* or bank* or analyst* or (public w/2 relation*) or FT or "Financial Times" or WSJ or "Wall Street Journal" or "The Economist" or "Washington Post" or NYT or "New York Times" or Newsweek) | Defendants |
| 131 | Appian w/10 (Barclays or "Benchmark Company" or Canaccord or "CFRA Research" or Citigroup or "Credit Suisse" or "D.A. Davidson" or Goldman or "JMP Securities" or "J.P. Morgan" or KeyBanc or "Loop Capital" or Macquarie or Morningstar or "Needham & Company" or Oppenheimer or "RBC Capital" or "Rosenblatt Securities" or SMBC or Truist or Wedbush or "William Blair") | Defendants |
| 132 | ((Board or "Audit Committee") w/10 (agenda* OR minutes OR presentation* OR materials*)) AND (Appian w/10 (complaint* OR defense* OR trial* OR depos* OR damage* OR jury OR appeal* OR litigation* OR expen*)) | Defendants |
| 133 | ((Board or "Audit Committee") w/10 (agenda* OR minutes OR presentation*)) AND ("without merit" OR (Pega* w/5 competitive w/5 market*) OR (notice! w/5 misappropriat!) OR "strong defenses" OR "code of conduct") | Defendants |

---

[30]   Plaintiffs also propose applying this term to the documents collected by Pegasystems for discovery in the Virginia Action that are dated prior to May 29, 2020.

[31]   Plaintiffs also propose applying this term to the documents collected by Pegasystems for discovery in the Virginia Action that are dated prior to May 29, 2020.

4894-8932-4938.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
October 26, 2023
Page 28

| Number | Term | Proposed By |
|---|---|---|
| 134 | ("Code of conduct") AND (Appian OR APPN) | Plaintiffs |
| 135 | ("Code of conduct") w/35 (violat* OR investigat*) | Plaintiffs; modified by Defendants |
| 136 | "code of conduct" w/10 (revise OR update) | Defendants |
| 137 | "code of conduct" w/10 ("ethical conduct" OR "confidential information" OR "illegal or questionable means" OR reporting OR deviation OR "prompt action" OR "disciplinary action") | Defendants |
| 138 | ("Code of conduct") AND (Baril* OR Bessman* OR Nguyen* OR Sarada* OR Bhowmick*OR Potluri* OR Vaddem* OR Kamaraju* OR Davis* OR Zhang*) | Plaintiffs |
| 139 | (Appian OR APPN) AND "Disclosure Committee" | Plaintiffs |
| 140 | "disclosure committee" w/10 (meeting* OR agenda* OR presentation* OR material*) | Defendants |
| 141 | (Complaint or report) AND (Appian w/10 (complaint* OR defense* OR trial* OR depos* OR damage* OR jury OR appeal* or litigation*)) | Defendants |
| 142 | (Complaint or report) AND (Appian w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual* OR verdict)) | Defendants |
| 143 | (Complaint or report) AND (("without merit" OR (Pega* w/5 competitive /5 market*) OR (notice! w/5 misappropriat!) OR "strong defenses" OR "code of conduct")) | Defendants |
| 144 | investigat* w/10 ("code of conduct" OR "alias" OR reprimand* or block*) | Defendants [32] |
| 145 | ("Code of conduct") AND (violat* OR investigat*) | Plaintiffs |

---

[32]    Defendants propose a date range for this term of November 1, 2021 to March 15, 2022.

4894-8932-4938.v1

Robbins Geller
Rudman & Dowd LLP

Robert Kingsley Smith
October 26, 2023
Page 29

| Number | Term | Proposed By |
|---|---|---|
| 146 | "Zou" and not "Zhou" | Plaintiffs |
| 147 | "The Other Matt" | Plaintiffs |
| 148 | stock* W/10 (price OR fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR valu* OR "market cap" OR "market capitalization") | Plaintiffs [33] |
| 149 | ((share* OR securities) W/5 (price or valu*)) W/10 (fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR "market cap" OR "market capitalization") | Plaintiffs [34] |
| 150 | (Appian OR APPN OR litigation OR "legal proceeding*" OR lawsuit OR "loss contingen*" OR verdict OR "jury trial" or Virginia OR Fairfax OR VA OR VCCA or VUTSA or compet*) AND [(quarter* OR annual* OR investor* OR earning* OR Q1* OR Q2* OR Q3* OR Q4* OR FY19 OR FY20 OR FY21 OR FY22 OR "FY 1*" OR "FY 2*" OR "full year" OR "fiscal year") AND (conference* OR call* OR update* OR announc*)] | Plaintiffs |

[33]   Plaintiffs propose running this term across documents dated after February 15, 2022.

[34]   Plaintiffs propose running this term across documents dated after February 15, 2022.

4894-8932-4938.v1