# EXHIBIT 12

**Robbins Geller Rudman & Dowd LLP**

| | Chicago | Melville | Nashville | San Diego | Wilmington |
|---|---|---|---|---|---|
| | Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Christopher D. Stewart
cstewart@rgrdlaw.com

November 22, 2023

<u>VIA EMAIL</u>

Robert Kingsley Smith
WILMER CUTLER PICKERING
 HALE & DORR LLP
60 State Street
Boston, MA  02109

> Re:    *In re Pegasystems Inc. Securities Litigation*,
>        No. 1:22-cv-11220-WGY (D. Mass.)

Dear Counsel:

I write regarding Defendants' November 17, 2023 response to Plaintiffs' October 26, 2023 letter.

## 1.    Defendants Have Not Provided Any Hit Reports to Date

Plaintiffs have been seeking hit reports from Defendants for months, and have requested (in various written correspondence and during multiple meet and confer calls) that Defendants provide hit reports in order to facilitate the parties' conferral regarding search terms and custodians.[1] Defendants agreed they would provide hit reports to Plaintiffs,[2] and stated over a month ago that Defendants were already "running search term hit reports for agreed-upon or proposed custodians for whom documents have been collected."[3]  Moreover, as we have pointed out on many occasions,

---

[1]    Plaintiffs' August 4, 2023 letter at 2 ("[P]laintiffs intend to seek search term hit reports that include all search terms and not only a subset of disputed terms."); Plaintiffs' September 22, 2023 letter at 2 ("[w]e request Defendants provide a search term hit list or hit report"); Plaintiffs' October 5, 2023 letter at 4 ("search term hit reports should be provided").

[2]    Plaintiffs' October 5, 2023 letter at 3 (noting Defendants' "commitment to meet and confer and work cooperatively with Plaintiffs in identifying potentially relevant and responsive sources of ESI through the use of search terms and custodians, including through the use of search term hit reports").

[3]    Defendants' October 13, 2023 letter at 4.

**Robbins Geller
Rudman & Dowd** LLP

Robert Kingsley Smith
November 22, 2023
Page 2

Pegasystems provided hit reports to Appian Corporation in the Virginia Action, with "hit" numbers broken out by individual terms.[4]

Defendants' November 17 letter purports to cite a statistic gleaned from Defendants' hit reports, stating "the single term ((Appian OR APPN) w/35 case*) returns over 17,000 of Mr. Roche's documents." Defendants have never shared a hit report reflecting the number of hits for this search term, this custodian, or any other search terms or custodians.

While Plaintiffs are amenable to considering Defendants' proposals in good faith, Defendants' inexplicable withholding of hit reports to date has stifled the parties' progress and precluded Plaintiffs from understanding what terms are yielding what volume of hits.

Please provide by November 29, 2023 hit reports reflecting each of the 149 agreed-upon terms, with one report reflecting the hit counts from running the agreed-upon terms as Defendants proposed to run them in their November 17 letter (*i.e.*, based on the limitations set forth in the table titled "Custodians" on pages 1-3 of Appendix A, §I to Defendants' November 17 letter), and another report reflecting the hit counts from running all of the agreed-upon terms across the custodial files of all of the agreed-upon custodians and the two proposed custodians remaining in dispute (Christopher Roche and Kevin O'Keefe). We expect these reports will allow Plaintiffs to understand, for each of the 149 agreed-upon terms, the difference in hit counts when the term is run across the custodians that Defendants propose for that particular term, and the custodians that Plaintiffs propose for that particular term.

## 2.    Christopher Roche and Kevin O'Keefe as Custodians

The two proposed custodians remaining in dispute are Christopher Roche and Kevin O'Keefe.

Defendants' November 17 letter does not question the relevance of Mr. Roche's and Mr. O'Keefe's documents. Rather, Defendants appear to contend that these individuals will have ***too many*** relevant documents due to their near "constant communication" about the Virginia Action, that this will cause Defendants to have to log "close to full mailboxes for Mr. O'Keefe or Mr. Roche," and that the cost of preparing such a log would be unduly burdensome.

---

[4]    Plaintiffs' August 4, 2023 letter at 3 n.3 ("Pegasystems also provided Appian with detailed search term hit reports, with 'hit' numbers broken out by individual terms and individual custodians."); Plaintiffs' September 22, 2023 letter at 2 ("Plaintiffs' proposed searches, which are based on a DTsearch syntax, have been listed below in a manner that would permit hit reports to quantify hits on a term-by-term basis, similar to the hit reports Pegasystems provided to Appian in the Virginia Action.").

**ROBBINS GELLER**
**Rudman & Dowd LLP**

Robert Kingsley Smith
November 22, 2023
Page 3

While we appreciate that these individuals possess voluminous relevant information, the privilege concerns raised in Defendants' November 17 letter contrast against Defendants' prior disclosures of purportedly "privileged" information. For instance, as noted in the parties' prior correspondence, during the Virginia Action trial, defendant Alan Trefler testified about an "investigation" that Pegasystems had conducted into Appian's allegations, despite Pegasystems' assertions that information regarding Pegasystems' "investigation" was protected by the attorney-client privilege. As another example, following the May 9, 2022 verdict, Pegasystems published a letter from its outside counsel, containing its outside counsel's legal advice regarding the impact of the May 9 verdict on Pegasystems' software. The recipients of this letter included Mr. Roche and Mr. O'Keefe.

On November 6, 2023 in the context of discussing Defendants' assertions of work product over Deloitte & Touche LLP's documents, Defendants proposed that the parties consider entering a Federal Rule of Evidence 502(d) agreement. We have not yet received Defendants' 502(d) proposal.

Given Defendants' concerns with logging "close to full mailboxes for Mr. O'Keefe or Mr. Roche," and Defendants' encouragement that the parties consider 502(d) agreements in this case, we suggest that Defendants also provide a 502(d) proposal that would govern the custodial documents of Messrs. Roche and O'Keefe.

Please let us know by November 29, 2023, if Defendants will make a 502(d) proposal for the custodial documents of Messrs. Roche and O'Keefe.

### 3.    Term No. 146 ("Zou" but not "Zhou")

Defendants' November 17 letter states that Defendants agree to run Term No. 146 ("Zou" but not "Zhou") across eight custodians' documents.[5] Defendants also propose for the first time limiting this term to documents dated May 29, 2020 to July 28, 2020, and dated February 9, 2022 to March 2, 2022. Defendants' November 17 letter states the "burden of review associated with this term" is too great if the term is run across the entire date range of May 29, 2020 to October 26, 2022.

Defendants propose these narrowed date ranges because "Defendants anticipate that Plaintiffs are interested in internal discussions at Pegasystems concerning Mr. Zou's consulting

---

[5]    Those eight custodians are Kerim Akgonul, Benjamin Baril, Steve Bixby, Don Schuerman, Kenneth Stillwell, Alan Trefler, Leon Trefler, and Norma Suarez.

4879-7795-5986.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
November 22, 2023
Page 4

work that may have occurred after Pegasystems first received Appian's complaint and again around the time of Pegasystems's disclosure of the litigation while Pegasystems was developing the applicable disclosure."

However, Plaintiffs have never represented they are only "interested" in documents concerning Youyong Zou that are dated during Defendants' two proposed periods.[6]  Rather, Plaintiffs' positon has remained that this term should be run across documents dated from May 29, 2020 to October 26, 2022, the same time period to be applied to nearly all of the agreed-upon terms, including the terms associated with Mr. Zou's first name (Term Nos. 3 and 4) and Mr. Zou's email address (Term No. 5).

Moreover, as explained above, Defendants have not provided any hit reports to date, for Term No. 146 or any other search terms.  Plaintiffs are, therefore, in no position to agree to Defendants' unsupported proposal to substantially narrow the date range for Term No. 146.

Nevertheless, in an effort to consider your proposal in good faith, please provide by November 29, 2023 two hit reports.  The first hit report reflecting the number of documents that hit on Term No. 146 ("Zou" but not "Zhou") applying the time period May 29, 2020 through October 26, 2022, and the second hit report reflecting the number of documents that hit on Term No. 146 applying the two date ranges proposed in Defendants' November 17 letter.  Although Defendants propose running Term No. 146 across eight custodians, please share the hit counts on Term No. 146 using all of the agreed-upon and two remaining proposed custodians (Messrs. Roche and O'Keefe).

### 4.    Applying the Agreed-Upon Search Terms to the Custodians' Documents

Plaintiffs' October 26, 2023 letter included over five pages of detailed explanation as to why Defendants' attempt to wall off their custodians' documents by arbitrarily restricting the terms to be applied to each custodians' files is entirely improper.

Plaintiffs' October 26 letter identified various examples in this regard, including Defendants: (1) refusing to run accounting and financial reporting terms across the files of employees with responsibilities over accounting and financial reporting at Pegasystems; (2) refusing to run terms targeting Pegasystems' communications with Deloitte across the custodial files of employees that regularly communicated with Deloitte; (3) refusing to run terms regarding compliance with Pegasystems' Code of Conduct across the files of Pegasystems' Chief Compliance Officer; and (4) refusing to run various idiosyncratic terms across the files of various custodians.

---

[6]    If Defendants have a specific basis for making the statement quoted above, please share that basis.

4879-7795-5986.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
November 22, 2023
Page 5

Based on Defendants' November 17 letter, Defendants now propose running the following numbers of agreed-upon terms across the files of the following agreed-upon custodians:

(a)  Kerim Akgonul (Chief Product Officer): 132 terms (**89%**);

(b)  Benjamin Baril (Director, Office of the Chief Technology Officer): 132 terms (**89%**);

(c)  Phil Benvenuti (Senior Director of Internal Audit): 10 terms (**7%**);

(d)  Steve Bixby (Vice President of Product Management): 131 terms (**88%**);

(e)  Matt Cushing (General Counsel, Chief Compliance Officer, Vice President, Chief Commercial Officer, and Disclosure Committee member): 28 terms (**19%**);

(f)  John Kenneally (Senior Director, Finance and Treasury, SEC Reporting and Technical Accounting Director): 24 terms (**16%**);

(g)  Efstathios Kouninis (CAO, VP, Finance, and Disclosure Committee member): 32 terms (**21%**);

(h)  Don Schuerman (Chief Technology Officer and Vice President, Marketing and Technology Strategy): 132 terms (**89%**);

(i)  Leon Trefler (Chief of Clients and Markets): 132 terms (**89%**);

(j)  Lisa Pintchman Rogers (VP, Corporate Communications, and Disclosure Committee member): 134 terms (**90%**);

(k)  Kenneth Stillwell (CFO and COO): 149 terms (**100%**);

(l)  Peter Welburn (VP, Investor Relations and Corporate Development, and Disclosure Committee member): 134 terms (**90%**);

(m)  Tom Sorrentino (Senior Director, Corporate Controller, and Disclosure Committee member): 24 terms (**16%**);

(n)  Norma Suarez (Director of Competitive Intelligence): 132 terms (**89%**);

(o)  Alan Trefler (CEO and Founder): 149 terms (**100%**); and

(p)  PegaCompliance@pega.com: 3 terms (**2%**).

With respect to the eight recently-agreed Disclosure Committee members – Danielle Albon, Marissa Arsenault (Foti), Cris Morera Balaguer, Nick Collier, Carlos Fuentes, Jack Geraghty, Donald Lancaster, and Daniel Nash – Defendants propose running 21 terms (14% of the agreed-upon terms) across their custodial documents.

Having reviewed Defendants' proposal from November 17, and given the concerns outlined above regarding the lack of hit reports to date, Plaintiffs' position remains that Defendants' arbitrary slicing up of the agreed-upon terms is inappropriate, and that all of the agreed-upon terms (which the parties have spent months negotiating specifically based on the allegations, claims, and

4879-7795-5986.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
November 22, 2023
Page 6

defenses in this case), should be run across all of the agreed-upon custodians (which, just like the terms, the parties have spent months negotiating).

For instance, among the nearly 130 agreed-upon search terms Defendants ***do not agree*** to run across the custodial files of the eight Disclosure Committee members listed are:

> (a) The fake names and fake or front businesses Pegasystems used to access Appian's platform (Andrew Powers, Emily Gold, Andrew Powers Consulting, Organic Living and Wellness, Palencia Business Center);
>
> (b) The first or last name of Pegasystems' co-defendant in the Virginia Action (Youyong Zou);
>
> (c) "Project Crush" (the name Pegasystems assigned to its corporate espionage involving Mr. Zou);
>
> (d) The specific Virginia Acts under which Appian sued Pegasystems; and
>
> (e) Various terms drafted to target communications concerning the Virginia Action.

Defendants do not even attempt to explain how running these, or the various other terms Defendants refuse to run across these eight Disclosure Committee members' files, would yield an unduly burdensome volume of irrelevant documents. Nor do Defendants explain why communications involving members of the Disclosure Committee regarding Pegasystems' corporate espionage against Appian (including Pegasystems' "Project Crush") would be entirely irrelevant.

Plaintiffs initially proposed the "Appian"-based terms almost two months ago, on September 22, 2023. Defendants' November 17 letter contends, for the first time, that terms mentioning "Appian" are "not proportional" because "Appian is a Pegasystems competitor."

However, the parties agreed that terms containing the word "Appian" are entirely appropriate. And indeed, the parties agreed to run ***over 100 terms*** containing the word "Appian" across the custodial files of individuals with responsibilities over Pegasystems' product development (Kerim Akgonul and Steve Bixby), competitive intelligence (Benjamin Baril and Norma Suarez), product marketing (Don Schuerman), clients and sales (Leon Trefler), investor relations (Lisa Rogers and Peter Welburn) and finance and accounting (Kenneth Stillwell).

4879-7795-5986.v1

**Robbins Geller
Rudman & Dowd** LLP

Robert Kingsley Smith
November 22, 2023
Page 7

Meanwhile, although Defendants agree to run approximately 15 of the "Appian"-based terms across these Disclosure Committee members' files – such as "(Appian OR APPN) w/35 complaint*" and "(Appian OR APPN) w/35 claim*" – they refuse to run other terms that, like the two examples listed above, target communications about the Virginia Action, including for instance:

  (a)   (Appian OR APPN) w/35 "ad damnum";
  (b)   (Appian OR APPN) w/35 "tear down";
  (c)   (Appian OR APPN) w/35 "trade secret";
  (d)   (Appian OR APPN) w/35 "trade secrets";
  (e)   (Appian OR APPN) w/35 "unjust enrichment";
  (f)   (Appian OR APPN) w/35 appeal*;
  (g)   (Appian OR APPN) w/35 appellate;
  (h)   (Appian OR APPN) w/35 court*;
  (i)   (Appian OR APPN) w/35 damage*;
  (j)   (Appian OR APPN) w/35 defense*;
  (k)   (Appian OR APPN) w/35 demurrer*;
  (l)   (Appian OR APPN) w/35 interrog*;
  (m)   (Appian OR APPN) w/35 judgment*;
  (n)   (Appian OR APPN) w/35 juror*;
  (o)   (Appian OR APPN) w/35 merit*;
  (p)   (Appian OR APPN) w/35 misappropriat*; and
  (q)   (Appian OR APPN) w/35 verdict*.

Many of the deficiencies identified in Plaintiffs' October 26 letter remain. For example, Defendants still refuse to run over 80% of the agreed-upon terms across the custodial files of Matthew Cushing (Pega's Chief Compliance Officer, Vice President, Chief Commercial Officer, General Counsel, and Disclosure Committee member). For instance, although Mr. Cushing regularly corresponded with Deloitte regarding the Virginia Action, Defendants *refuse* to run Term No. 35 (which specifically targets Pegasystems' communications with Deloitte) across Mr. Cushing's custodial files. Additionally, despite his role as Pegasystems' Chief Compliance Officer, Defendants refuse to run Term No. 144 (regarding compliance with Pegasystems' Code of Conduct) across Mr. Cushing's files. Defendants also refuse to run *between 79% and 84%* of the agreed-upon terms across the files of custodians with responsibilities over financial reporting and accounting at Pegasystems, including John Kenneally, Efstathios Kouninis, and Tom Sorrentino.

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
November 22, 2023
Page 8

> **5.      Review of Documents Collected Pursuant to Already Agreed-upon Custodians and Search Terms**

About 92% of the documents in Defendants' last production (with a populated "Date" field) are dated prior to May 29, 2020, and so it appears that Defendants are still working on producing documents that were gathered in connection with discovery in the Virginia Action.  Please confirm by November 29, 2023 that, notwithstanding the disagreements between the parties with respect to search terms and proposed custodians Messrs. Roche and O'Keefe, Defendants are reviewing for production documents captured by the custodians and search terms that are already agreed to by the parties.

> **6.      Documents Concerning Pegasystems' Investigation into Appian's Claims**

It is unclear from Defendants' November 17 letter whether Defendants dispute that the investigation into the merits of the Virginia Action that Defendants referenced in their motion to dismiss, is the same investigation about which defendant Trefler testified during the Virginia Action merits trial on March 29, 2022.  Please advise whether they are the same investigation.

To the extent the investigation into the merits of the Virginia Action referenced in the motion to dismiss refers to an investigation other than that which defendant Trefler testified about on March 29, 2022, please identify that investigation(s).[7]

To the extent Pegasystems performed more than one investigation into the merits of the Virginia Action during the Class Period, please let us know.

> **7.      OneDrive**

Please explain your intention, as stated at Appendix A, §I of Defendants' November 17 letter, to collect and apply agreed-upon search terms to "electronic documents collected from [defendant Trefler's and Mr. Stillwell's] personal file storage locations OneDrive," but not from any other agreed-upon custodians.  Defendants do not state why defendant Trefler's and Mr. Stillwell's personal file storage locations on OneDrive are likely to contain relevant and responsive information but the other custodians' locations are not.  The other agreed-upon custodians' sources

---

[7]      Defendants' November 17 letter states "the Parties appear to agree regarding the search and review Defendants will conduct for 'documents concerning Pegasystems's "investigation" into Appian's claims.'"  That is not correct.  As explained above, the parties dispute which terms will be run across each of the custodians' files, and whether Mr. Roche and Mr. O'Keefe will be document custodians.

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
November 22, 2023
Page 9

should be collected and searched using any agreed-upon search terms, just as you propose to do in connection with defendant Trefler and Mr. Stillwell.

Please advise by November 29, 2023 whether you will also collect and apply agreed-to search terms to electronic documents collected from the other agreed-upon custodians' personal file storage locations OneDrive. Please also confirm by November 29 that there are no additional sources of likely relevant and responsive information that should be collected and reviewed for the purposes of discovery beyond those identified at Appendix A, §I of Defendants' November 17 letter.

**8.      Mobile Recipients**

We appreciate your willingness to include in the collection parameters for mobile data of defendant Trefler's or Mr. Stillwell's text messages with the persons listed at Appendix A, §II of Defendants' November 17 letter. We wanted to confirm, however, that you intend to collect and search text messages sent or received by defendant Trefler and Mr. Stillwell where the recipient or sender of the messages is one of the identified persons at Appendix A, §II. In other words, Defendants' proposal "to review mobile data from select custodians *by targeting recipients* and date ranges as specified below," does not mean that Defendants will only be collecting and searching text messages sent by defendant Trefler or Mr. Stillwell to one or more of the persons identified at Appendix A, §II (and excluding any text messages received by defendant Trefler or Mr. Stillwell).

Our understanding, consistent with the parties' discussion on November 14, 2023, is that Defendants will be collecting all text message chains involving either defendant Trefler or Mr. Stillwell, on the one hand, and any of the persons or groups of persons listed in Appendix A, §II, on the other hand, segmenting these chains into 24-hour periods, and reviewing 24-hour segments for production.

Further, we understand that if any portion of a 24-hour text message chain (whether the relevant and responsive message or messages are sent to or received by defendant Trefler or Mr. Stillwell), the entire 24-hour period of text messages will be produced.

Please advise by November 29, 2023 if any of the above inaccurately states Defendants' plan for searching defendant Trefler's or Mr. Stillwell's text messages.

4879-7795-5986.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
November 22, 2023
Page 10

**9.      Agreed-Upon Scope of Plaintiffs' First Set of Requests for Production**

Please confirm that, by providing the bulleted list at Appendix A, §I.B. of Defendants' November 17 letter, you do not intend to alter or in any way modify the agreement reached by the parties throughout the course of the parties' various meet and confers with respect to the agreed scope of the documents and communications sought by the requests, including Request Nos. 1, 8-14, 16-17, 20, and 22-23.

By way of example, in connection with Request No. 22, you write that "Defendants have construed Request No. 22 to call for correspondence concerning the non-privileged *final* minutes, agendas, and formal presentation materials from meetings of the Pegasystems Board of Directors or of Pegasystems' Audit Committee."  This does not capture the agreed scope for Request No. 22. Plaintiffs previously noted that the scope of Request No. 22 should not be limited to just *final* minutes, agendas, and formal presentation materials, but also include non-final drafts of any such materials and correspondence regarding the same.  *See* Plaintiffs' August 7, 2023 letter at 17-18. Defendants did not necessarily disagree with this position except to note that any such non-final, draft materials and related correspondence would be captured by and produced, to the extent not privileged or protected, in response to Request No. 1.  Defendants' September 18, 2023 letter at 12-13.  As such, whether responsive to Request No. 1 or Request No. 22, to the extent captured by agreed to search terms and custodians, Defendants should produce any documents concerning the non-privileged final or *draft* minutes, agendas, and formal presentation materials from meetings of Pegasystems' Board of Directors or of Pegasystems' Audit Committee that took place between May 29, 2020 and October 26, 2022 concerning the Virginia Action, the disclosure of the Virginia Action, an accrual for the Virginia Action, misstatements or omissions alleged in the Complaint (unless dismissed by the Court's Order on the Motion to Dismiss), or the SEC filings in which the misstatements or omissions alleged appeared.

As another example, in connection with Request No. 14, Defendants suggest that this request is limited to "documents concerning statements made by Alan Trefler, Ken Stillwell, Lisa Pintchman Rogers, or Peter Welburn . . . concerning the Virginia Action or the Appian Complaints between May 29, 2020 and October 26, 2022."  The plain language of Request No. 14 also includes "documents concerning any statements made by Defendants," which include statements by Pegasystems.  To the extent *Pegasystems* (but not necessarily defendant Trefler, Mr. Stillwell,

4879-7795-5986.v1

**Robbins Geller
Rudman & Dowd LLP**

Robert Kingsley Smith
November 22, 2023
Page 11


Ms. Rogers, or Mr. Welburn) made statements "to the media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints," documents concerning those statements would also fall within the request's scope.  Please let us know by November 29, 2023 if Defendants disagree.

Very truly yours,

CHRISTOPHER D. STEWART

CDS:

4879-7795-5986.v1