EXHIBIT 13

**Robbins Geller Rudman & Dowd LLP**

<table>
<tr><td>Chicago</td><td>Melville</td><td>Nashville</td><td>San Diego</td><td>Wilmington</td></tr>
<tr><td>Boca Raton</td><td>Manhattan</td><td>Philadelphia</td><td>San Francisco</td><td>Washington, D.C.</td></tr>
</table>

Christopher D. Stewart
cstewart@rgrdlaw.com

December 22, 2023

<u>VIA EMAIL</u>

Robert Kingsley Smith
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109

> Re:   *In re Pegasystems Inc. Securities Litigation*,
>        No. 1:22-cv-11220-WGY (D. Mass.)

Dear Counsel:

I write following the parties' meet and confer calls on December 15, 2023 and December 20, 2023, regarding the information disclosed in Defendants' December 15, 2023 email, and to memorialize points from these calls.

**The "Initial" and "Supplemental" Collections of Documents Performed by Pegasystems Personnel**

Defendants' December 15 email states Defendants performed an "initial collection" of documents using a list of initial "search terms and custodians." Defendants stated these terms and custodians yielded over two million documents. Defendants' December 15 email states that one of those initial terms was "Appian."

Defendants' December 15 email states that Defendants performed a "supplemental collection" of documents reflecting certain agreed-upon custodians and search terms that were broader than the initial collection. Both collections were performed using a condensed directory structure ("CDS") delivery format.

On December 15, Plaintiffs asked Defendants to share the list of search terms and custodians used for the "initial collection" and the "supplemental collection." Defendants stated this information may constitute work product, but agreed to considerer Plaintiffs' request.

On December 19, 2023, Plaintiffs sent an email to Defendants (enclosed herein as Appendix A) reiterating their request that Defendants identify the search terms and custodians used for the

4886-2887-1064.v1

655 West Broadway, Suite 1900    San Diego, CA  92101    Tel 619-231-1058    Fax 619-231-7423    rgrdlaw.com

**Robbins Geller
Rudman & Dowd LLP**

Robert Kingsley Smith
December 22, 2023
Page 2

initial and supplemental collections.  On December 20, Defendants asserted this information was work product, and thus, Defendants would not provide it.

Defendants stated on December 15 that they had not collected documents from Pega using the terms and custodians for which Defendants have not agreed to run, and have not gathered from Pega any of the custodial documents for Christopher Roche or Kevin O'Keefe.

Plaintiffs asked Defendants on December 15 to disclose the difference (or "delta") in volume between the number of documents yielded by Plaintiffs' proposed terms and custodians, and the number of documents yielded by Defendants' proposed terms and custodians.  Defendants agreed to consider Plaintiffs' request.  ***Please provide this information by December 27, 2023***.

On December 15, Defendants stated they were unable to deduplicate before exporting documents from Microsoft 365 because of the fact that Defendants' "initial" and "supplemental" collections used a CDS delivery format.  Defendants stated that one cannot deduplicate at the point of exporting from Microsoft 365.  Defendants stated that it is best practice to deduplicate at the point of ingestion into the review database and not upon export.

On December 15, Defendants stated that they encountered problems with deduplicating the documents collected using the CDS format. Defendants said this was due to the CDS format used, but could not explain on December 15 what were the precise deduplication problems, or what caused the deduplication problems.

In their December 19 email, Plaintiffs asked Defendants to explain the deduplication issues in more detail.  On December 20, Defendants stated that when Pega's personnel performed the two CDS collections, the MD5 hash values corresponding to the documents collected in CDS format were "not reliable."   Plaintiffs asked Defendants why the MD5 hash values were not reliable.  Defendants could not explain why the MD5 hash values were not reliable.  Plaintiffs asked if Defendants knew how it was determined that the MD5 hash values were not reliable.  Defendants said they would look into this further and get back to Plaintiffs.  ***Please provide this information by December 27, 2023***.

Due to the alleged unreliability of the MD5 hash values of the exported documents, Defendants attempted to use Nuix to assign MD5 hash values to the collected documents, for the purpose of attempting to deduplicate documents within (and across) the initial and supplemental CDS collections.  Using this Nuix deduplication workflow, Defendants stated they were able to identify the number of duplicates for a given document by using that document's MD5 hash value generated using Nuix, but stated that the duplicates reside in many places within the database, and Defendants employed a "manual process" to identifying the duplicate's location and addressing each duplicate.

4886-2887-1064.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
December 22, 2023
Page 3

Defendants' December 15 email stated that with using the Nuix deduplication workflow, "future collections" would take 13-15 hours per load file to complete deduplication. With respect to the reference to "13-15 hours per load file," Defendants stated during the December 15 call that there was one load file per custodian, but that some custodians had multiple load files. Plaintiffs asked Defendants to confirm this is accurate.

On December 20, Plaintiffs also asked Defendants why they needed to use Nuix to assign MD5 hash values to the exported data, given that the exported documents should have included two hash values upon export. Defendants stated they did not know but would discuss the issue and provide an answer at a later date. ***Please provide this information by December 27, 2023***.

In the December 19 email, Plaintiffs asked Defendants how many load files would be subject to the 13-15 hour process. On December 20, Defendants stated they were unaware how many load files would be subject to the process given the parties had not reached final agreement on search terms and custodians. They also stated Consilio currently has 18 CDS load files from the partial collection performed to date. Defendants further stated that the 13-15 hours refers to human hours, not machine processing hours, and stated the hours involved searching, tagging, and moving data.

On December 15, Plaintiffs asked Defendants whether Defendants are using the eDiscovery Standard portion, or the eDiscovery Premium portion, of Microsoft 365. Defendants stated they did not know. Plaintiffs reiterated this question in their December 19 email, and on December 20, Defendants stated they are using eDiscovery Premium.

On December 15, Defendants stated they were unaware of an automated method to collect modern attachments using the PST format and believed that there is no viable method their vendor could use to collect modern attachments without using CDS delivery format. But as discussed above, Defendants noted that a different vendor might be able to use the "loose files and PST" method to collect modern attachments.

Defendants stated on December 20 that they could not use the "loose files and PST" export format that links modern attachments because their vendor is unable to link the loose files to the PST files. Plaintiffs stated this was inconsistent with their understanding and requested additional information.

Plaintiffs also explained that, if Defendants were exporting documents using the CDS format, the load files that are exported should include hash values and other fields that identify families, and other information that can be used in Relativity to identify modern attachments and deduplicate.

4886-2887-1064.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
December 22, 2023
Page 4

Plaintiffs explained that a similar process can be used to link the loose files to the PST files. Defendants asked Plaintiffs on December 20 whether Plaintiffs' outside ESI vendor was aware of an automated process of linking modern attachments using the eDiscovery Premium Loose Files and PSTs export format. Plaintiffs agreed to provide that information by the end of the week.

On December 15, Plaintiffs asked Defendants whether Defendants performed an OCR at the time of the CDS exports and exported unindexed/unsearchable items. Defendants stated they did not know the answer but would obtain it.

In their December 19 email, Plaintiffs asked Defendants whether they had indexed or performed an OCR before Pega applied the search terms used for the two CDS exports described in Defendants' December 15 email. Plaintiffs also asked whether Defendants had exported all "partially indexed" items.

On December 20, Defendants stated they had not indexed or performed an OCR before applying the search terms used for the two CDS exports. As a result, to the extent a document was not OCR-readable, a search term would not have "hit" on that document. Defendants initially stated on December 20 that partially indexed documents were not exported, but then questioned whether that response was accurate. Plaintiffs responded by asking if Defendants were aware of any steps being taken to export partially indexed items. Defendants stated that they were not aware of any such steps for the CDS exports, but that partially indexed documents would be exported as part of the PST exports. ***Please confirm by December 27, 2023 whether all partially indexed items were exported as a part of the CDS exports***.

On December 20, Defendants stated that Pega (not its outside ESI vendor (Consilio)) ran the search and export for the two CDS exports. Plaintiffs asked whether a particular person at Pega ran the search and export, and Defendants stated multiple people at Pega ran the search and export. Plaintiffs asked whether one person at Pega was in charge of the search and export and who that person was. Defendants stated they did not know, but would ask. ***Please provide this information by December 27, 2023***.

**Hit Reports and Document Review Portal**

Defendants stated on December 15 that Defendants' outside ESI vendor (Consilio) is able to generate hit reports based upon the documents in the document review database, and has provided Defendants with hit reports.

Defendants stated on December 15 that there is "no value" to the hit reports generated by the ESI vendor because the numbers in the reports are "inaccurate." Defendants stated that, because (in Defendants' view) the hit reports are "inaccurate" and have "no value," Defendants have no

4886-2887-1064.v1

**Robbins Geller
Rudman & Dowd LLP**

Robert Kingsley Smith
December 22, 2023
Page 5

visibility into the actual volume of documents that may be yielded by a particular search term run across a particular custodian's files.

On December 15, Defendants could not tell Plaintiffs: (i) how many documents were collected in the "supplemental" CDS collection; (ii) how many documents have been reviewed for production (and how many documents have been reviewed for production exclusive of the documents that have already been produced to Plaintiffs); or (iii) how many of the documents that have been reviewed for production and designated for production to Plaintiffs, but have not yet been produced to Plaintiffs.

In their December 19 email, Plaintiffs asked Defendants, of the documents collected in the CDS format:

> (a)    how many were collected in total;
>
> (b)    how many had been reviewed;
>
> (c)    how many had been reviewed and designated for production, but have not yet been produced to Plaintiffs; and
>
> (d)    how many have not been reviewed.

On December 20, Defendants stated that, for the initial CDS collection, they had collected around two million documents, but they were unaware how many documents Pega collected for the supplemental CDS collection because those documents were never loaded into the review portal due to the deduplication issue referenced above.

Defendants represented on December 20 that they had reviewed 60,000 of the two million documents in the initial CDS collection for responsiveness.

Defendants stated they did not know the answers to questions 9(c) or 9(d) (above) of Plaintiffs' December 19 email.[1] ***Please provide that information by December 27, 2023.***

---

[1]    Plaintiffs suggested that, given the initial CDS collection yielded approximately two million documents, of which Defendants had reviewed approximately 60,000, approximately 940,000 of the approximately two million documents had not been reviewed.

4886-2887-1064.v1

Robbins Geller
Rudman & Dowd LLP

Robert Kingsley Smith
December 22, 2023
Page 6

**The PST Collection of Documents Referenced in Defendants' December 15 Email**

On December 15, Defendants disclosed for the first time that they were recollecting documents using a PST format without the use of search terms and are not collecting the modern attachments. Plaintiffs stated they did not agree with the PST collection method given that, according to Defendants, it would exclude modern attachments. Defendants stated they were going forward with the PST collection anyway.

On December 20, Defendants again stated that they were processing the PST files without modern attachments. They also stated that, once they produced the documents, they would be willing to entertain a request for a "reasonable number" of specific attachments. Plaintiffs responded that Defendants' approach was inconsistent with the parties' prior agreements regarding modern attachments, and that the language in the ESI Protocol to which Defendants alluded on the December 20 call applied to *earlier versions* of modern attachments, not modern attachments that Defendants had specifically agreed they would collect using an automated manner, as memorialized in Plaintiffs' correspondence from October 5, 2023.[2] Plaintiffs again objected to Defendants' unilateral decision to collect documents using a PST format while eliminating modern attachments.

In addition to collecting full PST mailboxes, Defendants are collecting other custodial sources in full, including OneDrive, SharePoint, and short-message format communications from WebEx and Teams, as part of their collection of PST files.

On December 15, Plaintiffs asked Defendants if Defendants performed a full collection of PST mailboxes, a full collection of the OneDrive, and a full collection of the links that are pointing to OneDrive, and whether those modern attachments could be linked up to the emails in an automated fashion. Defendants stated that there is no automated way to do this, only a manual way. Defendants stated the manual process consists of locating the document, finding the link, and then determining whether you can identify metadata that points to that particular document at the same link.

On December 19, Plaintiffs asked whether Defendants were able to deduplicate the PST export against the CDS exports they have already collected. Defendants stated that they are able to

---

[2]    Plaintiffs' October 5, 2023 letter at 2 ("You further indicated that the company uses Microsoft 365, which allows for the collection of hyperlinked documents from SharePoint, and *you are using the available functionalities to capture and associate linked documents from emails and Teams chats*. However, you indicated that you would only be collecting and associating the versions of the documents as they exist at the time of collection.") (emphasis added).

**Robbins Geller
Rudman & Dowd LLP**

Robert Kingsley Smith
December 22, 2023
Page 7

and that the deduplication process was underway. They also stated that the PST documents could automatically deduplicate against themselves, but that they were being manually deduplicated against the CDS exports. Defendants are only deduplicating the more recent PST export against the initial (smaller) CDS collection, not the supplemental (larger) CDS collection. Defendants stated there is a moderate risk of error in deduplicating the PST export against the initial CDS collection.

Plaintiffs asked Defendants whether the information disclosed in Defendants' December 15 letter was information of which Defendants had just become aware. Defendants stated they believed a manual process of deduplication was feasible, that Defendants pursued the manual process of deduplication, and that Defendants advised Plaintiffs as soon as Defendants realized the manual process of deduplication was not feasible.

On December 20, Plaintiffs asked, regarding the sentence in the December 15 email that reads "[a]t that time, we were advised that deduplication was not possible because the documents had been collected using a CDS delivery format" whether it was Consilio (Defendants' outside ESI vendor) that had "advised" Defendants. Defendants stated it was. Plaintiffs also asked whether Consilio knew, at the time that Pega personnel performed the initial CDS export, that Pega was using the CDS format for the collection. Defendants stated Consilio was aware.

Plaintiffs observed during the December 15 call that Defendants are, in essence, starting from scratch. Defendants stated they did not know what Plaintiffs meant by "starting from scratch," and asserted Defendants were not starting from scratch because they have already reviewed and produced some documents in this case. Defendants could not provide a timeline for completing their document production in this case.

Plaintiffs asked Defendants on December 15 whether Defendants were willing to produce all of the documents that hit on Plaintiffs' proposed search terms and custodians, subject to Defendants' ability to utilize the clawback mechanism in the Protective Order, which would allow for the expedient production of the documents responsive to those terms. Defendants stated that they did not believe they would agree to this, but agreed to consider the option.

**Plaintiffs' Requests to Include Defendants' Vendor on the Parties' Calls**

Plaintiffs had asked Defendants on December 11 to include Defendants' outside ESI vendor (Consilio) on the December 15 call, but Defendants denied the request. Plaintiffs asked Defendants again on the December 15 call, and in writing on December 15, to include Consilio on the parties' next call. Defendants denied that request on December 18.

During the December 20 call, Plaintiffs repeated their request that Defendants include Consilio on the parties' calls regarding these technical issues, explaining that doing so would allow

4886-2887-1064.v1

**Robbins Geller
Rudman & Dowd LLP**

Robert Kingsley Smith
December 22, 2023
Page 8

the parties to engage in a much more efficient and informed discussion. Defendants stated that, because they consider their "technical people" to be their clients, they did not want to include them on the calls. They also noted that Defendants regularly interact with five to seven people regarding ESI collection. Defendants stated that involving that many people would only prolong the process of understanding and trying to resolve the problems Defendants are experiencing with their ESI collections – we disagree. Allowing full and frank discussions between the parties' vendors would greatly reduce the time involved and the potential for error and miscommunication inherent with the parties' current game of "telephone."

**Defendants' Document Production to Date**

In their December 19 email, Plaintiffs asked Defendants, of the documents Defendants have produced to Plaintiffs to date, how many:

> (a)  were produced by Appian in the Virginia Action;
>
> (b)  were produced by Pega in the Virginia Action;
>
> (c)  were produced in the Virginia Action by someone other than Appian or Pega; and
>
> (d)  were not produced in any prior litigation between Pega and Appian.

On December 20, Defendants stated that:

> (a)  roughly 82,000 of the documents Defendants have produced to date had been produced by Appian in the Virginia Action;
>
> (b)  roughly 47,000 of the documents Defendants have produced to date were produced by Pega in the Virginia Action;
>
> (c)  roughly 6,500 of the documents Defendants have produced to date were produced in the Virginia Action by someone other than Appian or Pega; and

4886-2887-1064.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Robert Kingsley Smith
December 22, 2023
Page 9

        (d)    roughly 6,000 of the documents Defendants have produced to date were not produced in any prior litigation between Pega and Appian.

        Very truly yours,

CHRISTOPHER D. STEWART

CDS:

4886-2887-1064.v1

# Appendix A

| | |
|---|---|
| **From:** | Christopher Stewart |
| **To:** | "Schutzman, Erika" |
| **Cc:** | Debra Wyman; Lonnie Browne; Megan Rossi; Chad Johnson; Snehee Khandeshi; Nicole Gilliland; Halston, Daniel; Smith, Robert Kingsley; Lea Bays; Christine Milliron |
| **Subject:** | RE: In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.) |
| **Date:** | Tuesday, December 19, 2023 1:40:20 PM |

4 ET / 1 PT on Wednesday Dec 20 works for the call.

Below are some questions we would like to discuss tomorrow – some of these we asked on Friday but wished to reiterate ahead of tomorrow's call.

1. Did you Index/OCR everything before searching for the CDS exports?

2. Did you export all "partially indexed items" upon export?

3. Did Consilio run the search and export, or did Pegasystems' IT?

4. Can you confirm with Consilio how many load files would be subject to the 13-15 hour deduplication fix?

5. Please explain the deduplication issue in more detail. For example, why do you consider MD5 hash duplicates "**potential** duplicates" and not duplicates that can be suppressed? Why would future collections require a "**manual** process of deduplication" and have "a high risk of error"?

6. Our understanding is that there are two ways to export data from M365 that include modern attachments: Condensed directory structure and "Loose files and PST." You have said that your recollection of full mailboxes in PST format does not include modern attachments.  Please explain why you are not using the "Loose files and PST" export option that does includes modern attachments (eDiscovery Premium)?

7. We reiterate our request for the search parameters that were used for each of the two CDS exports (the initial collection and the supplemental collection referenced in your December 15 email).  Will you provide that information?

8. Are you able to deduplicate the PST export defendants are currently proposing against the CDS exports they already have already collected?  If the answer is yes, are you performing this deduplication?

9. Of the documents that were collected using the CDS format, approximately:
   a. how many were collected in total?

   b. how many have been reviewed?

   c. how many have been reviewed and designated for production, but have not yet been produced to plaintiffs?

   d. how many have not been reviewed?

10. How many of the documents produced by Defendants to date consist of documents that:
    a. were produced by Appian in the Virginia Action?

    b. were produced by Pega in the Virginia Action?

    c. were produced in the Virginia Action by someone other than Appian or Pega?

    d. were not produced in any prior litigation between Pega and Appian?


We can use this dial in for the call:

Dial-in: (267) 930-4000
Participant Code: 627-522-230

Best,
Chris

---

**From:** Schutzman, Erika <Erika.Schutzman@wilmerhale.com>
**Sent:** Monday, December 18, 2023 1:41 PM
**To:** Christopher Stewart <CStewart@rgrdlaw.com>
**Cc:** Debra Wyman <DebraW@rgrdlaw.com>; Lonnie Browne <LBrowne@rgrdlaw.com>; Megan Rossi <MRossi@rgrdlaw.com>; Chad Johnson <ChadJ@rgrdlaw.com>; Snehee Khandeshi <SKhandeshi@rgrdlaw.com>; Nicole Gilliland <NGilliland@rgrdlaw.com>; Halston, Daniel <Daniel.Halston@wilmerhale.com>; Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>; Lea Bays <LBays@rgrdlaw.com>; Christine Milliron <CMilliron@rgrdlaw.com>
**Subject:** RE: In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.)

EXTERNAL SENDER
Chris,

Following up on timing, we had some things change on our end and now can speak 4-5pm ET on Wednesday.

Best,
Erika

**Erika Schutzman | WilmerHale**
+1 617 526 6590

---

**From:** Schutzman, Erika
**Sent:** Monday, December 18, 2023 1:57 PM
**To:** Christopher Stewart <CStewart@rgrdlaw.com>
**Cc:** Debra Wyman <DebraW@rgrdlaw.com>; Lonnie Browne <LBrowne@rgrdlaw.com>; Megan Rossi <MRossi@rgrdlaw.com>; Chad Johnson <ChadJ@rgrdlaw.com>; Snehee Khandeshi

<SKhandeshi@rgrdlaw.com>; Nicole Gilliland <NGilliland@rgrdlaw.com>; Halston, Daniel <Daniel.Halston@wilmerhale.com>; Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>; Lea Bays <LBays@rgrdlaw.com>; Christine Milliron <CMilliron@rgrdlaw.com>
**Subject:** RE: In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.)

Chris,

I hope you had a nice weekend.  Within the windows you proposed, we are available on Wednesday at 3:30-4:30pm ET.  We do not agree that adding a team from our vendor to the call will be productive.

Defendants remain available to answer questions you may have about the challenges posed by CDS format.  However, as we noted on Friday, Defendants have begun collecting and processing data in PST format in light of the current case deadlines and Defendants' assessment that linked documents (i.e. modern attachments) cannot be collected in an automated manner without imposing an undue burden on Defendants.

Best,
Erika

**Erika Schutzman | WilmerHale**
+1 617 526 6590

---

**From:** Christopher Stewart <CStewart@rgrdlaw.com>
**Sent:** Friday, December 15, 2023 5:23 PM
**To:** Schutzman, Erika <Erika.Schutzman@wilmerhale.com>
**Cc:** Debra Wyman <DebraW@rgrdlaw.com>; Lonnie Browne <LBrowne@rgrdlaw.com>; Megan Rossi <MRossi@rgrdlaw.com>; Chad Johnson <ChadJ@rgrdlaw.com>; Snehee Khandeshi <SKhandeshi@rgrdlaw.com>; Nicole Gilliland <NGilliland@rgrdlaw.com>; Halston, Daniel <Daniel.Halston@wilmerhale.com>; Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>; Lea Bays <LBays@rgrdlaw.com>; Christine Milliron <CMilliron@rgrdlaw.com>
**Subject:** RE: In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.)

**EXTERNAL SENDER**

Counsel,

As stated earlier today, we would like to schedule a call for early next week to continue our discussion from today.  We are available on Tuesday December 19 after 10 am PT, and Wednesday December 20 after 11 am PT.  Please let us know if there are times during those windows that work on your end.

We repeat our request that you include your vendor (Consilio) on this next call, to facilitate our discussion of the issues raised in your December 15 email.

Dial-in: (267) 930-4000

Participant Code: 627-522-230

Best,
Chris

---

**From:** Schutzman, Erika <Erika.Schutzman@wilmerhale.com>
**Sent:** Friday, December 15, 2023 6:02 AM
**To:** Christopher Stewart <CStewart@rgrdlaw.com>
**Cc:** Debra Wyman <DebraW@rgrdlaw.com>; Lonnie Browne <LBrowne@rgrdlaw.com>; Megan Rossi <MRossi@rgrdlaw.com>; Chad Johnson <ChadJ@rgrdlaw.com>; Snehee Khandeshi <SKhandeshi@rgrdlaw.com>; Nicole Gilliland <NGilliland@rgrdlaw.com>; Halston, Daniel <Daniel.Halston@wilmerhale.com>; Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>
**Subject:** RE: In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.)

EXTERNAL SENDER
Chris and team,

In advance of our call, below please find information concerning our collection of "modern attachments" (also referred to as point-in-time linked documents) and challenges we have faced processing this data.

We initially collected documents from Pegasystems using a condensed directory structure ("CDS") delivery format that allowed for collection of the current version of modern attachments. Collection using a CDS delivery format was new for our team and unusual for our vendor. Our understanding was, and continues to be, that the CDS delivery format must be used to collect modern attachments. Search terms were used at the point of collection in part due to the significant file sizes associated with collecting documents using a CDS delivery format as compared to the more common Personal Storage Table ("PST") format. The search terms and custodians used for purposes of an initial collection were limited to certain custodians and general terms. Defendants began reviewing this population for production. At the time, the parties had not agreed upon a discovery plan.

Later, after the parties had engaged in substantial negotiations concerning the discovery plan, Defendants conducted a supplemental collection of documents from Pegasystems, again using a CDS delivery format, reflecting certain agreed-upon custodians and search terms that were broader than the initial collection. Due to the file size, which was necessitated by the CDS delivery format, individual load files took significantly longer than expected to collect and transfer to our vendor. We then requested that the files be deduplicated against the initial collection. At that time, we were

advised that deduplication was not possible because the documents had been collected using a CDS delivery format.  We learned at the same time that when the earlier collection had been ingested into the database any deduplication that was attempted was ineffective because deduplication is not supported as part of the standard data mapping process for data received in a "load ready" format like the CDS data.

We immediately worked to identify (1) whether data currently in the database could be deduplicated and (2) whether the more recently collected data could be deduplicated against itself and/or against the data in the database:

1.  As to the data in the database, our e-discovery vendor developed a custom solution to deduplicate the data.  The process involved processing all natives delivered in the CDS format in a Nuix database to generate Consilio-standard MD5 Hash values that would enable the documents to be treated in the same manner as other documents that were ingested in Nuix. This is a very manual process that is still underway and under review by our team.  The Consilio-standard MD5 Hash values have been generated and documents have been tagged as potential duplicates, but our team will need to work with Consilio to determine whether those tagged duplicates should be left in the review population, moved to a near-line database, or removed.  For purposes of production, we sought to screen out duplicates, but it is possible that duplicates may have been produced already.

2.  As to the data that was collected in the follow-on collection or in future follow-on collections (such as once the parties complete negotiation of the discovery plan), our e-discovery vendor advised after significant research and analysis that only a manual process of deduplication would be possible for data provided in a CDS delivery format and that deduplicating new data provided in the same format would take an estimated 13-15 hours per load file to complete. However, our vendor could not satisfactorily provide assurance to our team that the deduplication process would be successful and cautioned that there was a high risk of error in proceeding this way in part due to the expected quantity of data.

As a result of our investigation and discussions with our vendor, we have concluded that the process of collecting documents in a format that would allow for modern attachments to be collected as part of document families is unduly burdensome and impractical given the current discovery deadlines. We will need, and indeed already have begun, to pivot to collecting email in a PST format instead and would like to discuss that with you consistent with the Stipulated ESI Protocol (Dkt. 97).  Should there be specific modern attachments you are interested in, we remain willing to investigate a reasonable number of requests on a case-by-case basis as set forth in the ESI protocol.  Defendants are not currently aware of an automated manner in which all such documents can be collected that is not unduly burdensome.

Finally, as we previewed on our call last week, our attempt to collect documents in such a way that would allow for modern attachments to be preserved has also impacted our ability to provide comprehensive hit reports.  Hit reports must be generated through our e-discovery vendor given the number of terms, complexity of the searches, and document duplication. It is not feasible for our client's IT personnel to generate hit reports—let alone deduplicated hit reports—for 149 terms

across 24 custodians tailored to specific date ranges.  The output of the hit reports is necessarily limited to the content in the database to which our e-discovery vendor has access.  At this time, any hit report run would be both under- and over-inclusive and thus inaccurate due to the duplication issues caused by collection of modern attachments:

1. Any hit report would be under-inclusive because the documents collected did not reflect all search terms in the discovery plan.  As noted above, because of the collection method used to accommodate modern attachments, the database currently contains documents that were collected using specific search terms, rather than full mailboxes.  If the collection search terms are not inclusive of a term on the discovery plan, the hit report returned will be inaccurate.  For example, documents collected using the term "Appian" are unlikely to include all documents also hitting on the term "Project Crush."  A collection specific to the term "Project Crush" is necessary in order to generate a hit report that is accurate for that term.

2. Any hit report would be over-inclusive because the documents collected and ingested include duplicates.  As noted, we are working to identify and ultimately suppress duplicates, but that process is not yet complete.  We cannot assure you that any hit report prepared would accurately reflect unique documents only.

We are prepared to discuss these issues further with you on our call today.

Best,
Erika

**Erika Schutzman | WilmerHale**
+1 617 526 6590

---

**From:** Christopher Stewart <CStewart@rgrdlaw.com>
**Sent:** Monday, December 11, 2023 11:43 PM
**To:** Schutzman, Erika <Erika.Schutzman@wilmerhale.com>; Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>
**Cc:** Debra Wyman <DebraW@rgrdlaw.com>; Lonnie Browne <LBrowne@rgrdlaw.com>; Megan Rossi <MRossi@rgrdlaw.com>; Chad Johnson <ChadJ@rgrdlaw.com>; Snehee Khandeshi <SKhandeshi@rgrdlaw.com>; Nicole Gilliland <NGilliland@rgrdlaw.com>; Halston, Daniel <Daniel.Halston@wilmerhale.com>
**Subject:** RE: In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.)

**EXTERNAL SENDER**

Let's plan to talk on Fri 12/15 at 2 ET (11 PT) – we can use the below dial in. Are you willing to include your vendor on the call?

Separately:

1.  We sent Defendants a letter and email on December 6, regarding RFP 16 and 17 and requesting a meet and confer, but never received a response.  Will you be prepared to discuss the matters in the December 6 letter during the call this Friday?

2.  Can you please confirm you will provide this week Defendants' response to Plaintiffs' Nov 22 letter regarding search terms and custodians?

3.  Please see the attached correspondence following our call on December 8.

Best,
Chris

Dial-in: (267) 930-4000
Participant Code: 627-522-230

---

**From:** Schutzman, Erika <Erika.Schutzman@wilmerhale.com>
**Sent:** Friday, December 8, 2023 5:18 PM
**To:** Christopher Stewart <CStewart@rgrdlaw.com>; Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>
**Cc:** Debra Wyman <DebraW@rgrdlaw.com>; Lonnie Browne <LBrowne@rgrdlaw.com>; Megan Rossi <MRossi@rgrdlaw.com>; Chad Johnson <ChadJ@rgrdlaw.com>; Snehee Khandeshi <SKhandeshi@rgrdlaw.com>; Kirsten McCormack <KMcCormack@rgrdlaw.com>; Nicole Gilliland <NGilliland@rgrdlaw.com>; Halston, Daniel <Daniel.Halston@wilmerhale.com>
**Subject:** RE: In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.)

EXTERNAL SENDER
Chris,

As I mentioned on the call, we are investigating this issue with our vendor.  We propose the following times for a call with Plaintiffs to discuss:
- December 14, 4-5pm ET
- December 15, 2-3pm ET

Best,
Erika

**Erika Schutzman | WilmerHale**
+1 617 526 6590

---

**From:** Christopher Stewart <CStewart@rgrdlaw.com>
**Sent:** Friday, December 8, 2023 6:27 PM
**To:** Schutzman, Erika <Erika.Schutzman@wilmerhale.com>; Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>
**Cc:** Debra Wyman <DebraW@rgrdlaw.com>; Lonnie Browne <LBrowne@rgrdlaw.com>; Megan Rossi <MRossi@rgrdlaw.com>; Chad Johnson <ChadJ@rgrdlaw.com>; Snehee Khandeshi <SKhandeshi@rgrdlaw.com>; Kirsten McCormack <KMcCormack@rgrdlaw.com>; Nicole Gilliland <NGilliland@rgrdlaw.com>; Halston, Daniel <Daniel.Halston@wilmerhale.com>
**Subject:** RE: In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.)

**EXTERNAL SENDER**

Counsel,

Please propose times and dates you are available early next week to discuss the "point in time" issue that you raised during today's call.  To the extent you are willing to share, ahead of next week's call, any information regarding the "point in time" issue that you raised today, and regarding why Defendants contend this issue has precluded Defendants from sharing any hit reports with plaintiffs to date, please provide that information ahead of our call to facilitate our discussion.

Best,
Chris

---

**From:** Christopher Stewart <CStewart@rgrdlaw.com>
**Sent:** Wednesday, December 6, 2023 9:39 PM
**To:** Schutzman, Erika <Erika.Schutzman@wilmerhale.com>
**Cc:** Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>; Debra Wyman <DebraW@rgrdlaw.com>; Lonnie Browne <LBrowne@rgrdlaw.com>; Megan Rossi <MRossi@rgrdlaw.com>; Chad Johnson <ChadJ@rgrdlaw.com>; Snehee Khandeshi <SKhandeshi@rgrdlaw.com>; Kirsten McCormack <KMcCormack@rgrdlaw.com>; Nicole Gilliland <NGilliland@rgrdlaw.com>; Halston, Daniel <Daniel.Halston@wilmerhale.com>
**Subject:** Re: In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.)

Thanks Erika.

We are surprised that Defendants will not acknowledge our inquiry about hit reports in our emails from 12/4 and 12/5.  Is there a particular reason for this?

As you know, Plaintiffs have been seeking hit reports from Defendants for months.  While we look forward to our call on Friday, given the circumstances and Plaintiffs' undisputed diligence in seeking this information from Defendants, in the event the parties are unable to come to an agreement on ESI searches, Plaintiffs are reserving the right to seek the production of all documents hitting on Plaintiffs' proposed search methods.

Best,
Chris

On Dec 6, 2023, at 4:20 PM, Schutzman, Erika <Erika.Schutzman@wilmerhale.com> wrote:

 EXTERNAL SENDER
Thanks Chris.  We will talk to you on Friday.

We are working on a response to your November 22 letter and are aiming to provide that response next week.

Best,
Erika

**Erika Schutzman | WilmerHale**
+1 617 526 6590

**From:** Christopher Stewart <CStewart@rgrdlaw.com>
**Sent:** Tuesday, December 5, 2023 5:56 PM
**To:** Schutzman, Erika <Erika.Schutzman@wilmerhale.com>; Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>; Debra Wyman <DebraW@rgrdlaw.com>; Lonnie Browne <LBrowne@rgrdlaw.com>; Megan Rossi <MRossi@rgrdlaw.com>; Chad Johnson <ChadJ@rgrdlaw.com>; Snehee Khandeshi <SKhandeshi@rgrdlaw.com>; Kirsten McCormack <KMcCormack@rgrdlaw.com>; Nicole Gilliland <NGilliland@rgrdlaw.com>
**Cc:** Halston, Daniel <Daniel.Halston@wilmerhale.com>
**Subject:** RE: In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.)

**EXTERNAL SENDER**

Thank you, Friday, 12/8 at 1-2 ET / 10-11 PT works for a call.  We can

use the below dial in.

With respect to the materials referenced in the 12/4 email below – defendants' response to plaintiffs' November 22, 2023 letter regarding search terms and custodians, and hit reports – when do defendants expect to provide those materials?

Best,
Chris

Dial-in: (267) 930-4000
Participant Code: 627-522-230

---

**From:** Schutzman, Erika <Erika.Schutzman@wilmerhale.com>
**Sent:** Tuesday, December 5, 2023 6:00 AM
**To:** Christopher Stewart <CStewart@rgrdlaw.com>; Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>; Debra Wyman <DebraW@rgrdlaw.com>; Lonnie Browne <LBrowne@rgrdlaw.com>; Megan Rossi <MRossi@rgrdlaw.com>; Chad Johnson <ChadJ@rgrdlaw.com>; Snehee Khandeshi <SKhandeshi@rgrdlaw.com>; Kirsten McCormack <KMcCormack@rgrdlaw.com>; Nicole Gilliland <NGilliland@rgrdlaw.com>
**Cc:** Halston, Daniel <Daniel.Halston@wilmerhale.com>
**Subject:** RE: In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.)

EXTERNAL SENDER
Chris,

Proposed times for a discussion this week are below:
1. Thursday, 4-5pm ET
2. Friday, 1-2pm ET

Please let us know if either of these times work for you.

Thanks,
Erika

**Erika Schutzman | WilmerHale**
+1 617 526 6590

---

**From:** Christopher Stewart <CStewart@rgrdlaw.com>

**Sent:** Monday, December 4, 2023 2:39 PM
**To:** Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>; Debra Wyman <DebraW@rgrdlaw.com>; Lonnie Browne <LBrowne@rgrdlaw.com>; Megan Rossi <MRossi@rgrdlaw.com>; Chad Johnson <ChadJ@rgrdlaw.com>; Snehee Khandeshi <SKhandeshi@rgrdlaw.com>; Kirsten McCormack <KMcCormack@rgrdlaw.com>; Nicole Gilliland <NGilliland@rgrdlaw.com>
**Cc:** Halston, Daniel <Daniel.Halston@wilmerhale.com>; Schutzman, Erika <Erika.Schutzman@wilmerhale.com>
**Subject:** RE: In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.)

**EXTERNAL SENDER**

Counsel,

Thank you for your 502(d) proposal from December 1.  Please propose times and dates you are available this week to discuss.

While we may have additional questions during our call, to facilitate our discussion, please find below some questions to which we wish to hear Defendants' responses during the call:

1. In addition to agreeing to withdraw their redactions over Deloitte's documents, do Defendants also agree not to redact or withhold – on privilege, work product, or other immunity grounds – their own documents and communications that were shared with Deloitte (*i.e.* those documents that are in Defendants' possession, custody or control), such as, for example:
    1. Emails, letters, or other communications between Pega (or Pega's lawyers) and Deloitte;
    2. Documents that were shared with Deloitte that are in Defendants' possession, custody or control?
    3. Documents that were shared with Deloitte that are in the possession, custody or control of subpoenaed third parties?
2. Do Defendants agree not to object or issue instructions to any witnesses – on privilege, work product, or other immunity grounds – to questioning (at deposition, trial, or otherwise) about the redacted information?
    1. For example, if a witness were asked a question regarding the redacted information, do Defendants agree not to object or issue instructions to the witness – on privilege, work product, or other immunity grounds – to questions about the redacted information?
3. The stipulation states at ¶3 that "Plaintiffs further agree not to use the disclosure described in Paragraph 1 against Pegasystems or any other party or non-party in any future dispute over claims of protection from disclosure."  We wish to confirm that:
    1. Defendants agree that nothing in the 502(d) agreement would prevent

any party from:

> 1.  challenging any assertion of privilege, protection or immunity over a document produced pursuant to the 502(d) agreement; or
>
> 2.  arguing that Defendants have effected a subject matter waiver in connection with actions taken (or documents produced) outside of the scope of the 502(d) agreement.

2.  Defendants agree that a challenging party shall be permitted to use any document that is a subject to the 502(d) agreement to challenge any assertion of privilege, protection or immunity over that document.

4.  Do Defendants have access to unredacted versions of the redacted documents?

5.  Have Defendants obtained Deloitte's confirmation that Deloitte will produce unredacted versions of the documents subject to the 502(d) agreement if and once an agreement is signed by the parties?

6.  Have Defendants confirmed that none of Deloitte's redacted documents are subject to assertions of privilege, work product, or other protections by Deloitte?

Separately, we have not received from defendants a response to Plaintiffs' November 22, 2023 letter regarding search terms and custodians, or any hit reports (including the reports referenced in Plaintiffs' November 22 letter). Please advise when Defendants expect to provide those materials.

Best,

Chris

---

**From:** Smith, Robert Kingsley <Robert.Smith@wilmerhale.com>
**Sent:** Friday, December 1, 2023 3:51 PM
**To:** Christopher Stewart <CStewart@rgrdlaw.com>; Debra Wyman <DebraW@rgrdlaw.com>; Lonnie Browne <LBrowne@rgrdlaw.com>; Megan Rossi <MRossi@rgrdlaw.com>; Chad Johnson <ChadJ@rgrdlaw.com>; Snehee Khandeshi <SKhandeshi@rgrdlaw.com>; Danielle Myers <DaniM@rgrdlaw.com>; triciam@rgrdlaw.com; Kirsten McCormack <KMcCormack@rgrdlaw.com>
**Cc:** Halston, Daniel <Daniel.Halston@wilmerhale.com>; Schutzman, Erika <Erika.Schutzman@wilmerhale.com>
**Subject:** In re Pegasystems Inc. Securities Litigation, No. 1:22-cv-11220-WGY (D. Mass.)

EXTERNAL SENDER
Counsel,

As previously suggested, attached is a proposed Rule 502(d) order pursuant to which

Defendants would agree to the reproduction by Deloitte without redaction of documents currently redacted to protect work product.  Neither this email nor the attached proposed Rule 502(d) order is intended or should be construed to be a waiver of any claim of work product over the redacted information in Deloitte's production.

Please let us know if Plaintiffs will agree.

Best,

Rob

**Robert Kingsley Smith | WilmerHale**
60 State Street
Boston, MA 02109 USA
+1 617 526 6759 (t)
+1 617 526 5000 (f)
robert.smith@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited.**

**If you are not the intended recipient, please contact the sender
by reply email and destroy all copies of the original message.**