# EXHIBIT 14

WILMERHALE

January 5, 2024

**BY EMAIL**

Christopher Stewart
Robbins Gellar Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
cstewart@rgrdlaw.com

**Robert Kingsley Smith**

+1 617 526 6759 (t)
+1 617 526 5000 (f)
robert.smith@wilmerhale.com

Re:     *In re Pegasystems Inc. Securities Litigation*, No. 1:22-cv-11220-WGY (D. Mass.)

Counsel:

We write on behalf of Defendants Pegasystems Inc. ("Pegasystems") and Alan Trefler (together with Pegasystems, "Defendants") in response to Plaintiffs' correspondence, dated November 22, 2023 ("Nov. 22, 2023 Letter") and December 6, 2023 ("Dec. 6, 2023 Letter"), and in follow-up to the parties' meet and confers on December 8, 2023, December 15, 2023, and December 20, 2023.

### A.      Collection Methodology & Hit Reports

Pursuant to the Stipulated ESI Protocol (Dkt. 97), Defendants used their best efforts to collect documents from Pegasystems using a condensed directory structure ("CDS") delivery format that would allow for collection of the current version of modern attachments and sufficient metadata to automatically link the modern attachments to "parent" emails. Defendants' understanding is that the CDS delivery format must be used for the collection of modern attachments in order to preserve metadata that would allow one to automatically connect a modern attachment with its "parent" email. Defendants are not aware of any other collection methodology that would allow for modern attachments to be automatically connected to family documents.[1]

After conducting a supplemental collection of documents from Pegasystems and attempting to ingest the data—all of which took significantly longer than usual due to larger file sizes caused by collecting documents in CDS format[2]—Defendants learned that automatic deduplication was not possible because the data had been collected in CDS format and that any deduplication that was attempted at ingestion for previously collected data was ineffective. Defendants have since worked with our e-discovery vendor to develop a custom solution to

---

[1] In a December 22, 2023 email, Plaintiffs purported to provide information about "an automated process of linking modern attachments using the eDiscovery Premium Loose Files and PSTs export format." This process requires a vendor to develop a custom script; not, as Plaintiffs represented they would provide, metadata that automatically links emails with modern attachments. Defendants are discussing Plaintiffs' proposal with their vendor.

[2] Search terms were used at the point of collection in part due to the significant file sizes associated with collecting documents using a CDS delivery format as compared to the more common Personal Storage Table ("PST") format; however, the resulting files were still large enough to be difficult to transmit.

Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109

Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    San Francisco    Washington

Christopher Stewart
Page 2

WilmerHale

deduplicate the data currently in the database, which we deemed necessary for proceeding with discovery. This process, which has taken significant time and been unduly burdensome, is nearly complete for the documents currently in the database, but is not one we or our vendor would recommend going forward for newly collected documents.

Defendants have explored in-depth the feasibility of deduplicating not yet ingested data collected in CDS format and have determined that it is unduly burdensome and impractical to proceed with collections in CDS format. The process for deduplicating data collected in a CDS format is manual and would take approximately 250 hours of work to complete for the supplemental collection of documents that Pegasystems attempted to ingest. The same or more time may be needed to deduplicate future collections depending on the size of future collections. Moreover, because of the manual nature of this process, Defendants' e-discovery vendor could not satisfactorily provide us with assurance that the deduplication process would be successful and cautioned that there was a high risk of error in proceeding with attempting to manually deduplicate data collected in CDS format.

Defendants are in the process of completing a recollection of data using Personal Storage Table ("PST") format. As we have repeatedly explained, Defendants determined that it was necessary to move forward with a PST collection in light of the burdens associated with collecting documents in a CDS format. The primary benefit of collecting documents in PST format is that deduplication among the PST files is automated. As noted above, any collection format other than CDS, including PST, does not retain metadata sufficient to link up modern attachments with a "parent" email. Consistent with the process set out in the ESI protocol, Defendants agree to meet and confer with Plaintiffs concerning a reasonable number of requests to identify and provide, if possible, historical copies of modern attachments that appear on the face of produced emails.

The inability to deduplicate data collected in CDS format has precluded Defendants from being able to provide comprehensive hit reports that accurately reflect unique hits for search terms as set forth in the discovery plan. That is because the hit reports are limited to documents in the database across which the hit report is run and the database included both too few documents (because Defendants could not ingest the supplemental collection and because the parties have not finalized negotiations on a discovery plan) and too many documents (because duplicates were not suppressed). As PST files are ingested, Defendants will be able to provide hit reports for agreed-upon custodians. Attached to this correspondence are hit reports reflecting hits for Kerim Akgonul, Danielle Albon, Cris Morea Balaguer, Phil Benvenuti, Carlos Fuentes, John Kenneally, Efstathios Kouninis, Dan Nash, Lisa Pintchman Rogers, Don Schuerman, Tom Sorrentino, Ken Stillwell, Norma Suarez, Alan Trefler, Leon Trefler, Peter Welburn, and PegaCompliance@pega.com using the PST files. Additional hit reports will be provided as data is ingested into the database and deduplicated. That process is ongoing but is expected to be completed soon.

Finally, as Defendants noted during the meet and confers on December 8, December 15, and December 20, 2023, Defendants have been reviewing for production documents collected

Christopher Stewart
Page 3

WilmerHale

using a CDS format and have reviewed approximately 60,000 documents that were collected in that format.  Defendants also have begun reviewing for production documents collected using a PST format.

### B.    Custodians and Search Terms

#### 1.    Pegasystems In-House Counsel

The parties continue to disagree whether Pegasystems's in-house counsel Kevin O'Keefe and Christopher Roche should be added as custodians.  However, the parties do appear to agree that review of their materials would be unduly burdensome and disproportionate to the needs of the case.  Nov. 17, 2023 Letter at 2-3 (explaining burden and lack of proportionality of review and logging were Mr. O'Keefe and Mr. Roche custodians given their involvement in the Virginia Litigation); Nov. 22 Letter at 2-3 (providing no response to Defendants' statements concerning burden and lack of proportionality).

As we have previously explained, in  an analogous situation in which plaintiffs sought to add an in-house patent counsel as an ESI custodian in a patent infringement case, the District of Delaware weighed the burden such discovery would impose on the defendant and concluded that any relevance was outweighed by the "$100,000 or more [the defendant] would have to spend on creating a privilege log" if the in-house patent counsel was designated as an ESI custodian.  *See Sprint Communications Co. L.P. v. Charter Communications, Inc.*, 2019 WL 3369659, at *1 (D. Del. July 15, 2019).  The same is true here with regard to the cost of review and logging.

Plaintiffs do not challenge Defendants' reading of *Sprint* or assert that the situation here is factually dissimilar.  Instead, Plaintiffs assert that Defendants have made "prior disclosures of purportedly 'privileged' information" and that these alleged disclosures "contrast" with Defendants' assertions that documents in Mr. O'Keefe's and Mr. Roche's files are privileged. Nov. 22, 2023 Letter at 3.  But what Plaintiffs identify as so-called "disclosures" of "purportedly 'privileged' information" are nothing of the sort.  At trial, Mr. Trefler testified about the fact of an investigation that Pegasystems had conducted into Appian's allegations.  The fact that an investigation occurred or events that transpired as a result of the investigation is not privileged.[3] This stands in contrast to a lawyer's mental impressions concerning an investigation or a lawyer's confidential communications with its client about an investigation, which would be protected as privileged.[4]  Similarly, the May 17, 2022 correspondence from Choate, Hall & Stewart LLP to Mr. Stillwell concerning whether Pegasystems' clients were or could be precluded from selling or using Pegasystems's software as a result of the jury verdict in the Virginia Litigation is not a

---

[3] *See In re Intuniv Antitrust Litig.*, 2021 WL 10362709, at *18 (D. Mass. Mar. 3, 2021) (fact of a legal consultation is not privileged).

[4] *See Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st Cir. 2012) ("the work product doctrine protects an attorney's written materials and 'mental impressions.'"); *In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) ("The privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice.").

Christopher Stewart
Page 4

WilmerHale

privileged communication because it was not confidential.[5]   Pegasystems obtained the correspondence from Choate for purposes of providing public assurances to its clients.   The document also was posted publicly on Pegasystems' webpage upon receipt.

As we have repeatedly explained, it is beyond dispute that the vast majority of documents in Mr. O'Keefe's and Mr. Roche's files are likely to be privileged.   As Defendants have explained, Mr. O'Keefe and Mr. Roche were in-house litigation counsel and were in near constant communication with internal stakeholders and outside counsel about the Virginia Litigation as the case went through discovery, including over 40 depositions, a plea in bar trial, and a merits trial.

With respect to Plaintiffs question whether Defendants will make a FRE 502(d) proposal for documents from Mr. Roche or Mr. O'Keefe, *see* Nov. 22, 2023 Letter at 3, Defendants do not agree to do so.   Even setting aside the substantial burden of reviewing Mr. Roche's and Mr. O'Keefe's documents, separate and apart from the burden of logging those documents, Defendants have received no assurances from Plaintiffs that a FRE 502(d) order would adequately protect Pegasystems' privilege.   Indeed, during the course of negotiations concerning a proposed FRE 502(d) order for information protected by the work product privilege shared with Deloitte, the parties have not been able to reach agreement concerning whether a FRE 502(d) order would prevent Plaintiffs from challenging claims of privilege over material subject to the FRE 502(d) order or with material subject to the FRE 502(d) order.   In fact, Plaintiffs have suggested the opposite.   In Defendants' view, a FRE 502(d) order has no utility if Plaintiffs may nevertheless challenge the underlying privilege claims.   *See* Dec. 21, 2023 Email from R. Smith to C. Stewart; Jan. 2, 2024 Email from R. Smith to C. Stewart.

2.      Search Terms

Defendants proposed in their November 17, 2023 Letter to run Term 146 ("Zou" but not "Zhou") across documents dated May 29, 2020 to July 28, 2020 or February 9, 2022 to March 2, 2022, which focuses on the time period of the Virginia Litigation complaint and the time of Pegasystems' disclosure of the Virginia Litigation.   Defendants' rationale for this proposal was that the term as drafted is likely to capture every document with the Virginia Litigation case caption, which Plaintiffs do not dispute.   These documents would either be duplicative of documents Defendants have *already* produced months ago or indisputably attorney work product or otherwise privileged.   Plaintiffs request instead that the term be run for all custodians across the full date range of May 29, 2020 to October 26, 2022.   Nov. 22, 2023 Letter at 3-4.   Plaintiffs provide no explanation for why two terms for Mr. Zou's first name (Terms 3 and 4), a term for Mr. Zou's email address (Term 5), *and* a term for Mr. Zou's last name (Term 146) should be run

---

[5] *See Winchester Cap. Mgmt. Co. v. Manufacturers Hanover Tr. Co.*, 144 F.R.D. 170, 174 (D. Mass. 1992) ("Courts have also held that information which is to be communicated to the public or others is not privileged.").

Christopher Stewart                                              WilmerHale
Page 5

across the full date range for electronic discovery for *all* custodians. Under Federal Rule 26, Plaintiffs' limitless approach to discovery must be tempered by proportionality.

To assist the parties with assessing proportionality, Defendants will provide the requested hit reports to allow the parties to assess the impact of the date ranges proposed. As noted above, Defendants are presently collecting and processing data in PST format from Pegasystems. That process is anticipated to be complete soon, at which time Defendants will be able to run hit reports reflecting all agreed-upon custodians. Defendants do not agree to include documents from Mr. Roche or Mr. O'Keefe in any hit report, as they are not agreed-upon custodians.

### 3. Applying Search Terms to Custodians

The parties continue to discuss how to apply the agreed-upon search terms to the agreed-upon custodians. Plaintiffs propose a one-size-fits-all approach which does not take into account the custodian's role or areas of knowledge; Defendants propose a tailored approach which does.

Plaintiffs complain about the number of terms to be run across the files of certain custodians with legal, finance, or accounting responsibilities, despite the numerous changes Defendants have made in response to Plaintiffs' earlier requests. Nov. 22, 2023 Letter at 7. For example:

- Plaintiffs requested that Defendants add Term Nos. 1, 2, 27-28, 32-34, 123, and 142 to John Kenneally (Senior Director, Finance and Treasury) and Efstathios Kouninis (Chief Accounting Officer and VP, Finance). Oct. 26, 2023 Letter at 11-12. Defendants have done so.

- Plaintiffs requested that Defendants add Term Nos. 1-2, 27-28, 33-34, and 123 to Mr. Sorrentino (Senior Director, Corporate Controller). *Id.* at 12. Defendants have done so.

- Plaintiffs requested that Defendants add Term Nos. 1-2, 27-28, 33-34, 36, and 123 to Mr. Cushing (VP, Chief Commercial Officer & General Counsel). *Id.* Defendants have done so.

To the extent Defendants have not added terms concerning the Virginia Litigation to Mr. Kenneally, Mr. Kouninis, or Mr. Sorrentino, that is because each of these individuals has a role that is focused on finance or accounting. There are no allegations that these individuals were involved in the alleged trade secret misappropriation. Defendants also have not added terms concerning public statements (*i.e.* Terms No. 130-131) to Mr. Kouninis or Mr. Cushing as neither is known to have made public statements and neither is a defined member of "Senior Management" who is relevant for purposes of those terms based on the parties' prior agreement. Further, the terms for Mr. Cushing remain limited to terms that go towards his business, rather than legal, roles at the Company. Defendants acknowledge that Mr. Cushing at times wore business "hats" and have agreed to include him as a custodian; however, doing so should not open up *all* of Mr.

Cushing's files to inspection, least of all his privileged communications concerning the Virginia Litigation or any Company investigation.

Plaintiffs also take issue with the 21 terms used for Disclosure Committee members. The terms Defendants propose to apply focus on disclosure, including terms that reference or relate to disclosure obligations under Item 103 or ASC 450, and specifically disclosure of the Virginia Litigation. The selected terms are tailored specifically to these individuals' roles and likely communications concerning the Virginia Litigation in the context of their role on the Disclosure Committee. Additional terms are not necessary or proportional and the terms that are used for these custodians should reflect that their roles were different from those on the product or competitive intelligence teams.

Defendants will provide the requested hit reports when available, which include hit reports for the discovery plan as written and hit reports for the discovery plan applying all search terms to all custodians. Defendants are able to provide the requested hit reports because they have undertaken and will soon complete a PST collection. As Defendants have repeatedly explained to Plaintiffs, it previously was not possible for Defendants to run a hit report for terms other than those agreed to in the discovery plan because the CDS collections had to be limited by search terms at the point of collection.

### C.    Discovery Plan

#### 1.    <u>Summary of Scope of Plaintiffs' First Set of Requests for Production</u>

Defendants have undertaken to prepare a detailed discovery plan is to ensure that the parties agree on the scope of what Defendants have agreed to search for in response to Plaintiffs' First Set of Requests for Production. To that end, Defendants have memorialized the parties' agreement on the scope of each Request for which Defendants have agreed to undertake an ESI search. Defendants do not intend to alter the agreements reached by the parties through the meet and confer process with respect to the Requests.

In their November 22 letter, Plaintiffs for the first time raise questions about Defendants' summary of their construal of Request Nos. 14 and 22 in the November 17, 2023 discovery plan, despite similar or identical summaries appearing in the September 19, 2023 and October 16, 2023 discovery plans.

***Request No. 14.*** Request No. 14 seeks "All documents concerning any statements made by Defendants or members of Senior Management to the media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints, including, but not limited to, defendant Kenneth Stillwell's public statements concerning the Virginia Action made on May 12, 2022, May 18, 2022, and May 23, 2022." Defendants have construed Request No. 14 "to call for documents concerning statements made by Alan Trefler, Ken Stillwell, Lisa Pintchman Rogers, or Peter Welburn to print media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints between May 29, 2020 and October 26, 2022." Nov.

Christopher Stewart
Page 7

WilmerHale

16 Discovery Plan. Plaintiffs request confirmation that Defendants' articulation does not exclude statements made by Pegasystems to the media, investors, analysts, or public relations firms, but not by Mr. Trefler, Mr. Stillwell, Ms. Rogers, or Mr. Welburn. It does not. As Defendants explained in their September 5, 2023 correspondence, "[b]ased on [our] investigation to date, Alan Trefler, Kenneth Stillwell, Lisa Pintchman Rogers, and Peter Welburn are the only persons at the level of Vice President or above who have, on Pegasystems' behalf, "communicated with 'the media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints.'" For the avoidance of doubt, Defendants have modified the summary in the proposed discovery plan as follows:

> Defendants have construed Request No. 14 to call for documents concerning statements made by Alan Trefler, Ken Stillwell, Lisa Pintchman Rogers, Peter Welburn, *or, to the extent not covered by the forgoing individuals, Pegasystems*, to print media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints between May 29, 2020 and October 26, 2022. Defendants have construed the term "analysts" to have the same meaning as in Request No. 12.

Appended hereto as Appendix A is Defendants' Further Revised Discovery Plan, which reflects the revision noted above.

***Request No. 22.*** Request No. 22 seeks "All documents concerning any Pegasystems Board of Directors meeting (whether formal or informal and including committee meetings of the Boards of Directors) and any committee or subcommittee thereof (e.g., audit committee, compliance committee, disclosure committee, etc.), including board packages, meeting minutes, exhibits, agendas, memoranda, resolutions, notes, reports, and presentations." Defendants have construed Request No. 22 to call for "correspondence concerning the non-privileged final minutes, agendas, and formal presentation materials from meetings of the Pegasystems Board of Directors or of Pegasystems' Audit Committee that took place between May 29, 2020 to October 26, 2022 concerning the Virginia Action, the disclosure of the Virginia Action, an accrual for the Virginia Action, misstatements or omissions alleged in the Complaint (unless dismissed by the Court's Order on the Motion to Dismiss), or the SEC filings in which the misstatements or omissions alleged appeared." Plaintiffs state without a basis that this construal "does not capture the agreed scope for Request No. 22." Nov. 22 Letter at 10. That is incorrect.

Defendants' articulation of the scope of Request No. 22 in the discovery plan aligns with Defendants' September 18, 2023 correspondence in which Defendants clearly articulated the scope of Request No. 22 to which they agreed. Sept. 18, 2023 Letter at 13. That scope was reiterated in the September 19 discovery plan, the October 16 discovery plan, and the November 17 discovery plan. Defendants have never agreed to include draft minutes or other draft documents in the scope of Request No. 22. As Plaintiffs note in their letter, and as Defendants noted in their September 18 letter discussing this, non-privileged drafts of Board materials and non-privileged correspondence with the Board concerning the Virginia Litigation falls within the scope of Request No. 1. Defendants have construed Request No. 1 to call for "documents concerning the Virginia

Christopher Stewart
Page 8

WilmerHale

Action dated May 29, 2020 to October 26, 2022." App'x at 3. Accordingly, the discovery plan accurately states the agreed-upon scope of Request No. 22.

### 2. Relevant Time Period

The relevant time period agreed upon by the parties for purposes of the discovery plan is May 29, 2020 to October 26, 2022. Oct. 17, 2023 Letter at 6. This time period applies to most custodians; however, for custodians who served on the Disclosure Committee, the time period is shortened to only those quarters during which each individual served on the Disclosure Committee. Defendants have clarified in the proposed discovery plan that the relevant period for purposes of applying the discovery plan are the dates during the quarters that each individual served on the Disclosure Committee that fall within the period May 29, 2020 to October 26, 2022.

### 3. Sources of ESI

The proposed discovery plan states that Defendants will apply search terms to electronic documents collected from Mr. Stillwell and Mr. Trefler and will conduct searches without the use of search terms in centrally stored files or other file storage locations. As with the scoping for the search of mobile data, which is limited to Mr. Stillwell and Mr. Trefler, this is because of their status as a former defendant and defendant and their roles at Pega, which are CFO/COO and CEO and founder, respectively.

In the interest of limiting further negotiations on this topic, Defendants agree to search OneDrive files from the remaining custodians using the agreed-upon search terms for each custodian.

### 4. Mobile Data Production

Plaintiffs request clarification on the scope of the mobile data review set forth in the discovery plan. Defendants propose to collect and review for production text message conversations between Mr. Trefler or Mr. Stillwell, on the one hand, and one of the listed recipients, on the other hand. The discovery plan does not set out the format for production, which is addressed by the Stipulated ESI Protocol. Consistent with the parties' discussions and treatment of other short-message format data, Defendants propose to segment text message conversations into 24-hour periods and review those segmented conversations for production. We trust that this clarification resolves Plaintiffs' questions on this topic.

### D. Documents Concerning Pegasystems' Investigation Into Appian's Claims

Plaintiffs request further clarification concerning a reference in Defendants' motion to dismiss to an "investigation." Nov. 22 Letter at 8. In their motion to dismiss, Defendants argued that Plaintiffs failed to plead that Pegasystems's opinions that Appian's claims were "without merit" or that it had "strong defenses" were wrong or otherwise not believed when made. Dkt. 65 at 13. Defendants relied on *Omnicare, Inc. v. Laborers District Council Construction Industry*

Christopher Stewart
Page 9

WilmerHale

*Pension Fund*, which addresses the scope of potential liability under federal securities laws for statements of opinion. Under the holding in *Omnicare*, an expression of opinion is non-actionable:

> unless Plaintiffs can allege that (1) the company's opinions were both objectively and subjectively false, *i.e.*, that the person holding the opinion did not subjectively believe in it, (2) self-embedded facts within the opinion are untrue, or (3) "material facts about the [opinion holder's] inquiry into or knowledge concerning a statement of opinion" were omitted."

*Corban v. Sarepta Therapeutics, Inc.*, 2015 WL 1505693, at *6 (D. Mass. Mar. 31, 2015) (citing *Omnicare*, 575 U.S. 175, 183-86, 188 (2015)), *aff'd*, 868 F.3d 31 (1st Cir. 2017).

In support of the argument that Plaintiffs failed to plead an actionable opinion statement under *Omnicare*, Defendants addressed the third, or "inquiry" prong in a footnote as follows: "Plaintiffs also have not pleaded facts suggesting that Pega did not undertake a reasonable investigation into the merits of the Virginia Litigation or that Pega[systems]'s statements concerning the litigation failed to take into account any information learned from any such investigation. *See Omnicare*, 575 U.S. at 194."[6] Dkt. 65 at 13 n.18. This statement is not a reference to any specific investigation. Rather, it is a statement about the absence of any facts concerning any investigation in the Amended Complaint. Should Plaintiffs have further inquiries concerning facts that were or were not pled in the Amended Complaint, Defendants refer Plaintiffs to the Amended Complaint.

### E.    Request No. 16[7]

Plaintiffs have struggled to articulate objective criteria that Defendants may use to identify documents "concerning suspected violations" of the Code of Conduct, underscoring Defendants' concerns with the nebulous scope of the Request.[8] In their latest missive on this topic, Plaintiffs put forth six examples of hypothetical documents and ask Defendants whether they agreed if the

---

[6] Defendants have a similar note in support of their argument that Plaintiffs failed to allege contemporaneous facts challenging Defendants' belief that Appian's damages claims were unsupported. *See* Dkt. 65 at 13 n.19 (referring to footnote 18 in a parenthetical and stating "noting lack of allegations concerning an investigation by Pega").

[7] Request No. 16 seeks "Copies of Pegasystems' Code of Conduct in place throughout the Relevant Period, all documents concerning any proposed or actual changes to the Code of Conduct during the Relevant Period, and all documents concerning any violations or suspected violations of Pegasystems' Code of Conduct."

[8] See Fed. R. Civ. P. 34(b)(1)(A) ("The request . . . must describe with reasonable particularity each item or category of items to be inspected."); *Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, 2018 WL 3655574, at *13 (N.D. Tex. July 16, 2018) ("To comply with the reasonable particularity requirement here, [Plaintiff] must describe the documents or information it seeks in objective terms under which Defendants and the Court can identify what must be produced and provided without resolving a factual or legal issue in [Plaintiff's] favor.").

WilmerHale

examples fell within the scope of Request No. 16 as articulated in Defendants' October 16, 2023 letter.[9]  Dec. 6, 2023 Letter at 1-2.

During the meet and confer on December 15, 2023, Defendants explained that examples 1, 2, and 5 fell within the scope of Request No. 16 as understood by them.

Defendants shared their confusion concerning examples 3 and 4, which purport to describe documents that discuss "conduct" without identifying an "action," and requested an example of a document that would meet the stated description.[10]  Plaintiffs' example of a document described in example 3 was an email discussing whether the hiring of an outside contractor—an action—would violate the Code of Conduct.  Plaintiffs then clarified that, consistent with the example they provided, example 3 should be understood as being identical to example 2, except in example 3 a specific person is not identified by name.  Accordingly, Defendants interpret example 3 as: "[a] document discussing whether a specific action – *without identifying a particular person undertaking the action* – violated the Code of Conduct clauses challenged in ¶151-157."

No such clarification was provided for example 4.  While it remains unclear what Plaintiffs believe might be captured by example 4 because no concrete example could be provided, it is clear that the description is not sufficiently objective for Defendants to agree that it falls within the scope of Request No. 16.  If Plaintiffs have further clarification they wish to provide for example 4, such as along the lines of the helpful clarification they previously provided for example 3, Defendants are available to meet and confer.

Finally, in response to questions from Defendants, Plaintiffs clarified that example 6, which refers to "[a] document referring to, describing, or evidencing an inquiry or an investigation into whether an action or conduct violated the Code of Conduct clauses challenged in ¶151-157" refers *only* to documents generated as a result of an investigation.  With that gloss and the clarification provided on other examples, Defendants interpret example 6 as "[a] document generated as a result of an investigation into whether an action violated the Code of Conduct clauses challenged in ¶151-157."

For the avoidance of doubt, Defendants understand the portion of Request No. 16 that seeks "all documents concerning any violations or suspected violations of Pegasystems' Code of Conduct" to seek:

---

[9] The scope of Request No. 16 as articulated by Defendants is: "Defendants agree to search for and produce in response to Request No. 16 documents or communications dated between May 29, 2020 and October 26, 2022 discussing whether an action violated the clauses of the Code of Conduct challenged in ¶¶ 151 to 157 of the Amended Complaint."  Oct. 16, 2023 Letter at 9 & n.6.

[10] Example 3 is "[a] document discussing whether a person's conduct – *without identifying a particular action by a particular person* – violated the Code of Conduct clauses challenged in ¶151-157."  Example 4 is "[a] document discussing whether a person's conduct – *without identifying a particular action, but referring to a particular person* – violated the Code of Conduct clauses challenged in ¶151-157."

Christopher Stewart
Page 11

WILMERHALE

- "Confirmed violations" of Pegasystems' Code of Conduct between May 29, 2020 and October 26, 2022 that relate the portions of the Code of Conduct challenged in the Amended Complaint, *i.e.* ¶¶ 151 to 157.

- Documents or communications dated between May 29, 2020 and October 26, 2022 discussing whether an action violated the clauses of the Code of Conduct challenged in ¶¶ 151 to 157 of the Amended Complaint, which includes:

    o "[a] document discussing whether a specific action by a specific person violated the Code of Conduct clauses challenged in ¶¶151-157."

    o "[a] document discussing whether a specific action – *without identifying a specific person by name* – violated the Code of Conduct clauses challenged in ¶151-157."

    o "[a] document discussing whether a specific action – *without identifying a particular person undertaking the action* – violated the Code of Conduct clauses challenged in ¶151-157."

    o "[a] document discussing whether the use of outside contractors or consultants to gather competitive intelligence about a competitor violated the Code of Conduct clauses challenged in ¶151-157."

    o "[a] document generated as a result of an investigation into whether an action violated the Code of Conduct clauses challenged in ¶151-157."

Search terms proposed by Plaintiffs that relate to Request No. 16 are already reflected in Defendants' Revised Discovery Plan appended at Appendix A.

**F.      Request No. 17**

In response to Request No. 17[11] and following correspondence between the parties, Defendants agreed in their November 17, 2023 letter to

search for and produce in response to Request No. 17 documents or communications dated between May 29, 2020 and October 26, 2022 discussing whether an *action* regarding (i) the Virginia Action, (ii) the allegations within the four corners of the Virginia Action

---

[11] Request No. 17 seeks "All documents concerning any concerns, complaints, or issues raised with Pegasystems' audit committee, internal audit department, members of a disclosure committee (including, without limitation, the "Disclosure Committee" referenced in the Code of Conduct), Senior Management, or other divisions or individuals responsible for fielding, processing, or responding to employee concerns or complaints, regarding: (a) the Virginia Action; (b) the Appian Complaints or conduct alleged therein; and (c) Pegasystems' financial reporting or disclosures."

complaint, or (iii) Pegasystems's disclosures or accrual decisions concerning the Virginia Action complied with or violated any laws, rules, guidelines, or regulations….

Nov. 17, 2023 Letter at 8 (emphasis added).  Using the same construct developed for Request No. 16, Plaintiffs ask Defendants to confirm the scope of the term "action."  During the meet and confer on December 15, 2023, Plaintiffs did not indicate that there was any meaningful difference between the six examples provided for Request No. 17 and those provided for Request No. 16. Accordingly, Defendants construe the examples as having the same scope.

For the avoidance of doubt, Defendants agree to interpret "documents or communications … discussing whether an *action* regarding [the enumerated topics] complied with or violated any laws, rules, guidelines, or regulations" to include the following types of documents:

- "[a] document discussing whether a specific action [regarding the enumerated topics] by a specific person complied with or violated any laws, rules, guidelines, or regulations."

- "[a] document discussing whether a specific action [regarding the enumerated topics] – *without identifying a specific person by name* – complied with or violated any laws, rules, guidelines, or regulations."

- "[a] document discussing whether a specific action [regarding the enumerated topics] – *without identifying a particular person undertaking the action* – complied with or violated any laws, rules, guidelines, or regulations."

- "[a] document discussing whether the use of outside contractors or consultants to gather competitive intelligence about a competitor complied with or violated any laws, rules, guidelines, or regulations," to the extent the action of using an outside contractor or consultant concerns (i) the Virginia Action, (ii) the allegations within the four corners of the Virginia Action complaint, or (iii) Pegasystems's disclosures or accrual decisions concerning the Virginia Action.

- "[a] document generated as a result of an investigation into whether an action [regarding the enumerated topics] complied with or violated any laws, rules, guidelines, or regulations."

Search terms proposed by Plaintiffs that relate to Request No. 17 are already reflected in Defendants' Revised Discovery Plan appended at Appendix A.

*     *     *

Christopher Stewart                                                    WILMERHALE
Page 13


       As explained above, Defendants will provide the requested hit reports when available. Defendants recommend that the parties schedule a meet and confer to discuss and reach a conclusion on how to proceed when those reports are available.

                 Best regards,

                 */s/ Robert Kingsley Smith*

                 Robert Kingsley Smith

cc:    Daniel W. Halston, Daniel.Halston@wilmerhale.com
        Erika M. Schutzman, Erika.Schutzman@wilmerhale.com

# Appendix A

**Defendants Pegasystems Inc.'s and Alan Trefler's Proposed Document Discovery Plan for Requests for Production Nos. 1, 8–11, 12–14, 16–17, 20, 22-23**

This document describes the terms of the plan for document discovery that Defendants Pegasystems Inc. ("Pegasystems") and Alan Trefler (collectively, "Defendants") propose to use to satisfy certain of their document production obligations in response to Plaintiffs' First Request for Production of Documents to Defendants dated June 2, 2023 ("Requests"). Defendants reserve the right to modify this Plan, including to narrow or remove custodians or search terms should additions requested by Plaintiffs render the search and review conducted by Defendants unreasonable, unduly burdensome, or not proportional to the needs of this case.

This Plan is subject to, and does not waive or supersede, the objections to and construction of Plaintiffs' Requests (as supplemented by correspondence dated August 21, September 5, and September 18, October 16, and November 17, 2023) as set forth in Defendants' Responses and Objections to Plaintiffs' First Request for Production of Documents, which are incorporated herein by reference.

This Plan is further subject to the review of hit reports by all Parties and an assessment of whether the search terms and custodians listed herein are proportional to the needs of the case. Defendants reserve all rights to make modifications to this Plan to reduce any burden to otherwise render it proportional to the needs of the case.

## I.    ESI Production (Excluding Mobile Data)

Defendants propose to conduct ESI filtering and review through the use of search terms, custodians, and date ranges as specified below. Sources of ESI to which these search terms will apply include: e-mails and, short-message format communications from WebEx and Teams. In addition, for Mr. Trefler and Mr. Stillwell, Defendants will apply these search terms to, and electronic documents collected from their personal file storage locations OneDrive.[1]

Where Defendants' response to a Request contains both an agreement to conduct ESI filtering and review and a reasonable search for specific documents, this Plan describes only the ESI filtering and review component. As separately agreed upon, Defendants will not withhold a non-privileged document that hits on an agreed-to search term if that document is responsive to a Request, as construed by Defendants in their Responses and Objections to Plaintiffs' Requests and subsequent meet and confers between the Parties, even if Defendants do not agree to employ search terms to identify and produce documents in response to that Request.

### A.    Custodians

| Name | Title | Terms |
|------|-------|-------|
| Kerim Akgonul | Chief Product Officer | 1-129, 144, 146-147 |

---

[1] Defendants separately will search for responsive documents in Pegasystems' centrally stored files and other sources of ESI; however, those searches will be conducted without search terms consistent with Defendants' Responses and Objections.

1

| Name | Title | Terms |
|---|---|---|
| Danielle Albon[2] | Senior Director and Revenue Controller | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| Marissa (Foti) Arsenault[3] | Revenue Manager | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| Benjamin Baril | Director, Office of the Chief Technology Officer | 1-129, 144, 146-147 |
| Phil Benvenuti | Senior Director of Internal Audit | 35-36, 134-138, 141-143 |
| Steve Bixby | VP, Product Management | 1-129, 146-147 |
| Cris Morea Balaguer[4] | Former Sr. Director, Tax | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| Nick Collier[5] | Director, Finance EMEA | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| Matt Cushing | VP, Chief Commercial Officer & General Counsel | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 132-143, 150 |
| Carlos Fuentes[6] | VP, Chief Information Security Officer | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| Jack Geraghty[7] | VP, Financial Planning & Analysis | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| John Kenneally | Senior Director, Finance and Treasury | 1-2, 12, 27-28, 32-36, 42, 87-88, 108-109, 123, 139-143, 148-150 |
| Efstathios Kouninis | Chief Accounting Officer and VP, Finance | 1-2, 12, 27-28, 32-36, 42, 87-88, 108-109, 123, 132-144, 148-150 |
| Donald Lancaster[8] | Senior Corporate Counsel | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |

[2] Searches of Ms. Albon's material will be limited to October 1, 2020 to September 30, 2021.

[3] Searches of Ms. Arsenault's material will be limited to ~~April 1~~May 29, 2020 to September 30, 2020.

[4] Searches of Ms. Balaguer's material will be limited to October 1, 2020 to September 30, 2021.

[5] Searches of Mr. Collier's material will be limited to ~~April 1~~May 29, 2020 to September 30, 2021.

[6] Searches of Mr. Fuentes' material will be limited to January 1, 2021 to ~~December 31~~October 26, 2022.

[7] Searches of Mr. Geraghty's material will be limited to ~~April 1~~May 29, 2020 to September 30, 2021.

[8] Searches of Mr. Lancaster's material will be limited to ~~April 1~~May 29, 2020 to September 30, 2021.

2

| Name | Title | Terms |
|---|---|---|
| Daniel Nash[9] | Vice President, Finance | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| Lisa Pintchman Rogers | Vice President, Corporate Communications | 1-131, 148-150 |
| Don Schuerman | Chief Technology Officer and VP, Marketing and Technology | 1-129, 144, 146-147 |
| Tom Sorrentino | Senior Director and Corporate Controller | 1-2, 12, 27-28, 32-36, 42, 87-88, 108-109, 123, 139-143, 148-150 |
| Kenneth Stillwell | Chief Operating Officer and Chief Financial Officer | 1-144, 146-150 |
| Norma Suarez | Director of Competitive Intelligence, Marketing & AI Decisioning | 1-129, 144, 146-147 |
| Alan Trefler | Founder and Chief Executive Officer | 1-144, 146-150 |
| Leon Trefler | Chief of Clients and Markets | 1-129, 144, 146-147 |
| Peter Welburn | VP, Investor Relations and Corporate Development | 1-131, 148-150 |
| PegaCompliance@pega.com | General Compliance Email | 141-143 |

## B.    Search Terms

The following search terms relate to Request Nos. 1, 8, 9, 10, 11, 12, 13, 14, 16, 17, 20, 22, and 23:

- Defendants have construed Request No. 1 to call for documents concerning the Virginia Action dated May 29, 2020 to October 26, 2022.

- Defendants have construed Request Nos. 8 and 9 to call for communications with Deloitte concerning the Virginia Action, the Appian Complaints, misstatements or omissions alleged in the Complaint, and Pegasystems' accounting for the Virginia Action, including legal expenditures associated with the defense of the Virginia Action, dated May 29, 2020 to October 26, 2022.

- Defendants have construed Request No. 10 to call for documents concerning Pegasystems' current or quarterly disclosures to the SEC regarding legal proceedings or loss contingencies dated between May 29, 2020 and October 26, 2022, including filings on Forms 10-K, 10-Q, and 8-K, and earnings calls.

- Defendants have construed Request No. 12 to call for communications with shareholders (including any institutional investors), analysts, or representatives of print media publications concerning Pegasystems' financial reporting, accounting, the Virginia Action, or the Appian Complaints dated from May 29, 2020 to October 26, 2022.

---

[9] Searches of Mr. Nash's material will be limited to July 1, 2021 to ~~December 31~~October 26, 2022.

3

Defendants have construed the term "analysts" to mean the following: Barclays Capital, Citigroup Global Markets, D.A. Davidson & Co., Goldman Sachs, JMP Securities, J.P. Morgan, KeyBanc, Loop Capital, Macquarie, Morningstar, RBC Capital Markets, Rosenblatt Securities, Truist, Wedbush Securities, William Blair, The Benchmark Company, Canaccord Genuity, CFRA Research, Credit Suisse Securities, Needham & Company, Oppenheimer & Co., and SMBC Nikko Securities.  Defendants have construed the term "print media" to mean traditional print publications, such as *The New York Times*, *The Washington Post*, and *Newsweek*.

- Defendants have construed Request No. 13 to call for print media coverage of the Virginia Action or the Appian Complaints, or the impact of the Virginia Action and Appian Complaints on Pegasystems dated between May 29, 2020 and October 26, 2022.

- Defendants have construed Request No. 14 to call for documents concerning statements made by Alan Trefler, Ken Stillwell, Lisa Pintchman Rogers, ~~or~~ Peter Welburn, or to the extent not covered by the forgoing individuals, Pegasystems, to print media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints between May 29, 2020 and October 26, 2022. Defendants have construed the term "analysts" to have the same meaning as in Request No. 12.

- Defendants have construed Request No. 16 to call for (i) documents concerning the drafting of the portions of the Code of Conduct challenged in the Complaint dated between May 29, 2020 and October 26, 2022; (ii) "confirmed violations" of Pegasystems' Code of Conduct between May 29, 2020 and October 18, 2022 that relate the portions of the Code of Conduct challenged in the Complaint; and (iii) documents or communications dated between May 29, 2020 and October 26, 2022 discussing whether an action violated the clauses of the Code of Conduct challenged in ¶¶ 151 to 157 of the Complaint.

- Defendants have construed Request No. 17 to call for documents or communications dated between May 29, 2020 and October 26, 2022 discussing whether an action regarding (i) the Virginia Action, (ii) the allegations within the four corners of the Virginia Action complaint, or (iii) Pegasystems' disclosures or accrual decisions concerning the Virginia Action complied with or violated any laws, rules, guidelines, or regulations, regardless of whether the discussion about that particular action stemmed from a complaint filed through Pegasystems' formal channels for submitting complaints, or outside of those formal channels such as an email or other communication to Pegasystems' audit committee, internal audit department, members of a disclosure committee, Mr. Trefler, Mr. Stillwell, or other individuals who may have responsibility for fielding, processing, or responding to employee concerns or complaints.

- Defendants have construed Request No. 20 to call for documents concerning price movements in Pegasystems common stock on February 17, May 10, May 11, September 16, and September 19, 2022, including documents concerning the factors contributing to the price movement.

4

- Defendants have construed Request No. 22 to call for correspondence concerning the non-privileged final minutes, agendas, and formal presentation materials from meetings of the Pegasystems Board of Directors or of Pegasystems' Audit Committee that took place between May 29, 2020 to October 26, 2022 concerning the Virginia Action, the disclosure of the Virginia Action, an accrual for the Virginia Action, misstatements or omissions alleged in the Complaint (unless dismissed by the Court's Order on the Motion to Dismiss), or the SEC filings in which the misstatements or omissions alleged appeared.

- Defendants have construed Request No. 23 to call for documents concerning meetings of the Disclosure Committee referenced in Pegasystems' Code of Conduct that took place between May 29, 2020 and October 26, 2022.

| Number | Term[10] | Proposed By |
|---|---|---|
| 1. | (10-K or 10-Q or 8-K) w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual*) | Defendants |
| 2. | ("Earnings Call" or script) w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual*) | Defendants |
| 3. | Youyong | Plaintiffs |
| 4. | Youyoung | Plaintiffs |
| 5. | zouyyong@yahoo.com | Plaintiffs |
| 6. | "Project Crush" | Plaintiffs |
| 7. | "understanding appian" | Plaintiffs |
| 8. | "Appian consultant" | Plaintiffs |
| 9. | "going to call him matt" | Plaintiffs |
| 10. | "questionable means to acquire" | Plaintiffs |
| 11. | "misrepresenting your identify in hopes of obtaining" | Plaintiffs |
| 12. | "the Company has strong defenses to these claims" | Plaintiffs |
| 13. | "we should never lose against Appian" | Plaintiffs |
| 14. | "can I ping about legality of using" | Plaintiffs |
| 15. | *apowerconsulting.com | Plaintiffs |
| 16. | bbaril@palenciabusinesscenter.com | Plaintiffs |
| 17. | (Andrew* w/3 Power*) | Plaintiffs |
| 18. | (Emily* w/3 Gold*) | Plaintiffs |
| 19. | (Appian OR APPN) AND (Eric w/3 Cole) | Plaintiffs |
| 20. | (Appian OR APPN) AND (Simon w/3 Platt) | Plaintiffs |
| 21. | (Appian OR APPN) AND (Richard w/3 Marshall) | Plaintiffs |
| 22. | (Appian OR APPN) AND (Paul w/3 Pinto) | Plaintiffs |
| 23. | (Appian OR APPN) AND (William w/3 Easttom) | Plaintiffs |
| 24. | (Appian OR APPN) AND (James w/3 Malackowski) | Plaintiffs |

---

[10] The date range for these terms is May 29, 2020 to October 26, 2022 unless otherwise stated in this table or as specified for individual custodians.

| Number | Term[10] | Proposed By |
|--------|----------|-------------|
| 25. | (Appian OR APPN) AND ((Judge OR Daniel) w/3 Ortiz) | Plaintiffs |
| 26. | (Appian OR APPN) AND ((Judge OR Richard) w/3 Gardiner) | Plaintiffs |
| 27. | (Appian OR APPN) AND "pending litigation" | Plaintiffs |
| 28. | (Appian OR APPN) AND "legal proceedings" | Plaintiffs |
| 29. | (Appian OR APPN) AND "A. Ewe" | Plaintiffs |
| 30. | (Appian OR APPN) AND "A Ewe" | Plaintiffs |
| 31. | (Appian OR APPN) AND (Paul* w/3 Foon*) | Plaintiffs |
| 32. | (Appian OR APPN) AND "Item 103" | Plaintiffs |
| 33. | (Appian OR APPN) AND "ordinary routine litigation" | Plaintiffs |
| 34. | (Appian OR APPN) AND ((topic OR subtopic OR FASB OR ASC) w/10 (450* OR "contingencies")) | Plaintiffs |
| 35. | (Appian OR APPN) AND *deloitte* | Plaintiffs |
| 36. | (To/From/Cc *@deloitte) AND ("without merit" OR (Pega* w/5 competitive w/5 market*) OR (notice! w/5 misappropriat!) OR "strong defenses" OR "code of conduct") | Defendants |
| 37. | (Appian OR APPN) AND ("Organic Living and Wellness" OR*@organiclivingandwellness.com) | Plaintiffs |
| 38. | (Appian OR APPN) AND ("Palencia Business Center" or *@palenciabusinesscenter.com) | Plaintiffs |
| 39. | (Appian OR APPN) AND (Albert w/3 Scii) | Plaintiffs |
| 40. | (Appian OR APPN) AND (Albert w/3 Skii) | Plaintiffs |
| 41. | (Appian OR APPN) AND ("A Skii") | Plaintiffs |
| 42. | (Appian OR APPN) AND (proceedings w/3 "ordinary course") | Plaintiffs |
| 43. | (Appian OR APPN) AND (spy or spies) | Plaintiffs |
| 44. | (Appian OR APPN) AND "Virginia Computer Crimes Act" | Plaintiffs |
| 45. | (Appian OR APPN) AND "Virginia Uniform Trade Secrets Act" | Plaintiffs |
| 46. | (Appian OR APPN) AND VCCA | Plaintiffs |
| 47. | (Appian OR APPN) AND VUTSA | Plaintiffs |
| 48. | (Appian OR APPN) AND Venugopal.sarada@edumithra.co.in | Plaintiffs |
| 49. | (Appian OR APPN) AND vishal.sarada@capgemini.com | Plaintiffs |
| 50. | (Appian OR APPN) w/35 "12 challenges" | Plaintiffs |
| 51. | (Appian OR APPN) w/35 "12challenges" | Plaintiffs |
| 52. | (Appian OR APPN) w/35 "ad damnum" | Plaintiffs |
| 53. | (Appian OR APPN) w/35 "burden of proof" | Plaintiffs |
| 54. | (Appian OR APPN) w/35 "free trial" | Plaintiffs |

6

| Number | Term[10] | Proposed By |
|---|---|---|
| 55. | (Appian OR APPN) w/35 "tear down" | Plaintiffs |
| 56. | (Appian OR APPN) w/35 "trade secret" | Plaintiffs |
| 57. | (Appian OR APPN) w/35 "trade secrets" | Plaintiffs |
| 58. | (Appian OR APPN) w/35 "unjust enrichment" | Plaintiffs |
| 59. | (Appian OR APPN) w/35 "attack plan" | Plaintiffs |
| 60. | (Appian OR APPN) w/35 "battle card" | Plaintiffs |
| 61. | (Appian OR APPN) w/35 "CI brief" | Plaintiffs |
| 62. | (Appian OR APPN) w/35 "CI content" | Plaintiffs |
| 63. | (Appian OR APPN) w/35 "CI Project" | Plaintiffs |
| 64. | (Appian OR APPN) w/35 "CI space" | Plaintiffs |
| 65. | (Appian OR APPN) w/35 "competitive brief" | Plaintiffs |
| 66. | (Appian OR APPN) w/35 "competitive briefing" | Plaintiffs |
| 67. | (Appian OR APPN) w/35 "competitive intelligence" | Plaintiffs |
| 68. | (Appian OR APPN) w/35 "confidential" | Plaintiffs |
| 69. | (Appian OR APPN) w/35 "CRM proposal" | Plaintiffs |
| 70. | (Appian OR APPN) w/35 "damning attack" | Plaintiffs |
| 71. | (Appian OR APPN) w/35 "deep dive" | Plaintiffs |
| 72. | (Appian OR APPN) w/35 "license agreement" | Plaintiffs |
| 73. | (Appian OR APPN) w/35 "license agreements" | Plaintiffs |
| 74. | (Appian OR APPN) w/35 "request for admission" | Plaintiffs |
| 75. | (Appian OR APPN) w/35 "technical brief" | Plaintiffs |
| 76. | (Appian OR APPN) w/35 "technical business brief" | Plaintiffs |
| 77. | (Appian OR APPN) w/35 "technical CI" | Plaintiffs |
| 78. | (Appian OR APPN) w/35 "terms of use" | Plaintiffs |
| 79. | (Appian OR APPN) w/35 "trial terms and conditions" | Plaintiffs |
| 80. | (Appian OR APPN) w/35 action* | Plaintiffs |
| 81. | (Appian OR APPN) w/35 appeal* | Plaintiffs |
| 82. | (Appian OR APPN) w/35 appellate | Plaintiffs |
| 83. | (Appian OR APPN) w/35 battlecard* | Plaintiffs |
| 84. | (Appian OR APPN) w/35 BP3 | Plaintiffs |
| 85. | (Appian OR APPN) w/35 camtasia* | Plaintiffs |
| 86. | (Appian OR APPN) w/35 case* | Plaintiffs |
| 87. | (Appian OR APPN) w/35 claim* | Plaintiffs |
| 88. | (Appian OR APPN) w/35 complaint* | Plaintiffs |
| 89. | (Appian OR APPN) w/35 consultant* | Plaintiffs |
| 90. | (Appian OR APPN) w/35 contractor* | Plaintiffs |
| 91. | (Appian OR APPN) w/35 court* | Plaintiffs |
| 92. | (Appian OR APPN) w/35 damage* | Plaintiffs |
| 93. | (Appian OR APPN) w/35 defense* | Plaintiffs |
| 94. | (Appian OR APPN) w/35 demurrer* | Plaintiffs |
| 95. | (Appian OR APPN) w/35 depos* | Plaintiffs |
| 96. | (Appian OR APPN) w/35 discovery | Plaintiffs |
| 97. | (Appian OR APPN) w/35 documentation | Plaintiffs |

| Number | Term[10] | Proposed By |
|---|---|---|
| 98. | (Appian OR APPN) w/35 enjoin* | Plaintiffs |
| 99. | (Appian OR APPN) w/35 exhibit* | Plaintiffs |
| 100. | (Appian OR APPN) w/35 hearing* | Plaintiffs |
| 101. | (Appian OR APPN) w/35 injunct* | Plaintiffs |
| 102. | (Appian OR APPN) w/35 interrog* | Plaintiffs |
| 103. | (Appian OR APPN) w/35 judgment* | Plaintiffs |
| 104. | (Appian OR APPN) w/35 juries | Plaintiffs |
| 105. | (Appian OR APPN) w/35 juror* | Plaintiffs |
| 106. | (Appian OR APPN) w/35 jury | Plaintiffs |
| 107. | (Appian OR APPN) w/35 (Kforce* OR "K-Force") | Plaintiffs |
| 108. | (Appian OR APPN) w/35 lawsuit* | Plaintiffs |
| 109. | (Appian OR APPN) w/35 litigat* | Plaintiffs |
| 110. | (Appian OR APPN) w/35 merit* | Plaintiffs |
| 111. | (Appian OR APPN) w/35 misappropriat* | Plaintiffs |
| 112. | (Appian OR APPN) w/35 motion* | Plaintiffs |
| 113. | (Appian OR APPN) w/35 proceeding* | Plaintiffs |
| 114. | (Appian OR APPN) w/35 relief | Plaintiffs |
| 115. | (Appian OR APPN) w/35 teardown* | Plaintiffs |
| 116. | (Appian OR APPN) w/35 testif* | Plaintiffs |
| 117. | (Appian OR APPN) w/35 testimony | Plaintiffs |
| 118. | (Appian OR APPN) w/35 transcript* | Plaintiffs |
| 119. | (Appian OR APPN) w/35 trial* | Plaintiffs |
| 120. | (Appian OR APPN) w/35 verdict* | Plaintiffs |
| 121. | (Appian OR APPN) w/35 settle* | Plaintiffs |
| 122. | (Appian OR APPN) w/35 mediat* | Plaintiffs |
| 123. | Appian w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual* OR verdict) | Defendants |
| 124. | (Appian OR APPN) w/35 (MBO) | Plaintiffs |
| 125. | (Appian OR APPN) w/35 ("management based objective" OR "management based objectives" OR "management-based objective" OR "management-based objectives") | Plaintiffs |
| 126. | (Salesforce OR SFDC OR ServiceNow OR IBM) w/35 (MBO) | Plaintiffs |
| 127. | (Salesforce OR SFDC OR ServiceNow OR IBM) w/35 ("management based objective" OR "management based objectives" OR "management-based objective" OR "management-based objectives") | Plaintiffs |
| 128. | (Rand* w/3 Dillon) w/35 (Lombardi OR IBM) | Plaintiffs |
| 129. | (David w/3 Watson) w/35 (Salesforce OR SFDC) | Plaintiffs |
| 130. | Appian w/10 (media or journalist* or investor* or shareholder* or bank* or analyst* or (public w/2 | Defendants |

| Number | Term[10] | Proposed By |
|---|---|---|
|  | relation*) or FT or "Financial Times" or WSJ or "Wall Street Journal" or "The Economist" or "Washington Post" or NYT or "New York Times" or Newsweek) |  |
| 131. | Appian w/10 (Barclays or "Benchmark Company" or Canaccord or "CFRA Research" or Citigroup or "Credit Suisse" or "D.A. Davidson" or Goldman or "JMP Securities" or "J.P. Morgan" or KeyBanc or "Loop Capital" or Macquarie or Morningstar or "Needham & Company" or Oppenheimer or "RBC Capital" or "Rosenblatt Securities" or SMBC or Truist or Wedbush or "William Blair") | Defendants |
| 132. | ((Board or "Audit Committee") w/10 (agenda* OR minutes OR presentation* OR materials*)) AND (Appian w/10 (complaint* OR defense* OR trial* OR depos* OR damage* OR jury OR appeal* OR litigation* OR expen*)) | Defendants |
| 133. | ((Board or "Audit Committee") w/10 (agenda* OR minutes OR presentation*)) AND ("without merit" OR (Pega* w/5 competitive w/5 market*) OR (notice! w/5 misappropriat!) OR "strong defenses" OR "code of conduct") | Defendants |
| 134. | ("Code of conduct") AND (Appian OR APPN) | Plaintiffs |
| 135. | ("Code of conduct") AND (violat* OR investigat*) | Plaintiffs; modified by Defendants |
| 136. | "code of conduct" w/10 (revise OR update) | Defendants |
| 137. | "code of conduct" w/10 ("ethical conduct" OR "confidential information" OR "illegal or questionable means" OR reporting OR deviation OR "prompt action" OR "disciplinary action") | Defendants |
| 138. | ("Code of conduct") AND (Baril* OR Bessman* OR Nguyen* OR Sarada* OR Bhowmick*OR Potluri* OR Vaddem* OR Kamaraju* OR Davis* OR Zhang*) | Plaintiffs |
| 139. | (Appian OR APPN) AND "Disclosure Committee" | Plaintiffs |
| 140. | "disclosure committee" w/10 (meeting* OR agenda* OR presentation* OR material*) | Defendants |
| 141. | (Complaint or report) AND (Appian w/10 (complaint* OR defense* OR trial* OR depos* OR damage* OR jury OR appeal* or litigation*)) | Defendants |
| 142. | (Complaint or report) AND (Appian w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual* OR verdict)) | Defendants |

| Number | Term[10] | Proposed By |
|---|---|---|
| 143. | (Complaint or report) AND (("without merit" OR (Pega* w/5 competitive /5 market*) OR (notice! w/5 misappropriat!) OR "strong defenses" OR "code of conduct")) | Defendants |
| 144. | investigat* w/10 ("code of conduct" OR "alias" OR reprimand* or block*)[11] | Defendants |
| ~~145.~~ | ~~("Code of conduct") AND (violat* OR investigat*)[12]~~ | ~~Plaintiffs~~ |
| 146. | "Zou" and not "Zhou" | Plaintiffs[13] |
| 147. | "The Other Matt" | Plaintiffs |
| 148. | stock* W/10 (price OR fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR valu* OR "market cap" OR "market capitalization") | Plaintiffs[14] |
| 149. | ((share* OR securities) w/5 (price or valu*)) w/10 (fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR "market cap" OR "market capitalization") | Plaintiffs[15] |
| 150. | (Appian OR APPN OR litigation OR "legal proceeding*" OR lawsuit OR "loss contingen*" OR verdict OR "jury trial" or Virginia OR Fairfax OR VA OR VCCA or VUTSA or compet*) AND [(quarter* OR annual* OR investor* OR earning* OR Q1* OR Q2* OR Q3* OR Q4* OR FY19 OR FY20 OR FY21 OR FY22 OR "FY 1*" OR "FY2*" OR "full year" OR "fiscal year") AND (conference* OR call* OR update* OR announc*)] | Plaintiffs |

## II.    Mobile Data Production

Defendants propose to review mobile data from select custodians by targeting recipients and date ranges as specified below.

        a)      Custodians: Alan Trefler, Kenneth Stillwell
            (1)      Date Restriction: May 29, 2020 through October 26, 2022
            (2)      Recipients: Kerim Akgonul; Danielle Albon; Marissa (Foti) Arsenault; Benjamin Baril; Phil Benvenuti; Steve Bixby;

---

[11] The date range for this term is November 1, 2021 to March 15, 2022.

[12] As noted in Defendants' November 17, 2023 correspondence, Term 135 has been revised and Term 145 has been removed.

[13] The date range for this term is May 29, 2020 to July 28, 2020 and February 9, 2022 to March 2, 2022.

[14] The date range for this term is February 15, 2022 to October 26, 2022.

[15] The date range for this term is February 15, 2022 to October 26, 2022.

Cris Morea Balaguer; Nick Collier; Matt Cushing; Carlos Fuentes; Jack Geraghty; Peter Gyenes; Richard Jones; John Kenneally; Efstathios Kouninis; Christopher Lafond; Donald Lancaster; Diane Ledingham; Daniel Nash; Lisa Pintchman Rogers; Sharon Rowlands; Don Schuerman; Tom Sorrentino; Norma Suarez; Warren Suckerman; Leon Trefler; Peter Welburn; Larry Weber