# Exhibit A

**WILMERHALE**

November 17, 2023

**Robert Kingsley Smith**

+1 617 526 6759 (t)
+1 617 526 5000 (f)
robert.smith@wilmerhale.com

**BY EMAIL**

Christopher Stewart
Robbins Gellar Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
cstewart@rgrdlaw.com

Re:   *In re Pegasystems Inc. Securities Litigation*, No. 1:22-cv-11220-WGY (D. Mass.)

Counsel:

We write on behalf of Defendants Pegasystems Inc. ("Pegasystems") and Alan Trefler (together with Pegasystems, "Defendants") in response to Plaintiffs' correspondence concerning search terms and custodians dated October 26, 2023 ("Oct. 26, 2023 Letter") and in follow-up to the parties' meet and confer on October 23, 2023.

**A.    Custodians**

1.    Additional Disclosure Committee Members

Plaintiffs reiterated their request that Defendants add as custodians the following eight additional Disclosure Committee members: Danielle Albon, Marissa (Foti) Arsenault, Cris Morera Balaguer, Nick Collier, Carlos Fuentes, Jack Geraghty, Donald Lancaster, and Daniel Nash.  Oct. 26, 2023 Letter at 1-2.  However, following discussion, Plaintiffs now limit their request to the quarter(s) during which each individual served on the Disclosure Committee.  *Id.* at 2.

As Defendants have repeatedly explained, none of these eight individuals had responsibility for the disclosures at issue in this case.  It is therefore unlikely that any of them would have non-duplicative, responsive documents concerning the Disclosure Committee or the development of the disclosures at issue in light of the custodians that the Parties have already agreed upon.  In spite of the additional burden and cost imposed by review of material from eight additional custodians and the low likelihood that such a review would identify any relevant, non-duplicative material, in the spirit of compromise, Defendants agree to add the eight additional Disclosure Committee members as custodians for the period of time that they served on the Disclosure Committee and to search their materials for documents and communications related to their service on the Disclosure Committee, as noted in Defendants' Revised Discovery Plan attached as Appendix A and consistent with Defendants' construal of Request No. 23.[1]

---

[1] Request No. 23 seeks "All documents concerning meetings of any disclosure group or disclosure committee (including, without limitation, the "Disclosure Committee" referenced in the Code of Conduct), including agendas, minutes, notes, reports, and presentations, and documents sufficient to identify the members of any disclosure group

Christopher Stewart

**WilmerHale**

Page 2

2.    Norma Suarez

Plaintiffs restated their request to add Norma Suarez as a custodian based on her role as a "Director" of "Competitive Intelligence" but failed to address the proportionality concerns raised by Defendants in their October 16, 2023 correspondence.  Oct. 26, 2023 Letter at 4.  The parties agree that Ms. Suarez's job title includes the term "competitive intelligence."  Defendants have observed, however, based on their investigation to date, that Ms. Suarez's communications are likely to be duplicative of Mr. Baril's because almost all emails on which Ms. Suarez appears that were produced in the Virginia Litigation also include Mr. Baril.  Oct. 16, 2023 Letter at 5.  Far from being "rank speculation," the overlap between Ms. Suarez and Mr. Baril's communications is evident in the email that Plaintiffs cite to in their Oct. 26, 2023 Letter, in which Ms. Suarez copies in Mr. Baril to the email chain, writing "Please also invite Ben, as he is the Appian expert." PEGA_DMASS_00152483; Oct. 26, 2023 Letter at 4 & n.5.

As with the Disclosure Committee members discussed above, the burden of additional review is not justified in light of the fact that Ms. Suarez's materials are likely duplicative of Mr. Baril's.  Nevertheless, for the sake of compromise, Defendants agree to add Ms. Suarez as a custodian and to search her materials using the same search terms applicable to Mr. Baril, as noted in Defendants' Revised Discovery Plan attached as Appendix A.

3.    Pegasystems In-House Counsel

Finally, Plaintiffs continue to demand that Defendants add Pegasystems's in-house counsel Kevin O'Keefe and Christopher Roche as custodians.  Oct. 26, 2023 Letter at 3.  During the relevant time period, Mr. O'Keefe was an Associate Corporate Counsel at Pegasystems and Mr. Roche was Lead Counsel, Americas.  Plaintiffs purport to justify their request for Mr. O'Keefe as a custodian on his verification of certain of Pegasystems's interrogatory responses in the Appian Litigation.  *Id.* at 3-4.  Plaintiffs purport to justify their request for Mr. Roche as a custodian on documents produced by Deloitte that reflect conversations between Mr. Roche and Deloitte concerning the Virginia Litigation.  *Id.* at 3.

Plaintiffs' assertion that Defendants have said "that in-house counsel can never be ESI custodians" is inaccurate.  *Id.*  As Plaintiffs know, Defendants have already agreed to add Pegasystems's General Counsel as an ESI custodian on a limited number of topics.  Instead, Defendants correctly pointed out that courts regularly exclude in-house counsel as ESI custodians because of the burdens associated with logging their documents.  Oct. 16, 2023 Letter at 4.  While Plaintiffs identify one-off decisions from the District of Kansas and the Southern District of Florida in which an in-house counsel was an ESI custodian, neither of those cases involved, as here, claims premised on a prior litigation where the in-house counsel's role was primarily focused on the litigation.  *See Hall v. Life Care Ctrs. of Am., Inc.*, 2018 WL 5295892 (D. Kan. Oct. 25, 2018)

---

or disclosure committee in place during the Relevant Period."

Christopher Stewart
Page 3

WILMERHALE

(employment discrimination dispute); *ADT LLC v. Vivint, Inc.*, 2017 WL 11632812, at \*2 (S.D. Fla. Dec. 1, 2017 (deceptive sales practices).

The relevant inquiry here is not whether an in-house counsel *could* be an ESI custodian but whether Pegasystems's in-house counsel *should* be ESI custodians after weighing the burden of reviewing and logging for privilege against the likelihood that they would have non-duplicative, non-privileged, relevant material. This is exactly what the court did in *Sprint Communications Co. L.P. v. Charter Communications, Inc.*, 2019 WL 3369659, at \*1 (D. Del. July 15, 2019), which Plaintiffs mischaracterize in their letter. Plaintiffs suggest that the court in *Sprint* excluded an in-house counsel as an ESI custodian because there was only a "mere possibility" that he would have relevant documents. Oct. 26, 2023 Letter at 3 n.4. That is incorrect. *Sprint* was a patent infringement case in which the plaintiff sought to designate the defendant's "in-house patent counsel" as an ESI custodian. 2019 WL 3369659, at \*1. Just as Plaintiffs argue here that the relevance of discovery from Mr. O'Keefe and Mr. Roche is "beyond dispute," the plaintiff in *Sprint* argued that the relevance of the information sought from defendant's in-house patent counsel was "undisputed." *Id.* Despite the clear relevance of in-house patent counsel to a patent infringement case, the court weighed the burden such discovery would impose on the defendant and concluded that any relevance was outweighed by the "\$100,000 or more [the defendant] would have to spend on creating a privilege log" if the in-house patent counsel was designated as an ESI custodian. *Id.*[2]

Despite this case law and Rule 26's directive that the scope of discovery includes only that which is "proportional to the needs of the case," Plaintiffs ignore the substantial burden that review and logging of Mr. O'Keefe and Mr. Roche's communications would impose on Defendants. Mr. O'Keefe and Mr. Roche held legal roles between May 2020 and October 2022 that demonstrate that substantially all of their communications that would hit on Plaintiffs' search terms would be privileged. Specifically, Mr. O'Keefe and Mr. Roche were in-house litigation counsel. Both were in near constant communication with internal stakeholders and outside counsel about the litigation as the case went through discovery, including over 40 depositions, a plea in bar trial, and a merits trial. By way of example, just the single term ((Appian OR APPN) w/35 case\*) returns over 17,000 of Mr. Roche's documents. The burden and cost of reviewing and logging what would amount to close to full mailboxes for Mr. O'Keefe and Mr. Roche for the relevant period is excessive and clearly disproportionate to the needs of the case. The cost of just preparing a log with tens of thousands of entries could easily exceed \$500,000 with little to no benefit to any party. Accordingly, Defendants do not agree to add Mr. O'Keefe or Mr. Roche as custodians.

---

[2] The court in *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 07-489, 2009 WL 3443563, at \*9-10 (D.D.C. Oct. 23, 2009) conducted a similar analysis concerning the review of hardcopy documents belonging to in-house counsel and limited the scope of the review of hard copy documents based on burden concerns. Only hardcopy documents were at issue in the *In re Rail Freight* decision because, unlike here, the parties had reached an agreement to use in-house lawyers as custodians that involved the application of a privilege screen whereby any document hitting on terms such as "work product" and "privilege" would be "logged automatically" as presumptively privileged and "not … reviewed further." *Id.* at 10.

Christopher Stewart
Page 4

**WILMERHALE**

### B.  Search Terms

#### 1.  Search Term Methodology

The Parties continue to dispute whether search terms for specific subject matter should be applied to all custodians indiscriminately or tailored to specific custodians relevant for subject matter that is targeted by each search term.  Plaintiffs' position, which they only first expressed after receiving a draft of Defendants' discovery plan, is that "all terms should be run across all custodians."  Oct. 26, 2023 Letter at 15.  Defendants' position is that search terms should be applied to the custodians for which the terms are relevant based on a custodians' position and likely area of expertise or knowledge.

Apart from being the standard approach in complex litigation and being anchored in Rule 26's requirements that Plaintiffs be entitled to only that discovery which is relevant and proportional to the needs of the case,[3] there are two important reasons why this is the right approach for this case.

*First*, this tailored approach avoids needlessly reviewing documents known to be beyond the scope of what the Parties have agreed is responsive.  Request No. 14 is a representative example.  Request No. 14 seeks documents concerning statements made by "members of Senior Management" to certain parties, such as media and analysts.  Defendants construed "Senior Management" for purposes of Request No. 14 to mean Alan Trefler, Ken Stillwell, Lisa Pintchman Rogers, and Peter Welburn.  Aug. 21, 2023 Letter at 3.  Running search terms designed to capture discussions ***these*** four individuals had with media and analysts against twenty other custodians requires wading through documents beyond the scope of what the Parties have agreed is responsive.  Doing so needlessly burdens Defendants and is not proportional to the needs of this case.

*Second*, this tailored approach tempers the extremely broad search terms Plaintiffs have proposed and limits Defendants' review of irrelevant documents or documents that, although technically relevant, do not materially add to the discovery Defendants will already be providing and are therefore not proportional to the needs of the case.  Plaintiffs have proposed 135 search terms, including nearly 100 that contain the word Appian.  These terms include search strings as broad as "(Appian OR APPN) w/35 claim*," "(Appian OR APPN) w/35 documentation," "(Appian OR APPN) w/35 confidential," or "(Appian OR APPN) AND (quarter OR annual OR earnings) AND (call OR update OR announc*)."  But because Appian is a Pegasystems competitor, it would not be surprising that custodians across Pegasystems would have documents concerning Appian that have no bearing on this case.  Indeed, keeping abreast of what or how competitors are doing—whether by subscribing to news alerts or otherwise—is sound business practice.  There is no need for Defendants to review for every custodian every document hitting on the word Appian and other generic terms that could appear in various contexts entirely

---

[3] *See* Fed. R. Civ. P. 26(b)(2) (discovery sought must be "proportional to the needs of the case" and court may limit "unreasonably cumulative or duplicative" discovery).

Christopher Stewart
Page 5

WILMERHALE

irrelevant to this case. By tailoring search terms to specific custodians, the Parties can reach agreement on a discovery plan that is proportional to the needs of the case.

*Third*, this tailored approach also reduces the disproportionate burden on Defendants on having to review and log the untold number of documents in Mr. Cushing's custodial files that are indisputably protected from disclosure by the attorney-client privilege and work product doctrines. As was the case for Mr. Roche and Mr. O'Keefe, Mr. Cushing was in near constant communication with internal stakeholders and outside counsel about the Appian Litigation as the case went through discovery, a plea in bar trial, and a merits trial.  And although Defendants have agreed to Mr. Cushing as a custodian given his role as Secretary of the Board and Chief Commercial Officer, running searches for terms such as (Appian OR APPN) w/35 case*) would return thousands of indisputably privilege documents that would require logging, which is excessive and clearly disproportionate to the needs of the case.

Appended hereto as Appendix A is Defendants' Revised Discovery Plan, which sets forth proposed custodians, search terms, and date ranges alongside Defendants' response as to those requests for which Defendants have agreed to conduct ESI searches.  As noted below, Defendants have agreed to each of Plaintiffs' terms listed below, except in the case of one term which is agreed to with a date limitation.

> 2.  <u>145.  ("Code of conduct") AND (violat* OR investigat*)</u>

Plaintiffs initially proposed ("Code of conduct") AND (violat* OR investigat*). Defendants refined the term to be ("Code of conduct") w/35 (violat* OR investigat*).  With no explanation, Plaintiffs now demand that Defendants revert to the "AND" Boolean operator rather than a proximity limiter.  Oct. 26, 2023 Letter at 4.  Defendants' proposal was in line with the vast majority of other agreed upon terms, which utilize within 35 proximity limiters.  Use of the "AND" is not necessary here and pulls in irrelevant documents such as vendor attestations, customer agreements, and copies of Pegasystems's Global Travel and Expense Policy.  Use of the "AND" will also increase Defendants' burden and expense in conducting this review.  However, in order to bring an end to this protracted negotiation, Defendants will compromise and revise Term 135 to use an "AND" Boolean operator rather than a proximity limiter as shown in Defendants' Revised Discovery Plan attached as Appendix A.

> 3.  <u>146.  "Zou" and not "Zhou"</u>

While Defendants appreciate that Plaintiffs have proposed a refinement to the term "Zou," Plaintiffs' proposal is not sufficient to limit the burden of review associated with this term. Youyoung Zou was a party to the Virginia Litigation.  His name therefore appears on every document that bears the Virginia Litigation case caption.  Defendants will agree to the term ("Zou" and not "Zhou"), but only if the date range is appropriately limited to reduce the burden of review. Defendants anticipate that Plaintiffs are interested in internal discussions at Pegasystems concerning Mr. Zou's consulting work that may have occurred after Pegasystems first received Appian's complaint and again around the time of Pegasystems's disclosure of the litigation while

Christopher Stewart                                                    WILMERHALE
Page 6

Pegasystems was developing the applicable disclosure.  Accordingly, Defendants will agree to the term ("Zou" and not "Zhou") with the date limitations of May 29, 2020 to July 28, 2020 and February 9, 2022 to March 2, 2022, as reflected in Defendants' Revised Discovery Plan attached as Appendix A.

    4.   <u>147. "The other Matt"</u>

Plaintiffs continue to press for "the other Matt" as a search term.  As Defendants have repeatedly explained, "the" and "other" are noise words in Relativity that cause the search to be run as "Matt."  This search returns *every* mention of Matt Cushing or his email address regardless of how tangentially related to this case, as well as *every* mention of any employee at Pegasystems named Matt.  Defendants have worked with our e-discovery vendor to develop a custom solution to index the terms "the" and "other" to permit the term "the other Matt" to be run as written.  This is a highly unusual accommodation; however, Defendants are undertaking these steps in order to conclude discussions about search terms.  This term is reflected in Defendants' Revised Discovery Plan attached as Appendix A.

    5.   <u>148. stock* w/10 (price OR fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR valu* OR "market cap" OR "market capitalization"); 149. ((share* OR securities) w/5 (price or valu*)) w/10 (fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR "market cap" OR "market capitalization")</u>

Defendants understand that Plaintiffs have proposed Terms 148 and 149 to reflect ESI searches for material potentially responsive to Request No. 20.[4]  Defendants agree to run these terms for the proposed period of February 15, 2022 to October 26, 2022, and this is reflected in Defendants' Revised Discovery Plan attached as Appendix A.

    6.   <u>150. (Appian OR APPN OR litigation OR "legal proceeding*" OR lawsuit OR "loss contingen*" OR verdict OR "jury trial" or Virginia OR Fairfax OR VA OR VCCA or VUTSA or compet*) AND [(quarter* OR annual* OR investor* OR earning* OR Q1* OR Q2* OR Q3* OR Q4* OR FY19 OR FY20 OR FY21 OR FY22 OR "FY 1*" OR "FY2*" OR "full year" OR "fiscal year") AND (conference* OR call* OR update* OR announc*)]</u>

Defendants continue to contend that this term is overly broad and not reasonably tailored to identify responsive information. Nevertheless, Defendants agree to this term as revised, which is reflected in Defendants' Revised Discovery Plan attached as Appendix A.

---

[4] Request No. 20 seeks "All documents concerning price movements in Pegasystems common stock on the following dates, including all documents concerning the possible or actual factors or reasons that led to any change in the price of Pegasystems common stock on the following dates: (a) February 17, 2022; (b) May 10, 2022; (c) May 11, 2022; (d) September 16, 2022; and (e) September 19, 2022."

Christopher Stewart                                              **WilmerHale**
Page 7

### C.  Mobile Phones

Plaintiffs propose "at least at this point" expanding the scope of mobile data searches to include an essentially unlimited number of additional recipients for both Mr. Trefler and Mr. Stillwell.  Letter at 15.  Their proposal includes sixteen ESI custodians, six Board members, and an unidentified number of "employees of Deloitte."  *Id*.  To the extent they can be identified, Defendants will include within the scope of mobile searches the current agreed-upon list of ESI custodians, current Board members, and Warren Suckerman of Deloitte.  The scope of mobile data searches that Defendants agree to is reflected in the attached Revised Discovery Plan.

### D.  Request Nos. 16 and 17[5]

With respect to Request No. 16 and Plaintiffs' request for "documents concerning . . . suspected violations" of the Code of Conduct, Defendants agreed on October 16 to search for and produce documents or communications dated between May 29, 2020 and October 26, 2022 discussing whether an action violated the clauses of the Code of Conduct challenged in ¶¶ 151 to 157 of the Amended Complaint.  Oct. 16, 2023 Letter at 9-10.  This was Defendants' attempt to identify objective criteria for an inherently subjective category of documents: "documents concerning . . . suspected violations."  That is, Defendants' proposal identified as a "suspected violation" an express question regarding whether action taken by a person or persons violated specific provisions of the Code of Conduct; and a document would "concern" that "suspected violation" only if it contained the express question, because Defendants would have no other way of knowing whether a document or communication constitutes or evidences a "suspected violation."  It was also intended to capture the only concrete example Plaintiffs have provided of the documents they were looking for: "an email that references whether a particular action violated the code of conduct."  Oct. 9, 2023 Letter at 3.

Plaintiffs now say the "dispute is resolved," but only if Defendants agree to provide documents "'concerning' . . . suspected violations."  Oct. 26, 2023 Letter at 16.  But this response only restates Plaintiffs' vague and ambiguous Request No. 16 and does nothing to clarify what it is Defendants are supposed to identify as "documents concerning . . . suspected violations."  If Plaintiffs define "suspected violation" as something other than an express question regarding whether action taken by a person or persons violated specific provisions of the Code of Conduct, Plaintiffs have not said so.  And if Plaintiffs intend Defendants to search for documents "evidencing" or "constituting" such suspected violation—*i.e.*, the definition of "concerning" to

---

[5] Request No. 16 seeks "Copies of Pegasystems' Code of Conduct in place throughout the Relevant Period, all documents concerning any proposed or actual changes to the Code of Conduct during the Relevant Period, and all documents concerning any violations or suspected violations of Pegasystems' Code of Conduct."  Request No. 17 seeks "All documents concerning any concerns, complaints, or issues raised with Pegasystems' audit committee, internal audit department, members of a disclosure committee (including, without limitation, the "Disclosure Committee" referenced in the Code of Conduct), Senior Management, or other divisions or individuals responsible for fielding, processing, or responding to employee concerns or complaints, regarding: (a) the Virginia Action; (b) the Appian Complaints or conduct alleged therein; and (c) Pegasystems' financial reporting or disclosures."

Christopher Stewart
Page 8

WILMERHALE

which Plaintiffs point—they have articulated no objective criteria by which Defendants are supposed to identify those documents. Do Plaintiffs expect Defendants to determine, for the first time when reviewing documents for production, whether a document itself evidences or constitutes an action contrary to the Code of Conduct? Do Plaintiffs expect Defendants to first identify documents that discuss whether an action violated the Code of Conduct, and then go back and find all documents that evidences or constitutes the action discussed as potentially violating the Code of Conduct? Plaintiffs do not say.

At bottom, Plaintiffs have never articulated any document that would "concern[] . . . suspected violations" of the Code of Conduct other than "an email that references whether a particular action violated the code of conduct." Oct. 9, 2023 Letter at 3. That failure suggests either that Plaintiffs cannot articulate an objective standard of what would be responsive, or that no other documents exist. Absent that articulation, no change to the responsiveness standard articulated in Defendants' October 16 correspondence is warranted.

With respect to Request No. 17, Defendants agree to search for and produce in response to Request No. 17 documents or communications dated between May 29, 2020 and October 26, 2022 discussing whether an action regarding (i) the Virginia Action, (ii) the allegations within the four corners of the Virginia Action complaint, or (iii) Pegasystems's disclosures or accrual decisions concerning the Virginia Action complied with or violated any laws, rules, guidelines, or regulations, regardless of whether the discussion about that particular action stemmed from a complaint filed through Pegasystems's formal channels for submitting complaints, or outside of those formal channels such as an email or other communication to Pegasystems's audit committee, internal audit department, members of a disclosure committee, Mr. Trefler, Mr. Stillwell, or other individuals who may have responsibility for fielding, processing, or responding to employee concerns or complaints.

Search terms proposed by Plaintiffs on September 22, 2023 that relate to Request Nos. 16 and 17 are already reflected in Defendants' Revised Discovery Plan appended at Appendix A.

E. **Documents Concerning Pegasystems's Investigation Into Appian's Claims**

Although the Parties appear to agree regarding the search and review Defendants will conduct for "documents concerning Pegasystems's 'investigation' into Appian's claims," Plaintiffs suggest that Defendants have placed that "investigation" at issue and have therefore improperly used the attorney client privilege as both a sword and a shield. Plaintiffs' argument is, at best, based on a gross misunderstanding of Defendants' motion to dismiss. Defendants argued that Pegasystems's statement that the Virginia Litigation was "without merit" was an inactionable statement of opinion. Mot. to Dismiss at 13. That was in part because, Defendants observed, "Plaintiffs … *have not pleaded facts* suggesting that Pega did not undertake a reasonable investigation into the merits of the Virginia Litigation or that Pega's statements concerning the litigation failed to take into account any information learned from any such investigation," Mot. to Dismiss at 13 n.18 (emphasis added)—one of the means for pleading an actionable statement

Christopher Stewart
Page 9

**WILMERHALE**

of opinion.  Nowhere did Defendants refer to any specific investigation, let alone the investigation about which Plaintiffs are seeking documents.  Plaintiffs' attempt to contort an observation about the absence of ***pleaded facts*** in the Amended Complaint into an argument that Defendants have somehow placed at issue a specific investigation into which Plaintiffs seek discovery is meritless.

Best regards,

*/s/ Robert Kingsley Smith*

Robert Kingsley Smith

cc:    Daniel W. Halston, Daniel.Halston@wilmerhale.com
       Erika M. Schutzman, Erika.Schutzman@wilmerhale.com

# Appendix A

**Defendants Pegasystems Inc.'s and Alan Trefler's Proposed Document Discovery Plan for Requests for Production Nos. 1, 8–11, 12–14, 16–17, 20, 22-23**

This document describes the terms of the plan for document discovery that Defendants Pegasystems Inc. ("Pegasystems") and Alan Trefler (collectively, "Defendants") propose to use to satisfy certain of their document production obligations in response to Plaintiffs' First Request for Production of Documents to Defendants dated June 2, 2023 ("Requests"). Defendants reserve the right to modify this Plan, including to narrow or remove custodians or search terms should additions requested by Plaintiffs render the search and review conducted by Defendants unreasonable, unduly burdensome, or not proportional to the needs of this case.

This Plan is subject to, and does not waive or supersede, the objections to and construction of Plaintiffs' Requests (as supplemented by correspondence dated August 21, September 5, and September 18, October 16, and November 17, 2023) as set forth in Defendants' Responses and Objections to Plaintiffs' First Request for Production of Documents, which are incorporated herein by reference.

This Plan is further subject to the review of hit reports by all Parties and an assessment of whether the search terms and custodians listed herein are proportional to the needs of the case. Defendants reserve all rights to make modifications to this Plan to reduce any burden to otherwise render it proportional to the needs of the case.

## I.    ESI Production (Excluding Mobile Data)

Defendants propose to conduct ESI filtering and review through the use of search terms, custodians, and date ranges as specified below. Sources of ESI to which these search terms will apply include: e-mails and short-message format communications from WebEx and Teams. In addition, for Mr. Trefler and Mr. Stillwell, Defendants will apply these search terms to electronic documents collected from their personal file storage locations OneDrive.[1]

Where Defendants' response to a Request contains both an agreement to conduct ESI filtering and review and a reasonable search for specific documents, this Plan describes only the ESI filtering and review component. As separately agreed upon, Defendants will not withhold a non-privileged document that hits on an agreed-to search term if that document is responsive to a Request, as construed by Defendants in their Responses and Objections to Plaintiffs' Requests and subsequent meet and confers between the Parties, even if Defendants do not agree to employ search terms to identify and produce documents in response to that Request.

### A.    Custodians

| Name | Title | Terms |
|------|-------|-------|
| Kerim Akgonul | Chief Product Officer | 1-129, 144, 146-147 |

---

[1] Defendants separately will search for responsive documents in Pegasystems' centrally stored files and other sources of ESI; however, those searches will be conducted without search terms consistent with Defendants' Responses and Objections.

1

| Name | Title | Terms |
|---|---|---|
| Danielle Albon[2] | Senior Director and Revenue Controller | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| Marissa (Foti) Arsenault[3] | Revenue Manager | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| Benjamin Baril | Director, Office of the Chief Technology Officer | 1-129, 144, 146-147 |
| Phil Benvenuti | Senior Director of Internal Audit | 35-36, 134-138, 141-143 |
| Steve Bixby | VP, Product Management | 1-129, 146-147 |
| Cris Morea Balaguer[4] | Former Sr. Director, Tax | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| Nick Collier[5] | Director, Finance EMEA | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| Matt Cushing | VP, Chief Commercial Officer & General Counsel | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 132-143, 150 |
| Carlos Fuentes[6] | VP, Chief Information Security Officer | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| Jack Geraghty[7] | VP, Financial Planning & Analysis | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| John Kenneally | Senior Director, Finance and Treasury | 1-2, 12, 27-28, 32-36, 42, 87-88, 108-109, 123, 139-143, 148-150 |
| Efstathios Kouninis | Chief Accounting Officer and VP, Finance | 1-2, 12, 27-28, 32-36, 42, 87-88, 108-109, 123, 132-144, 148-150 |
| Donald Lancaster[8] | Senior Corporate Counsel | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |

[2] Searches of Ms. Albon's material will be limited to October 1, 2020 to September 30, 2021.

[3] Searches of Ms. Arsenault's material will be limited to April 1, 2020 to September 30, 2020.

[4] Searches of Ms. Balaguer's material will be limited to October 1, 2020 to September 30, 2021.

[5] Searches of Mr. Collier's material will be limited to April 1, 2020 to September 30, 2021.

[6] Searches of Mr. Fuentes' material will be limited to January 1, 2021 to December 31, 2022.

[7] Searches of Mr. Geraghty's material will be limited to April 1, 2020 to September 30, 2021.

[8] Searches of Mr. Lancaster's material will be limited to April 1, 2020 to September 30, 2021.

| Name | Title | Terms |
|---|---|---|
| Daniel Nash[9] | Vice President, Finance | 1-2, 12, 27-28, 32-34, 36, 42, 87-88, 108-109, 123, 139-143, 150 |
| Lisa Pintchman Rogers | Vice President, Corporate Communications | 1-131, 148-150 |
| Don Schuerman | Chief Technology Officer and VP, Marketing and Technology | 1-129, 144, 146-147 |
| Tom Sorrentino | Senior Director and Corporate Controller | 1-2, 12, 27-28, 32-36, 42, 87-88, 108-109, 123, 139-143, 148-150 |
| Kenneth Stillwell | Chief Operating Officer and Chief Financial Officer | 1-144, 146-150 |
| Norma Suarez | Director of Competitive Intelligence, Marketing & AI Decisioning | 1-129, 144, 146-147 |
| Alan Trefler | Founder and Chief Executive Officer | 1-144, 146-150 |
| Leon Trefler | Chief of Clients and Markets | 1-129, 144, 146-147 |
| Peter Welburn | VP, Investor Relations and Corporate Development | 1-131, 148-150 |
| PegaCompliance@pega.com | General Compliance Email | 141-143 |

## B.    Search Terms

The following search terms relate to Request Nos. 1, 8, 9, 10, 11, 12, 13, 14, 16, 17, 20, 22, and 23:

- Defendants have construed Request No. 1 to call for documents concerning the Virginia Action dated May 29, 2020 to October 26, 2022.

- Defendants have construed Request Nos. 8 and 9 to call for communications with Deloitte concerning the Virginia Action, the Appian Complaints, misstatements or omissions alleged in the Complaint, and Pegasystems' accounting for the Virginia Action, including legal expenditures associated with the defense of the Virginia Action, dated May 29, 2020 to October 26, 2022.

- Defendants have construed Request No. 10 to call for documents concerning Pegasystems' current or quarterly disclosures to the SEC regarding legal proceedings or loss contingencies dated between May 29, 2020 and October 26, 2022, including filings on Forms 10-K, 10-Q, and 8-K, and earnings calls.

- Defendants have construed Request No. 12 to call for communications with shareholders (including any institutional investors), analysts, or representatives of print media publications concerning Pegasystems' financial reporting, accounting, the Virginia Action, or the Appian Complaints dated from May 29, 2020 to October 26, 2022.  Defendants have construed the term "analysts" to mean the following: Barclays Capital, Citigroup Global

---

[9] Searches of Mr. Nash's material will be limited to July 1, 2021 to December 31, 2022.

Markets, D.A. Davidson & Co., Goldman Sachs, JMP Securities, J.P. Morgan, KeyBanc, Loop Capital, Macquarie, Morningstar, RBC Capital Markets, Rosenblatt Securities, Truist, Wedbush Securities, William Blair, The Benchmark Company, Canaccord Genuity, CFRA Research, Credit Suisse Securities, Needham & Company, Oppenheimer & Co., and SMBC Nikko Securities.  Defendants have construed the term "print media" to mean traditional print publications, such as *The New York Times*, *The Washington Post*, and *Newsweek*.

- Defendants have construed Request No. 13 to call for print media coverage of the Virginia Action or the Appian Complaints, or the impact of the Virginia Action and Appian Complaints on Pegasystems dated between May 29, 2020 and October 26, 2022.

- Defendants have construed Request No. 14 to call for documents concerning statements made by Alan Trefler, Ken Stillwell, Lisa Pintchman Rogers, or Peter Welburn to print media, investors, analysts, or public relations firms concerning the Virginia Action or the Appian Complaints between May 29, 2020 and October 26, 2022. Defendants have construed the term "analysts" to have the same meaning as in Request No. 12.

- Defendants have construed Request No. 16 to call for (i) documents concerning the drafting of the portions of the Code of Conduct challenged in the Complaint dated between May 29, 2020 and October 26, 2022; (ii) "confirmed violations" of Pegasystems' Code of Conduct between May 29, 2020 and October 18, 2022 that relate the portions of the Code of Conduct challenged in the Complaint; and (iii) documents or communications dated between May 29, 2020 and October 26, 2022 discussing whether an action violated the clauses of the Code of Conduct challenged in ¶¶ 151 to 157 of the Complaint.

- Defendants have construed Request No. 17 to call for documents or communications dated between May 29, 2020 and October 26, 2022 discussing whether an action regarding (i) the Virginia Action, (ii) the allegations within the four corners of the Virginia Action complaint, or (iii) Pegasystems' disclosures or accrual decisions concerning the Virginia Action complied with or violated any laws, rules, guidelines, or regulations, regardless of whether the discussion about that particular action stemmed from a complaint filed through Pegasystems' formal channels for submitting complaints, or outside of those formal channels such as an email or other communication to Pegasystems' audit committee, internal audit department, members of a disclosure committee, Mr. Trefler, Mr. Stillwell, or other individuals who may have responsibility for fielding, processing, or responding to employee concerns or complaints.

- Defendants have construed Request No. 20 to call for documents concerning price movements in Pegasystems common stock on February 17, May 10, May 11, September 16, and September 19, 2022, including documents concerning the factors contributing to the price movement.

4

- Defendants have construed Request No. 22 to call for correspondence concerning the non-privileged final minutes, agendas, and formal presentation materials from meetings of the Pegasystems Board of Directors or of Pegasystems' Audit Committee that took place between May 29, 2020 to October 26, 2022 concerning the Virginia Action, the disclosure of the Virginia Action, an accrual for the Virginia Action, misstatements or omissions alleged in the Complaint (unless dismissed by the Court's Order on the Motion to Dismiss), or the SEC filings in which the misstatements or omissions alleged appeared.

- Defendants have construed Request No. 23 to call for documents concerning meetings of the Disclosure Committee referenced in Pegasystems' Code of Conduct that took place between May 29, 2020 and October 26, 2022.

| Number | Term[10] | Proposed By |
|--------|----------|-------------|
| 1. | (10-K or 10-Q or 8-K) w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual*) | Defendants |
| 2. | ("Earnings Call" or script) w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual*) | Defendants |
| 3. | Youyong | Plaintiffs |
| 4. | Youyoung | Plaintiffs |
| 5. | zouyyong@yahoo.com | Plaintiffs |
| 6. | "Project Crush" | Plaintiffs |
| 7. | "understanding appian" | Plaintiffs |
| 8. | "Appian consultant" | Plaintiffs |
| 9. | "going to call him matt" | Plaintiffs |
| 10. | "questionable means to acquire" | Plaintiffs |
| 11. | "misrepresenting your identify in hopes of obtaining" | Plaintiffs |
| 12. | "the Company has strong defenses to these claims" | Plaintiffs |
| 13. | "we should never lose against Appian" | Plaintiffs |
| 14. | "can I ping about legality of using" | Plaintiffs |
| 15. | *apowerconsulting.com | Plaintiffs |
| 16. | bbaril@palenciabusinesscenter.com | Plaintiffs |
| 17. | (Andrew* w/3 Power*) | Plaintiffs |
| 18. | (Emily* w/3 Gold*) | Plaintiffs |
| 19. | (Appian OR APPN) AND (Eric w/3 Cole) | Plaintiffs |
| 20. | (Appian OR APPN) AND (Simon w/3 Platt) | Plaintiffs |
| 21. | (Appian OR APPN) AND (Richard w/3 Marshall) | Plaintiffs |
| 22. | (Appian OR APPN) AND (Paul w/3 Pinto) | Plaintiffs |
| 23. | (Appian OR APPN) AND (William w/3 Easttom) | Plaintiffs |
| 24. | (Appian OR APPN) AND (James w/3 Malackowski) | Plaintiffs |
| 25. | (Appian OR APPN) AND ((Judge OR Daniel) w/3 Ortiz) | Plaintiffs |

[10] The date range for these terms is May 29, 2020 to October 26, 2022 unless otherwise stated in this table or as specified for individual custodians.

| Number | Term[10] | Proposed By |
|--------|----------|-------------|
| 26. | (Appian OR APPN) AND ((Judge OR Richard) w/3 Gardiner) | Plaintiffs |
| 27. | (Appian OR APPN) AND "pending litigation" | Plaintiffs |
| 28. | (Appian OR APPN) AND "legal proceedings" | Plaintiffs |
| 29. | (Appian OR APPN) AND "A. Ewe" | Plaintiffs |
| 30. | (Appian OR APPN) AND "A Ewe" | Plaintiffs |
| 31. | (Appian OR APPN) AND (Paul* w/3 Foon*) | Plaintiffs |
| 32. | (Appian OR APPN) AND "Item 103" | Plaintiffs |
| 33. | (Appian OR APPN) AND "ordinary routine litigation" | Plaintiffs |
| 34. | (Appian OR APPN) AND ((topic OR subtopic OR FASB OR ASC) w/10 (450* OR "contingencies")) | Plaintiffs |
| 35. | (Appian OR APPN) AND *deloitte* | Plaintiffs |
| 36. | (To/From/Cc *@deloitte) AND ("without merit" OR (Pega* w/5 competitive w/5 market*) OR (notice! w/5 misappropriat!) OR "strong defenses" OR "code of conduct") | Defendants |
| 37. | (Appian OR APPN) AND ("Organic Living and Wellness" OR*@organiclivingandwellness.com) | Plaintiffs |
| 38. | (Appian OR APPN) AND ("Palencia Business Center" or *@palenciabusinesscenter.com) | Plaintiffs |
| 39. | (Appian OR APPN) AND (Albert w/3 Scii) | Plaintiffs |
| 40. | (Appian OR APPN) AND (Albert w/3 Skii) | Plaintiffs |
| 41. | (Appian OR APPN) AND ("A Skii") | Plaintiffs |
| 42. | (Appian OR APPN) AND (proceedings w/3 "ordinary course") | Plaintiffs |
| 43. | (Appian OR APPN) AND (spy or spies) | Plaintiffs |
| 44. | (Appian OR APPN) AND "Virginia Computer Crimes Act" | Plaintiffs |
| 45. | (Appian OR APPN) AND "Virginia Uniform Trade Secrets Act" | Plaintiffs |
| 46. | (Appian OR APPN) AND VCCA | Plaintiffs |
| 47. | (Appian OR APPN) AND VUTSA | Plaintiffs |
| 48. | (Appian OR APPN) AND Venugopal.sarada@edumithra.co.in | Plaintiffs |
| 49. | (Appian OR APPN) AND vishal.sarada@capgemini.com | Plaintiffs |
| 50. | (Appian OR APPN) w/35 "12 challenges" | Plaintiffs |
| 51. | (Appian OR APPN) w/35 "12challenges" | Plaintiffs |
| 52. | (Appian OR APPN) w/35 "ad damnum" | Plaintiffs |
| 53. | (Appian OR APPN) w/35 "burden of proof" | Plaintiffs |
| 54. | (Appian OR APPN) w/35 "free trial" | Plaintiffs |
| 55. | (Appian OR APPN) w/35 "tear down" | Plaintiffs |
| 56. | (Appian OR APPN) w/35 "trade secret" | Plaintiffs |

6

| Number | Term[10] | Proposed By |
|---|---|---|
| 57. | (Appian OR APPN) w/35 "trade secrets" | Plaintiffs |
| 58. | (Appian OR APPN) w/35 "unjust enrichment" | Plaintiffs |
| 59. | (Appian OR APPN) w/35 "attack plan" | Plaintiffs |
| 60. | (Appian OR APPN) w/35 "battle card" | Plaintiffs |
| 61. | (Appian OR APPN) w/35 "CI brief" | Plaintiffs |
| 62. | (Appian OR APPN) w/35 "CI content" | Plaintiffs |
| 63. | (Appian OR APPN) w/35 "CI Project" | Plaintiffs |
| 64. | (Appian OR APPN) w/35 "CI space" | Plaintiffs |
| 65. | (Appian OR APPN) w/35 "competitive brief" | Plaintiffs |
| 66. | (Appian OR APPN) w/35 "competitive briefing" | Plaintiffs |
| 67. | (Appian OR APPN) w/35 "competitive intelligence" | Plaintiffs |
| 68. | (Appian OR APPN) w/35 "confidential" | Plaintiffs |
| 69. | (Appian OR APPN) w/35 "CRM proposal" | Plaintiffs |
| 70. | (Appian OR APPN) w/35 "damning attack" | Plaintiffs |
| 71. | (Appian OR APPN) w/35 "deep dive" | Plaintiffs |
| 72. | (Appian OR APPN) w/35 "license agreement" | Plaintiffs |
| 73. | (Appian OR APPN) w/35 "license agreements" | Plaintiffs |
| 74. | (Appian OR APPN) w/35 "request for admission" | Plaintiffs |
| 75. | (Appian OR APPN) w/35 "technical brief" | Plaintiffs |
| 76. | (Appian OR APPN) w/35 "technical business brief" | Plaintiffs |
| 77. | (Appian OR APPN) w/35 "technical CI" | Plaintiffs |
| 78. | (Appian OR APPN) w/35 "terms of use" | Plaintiffs |
| 79. | (Appian OR APPN) w/35 "trial terms and conditions" | Plaintiffs |
| 80. | (Appian OR APPN) w/35 action* | Plaintiffs |
| 81. | (Appian OR APPN) w/35 appeal* | Plaintiffs |
| 82. | (Appian OR APPN) w/35 appellate | Plaintiffs |
| 83. | (Appian OR APPN) w/35 battlecard* | Plaintiffs |
| 84. | (Appian OR APPN) w/35 BP3 | Plaintiffs |
| 85. | (Appian OR APPN) w/35 camtasia* | Plaintiffs |
| 86. | (Appian OR APPN) w/35 case* | Plaintiffs |
| 87. | (Appian OR APPN) w/35 claim* | Plaintiffs |
| 88. | (Appian OR APPN) w/35 complaint* | Plaintiffs |
| 89. | (Appian OR APPN) w/35 consultant* | Plaintiffs |
| 90. | (Appian OR APPN) w/35 contractor* | Plaintiffs |
| 91. | (Appian OR APPN) w/35 court* | Plaintiffs |
| 92. | (Appian OR APPN) w/35 damage* | Plaintiffs |
| 93. | (Appian OR APPN) w/35 defense* | Plaintiffs |
| 94. | (Appian OR APPN) w/35 demurrer* | Plaintiffs |
| 95. | (Appian OR APPN) w/35 depos* | Plaintiffs |
| 96. | (Appian OR APPN) w/35 discovery | Plaintiffs |
| 97. | (Appian OR APPN) w/35 documentation | Plaintiffs |
| 98. | (Appian OR APPN) w/35 enjoin* | Plaintiffs |
| 99. | (Appian OR APPN) w/35 exhibit* | Plaintiffs |

| Number | Term[10] | Proposed By |
|---|---|---|
| 100. | (Appian OR APPN) w/35 hearing* | Plaintiffs |
| 101. | (Appian OR APPN) w/35 injunct* | Plaintiffs |
| 102. | (Appian OR APPN) w/35 interrog* | Plaintiffs |
| 103. | (Appian OR APPN) w/35 judgment* | Plaintiffs |
| 104. | (Appian OR APPN) w/35 juries | Plaintiffs |
| 105. | (Appian OR APPN) w/35 juror* | Plaintiffs |
| 106. | (Appian OR APPN) w/35 jury | Plaintiffs |
| 107. | (Appian OR APPN) w/35 (Kforce* OR "K-Force") | Plaintiffs |
| 108. | (Appian OR APPN) w/35 lawsuit* | Plaintiffs |
| 109. | (Appian OR APPN) w/35 litigat* | Plaintiffs |
| 110. | (Appian OR APPN) w/35 merit* | Plaintiffs |
| 111. | (Appian OR APPN) w/35 misappropriat* | Plaintiffs |
| 112. | (Appian OR APPN) w/35 motion* | Plaintiffs |
| 113. | (Appian OR APPN) w/35 proceeding* | Plaintiffs |
| 114. | (Appian OR APPN) w/35 relief | Plaintiffs |
| 115. | (Appian OR APPN) w/35 teardown* | Plaintiffs |
| 116. | (Appian OR APPN) w/35 testif* | Plaintiffs |
| 117. | (Appian OR APPN) w/35 testimony | Plaintiffs |
| 118. | (Appian OR APPN) w/35 transcript* | Plaintiffs |
| 119. | (Appian OR APPN) w/35 trial* | Plaintiffs |
| 120. | (Appian OR APPN) w/35 verdict* | Plaintiffs |
| 121. | (Appian OR APPN) w/35 settle* | Plaintiffs |
| 122. | (Appian OR APPN) w/35 mediat* | Plaintiffs |
| 123. | Appian w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual* OR verdict) | Defendants |
| 124. | (Appian OR APPN) w/35 (MBO) | Plaintiffs |
| 125. | (Appian OR APPN) w/35 ("management based objective" OR "management based objectives" OR "management-based objective" OR "management-based objectives") | Plaintiffs |
| 126. | (Salesforce OR SFDC OR ServiceNow OR IBM) w/35 (MBO) | Plaintiffs |
| 127. | (Salesforce OR SFDC OR ServiceNow OR IBM) w/35 ("management based objective" OR "management based objectives" OR "management-based objective" OR "management-based objectives") | Plaintiffs |
| 128. | (Rand* w/3 Dillon) w/35 (Lombardi OR IBM) | Plaintiffs |
| 129. | (David w/3 Watson) w/35 (Salesforce OR SFDC) | Plaintiffs |
| 130. | Appian w/10 (media or journalist* or investor* or shareholder* or bank* or analyst* or (public w/2 relation*) or FT or "Financial Times" or WSJ or "Wall Street Journal" or "The Economist" or | Defendants |

8

| Number | Term[10] | Proposed By |
|---|---|---|
| | "Washington Post" or NYT or "New York Times" or Newsweek) | |
| 131. | Appian w/10 (Barclays or "Benchmark Company" or Canaccord or "CFRA Research" or Citigroup or "Credit Suisse" or "D.A. Davidson" or Goldman or "JMP Securities" or "J.P. Morgan" or KeyBanc or "Loop Capital" or Macquarie or Morningstar or "Needham & Company" or Oppenheimer or "RBC Capital" or "Rosenblatt Securities" or SMBC or Truist or Wedbush or "William Blair") | Defendants |
| 132. | ((Board or "Audit Committee") w/10 (agenda* OR minutes OR presentation* OR materials*)) AND (Appian w/10 (complaint* OR defense* OR trial* OR depos* OR damage* OR jury OR appeal* OR litigation* OR expen*)) | Defendants |
| 133. | ((Board or "Audit Committee") w/10 (agenda* OR minutes OR presentation*)) AND ("without merit" OR (Pega* w/5 competitive w/5 market*) OR (notice! w/5 misappropriat!) OR "strong defenses" OR "code of conduct") | Defendants |
| 134. | ("Code of conduct") AND (Appian OR APPN) | Plaintiffs |
| 135. | ("Code of conduct") AND (violat* OR investigat*) | Plaintiffs; modified by Defendants |
| 136. | "code of conduct" w/10 (revise OR update) | Defendants |
| 137. | "code of conduct" w/10 ("ethical conduct" OR "confidential information" OR "illegal or questionable means" OR reporting OR deviation OR "prompt action" OR "disciplinary action") | Defendants |
| 138. | ("Code of conduct") AND (Baril* OR Bessman* OR Nguyen* OR Sarada* OR Bhowmick*OR Potluri* OR Vaddem* OR Kamaraju* OR Davis* OR Zhang*) | Plaintiffs |
| 139. | (Appian OR APPN) AND "Disclosure Committee" | Plaintiffs |
| 140. | "disclosure committee" w/10 (meeting* OR agenda* OR presentation* OR material*) | Defendants |
| 141. | (Complaint or report) AND (Appian w/10 (complaint* OR defense* OR trial* OR depos* OR damage* OR jury OR appeal* or litigation*)) | Defendants |
| 142. | (Complaint or report) AND (Appian w/10 ("ASC 450" OR "Item 103" OR "reasonably possible" OR remote OR probable OR contingen* OR accrual* OR verdict)) | Defendants |
| 143. | (Complaint or report) AND (("without merit" OR (Pega* w/5 competitive /5 market*) OR (notice! w/5 | Defendants |

| Number | Term[10] | Proposed By |
|---|---|---|
|  | misappropriat!) OR "strong defenses" OR "code of conduct")) |  |
| 144. | investigat* w/10 ("code of conduct" OR "alias" OR reprimand* or block*)[11] | Defendants |
| ~~145.~~ | ~~("Code of conduct") AND (violat* OR investigat*)[12]~~ | ~~Plaintiffs~~ |
| 146. | "Zou" and not "Zhou" | Plaintiffs[13] |
| 147. | "The Other Matt" | Plaintiffs |
| 148. | stock* W/10 (price OR fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR valu* OR "market cap" OR "market capitalization") | Plaintiffs[14] |
| 149. | ((share* OR securities) w/5 (price or valu*)) w/10 (fall* OR decreas* OR declin* OR drop* OR plummet* OR crash* OR mov* OR "market cap" OR "market capitalization") | Plaintiffs[15] |
| 150. | (Appian OR APPN OR litigation OR "legal proceeding*" OR lawsuit OR "loss contingen*" OR verdict OR "jury trial" or Virginia OR Fairfax OR VA OR VCCA or VUTSA or compet*) AND [(quarter* OR annual* OR investor* OR earning* OR Q1* OR Q2* OR Q3* OR Q4* OR FY19 OR FY20 OR FY21 OR FY22 OR "FY 1*" OR "FY2*" OR "full year" OR "fiscal year") AND (conference* OR call* OR update* OR announc*)] | Plaintiffs |

## II.    Mobile Data Production

Defendants propose to review mobile data from select custodians by targeting recipients and date ranges as specified below.

<ul><li>a)    <u>Custodians</u>: Alan Trefler, Kenneth Stillwell</li></ul>

<ul><li>(1)    <u>Date Restriction</u>: May 29, 2020 through October 26, 2022</li></ul>

<ul><li>(2)    <u>Recipients</u>: Kerim Akgonul; Danielle Albon; Marissa (Foti) Arsenault; Benjamin Baril; Phil Benvenuti; Steve Bixby; Cris Morea Balaguer; Nick Collier; Matt Cushing; Carlos</li></ul>

---

[11] The date range for this term is November 1, 2021 to March 15, 2022.

[12] As noted in Defendants' November 17, 2023 correspondence, Term 135 has been revised and Term 145 has been removed.

[13] The date range for this term is May 29, 2020 to July 28, 2020 and February 9, 2022 to March 2, 2022.

[14] The date range for this term is February 15, 2022 to October 26, 2022.

[15] The date range for this term is February 15, 2022 to October 26, 2022.

Fuentes; Jack Geraghty; Peter Gyenes; Richard Jones; John Kenneally; Efstathios Kouninis; Christopher Lafond; Donald Lancaster; Diane Ledingham; Daniel Nash; Lisa Pintchman Rogers; Sharon Rowlands; Don Schuerman; Tom Sorrentino; Norma Suarez; Warren Suckerman; Leon Trefler; Peter Welburn; Larry Weber