**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re PEGASYSTEMS INC. SECURITIES LITIGATION | ) ) ) ) | Case No.:  1:22-cv-11220-WGY |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PEGASYSTEMS'**
**MOTION TO IMPOUND CERTAIN DISCOVERY MATERIALS**

**TABLE OF CONTENTS**

I.      BACKGROUND ........................................................................................................1

II.     ARGUMENT.............................................................................................................2

        A.      Legal Standard ..............................................................................................2

        B.      Documents Produced by Pegasystems.....................................................…………..3

        C.      Documents Produced by Deloitte ..............................................................7

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abiomed, Inc. v. Maquet Cardiovascular LLC*,
  2021 WL 5165010 (D. Mass. Nov. 5, 2021) ........................................................2, 6

*Bradford & Bigelow, Inc. v. Richardson*,
  109 F. Supp. 3d 445 (D. Mass. 2015) ...................................................................2

*Brokop v. Farmland Partners, Inc.*,
  2021 WL 9204458 (D. Colo. Dec. 16, 2021)..........................................................8

*Dana-Farber Cancer Inst., Inc. v. Bristol-Myers Squibb, Co.*,
  2021 WL 9639791 (D. Mass. June 22, 2021)..........................................................5

*Dunkin Donuts Franchised Rests., LLC v. Agawam Donuts, Inc.*,
  2008 WL 427290 (D. Mass. Feb. 13, 2008) ...........................................................2

*EMC Corp. v. Pure Storage, Inc.*,
  2016 WL 7826662 (D. Mass. Aug. 19, 2016) .........................................................4

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
  2017 WL 4168290 (S.D. Ohio Sept. 20, 2017) .......................................................7

*In re Gitto Glob. Corp.*,
  422 F.3d 1 (1st Cir. 2005)...................................................................................3

*In re Qualcomm Litig.*,
  2017 WL 5176922 (S.D. Cal. Nov. 8, 2017) ..........................................................6

*Glass Dimensions, Inc. v. State St. Corp.*,
  2013 WL 6280085 (D. Mass. Dec. 3, 2013)............................................................3

*Houbigant, Inc. v. Dev. Specialists, Inc.*,
  2003 WL 21688243 (S.D.N.Y. July 21, 2003) ........................................................8

*Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*,
  335 F. Supp. 3d 566 (S.D.N.Y. 2018)....................................................................5

*KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*,
  2021 WL 6275214 (D. Mass. Aug. 23, 2021) .........................................................4

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020)..........................................................................6

*OpenTV, Inc. v. Apple, Inc.*,
   2015 WL 5714851 (N.D. Cal. Sept. 17, 2015) ................................................................2, 4, 5

*Peat, Marwick, Mitchell & Co. v. Creditor's Comm. of Ne. Dairy Coop. Fed'n,
   Inc.*,
   65 B.R. 886 (N.D.N.Y. 1986) ......................................................................................8

*City of Roseville Emps.' Ret. Sys. v. Crain*,
   2013 WL 4509970 (D.N.J. Aug. 22, 2013) ................................................................8

*Roy v. FedEx Ground Package Sys., Inc.*,
   2023 WL 4186291 (D. Mass. June 26, 2023) ......................................................3, 5, 6

*Turner Ins. Agency v. Farmland Partners, Inc.*,
   2020 WL 6870564 (D. Colo. Feb. 7, 2020) ................................................................8

*Tyson Foods, Inc. v. Keystone Foods Holdings, Ltd.*,
   2020 WL 5819864 (S.D.N.Y. Sept. 30, 2020)..........................................................5

iii

Pursuant to U.S. District Court for the District of Massachusetts Local Rule 7.2, Defendant Pegasystems Inc. ("Pegasystems" or the "Company") respectfully submits this memorandum of law in support of its Motion to Impound Certain Discovery Materials.  Pegasystems seeks leave to impound certain confidential and commercially sensitive materials produced by Pegasystems and non-party Deloitte & Touche LLP ("Deloitte") during discovery that were attached as exhibits to Lead Plaintiffs' Motion to Compel Defendants to Produce Documents and Related Relief (Dkt. No. 114) on the grounds that the exhibits contain data that constitutes a trade secret or is otherwise immune from public disclosure.

## I.      BACKGROUND

On August 18, 2023, the Court entered the parties' Stipulated Protective Order, which permitted discovery materials to be designated as "Confidential" by a producing party and addressed the use of protected information in court filings.  Dkt. No. 95 §§ 3, 6.  The Court ordered that the Stipulated Protective Order "shall not be cited as a ground for sealing."  *Id.* at 18.  On January 12, 2024, Plaintiffs filed a motion to compel certain discovery and, with it, a motion to impound 25 documents that had been produced by either Pegasystems or Deloitte and used by Plaintiffs as exhibits to the discovery motion.  Dkt. No. 118.  The sole basis for Plaintiffs' motion to impound was that the documents sought to be impounded had been designated "Confidential" pursuant to the Stipulated Protective Order.  *Id.* ¶ 3.  Plaintiffs' asserted that sole basis despite Defendants informing Plaintiffs that the Confidential designation is not alone sufficient under the Protective Order for filing the documents under seal, and asking Plaintiffs to identify the documents so that Defendants could assess whether there is a ground other than their designation as "Confidential" for filing the document under seal and avoid unnecessarily burdening the Court with a motion to impound.  *See* Ex. 3 (Jan. 11, 2024 Email Exchange).  Plaintiffs refused.  *See id.* On January 16, 2024, the Court denied the motion to impound "without prejudice to an actual

1

demonstration that particular data (and nothing else) constitutes a trade secret or is otherwise immune from public disclosure." Dkt. No. 121.

## II.    ARGUMENT

Consistent with the Court's recent order, Pegasystems seeks partial impoundment of Exhibits 30 and 32 to Plaintiffs' motion to compel (the "Pegasystems Documents") and full impoundment of Exhibits 37 to 48 to Plaintiffs' motion to compel (the "Deloitte Documents").  As set forth below, there is good cause for this request because the information sought to be impounded constitutes a trade secret or is otherwise immune from public disclosure.

### A.    Legal Standard

A party seeking to impound documents filed in court must demonstrate "good cause" to do so by "making a particularized factual showing of the harm that would be sustained if the court did not allow the filing under seal." *Dunkin Donuts Franchised Rests., LLC v. Agawam Donuts, Inc.*, 2008 WL 427290, at *1 (D. Mass. Feb. 13, 2008).[1]  Impoundment of business records is appropriate where they contain "highly confidential and nonpublic information, disclosure of which to the public or competitors would cause [the company] commercial, competitive, and irreparable harm."  *OpenTV, Inc. v. Apple, Inc.*, 2015 WL 5714851, at *2 (N.D. Cal. Sept. 17, 2015); *see Abiomed, Inc. v. Maquet Cardiovascular LLC*, 2021 WL 5165010, at *3 (D. Mass. Nov. 5, 2021) (granting motion to redact "confidential financial information—which includes the amounts that [the company] pays to [a consultant], and revenues for certain … products" from a transcript because disclosure would allow competitors to ascertain non-public "revenue figures"); *Glass Dimensions, Inc. v. State St. Corp.*, 2013 WL 6280085, at *1 (D. Mass. Dec. 3, 2013)

---

[1] Courts in this District have recognized that the burden to justify impoundment is lighter as to discovery motions, and heavier as to dispositive motions.  *See, e.g.*, *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 448 (D. Mass. 2015) ("[T]he presumption [of public access] may be overcome if the filing is not related to issues where there is no tradition of public access, like motions about discovery matters.").

2

(denying motion to *unseal* documents containing "sensitive business information" related to clients' assets and fee arrangements with clients to "avoid the serious competitive injury that dissemination would more than likely entail"); *see also In re Gitto Glob. Corp.*, 422 F.3d 1, 6 (1st Cir. 2005) (noting that courts may seal records containing "sources of business information that might harm a litigant's competitive standing" if disclosed (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978))).  To establish that sealing is appropriate, a party must "explain how information in the exhibits … will damage [the company], give an advantage to one [competitor] over another, or give [the company's] competitors an advantage in the [relevant] industry."  *See Roy v. FedEx Ground Package Sys., Inc.*, 2023 WL 4186291, at *4 (D. Mass. June 26, 2023).

### B.    Documents Produced by Pegasystems

The Pegasystems Documents contain excerpts from documents prepared for meetings of Pegasystems' Audit Committee for Q1 2022 and Q3 2021, respectively, that contain confidential business information which, if disclosed, would cause Pegasystems commercial and competitive harm.  These meeting materials disclose the identity of one of Pegasystems' largest customers and state the total accounts receivable generated by Pegasystems' contract with this customer and the percentage of Pegasystems' total accounts receivable that the contract accounted for as of the relevant filing period.  *See* Ex. 30 at 5; Ex. 32 at 5.  In order to protect Pegasystems' confidential business information and avoid harm to the Company while balancing any countervailing interest in public disclosure, Pegasystems requests leave to implement a targeted redaction of just one

word—the name of the customer—from page five of Exhibit 30 (PEGA_DMASS_00409128) and from page five of Exhibit 32 (PEGA_DMASS_00409712).[2]

The customer name proposed to be redacted constitutes "highly confidential and nonpublic information, disclosure of which to the public or competitors would cause [the company] commercial, competitive, and irreparable harm," for which impoundment is appropriate. *See OpenTV*, 2015 WL 5714851, at \*2; *see also* Ex. 1 (Kouninis Decl.) at 2. Publicly identifying a client that accounts for such a high concentration of Pegasystems' receivables would competitively harm Pegasystems by exposing a key source of revenue that would be ripe for attack by competitors.[3] *Id.* Any competitor seeking to significantly decrease Pegasystems' market share and increase its own would benefit greatly and unfairly from knowing the identity of one of Pegasystems' largest customers. *Id.* Furthermore, being able to connect Pegasystems' relationship with this customer to the accounts receivable figure cited would give competitors an unfair advantage in attempting to competitively displace Pegasystems from this customer's business or other customers' business—namely, by giving them the information necessary to undercut Pegasystems on pricing.[4] *Id.* As a result, access to this information by Pegasystems' competitors could irreparably harm Pegasystems and impact its market share. *Id.*

---

[2] Pegasystems does not seek to redact the percentage of Pegasystems' overall revenue that the customer accounted for, or the total amount of revenue generated by Pegasystems' contract with the customer. As noted in Exhibits 30 and 32, those figures (but not the identity of the client to which those figures applied) have already been publicly disclosed. *See* Ex. 30 at 5; Ex. 32 at 5. The redaction proposed is targeted to only the data that is most sensitive and that will cause Pegasystems competitive harm if disclosed.

[3] Courts in this district have recognized that customer identities deserve trade secret protection when accompanied by additional "customer-related information" such as "historical purchasing information." *See EMC Corp. v. Pure Storage, Inc.*, 2016 WL 7826662, at \*6 (D. Mass. Aug. 19, 2016); *see also KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, 2021 WL 6275214, at \*8 (D. Mass. Aug. 23, 2021) (holding that documents containing both client names and "past purchasing and pricing information" were "reasonably likely" to be trade secrets).

[4] The publication of this information could also harm the customer by disclosing to the customer's competitors the amount of money it spent on Pegasystems' services—information they could use to understand ways in which the customer might be differentiating itself in the market through the use of software solutions like those provided by Pegasystems. Ex. 1 (Kouninis Decl.) at 2.

4

Courts have recognized that information like this relating to "revenues" or "customers," *OpenTV*, 2015 WL 5714851, at *2, and "revenue information, pricing information, and the like," *Tyson Foods, Inc. v. Keystone Foods Holdings, Ltd.*, 2020 WL 5819864, at *2 (S.D.N.Y. Sept. 30, 2020), is "the kind of information that is commonly protected from public exposure." *See Roy*, 2023 WL 4186291, at *4 (citing *OpenTV*, 2015 WL 5714851, at *2; *Tyson Foods*, 2020 WL 5819864, at *2). The harms that would occur if this sensitive information were disclosed are not "speculative," nor do they rely on "broad and generic claims about confidentiality." *See id.* at *4. Instead, the declaration submitted by Stathi Kouninis, Pegasystems' VP, Finance and Chief Accounting Officer, sets forth a "particular factual demonstration of potential harm" that justifies impounding this limited information. *See Dana-Farber Cancer Inst., Inc. v. Bristol-Myers Squibb, Co.*, 2021 WL 9639791, at *2 (D. Mass. June 22, 2021); *cf. Tyson Foods*, 2020 WL 5819864, at *2 (granting motion to seal exhibits containing "customer lists" and "customer information, including the [company's] sales . . . broken down by month, customer, and item"); *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018) (granting motion to redact "the columns of Exhibits 25 and 26 containing customer names" because "[s]uch documents 'fall into categories commonly sealed'").

In addition, the meeting materials in Exhibit 30 discuss an as-yet-undisclosed service line that Pegasystems offers to its clients and the impact that service line has on Pegasystems' financial metrics. *See* Ex. 30 at 4. Disclosure of this information—which takes up just one bullet point and less than two lines of text—would also cause significant competitive harm to Pegasystems. *See* Ex. 1 (Kouninis Decl.) at 2–3. Additional service lines are a key method of differentiation for Pegasystems, and Pegasystems often does not disclose service lines of this nature; the disclosure of the existence of this service line and its impact on Pegasystems' financial metrics would give

5

competitors insight into Pegasystems' financials and allow them to create competing service lines that would cut into Pegasystems' market share. *Id.* Accordingly, Pegasystems also requests leave to redact one bullet from page four of Exhibit 30 (PEGA_DMASS_00409127).

In addition to approving the impoundment of information related to a company's confidential financial metrics and related business decisions, *see, e.g.*, *Roy*, 2023 WL 4186291, at *4 (citing cases), courts have recognized that sealing is appropriate to prevent the disclosure of information related to a company's confidential "business model and strategy," particularly where it bears on financial metrics. *See, e.g.*, *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017); *see also Abiomed*, 2021 WL 5165010, at *3 (granting motion to seal information related to royalty strategies and financial metrics related to specific product lines); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 586–87 (N.D. Cal. 2020) (noting that compelling reasons existed to seal documents containing "detailed financial figures and undisclosed marketing plans," but denying motion to seal without prejudice based on overbreadth).

In addition, the information sought to be impounded by Pegasystems, which consists of a one-word redaction to protect a customer's identity and a one-bullet redaction to protect the existence of a key differentiating service line, is entirely unrelated to the issues in this litigation and has no bearing on the disputes raised by Plaintiffs' motion to compel. The irrelevance of the information sought to be redacted from Exhibits 30 and 32 counsels in favor of impoundment. *See, e.g.*, *Dana-Farber*, 2021 WL 963971, at *2 ("The more important the information is to the adjudication of the matter, the higher the burden to overcome the presumption of openness.").

Accordingly, the Court should permit portions of Exhibits 30 and 32 to be impounded.

C.    Documents Produced by Deloitte

The Deloitte Documents include workpapers, audit response letters, accounting memoranda, and emails that "reflect the steps taken as part of Deloitte's proprietary audit

6

approach, and reveal how those proprietary procedures are applied in practice." Ex. 2 (Burzenski Decl.) at 2. "[P]rotecting confidential information that would otherwise allow competitors an inside look at a company's business strategies is a[nother] compelling reason to restrict public access to filings." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc*., 2017 WL 4168290, at *2 (S.D. Ohio Sept. 20, 2017). As set forth in the attached Declaration of Dora Burzenski, a managing director at Deloitte, Exhibits 37 to 48 contain confidential commercially sensitive business information that includes trade secrets and would cause Deloitte commercial and competitive harm if disclosed. Ex. 2 (Burzenski Decl.) at 2–3.

The disclosure of the Deloitte Documents would cause significant competitive harm to Deloitte. Exhibits 37 to 48 are Deloitte's work papers, which contain confidential, commercially sensitive information that would reveal portions of Deloitte's proprietary audit methodology, which Deloitte keeps confidential to protect that trade sensitive information. Ex. 2 (Burzenski Decl.) at 2–3. Competition among accounting firms is fierce, and each firm uses "its own proprietary approach and procedures," knowledge of which if "used by a rival accounting firm would enable a competitor to use the information to its commercial advantage." *Id.* at 3. The significant competitive advantage that Deloitte has gained over the years by developing its proprietary methodology would be immediately and significantly undermined by the disclosure of that methodology to rival firms. *Id.* Rival firms could use that information to perform a "Deloitte-style audit" without having to expend the money and time that Deloitte has already invested in developing its methodology, and they could consequently undercut Deloitte on price in competing for business. *Id.* at 3–4. Deloitte works tirelessly to guard against the disclosure of documents like the Deloitte Documents by entering into strict confidentiality agreements with employees and

partners and by requiring the return of all confidential information from employees departing the firm. *Id.* at 3.

Impounding these documents and avoiding their public dissemination is consistent with case law protecting accounting firms' proprietary materials. *See, e.g.*, *Brokop v. Farmland Partners, Inc.*, 2021 WL 9204458, at \*3 (D. Colo. Dec. 16, 2021) (applying confidentiality restrictions to nonparty "PwC workpapers 'because public disclosure . . . would reveal nonparty auditing firms' auditing process and procedures, thereby revealing the nonparties' commercially sensitive information'"); *Turner Ins. Agency v. Farmland Partners, Inc.*, 2020 WL 6870564, at \*2 (D. Colo. Feb. 7, 2020) (applying confidentiality restrictions to nonparty auditor workpapers because "because public disclosure … would reveal the non-party auditing firms' auditing process and procedures, thereby revealing the nonparties' commercially sensitive information"); *City of Roseville Emps.' Ret. Sys. v. Crain*, 2013 WL 4509970, at \*1–2 (D.N.J. Aug. 22, 2013) (granting motion to seal "non-public audit materials prepared by independent auditors KPMG LLP and Ernst and Young LLP" because disclosure would create "a competitive disadvantage in the marketplace"); *see also Houbigant, Inc. v. Dev. Specialists, Inc.*, 2003 WL 21688243, at \*2 (S.D.N.Y. July 21, 2003) (entering a protective order and holding that "any documents revealing [the nonparty auditor's] auditing procedures are confidential and should be protected … includ[ing] materials such as check lists and audit forms that outline audit methodology"); *Peat, Marwick, Mitchell & Co. v. Creditor's Comm. of Ne. Dairy Coop. Fed'n, Inc.*, 65 B.R. 886, 887 (N.D.N.Y. 1986) (holding that accountant's "particular procedures . . . constitute 'trade secrets'" that should be protected from disclosure).

Accordingly, the Court should permit Exhibits 37 to 48 to be impounded.

Dated:  January 26, 2024              Respectfully submitted,

*/s/ Daniel W. Halston*
Daniel W. Halston (BBO # 548692)
Michael G. Bongiorno (BBO # 558748)
Robert Kingsley Smith (BBO # 681914)
Erika M. Schutzman (BBO # 696241)
WILMER CUTLER PICKERING HALE AND DORR
LLP
60 State Street
Boston, MA 02109
(617) 526-6000
Daniel.Halston@wilmerhale.com
Michael.Bongiorno@wilmerhale.com
Robert.Smith@wilmerhale.com
Erika.Schutzman@wilmerhale.com

*Counsel for Defendants*

9