# Exhibit 2

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re PEGASYSTEMS INC. SECURITIES LITIGATION | ) ) ) ) ) ) | No. 1:22-cv-11220-WGY <br><br> DECLARATION OF DORA BURZENSKI IN SUPPORT OF DEFENDANT PEGASYSTEMS' MOTION TO IMPOUND CERTAIN DISCOVERY MATERIALS |

I, Dora Burzenski, declare as follows:

1.      I am a Managing Director at Deloitte & Touche LLP ("Deloitte"), which is not a party in this case but did provide documents in response to Lead Plaintiffs' discovery requests in this action.

2.      I make this declaration on behalf of Deloitte in support of Defendant Pegasystems' Motion to Impound Certain Discovery Materials.  Deloitte hereby requests that the Deloitte documents that were attached to Christopher D. Stewart's January 12, 2024 Declaration (Dkt. No. 120) as Exhibits 37- 48 (the "Deloitte Documents") continue to be treated as "Confidential" under the Stipulated Protective Order (Dkt. No. 95) and be impounded pursuant to Defendant Pegasystems' Motion to Impound.

3.      The Deloitte Documents contain Deloitte's proprietary business information and trade secrets.  Deloitte considers them to be highly confidential and to contain commercially sensitive business information.  The Deloitte Documents were accordingly designated as Confidential under the Stipulated Protective Order (Dkt. No. 95) when produced.  They should not be subject to public disclosure.

4.      Disclosure of these documents would reveal Deloitte's internal procedures for performing certain audit work, including the steps that Deloitte has developed as part of its proprietary approach to auditing, and how those processes are applied in practice.  The Deloitte Documents reflect the steps taken as part of Deloitte's proprietary audit approach, and reveal how those proprietary procedures are applied in practice.  *See, e.g.*, Exhibit 37 (reflecting Deloitte's methodology for review procedures, including description of Deloitte's internal forms and checklists [p. 1] the firm's policies and procedures related to independence evaluation [p. 4], the firm's methodology for evaluating materiality [p. 5 – 6], and several other proprietary approaches to performing its work).  Other materials in the Deloitte Documents reflect how Deloitte conducts

certain audit work, including the questions that Deloitte auditors may ask in connection with evaluating an audit client's contingencies.

5. If these exhibits are not protected from public disclosure, this information would cause competitive harm to Deloitte. Deloitte has invested significant resources to develop its proprietary audit procedures, which are closely guarded and not generally available to the public. There is strong competition among accounting firms, and knowledge of the procedures used by a competitor could allow a rival accounting firm to copy and use Deloitte's methodology. Deloitte guards against the disclosure of documents like the Deloitte Documents by requiring its employees to execute a confidentiality agreement upon joining Deloitte that prohibits the disclosure of proprietary and sensitive information, and each partner of the firm is bound by the terms of the Partnership Agreement not to reveal confidential information to those outside of Deloitte. Moreover, when an individual leaves Deloitte, that individual is required to return all documents containing confidential information to Deloitte. Public disclosure of this proprietary information could provide Deloitte's peer firms with an opportunity to erode Deloitte's competitive advantage and benefit from the investments Deloitte has made to develop its procedures.

6. Each accounting firm uses its own proprietary approach and procedures in complying with generally accepted auditing standards ("GAAS"), and knowledge of the procedures used by a rival accounting firm would enable a competitor to use the information to its commercial advantage. Thus, the competitive advantage Deloitte has gained by developing its methodology and educating its auditors on how to perform GAAS audits following the Deloitte methodology would be undermined by disclosure outside Deloitte because then other auditors could perform a Deloitte-style audit without having to expend the money and time that Deloitte has invested in

3

developing its GAAS-compliant methodology.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 25th day of January, 2024, at 3:35 p.m.

/s/ Dora Burzenski
DORA BURZENSKI

4