UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re PEGASYSTEMS INC. SECURITIES LITIGATION | ) ) ) ) ) | No. 1:22-cv-11220-WGY<br><br>REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY THIS ACTION AS A CLASS ACTION AND RELATED RELIEF |

4877-6172-4073.v1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. CLASS CERTIFICATION FOR LIABILITY PURPOSES IS UNDISPUTED ................2

III. COMMON QUESTIONS OF DAMAGES WILL PREDOMINATE ...............................3

    A. Plaintiffs' Proposed Methodology for Calculating §10(b) Damages Satisfies *Comcast* ..................................................................................4

        1. Dr. Feinstein's Out-of-Pocket Methodology More than Satisfies *Comcast* ..................................................................................4

        2. Dr. Feinstein's Reports More than Sufficiently Describe His Proposed Methodology .......................................................................5

        3. Dr. Feinstein's Out-of-Pocket Methodology Is Widely Accepted ..............6

    B. Defendants' Other Damages Arguments Fail ............................................8

        1. It Is Premature for Dr. Feinstein to Opine on the Causes of Particular Stock Price Declines.....................................................................9

        2. Defendants' Incorrect Assertion that Plaintiffs Allege Multiple "Theories of Liability" Is Baseless ...........................................................13

        3. Defendants' Other Premature "Inflation" Challenges Fail to Present a *Comcast* Dispute........................................................................14

IV. CONCLUSION....................................................................................................17

4877-6172-4073.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972)...............................................................................................1, 3

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)..................................................................................................9, 11

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)..................................................................................................1, 3

*Cheng v. Activision Blizzard, Inc.*,
   2022 WL 2101919 (C.D. Cal. Apr. 18, 2022) .........................................................15

*City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems Inc.*,
   2023 WL 4706741 (D. Mass. July 24, 2023)............................................11, 12, 15

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
   2022 WL 1459567 (N.D. Cal. May 9, 2022) ...........................................................7

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)................................................................................... *passim*

*Cosby v. KPMG, LLP*,
   2020 WL 3548379 (E.D. Tenn. June 29, 2020)......................................................12

*Cosby v. KPMG, LLP*,
   2021 WL 1845186 (E.D. Tenn. May 7, 2021).........................................................7

*Di Donato v. Insys Therapeutics, Inc.*,
   333 F.R.D. 427 (D. Ariz. 2019) ..............................................................................14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011)..................................................................................................9, 17

*Fort Worth Emps.' Ret. Fund v. Biovail Corp.*,
   615 F. Supp. 2d 218 (S.D.N.Y. 2009).....................................................................12

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014) .............................................................................8

*In re Allergan PLC Sec. Litig.*,
   2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021)...................................................12, 17

**Page**

*In re Amgen Inc. Sec. Litig.*,
 2014 WL 12585809 (C.D. Cal. Aug. 4, 2014)..........................................................................11

*In re BP p.l.c. Sec. Litig.*,
 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013)...............................................................................8

*In re Cabletron Sys., Inc.*,
 311 F.3d 11 (1st Cir. 2002).......................................................................................................15

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
 337 F.R.D. 193 (D. Minn. 2020)............................................................................................9, 11

*In re Dial Complete Mktg. & Sales Pracs. Litig.*,
 312 F.R.D. 36 (D.N.H. 2015) .....................................................................................................8

*In re Heckmann Corp. Sec. Litig.*,
 2013 WL 2456104 (D. Del. June 6, 2013)...................................................................................4

*In re Hydrogen Peroxide Antitrust Litig.*,
 552 F.3d 305 (3d Cir. 2008).......................................................................................................8

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
 522 F.3d 6 (1st Cir. 2008).......................................................................................................1, 8

*In re Nexium Antitrust Litig.*,
 777 F.3d 9 (1st Cir. 2015)...........................................................................................................4

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
 725 F.3d 244 (D.C. Cir. 2013)....................................................................................................8

*In re Signet Jewelers Ltd. Sec. Litig.*,
 2019 WL 3001084 (S.D.N.Y. July 10, 2019) ...........................................................................16

*In re Silver Wheaton Corp. Sec. Litig.*,
 2017 WL 2039171 (C.D. Cal. May 11, 2017) .............................................................................6

*In re Teva Sec. Litig.*,
 2021 WL 872156 (D. Conn. Mar. 9, 2021) ...............................................................................14

*In re Twitter Inc. Sec. Litig.*,
 326 F.R.D. 619 (N.D. Cal. 2018)...............................................................................................12

4877-6172-4073.v1

**Page**

*In re Vale S.A. Sec. Litig.*,
2022 WL 122593 (E.D.N.Y. Jan. 11, 2022), *report and recommendation adopted*, 2022 WL 969724 (E.D.N.Y. Mar. 31, 2022) ...............................17

*Junge v. Geron Corp.*,
2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) .............................................................10, 12, 14

*Levy v. Gutierrez*,
448 F. Supp. 3d 46 (D.N.H. 2019).........................................................................................16

*Loritz v. Exide Techs.*,
2015 WL 6790247 (C.D. Cal. July 21, 2015)..........................................................................8

*Ludlow v. BP, P.L.C.*,
800 F.3d 674 (5th Cir. 2015) .................................................................................................12

*Luna v. Carbonite, Inc.*,
2023 WL 4539855 (D. Mass. July 14, 2023).............................................................4, 6, 16, 17

*Luna v. Marvell Tech. Grp., Ltd.*,
2017 WL 4865559 (N.D. Cal. Oct. 27, 2017)...........................................................................6

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
332 F.R.D. 370 (N.D. Ga. 2019).........................................................................................6, 7

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001).....................................................................................................8

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
2018 WL 3861840 (N.D. Ohio Aug. 14, 2018), *rev'd on other grounds*,
64 F.4th 731 (6th Cir. 2023) ....................................................................................................7

*Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*,
2020 WL 5757695 (D. Minn. Sept. 28, 2020)..............................................................9, 11, 17

*Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*,
2020 WL 919249 (N.D. Ill. Feb. 26, 2020) ..........................................................7, 10, 16, 17

*Sicav v. James Jun Wang*,
2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) ............................................................................7

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
2022 WL 4598044 (M.D. Tenn. Sept. 30, 2022)......................................................................9

4877-6172-4073.v1

**Page**

*Strougo v. Tivity Health, Inc.*,
606 F. Supp. 3d 753 (M.D. Tenn. 2022), *vacated on other grounds sub nom.*
*In re Tivity Health, Inc.*, 2022 WL 17243323 (6th Cir. Nov. 21, 2022),
*and certified on remand*, 2023 WL 3873305 (M.D. Tenn. June 7, 2023) ...............................15

*Utesch v. Lannett Co., Inc.*,
2021 WL 3560949 (E.D. Pa. Aug. 12, 2021), *aff'd sub nom.*
*Univ. of P.R. Ret. Sys. v. Lannett Co., Inc.*, 2023 WL 2985120
(3d Cir. Apr. 18, 2023)........................................................................................................14

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
325 F.R.D. 280 (D. Minn. 2018)..........................................................................................6

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)...................................................................................................16

*Weiner v. Tivity Health, Inc.*,
334 F.R.D. 123 (M.D. Tenn. 2020) .....................................................................................15

*Wilson v. LSB Indus., Inc.*,
2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018).................................................................6, 16

## STATUTES, RULES, AND REGULATIONS

15 U.S.C
§78j(b) .................................................................................................................... *passim*

Federal Rules of Civil Procedure
Rule 23 ...................................................................................................................................2
Rule 23(a).............................................................................................................................1, 2
Rule 23(b)(3).........................................................................................................................2, 3

4877-6172-4073.v1

## I.    INTRODUCTION

Lead Plaintiffs and proposed Class Representatives Central Pennsylvania Teamsters Pension Fund - Defined Benefit Plan, Central Pennsylvania Teamsters Pension Fund - Retirement Income Plan 1987, and Construction Industry Laborers Pension Fund's (collectively, "Plaintiffs") motion to certify the proposed Class is largely unchallenged.  Defendants Pegasystems Inc. ("Pega") and Alan Trefler ("Trefler") (collectively, "Defendants") challenge none of the Federal Rule of Civil Procedure 23(a) requirements – *i.e.*, numerosity, commonality, typicality, or adequacy.  Defendants do not contest that all but one of the elements required to prove the Class' §10(b) claims – including falsity, materiality, scienter, reliance, and loss causation – will be proved through common evidence.  Opposition to Lead Plaintiffs' Motion for Class Certification (ECF 134) ("Opp.") at 9.  Defendants concede that Plaintiffs and the Class are entitled to invoke the fraud-on-the-market presumption of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), as well as the presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  Defendants do not attempt to rebut either presumption.  *Infra*, §II.

Moreover, Defendants do not dispute that Pega's stock price fell significantly following each alleged corrective disclosure of the truth as described in Lead Plaintiffs' Consolidated Amended Complaint for Violations of the Federal Securities Laws (ECF 61) (the "Complaint") – *i.e.*, February 16, May 9, and September 16, 2022.  Defendants do not dispute they revealed ***new***, material information regarding their bet-the-company litigation against Appian on each disclosure date.  Defendants do not dispute that these disclosures were corrective.  Defendants do not question Plaintiffs' appointment as Class Representatives, or Robbins Geller Rudman & Dowd LLP's ("Robbins Geller") appointment as Class Counsel.  *Infra*, §II.  Thus, there is no dispute that the liability may be proven on a class-wide basis.

4877-6172-4073.v1

Instead, Defendants dispute that Rule 23(b)(3)'s predominance requirement is satisfied with respect to only one element of the Class' §10(b) claims: damages. Opp. at 9. Defendants' criticisms of Plaintiffs' proposed methodology for calculating §10(b) damages are baseless. As Professor Steven P. Feinstein ("Dr. Feinstein") demonstrates, and as courts across the country have held, Plaintiffs' proposed out-of-pocket methodology is an appropriate means of calculating §10(b) damages on a class-wide basis, more than satisfies Rule 23, and easily passes muster under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). *Infra*, §III. Defendants' assertion that Dr. Feinstein has not constructed the precise damages model to be used in this case has no bearing on predominance, as what Defendants demand is the ***application*** of methodologies to calculate damages – an entirely different undertaking that is not required at this stage. Defendants' premature demand that Plaintiffs produce a loss causation model at this stage should be rejected.

Plaintiffs' Motion to Certify This Action as a Class Action and Related Relief (ECF 108) (the "Motion") should be granted in full.

## II.    CLASS CERTIFICATION FOR LIABILITY PURPOSES IS UNDISPUTED

There is no dispute that the Class should be certified for liability purposes. Defendants concede that:

- All four of the Rule 23(a) requirements – *i.e.*, numerosity, commonality, typicality, and adequacy – are satisfied[1];

- All but one of the elements required to prove the Class' §10(b) claims – including falsity, materiality, scienter, reliance, and loss causation – will be proved through common evidence[2];

---

[1]    Memorandum of Law in Support of Plaintiffs' Motion to Certify This Action as a Class Action and Related Relief (ECF 109) ("Mem.") at 5-8; Opp. at 9.

[2]    Mem. at 10; Opp. at 9.

- 2 -

4877-6172-4073.v1

- Pega's common stock traded in an efficient market throughout the period June 16, 2020 to May 9, 2022, inclusive (the "Class Period")[3]; and

- Plaintiffs and the Class are entitled to invoke the fraud-on-the-market presumption of reliance under *Basic*, as well as the presumption of reliance under *Affiliated Ute*.[4]

In addition, Defendants do not question that Pega's stock price fell in a statistically significant manner following each of the alleged corrective disclosures of February 16, May 9, and September 16, 2022.[5]  Moreover, Defendants do not contest that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); Mem. at 19-20.  Further, Defendants do not oppose Plaintiffs' appointment as Class Representatives, or Robbins Geller's appointment as Class Counsel.  Mem. at 1, 20.  In short, there is no dispute the Motion should be granted for liability purposes.

## III.    COMMON QUESTIONS OF DAMAGES WILL PREDOMINATE

Of all the elements required to prove the Class' §10(b) claims, Defendants assert that only one – damages – cannot be proved through common evidence.  As explained below, Plaintiffs have established that damages can be calculated on a class-wide basis consistent with their theory of liability.  Defendants' speculative and premature arguments to the contrary are meritless, and none present a basis for denying the Motion.

---

[3]    Mem. at 12-17; Opp. at 5 n.2.

[4]    Mem. at 11-12, 17-18; Opp. at 5.  Defendants do not attempt to rebut either presumption.

[5]    ¶¶243-249; Mem. at 3-4; Opp. at 4-5.  Unless otherwise noted, all "¶_" or "¶¶_" references are to the Complaint, citations are omitted, and emphasis is added.

4877-6172-4073.v1

A.      **Plaintiffs' Proposed Methodology for Calculating §10(b) Damages Satisfies *Comcast***

1.      **Dr. Feinstein's Out-of-Pocket Methodology More than Satisfies *Comcast***

*Comcast* holds that plaintiffs need only present a model demonstrating that damages can be calculated on a class-wide basis consistent with their theory of liability.  569 U.S. at 34-35; *see also Luna v. Carbonite, Inc.*, 2023 WL 4539855, at *10 (D. Mass. July 14, 2023) (at class certification, plaintiffs' burden "'is simply to propose a methodology for calculating damages that corresponds to [their] theory of liability'").  The facts in *Comcast* were unique in that the plaintiffs alleged ***four distinct theories of antitrust liability***, but in granting class certification, the district court found that only one theory was capable of class-wide proof.  569 U.S. at 31.[6]  As a result, the Supreme Court found the proposed methodology did not demonstrate damages could be measured on a class-wide basis because it "identifie[d] damages that [were] not the result of the wrong." *Comcast*, 569 U.S. at 37.[7]

Plaintiffs' proposed damages methodology for calculating damages under §10(b) easily passes muster under *Comcast*.  Plaintiffs allege ***one theory*** of liability – that Defendants engaged in a fraudulent scheme and made material misstatements and omissions that artificially inflated and manipulated Pega's stock price, causing Class members to suffer damages when the truth was revealed and inflation was removed from the stock price.  ¶¶242-249.  Consistent with their singular theory of liability, Plaintiffs seek to recover the damages caused by Defendants' violations of §10(b),

---

[6]    As one court observed, "while *Comcast* addresses class action certification, it was not in regard to a securities fraud litigation, which have generally been certified for class status.  Instead, *Comcast* addresses antitrust litigation." *In re Heckmann Corp. Sec. Litig.*, 2013 WL 2456104, at *14 (D. Del. June 6, 2013).

[7]    *See also In re Nexium Antitrust Litig.*, 777 F.3d 9, 18 (1st Cir. 2015) (explaining *Comcast*'s unique fact-pattern in which the plaintiffs "relied on ***four theories of liability***" but "did not provide a damages calculation for th[e] one theory" on which the class was certified).

4877-6172-4073.v1

using the widely-accepted "out-of-pocket" methodology for calculating damages.  Mem. at 19; ECF

110-1 ("Feinstein Report"), ¶¶151-158; Declaration of Christopher D. Stewart in Further Support of

Plaintiffs' Motion to Certify This Action as a Class Action and Related Relief ("Stewart Decl."), Ex.

1 ("Feinstein Rebuttal"), ¶¶3, 32-34, filed concurrently herewith.

> ### 2.    Dr. Feinstein's Reports More than Sufficiently Describe His Proposed Methodology

In his reports, Dr. Feinstein explains how the universally-accepted "out-of-pocket"

methodology for calculating damages under §10(b) can be applied commonly to the Class, consistent

with Plaintiffs' theory of §10(b) liability.  Feinstein Report, ¶¶151-158; Feinstein Rebuttal, ¶¶3, 28-

34.  The Feinstein Report specifically details how Dr. Feinstein would apply the out-of-pocket

methodology in this case, as well as identifies the particular valuation tools he would use in his

analysis:

- First, Dr. Feinstein will use "valuation tools, which would include event study analysis," to measure the artificial inflation in the stock due to the alleged misrepresentations and omissions, as well as the corresponding dissipation caused by corrective disclosures to establish if the alleged corrective disclosures caused Pega's stock to fall.  Feinstein Report, ¶157(i).  "This analysis would apply on a Class-wide basis."  *Id.*[8]

- Second, Dr. Feinstein will construct an "inflation ribbon" (*i.e.*, "a time series of the difference between a stock's actual price observed in the marketplace, and the estimated price that the stock would have traded at each day had there been a full disclosure" from the outset of the Class Period) to determine the extent of artificial inflation caused by the alleged misrepresentations and omissions in Pega's stock price on each day of the Class Period.  Feinstein Report, ¶157(ii).  This analysis would account for, as necessary, confounding information, changes in the concealed information, and changes in the value of the concealed information, among other potential complexities.  *Id.*, ¶157(iii).[9]

- Third, Dr. Feinstein will calculate per share damages for each Class member by determining "the difference between the inflation on the date the shares were

---

[8]    *See also* Feinstein Rebuttal, ¶¶28-29.

[9]    *See also* Feinstein Rebuttal, ¶¶28-29.

4877-6172-4073.v1

purchased and the inflation on the date those same shares were subsequently sold." Feinstein Report, ¶157(iv). Dr. Feinstein will also limit per share damages to be no greater than the decline in share price over the holding period. *Id.*, ¶157(v).[10]

Dr. Feinstein also provides examples of specific tools he can use to address potential issues that may arise, and explains that if he were to conduct a loss causation analysis after the close of fact discovery, he would possess the added benefit of an event study analysis. Feinstein Report, ¶¶150, 153, 156-157; Feinstein Rebuttal, ¶¶7, 11, 17, 20, 29-30, 40-41, 43-44, 53, 56, 62, 67-68.[11]

### 3.    Dr. Feinstein's Out-of-Pocket Methodology Is Widely Accepted

Courts across the country have rejected defendants' standard-playbook refrain that Dr. Feinstein's proposed damages methodology is somehow "too generic" and instead have accepted Dr. Feinstein's proposed out-of-pocket damages methodology following *Comcast*.[12]   Indeed, Dr. Feinstein's damages methodology has been accepted ***at least 29*** times at the class certification stage post-*Comcast*.  Stewart Decl., Ex. 2.

Although Defendants now contend that they need more "details" regarding Dr. Feinstein's proposed methodology, Defendants had over two months to depose Dr. Feinstein and examine him about his proposed methodology.  They chose not to depose Dr. Feinstein or otherwise seek the

---

[10]    *See also* Feinstein Rebuttal, ¶¶28-29.

[11]    *See Carbonite*, 2023 WL 4539855, at *10 (describing an event study as "'the generally accepted method for measuring damages in a securities fraud class action,'" explaining "[n]umerous courts have found that event studies . . . are sufficient for purposes of satisfying predominance at the class certification stage").

[12]    *See Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 398-99 (N.D. Ga. 2019) (citing, *e.g.*, *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *16 (S.D.N.Y. Aug. 13, 2018); *Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL 4865559, at *6 (N.D. Cal. Oct. 27, 2017); *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 290 (D. Minn. 2018); *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171, at *14-*15 (C.D. Cal. May 11, 2017)); *see also* Stewart Decl., Ex. 2 (chart identifying 29 post-*Comcast* class certification opinions allowing Dr. Feinstein's out-of-pocket methodology).  In contrast, Defendants point to no case in which a court has accepted Dr. Amy Hutton's ("Hutton") speculative and unsupported opinions and rejected the out-of-pocket damages methodology.

4877-6172-4073.v1

details they now demand. Opp. at 2. Moreover, Defendants' reliance on *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ("*OPERS*"), *rev'd on other grounds*, 64 F.4th 731 (6th Cir. 2023), to buttress their attack on Dr. Feinstein's proposed methodology fails. Opp. at 10-11 (citing *OPERS*, 2018 WL 3861840, at *18-*19). Courts have rejected *OPERS*'s reasoning, finding it to be an outlier against the weight of authority. In *Monroe Cnty.*, for example, the court declined to follow *OPERS*, correctly noting that "although Professor Feinstein has not yet specified valuation tools – an input into the damages model – he will ultimately use, **such specification is not required at this stage**." 332 F.R.D. at 399; *see also City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2022 WL 1459567, at *10 (N.D. Cal. May 9, 2022) (distinguishing *OPERS* on grounds that its expert affirmatively testified "that a class-wide damages model could ***not*** be constructed – which is not at issue in the present case") (emphasis in original); *Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*, 2020 WL 919249, at *9 n.8 (N.D. Ill. Feb. 26, 2020) (distinguishing *OPERS* and noting it was "little wonder" that the court found no congruence between the theory of liability and the theory of damages as the court had already held that "plaintiffs' liability theory did not hold together").[13]

Defendants' reliance on *Sicav v. James Jun Wang*, 2015 WL 268855, at *4 (S.D.N.Y. Jan. 21, 2015), fares no better, as the out-of-pocket method was not even proposed to calculate damages in that case. *Id.* at *2 (denying certification in a case that involved no misstatements, omissions, or corrective disclosures, and where the sole basis for liability was "an unusual" "'insider sale' theory

---

[13]  *See also Cosby v. KPMG, LLP*, 2021 WL 1845186, at *4 n.3 (E.D. Tenn. May 7, 2021) (distinguishing *OPERS* on its unique facts). Here, market efficiency is undisputed, and Defendants' expert has not affirmatively opined that damages cannot be calculated on a class-wide basis. Opp. at 5 n.2; Feinstein Rebuttal, ¶¶10, 21-23.

of liability"). Defendants' other cases are similarly inapposite.[14]  In sum, Plaintiffs have presented

an out-of-pocket methodology that is capable of calculating damages and corresponds to their theory

of liability.  Nothing more is required under *Comcast* at this stage.

### B.        Defendants' Other Damages Arguments Fail

Ignoring the overwhelming support for Plaintiffs' out-of-pocket damages methodology,

Defendants lodge three additional criticisms of Dr. Feinstein's damages methodology: (1) it

purportedly seeks to recover "the entire May 9, 2022 stock price drop, which would reflect damages

for the materialization of both the disclosed and undisclosed risk" (Opp. at 15); (2) it purportedly

fails to disaggregate between damages caused by Plaintiffs' different "theories of liability" (*id.* at 17-

---

[14]    *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008) (pre-*Comcast* private antitrust action against various manufacturers of assorted chemical products, in which competing experts offered conflicting testimony over whether plaintiffs' price-fixing claims were susceptible to common proof); *Loritz v. Exide Techs.*, 2015 WL 6790247, at \*22 (C.D. Cal. July 21, 2015) (certifying liability-only class where plaintiff "failed to set forth any model of damages (let alone one tied to their theory of liability)"); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 141-42 (S.D.N.Y. 2014) (action that involved multi-layered, opaque, and illiquid residential mortgage-backed certificates and a "difficult process of valuing the complex asset-backed securities that underlie the Certificates"); *In re Dial Complete Mktg. & Sales Pracs. Litig.*, 312 F.R.D. 36, 46-47, 75, 77-78 (D.N.H. 2015) (on motion to certify eight consumer subclasses asserting claims under various states' laws and 12-year-long class periods, finding the plaintiffs' experts' proposed damages methodology, based in part on comparing Dial's products to competing products, "set forth little detail concerning the 'significant conceptual, implementation, or data issues that would be encountered' if their approach were adopted"); *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 248, 253 (D.C. Cir. 2013) (antitrust action against freight railroads over alleged fuel surcharge price-fixing, where "damages model yielded false positives" and expert "conceded [his damages model] measured overcharges to legacy shippers and class members alike"); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191 (3d Cir. 2001) (superiority not met where each of the "hundreds of millions of transactions executed over several years" required "individualized inquiry into actual injury"); *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at \*3, \*16 (S.D. Tex. Dec. 6, 2013) (action involving "competing theories" not present here).  *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008), is also vastly different from the instant action, a straightforward securities fraud class action seeking out-of-pocket damages under §10(b).  *Id.* at 27 (involving a "novel and complex" antitrust theory of how consumers were injured by alleged horizontal conspiracy to discourage motor vehicle imports from Canada).

19); and (3) it purportedly fails to account for changes in inflation over time (or "time-varying" inflation) (*id.* at 18).

None present a basis for denying the Motion. Instead, Defendants' criticisms present nothing more than unsubstantiated speculation as to whether Dr. Feinstein's methodology can account for potential valuation issues that ***may or may not*** arise in this case. Feinstein Rebuttal, ¶¶13, 15, 17, 35-36, 54-55, 59-62, 69. Moreover, each of Defendants' speculative challenges goes to the merits of loss causation and the calculation of damages based on the causation analysis yet to be undertaken – not whether damages can be calculated on a class-wide basis consistent with Plaintiffs' theory of liability, which is the relevant question at class certification. Indeed, the Supreme Court has ***twice*** confirmed that plaintiffs are not required to "prove loss causation in order to obtain class certification." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 807 (2011); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) (same).[15] Defendants' demand for a loss causation analysis at the class certification stage, five months before the close of fact discovery, is unfounded.

### 1. It Is Premature for Dr. Feinstein to Opine on the Causes of Particular Stock Price Declines

Defendants assert that Dr. Feinstein's proposed methodology does not comply with *Comcast* because it purportedly seeks to recover "the entire May 9, 2022 stock price drop, which would reflect damages for the materialization of both the disclosed and undisclosed risk rather than the

---

[15]   *See St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2022 WL 4598044, at *5 (M.D. Tenn. Sept. 30, 2022) (challenges to loss causation are "'not appropriate'" at the class certification stage); *Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, 2020 WL 5757695, at *15 (D. Minn. Sept. 28, 2020); *In re CenturyLink Sales Pracs. & Sec. Litig.*, 337 F.R.D. 193, 211-13 (D. Minn. 2020).

more limited 'out-of-pocket' damages that would be consistent with Plaintiffs' theory of liability." Opp. at 15.  Defendants are both legally and factually incorrect.

As an initial matter, whether some portion of Pega's stock price decline was or was not due to the alleged fraud (as Defendants contend) presents a question that is common to all members of the Class.[16]  Opp. at 15.  Thus, this dispute has no bearing on predominance, and presents no basis to deny the Motion.

Even if considered, Defendants' argument hopelessly relies on multiple faulty premises. First, Plaintiffs do not seek "the entire May 9, 2022 stock price drop."  Opp. at 15.  Nowhere in Dr. Feinstein's reports or Plaintiffs' Motion does it state that Plaintiffs are seeking any (let alone the entire) portion of Pega's "May 9, 2022 stock price drop."  *Id.*  To the contrary, as Plaintiffs explicitly state, they seek only their *out-of-pocket* damages arising from the price declines on *May 10 and 11*. ¶¶244-246 (alleging Pega announced the Virginia Action[17] *after the market closed* on May 9, 2022, causing a 20% drop on May 10, 2022 followed by an 8% drop on May 11, 2022).

In addition, Defendants rely on the premise that Defendants "clearly disclosed" the risks concerning the Virginia Action on February 16, 2022, and so "part of the [May] drop" was necessarily due to the "materialization" of "clearly disclosed" risks.  Opp. at 15 ("[T]he Virginia Litigation and the risk of an Appian win were clearly disclosed, and therefore part of the drop was simply from the materialization of this already known risk.").  However, Plaintiffs dispute that the

---

[16]  *E.g.*, *Junge v. Geron Corp.*, 2022 WL 1002446, at *8 (N.D. Cal. Apr. 2, 2022) (materialization of the risk "is a form of loss causation," and "since loss causation is a merits inquiry," the expert's damages methodology "did not need to spell out precisely how it would account for confounding variables"); *TreeHouse Foods*, 2020 WL 919249, at *9 ("[A]ll the putative class members' claims will live or die by their ability to disaggregate potentially confounding news, making the question 'common' to all of the members.").

[17]  The "Virginia Action" is *Appian Corporation v. Pegasystems Inc., et al.*, Civil Action No. 2020-07216 (Circuit Court of Fairfax County, Virginia).

- 10 -

truth regarding Pega's misconduct against Appian and the Virginia Action were "clearly disclosed" on February 16; instead, Defendants continued to mislead investors when they disclosed the existence of the Virginia Action, by, *inter alia*, falsely assuring investors that Appian's claims were "without merit," obfuscating the true facts of Pega's scheme against Appian, and omitting material facts regarding Pega's officers' (including Trefler's) intimate involvement in Pega's corporate espionage.  Thus, whether Defendants "clearly disclosed" the truth concerning the Virginia Action on February 16 presents a highly disputed issue of fact – one that is Defendants' burden to prove – inappropriate for determination at this stage.[18]

These issues are compounded by Defendants' reliance on erroneous characterizations of Plaintiffs' allegations.[19]  Moreover, Defendants are wrong to suggest that a "materialization" of a purportedly "clearly disclosed" risk (Opp. at 15) is necessarily unrelated to Plaintiffs' allegations and

---

[18]   *See, e.g.*, *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at *15 (C.D. Cal. Aug. 4, 2014) ("Defendants bear a heavy burden to prevail on a truth-on-the-market defense."); *Amgen*, 568 U.S. at 481 (a truth-on-the-market defense is "no barrier to finding that common questions predominate"); *CenturyLink*, 337 F.R.D. at 211 ("[A]t the class certification stage, a truth-on-the-market defense raises common class-wide issues.") (citing *Amgen*, 568 U.S. at 482); *Patterson*, 2020 WL 5757695, at *13 ("[A]rguments about whether particular statements were actually disclosures, like arguments about loss causation and that the market already was aware of antitrust allegations, are common questions that can be adjudicated on a class-wide basis at summary judgment or trial."); *see also City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems Inc.*, 2023 WL 4706741, at *11 (D. Mass. July 24, 2023).

[19]   For example, Hutton appears to ignore most of the allegations in the Complaint, and instead bases her overly narrow interpretation of Plaintiffs' "allegations" on an excerpt from a footnote on the last page of a pleadings-stage brief.  Feinstein Rebuttal, ¶¶24-27 (noting Hutton's overly restrictive interpretation of the alleged fraud).  As a result, Hutton's report reflects a fundamental misunderstanding of the Complaint's allegations, as well as of Plaintiffs' pleading of the corrective disclosures that revealed to investors previously concealed or misrepresented facts regarding the Virginia Action and Defendants' misconduct against Appian.  *E.g.*, ¶¶18-25; Feinstein Rebuttal, ¶¶24-27, 49-50.

- 11 -

caused no fraud-related loss.[20]  Although Defendants "disclosed" the ***existence*** of the "Virginia

Litigation" on February 16, that disclosure was itself misleading and concealed or misrepresented

material facts regarding, *inter alia*, Defendants' egregious misconduct against Appian, including

facts of Trefler's and other officers' intimate involvement in Pega's scheme.   ¶¶145-147;

*Pegasystems*, 2023 WL 4706741, at *11.[21]  Thus, Defendants' suggestion that the purported "part of

the drop" attributable to a "clearly disclosed" risk caused no fraud-related loss is unsupported.  Opp.

---

[20]   The out-of-Circuit case Defendants cite, *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 690 (5th Cir. 2015), for the proposition that Plaintiffs purportedly seek "consequential damages" is factually inapposite and has been widely rejected.  Opp. at 15.  Unlike in this case, plaintiffs in *Ludlow* sought to certify a subclass of persons who "would not have bought BP stock *at all* were it not for the alleged misrepresentations," and sought consequential damages for that subclass.  800 F.3d at 690 (emphasis in original).  *Ludlow* certified a separate subclass of persons that, like Plaintiffs here, alleged that misstatements and omissions inflated the stock price, and whose "damages model, in turn, relied on a theory that the 'inflation' in the stock price caused by the misstatements would be exposed by at [sic] the fall in the price when certain 'corrective events' brought the 'true' information to the market's attention."  *Id.* at 680; *Cosby v. KPMG, LLP*, 2020 WL 3548379, at *7-*8 (E.D. Tenn. June 29, 2020) (finding defendants' reliance on *Ludlow* "unpersuasive" when plaintiffs relied on an out-of-pocket methodology); *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 630 (N.D. Cal. 2018) (same); *Junge*, 2022 WL 1002446, at *9 ("[T]he plaintiffs [in *Ludlow*] had alleged 'each plaintiff would not have bought BP stock *at all* were it not for the alleged misrepresentations.' [And] [o]n that reasoning, the plaintiffs were seeking consequential damages, *i.e.*, the 'full stock price decline' after the spill . . . 'requir[ing] individualized inquiry' into whether the risk of spill would have caused a given investor to forgo purchasing any BP stock. . . . Unlike [*Ludlow*], plaintiffs do not seek consequential damages or argue that investors would have refused to purchase Geron stock had they known the truth about TSS and CR/PR data.  They contend that Geron concealed information from the market, thus artificially inflating price.  This order perceives no similar need for individualized inquiry.") (emphasis in original); *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *16 (S.D.N.Y. Sept. 8, 2021) ("[N]ot only is *Ludlow* an out-of-circuit case that is contrary to precedent in this Circuit, but its facts are inapplicable to the facts in the case at bar.").

[21]   *Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218 (S.D.N.Y. 2009), is inapposite.  There, the court held, ***on a motion to dismiss*** that a plaintiff failed to allege loss causation because the allegedly concealed information had already been disclosed.  *See id.* at 229.  This Court already rejected this exact argument at the motion to dismiss stage.  *See Pegasystems*, 2023 WL 4706741, at *11 ("***According to Pega, the investors were sufficiently made aware of the risks connected with the Virginia Action . . . . This was not the case***.  ***Pega's February 2022 'disclosure' cannot shield Pega from liability*** because it misleadingly represented to investors that Appian's claims were 'without merit.'").

- 12 -

at 15; Feinstein Rebuttal, ¶¶48-57.  Furthermore, even if some "part of the drop" was due to the

purported "materialization" of a "clearly disclosed" risk (as Defendants baldly contend), Dr.

Feinstein's out-of-pocket damages methodology accommodates materialization of both known and

unknown risks, in a common manner for all Class members, appropriately given the liability theory

and facts of the case.  Feinstein Rebuttal, ¶50.

### 2.    Defendants' Incorrect Assertion that Plaintiffs Allege Multiple "Theories of Liability" Is Baseless

Defendants fault Plaintiffs for not explaining how they would "disaggregate" damages

stemming from Plaintiffs' multiple "theories of liability," each of which (according to Defendants)

"may result in different amounts of price inflation."  Opp. at 17.[22]  Defendants' argument is dead

wrong.  Plaintiffs do not assert multiple "theories of liability."  Plaintiffs assert *one* theory of

liability, which is that Defendants engaged in a fraudulent scheme and made material misstatements

and omissions that artificially inflated and manipulated Pega's stock price, causing Class members to

suffer damages when the truth was revealed and inflation was removed from the stock price.  ¶¶242-

249.  Because Dr. Feinstein's proposed damages methodology can calculate damages on a class-

wide basis consistent with Plaintiffs' single theory of liability, it satisfies *Comcast*.  Feinstein

Report, ¶¶151-153; Feinstein Rebuttal, ¶¶32-34.

Although Defendants made different *misstatements and omissions*, courts reject the

nonsensical proposition that each "type" of misstatement or omission constitutes a separate "theory

of liability."  Opp. at 17-18 (purporting to list six "theories of liability" corresponding to six types of

misstatement or omissions).  For instance, in rejecting an identical *Comcast* argument, the Third

---

[22]  Opp. at 4 (the "Complaint asserts theories of liability"); *id.* at 13 (referring to Plaintiffs' "Theories of Liability"); *id.* at 17 ("Plaintiffs admit that they have theories of liability"); *id.* at 18 ("Plaintiffs need to demonstrate that they can prove, on a classwide basis, the damages associated with each of these theories of liability").

- 13 -

Circuit explained that "[a]lthough the Complaint alleges many misrepresentations about various, interrelated topics, because each of Defendants' alleged misrepresentations is part of their broader alleged concealment of the lack of competition in the generic drug market and the potential adverse consequences on Lannett's business, *each misrepresentation is categorically part of the same, single theory*." *Utesch v. Lannett Co., Inc.*, 2021 WL 3560949, at *12 (E.D. Pa. Aug. 12, 2021), *aff'd sub nom. Univ. of P.R. Ret. Sys. v. Lannett Co., Inc.*, 2023 WL 2985120 (3d Cir. Apr. 18, 2023).[23] Defendants' proposition is particularly fallacious where, as here, their misstatements and omissions were all part of Defendants' overarching concealment and misrepresentation of facts concerning the Virginia Action and Pega's years-long corporate espionage against Appian. Complaint, §V.

### 3. Defendants' Other Premature "Inflation" Challenges Fail to Present a *Comcast* Dispute

Defendants also speculate that Plaintiffs' *six* purported "theories of liability" featured different statements of "varying materiality," which necessarily "injected" varying amounts of

---

[23] *See also In re Teva Sec. Litig.*, 2021 WL 872156, at *42 (D. Conn. Mar. 9, 2021) ("This case comfortably complies with *Comcast*. I agree with the Plaintiffs that there is one theory of liability: the Defendants' misstatements and omissions regarding the reasons for their business success in the generics market caused the price of the Teva Securities to be artificially inflated during the Class Period."); *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 446 (D. Ariz. 2019) ("In contrast [to *Comcast*], there is only one theory of liability here: 'Plaintiff's liability theory is "an inflated stock price as a result of certain misrepresentations and/or omissions" and corrective disclosures that removed such inflation.'"); *Junge*, 2022 WL 1002446, at *6 ("Unlike *Comcast*, in which a damages figure swept in theories of liability that had been eliminated from the case, lead plaintiffs' proposed damages model relies on just one theory of liability: that Geron's misleading statements about TSS and CR/PR artificially inflated Geron common stock price, and that the price declined when the true nature of those transactions came to light.").

4877-6172-4073.v1

inflation into Pega's stock over time.[24]  Defendants offer no actual proof of any of this, let alone explain how it bears on the issue of predominance.

To the extent Defendants are challenging whether Dr. Feinstein's out-of-pocket methodology could account for these hypothetical changes in the amount of artificial inflation over time, Dr. Feinstein expressly states he **can** account for such a situation **if** it arises.  Feinstein Report, ¶¶155, 157(iii); Feinstein Rebuttal, ¶¶58-69.[25]  Indeed, as Dr. Feinstein explains, "computational issues such as time-varying inflation are common and are routinely encountered and addressed in class action securities cases."  Feinstein Rebuttal, ¶65; *id.*, ¶63 ("time-varying inflation is a common issue").  Thus, even **if** time-varying inflation is found to exist in this case, the out-of-pocket damage methodology can account for it on a class-wide basis.  *Id.*, ¶¶63, 65-68.[26]

---

[24]  Opp. at 14 ("each theory of misrepresentation or omission liability that Plaintiffs allege . . . involve varying degrees of price inflation"); *id.* at 18 (disputing "that each alleged misstatement would have injected the same amount of inflation into Pegasystems's common stock"); *see also id.* at 2 ("each of Plaintiffs' varying theories . . . cannot result in the same amount of price inflation"). Defendants' citation to *In re Cabletron Sys., Inc.*, 311 F.3d 11 (1st Cir. 2002), is specious.  There, the court evaluated, on a motion to dismiss, whether certain statements were materially misleading. *See id.* at 34-37.  The court **did not** hold that certain types of statements are categorically more material than other types of statements, and it **did not** address whether different types of misstatements create varying levels of price inflation. *Id. Cheng v. Activision Blizzard, Inc.*, 2022 WL 2101919 (C.D. Cal. Apr. 18, 2022), is also inapposite because it decided, on a motion to dismiss, that certain statements in a code of conduct were – unlike in this case – merely aspirational. *Id.* at *9-*10; *see also Pegasystems*, 2023 WL 4706741, at *9 ("[T]he Code of Conduct Statement is not "aspirational."  Instead, it describes with specificity a course of conduct that Pega promised to abjure.  Courts have found similarly specific statements to be actionable.").

[25]  Although Hutton speculates "the evolving information available to Pega and the market regarding the Virginia Litigation **could have** resulted in changes in alleged inflation," Hutton offers no actual proof that it did.  *See* ECF 135-1 ("Hutton Report"), ¶49.  Further, given her apparent failure to consider Pega's internal documents (*id.*, Appendix A), Hutton's conjecture over what "information [was or was not] available to Pega" carries no weight.

[26]  *See, e.g.*, *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 137-38 (M.D. Tenn. 2020) (rejecting defendants' argument under *Comcast* that the proposed model did not account for time-varying inflation, finding such arguments to be premature at class certification); *Strougo v. Tivity Health, Inc.*, 606 F. Supp. 3d 753, 768 (M.D. Tenn. 2022) (rejecting *Comcast* challenge to an expert's

- 15 -

Courts have consistently rejected arguments similar to Defendants' on the grounds they prematurely attack the accuracy of the expert's damages model and loss causation at the class certification stage.[27]  Regardless, at this stage, Plaintiffs must show only "'that damages are capable of measurement on a classwide basis.'" *Levy v. Gutierrez*, 448 F. Supp. 3d 46, 64 (D.N.H. 2019) (quoting *Comcast*, 569 U.S. at 34-36).  They have done this.  Feinstein Report, ¶¶148-159; Feinstein Rebuttal, ¶¶3, 32-34.  Thus, Defendants' speculative "inflation [arguments] do not preclude certification."[28]

Finally, Hutton's speculation as to whether Dr. Feinstein could account for "confounding information" has no bearing on predominance either.[29]  For one, Dr. Feinstein expressly notes that he is fully capable of measuring damages "***even in cases where there is confounding information***." Feinstein Report, ¶157(iii); Feinstein Rebuttal, ¶¶43-47.  Defendants do not dispute that experts such as Dr. Feinstein ***routinely*** account for "confounding information."  *Carbonite*, 2023 WL 4539855, at *10 ("'reject[ing] the suggestion that an event study is incapable of disaggregating the effects of confounding information'") (quoting *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at

---

proposed methodology based on argument that the model "'does not specify how he would account for time-varying inflation'"), *vacated on other grounds sub nom. In re Tivity Health, Inc.*, 2022 WL 17243323 (6th Cir. Nov. 21, 2022), *and certified on remand*, 2023 WL 3873305 (M.D. Tenn. June 7, 2023); *Wilson*, 2018 WL 3913115, at *17 (rejecting argument that "'Dr. Feinstein must propose a model capable of measuring changing levels of inflation'" at the class certification stage); *Waggoner v. Barclays PLC*, 875 F.3d 79, 91 (2d Cir. 2017) (rejecting argument that damages model proposed at the class certification stage "sufficiently account[s] for variations in the time each alleged misstatement became public").

[27]  *Supra* at 7, 9 & nn.16, 26.

[28]  *TreeHouse Foods*, 2020 WL 919249, at *10 ("'In virtually every securities fraud case, there is expert analysis and dispute regarding whether and to what extent the artificial inflation may have evolved over the class period.'").

[29]  Hutton Report, ¶32; *id.*, ¶53 n.88 (questioning whether "Prof. Feinstein were able to disaggregate the stock price impact of confounding news").

4877-6172-4073.v1

*20 (S.D.N.Y. July 10, 2019)).[30]  Finally, "disaggregating confounding information is a loss causation analysis for the merits stage – *securities fraud plaintiffs need not prove loss causation in order to obtain class certification*."  *Carbonite*, 2023 WL 4539855, at *10 (citing *Halliburton*, 563 U.S. at 807; *Patterson*, 2020 WL 5757695, at *14); *supra*, n.27.[31]

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion should be granted.

DATED:  March 3, 2024                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DEBRA J. WYMAN (admitted *pro hac vice*)
CHRISTOPHER D. STEWART (admitted *pro hac vice*)
LONNIE A. BROWNE (admitted *pro hac vice*)
MEGAN A. ROSSI (admitted *pro hac vice*)
NICOLE Q. GILLILAND (admitted *pro hac vice*)


s/ Christopher D. Stewart
CHRISTOPHER D. STEWART

---

[30]  *See also Allergan*, 2021 WL 4077942, at *15 ("[T]his Court has in the past 'reject[ed] the suggestion that an event study is incapable of disaggregating the effects of confounding information.'"); *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *18 (E.D.N.Y. Jan. 11, 2022) ("Such an event study, capable of 'disaggregating' 'confounding information disclosed in the numerous purported corrective disclosures' – is 'the generally accepted method for measuring damages in a securities fraud class action.'"), *report and recommendation adopted*, 2022 WL 969724 (E.D.N.Y. Mar. 31, 2022).

[31]  *See also TreeHouse Foods*, 2020 WL 919249, at *9 ("Defendants insinuate that [plaintiff's expert] will be unable to disaggregate any drops in stock prices . . . .  But, of course, all the putative class members' claims will live or die by their ability to disaggregate potentially confounding news, making the question 'common' to all of the members.").  Although Defendants attempt to distinguish Plaintiffs' authorities, Defendants merely reaffirm that their speculative arguments regarding "disaggregat[ing] stock drops" and "confounding information" present "loss causation" arguments to be addressed (if at all) "at the merits" stage.  Opp. at 20 n.5.

- 17 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com
cstewart@rgrdlaw.com
lbrowne@rgrdlaw.com
mrossi@rgrdlaw.com
ngilliland@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
CHAD JOHNSON (admitted *pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
chadj@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SNEHEE KHANDESHI (admitted *pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
skhandeshi@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

HUTCHINGS BARSAMIAN MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Telephone:  781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

Liaison Counsel for Lead Plaintiffs

- 18 -

4877-6172-4073.v1

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 3, 2024.

s/ Christopher D. Stewart
CHRISTOPHER D. STEWART

4877-6172-4073.v1