UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re PEGASYSTEMS INC. SECURITIES LITIGATION | ) ) ) | No. 1:22-cv-11220-WGY |

LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR: (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (2) CLASS CERTIFICATION FOR SETTLEMENT PURPOSES; AND (3) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS

4879-4922-6930.v1

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  A BRIEF HISTORY OF THE LITIGATION ......................................................3

III.  THE TERMS OF THE SETTLEMENT..............................................................4

IV.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .................6

  A.  Lead Plaintiffs and Lead Counsel Have Adequately Represented the
      Settlement Class...............................................................................................8

  B.  The Proposed Settlement Was Negotiated at Arm's Length ...................................9

  C.  The Settlement Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria ..........................10

    1.  The Settlement Is Adequate in Light of the Costs, Risks, and Delay
        of Trial and Appeal ...................................................................................10

    2.  The Proposed Method of Distributing Relief to Settlement Class
        Members and Processing Claims Is Effective ...........................................12

    3.  Lead Counsel's Fee and Expense Request Is Fair and Reasonable ...........13

    4.  Identification of Other Agreements ..........................................................13

  D.  The Settlement Treats Settlement Class Members Equitably Relative to
      Each Other ....................................................................................................14

  E.  The Reaction of the Settlement Class to the Settlement .......................................14

V.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT
    PURPOSES.......................................................................................................14

  A.  The Class Meets the Requirements of Rule 23(a) .................................................15

  B.  The Settlement Class Meets the Requirements of Rule 23(b)(3) .........................17

VI.  THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE
     PROCESS AND SHOULD BE APPROVED .....................................................19

VII.  PROPOSED SCHEDULE OF EVENTS..........................................................20

VIII.  CONCLUSION................................................................................................20

4879-4922-6930.v1

**TABLE OF AUTHORITIES**

Page

**CASES**

*Abrogated by Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)........................................................................................7

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972)...............................................................................................18

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...............................................................................................19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)...............................................................................................17

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)...............................................................................................18

*Bazerman v. Am. Airlines, Inc.*,
   2018 WL 11449583 (D. Mass. June 22, 2018) .......................................................15

*Bussie v. Allmerica Fin. Corp.*,
   50 F. Supp. 2d 59 (D. Mass. 1999) ..........................................................................8

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).....................................................................7, 9, 11, 14

*Courtney v. Avid Tech., Inc.*,
   2015 WL 13687328 (D. Mass. 2015) ......................................................................15

*Courtney v. Avid Tech.*,
   No. 1:13-cv-10686-WGY, ECF 157
   (D. Mass. May 12, 2015) .......................................................................................15

*Dahhan v. OvaScience, Inc.*,
   No. 1:17-cv-10511-IT, ECF 210
   (D. Mass. Dec. 20, 2022) .......................................................................................13

*De Giovanni v. Jani-King Int'l, Inc.*,
   262 F.R.D. 71 (D. Mass. 2009)...............................................................................17

*Hill v. State St. Corp.*,
   2015 WL 127728 (D. Mass. Jan. 8, 2015) .........................................................10, 19

4879-4922-6930.v1

**Page**

*In re AVEO Pharms., Inc. Sec. Litig.*,
    2017 WL 5484672 (D. Mass. Nov. 14, 2017) ...................................................15, 16

*In re Bos. Sci. Corp. Sec. Litig.*,
    604 F. Supp. 2d 275 (D. Mass. 2009) .............................................................14, 16

*In re Credit Suisse-AOL Sec. Litig.*,
    253 F.R.D. 17 (D. Mass. 2008)..........................................................................15, 18

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
    275 F.R.D. 382 (D. Mass. 2011)............................................................15, 17, 18

*In re Lupron Mktg. & Sales Prac. Litig.*,
    228 F.R.D. 75 (D. Mass. 2005)................................................................................6

*In re Lupron Mktg. & Sales Pracs. Litig.*,
    345 F. Supp. 2d 135 (D. Mass. 2004) .....................................................................8

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    297 F.R.D. 168 (D. Mass. 2013),
    *aff'd* 777 F.3d 9 (1st Cir. 2015) ...........................................................................16

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009)......................................................................................9

*In re Puerto Rican Cabotage Antitrust Litig.*,
    269 F.R.D. 125 (D.P.R. 2018) ................................................................................8

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
    630 F. Supp. 3d 241 (D. Mass. 2022) ..........................................................7, 9, 14

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005)..............................................................6, 7, 11, 17

*In re Sonus Networks, Inc. Sec. Litig.*,
    247 F.R.D. 244 (D. Mass. 2007)...........................................................................15

*In re StockerYale, Inc. Sec. Litig.*,
    2007 WL 2410361 (D.N.H. Aug. 21, 2007) ........................................................20

*In re Suffolk Univ. Covid Refund Litig.*,
    2022 WL 6819485 (D. Mass. Oct. 11, 2022)........................................................16

4879-4922-6930.v1

**Page**

*Jean-Pierre v. J&L Cable TV Servs.*,
    538 F. Supp. 3d 208 (D. Mass. 2021) ......................................................................9

*John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*,
    2004 WL 438790 (D. Mass. Mar. 9, 2004) ..............................................................14

*Lazar v. Pierce*,
    757 F.2d 435 (1st Cir. 1985) .....................................................................................6

*Luna v. Carbonite, Inc.*,
    2023 WL 4539855 (D. Mass. July 14, 2023) ...........................................................17

*Machado v. Endurance Int'l Grp. Holdings, Inc.*,
    2019 WL 4409217 (D. Mass. Sept. 13, 2019) .........................................................13

*Meaden v. Harbor One Bank*,
    2023 WL 3529762 (D. Mass. May 18, 2023) .............................................................8

*Medoff v. CVS Caremark Corp.*,
    2016 WL 632238 (D.R.I. Feb. 17, 2016) .................................................................16

*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*,
    582 F.3d 30 (1st Cir. 2009) .......................................................................................7

*Prinzo v. Hannaford Bros. Co., LLC*,
    343 F.R.D. 250 (D. Mass. 2023) ..............................................................................16

*Rivero Souss. v. Banco Santander S.A.*,
    2011 WL 13350165 (D.P.R. June 9, 2011) ..............................................................10

*Roberts v. TJX Cos.*,
    2016 WL 8677312 (D. Mass. Sept. 30, 2016) ...........................................................9

*Robinson v. Nat'l Student Clearinghouse*,
    14 F.4th 56 (1st Cir. 2021) .........................................................................................9

*Roland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2020) ....................................................................................8

*United States v. Comunidades Unidas Contra la Contaminacion*,
    204 F.3d 275 (1st Cir. 2000) .....................................................................................6

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000) ...................................................................................15

- iv -

Page

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78u-4 ...........................................................................................................3, 6, 19, 20
   §78u-4(a)(4) ....................................................................................................1, 5, 13
   §78u-4(a)(7) ................................................................................................................20

Federal Rules of Civil Procedure
   Rule 23 .............................................................................................................3, 15, 16, 20
   Rule 23(a) ...................................................................................................................15
   Rule 23(a)(1) .............................................................................................................15
   Rule 23(a)(2) .................................................................................................2, 15, 16
   Rule 23(a)(3) .............................................................................................................16
   Rule 23(a)(4) .............................................................................................................16
   Rule 23(b)(3) ................................................................................................15, 17, 18
   Rule 23(b)(3)(A) .......................................................................................................18
   Rule 23(b)(3)(B) .......................................................................................................18
   Rule 23(b)(3)(C) .......................................................................................................18
   Rule 23(b)(3)(D) .......................................................................................................18
   Rule 23(c)(2) .............................................................................................................19
   Rule 23(e) ...............................................................................................6, 13, 19
   Rule 23(e)(1) ...............................................................................................................6
   Rule 23(e)(1)(B) ...............................................................................................3, 6, 19
   Rule 23(e)(2) ......................................................................................................6, 7, 8
   Rule 23(e)(2)(B) .........................................................................................................9
   Rule 23(e)(2)(D) .......................................................................................................14
   Rule 23(e)(2)(C) .......................................................................................................10
   Rule 23(e)(2)(C)(i) ...................................................................................................10
   Rule 23(e)(2)(C)(ii) ..................................................................................................12
   Rule 23(e)(2)(C)(iii) .................................................................................................13
   Rule 23(e)(3) ...............................................................................................................7

Lead Plaintiffs[1] respectfully submit this memorandum in support of their motion for preliminary approval of a proposed Settlement to resolve this action against Defendants for $35 million in cash (the "Settlement Amount").  By the accompanying Motion, Lead Plaintiffs seek entry of an order: (i) preliminarily approving the proposed Settlement; (ii) preliminarily certifying the Settlement Class for settlement purposes; (iii) approving the proposed form and manner of providing notice of the proposed Settlement to the Settlement Class; and (iv) setting a hearing date for the Court to consider final approval of the Settlement, approval of the Plan of Allocation of the Net Settlement Fund, Lead Counsel's application for attorneys' fees and expenses, and Lead Plaintiffs' applications for awards pursuant to 15 U.S.C. §78u-4(a)(4) (the "Final Approval Hearing"), as well as a schedule for deadlines relevant thereto ("Preliminary Approval Order").

## I.    INTRODUCTION

The proposed Settlement, which follows nearly two years of zealous litigation, creates a $35 million cash recovery while avoiding the various risks inherent in litigating this case to trial.  As set forth below, the Settlement satisfies Federal Rule of Civil Procedure ("Rule") 23(e), is fair, reasonable, and adequate under the governing standards, and warrants preliminary (and, ultimately, final) approval.  Lead Plaintiffs and Lead Counsel approve of the Settlement.  Lead Plaintiffs are sophisticated institutional investors with nearly three billion dollars of assets under management and experience overseeing securities fraud litigation.  Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") possesses substantial securities litigation experience and has litigated

---

[1]    The proposed settlement of this Litigation (the "Settlement") between Lead Plaintiffs Central Pennsylvania Teamsters Pension Fund - Defined Benefit Plan, Central Pennsylvania Teamsters Pension Fund - Retirement Income Plan 1987, and Construction Industry Laborers Pension Fund (the "Funds" or "Lead Plaintiffs") and defendants Pegasystems Inc. ("Pega" or the "Company") and Alan Trefler (collectively, "Defendants," and together with Lead Plaintiffs, the "Settling Parties") is memorialized in the Stipulation of Settlement (the "Stipulation") dated April 23, 2024, submitted herewith.  All capitalized terms not otherwise defined shall have the meanings ascribed to them in the Stipulation. All internal citations are omitted and emphasis is added, unless otherwise indicated.

hundreds of cases to resolution.  Lead Plaintiffs retained Robbins Geller specifically because of its experience and acumen in complex securities matters.

The Settling Parties were well-informed of the strengths and weaknesses of their respective positions when they negotiated the Settlement.  For instance, they had fully briefed, argued, and received a ruling on Defendants' motion to dismiss, and fully briefed (and exchanged competing expert reports regarding) Lead Plaintiffs' motion for class certification.  Moreover, the Settling Parties had engaged in extensive fact discovery since mid-2023, which included: (i) various sets of document requests and interrogatories; (ii) over 40 third-party document subpoenas; (iii) the production to Lead Plaintiffs of over 263,000 documents (over 1.6 million pages), including large volumes of discovery, deposition, expert, and trial materials from the trade secrets case between Pega and Appian Corporation in Virginia (*Appian Corp. v. Pegasystems Inc., et al.*, Civil Action No. 2020-07216 (Circuit Court of Fairfax County, Virginia) (the "Virginia Action")); and (iv) noticing and preparing for the fact depositions of defendants Pega and Trefler, and various non-parties.  *See also infra*, §IV.A.

Although Lead Plaintiffs believe in the merits of their claims, they are cognizant of the costs and risks of litigating this case to trial.  For one, Lead Plaintiffs would have to prove each element of their §10(b) claims to prevail at trial; Defendants would need to defeat just one element to succeed. In addition, litigating this case through trial and appeals could take years, would exact enormous costs on both sides, and carries a real risk of recovering much less than $35 million, or nothing at all. Moreover, the fact that Pega faces an over $2 billion judgment in the Virginia Action presents a significant and unique risk that demanded consideration.  *See infra*, §IV.C.1.

At this stage, the Court need only determine whether it will "likely be able to" approve the proposed Settlement under Rule 23(a)(2), such that the Settlement Class should be notified of the

- 2 -

proposed Settlement.  Fed. R. Civ. P. 23(e)(1)(B); *see infra*, §IV.  Given the $35 million cash recovery obtained and the considerable risks and costs of prolonged litigation, Lead Plaintiffs respectfully request that the Court enter the Preliminary Approval Order, which will, among other things:  preliminarily certify the Settlement Class for settlement purposes, and preliminarily approve the Settlement on the terms set forth in the Stipulation; approve the form and content of the Notice, Proof of Claim, Summary Notice, and Postcard Notice, attached as Exhibits 1-4 to the Preliminary Approval Order; find that the procedures for distribution of the Postcard Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and set a schedule and procedures for: dissemination and publication of notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## II.    A BRIEF HISTORY OF THE LITIGATION

Magistrate Judge Paul G. Levenson appointed the Funds as Lead Plaintiffs, and approved the Funds' selection of Robbins Geller as Lead Counsel, on August 9, 2022.  ECF 40.  On October 18, 2022, following their extensive investigation, Lead Plaintiffs filed the 97-page Consolidated Amended Complaint for Violations of the Federal Securities Laws ("Complaint").  ECF 61.  Defendants moved to dismiss the Complaint on December 19, 2022.  ECF 65.  Following full briefing and oral argument, the Court denied Defendants' motion from the bench on May 17, 2023, and further explained the Court's ruling in a July 24, 2023 written opinion.  ECF 92.  The parties' extensive fact discovery (which is discussed further herein) commenced shortly after the May 17 hearing.  On December 12, 2023, Lead Plaintiffs filed a motion to certify a class.  ECF 108.

Defendants filed an opposing brief and expert report on February 28, 2024, to which Lead Plaintiffs responded four days later, on March 3, 2024.  ECFs 134, 135, 137.

While briefing class certification, the Settling Parties participated in an all-day, in-person mediation session with John Van Winkle, an experienced mediator, on February 27, 2024.  The parties exchanged detailed mediation statements and supporting exhibits in advance of the mediation session.  Despite their efforts, the Settling Parties did not reach a settlement on February 27, and continued preparing for the March 7, 2024 hearing on class certification.  ECF 123.  Following subsequent negotiations facilitated by Mr. Van Winkle, on March 4, 2024, the parties accepted a mediator's proposal to settle the Litigation for $35 million.

## III.     THE TERMS OF THE SETTLEMENT

Under the proposed Settlement, Defendants and/or their insurance carriers on behalf of the Defendants will pay (or cause to be paid) $35 million into the Escrow Account, which amount (plus accrued interest) comprises the Settlement Fund.  Stipulation, ¶2.2.  The cost of settlement notice and administration ("Notice and Administration Expenses") will be paid from the Settlement Fund.  *Id.*, ¶2.10.[2]  Lead Plaintiffs propose the appointment of Gilardi & Co. LLC, a nationally recognized class action settlement administrator, to oversee settlement notice and administration.  *See* www.gilardi.com.  The proposed plan for notice to the Settlement Class and claims processing is further discussed *infra* at §VI.

Should the Court grant preliminary approval of the Settlement, Lead Counsel intends to submit an application with its opening papers in support of final approval for: (a) an award of attorneys' fees not to exceed 33% of the Settlement Amount; (b) payment of costs and expenses

---

[2]     Because the Settlement Fund is a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, the income earned on the Settlement Fund is taxable.  All Taxes and Tax Expenses shall be paid from the Settlement Fund.

- 4 -

resulting from the prosecution of the Litigation not to exceed $450,000; and (c) any interest accrued on both amounts.  Such fees and expenses shall be paid from the Settlement Fund once the Court executes the Judgment and upon entry of the order awarding such fees and expenses.  Stipulation, ¶6.2; *infra*, §IV.C.3.  In addition, pursuant to 15 U.S.C. §78u-4(a)(4), Lead Plaintiffs intend to request an amount not to exceed $20,000 (in the aggregate) for their reasonable costs and expenses incurred in representing the Settlement Class.  Stipulation, ¶6.1.  Once Notice and Administration Expenses, Taxes, Tax Expenses, Court-approved attorneys' fees and expenses, and any award pursuant to 15 U.S.C. §78u-4(a)(4) have been funded from the Settlement Fund, the remaining amount ("Net Settlement Fund") shall be distributed pursuant to the Court-approved Plan of Allocation, to Authorized Claimants who are entitled to a distribution of at least $10.00.  *Id.*, ¶5.10.[3]

In exchange for the benefits the Settlement provides, Settlement Class Members who do not opt out of the Settlement will be subject to the release of claims against Defendants as set forth in the Stipulation, ¶4.1.  Moreover, if, prior to the Settlement Hearing, requests for exclusion from the Settlement Class exceed an agreed-upon threshold, Defendants may (but are not obligated to) terminate the Settlement.  Stipulation, ¶7.3; *infra*, §IV.C.4.

Should the Court preliminarily approve the proposed Settlement, the Claims Administrator will take various steps to provide the Settlement Class with notice of the Settlement, including: (i) mailing or emailing the Postcard Notice (attached as Exhibit 4 to the Preliminary Approval Order) to Settlement Class Members who can be identified with reasonable effort; and (ii) causing the Summary Notice (attached as Exhibit 3 to the Preliminary Approval Order) to be published in *The Wall Street Journal* and over a national newswire service.  Preliminary Approval Order, ¶11; *see*

---

[3]    The Plan of Allocation treats all Settlement Class Members equitably based on the timing of their purchases, acquisitions, and sales of Pega common stock.  *See infra*, §IV.D.

*also infra*, §VI.   Further, the Claims Administrator will establish a case-specific website: (i) on which the Stipulation, Notice (attached as Exhibit 1 to the Preliminary Approval Order), Proof of Claim (attached as Exhibit 2 to the Preliminary Approval Order), and other case documents will be posted; and (ii) through which claims may be submitted.   *Id.*

The Notice provides Settlement Class Members with all of the information required by the PSLRA, including (*inter alia*): (i) the terms of, and reasons for, the Settlement; (ii) the terms of Lead Counsel's application for attorneys' fees and expenses; and (iii) the date, time, and location of the Settlement Hearing.   *See infra*, §VI.

## IV.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Settlement is a highly favored means of resolving disputes in the First Circuit.   *See United States v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000) (noting "the strong public policy in favor of settlements").   This is especially so in the context of class actions.   *See In re Lupron Mktg. & Sales Prac. Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements."); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005) (Young, J.) (same, quoting *Lupron* at 88); *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) (noting "the overriding public interest in favor of . . . voluntary settlement of . . . class actions").

Rule 23(e) requires judicial approval of a class action settlement.   *See* Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), preliminary approval of a settlement is appropriate where "the parties[] . . . show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."   Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a settlement is "fair, reasonable, and adequate," including whether:

> (A)   the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Courts in this Circuit have also considered the factors from *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974); *Abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) (several of which overlap with Rule 23(e)(2)'s factors) "in assessing the fairness of a settlement":

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[4]

District courts "enjoy[] considerable range in approving or disapproving a class action settlement, given the generality of the standard."[5] Moreover, courts in this Circuit "presume[] [a]

---

[4]     *See In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 244 (D. Mass. 2022) (in granting final approval of class action settlement, discussing the *Grinnell* factors); *see also Relafen*, 231 F.R.D. at 72 (same).

[5]     *See Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 45 (1st Cir. 2009); *see also id.* at 44 ("[T]he ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.").

proposed settlement is fair and reasonable if '(1) the negotiations occurred at arm's length; (2) there

was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation;

and (4) only a small fraction of the class objected.'"[6]  The proposed Settlement readily satisfies the

factors set forth in Rule 23(e)(2) and relevant authority, each of which is addressed in §IV.A.-E.

below (some factors together, to the extent they overlap).  Although the Settlement merits final

approval, the Court need not make that determination at this time.  Rather, at this stage, Lead

Plaintiffs are requesting only that the Court take the first step in the two-step settlement approval

process and grant preliminary approval of the proposed Settlement.[7]

### A.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class by

diligently prosecuting this Litigation on their behalf, including by, among other things: (i) drafting

and filing the detailed Complaint; (ii) successfully opposing dismissal with prejudice; (iii) fully

briefing, and preparing for the March 7, 2024 hearing on Lead Plaintiffs' class certification motion;

(iv) fully briefing two motions to compel Defendants' discovery (ECFs 102, 114); (v) receiving

and/or reviewing over 263,000 documents (over 1.6 million pages) in discovery; (vi) collecting and

producing significant documents in discovery; (vii) drafting, issuing, and negotiating the scope of

---

[6]    *See Meaden v. Harbor One Bank*, 2023 WL 3529762, at *3 (D. Mass. May 18, 2023) (*citing In re Lupron Mktg. & Sales Pracs. Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004)).  District courts also give significant weight to the judgment of experienced counsel who conducted arm's-length negotiations.  *See Roland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2020) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel.").

[7]    *See In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2018) ("At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequacy of a proposed settlement . . . .").

party document requests, and over 40 third-party document subpoenas; (viii) noticing and preparing for depositions of Defendants, Pega's external auditor, and other key individuals; and (ix) mediating this case to a $35 million cash recovery.[8]

### B.    The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B), which concerns whether "the proposal was negotiated at arm's length," is satisfied.  Fed. R. Civ. P. 23(e)(2)(B).  After exchanging mediation statements, the parties conducted an in-person mediation with Mr. Van Winkle on February 27, 2024.  On March 4, 2024, following subsequent negotiations facilitated by Mr. Van Winkle, the parties accepted a mediator's proposal to settle the Litigation.

The parties were well informed of the strengths and weaknesses of their respective positions when they negotiated the Settlement.  Among other things, the parties had obtained a ruling on Defendants' motion to dismiss and substantially completed briefing on class certification, and Lead Plaintiffs had received and/or reviewed hundreds of thousands of documents in discovery. Accordingly, Lead Plaintiffs and Lead Counsel were well informed of the strengths of the Settlement Class's claims, as well as of Defendants' defenses (which are further discussed *infra*, §IV.C.1.), when they agreed to the Settlement.  That experienced counsel on both sides, each well aware of the other side's positions, reached the Settlement through arm's-length negotiations facilitated by an experienced mediator, weighs in favor of the Settlement.[9]

---

[8]      Given these and other facts, the overlapping third *Grinnell* factor – "the stage of the proceedings and the amount of discovery completed" – favors the Settlement.

[9]      *See Jean-Pierre v. J&L Cable TV Servs.*, 538 F. Supp. 3d 208, 213 (D. Mass. 2021) ("'If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable.'") (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)); *see also Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) (same); *Roberts v. TJX Cos.*, 2016 WL 8677312, at *5 (D. Mass. Sept. 30, 2016) (same); *Ranbaxy*, 630 F. Supp. 3d at 244 ("[T]here is a presumption in [the settlement's] favor so long as parties engaged in arms-length negotiations after meaningful discovery.").

C.     The Settlement Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria

1.     The Settlement Is Adequate in Light of the Costs, Risks, and
       Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) concerns the adequacy of the settlement in light of the "costs, risks, and delay that trial and appeal" could inevitably impose.  Fed. R. Civ. P. 23(e)(2)(c)(i).[10]  In assessing a settlement's adequacy, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *Hill v. State St. Corp.*, 2015 WL 127728, at *10 (D. Mass. Jan. 8, 2015).  A court need only determine whether the settlement falls within a range of reasonableness that "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Rivero Souss. v. Banco Santander S.A.*, 2011 WL 13350165, at *7 (D.P.R. June 9, 2011).

Given this case's complexities and the many disputed factual and legal issues, litigating this case to trial would have exacted tremendous costs.  For instance, Lead Counsel expected to prepare for and take (or defend) dozens of fact and expert depositions, submit and receive various experts' reports, and prepare for a lengthy and expensive trial.  Given the high financial stakes, even had Lead Plaintiffs prevailed on their claims at trial, an appeal was certain to follow.

Although Lead Plaintiffs believe their case is strong, they are cognizant of the defenses they could potentially face in establishing liability and damages at trial.  For instance, Defendants contend that their alleged misstatements and omissions were neither materially misleading nor made with scienter, that the Virginia Action was immaterial to investors throughout most of the Settlement

---

[10]     The discussion in §IV.C.1. also supports *Grinnell*'s first ("the complexity, expense, and likely duration of the litigation"), fourth ("the risks of establishing liability"), fifth ("the risks of establishing damages"), sixth ("the risks of maintaining the class action through the trial"), and ninth factors ("the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation").

- 10 -

Class Period, and that Defendants' decision to not disclose the Virginia Action prior to February 16, 2022 (as well as Defendants' public statements in early 2022 discussing the Virginia Action) constitute inactionable opinions.[11]  Defendants were also expected to contend at trial that they relied on Pega's external auditor (Deloitte and Touche, LLP), and/or other professional advisors (such as Pega's in-house and outside counsel) in making public statements during the Settlement Class Period.  Further, Defendants have disputed that the alleged fraud caused any recoverable losses to the Settlement Class, and were expected to challenge loss causation and damages at trial.[12]  Finally, even if the Court had granted Lead Plaintiffs' motion for class certification following the March 7, 2024 hearing (ECF 109), Defendants might have tried to unwind that decision through appeals.

The over $2 billion Virginia judgment looming over Pega presents a significant risk to the Settlement Class.  In September 2022, Appian obtained a judgment against Pega for $2.036 billion (as well as approximately $24 million in attorney's fees and costs, and post-judgment interest of around $122 million per year) following the May 2022 jury verdict in the Virginia Action.  Pega appealed the judgment to the Virginia Court of Appeals, which heard oral argument in November 2023 and is expected to issue a decision soon.  Should Pega ultimately fail to significantly reduce or nullify the Virginia judgment, Pega's ability to fund a judgment following a trial in this case would be severely jeopardized.[13]

---

[11]     *See* ECF 65 at 6-28; ECF 72 at 2-19; ECF 87 at 102-107 (Defendants asserting 25 "affirmative and other defenses").

[12]     *See* ECF 65 at 28-30; ECF 72 at 19-20; ECF 87 at 106-107.

[13]     Given the risks inherent in trying this case through trial and appeals, and the looming $2 billion judgment against Pega, the seventh and eighth *Grinnell* factors ("the ability of the defendants to withstand a greater judgment" and "the range of reasonableness of the settlement fund in light of the best possible recovery") both weigh in favor of the Settlement.  *Relafen*, 231 F.R.D. at 74 ("'Although fully litigating the claims through trial could possibly result in a higher recovery, the

- 11 -

In short, neither obtaining nor collecting on a large trial judgment was assured.  The Settlement creates a concrete, immediate, and significant cash recovery for the Settlement Class, while avoiding the hazards and delay inherent in litigating this case through trial and appeals.

**2.      The Proposed Method of Distributing Relief to Settlement Class Members and Processing Claims Is Effective**

The proposed method of notice and claims administration satisfies Rule 23(e)(2)(C)(ii).  The proposed notice plan, which is discussed further at §VI., includes: (1) direct-mail or email of the Postcard Notice to those who can be identified with reasonable effort; and (2) publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service.  The Claims Administrator will utilize time-tested methods to ensure that Settlement Class Members who held Pega stock in their own names, and/or in street name, will receive a copy of the Postcard Notice. The Claims Administrator will also contact assorted brokers, banks, and other institutions known as Nominee Holders, and send a Postcard Notice and cover letter to hundreds of Nominee Holders identified by the Claims Administrator based on its years of experience.  Furthermore, the Claims Administrator will post important documents regarding the Settlement on a case-specific website, including the Stipulation, Notice, Proof of Claim, Preliminary Approval Order, and all briefs and declarations in support of the Settlement and the requested fees and expenses.

The proposed method for processing Settlement Class Members' Claims – which includes a standard claim form that requests the information necessary to calculate the amount of a claimant's Claim pursuant to the Plan of Allocation, and which allows claimants to submit their Claims online or by mail – is also effective.  The Plan of Allocation (which was prepared with the assistance of Lead Counsel's damages consultant) estimates the amount of alleged artificial inflation in the price

---

settlement represents a necessary compromise between inherent risks of doing so and a guaranteed cash recovery.'").

of Pega common stock during the Settlement Class Period.  The Plan of Allocation will govern how Settlement Class Members' Claims will be calculated, and how funds will be distributed to Authorized Claimants.  Thus, the proposed plan of notice and method of distributing relief to the Settlement Class is effective, and complies with Rule 23(e) and due process requirements.

### 3. Lead Counsel's Fee and Expense Request Is Fair and Reasonable

Rule 23(e)(2)(C)(iii), which addresses "the terms of any proposed award of attorney's fees, including timing of payment," is also satisfied.  Fed. R. Civ. P. 23(e)(3)(C)(iii).  Lead Counsel intends to request an award of attorneys' fees not to exceed 33% of the Settlement Amount, and costs and expenses not to exceed $450,000, plus interest accrued on both amounts.  Lead Plaintiffs' proposed fee award is in line with others granted in securities fraud cases within this District.  *See, e.g.*, *Dahhan v. OvaScience, Inc.*, No. 1:17-cv-10511-IT, ECF 210 at 2 (D. Mass. Dec. 20, 2022) (awarding 33-1/3% of $15 million recovery, plus expenses); *Machado v. Endurance Int'l Grp. Holdings, Inc.*, 2019 WL 4409217, at *1 (D. Mass. Sept. 13, 2019) (awarding 33-1/3% of $18.65 million cash settlement, plus expenses).  Additionally, pursuant to 15 U.S.C. §78u-4(a)(4), Lead Plaintiffs intend to request an amount not to exceed $20,000 in the aggregate for their reasonable time and expenses in representing the Settlement Class.[14]

### 4. Identification of Other Agreements

The parties have entered into a standard Supplemental Agreement, which provides that Defendants may (but are not obligated to) terminate the Settlement if certain conditions and thresholds are met with respect to Settlement Class Members who timely and validly request exclusion from the Settlement Class.  *See* Stipulation, ¶7.3.

---

[14]    Lead Counsel intends to request that any fees awarded be paid when the Court executes the Judgment and an order awarding such fees and expenses.  *See* Stipulation, ¶6.2.

- 13 -

### D.   The Settlement Treats Settlement Class Members Equitably Relative to Each Other

As reflected in the Plan of Allocation, the Settlement "treats class members equitably relative to each other" (*see* Fed. R. Civ. P. 23(e)(2)(D)), while taking into account the timing of their purchases, acquisitions, and sales of Pega common stock.  The Settlement further provides that each Authorized Claimant, including Lead Plaintiffs, shall receive its *pro rata* share of the Net Settlement Fund based on its recognized losses as calculated by the Plan of Allocation.  No Settlement Class Members are treated preferentially.  Accordingly, Rule 23(e)(2)(D) is satisfied.

### E.   The Reaction of the Settlement Class to the Settlement

Courts also consider "'the reaction of the class'" in assessing a settlement.  *Ranbaxy*, 630 F. Supp. 3d at 244 (quoting *Grinnell*).  Lead Plaintiffs actively participated in both the Litigation and the decision to agree to the Settlement.  This factor is otherwise inapplicable at this stage, as notice has not yet been effected.

## V.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Settling Parties have agreed to the certification of the Settlement Class for settlement purposes only.[15]  Courts within and without this Circuit overwhelmingly find securities fraud actions appropriate for class treatment.[16]  This action presents no exception, and the proposed Settlement

---

[15]      The "Settlement Class" is defined as: "All persons and entities who purchased or otherwise acquired the common stock of Pega between June 16, 2020 and May 9, 2022, inclusive, and experienced loss.  Excluded from the Settlement Class are Defendants and the Dismissed Defendant and their immediate families, the Company's officers and directors at all relevant times, as well as their immediate families, Defendants' and the Dismissed Defendant's legal representatives, heirs, successors or assigns, and any entity in which Defendants or the Dismissed Defendant have or had a controlling interest."  Stipulation, ¶1.30.

[16]      *See In re Bos. Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 280 (D. Mass. 2009) (Class treatment is "particularly appropriate in the context of securities litigation"); *John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*, 2004 WL 438790, at *2 (D. Mass. Mar. 9, 2004) ("'little question that suits . . . alleging violations of federal securities laws are prime candidates for class action treatment

Class satisfies the requirements of Rules 23(a) and 23(b)(3).  Lead Plaintiffs submit that the Settlement Class should be preliminarily certified for settlement purposes, and that Lead Plaintiffs and Lead Counsel should be preliminarily appointed as Settlement Class Representatives and Settlement Class Counsel, respectively.[17]

### A.      The Class Meets the Requirements of Rule 23(a)

*Numerosity*: Rule 23(a)(1) is met because the proposed Settlement Class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[F]orty class members generally establishes numerosity."  *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388 (D. Mass. 2011).  In a securities fraud action, "the class size may be reasonably inferred to be in the hundreds or thousands when there are 'millions of shares outstanding.'"[18] Numerosity is undoubtedly met: Pega averaged over 81 million shares outstanding, with an average weekly trading volume of 1.63 million shares, during the Settlement Class Period.  *See* ECF 109 at 5-6; ECF 110-1;  ¶¶57, 93.  Further, over 155 million shares traded during the Settlement Class Period, a daily average of over 325,000 shares.  ECF 109 at 6.[19]

*Commonality*: Rule 23(a)(2) requires that "there are questions of law or fact common to the

---

and . . . Rule 23 . . . has been liberally construed to effectuate that end'"); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (securities cases are "particularly well-suited for class treatment"); *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 22 (D. Mass. 2008).

[17]      This Court has previously certified classes for settlement purposes only.  *E.g.*, *Courtney v. Avid Tech., Inc.*, 2015 WL 13687328, at *1 (D. Mass. 2015) (preliminary certifying settlement class of common stockholders); *Courtney v. Avid Tech.*, No. 1:13-cv-10686-WGY, ECF 157 at 1-2 (D. Mass. May 12, 2015) (granting final approval of settlement and certification of settlement class); *Bazerman v. Am. Airlines, Inc.*, 2018 WL 11449583, at *2 (D. Mass. June 22, 2018) (granting preliminary certification of a settlement class).

[18]      *In re AVEO Pharms., Inc. Sec. Litig.*, 2017 WL 5484672, at *3 (D. Mass. Nov. 14, 2017); *In re Sonus Networks, Inc. Sec. Litig.*, 247 F.R.D. 244, 248 (D. Mass. 2007).

[19]      *See Evergreen*, 275 F.R.D. at 388 (64-68.9 million shares outstanding); *AVEO*, 2017 WL 5484672, at *3 (over 43 million shares outstanding).

class." Fed. R. Civ. P. 23(a)(2). "'[C]ommonality is a low bar.'" *Prinzo v. Hannaford Bros. Co., LLC*, 343 F.R.D. 250, 252 (D. Mass. 2023) (Young, J.). "Rule 23(a)(2) 'does not require that every question be common' and even a 'single common legal or factual issue can suffice.'" *AVEO*, 2017 WL 5484672, at \*4. Here, common questions abound, including whether: (1) Defendants publicly misrepresented or omitted material facts; (2) Defendants acted with scienter; (3) the alleged fraud artificially inflated Pega's stock price; and (4) Defendants' conduct harmed the Settlement Class.

**Typicality**: Rule 23(a)(3)'s requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" is established. Fed. R. Civ. P. 23(a)(3). Typicality "is 'not a highly demanding' requirement,'" *In re Suffolk Univ. Covid Refund Litig.*, 2022 WL 6819485, at \*1 (D. Mass. Oct. 11, 2022) (Young, J.), and is met where the plaintiff's "injuries arise from the same events or course of conduct as do the injuries of the class, and . . . its claims are based on the same legal theory as those of the class." *Bos. Sci.*, 604 F. Supp. 2d at 282. Here, Lead Plaintiffs' and the Settlement Class's claims arise from the same alleged conduct (Defendants' alleged series of public, material misstatements and omissions that artificially inflated Pega's stock price and caused Lead Plaintiffs and the Settlement Class to suffer losses) and would be proven by common evidence on a class-wide basis.[20]

**Adequacy**: Rule 23(a)(4) is also satisfied. Lead Plaintiffs acquired Pega stock during the Settlement Class Period and were injured in the same way as the Settlement Class, and Lead Plaintiffs' interests are directly aligned with those of the Settlement Class.[21] Moreover, Lead

---

[20]     *See Bos. Sci.*, 604 F. Supp. 2d at 282 (typicality met where plaintiff "purchased [company] stock at a time when the price was alleged to have been artificially inflated due to defendants' misleading statements, and was subsequently harmed by the drop in stock price").

[21]     No fundamental conflicts exist between Lead Plaintiffs' and the Settlement Class's interests. *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at \*3 (D.R.I. Feb. 17, 2016) ("[S]peculative or hypothetical conflicts do not defeat Rule 23's adequacy requirement"); *In re Nexium (Esomeprazole)*

- 16 -

Plaintiffs have already shown their commitment to "fairly and adequately protect[ing] the [Settlement Class's] interests," including by monitoring this action's prosecution since 2022, reviewing court filings, producing substantial discovery, and securing the proposed Settlement. Courts have recognized Robbins Geller's extensive experience in securities litigation,[22] and Lead Counsel has demonstrated its adequacy by prosecuting this case to a favorable outcome.

### B.     The Settlement Class Meets the Requirements of Rule 23(b)(3)

Common questions of law and fact predominate, and class treatment is superior to individual adjudication of the Settlement Class's claims, as Rule 23(b)(3) requires. Predominance is satisfied where "questions of law or fact common to the class will 'predominate over any questions affecting only individual members' as the litigation progresses." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013). Rule 23(b)(3) "'requires merely that common issues **predominate**, not that all issues be common to the class.'" *De Giovanni v. Jani-King Int'l, Inc.*, 262 F.R.D. 71, 76 (D. Mass. 2009) (Young, J.) (emphasis in original). Moreover, to satisfy predominance, plaintiffs need not show the common questions "will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459. "The First Circuit Court of Appeals has defined the predominance test as requiring the Court to find that 'a sufficient constellation of common issues binds class members together.'" *Evergreen*, 275 F.R.D. at 392. Where settlement-only certification is sought, "the Court 'need not inquire whether the case, if tried, would present intractable management problems.'" *Relafen*, 231 F.R.D. at 68.

Predominance is readily satisfied. Lead Plaintiffs' and the Settlement Class's claims are

---

*Antitrust Litig.*, 297 F.R.D. 168, 172 (D. Mass. 2013) (a conflict must be "'fundamental to the suit and . . . go to the heart of the litigation'" to impact adequacy), *aff'd* 777 F.3d 9 (1st Cir. 2015).

[22]     *Luna v. Carbonite, Inc.*, 2023 WL 4539855, at *11 (D. Mass. July 14, 2023); *Evergreen*, 275 F.R.D. at 392.

4879-4922-6930.v1

premised on the same alleged conduct: Defendants' series of public misstatements and omissions which artificially inflated Pega's stock price and caused Lead Plaintiffs and the Settlement Class to suffer losses.  Moreover, Lead Plaintiffs' and the Settlement Class's claims depend on the same common questions and would be proven with evidence common to the Settlement Class. Additionally, because Lead Plaintiffs are entitled to the fraud-on-the-market presumption of reliance articulated in *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988), as well as the presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), §10(b)'s reliance element (as well as all of §10(b)'s other elements) would be proven on a class-wide basis.

Securities cases readily satisfy Rule 23(b)(3)'s superiority requirement.[23]  This case is no exception, and all four factors courts consider in assessing superiority are met.  *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).  Most Settlement Class Members' interests in prosecuting separate actions is minimal, given the time and cost of doing so in comparison to the potential recoveries.  Maintaining this class action in this District ensures consistent rulings on the Settlement Class's claims and an efficient expenditure of resources.  Further, this District is a desirable forum (Settlement Class Members are geographically dispersed, Pega is located in this District, and many of the alleged acts occurred in this District), and Lead Plaintiffs do not foresee any management difficulties that preclude this action from proceeding as a class action.[24]  Finally, not only is a class action the superior method for adjudicating the Settlement Class's claims, it is the only practical method of

---

[23]    *See Credit Suisse-AOL*, 253 F.R.D. at 31 ("Investors seeking damages for violations of federal securities are often considered the prototypical class action plaintiffs."); *Evergreen*, 275 F.R.D. at 393 ("class actions . . . may be the 'only practicable means of enforcing investors' rights'").

[24]    Regarding Rule 23(b)(3)(B), there are two shareholder derivative actions involving Pega (Case No. 1:22-cv-11985 and Case No. 1:23-cv-10933) pending before this Court, neither of which affect the superiority of proceeding with this case as a class action.

fairly and efficiently doing so.  In short, certifying the Settlement Class would "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (ellipsis in original).

## VI.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS AND SHOULD BE APPROVED

Under Rule 23(e), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."  Fed. R. Civ. P. 23(e)(1)(B).  "To satisfy due process, the notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Hill*, 2015 WL 127728, at *14.

The proposed method of providing notice satisfies Rule 23(e).  As outlined in the proposed Preliminary Approval Order, the Claims Administrator will cause the Postcard Notice to be mailed or emailed to all Members of the Settlement Class who can be identified with reasonable effort, utilizing multiple sources of data including: (i) Pega's transfer records; and (ii) a proprietary list created and maintained by the Claims Administrator of the largest and most common U.S. banks, brokers, and other Nominee Holders, and the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities.  The Postcard Notice will also highlight for Settlement Class Members the case-specific website on which important information and documents will be posted (including the Stipulation, Notice, and Proof of Claim).  In addition to mailing or emailing the Postcard Notice, the Claims Administrator will cause publication of the Summary Notice in the *Wall Street Journal* and over a national newswire service.

As required by Rule 23(c)(2) and the PSLRA, the Notice – which will be available on the settlement website or by mail upon request – describes in plain English (*inter alia*) the general terms

- 19 -

of the Settlement, the fee and expense application, and the proposed Plan of Allocation, the date, time and location of the Settlement Hearing, and other important information regarding the Settlement. *Compare* Notice (Exhibit A-1 to the Stipulation), *with* 15 U.S.C. §78u-4(a)(7). The proposed form and manner of providing notice to the Settlement Class is commonly used in securities class actions and satisfies the requirements of due process, Rule 23, and the PSLRA. It is "the best notice practicable under the circumstances" and will provide "due and sufficient notice to all persons entitled thereto." *In re StockerYale, Inc. Sec. Litig.*, 2007 WL 2410361, at *2 (D.N.H. Aug. 21, 2007). Lead Counsel submits that the proposed notice procedures will fairly apprise Settlement Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and should be approved.

## VII.    PROPOSED SCHEDULE OF EVENTS

Provided the Court grants this Motion, the Settling Parties respectfully propose, for the Court's consideration, the schedule of dates for class notice, find approval briefing, and other relevant events, set forth in the proposed Preliminary Approval Order.

## VIII.    CONCLUSION

Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

DATED: April 23, 2024              Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DEBRA J. WYMAN (admitted *pro hac vice*)
CHRISTOPHER D. STEWART (admitted *pro hac vice*)
MEGAN A. ROSSI (admitted *pro hac vice*)
NICOLE Q. GILLILAND (admitted *pro hac vice*)


       */s/ Debra J. Wyman*
       DEBRA J. WYMAN

- 20 -

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com
cstewart@rgrdlaw.com
mrossi@rgrdlaw.com
ngilliland@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
CHAD JOHNSON (admitted *pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone: 212/432-5100
chadj@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SNEHEE KHANDESHI (admitted *pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
skhandeshi@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

HUTCHINGS BARSAMIAN MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Telephone: 781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

Liaison Counsel for Lead Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 23, 2024.

/s/ *Debra J. Wyman*
DEBRA J. WYMAN