UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re PEGASYSTEMS INC. SECURITIES LITIGATION | ) ) ) | No. 1:22-cv-11220-WGY |
| | | MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |

4885-8612-0149.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   HISTORY AND BACKGROUND OF THE LITIGATION..................................................3

III.  ARGUMENT .......................................................................................................3

    A.    Applicable Standards Favor Approval of Class Action Settlements ......................3

    B.    The Proposed Settlement Merits Final Approval......................................................6

        1.    The Settlement Satisfies the Requirements of Rule 23(e)(2).....................6

            a.    Lead Plaintiffs and Lead Counsel Adequately Represented the Settlement Class..........................................................................6

        2.    The Settlement Was Reached After Significant Investigation and Discovery and Is the Product of Arm's-Length Negotiations Among Experienced Counsel ....................................................................7

        3.    The Risk, Complexity, and Expense of Continued Litigation Favors Final Approval ...........................................................................9

        4.    Comparing the Proposed Settlement to the Likely Result of Continued Litigation Weighs in Favor of Final Approval........................12

        5.    Lead Plaintiffs Had Sufficient Information to Make Informed Decisions About Settling This Case ..........................................................13

        6.    The Favorable Reaction of the Settlement Class to Date Supports Final Approval ..........................................................................................14

    C.    The Plan of Allocation of Settlement Proceeds Should Be Approved ..................14

    D.    The Court Should Finally Certify the Settlement Class for Purposes of Effectuating the Settlement....................................................................................16

    E.    Notice to the Settlement Class Satisfied the Requirements of Rule 23, Complies With Due Process, and Is Reasonable ...................................................17

IV.  CONCLUSION..................................................................................................19

4885-8612-0149.v1

# TABLE OF AUTHORITIES

Page

## CASES

*Bussie v. Allmerica Fin. Corp.*,
  50 F. Supp. 2d 59 (D. Mass. 1999) .......................................................................8, 14

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..........................................................10

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), *abrogated sub nom.*,
  *Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)...................................................................................5, 12

*City of Providence v. Aéropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*,
  *Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) .................................................................................14

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
  100 F.3d 1041 (1st Cir. 1996)......................................................................................7

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).....................................................................................................17

*Greenspun v. Bogan*,
  492 F.2d 375 (1st Cir. 1974)..................................................................................5, 17

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ...............................................................................15

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).................................................................9

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012).......................................................................13

*In re Cabletron Sys., Inc. Sec. Litig.*,
  239 F.R.D. 30 (D.N.H. 2006) .........................................................................15, 16, 18

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019)...............................................................6

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  216 F.R.D. 197 (D. Me. 2003) .................................................................................4, 5

**Page**

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................13, 15

*In re Lupron Mktg. & Sales Prac. Litig.*,
228 F.R.D. 75 (D. Mass. 2005)......................................................................4, 5

*In re PaineWebber P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997),
*aff'd*, 117 F.3d 721 (2d Cir. 1997)...................................................................12

*In re Penthouse Exec. Club Comp. Litig.*,
2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013)..................................................7

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009)...............................................................................4

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011)................................................................13

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005)....................................................................9, 12

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................15

*In re Stockeryale, Inc. Sec. Litig.*,
2007 WL 4589772 (D.N.H. Dec. 18, 2007)....................................9, 11, 14, 18

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007)..............................................................5, 14

*Kalnit v. Eichler*,
99 F. Supp. 2d 327 (S.D.N.Y. 2000),
*aff'd*, 264 F.3d 131 (2d Cir. 2001)..................................................................10

*KBC Asset Mgmt. NV v. Aegerion Pharms., Inc.*,
No. 1:14-cv-10105-MLW, ECF 168
(D. Mass. Nov. 30, 2017) ..............................................................................16

*Luna v. Carbonite, Inc., et al.*,
No. 1:19-cv-11662-LTS, ECF 194
(D. Mass. May 15, 2024) ...............................................................................16

4885-8612-0149.v1

Page

*Machado v. Endurance Int'l Grp. Holdings, Inc.*,
   2019 WL 4409217 (D. Mass. Sept. 13, 2019) ........................................................16

*McGee v. Constant Contact, Inc., et al.*,
   No. 15-13114-MLW, ECF 119
   (D. Mass. May 27, 2020) ........................................................................................16

*Medoff v. CVS Caremark Corp.*,
   2016 WL 632238 (D.R.I. Feb. 17, 2016) ...............................................................19

*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*,
   582 F.3d 30 (1st Cir. 2009) .......................................................................................7

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ....................................................................................12

*Roberts v. TJX Cos.*,
   2016 WL 8677312 (D. Mass. Sept. 30, 2016) ..........................................................7

*Robinson v. Nat'l Student Clearinghouse*,
   14 F.4th 56 (1st Cir. 2021) ........................................................................................4

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000) ...............................................................................5, 8

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ..........................................................15

*Snyder v. Ocwen Loan Servicing, LLC*,
   2019 WL 2103379 (N.D. Ill. May 14, 2019) .............................................................6

*United States v. Davis*,
   261 F.3d 1 (1st Cir. 2001) ..........................................................................................3

*Voss v. Rolland*,
   592 F.3d 242 (1st Cir. 2010) ..................................................................................4, 5

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
   §78u-4 ........................................................................................................................9
   §78u-4(a)(4) ...........................................................................................................1, 7

**Page**

Federal Rules of Civil Procedure
    Rules 23(a)..................................................................................................16, 17
    Rules 23(b)(3)..............................................................................................16, 17
    Rule 23(c)(2)(B)...........................................................................................17, 18
    Rule 23(e)......................................................................................................1
    Rule 23(e)(1).................................................................................................17
    Rule 23(e)(1)(B)............................................................................................17
    Rule 23(e)(2)..........................................................................................2, 4, 5, 6
    Rule 23(e)(2)(A)............................................................................................6
    Rule 23(e)(2)(B)............................................................................................7
    Rule 23(e)(2)(C)(i).........................................................................................9
    Rule 23(e)(2)(C)(ii).......................................................................................15
    Rule 23(e)(3).................................................................................................4

**SECONDARY AUTHORITIES**

*Recent Trends in Securities Class Action Litigation: 2024 H1 Update*
    Edward Flores and Svetlana Starykh (NERA Aug. 6, 2024).....................................12

Court-appointed Lead Plaintiffs, Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan, Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987, and Construction Industry Laborers Pension Fund ("Lead Plaintiffs"), by and through their counsel, respectfully submit this memorandum of law in support of their motion pursuant to Federal Rule of Civil Procedure 23(e), requesting that the Court: (i) approve the proposed Settlement, which the Court preliminarily approved on May 15, 2024 (the "Notice Order") (ECF 147); (ii) finally certify the Settlement Class for settlement purposes; (iii) approve the proposed Plan of Allocation; (iv) find that notice to the Settlement Class satisfied due process; and (v) enter the proposed Order Approving the Plan of Allocation and proposed Final Judgment.[1]

## I.    INTRODUCTION

As set forth herein and in the Johnson Declaration, the $35,000,000 all-cash Settlement represents an excellent result for the Settlement Class.  The Settlement was reached by experienced and knowledgeable counsel only after, *inter alia*, an extensive investigation by Lead Counsel; the filing of a detailed amended complaint (the "Complaint"); substantially defeating Defendants' motion to dismiss the Complaint; reviewing over 1.8 million pages of documents; class certification briefing and discovery; briefing important discovery disputes; and arm's-length settlement negotiations conducted by a highly experienced, nationally-recognized mediator, John Van Winkle.

It is also Lead Counsel's informed opinion that in light of the significant risks and the delay, expense, and uncertainty of pursuing the Litigation through trial and any post-trial appeals, the

---

[1]    Unless otherwise defined herein, all capitalized terms are defined in the Stipulation of Settlement filed April 23, 2024 (ECF 143) (the "Stipulation") and the Declaration of Chad Johnson in Support of: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Johnson Declaration" or "Johnson Decl."), submitted herewith.

Settlement is also beneficial because it is a certain and reasonable result for the Settlement Class. The benefit that the proposed Settlement will provide to the Settlement Class weighs in favor of final approval when considered against the risks that, absent the Settlement, the Settlement Class might recover less (or nothing at all) if the Litigation continued to be litigated through the motion to certify the class, summary judgment, trial, and any post-trial appeals that would likely follow – a process that could last many additional years. While Lead Plaintiffs believe that they have meritorious responses to each of Defendants' arguments against liability and damages, the proposed Settlement, if approved, will enable the Settlement Class to be compensated now for alleged damages without incurring the risk of further litigation. Lead Counsel, with extensive experience in prosecuting shareholder class actions and other complex litigation, believes that the proposed Settlement satisfies each of the applicable Rule 23(e)(2) factors, is fair, reasonable, and adequate under the First Circuit's standards for approval, and is in the best interests of the Settlement Class. Likewise, the Plan of Allocation, based on the out-of-pocket measure of damages (*i.e.*, the difference between what Settlement Class Members paid for their Pegasystems Inc. ("Pega" or the "Company") common stock during the Settlement Class Period and what they would have paid had the misstatements not been made or omissions withheld), which Lead Counsel developed with the assistance of its damages expert, is a fair, reasonable, and adequate method for equitably distributing the Net Settlement Fund to Settlement Class Members, should be approved.

The fairness of the Settlement is further evidenced by the fact that, to date, no Members of the Settlement Class have objected to it, and only one request for exclusion has been received, and that is from an individual who is not a member of the Class. Pursuant to the Court's Notice Order, a total of 25,670 Postcard Notices have been sent to potential Settlement Class Members and nominees since June 5, 2024, and the Summary Notice was published in *The Wall Street Journal* and

transmitted over *Business Wire*, a national newswire service, on June 12, 2024.[2]  Additionally, Settlement-related documents were posted on the Settlement-specific website at www.PegasystemsSecuritiesSettlement.com. *Id.*, ¶14.[3]  The deadline for Settlement Class Members to object to the Settlement and Plan of Allocation expires on August 29, 2024.  Lead Counsel will address any timely objections in a reply memorandum due no later than September 12, 2024.

## II.     HISTORY AND BACKGROUND OF THE LITIGATION

To avoid repetition, Lead Plaintiffs respectfully refer the Court to the accompanying Johnson Declaration for a detailed discussion of the factual background and procedural history of the Litigation, the efforts undertaken by Lead Plaintiffs and Lead Counsel during the course of the Litigation, the risks of continued litigation, and a discussion of the negotiations leading to the Settlement.

## III.    ARGUMENT

### A.     Applicable Standards Favor Approval of Class Action Settlements

In determining whether to approve the Settlement, relevant precedent provides that the Court should be guided by the "'strong public policy in favor of settlements'" over continued litigation, particularly complex actions.  *See, e.g.*, *United States v. Davis*, 261 F.3d 1, 27 (1st Cir. 2001);[4] *United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000) (same).  To grant final approval of a class action settlement, the court must find that the settlement is

---

[2]     *See* accompanying Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), on behalf of the Court-appointed Claims Administrator for the Settlement, Gilardi & Co. LLC ("Gilardi"), ¶¶4-12.

[3]     The briefs and declarations in support of the motions to approve the Settlement, Plan of Allocation, and attorneys' fees and expenses will be posted to the website once they are filed.

[4]     Citations are omitted and emphasis is added throughout, unless otherwise noted.

4885-8612-0149.v1

"fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010) (same).

Rule 23(e)(2) provides that:

(2)    ***Approval of the Proposal***.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  *See also Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) ("Where 'the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable.'") (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)).

While the First Circuit has not espoused any single test for determining whether a proposed settlement is fair, reasonable, and adequate,[5] courts within this Circuit commonly reference factors

---

[5]    *See, e.g.*, *In re Lupron Mktg. & Sales Prac. Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005) ("the First Circuit has not established a formal protocol for assessing the fairness of a settlement"); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003)

identified by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated sub nom.*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). *See Lupron*, 228 F.R.D. at 93. Courts in this Circuit have further distilled the *Grinnell* factors into a more concise list, examining the

> (1) risk, complexity, expense and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259-60 (D.N.H. 2007).

Moreover, in evaluating whether a settlement is fair, reasonable, and adequate, courts are to balance the benefits of settlement against the risks of continued litigation. *Voss*, 592 F.3d at 251. "'[T]he court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff[s] after full and successful litigation of the claim[s].'" *Rolland v. Cellucci*, 191 F.R.D. 3, 14-15 (D. Mass. 2000) (second and third alterations in original). As the First Circuit has observed: "[A]ny settlement is the result of a compromise – each party surrendering something in order to prevent unprofitable litigation, and the risks and costs inherent in taking litigation to completion." *Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974); *see also Compact Disc*, 216 F.R.D. at 211 ("I am not to prejudge the merits of the case . . . and I am not to second-guess the settlement; I am only to determine if the parties' conclusion is reasonable."); *Lupron*, 228 F.R.D. at 97 (the court should not "hypothesize about larger amounts that might have been recovered"). The factors set forth in Rule 23(e)(2) are applied in tandem with the applicable First Circuit approval factors and "focus the court and the lawyers on the core concerns of procedure and substance that

---

("There is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement.").

4885-8612-0149.v1

should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Notes to 2018 Amendments. In this case, an examination of the foregoing factors demonstrates that the Settlement satisfies both Rule 23(e)(2) and the applicable First Circuit factors, is fair, reasonable, and adequate to the Settlement Class, and should be approved by the Court.

**B.    The Proposed Settlement Merits Final Approval**

**1.    The Settlement Satisfies the Requirements of Rule 23(e)(2)**

As explained in Lead Plaintiffs' Memorandum of Law in Support of Unopposed Motion for: (1) Preliminary Approval of Class Action Settlement; (2) Class Certification for Settlement Purposes; and (3) Approval of Notice to the Settlement Class (ECF 142) (the "Preliminary Approval Memorandum") at 6-14, and as acknowledged by the Notice Order, Lead Plaintiffs have met all of the requirements imposed by Rule 23(e)(2). Courts analyzing the Rule 23(e)(2) factors have noted that a plaintiff's satisfaction of these factors at final approval is virtually assured where, as here, little has changed between preliminary and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

**a.    Lead Plaintiffs and Lead Counsel Adequately Represented the Settlement Class**

Lead Plaintiffs and Lead Counsel have (more than) adequately represented the Class as required by Federal Rule of Civil Procedure 23(e)(2)(A). They have diligently prosecuted this Litigation on the Settlement Class' behalf for the past two years. Among other things, Lead Counsel conducted a thorough investigation, prepared and filed a detailed amended complaint, successfully

opposed Defendants' motion to dismiss, obtained, reviewed, and analyzed over 1.8 million pages of

documents, litigated a number of discovery disputes following extensive meet and confer efforts,

prepared for upcoming depositions, fully briefed Lead Plaintiffs' motion for class certification,

including expert consultation and reports, engaged in mediation and settlement negotiations, and

achieved a Settlement of $35 million, which will provide a significant recovery to the Settlement

Class.  Lead Plaintiffs actively and faithfully oversaw the prosecution of the case over the course of

the Litigation in accordance with their duties as Lead Plaintiffs.  *See* Lead Plaintiffs' Declarations in

Support of Motion for Final Approval of Settlement, Plan of Allocation, Award of Attorneys' Fees

and Expenses, and Award to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Lead Plaintiffs'

Decls."), submitted herewith.  Lead Plaintiffs and Lead Counsel at all times advocated for the best

interests of the Settlement Class.

> **2.      The Settlement Was Reached After Significant Investigation
> and Discovery and Is the Product of Arm's-Length
> Negotiations Among Experienced Counsel**

Rule 23(e)(2)(B) is clearly satisfied.  Where, as here, the settling parties have bargained at

arm's length, "'there is a presumption in favor of the settlement.'"  *Nat'l Ass'n of Chain Drug Stores*

*v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) (quoting *City P'ship*

*Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)); *see also Roberts v. TJX*

*Cos.*, 2016 WL 8677312, at *5 (D. Mass. Sept. 30, 2016) (where "the parties' Settlement is the

product of arms-length negotiation by competent counsel, . . . it is entitled to a presumption of

reasonableness").  Moreover, where, as here, the settlement was reached with the assistance of an

experienced mediator, there is "a presumption that the settlement achieved meets the requirements of

due process."  *In re Penthouse Exec. Club Comp. Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y.

- 7 -

Apr. 30, 2013) ("The assistance of [an] experienced mediator[] . . . reinforces that the Settlement Agreement is non-collusive.").

At the time of the Settlement, all parties were in an excellent position to evaluate the strengths and weaknesses of their respective claims and defenses. As described more fully in the Johnson Declaration, Lead Counsel vigorously prosecuted this Litigation. In response to its requests and following negotiations over the scope of discovery, including discovery motions when negotiations were exhausted, Defendants and non-parties produced to Lead Counsel over 1.8 million pages of documents. The parties' settlement negotiations included the exchange of comprehensive mediation statements which detailed their respective positions and included extensive citations to the evidentiary record, and a formal mediation session with Mr. Van Winkle, followed by additional negotiations overseen by the mediator. At the mediation, the parties' positions were fully explored. This accumulation of information permitted Lead Plaintiffs and Lead Counsel to be well-informed about the strengths and weaknesses of the case, resulting in a significant recovery of $35,000,000 for the Settlement Class. Thus, the proposed Settlement is procedurally fair and entitled to a presumption of reasonableness. *See Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("[S]ettlement negotiations . . . conducted at arms' length . . . support 'a strong initial presumption' of the Settlement's substantive fairness.").

Moreover, the judgment of experienced and well-informed class counsel should be afforded great weight by the Court. *Rolland*, 191 F.R.D. at 10 ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie*, 50 F. Supp. 2d at 77 ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have

represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate."). Lead Counsel is a national shareholder's rights law firm with significant experience in PSLRA securities litigation, as well as other shareholder and complex litigation. *See* www.rgrdlaw.com. Also, defense counsel at WilmerHale has broad experience with these types of cases and is well-respected for good reason.

### 3. The Risk, Complexity, and Expense of Continued Litigation Favors Final Approval

The Settlement is also substantively fair. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). While Lead Plaintiffs believe that the claims asserted against Defendants have merit, they recognize that there were significant risks as to whether Lead Plaintiffs would ultimately be able to prove liability and establish damages on their claims while also overcoming Defendants' defenses. Continued litigation would be protracted, risky, and costly. *See In re Stockeryale, Inc. Sec. Litig.*, 2007 WL 4589772, at *3 (D.N.H. Dec. 18, 2007) (this factor "'captures the probable costs, in both time and money, of continued litigation'"). Securities class actions are "notorious[ly] complex[]" and "[t]he difficulty of establishing liability is a common risk of securities litigation.'" *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8, *11 (S.D.N.Y. Apr. 6, 2006). The Settlement provides an immediate benefit to the Settlement Class that when balanced against the potential costs and risks associated with continued litigation, supports a finding that the Settlement is fair, reasonable, and adequate. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 74 (D. Mass. 2005) ("'Although fully litigating the claims through trial could possibly result in a higher recovery, the settlement represents a necessary compromise between inherent risks of doing so and a guaranteed cash recovery.'").

Defendants vigorously contested their liability on the merits and have denied and continue to deny each and every claim and allegation of wrongdoing alleged by Lead Plaintiffs. Specifically, Defendants have argued that the alleged misstatements were not actionable or made with scienter.

- 9 -

Defendants never corrected, retracted, or restated Pega's publicly-issued statements or financial results issued during the Settlement Class Period (including statements regarding the Virginia Action); nor did Deloitte resign or withdraw its unqualified audit opinions issued during the Settlement Class Period.  Johnson Decl., ¶54.

Defendants likewise argued that Lead Plaintiffs could not establish scienter.  *Id.*  "Proving scienter is hard to do."  *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019).  *See also Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 264 F.3d 131 (2d Cir. 2001).  Defendants would be expected to present evidence that Pega's outside and in-house counsel, as well as Deloitte, had reviewed Defendants' public statements regarding the Virginia Action, including Defendants' statements on February 16, 2022 disclosing the Virginia Action.  Defendants have also indicated that they would argue that they relied in good faith on Pega's professional advisors throughout the Settlement Class Period, and therefore did not act with the requisite scienter.

Defendants have consistently maintained, both here and in the Virginia Action, that Pega had acted appropriately, that Pega's employees' alleged conduct against Appian did not violate Pega's Code of Conduct, and that Pega was not obligated to publicly disclose the existence of the Virginia Action prior to February 2022.  Johnson Decl., ¶55.  Defendants also disputed whether "the features and functionality of Appian's platform" constitute trade secrets.  *Id.*  While the jury found in favor of Appian and awarded over $2 billion in damages, on July 30, 2024, the Court of Appeals of Virginia set aside the jury's decision and remanded the case for a new trial.  *Id.*, ¶58.  Appian has announced its intention to appeal the ruling to the Supreme Court of Virginia to reinstate the verdict.  Pega,

therefore, remains exposed to a potential multi-billion dollar verdict, potentially jeopardizing the Company's ability to fund a judgment in this Litigation.

Lead Plaintiffs also faced significant risks in proving loss causation and damages. Johnson Decl., ¶53. Defendants have steadfastly maintained that factors other than the alleged misstatements and omissions caused Lead Plaintiffs' alleges losses. For example, Defendants have argued that: (i) Pega's contemporaneous disclosure of low earnings and revenue reports on February 16, 2022 caused Pega's stock price to decline on February 17, 2022; (ii) Pega's stock price declines following Pega's disclosures on May 9 and September 16, 2022, were simply the result of bad news that had already been disclosed (the Virginia Action). *Id.* Likewise, the level of damages, if any, would have been the subject of expert testimony by each side. Which expert's position would be accepted by the Court or the jury was unknowable. *Id.*

Although Lead Plaintiffs believed that they would have succeeded at class certification and at summary judgment, even if correct, there remained significant hurdles to recovery, at trial and any post-trial appeals. *See, e.g.*, *Stockeryale*, 2007 WL 4589772, at *3 (this factor supported settlement where the defendants had defenses to liability and loss causation that "could result in no liability and zero recovery for the class"). For example, Pega employs or employed many of the key witnesses. Johnson Decl., ¶59. Given that many of these key witnesses had testified in the Virginia Action, Lead Plaintiffs had a fair understanding of how those same witnesses would likely testify, and expected that they would testify in favor of Defendants at trial in this case. *Id.* Lead Plaintiffs faced the further risks that the class would not be certified (or would later face a Rule 23(f) petition or motion to decertify or to shorten the class period); that the Court would grant summary judgment on all or a portion of Lead Plaintiffs' claims; or that important evidence or expert testimony would be excluded at trial. *Id.*, ¶60. This Settlement obviates any of those risks.

- 11 -

### 4. Comparing the Proposed Settlement to the Likely Result of Continued Litigation Weighs in Favor of Final Approval

This factor requires the Court to consider the reasonableness of the settlement fund in light of the possible recovery in the litigation and risks of further litigation.  The issue is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case.  Thus, the Court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462.  Courts agree that the determination of a "reasonable" settlement "'is not susceptible of a mathematical equation yielding a particularized sum.'" *In re PaineWebber P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *accord Relafen*, 231 F.R.D. at 73 ("'A high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes.'").  Instead, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, the $35,000,000 cash Settlement is well within the range of reasonableness under the circumstances so as to warrant final approval of the Settlement.  It represents nearly four times the median settlement value for securities fraud cases settled in the first half of 2024.  *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 H1 Update* at 16, fig. 14 (NERA Aug. 6, 2024), attached as Exhibit A to the Johnson Decl.  It also exceeds the $26 million average settlement value for settlements (excluding those over $1 billion) during the same period.  *Id.* at 15, fig. 13.

Thus, under the circumstances here, the Settlement achieved represents an excellent result for the Settlement Class and is reasonable in light of the best possible recovery, especially when

compared to the risks of proceeding to trial and the overall range of recovery involving securities class action settlements.

**5.    Lead Plaintiffs Had Sufficient Information to Make Informed Decisions About Settling This Case**

This factor questions "'whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). "The threshold necessary to render the decisions of counsel sufficiently well informed, . . . is not an overly burdensome one to achieve – indeed, formal discovery need not have necessarily been undertaken yet by the parties." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012); *see also In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 474 (D.P.R. 2011) (even where formal discovery had not occurred, counsel's investigation and informal discovery provided "sufficient information to make a well informed decision").

As detailed in the Johnson Declaration, Lead Counsel conducted a thorough review of Pega's press releases, public statements, SEC filings, and securities analysts' reports and advisories about the Company and reviewed other publicly available information relating to the Company and the Virginia Action. Lead Counsel, *inter alia*, researched the applicable law with respect to the claims asserted and the potential defenses thereto and prepared the Complaint and successfully opposed Defendants' motion to dismiss. Lead Counsel moved for class certification (including retention of and work with an expert), conducted extensive document and other written discovery, executed a careful review of over 1.8 million pages of documents, and litigated a number of discovery disputes when efforts to resolve them proved unsuccessful. Finally, the parties exchanged detailed evidentiary-based mediation statements and engaged in negotiations under the guidance of an

- 13 -

experienced mediator.  Thus, Lead Plaintiffs and Lead Counsel engaged in sufficient investigation and discovery to thoroughly understand the claims, merits, and weaknesses of the Litigation before agreeing to the Settlement.

**6.    The Favorable Reaction of the Settlement Class to Date Supports Final Approval**

Pursuant to the Notice Order, beginning on June 5, 2024, the Claims Administrator caused a total of 25,670 Postcard Notices to be mailed or emailed to potential Settlement Class Members, including brokers and other nominees.  *See* Murray Decl., ¶¶5-11.  The Claims Administrator also caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire* on June 12, 2024.  *Id.*, ¶12.  To date, no objections have been filed, and only one exclusion request has been submitted to date, and that is from an individual who is not a member of the Class.  *See* Murray Decl., ¶16.  Such a favorable reaction of the Settlement Class to the Settlement also supports its approval.  While not dispositive, "[t]he number of requests for exclusion from the settlement, as well as the number and substance of objections filed . . . constitutes strong evidence of fairness of proposed settlement and supports judicial approval."  *Bussie*, 50 F. Supp. 2d at 77.

Moreover, Lead Plaintiffs fully support the Settlement.  *See* Lead Plaintiffs' Decls.; *see also Stockeryale*, 2007 WL 4589772, at *3 ("The Court finds it significant that the Lead Plaintiffs are fully in support of the settlement.").

**C.    The Plan of Allocation of Settlement Proceeds Should Be Approved**

A plan of allocation of settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate.  *See Tyco*, 535 F. Supp. 2d at 262 ("Like the settlement itself, the plan of allocation must be fair, reasonable, and adequate.").  A plan of allocation is fair and reasonable as long as it has a "'reasonable, rational basis.'"  *City of Providence v. Aéropostale, Inc.*,

- 14 -

2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014) ("A plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'"), *aff'd sub nom.*, *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable, and the plan "'need not necessarily treat all class members equally.'" *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005).  A reasonable plan of allocation "'may consider the relative strength and values of different categories of claims.'" *IMAX*, 283 F.R.D. at 192; *see In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35 (D.N.H. 2006) (approving a plan of allocation that took into consideration "the strengths and weaknesses of the claims of the various types of class members").

Here, the Plan of Allocation was developed under the oversight of Lead Counsel by its economics and damages expert and it calculates a recognized loss based on the amount of the alleged inflation in Pega common stock at various times during the Settlement Class Period allocable to the alleged fraud, and also takes into account the PSLRA-mandated 90-day lookback.  Johnson Decl., ¶65.  Lead Counsel believes the proposed Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members and that the Plan of Allocation treats Settlement Class Members equitably relative to each other, and by providing that each Authorized Claimant shall receive a *pro rata* share of the Net Settlement Fund based on recognized losses.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).  Further, Lead Counsel's opinion is entitled to "considerable weight" by the Court in deciding whether to approve the plan.  *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) ("When evaluating the fairness of a Plan of Allocation, courts give weight to the opinion of qualified counsel."); *see also In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) ("In

- 15 -

determining whether a plan of allocation is reasonable, courts give great weight to the opinion of experienced counsel.").

Also, similar plans have repeatedly been approved by courts within this District. *See*, *e.g.*, *Luna v. Carbonite, Inc., et al.*, No. 1:19-cv-11662-LTS, ECF 194, Order Approving Plan of Allocation (D. Mass. May 15, 2024); *Machado v. Endurance Int'l Grp. Holdings, Inc.*, 2019 WL 4409217, at *1 (D. Mass. Sept. 13, 2019); *McGee v. Constant Contact, Inc., et al.*, No. 15-13114-MLW, ECF 119, Order Approving Plan of Allocation (D. Mass. May 27, 2020); *KBC Asset Mgmt. NV v. Aegerion Pharms., Inc.*, No. 1:14-cv-10105-MLW, ECF 168, Order Approving Plan of Allocation (D. Mass. Nov. 30, 2017); *see also Cabletron*, 239 F.R.D. at 35 (approving a plan where claimants would "receive a pro rata share of the Net Settlement Fund").

### D. The Court Should Finally Certify the Settlement Class for Purposes of Effectuating the Settlement

In their motion for preliminary approval of the Settlement, Lead Plaintiffs requested that the Court preliminarily certify the Settlement Class for settlement purposes so that notice of the Settlement, the Settlement Hearing, and the rights of Settlement Class Members to object to the Settlement, request exclusion from the Settlement Class, or submit Proofs of Claim, could be issued. *See* ECF 142 at 14-19. In the Notice Order, the Court addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Court found that Lead Plaintiffs had met the requirements for certification of the Settlement Class for purposes of settlement. ECF 147 at ¶¶4-5. In addition, the Court preliminarily certified Lead Plaintiffs as Settlement Class Representatives and Lead Counsel as Settlement Class Counsel. *Id.*, ¶6.

Nothing has changed since the Court's entry of the Notice Order to alter the propriety of the Court's preliminary certification of the Settlement Class for settlement purposes. Thus, for all of the

4885-8612-0149.v1

reasons stated in Lead Plaintiffs' motion for preliminary approval (incorporated herein by reference), Lead Plaintiffs respectfully request that the Court certify the Settlement Class for purposes of carrying out the Settlement pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), and appoint Lead Plaintiffs as Settlement Class Representatives and Lead Counsel as Settlement Class Counsel.

**E.    Notice to the Settlement Class Satisfied the Requirements of Rule 23, Complies With Due Process, and Is Reasonable**

The notice provided to the Settlement Class satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  The notice also satisfied Federal Rule of Civil Procedure 23(e)(1), which requires that notice of a settlement be directed "in a reasonable manner to all class members who would be bound" by the settlement (Fed. R. Civ. P. 23(e)(1)(B)), and that the notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them.'"  *Bogan*, 492 F.2d at 382.

Both the substance of the Court-approved Notice and the method of dissemination to potential Members of the Settlement Class satisfy these standards.  The notice program was carried out by a nationally-recognized claims administrator, Gilardi.  The Notice contains the information required by Federal Rule of Civil Procedure 23(c)(2)(B), including: (i) an explanation of the nature of the Litigation and claims asserted; (ii) the definition of the Settlement Class; (iii) a description of the claims, issues, and defenses in the Litigation and the key terms of the Settlement, including the consideration amount and the releases to be given; (iv) the Plan of Allocation; (v) the parties' reasons for proposing the Settlement; (vi) a description of the attorneys' fees and expenses that will

- 17 -

be sought; (vii) an explanation of Settlement Class Members' right to enter an appearance through an attorney and to request exclusion from the Settlement Class and to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses, as well as the time and manner for requesting exclusion and filing objections; and (viii) notice of the binding effect of a judgment on Settlement Class Members. The Notice also provides instructions for submitting a Proof of Claim in order to be eligible to receive a distribution from the Net Settlement Fund, relevant deadlines, and contact information, including a dedicated toll-free telephone hotline and link to the Settlement website.

In accordance with the Court's Notice Order, Gilardi has emailed or mailed by first-class mail a total of 25,670 Postcard Notices to potential Members of the Settlement Class and their nominees. *See* Murray Decl., ¶11. In addition, Gilardi caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire* on June 12, 2024. *Id.*, ¶12. Copies of the Notice, Proof of Claim, Notice Order, and Stipulation were made available on the Settlement website maintained by Gilardi, www.PegasystemsSecuritiesSettlement.com. *Id.*, ¶14. This combination of individual emailed and first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in a widely circulated business publication, transmitted over a newswire, and set forth on a dedicated website, constitutes "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Stockeryale*, 2007 WL 4589772, at *3 (finding that due process was satisfied where notice mailed by first class mail to all class members who could be identified with reasonable effort and summary notice was published once in *Investor's Business Daily* and over *PR Newswire*); *Cabletron*, 239 F.R.D. at 35-36 (combination of individually mailed notice packets, published notice in *The Wall Street Journal*, a

dedicated website, and a dedicated phone hotline met the notice standard).  *See also Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *7 (D.R.I. Feb. 17, 2016).

## IV.    CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court: (i) grant final approval of the proposed Settlement; (ii) certify the Settlement Class; (iii) approve the proposed Plan of Allocation; (iv) find that notice to the Settlement Class satisfied due process; and (v) enter the proposed Order Approving Plan of Allocation and proposed Final Judgment.[6]

DATED:  August 15, 2024              Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON (admitted *pro hac vice*)


*s/ Chad Johnson*
CHAD JOHNSON

420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
chadj@rgrdlaw.com

---

[6]    Proposed orders will be submitted with Lead Counsel's reply submission on September 12, 2024, after the August 29, 2024 deadline for Settlement Class Members to object has passed.

- 19 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
DEBRA J. WYMAN (admitted *pro hac vice*)
ELLEN GUSIKOFF STEWART (admitted *pro hac vice*)
CHRISTOPHER D. STEWART (admitted *pro hac vice*)
MEGAN A. ROSSI (admitted *pro hac vice*)
NICOLE Q. GILLILAND (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com
elleng@rgrdlaw.com
cstewart@rgrdlaw.com
mrossi@rgrdlaw.com
ngilliland@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SNEHEE KHANDESHI (admitted *pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
skhandeshi@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

HUTCHINGS BARSAMIAN MANDELCORN, LLP
THEODORE M. HESS-MAHAN, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Telephone: 781/431-2231
781/431-8726 (fax)
thess-mahan@hutchingsbarsamian.com

Liaison Counsel for Lead Plaintiffs

- 20 -

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 15, 2024.

*/s/ Chad Johnson*
CHAD JOHNSON