UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re PEGASYSTEMS INC. SECURITIES LITIGATION | ) ) ) ) ) | No. 1:22-cv-11220-WGY<br><br>DECLARATION OF DEBRA J. WYMAN FILED ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD LLP IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES |

4881-3247-7908.v3

I, Debra J. Wyman, declare as follows:

1.    I am a member of the firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm").  I am submitting this declaration in support of the application for an award of attorneys' fees, expenses and charges ("expenses") in connection with services rendered in the above-entitled action (the "Litigation").[1]

2.    This Firm is Lead Counsel of record for lead plaintiffs Construction Industry Laborers Pension Fund, Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan, and Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987 ("Lead Plaintiffs"), and the Settlement Class herein.

3.    The information in this declaration regarding the Firm's time and expenses is taken from time and expense reports and supporting documentation prepared and/or maintained by the Firm in the ordinary course of business.  I am one of the partners who oversaw and/or conducted the day-to-day activities in the Litigation and I reviewed these reports (and back-up documentation where necessary or appropriate) in connection with the preparation of this declaration.  The purpose of this review was to confirm both the accuracy of the entries as well as the necessity for, and reasonableness of, the time and expenses committed to the Litigation.  As a result of this review, reductions were made to both time and expenses in the exercise of billing judgment.  Based on this review and the adjustments made, I believe that the time reflected in the Firm's lodestar calculation and the expenses for which payment is sought herein are reasonable and were necessary for the effective and efficient prosecution and resolution of the Litigation.

---

[1]    Unless otherwise noted all capitalized terms used herein have the same meaning as set forth in the Stipulation of Settlement (ECF 143) ("the Stipulation").

4881-3247-7908.v3

4.      After the reductions referred to above, the number of hours spent on the Litigation by the Firm is 13,511.60.  A breakdown of the lodestar is provided in the attached Exhibit A.  The lodestar amount for attorney/paraprofessional time based on the Firm's current rates is $8,243,460.50.  The hourly rates shown in Exhibit A are the Firm's current rates in contingent cases set by the Firm for each individual timekeeper.  These hourly rates are consistent with hourly rates submitted by the Firm to state and federal courts in other securities class action litigations.  The Firm's rates are set based on a periodic analysis of rates charged by firms performing comparable work both on the plaintiff and defense side.  Different timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the Firm, years in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at this Firm or other firms.  For personnel who are no longer employed by the Firm, the "current rate" used for the lodestar calculation is based upon the rate for that person in his or her final year of employment with the Firm.

5.      The Firm seeks an award of $419,618.39 in expenses and charges in connection with the prosecution of the Litigation.  Those expenses and charges are summarized by category in the attached Exhibit B.

6.      The following is additional information regarding certain of these expenses:

(a)      Attorney Service Fees: $29,707.50.  These expenses have been paid to attorney service firms or individuals who either: (i) served process of the complaint or subpoenas; or (ii) obtained copies of court documents for Lead Plaintiffs.  The vendors who were paid for these services are set forth in the attached Exhibit C.

- 2 -

4881-3247-7908.v3

(b)    Business Wire: $155.00.  This expense was necessary under the Private Securities Litigation Reform Act of 1995's ("PSLRA") "early notice" requirements, which provides, among other things, that

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class – (I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

*See* 15 U.S.C. §78u-4(a)(3)(A)(i).

(c)    Transportation, Hotels, and Meals: $9,986.14.  In connection with the prosecution of this case, the Firm has paid for travel to attend the motion to dismiss court hearing and mediation.  The date, destination, and purpose of each trip is set forth in the attached Exhibit D.

(d)    Hearing Transcript: $15.30.  This charge was paid to Richard H. Romanow, PHR for the reporter's transcript of the motion to dismiss hearing held on May 17, 2023.

(e)    Experts and Consultants: $298,344.00.

(i)    Crowninshield Financial Research, Inc.: $284,374.00  Lead Plaintiffs retained the services of the consulting firm Crowninshield, and one of its partners, Dr. Steven Feinstein, concerning market efficiency and damages.  Dr. Feinstein, with the assistance of other members of Crowninshield: (i) provided critical economic analysis, as well as expert reports, in connection with class certification; and (ii) assisted in mediation efforts by analyzing and responding to Defendants' contentions regarding potentially recoverable damages.  Following the Settlement of this Litigation, Crowninshield also assisted Lead Counsel in developing the Plan of Allocation.  Dr. Feinstein and his team spent considerable time studying the record and public

information, including analyst reports and SEC filings, in order to be able to address the market in which Pegasytems Inc. ("Pega") common stock traded, disclosures related to Pega's finances and operations, and the related price movement in Pega's common stock.  Based on this work, Dr. Feinstein provided detailed information and analysis that were used in analyzing market efficiency, loss causation, and damages.

(ii)     J.S. Held, LLC: $7,415.00   Lead Plaintiffs engaged Karyl Van Tassel, a Senior Managing Director at J.S. Held, to analyze Pega's accounting and SEC disclosure practices.  Ms. Van Tassel leads J.S. Held's North American Global Investigations practice and is a Certified Public Accountant and Certified Fraud Examiner.  She analyzed whether Pega's accounting and SEC disclosure practices complied with Generally Accepted Accounting Principles.

(iii)     Tasta Group (d/b/a Caliber Advisors, Inc.): $4,200.00   Lead Plaintiffs retained the services of economic expert Bjorn Steinholt with Caliber Advisors, Inc. to analyze and provide his opinions regarding the statistical significance of alleged stock drops as well as estimated damages.

(iv)     FTI Consulting Technology, LLC: $2,355.00   Lead Plaintiffs retained the services of FTI Consulting, Inc. to provide consultation services regarding defendants' collection of emails with linked attachments.

(f)     Photocopies: $168.30.  In connection with this case, the Firm made 302 black and white copies.  Robbins Geller requests $0.15 per copy for a total of $45.30.  In addition, the Firm made 246 color copies.  Robbins Geller requests $0.50 per copy for a total of $123.00.  Each time an in-house copy machine is used, our billing system requires that a case or

administrative billing code be entered and that is how the number of in-house copies were identified as related to the Litigation.

(g)    Online Legal and Financial Research: $24,398.40.  This category includes vendors such as LexisNexis, Refinitiv, Transunion Acquisition, and Westlaw.  These resources were used to obtain access to SEC filings, factual databases, legal research, and for proofreading and "blue-booking" court filings (including checking all legal authorities cited and quoted in briefs).  This category represents the expenses incurred by Robbins Geller for use of these services in connection with this Litigation.  The charges for these vendors vary depending upon the type of services requested.  For example, Robbins Geller has flat-rate contracts with some of these providers for use of their services.  When Robbins Geller utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated.  At the end of each billing period in which such service is used, Robbins Geller's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period.  As a result of the contracts negotiated by Robbins Geller with certain providers, the Class enjoys substantial savings in comparison with the "market-rate" for *a la carte* use of such services which some law firms pass on to their clients.  For example, the "market-rate" charged to others by LexisNexis for the types of services used by Robbins Geller is more expensive than the rates negotiated by Robbins Geller.

(h)    eDiscovery Database Hosting: $43,000.46.  Robbins Geller has installed top tier database software, infrastructure, and security.  The platform implemented, Relativity, is offered by over 100 vendors and is currently being used by 198 of the AmLaw200 firms.  Over 50 servers are dedicated to Robbins Geller's Relativity hosting environment with all data stored in a secure SSAE 18 Tier III data center with automatic replication to a datacenter located in a different

- 5 -

4881-3247-7908.v3

geographic location. By hosting in-house, Robbins Geller is able to charge a reduced, all-in rate that includes many services which are often charged as extra fees when hosted by a third-party vendor. Robbins Geller's hosting fee includes user logins, ingestion, processing, OCRing, TIFFing, bates stamping, productions, and archiving – all at no additional per unit cost. Also included is unlimited structured and conceptual analytics (*i.e.*, email threading, inclusive detection, near-dupe detection, concept searching, active learning, clustering, and more). Robbins Geller is able to provide all these services for a cost that is typically much lower than outsourcing to a third-party vendor. Utilizing a secure, advanced platform in-house has allowed Robbins Geller to prosecute actions more efficiently, utilize advanced AI technology, and has reduced the expense associated with maintaining and searching electronic discovery databases. Similar to third-party vendors, Robbins Geller uses a tiered rate system to calculate hosting charges. The amount requested reflects charges for the hosting of over 1.8 million pages of documents produced by parties and non-parties in this action.

(i)     Mediation Fees: $13,564.04. Van Winkle Dispute Resolution. These are Plaintiffs' share of the fees of the mediator, John Van Winkle, who conducted a mediation session with the parties, as well as numerous pre- and post-mediation telephonic conferences with the parties leading to the settlement of the Litigation.

7.     The expenses pertaining to this case are reflected in the books and records of this Firm. These books and records are prepared from receipts, expense vouchers, check records, and other documents and are an accurate record of the expenses.

4881-3247-7908.v3

8. The identification and background of my Firm and its partners is attached hereto as Exhibit E.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of August, 2024, at San Diego, California.

*s/ Debra J. Wyman*
DEBRA J. WYMAN

4881-3247-7908.v3

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 15, 2024.

*/s/ Chad Johnson*

CHAD JOHNSON