```
 1                UNITED STATES DISTRICT COURT

 2                DISTRICT OF MASSACHUSETTS (Boston)

 3                           No. 1:22-cv-11220-WGY

 4


 5   CITY OF FORT LAUDERDALE POLICE AND
     FIREFIGHTERS' RETIREMENT SYSTEM, et al,
 6             Plaintiffs

 7
     vs.
 8

 9   PEGASYSTEMS, INC., et al,
               Defendants
10

11                          *********

12

13                    For Hearing Before:
                    Judge William G. Young
14

15                      Fairness Hearing

16
                    United States District Court
17                  District of Massachusetts (Boston)
                    One Courthouse Way
18                  Boston, Massachusetts 02210
                    Thursday, September 19, 2024
19

20
                            *******
21

22        REPORTER: RICHARD H. ROMANOW, RPR
                  Official Court Reporter
23             United States District Court
     One Courthouse Way, Room 5510, Boston, MA 02210
24                  rhr3tubas@aol.com

25
```

```
 1                     A P P E A R A N C E S

 2


 3    CHRISTOPHER CHAD JOHNSON, ESQ.
      ELLEN GUSIKOFF-STEWART, ESQ.
 4       Robins Geller Rudman & Dowd, LLP
         420 Lexington Avenue, Suite 1832
 5       New York, NY 10170
         (212) 791-0567
 6       Email: Chadj@rgrdlaw.com
     and
 7    THEODORE M. HESS-MAHAN, ESQ.
         Hutchings, Barsamian, Mandelcorn, LLP
 8       110 Cedar Street, Suite 250
         Wellesley Hills, MA 02481
 9       (781) 431-2231
         Email: Thess-mahan@hutchingsbarsamian.com
10       For the Lead Plaintiffs

11


12    DANIEL W. HALSTON, ESQ.
      ROBERT K. SMITH, ESQ.
13       Wilmer Hale, LLP
         60 State Street
14       Boston, MA 02109
         (617) 526-6654
15       Email: Daniel.halston@wilmerhale.com
         For Defendants
16

17

18

19

20

21

22

23

24

25
```

```
 1           P R O C E E D I N G S
 2           (Begins, 2:00 p.m.)
 3           THE COURT:  Good afternoon.  Would counsel please
 4   identify themselves.  Well let's call the case first.
 5           THE CLERK:  Now hearing Civil Matter 22-11220,
 6   City of Fort Lauderdale Police And Firefighters versus
 7   Pegasystems.
 8           MR. JOHNSON:  Good afternoon, your Honor, Chad
 9   Johnson, of Robbins Geller, on behalf of the lead
10   plaintiffs.
11           MS. GUSIKOFF-STEWART:  Good afternoon, your Honor,
12   Ellen Gusikoff-Stewart, of Robbins Geller, on behalf of
13   the lead plaintiffs.
14           MR. HESS-MAHAN:  Good afternoon, your Honor,
15   Theodore Hess-Mahan on behalf of the lead plaintiffs.
16           THE COURT:  Good afternoon.
17           MR. HALSTON:  Good afternoon, your Honor, Dan
18   Halston, from Wilmer Hale, on behalf of the defendants,
19   and with me is --
20           MS. SMITH:  Robert Smith, also of Wilmer Hale,
21   your Honor, for the defendants.
22           THE COURT:  Good afternoon to you all.
23           This is the fairness hearing, properly noticed.
24           Does anyone appear in opposition to the proposed
25   settlement?
```

1         (Silence.)
2         THE COURT:  I hear none.  We'll ask again before
3    we close the hearing.
4         I have reviewed all of this and I am satisfied in
5    the main with it.  I want to inquire about attorneys
6    fees, as is my practice.
7         So the gross settlement is $35 million, correct?
8         MR. JOHNSON:  That is correct, your Honor.
9         THE COURT:  Okay.  Tell me where the money goes?
10        MR. JOHNSON:  So, your Honor, start at the gross
11   amount, plus interest that has accrued.  There will be
12   certainly some expenses associated with the claims
13   administration process.
14        THE COURT:  All right.
15        MR. JOHNSON:  And then we have requested fees of
16   30 percent --
17        THE COURT:  No, I understand that.  Put that to
18   the end.
19        MR. JOHNSON:  All right.
20        THE COURT:  Where does the money go?
21        MR. JOHNSON:  And do you mean the fees or the, um
22   --
23        THE COURT:  Here's my problem.  The theory of a
24   payment to you people of 30 percent is based on the
25   common-fund analysis of litigation, and the support for

```
 1   it and -- I have no problem with a 30 percent fee, is
 2   that you have created a fund which but for your efforts
 3   would not have existed.  That appears to be correct.  So
 4   the -- but the fund that you've created necessarily is
 5   reduced by the cost of administration, to get the money
 6   out, it's reduced by your expenses, because you had to
 7   expend those funds to create what's left for the
 8   beneficiary, and so we subtract those two things.  The,
 9   um -- the awards to named plaintiffs I don't think
10   should be subtracted because named plaintiffs bear a
11   function in the litigation process.  So we don't
12   subtract that.  But subtract these two elements that I
13   mentioned.
14        So where does the rest of it go before we get to
15   consider attorneys fees?
16        MR. JOHNSON:  Your Honor, the totality of it, and
17   I'm -- I want to make sure I'm answering your question.
18   The totality of the fund is an escrow account.
19        THE COURT:  Yeah.
20        MR. JOHNSON:  Subtracting the amounts your Honor
21   noted, the claims process is what will result in the
22   funds going out to class members.
23        THE COURT:  Okay.  And here's my problem.
24        MR. JOHNSON:  Okay.
25        THE COURT:  Studies show that the take-up is about
```

```
 1    20 percent.  So those are the people who get paid.  What
 2    happens to the rest of it?
 3         MR. JOHNSON:  Well, your Honor, generally, um --
 4    and I don't think this will be any exception, whatever
 5    the percentage of claimants may put in a claim, let say
 6    it's 20 percent, hypothetically, um, almost without
 7    exception -- and again I don't think this will be an
 8    exceptional case as far as what we're talking about is
 9    concerned, the amount that goes out to them will not
10    exceed the size of their claim.  And so, yes, only those
11    who submit a claim will receive a portion of the
12    settlement fund.  But they will not, for instance,
13    receive a windfall.
14         THE COURT:  No.  No.  All right.  And how much is
15    that going to be, if there was a 20 percent take-up?
16         MR. JOHNSON:  In total?
17         THE COURT:  Yes.  We don't know today, do we?
18         MR. JOHNSON:  Well what we can know is pretty
19    close to the actual number, your Honor, and there's not
20    much that's frankly in doubt, it's more a matter of
21    interest or claims costs.
22         THE COURT:  Well you're answering my question.  Go
23    ahead.
24         MR. JOHNSON:  All right.  So you have claims --
25    costs associated with the claims process, those have not
```

```
 1    all been incurred.
 2          THE COURT:  I fully understand.  All right.
 3          MR. JOHNSON:  And then you have interest, which is
 4    moving the fund in the other direction.
 5          THE COURT:  All right.
 6          MR. JOHNSON:  And then you have the request of the
 7    fees and expenses.  Yes, right.  Right.
 8          THE COURT:  Well I'm going to subtract the
 9    expenses because you attorneys had to incur those
10    expenses in order for the funds to be created.  So we
11    subtract that.  So once we've subcontracted that,
12    roughly half a million, then that's less -- what I may
13    set aside for attorneys fees, that's what's available
14    for the people and institutions that have been injured.
15          If there's a 20-percent take-up, and what we've
16    subtracted from 35 million takes us down to 30 million,
17    and there's only a 20-percent take-up, um, what's -- you
18    know, a 33 percent take-up would be 10 million, um, we
19    pay out $10 million that's left?  What happens if --
20    putting aside your, um, what you want, what happens to
21    the rest of it?
22          MR. JOHNSON:  Would it be all right if we used
23    round numbers just because we're talking about
24    hypotheticals?
25          THE COURT:  Right.
```

```
 1          MR. JOHNSON:  So let's suppose that we have $20
 2   million available to distribute among class members --
 3          THE COURT:  Right.
 4          MR. JOHNSON:  -- round numbers, yes, the $20
 5   million would go out to those claimants who put forward
 6   claims --
 7          THE COURT:  And my hypothesis is there isn't
 8   enough -- no, strike that, there isn't enough of a take-
 9   up to exhaust that $20 million?
10          MR. JOHNSON:  That's where there's, um, I think a
11   factual disconnect, your Honor, in that the -- the size
12   of the claims is going to -- so even with 20 percent
13   making claims, they will have, um, asserted claims that
14   will be more than $20 million.
15          THE COURT:  All right, I follow.  All right, let
16   me say it back to you and I'm afraid that I might be
17   inarticulate.
18          The goal of the Court and what I conceive the duty
19   of the Court to be, because I have to give an
20   independent analysis here, is to assure that an
21   appropriate amount of the real money caused to be put
22   into the common fund goes to the claimants.  So I think
23   I can articulate this correctly.
24          Out of the $35 million, I want the administration
25   costs subtracted.  I want the attorneys fees subtracted.
```

1  I want a representation that all the -- the 30 percent,
2  I've said I want two things subtracted.
3      I approve -- I really have no quarrel at all with
4  the fine work that the plaintiffs' counsel has done
5  here, the 30 percent is 30 percent of what remains.  So
6  you get 30 percent of what remains, the class individual
7  award, I accept, they're subtracted, and do I have your
8  representation that the remainder, every penny of it,
9  goes to the claimants?
10      MR. JOHNSON:  Yes, your Honor, with one tiny
11  asterisk, which is hypothetical itself.
12      THE COURT:  Yeah.
13      MR. JOHNSON:  If, for instance, after the initial
14  distribution, if there's a secondary distribution, which
15  is common, if after that there's a de minimis amount, we
16  would likely come back to the Court and ask for your
17  permission if that could be donated to an appropriate
18  organization or something else that would be subject to
19  the Court's approval, but never is any of this coming to
20  us or to some other place, and that's why the asterisk
21  is very very small.
22      THE COURT:  I fully accept that.  And on the basis
23  of that representation, I approve the settlement, the
24  attorneys fees, the individual fees.  But you'll
25  subtract those two elements as I have delineated them.

```
 1  Correct?
 2       MR. JOHNSON:  Yes, your Honor.  Although I will
 3  say -- well we'll do whatever the Court directs.  But
 4  subtracting the claims fees first is challenging because
 5  they haven't been incurred.
 6       THE COURT:  Well it seems to me that, um, you seem
 7  to have this well in hand and can make proper estimates
 8  of what you do from the escrow fund.  None of this in
 9  any way impugns counsel, it just seems not to accomplish
10  the genius of Rule 23 if I just look at the gross
11  amount, say 30 percent is a not an excessive number,
12  when in fact the fund available for the victims is
13  considerably less than that, because of whatever reason,
14  that the lack of take-up.  But I think we understand
15  each other and I -- um, you can comply with the Court's
16  order as I've explained it here.  Correct?
17       MR. JOHNSON:  I think so, your Honor.  And, um, as
18  I understand it, we will make, um, based on our
19  extensive experience, an estimate of those claims costs
20  and take that off of the top along with our actual
21  out-of-pocket expenses --
22       THE COURT:  That's correct.
23       MR. JOHNSON:  -- and then from there a 30 percent
24  --
25       THE COURT:  And that is likewise correct.  And
```

1   should those estimates -- as you stand in a fiduciary
2   position to your clients and as you have represented to
3   the Court, if those estimates should prove inaccurate,
4   you'll make appropriate adjustments.
5         MR. JOHNSON:  Certainly, your Honor, and that's
6   why we will estimate in favor of the class and not in
7   our own favor.  And, um, I want to make sure I
8   understand the, um, way we should, um, deal with the
9   amounts for the lead plaintiffs.  You know we're talking
10  about the $2,000, the $2,000 and 9-plus thousand?
11        THE COURT:  Right.
12        MR. JOHNSON:  Those should also come off the top,
13  your Honor?
14        THE COURT:  No, it wouldn't come off the top.
15        MR. JOHNSON:  Okay.
16        THE COURT:  They, um -- no.
17        MR. JOHNSON:  Okay.
18        THE COURT:  They -- the only things that should --
19  the 30 percent is against this, the settlement amount
20  less the administration expenses, not yet entirely
21  known, and less attorneys costs, $400 and sum, it's
22  almost half a million dollars.  What's left is available
23  to be distributed to the class.  The 30 percent can be
24  calculated against that recognizing that individual-
25  named class members will get more, because they have

1    contributed to the success.  That should not reduce the
2    30 percent that goes to the attorneys because they have
3    contributed especially to the success.  The remainder,
4    in its entirety, going to the class.
5         Have I now stated it in an intelligible fashion?
6         MR. JOHNSON:  Yes, your Honor.
7         If you could just give me 2 seconds to confer with
8    my partner who is the real expert in this matter.
9         THE COURT:  I will.
10        But I'll just ask Mr. Halston, um -- and this
11   really is not directly to you.  You get the benefits of
12   the releases having paid the funds into the escrow
13   account, so if you think I've misstated something, feel
14   free.
15        MR. HALSTON:  No, your Honor, I don't.  And I
16   think the colloquy at the end I think satisfied your
17   Honor that even though it's 20 percent, there might be
18   another distribution such that the money will still be
19   made whole to the debt, to the class at that point.
20        THE COURT:  Right, I want the class to get an
21   appropriate portion.  That's it.
22        All right.
23        MR. JOHNSON:  We understand and are happy to
24   proceed as directed, your Honor.
25        THE COURT:  So subject to this colloquy, um, all

1   these -- I'll ask one counsel for the next hearing, but,
2   um, does anyone on this case, 22 Civil 11220, In re
3   Pegasystems Securities Litigation, is anyone here to
4   object to the settlement as the Court has decreed it?
5        (Silence.)
6        THE COURT:  I hear no objection.  That's the order
7   of the Court.
8        Is there anything else before we recess?
9        MR. JOHNSON:  Only a question, your Honor, as to
10  whether the Court would want us to submit a proposed
11  order for the Court's consideration to effectuate this?
12       THE COURT:  Well in effect I think I'm doing that,
13  but, um --
14       MR. JOHNSON:  If not, so be it.  I've just -- it's
15  a question.
16       THE COURT:  No.  No, I think this discussion is
17  sufficient.  We're dealing with competent and highly-
18  ethical counsel and I have an objective basis in the
19  Court Reporter's notes to check against.  Everything
20  I've said is with the highest respect, I'm trying to
21  discharge the function as I -- of the judiciary as I
22  think it should be discharged.
23       MR. JOHNSON:  Thank you.
24       THE COURT:  That's the order of the Court.  Thank
25  you all.

```
 1          MR. JOHNSON:  Thank you, your Honor.
 2          MS. GUSIKOFF:  Thank you, your Honor.
 3          THE COURT:  The settlement is approved pursuant to
 4     this discussion.
 5          (Ends, 2:15 p.m.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E
 2
 3          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,
 4    do hereby certify that the foregoing record is a true
 5    and accurate transcription of my stenographic notes,
 6    before Judge William G. Young, on Thursday, September
 7    19, 2024, to the best of my skill and ability.
 8
 9
10
     /s/ Richard H. Romanow 09-25-24
11   _____
     RICHARD H. ROMANOW    Date
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```